consummating the transactions contemplated hereby without reliance upon any express or implied representations or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or imputed to any of the Trump Group Released Parties, except as expressly set forth in this Agreement, and no member of the AG Group shall make any Claim with respect thereto. Each member of the AG Group acknowledges that he, she or it is taking full responsibility for making his, her or its own evaluation of the adequacy and accuracy of all documents or information that may have been furnished to him, her or it, and that no member of the AG Group shall have any Claim against any of the Trump Group Released Parties with respect thereto, including for Claims relating to the accuracy or completeness of the information that may have been furnished to him her or it. Each member of the AG Group acknowledges and understands that each member of the Trump Group Released Parties expressly disclaims any and all liability that may be based on any of the documents and information that may have been furnished to any member of the AG Group and all liability based on such documents or information or errors therein or omissions therefrom. Accordingly, each member of the AG Group acknowledges that none of the Trump Group Released Parties has made any representation or warranty with respect to (i) any historical information, financial or otherwise, including without limitation results of operations (or any component thereof), cash flows, or financial condition (or any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or projections or estimates of future revenues, future results of operations (or any component thereof), future cash flows or future financial condition (or any component thereof) of Trans-Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources and/or any of its subsidiaries, (iii) any Claims any member of the AG Group

20

may have against any of the Trump Group Released Parties or (iv) any other information or documents that may have been made available to any member of the AG Group or their respective counsel, accountants or advisors with respect to any of the Trump Group Released Parties any of their respective businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the AG Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the Trump Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the AG Group acknowledges that the consideration to be received by the AG Group pursuant to this Agreement constitutes full and fair consideration for the release of all Claims contemplated hereunder.

(e)    Each member of the Trump Group represents that he, she or it is knowledgeable, sophisticated and experienced in business, financial and other matters relevant to his, her or its entry into this Agreement and the transactions contemplated hereby, and has engaged advisors, experienced in the matters contemplated by this Agreement. Each member of the Trump Group has undertaken such investigation and has been provided with and has evaluated such documents and information as he, she or it has deemed necessary to enable him, her or it to make an informed decision with respect to the execution, delivery and performance of this Agreement and the transactions contemplated hereby. Each member of the Trump Group is consummating the transactions contemplated hereby without reliance upon any express or implied representations or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or imputed to any of the AG Group Released Parties, except as expressly set forth in this

21

Agreement, and no member of the Trump Group shall make any Claim with respect

thereto. Each member of the Trump Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

information that may have been furnished to him, her or it, and that no member of the Trump

Group shall have any Claim against any of the AG Group Released Parties with respect thereto,

including for Claims relating to the accuracy or completeness of the information that may have

been furnished to him her or it. Each member of the Trump Group acknowledges and

understands that each member of the AG Group Released Parties expressly disclaims any and all

liability that may be based on any of the documents and information that may have been

furnished to any member of the Trump Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the Trump

Group acknowledges that none of the AG Group Released Parties has made any representation or

warranty with respect to (i) any historical information, financial or otherwise, including without

limitation results of operations (or any component thereof), cash flows, or financial condition (or

any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or

projections or estimates of future revenues, future results of operations (or any component

thereof), future cash flows or future financial condition (or any component thereof) of Trans-

Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources

and/or any of its subsidiaries, (iii) any claims any member of the Trump Group may have against

any of the AG Group Released Parties or (iv) any other information or documents that may have

been made available to any member of the Trump Group or their respective counsel, accountants

or advisors with respect to any of the AG Group Released Parties any of their respective

22

businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the Trump Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the AG Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the Trump Group acknowledges that the consideration to be received by the Trump Group pursuant to this Agreement constitutes full and fair consideration for the release of all claims contemplated hereunder.

13.   **Attorneys' Fees.** The Parties agree to be responsible for their own attorneys' fees and costs incurred in connection with this Agreement and negotiations related to and preparation of this Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

14.   **Governing Law.**

This Agreement, and all disputes arising under this Agreement or related thereto, shall be governed by, construed and interpreted in accordance with the laws of the State of Delaware, applicable to instruments made, delivered and performed entirely in such state, without regard to the choice of law provisions thereof.

15.   **Arbitration.** UNLESS THIS AGREEMENT SPECIFICALLY PROVIDES FOR ANOTHER TYPE OF DISPUTE RESOLUTION WITH RESPECT TO A PARTICULAR KIND OF DISPUTE, ANY AND ALL CONTROVERSIES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE EXCLUSIVELY SETTLED BY FINAL AND BINDING

ARBITRATION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THIS
SECTION.

     (a)    The arbitration shall be conducted in accordance with the Commercial
Arbitration Rules of the American Arbitration Association ("AAA") then in effect (the "Rules"),
except as set forth herein. Any member of the Trump Group on behalf of the Trump Group, on
the one hand, and any member of the AG Group on behalf of the AG Group, on the other hand,
may demand arbitration by giving the other written notice to such effect in accordance with the
Rules.

     (b)    The arbitration will be held before one neutral arbitrator. Within thirty (30)
days after the other Party's receipt of the demand for arbitration, the Party seeking arbitration
will invite the other Party to join it in approaching the following list of individuals about serving
as arbitrator and will approach such individuals with such other Party (if its invitation is accepted)
or without such other Party (if its invitation is rejected or not responded to within five (5)
business days): The Honorable William B. Chandler III, David A. Jenkins, Esq., Stephen E.
Jenkins, Esq., Robert J. Katzenstein, Esq., and Andre G. Bouchard, Esq. If only one such
individual is available and willing, he shall serve as the arbitrator. If more than one such
individual is available and willing, the Parties will mutually determine which of those so
available and willing will serve as the arbitrator. If the Parties are unable to agree, the arbitrator
will be selected by the AAA from the foregoing list in accordance with the listing, striking and
ranking procedure in the Rules, with each Party being given a limited number of strikes, except
for cause. If none of the foregoing individuals is available, the arbitrator will be selected by the
AAA in accordance with the listing, striking and ranking procedure in the Rules, with each Party

being given a limited number of strikes, except for cause. Any arbitrator appointed by the AAA shall be a retired judge that presided over a state or federal court located in Delaware or a practicing attorney licensed in Delaware with no less than fifteen years of experience with large commercial cases. Any such arbitration proceedings shall be and remain confidential. The place of arbitration shall be in Manhattan, New York or elsewhere if otherwise agreed to.

(c)    Discovery will be limited to the request for and production of documents, directly related to the issues in dispute, limited depositions of limited duration, and interrogatories. Interrogatories will be allowed only as follows: a Party may request the other Party to identify by name, last known address and telephone number (i) all persons having knowledge of facts relevant to the dispute and a brief description of that person's knowledge, and (ii) any experts who may be called as an expert witness, the subject matter about which the expert is expected to testify, the mental impressions and opinions held by the expert and the facts known by the expert. All issues concerning discovery upon which the parties cannot agree will be submitted to the arbitrator for determination.

(d)    Each of the Parties agrees that it will use commercially reasonable efforts to join (and will allow the other party to join) any third party that the Parties have agreed is indispensable to the arbitration. If any such third party does not agree to be joined, the arbitration will proceed nonetheless.

(e)    The arbitrators are not empowered to award damages not permitted by the terms of this Agreement and if so permitted, then not in excess of compensatory damages, except with respect to indemnification obligations for punitive damages as provided hereunder, and

25

each Party irrevocably waives the right to recover punitive, exemplary or multiple damages with respect to any dispute other than with respect to indemnification obligations for such punitive damages as provided hereunder. The decision of, and award rendered by, the arbitrator will be final and binding on the Parties, will be in writing and will include the findings of fact and conclusions of law upon which it is based, if any.

(f)     The Parties specifically acknowledge that this Agreement evidences a transaction involving, affecting, affected by, and a part of, interstate commerce and that this agreement to arbitrate is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(g)     Except to the extent that any of the indemnification provisions contained herein shall be applicable (i) the Parties shall each be responsible for their own costs and expenses (including legal fees and disbursements) incurred in any arbitration, and (ii) the AG Group on the one hand and the Trump Group on the other shall each be responsible for 50% of the fees and disbursements of the arbitrator and of any costs and expenses payable to the AAA.

(h)     With respect to the enforcement, modification or vacating of any arbitration award (it being reconfirmed hereby that the arbitration award shall itself be final and binding on the Parties), the Parties submit to the exclusive jurisdiction of one or the other of (i) the United Stated District Court of the Southern District of New York sitting in the Borough of Manhattan in the City of New York and (ii) the Commercial Division of the New York State Supreme Court sitting in the Borough of Manhattan in the City of New York.

16.     **Notice.** If any Party is required to give notice to any other Party under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, one business day following its being sent to the recipient via Federal Express or another

26

nationally recognized over-night courier, or by e-mail with confirmation of receipt to the following individuals or to such other address or person as such Parties may from time to time specify by written notice given in the manner provided above:

**If to the Trump Group:**

Mark S. Hirsch, Esq.

The Trump Group

41 Madison Avenue, Suite 4101

New York, NY 10010

Phone: (212) 838-1000

E-mail: mhirsch@trumpgroup.com

**With Copy to:**

Thomas J. Allingham II, Esq.

Anthony W. Clark, Esq.

Douglas D. Herrmann, Esq.

Skadden, Arps, Slate, Meagher & Flom LLP

One Rodney Square

P.O. Box 636

Wilmington, DE 19899

Phone: (302) 651-3000

E-mail: thomas.allingham@skadden.com

27

E-mail:  anthony.clark@skadden.com

E-mail:  douglas.herrmann@skadden.com

**If to Arie Genger:**

Arie Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail:  wachtel@wmllp.com

**With Copy to:**

Stephen P. Lamb, Esq.

Paul Weiss

500 Delaware Avenue, Suite 200

Wilmington, DE 19889

**If to Orly Genger:**

Orly Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

28

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017

[]

**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail:  wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017

29

17.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties concerning the subject matter hereof. Neither this Agreement nor any of its terms or provisions shall be binding on any Party until all the Parties hereto have signed. The Parties agree that all drafts of this Agreement are strictly confidential and shall supplement and complement any protection, which may attach to the exchange of confidential information in settlement discussions, whether by common law or statute including, but not limited to, Federal Rule of Evidence 408 and comparable state laws. Any and all prior discussions and agreements between the Parties concerning the subject matter of this Agreement are merged into this Agreement when signed. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by all Parties. No Party has made any warranty or representation to the other Parties that is not set forth expressly herein. In entering into this Agreement, no Party has relied on any statement or representation made by or on behalf of any other Party, by or on behalf of any affiliate of such other Party, or by counsel for such other Party that is not set forth expressly in this Agreement.

18.    **No Drafting Presumption.** This Agreement shall be interpreted or construed without any presumption that the provisions hereof should be strictly construed against the drafter, it being agreed that the Parties and their respective counsel and other agents have fully and equally participated in the preparation, negotiation, review and approval of all provisions of this Agreement.

19.    **No Admissions.** The Parties have executed this Agreement for the sole purpose of settling and disposing of all Claims between them, and it is expressly understood and agreed that no Party hereto admits any wrongdoing on its, his or her part by executing this Agreement.

30

20.    **Binding Effect.** It is the intention of the parties to extinguish all AG Group Released Claims and all Trump Group Released Claims and, consistent with such intention, each of the Parties hereby waives any and all rights, to the extent permitted by law, to assert that the Release provided by it in Paragraph 6 hereunder is unenforceable as to any claim whatsoever and for any reason including, without limitation, any and all rights under section 1542 of the California Civil Code, if applicable, or any other applicable similar law or principle of common law, which may have the effect of limiting the Releases herein. Section 1542 of the California Civil Code provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

21.    **Headings.** The section headings contained in this Agreement are for reference purposes only and shall not in any way effect or control the meaning or interpretation of this Agreement.

22.    **Execution in Counterparts and by PDF e-mail.** This Agreement may be executed in multiple counterparts and by fax or PDF e-mail, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute one and the same instrument and agreement.

23.    **Effective Date.** This Agreement shall be effective immediately upon execution and delivery by all Parties hereto (the "Effective Date").

31

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**

**Arie Genger**

By: _____

Print: _____

Date: ___6/15/13___

Title: _____

Date: _____

**Glenclova Investment Co.**

**Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust)**

By: _____

Print: _____

Date: ___6/15/13___

Title: _____

Date: _____

32

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                              **Arie Genger**

By: _____    _____

Print: _MARK J. HIRSCH_          Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_


**Glenclova Investment Co.**          **Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust)**

By: _____

Print: _MARK S. HIRSCH_          _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_          Date: _____

32

**New TR Equity I, LLC**

By: _____

Print: _____

Title: _____

Date: _____

**Arnold Broser**

_[signature]_

Date: ___6/16/13___

**New TR Equity II, LLC**

By: _____

Print: _____

Title: _____

Date: _____

**David Broser**

_[signature]_

Date: ___6/16/13___

33

**New TR Equity I, LLC**                    **Arnold Broser**

By: _Mark S. Hirsch_____              _____

Print: _MARK S. Hirsch_____              Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____


**New TR Equity II, LLC**                   **David Broser**

By: _Mark S. Hirsch_____              _____

Print: _MARK S. Hirsch_____              Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____

33

**Trans-Resources, LLC**

By: _Mark S. Hirsch_

Print: _MARK S. HIRSCH_

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_

**Jules Trump**

Date: _6 / 16 / 2013_

**Eddie Trump**

Date: _____

**Mark Hirsch**

Date: _____

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: June 16, 2013

**Mark Hirsch**

_____

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: _____

**Mark Hirsch**

_~~Mark Hirsch~~_____

Date: _June 16, 2013_____

EXHIBIT A

*6/16/13*
*Draft - Confidential*

## [FORM OF SUBORDINATED NOTE]

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.**

TRANS-RESOURCES

### SUBORDINATED NOTE

$7,500,000.00                                                            June __, 2013

**FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of [_____] (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

1.  Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

2.  No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

3.  Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.      Optional Prepayments. The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.      Adjustment. In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs. The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.      Subordination. Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.      Enforcement. The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.      Amendments. No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy. This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.      Lost Notes, etc. If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

Error! Unknown document property name.

10.    <u>ASSIGNMENT</u>.  THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.    <u>Binding Effect</u>.  The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

Error! Unknown document property name.

**IN WITNESS WHEREOF,** the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By:_____

    Name:

    Title:

4

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 0 5 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

SAGI GENGER,

                Plaintiff,

         -v-

ORLY GENGER,

            Defendant.

------------------------------------------------------------ X

14-cv-5683 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      As Tolstoy famously wrote, "Happy families are all alike; every unhappy family is unhappy in its own way." Leo Tolstoy, Anna Karenina 1 (Constance Garnett trans., 1978). In the case of the wealthy Genger family, that unhappiness has taken the form of a seemingly never-ending series of lawsuits stemming from the divorce of Arie Genger and Dalia Genger, the family patriarch and matriarch, respectively. Together, Arie, Dalia, their son Sagi, and their daughter Orly[1] have employed a small army of lawyers to fight over the pieces of the family pie and, it seems, to make each other's lives as miserable as possible.

      This latest installment in the Genger family's litigation saga concerns a straightforward contract dispute between Sagi and Orly. Sagi alleges that he and Orly entered into a tri-party agreement with Dalia, under which Sagi and Orly would receive shares of stock in exchange for providing Dalia with financial support

---

[1] For the sake of clarity, in this Opinion the Court will refer to the members of the Genger family by their given names.

derived from the economic value obtained from that stock. Sagi contends that Orly has breached the agreement, and now seeks damages from her. Orly, for her part, denies the agreement's validity and enforceability, primarily because she claims she never actually received the promised shares of stock, which means that the agreement is not supported by consideration. But, as it turns out, Orly has effectively monetized an interest in the very shares she claims not to have received to the tune of $32.3 million.

Orly contends that this case is "an attempt to push the camel's nose under the tent flaps," and that Sagi and Dalia "hope to create a pipeline allowing them to siphon money from Orly for the rest of her life." (ECF No. 92 at 1.) The Court sees things differently: this case is a simple breach of contract action. Nothing more, nothing less.

Because there is no triable issue as to whether there was a valid and enforceable agreement supported by consideration, and for the reasons that follow, the Court GRANTS Sagi's motion for summary judgment, DENIES Orly's motion for summary judgment, and DENIES AS MOOT Orly's motion to disqualify and all pending motions in limine.

## I.    BACKGROUND

### A.    Factual Background[2]

The Genger family consists of father Arie, mother Dalia, son Sagi, and

daughter Orly.  (DSOF ¶ 5.)  Sagi is currently the President and CEO of TPR

Investment Associates, Inc. ("TPR").  (DSOF ¶ 4.)  In 2004, Arie and Dalia

divorced.[3]  (DSOF ¶ 5; PRSOF ¶ 5.)  As part of the divorce, Dalia agreed to convey

her marital rights to 794.40 shares of TRI to trusts benefiting Sagi and Orly (the

"Sagi Trust" and the "Orly Trust,"[4] respectively) in exchange for a commitment by

Sagi and Orly to financially support her.  This arrangement was effectuated via

three documents.

First, Dalia and Arie signed a stipulation of settlement finalizing the terms of

their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed

---

[2] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in connection with this motion for summary judgment and their supporting materials (ECF No. 34 ("PSOF"), 37 ("DSOF"), 51 ("DRSOF"), 52 ("DCMUF"), 55 ("PRSOF")), the factual materials submitted with the parties' letters dated November 25, 2014 (ECF Nos. 84-85), and public records of the parties' prior judicial proceedings.  The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible.  See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004). The Court recites only those facts relevant to the claims and defenses currently at issue, but also includes some factual allegations that are not material to the claims asserted but that are important to understanding the context for this case.  Some of defendant's responses fail to directly address straightforward factual allegations, and these failures are considered admissions as a matter of law. See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

[3] The divorce was finalized by a 2005 judgment.  (PRSOF ¶ 5.)

[4] The trusts are officially named the "Sagi Genger 1993 Trust" and the "Orly Genger 1993 Trust." (DSOF ¶ 26.)

on October 30, 2004.[5]  (PSOF ¶ 1; DSOF ¶ 7.)  In the 2004 Divorce Stipulation,

Dalia promised to convey equal interests in a total of 794.40 shares of TRI to the

Orly Trust and the Sagi Trust.  (PSOF ¶ 1; DSOF ¶ 27.)  The 2004 Divorce

Stipulation contains an "entire understanding" clause, which is subject to a carve-

out for other agreements expressly incorporated by reference and those "entered

into concurrently herewith."  (DSOF ¶ 24.)

    The second was a letter signed by Sagi and Dalia dated October 30, 2004 (the

"2004 Promise").  (PSOF ¶ 3; DRSOF ¶ 51.)  In the 2004 Promise, Sagi agreed to

pay Dalia up to an amount equal to all dividends, distributions, proceeds or other

payments attributable to the TRI shares, upon Dalia's demand.  (PSOF ¶ 3.)  The

2004 Promise also states that the agreement is made "in consideration of" the

following: "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of

[TRI], or beneficial[6] interests in those shares, by trusts for [their] benefit."  (DSOF

¶ 52.)  The parties dispute whether the 2004 Promise was intended to be integrated

with the 2004 Divorce Stipulation.  (See DRSOF ¶ 3.)

    At the time the 2004 Promise was signed, Orly was vacationing in Fiji, and

thus could not contemporaneously sign the 2004 Promise.  (PSOF ¶ 4.)  However,

---

[5] The 2004 Divorce Stipulation states that it is "made as of October 26, 2004."  (DSOF ¶ 7.)

[6] Beneficial ownership is "[a] corporate shareholder's power to buy or sell the shares, though the shareholder is not registered on the corporation's books as the owner."  Ownership, Black's Law Dictionary (9th ed. 2009); see also Cartica Mgmt. v. CorpBanca, S.A., No. 14–CV–2258 PKC, 2014 WL 4804491, at *15 (S.D.N.Y. Sept. 25, 2014) (explaining the definition of beneficial ownership under federal securities law).  Record ownership is determined based on who is "listed in the issuer's books as the owner of stock on the record date."  Stockholder of Record, Black's Law Dictionary (9th ed. 2009).

4

before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for 50% of the payments he would have to make under the 2004 Promise.[7]  (PSOF ¶ 4.)

The third agreement was a letter signed by Sagi and Orly dated November 10, 2004 (the "2004 Indemnity").[8]  (PSOF ¶ 5.)  In the 2004 Indemnity, Orly agreed to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . , including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]."  (PSOF ¶ 5.)

On August 22, 2008, Sagi-controlled TPR entered an agreement with the Trump Group to sell the Sagi Trust's shares of TRI to the Trump Group for $26.7 million.  (DSOF ¶ 34.)  Sagi also sold the Orly Trust's TRI shares to the Trump Group for approximately $10.3 million, subject to the condition that TPR was determined to be an owner of the shares.[9]  (DSOF ¶ 35.)

---

[7] In response to this factual allegation by Sagi, Orly counters that she does not remember a phone call with Sagi on the day of the divorce, and makes several non-responsive statements concerning the drafting and execution 2004 Promise and the 2004 Divorce Stipulation. (See DRSOF ¶ 4.) But she does not actually deny making this oral promise.

[8] At the initial case conference in the prior action, Orly's counsel stated that they believed the 2004 Indemnity was a forgery, and they would investigate this theory by, inter alia, using the services of an ink expert. (DRSOF ¶ 11.) The ink expert's examination of the 2004 Indemnity was also discussed at the October 31, 2014 status conference in the instant action; the Court ordered the parties to meet and confer regarding any outstanding issues with respect to expert discovery (ECF No. 48), and no such issues were subsequently raised with the Court.

Despite the considerable amount of discovery in this case, and her retention of an ink expert, Orly is unable to point to any admissible evidence suggesting that the 2004 Indemnity is a forgery. Further, in her briefing on this motion, Orly did not advance the argument that the 2004 Indemnity is a forgery or is otherwise inauthentic. Most importantly, in her Rule 56.1 responses, Orly does not affirmatively deny the existence of the 2004 Indemnity, or that she signed it. (See DRSOF ¶¶ 5, 11.) A party cannot create a genuine issue of material disputed fact through mere say-so and the hiring of an expert. There is accordingly no genuine issue of material disputed fact as to the authenticity of the 2004 Indemnity or as to whether Orly signed it.

[9] The parties dispute exactly what ownership interest was required by the condition. (See PRSOF ¶ 35.)

5

In 2011, the Supreme Court of Delaware affirmed a judgment invalidating the 2004 transfer of the TRI shares to the Orly Trust as to record ownership. Genger v. TR Investors, LLC, 26 A.3d 180, 198-200 (Del. 2011). As a result of this invalidation, record ownership of the TRI shares reverted to Sagi-controlled TPR. In that same decision, the Supreme Court of Delaware held that because the trial court lacked personal jurisdiction over the Orly Trust and TPR, it lacked the power to declare who beneficially owned the TRI shares, and therefore reversed the beneficial ownership determinations flowing from the trial court's orders. Id. at 203.

On June 16, 2013, Orly entered into a settlement agreement (the "2013 Settlement Agreement") with the Trump Group and others regarding her claims to ownership of the TRI shares. (ECF No. 84 ex. A ("2013 S.A.").) The agreement provides that Orly, Arie, and their litigation funders[10] will receive $32.3 million[11] in exchange for a declaration that the Trump Group owns "all right, title and interest (beneficially, of record, and otherwise)" to the TRI shares, and that Orly waives all of her claims to the TRI shares, both as a trust beneficiary[12] and individually. (2013 S.A. ¶¶ 2-4.) The 2013 Settlement Agreement does not waive any of the Orly Trust's claims. (See 2013 S.A. ¶ 4.) However, in the agreement Orly agreed to cause the Orly Trust to do the same. (2013 S.A. ¶ 8(a)(ii).)

---

[10] The 2013 Settlement Agreement refers to these parties collectively as the "AG Group." (2013 S.A. at 1.)

[11] The $32.3 million consists of $17.3 million in cash upfront, plus two additional $7.5 million payments to be made over four years. (2013 S.A. ¶¶ 2-3.)

[12] Specifically, as a beneficiary of the Orly Trust. (2013 S.A. ¶ 4.)

Then, on August 30, 2013, the Orly Trust (by Dalia), TPR, and the Trump Group agreed that "the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of [TRI]." (ECF No. 85 ex. 5 ¶ 2.) This stipulated agreement was so-ordered by the Delaware Court of Chancery. (ECF No. 85 ex. 5 at 7.) Subsequently, a court in this District and New York's First Department both concluded that this so-ordered stipulation determined the Trump Group to be the beneficial owner of the TRI shares. TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP, No. 13 Civ. 8243 (JFK), 2014 U.S. Dist. LEXIS 67116, *5-6 (S.D.N.Y. May 15, 2014); Genger v. Genger, 121 A.D.3d 270, 280 (N.Y. App. Div. 2014).

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise, which Sagi paid. (PSOF ¶¶ 6, 9.) On January 23, 2014, Sagi informed Orly of Dalia's demand.[13] (PSOF ¶ 7.) On February 17, 2014, Sagi demanded $100,000 from Orly under the 2004 Indemnity. (PSOF ¶ 10.) Orly refused to pay. (PSOF ¶ 11.) This lawsuit for breach of contract followed.

B.    Procedural Background[14]

1.    General procedural background.

Sagi initially filed a breach of contract action against Orly in this Court on February 18, 2014. (No. 14-cv-1006, ECF Nos. 1-2.) Orly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on May 2, 2014. (No. 14-cv-1006,

---

[13] Sagi first provided Orly's counsel with a written copy of Dalia's demand on January 29, 2014. (DSOF ¶ 60.)

[14] The Court recounts only the procedural history immediately relevant to the disposition of this motion.

7

ECF No. 9.) Orly then filed a motion to dismiss for lack of subject-matter jurisdiction under Rules 12(b)(1) and 12(h)(3) on May 29, 2014. (No. 14-cv-1006, ECF No. 24.) That same day, Sagi filed a motion for summary judgment. (No. 14-cv-1006, ECF No. 18.)

On July 22, 2014, the Court granted Orly's Rule 12(b)(1) motion[15] and dismissed the action without prejudice, after finding that diversity jurisdiction was inappropriate because both Sagi and Orly were domiciled in New York on the date the action was filed. (No. 14-cv-1006, ECF No. 52.) Two days later, on July 24, 2014, Sagi commenced the instant proceeding, which was initially assigned to Judge Caproni. (ECF No. 1.) On August 5, 2014, the case was reassigned to this Court, which set an accelerated schedule for discovery, briefing, and trial owing to the material similarity between this action and the previous one. (ECF No. 9.)

Orly filed a motion to dismiss under Rule 12 on August 27, 2014. (ECF No. 10.) The motion became fully briefed on September 18, 2014. (ECF No. 19.) The Court denied the motion on September 19, 2014, finding that (1) subject-matter jurisdiction over this action was appropriate; (2) Sagi had sufficiently alleged the elements of the causes of action; and (3) the parties' briefing revealed a host of factual issues outside the four corners of the complaint. (ECF No. 20.)

Both Sagi and Orly moved for summary judgment on October 20, 2014. (ECF Nos. 32, 35.) Sagi filed motions in limine on November 17, 2014. (ECF No. 59.) The following day, Orly filed motions in limine, (ECF No. 68), as well as a motion to

---

[15] The Court also denied as moot Orly's Rule 12(b)(6) motion to dismiss and Sagi's motion for summary judgment.

8

disqualify Sagi's counsel John Dellaportas from acting as counsel at trial on November 18, 2014, (ECF No. 65). Sagi and Orly submitted their oppositions to each others' motions in limine on November 24, 2014. (ECF Nos. 79, 81.)

Sagi then submitted his opposition to Orly's motion to disqualify on November 26, 2014. (ECF No. 89.) That same day, the Court issued an order stating its intention to decide the case on summary judgment, and adjourning the trial date and all other dates. (ECF No. 90.) The parties submitted reply briefs on December 5 and 6, 2014. (ECF Nos. 91, 92.)

2.   Motion to compel production of the 2013 Settlement Agreement.

On September 30, 2014,[16] Sagi filed a letter-motion to compel production of the 2013 Settlement Agreement. (ECF Nos. 22-23.) Orly filed her opposition to the letter-motion on October 3, 2014, (ECF No. 25), the same day she filed her Answer, (ECF No. 24). On October 7, 2014, the Court denied Sagi's letter-motion, based on its mistaken belief that the 2013 Settlement Agreement was irrelevant to the claims at issue. (ECF No. 26.)

Upon reviewing the parties' summary judgment briefing, the Court realized its mistake, and on November 18, 2014 the Court vacated the October 7, 2014 order and granted Sagi's letter-motion to compel.[17] (ECF No. 64.) In the November 18, 2014 order, the Court ordered the parties to submit three-page letters regarding the potential impact of the 2010 Settlement Agreement on the claims and defenses at

---

[16] Sagi filed the same letter twice; once on September 30, 2014, and again on October 1, 2014. (ECF Nos. 22-23.) An additional exhibit is attached to the October 1, 2014 version.

[17] This order refers to the 2013 Settlement Agreement as the "2010 Settlement Agreement."

issue not later than November 25, 2014. (ECF No. 64.) The parties submitted their letters on November 25, 2014. (ECF Nos. 84-85.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23. In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159,

166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In

seeking to show that there is a genuine issue of material fact for trial, the non-

moving party cannot rely on mere allegations, denials, conjectures or conclusory

statements, but must present affirmative and specific evidence showing that there

is a genuine issue for trial.").

Only disputes relating to material facts—"facts that might affect the outcome

of the suit under the governing law"—will properly preclude the entry of summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)

(the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts").

## III.  DISCUSSION

Under New York law, to recover for breach of contract, a plaintiff must prove

"(1) the existence of a contract between [plaintiff] and that defendant; (2)

performance of the plaintiff's obligations under the contract; (3) breach of the

contract by that defendant; and (4) damages to the plaintiff caused by that

defendant's breach." Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d

42, 52 (2d Cir. 2011) (citation omitted); see also Flomenbaum v. N.Y. Univ., 71

A.D.3d 80, 91 (N.Y. App. Div. 2009); Clearmont Prop., LLC v. Eisner, 58 A.D.3d

1052, 1055 (N.Y. App. Div. 2009). There is no triable issue as to whether all four

elements are satisfied in this case. Accordingly, the Court grants Sagi summary

judgment as to his breach of contract claim. There is also no triable issue as to

Sagi's promissory estoppel cause action, and so the Court grants him summary judgment on that alternative basis.

    A.   <u>Enforceability</u>

        1.   <u>Integrated agreement.</u>

Under New York law, "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." <u>This Is Me, Inc. v. Taylor</u>, 157 F.3d 139, 143 (2d Cir. 1998); <u>accord</u> <u>Madeleine, L.L.C. v. Casden</u>, 950 F. Supp. 2d 685, 695-96 (S.D.N.Y. 2013). Contracts that are executed at different times "should be interpreted together if 'the parties assented to all the promises as a whole so that there would have been no bargain whatever if any promise or set of promises had been stricken.'" <u>Commander Oil Corp. v. Advance Food Serv. Equip.</u>, 991 F.2d 49, 53 (2d Cir. 1993) (quoting 6 Samuel Williston & Richard A. Lord, <u>A Treatise on the Law of Contracts</u>, § 863:275 (3d ed. 1970)).  Whether multiple documents should be read as constituting a single agreement depends on the intent of the parties.  <u>TVT Records v. Island Def Jam Music Grp.</u>, 412 F.3d 82, 89 (2d Cir. 2005); <u>accord</u> <u>Commander Oil</u>, 991 F.2d at 52-53; <u>Madeleine</u>, 950 F. Supp. 2d at 696.  The intent of the parties is "typically a question of fact for the jury, . . . [b]ut if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." <u>TVT Records</u>, 412 F.3d at 89 (citation omitted).

In TVT Records, the Second Circuit determined two agreements to be integrated based, inter alia, on the fact that the documents were intended to effectuate the same result. Id. As the parties under the later agreement were obligated to honor all of the terms and conditions of the earlier agreement, the later agreement was "meaningless" without the first. Id. The fact that the documents were "negotiated and signed at different times, memorialized in different documents and involved different parties" did not dictate a contrary result, because these facts did not address "the legally operative question: whether the contracts were part of a single transaction intended to effectuate the same purpose." Id. at 90 (citations omitted).

Similarly, in This Is Me, the Second Circuit held that a jury was justified in reading two contracts together where they were executed "more or less" (but not exactly) concurrently, and where one of the two contracts stated that the two contracts were intended to be executed together, but the other contract did not. 157 F.3d at 145. The Court also noted that counsel for a defendant conceded in a letter that the two contracts were intended to be read together. Id.

The 2004 Promise and the 2004 Indemnity are sufficiently unambiguous such that there is no triable issue as to whether they form an integrated agreement, even though they were executed on different dates and were not all between the same parties, and in this sense no different than the agreements at issue in TVT Records. Indeed, neither agreement makes any sense without the promises expressed in the other. Without the 2004 Indemnity, Sagi could be obligated under the 2004 Promise

13

to pay Dalia double the economic benefit he received from his shares of TRI, and

Orly would effectively have received the shares as a gift. Further, the 2004

Indemnity explicitly attaches and cross-references the 2004 Promise, which makes

the situation here directly analogous to that in <u>TVT Records</u>, where the later

agreement was "meaningless" without the earlier one. <u>Id.</u> at 89.

There is accordingly no triable issue as to whether the documents were

"designed to effectuate the same purpose" and to "be read together." <u>This Is Me</u>,

157 F.3d at 143. For this reason, the Court will refer to the integrated agreement in

the rest of this Opinion as the "2004 Integrated Agreement.[18]

    2.   <u>Consideration.</u>

Under New York law, to be valid, a contract must be supported by

consideration. <u>Murray v. Northrop Grumman Info. Tech., Inc.</u>, 444 F.3d 169, 178

(2d Cir. 2006). Consideration to support an agreement exists where there is "either

a benefit to the promisor or a detriment to the promisee." <u>Hollander v. Lipman</u>, 65

A.D.3d 1086, 1087 (N.Y. App. Div. 2009) (quoting <u>Weiner v. McGraw-Hill, Inc.</u>, 443

N.E.2 441, 445 (N.Y. 1982)).

As a general matter, "[a] promise to perform a pre-existing legal obligation

does not amount to consideration." <u>Murray</u>, 444 F.3d at 178 (citing <u>Goncalves v.</u>

<u>Regent Int'l Hotels, Ltd.</u>, 447 N.E.2d 693, 700 (N.Y. 1983)). However, § 5-1105 of

New York's General Obligations Law provides:

---

[18] Orly vigorously disputes whether the 2004 Divorce Stipulation is integrated with the 2004
Promise and the 2004 Indemnity. However, Sagi does not contend that the 2004 Divorce Stipulation
is integrated with the 2004 Promise and the 2004 Indemnity (ECF No. 57 at 10), and so the Court
need not reach this issue.

> A promise in writing and signed by the promisor or by his
> agent shall not be denied effect as a valid contractual
> obligation on the ground that consideration for the
> promise is past or executed, if the consideration is
> expressed in the writing and is proved to have been given
> or performed and would be a valid consideration but for
> the time when it was given or performed.

N.Y. Gen. Obl. Law § 5-1105.

To meet § 5-1105's requirement that the consideration be "expressed" in the writing, the recitation of consideration must not be vague or imprecise.[19]  See United Res. Recovery Corp. v. Ramo Venture Mgmt., Inc., 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008); Movado Grp., Inc. v. Presberg, 259 A.D.2d 371, 371 (N.Y. App. Div. 1999); Umscheid v. Simnacher, 482 N.Y.S.2d 295, 297 (N.Y. App. Div. 1984).  For example, courts have held that the statements "past work on the Company's behalf" and "services rendered on the respondent's behalf" are too vague and imprecise to meet the expression requirement.  United Res. Recovery, 584 F. Supp. 2d at 656;

---

[19] In several cases, courts have stated that in order to recover under § 5-1105, "the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise." E.g., United Res. Recovery Corp. v. Ramo Venture Mgmt., Inc., 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008) (quoting Umscheid v. Simnacher, 482 N.Y.S.2d 295, 297 (N.Y. App. Div. 1984)); In re Maxwell Commc'n Corp., 198 B.R. 63, 69 (S.D.N.Y. 1996) (same); Kreuter v. Tsucalas, 734 N.Y.S.2d 185, 188 (N.Y. App. Div. 2001) (same).  The citation provided for this statement of law is typically the Second Department's decision Umscheid v. Simnacher, 482 N.Y.S.2d 295 (N.Y. App. Div. 1984), which in turn cited as support Sarama v. John Mee, Inc., 102 Misc. 2d 132 (N.Y. Civ. Ct. 1979), and Citibank National Ass'n v. London, 526 F. Supp. 793 (S.D. Tex. 1981), the latter of which cited only Sarama as support for this proposition.

However, Sarama in fact states that "[i]n order for plaintiff to recover for breach of contract, defendant's letter must contain an unequivocal promise to pay a sum certain, at a date certain, and, further, it must conform with General Obligations Law [§] 5-1105, by expressing in the letter the consideration for the promise." Sarama, 102 Misc. 2d at 133 (emphasis added). Sarama thus states that the requirement of "an unequivocal promise to pay a sum certain, at a date certain" is a general requirement for recovery for breach of contract under the facts of that case, not a requirement for recovery under § 5-1105. The Court further notes that the "sum certain" and "date certain" requirements are found nowhere in the text of § 5-1105, nor can they be implied from that text, and that New York's Court of Appeals has never embraced an interpretation of § 5-1105 encompassing those requirements.

15

Umscheid, 482 N.Y.S.2d at 297. By contrast, in Movado Group, Inc. v. Presberg, the Appellate Division of New York's First Judicial Department held that a commitment to pay all of a company's debts to a party on an "absolute, unconditional, and continuing" basis was sufficient to establish past consideration under § 5-1105, despite its being "a broad commitment, certainly not limited to one opening transaction." 259 A.D.2d at 371.

The 2004 Integrated Agreement clearly purports to provide each party with a benefit in exchange for a legal obligation: Dalia receives financial support in exchange for the transfer of the TRI shares to the Sagi Trust and the Orly Trust; Sagi receives an ownership interest in the TRI shares[20] in exchange for a commitment to financially support Dalia; and Orly receives an ownership interest in TRI shares in exchange for a commitment to indemnify Sagi.

Orly contends that the 2004 Integrated Agreement is not supported by consideration for two reasons. First, Orly contends that the 2004 Integrated is not supported by consideration because the Orly Trust never received the TRI shares. But the 2004 Promise states that Orly and Sagi are benefiting from receipt of either the TRI shares or "beneficial interests in those shares," by their respective trusts. (ECF No. 1 ex. A.) Thus, the question becomes whether Orly has benefited from the

---

[20] Sagi contends that the contract is supported by two forms of consideration: (1) the Orly Trust's receipt of the TRI shares as part of the divorce stipulation; (2) love, affection, and the end to parental strife. (Compl. ¶ 8.) The Court rejects Sagi's argument that the 2004 Integrated Agreement is supported by consideration because Orly received an emotional and psychological benefit in helping to bring about an end to her parents' bitter divorce. Affection, love, and feelings cannot constitute consideration under New York law. See, e.g., McRay v. Citrin, 706 N.Y.S. 2d 27, 28 (N.Y. App. Div. 2000); Rose v. Elias, 576 N.Y.S.2d 257, 258 (N.Y. App. Div. 1991); see also 22 N.Y. Jur. 2d Contracts §§ 116-17.

Orly Trust's receipt of beneficial interests in the TRI shares. There is no genuine dispute as to whether she has so benefited: Orly's claims to beneficial ownership of the TRI shares individually and as a trust beneficiary enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement Agreement. Further, no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares.[21]

Second, Orly contends that the TRI shares cannot serve as valid consideration because they had already been transferred when the 2004 Indemnity was signed, and they were transferred pursuant to the 2004 Divorce Stipulation, which is a separate agreement. This argument fails because the 2004 Integrated Agreement satisfies § 5-1105 of New York's General Obligations Law. The past consideration is precisely and unambiguously stated in the 2004 Promise, which states that "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for [their] benefit." (ECF No. 1 ex. A.) This statement is sufficiently precise and unambiguous so as to satisfy § 1105's expression requirement—indeed, this statement is considerably more exact than a promise to pay all of a company's debts on an ongoing basis, which was found to be sufficient in <u>Movado Group</u>. And as established above, there is no triable issue as to whether Orly was for all intents and purposes given a beneficial interest in the TRI shares.

---

[21] The Delaware Court of Chancery's beneficial ownership determinations were reversed by the Supreme Court of Delaware's July 18, 2011 decision. <u>Genger v. TR Investors, LLC</u>, 26 A.3d 180, 203 (Del. 2011).

Accordingly, there is no triable issue as to whether the 2004 Integrated Agreement was supported by valid consideration.[22]

B.    Defenses

There is no triable issue as to whether Orly has a viable defense to the 2004 Integrated Agreement.

    1.    Judicial estoppel.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001) (citation and internal quotation marks omitted).  The decision whether judicial estoppel should bar a litigant from making a particular argument is highly fact-specific.  See id. at 751.  Several considerations counsel in favor of applying the doctrine in a particular case: (1) the party's later position is clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept its earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Adelphia Recovery Trust v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014) (citing New Hampshire, 532 U.S. at 750-51).  However, "[b]ecause the doctrine is

---

[22] Orly makes much of the fact that the 2013 Settlement Agreement did not release the Orly Trust's claims to the TRI shares.  But this fact does nothing to disprove that Orly benefited from her claim to beneficial ownership of the TRI shares, and to the extent that it is relevant, it just provides further evidence that the Orly Trust had a legitimate claim to beneficial ownership of the TRI shares.

primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." Id. (alteration in original) (quoting Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 397 (2d Cir. 2011)).

Orly argues that Sagi should be judicially estopped from arguing that the Orly Trust received a beneficial interest in the TRI shares. However, in this case embracing Sagi's position runs no risk of endangering judicial integrity, as no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares. Further, there is no reason to believe that permitting Sagi to argue that the Orly Trust received the beneficial interest in the TRI shares would give Sagi an unfair advantage or impose an unfair detriment on Orly— indeed, embracing Orly's argument here would effectively allow her to avoid paying hundreds of thousands of dollars due under an otherwise valid agreement for a technical and formalistic reason unrelated to the equities of the situation. Accordingly, even assuming that Sagi has taken an inconsistent litigation position,[23] judicial estoppel does not bar Sagi from arguing that the Orly Trust received beneficial ownership of the TRI shares.

    2.   Mutual mistake.

"A contract is voidable under the equitable remedy of rescission if both parties entered into the contract under a mutual mistake of fact." Schultz v. Hourihan, 656 N.Y.S.2d 526, 528 (N.Y. App. Div. 1997). In order to obtain

---

[23] Given the strong rationale for not applying the doctrine of judicial estoppel here, the Court need not delve into the specific arguments advanced by Sagi or TPR in the course of their numerous years of prior litigation involving Orly and/or the TRI shares.

rescission of a contract due to mutual mistake, "it must be shown that the mistake in question is mutual, substantial, material and exists at the time the contract is entered." Rodriguez v. Mower, 56 A.D.3d 857, 858 (3d Dep't 2008) (citation omitted). In New York, a mutual mistake must be established by "clear and convincing" evidence. E.g., Carney v. Carozza, 792 N.Y.S.2d 642, 644 (N.Y. App. Div. 2005); Silver v. Gilbert, 776 N.Y.S.2d 867, 867 (N.Y. App. Div. 2004).

Orly first argues that if the 2004 Integrated Agreement is valid, it should nevertheless be rescinded because there was a mutual mistake as to whether Sagi and Orly were being treated equally in their parents' divorce. This argument fails because there was no mistake of fact here—the 2004 Divorce Stipulation and the 2004 Integrated Agreement explicitly provide for equal treatment of Orly and Sagi.

Orly further argues that the parties were mutually mistaken with regard to whether the interests in the TRI shares could be validly transferred to their trusts, such that they would receive equal interests in the TRI shares. This argument too fails, because as established above, the parties were in fact only mistaken as to their ability to receive and/or monetize record ownership in the TRI shares, and this mistake was not substantial or material because the money was clearly in the beneficial interest—Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million, while Sagi sold his interests in the TRI shares for $37.0 million.

In any event, rescission due to mutual mistake is an equitable remedy, and it would not serve the interests of equity to rescind the 2004 Integrated Agreement here, as doing so would enable Orly to obtain her benefit from the agreement (the

$32.3 million she received for the beneficial interest in the TRI shares) while escaping her obligations under it (her commitment to financially support her mother). Accordingly, the Court declines to rescind the contract under the doctrine of mutual mistake.

### 3.   Lack of opportunity to defend.

Orly argues that as an indemnitor she has no contractual duty to indemnify Sagi without first receiving notice and a chance to defend. Under New York law, an indemnitee cannot seek reimbursement from an indemnitor unless the indemnitee first notifies the indemnitor of a potentially covered claim and gives them an opportunity to defend against it. See Chase Manhattan Bank v. 264 Water St. Assocs., 634 N.Y.S.2d 687, 689 (N.Y. App. Div. 1995). However, notice to the indemnitor is not required if an indemnitee can "establish that [it] would have been liable and that there was no good defense to that liability." Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 900 N.Y.S.2d 246, 253 (N.Y. App. Div. 2010).

Although the parties do not dispute that Sagi twice informed Orly and her counsel of Dalia's demand prior to paying Dalia, they do dispute whether Sagi informed Orly of his intention actually to honor Dalia's demand. (See DRSOF ¶ 7; PRSOF ¶ 61.) Ultimately, however, even if Sagi did fail to properly notify Orly, notice was not required as a matter of law because Sagi had no good defense against Dalia's demand—the 2004 Integrated Agreement expressly gives Dalia the right to make such a demand and clearly obligates Sagi to pay it, and as established above there is no valid argument against the agreement's enforceability or validity. Accordingly, the parties' dispute over whether Sagi properly provided Orly with

21

notice does not preclude this Court from granting Sagi summary judgment as to the validity of the indemnification obligation as a matter of law.

C.    Performance, Breach, and Damages

The parties do not dispute that Sagi performed his obligations under the 2004 Integrated Agreement, as it is undisputed that Sagi paid Dalia $200,000. There is also no dispute as to whether Orly breached the 2004 Indemnity by refusing to pay Sagi, and nor is there a dispute that Sagi suffered damages of at least $100,000 as a result. Accordingly, because the 2004 Integrated Agreement is valid and enforceable, there is no triable issue as to whether all of the elements of Sagi's breach of contract claim are satisfied, and summary judgment is thus granted in Sagi's favor as to his breach of contract claim.

D.    Promissory Estoppel

Even if the 2004 Integrated Agreement were not valid and enforceable, Sagi is also entitled to equitable relief under the doctrine of promissory estoppel. "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."[24] Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (citing Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)).

---

[24] "New York courts limit promissory estoppel claims to instances of unconscionable injury only where promissory estoppel is invoked as a defense to the Statute of Frauds. . . . But New York courts generally do not require a showing of unconscionability where promissory estoppel is invoked to prevent injustice stemming from reliance on a gratuitous promise." Pearce v. Manhattan Ensemble Theatre, Inc., 528 F. Supp. 2d 175, 181 (S.D.N.Y. 2007) (collecting cases).

In the 2004 Indemnity, Orly made a clear and unambiguous promise to indemnify Sagi for "one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . , including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]." (PSOF ¶ 5.) There is no material dispute as to whether Sagi relied on this promise in paying Dalia, or that he sustained injury as a result of this reliance.

However, Orly argues that Sagi's reliance was not reasonable or foreseeable, because when he paid Dalia he was already aware that Orly disputed the validity and enforceability of the 2004 Integrated Agreement. This argument is unpersuasive. First, the time from which foreseeability is determined is when the promise is made, not the time of performance, and there is no genuine dispute as to whether it was foreseeable that Sagi would rely on the promise when it was made. Second, there is no genuine dispute as to whether Sagi's reliance was reasonable, because as explained above, Orly's position that the 2004 Integrated Agreement was invalid and unenforceable objectively lacked merit.

Orly argues that Sagi should be barred from recovering under a theory of promissory estoppel due to unclean hands. "The doctrine of unclean hands applies when the complaining party shows that the offending party is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." Kopsidas v. Krokos, 742 N.Y.S.2d 342, 344

23

(N.Y. App. Div. 2002) (quoting Nat'l Distillers & Chem. Corp. v. Seyopp Corp., 17 N.Y.2d 12, 15-16 (N.Y. 1966)) (internal quotation marks omitted).  Orly argues that Sagi's hands are unclean because under his Presidency, TPR was obligated to effectuate the transfer of the TRI shares to her, and failed to do so.  However, on July 24, 2014, the Appellate Division of New York's First Judicial Department held that as an officer of TPR, Sagi's fiduciary duty was to the corporation and its stockholders, and that Sagi had not breached any duty to Orly in failing to honor the agreement to transfer the TRI shares to her trust. Genger v. Genger, 121 A.D.3d 270, 278-79 (N.Y. App. Div. 2014).  Sagi's behavior here is consistent with his duty to TPR and its shareholders, and does not rise to the immoral or unconscionable level required to bar him from relief under the doctrine of unclean hands.

Accordingly, there is no triable issue as to Sagi's promissory estoppel claim, and Sagi is granted summary judgment on that cause of action in addition to his breach of contract cause of action.

IV.    CONCLUSION

For the above reasons, the Court GRANTS Sagi's motion for summary judgment, DENIES Orly's motion for summary judgment, and DENIES AS MOOT Orly's motion to disqualify and all pending motions in limine.

The Clerk of Court is directed to close the motions at ECF Nos. 32, 35, 59, 65,

and 68 and to terminate this action.

SO ORDERED.

Dated:     New York, New York
           January 5, 2015

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge

25

```
 1

 2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK:  CIVIL TERM:  PART:  12
 3    -------------------------------------------X
      ARIE GENGER and ORLY GENGER, in her
 4    individual capacity and on behalf of
      THE ORLY GENGER 1993 TRUST,
 5
                              Plaintiff(s),
 6
                                                    INDEX NO.
              -against-                             651089/10
 7
      SAGI GENGER, TPR INVESTMENT ASSOCIATES,
 8    INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST,
      ROCHELLE FANG, individually and as trustee
 9    of THE SAGI GENGER 1993 TRUST, GLENCLOVA
      INVESTMENT COMPANY, TR INVESTORS, LLC.,
10    NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
      JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,
11
                              Defendant(s).
12    -------------------------------------------X
      SAGI GENGER, individually and as assignee of
13    THE SAGI GENGER 1993 TRUST, and TPR
      INVESTMENT ASSOCIATES, INC.,
14
                          Cross-Claimants, Counterclaimants
15                        and Third-Party Claimants,

16            -against-

17    ARIE GENGER, ORLY GENGER,
      GLENCOVA INVESTMENT COMPANY,
18    TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
      NEW TR EQUITY II, LLC., JULES TRUMP,
19    EDDIE TRUMP, MARK HIRSCH,
      TRANS-RESOURCES, INC., WILLIAM
20    DOWD, and THE ORLY GENGER 1993 TRUST,

21                        Cross-Claim, Counterclaim and/or
                          Third-Party Defendants.
22    -------------------------------------------X
                          80 Centre Street
23                        New York, New York 10007
                          March 25, 2015
24
      B E F O R E :
25
      THE HONORABLE BARBARA JAFFE,
26                                      J U S T I C E
```

*Eric Allen*
*Official Court Reporter*

1

2    **A P P E A R A N C E S:**

3    MITCHELL, SILBERBERG & KNUPP, LLP
     Attorneys for Arie Genger
4    12 East 49th Street
     New York, New York 10017
5    BY:  PAUL D. MONTCLARE, ESQ.

6

7    ZEICHNER ELLMAN & KRAUSE, LLP
     Attorneys for Plaintiff Orly Genger
8    1211 Avenue of The Americas
     New York, New York 10036
9    BY:  YOAV M. GRIVER, ESQ.

10

11   JUDITH LISA BACHMAN, ESQ.
     Attorney for Defendant Dalia Genger
12   254 South Main Street
     New City, New York 10956

13

14

15   MORGAN, LEWIS & BOCKIUS, LLP
     Attorneys for Defendant TPR Investments
     101 Park Avenue
16   New York, New York 10178
     BY:  JOHN DELLAPORTES

17

18                                          .

19

20

21

22

23

24

25

26

                          *Eric Allen*
                   *Official Court Reporter*

1

2          THE COURT:  So, this is your motion,

3   Ms. Bachman.

4          MS. BACHMAN:  It is, your Honor.

5          Good morning.

6          THE COURT:  Good morning.

7          MS. BACHMAN:  So, this motion has been pending

8   for a long time, so I want to make sure that the Court

9   is aware of sort of the context in which our --

10          THE COURT:  What happened in surrogates?

11   Nothing yet from --

12          MS. BACHMAN:  It has not -- Dalia is still the

13   trustee.  The court has required further proceedings

14   with regard to making sure that the Sagi Trust is

15   included in the matter, so it remains at the status quo

16   that Dalia is still the trustee.

17          THE COURT:  Do you know when -- is there any

18   clue as to when that case is going to be decided?

19          MS. BACHMAN:  I do not know, your Honor.

20          MR. GRIVER:  Your Honor, the only relevant

21   happening, I think, in the case, is that the surrogate

22   court appointed a guardian for the children who are the

23   remainder -- continuing remainderment for the Sagi

24   trust and he filed, I believe last week, position

25   papers saying that he agrees with our position that

26   Dalia should be removed as trustee and that she has

*Eric Allen*
*Official Court Reporter*

1

2       violated her obligations.

3               THE COURT:  Okay, but that's not part of the

4       record before me right now.

5               MR. GRIVER:  That is -- no.  The remainderment

6       for the -- excuse me.  The remainderment for the Orly

7       Trust.

8               THE COURT:  Yes.  That I understand.

9               MR. GRIVER:  We can certainly file it with the

10      Court.  We think it is a subsequent document that has

11      relevancy to these proceedings if your Honor thinks so.

12              MS. BACHMAN:  And, obviously, that issue hasn't

13      been adjudicated and, as the Court noted, is not part

14      of the record.

15              So, with that caveat in mind, I think it is

16      important to understand the context of what's happened

17      here.

18              When we brought this motion, I think, back in

19      August of last year, we had not yet seen the settlement

20      agreement and the Federal Court had not yet opined on

21      the effect that they believed that the settlement

22      agreement had on what Orly gained from the Orly trust

23      shares.  So, as part of this motion, I have included

24      Judge Keenan's two decisions which opine and conclude

25      that the settlement agreement is a monetization of

26      Orly's -- the Orly Trust shares.  Essentially, she

1

2   traded the trust shares as part of the settlement and

3   acknowledged that the Trump Group is the owner --

4        THE COURT:  Was it in Keenan's decision or was

5   it Forest's?

6        MS. BACHMAN:  I apologize, thank you.  Yes,

7   Forest.  I could tell by your face that I had gone

8   astray, so I appreciate it.

9        Judge Keenan's decision --

10        THE COURT:  No, Judge Forest.

11        MS. BACHMAN:  Sorry, Judge Forest's decision.

12   Delete Keenan from the record.

13        So, based on that decision, it is now our

14   understanding with that decision that the settlement

15   agreement was basically the exchange:  The Orly Trust

16   interest in the shares for a whole bunch of money.

17        The Trump Group had been consistent before this

18   Court in acknowledging that they viewed the settlement

19   as the settlement of the interest of the Orly Trust

20   shares and that it was an exchange of money for those

21   shares.  They effectuated that and acknowledged that by

22   encouraging and asking the Delaware chancery court to

23   dismiss and acknowledge that the shares now belonged to

24   the Trumps.

25        Orly's attorneys have taken somewhat interesting

26   turns along the way.  Before this Court, when this

1

2    Court was hearing the issue of whether it should so

3    order the settlement, Mr. Griver, I believe, argued

4    that, no, we are not settling the trust claims and, in

5    fact, quote, "Dalia can pick up the cudgel."

6         The Court said in it's decision, look, I can't

7    tell whether the trust shares -- whether the trust

8    claims are dismissed or not as part of the settlement

9    and until I get clarification, you accurately stated, I

10   believe, I cannot tell who the settlement proceeds

11   belonged to.  I can't tell whether they belong to the

12   trust or to Orly individually.  So, the Court invited

13   the parties to clarify who they viewed as the settling

14   parties and whether the trust had dismissed its claims

15   or not.

16        None of the settling parties acceded to the

17   Court's invitation and with that ambiguity, we were

18   left to protect the interests of the trust.  We brought

19   this motion seeking first for Dalia to be substituted

20   in if claims remained since Orly has stepped back and

21   said that she is no longer prosecuting the case as a

22   derivative plaintiff.  And under well-settled New York

23   law, if a derivative plaintiff is no longer prosecuting

24   the action on behalf of the principal, then it is

25   appropriate for a party to be substituted who has an

26   actual interest in protecting that principal.  That

1
2          would be, obviously, the trustee of the trust.

3               Likewise, as a second branch and perhaps now

4          more importantly, we simultaneously moved for the

5          settlement proceeds to be paid into court pending an

6          allocation and determination of who that money belongs

7          to and that's why we are before you today.

8               We now have seen the settlement agreement and it

9          seems to confirm and be consistent with the Trump

10         Group's position that they intended to and did settle

11         all of the claims including, most importantly, the

12         trust claims and at the end of the day that's what they

13         bought and paid for:  The trust shares.  And if they

14         bought and paid for the trust shares, the money belongs

15         to the trust.

16              Thank you.

17              MR. ALLINGHAM:  Your Honor, I don't know who

18         should speak next, but I think it would be helpful I

19         should speak next to make clear submissions.

20              MR. GRIVER:  No objection.

21              MR. ALLINGHAM:  Tom Allingham for the Trump

22         Group.

23              The settlement agreement settles claims.  It

24         doesn't buy shares.  The shares had already been

25         purchased as the Delaware court has found, pursuant to

26         an agreement that was entered into back in 2008 and the

1

2    closing on those shares was 2012 or '13, '11, whenever.

3    Those shares had been purchased a long time ago.  There

4    remained claims of the Orly trust against the Trump

5    Group and that's what was settled in the settlement

6    agreement.  We paid money for a release of claims that

7    Arie, Orly and the Orly Trust had against the Trump

8    Group and that's what we paid the money for, so that's

9    point number 1.

10        Point number 2:  I think this is an unusual

11   situation, at least in my experience.  The moving party

12   now agrees with the position that we've taken since the

13   settlement agreement was entered into in June of 2013

14   that among the claims that we purchased a release of,

15   among the claims that we settled were the claims of the

16   Orly Trust and so the relief that is sought -- there

17   were two forms of relief sought in the motion, as

18   Ms. Bachman said.  One was, "I want to intervene to

19   pursue these claims."  That form of relief we oppose.

20   Because those claims have now, as conceded, I think, by

21   everybody -- everybody agrees that they were released,

22   there are no claims currently pending and, in fact,

23   there are no claims that could be pending into which

24   Dalia could intervene.  So, the motion --

25        THE COURT:  There is nothing to --

26        MR. ALLINGHAM:  Correct.  There is nothing

1

2       there, nothing to intervene in, so the motion to

3       intervene should be denied.

4              THE COURT:  It's a motion to be substituted.

5              MR. ALLINGHAM:  To be substituted.  I think of

6       it as an intervention motion, but, yes, your Honor.

7              And I don't think that if you look at the

8       papers, anybody really disputes that.  In Dalia's

9       brief, she says it has now been definitively revealed

10      that Orly settled the Orly Trust's claims against the

11      Trump Group.  In the Sagi submission, not a brief but

12      an affirmation from Mr. DellaPortas, it's the same

13      thing:  "Having finally seen the settlement agreement,

14      it is eminently clear that there is no cudgel for Dalia

15      to pick up.  The claims" -- and these are the claims of

16      the Orly Trust -- "were released, as Mr. Allingham had

17      correctly told the Court in his June 2013 letter."

18             So, where does that leave us?  That leaves us

19      with the second form of relief, which is should any

20      form of relief be entered against the settlement

21      proceeds that have either -- that have either been paid

22      or may in the future be paid pursuant to the settlement

23      agreement.

24             With respect to the 18 or so million dollars --

25      I think it's actually 17 and a quarter million dollars,

26      but the money that's already been paid in cash, we

*Eric Allen*
*Official Court Reporter*

1

2       don't have it.  We have no claim to it.  We take no

3       position on that money.  The Court may or may not have

4       jurisdiction to enter relief against whoever has got

5       that money, but we don't know who it is.  We know who

6       we paid it to, but we don't know who has the money now.

7           With respect to the remaining settlement

8       proceeds that may be paid in the future, that is in the

9       form of two notes; each in the principal amount of 7

10      and a half million dollars.

11          There are a number of conditions that may affect

12      the maturity date of those notes.  They have a nominal

13      maturity date of June of 2016 and June of 2017, but

14      they could be accelerated or extended.

15          Also, we have a contractual right to set off any

16      unpaid indemnification amounts under the settlement

17      agreement.  In the settlement agreement, we paid not

18      only for releases from Arie, Orly and the Orly Trust,

19      but we also paid -- so that's peace from those three

20      parties -- but we also paid for an indemnification from

21      Arie, Orly and the Orly Trust against any defense

22      costs, settlement payments or judgments in a broad

23      array of actions that could be brought by any Genger

24      family member.  So although we couldn't buy complete

25      peace, we tried to buy an insurance policy against the

26      peace that remained out there.

*Eric Allen*
*Official Court Reporter*

1

2          So, we have a setoff right against -- we have a

3     contractual obligation to pay on those notes.  When

4     that will come due is determined by a lot of factors.

5     When they come due, we have a contractual right of

6     setoff against the $15 million face amount of those

7     notes.

8          And so, with respect to the future payments,

9     what I would say is this:  No payment is due now, so I

10    think any relief on the future payment would be

11    premature.

12         To the extent any relief were to be entered now

13    as to these future payments, it shouldn't be entered

14    against the Trump Group which has a contractual

15    obligation to pay the payee.  It should either be

16    entered in the nature of an in rem remedy against the

17    notes themselves, deliver them to you or whatever, or

18    it should be entered and directed at the payee that

19    we're contractually obligated to pay, rather than to

20    direct it to the Trump Group which would abrogate our

21    contractual obligation to pay under the note.

22         So that's our position.

23         THE COURT:  Thank you.

24         MR. ALLINGHAM:  Thank you, your Honor?

25         THE COURT:  Who is next?  You don't have to

26    stand, Mr. Griver.

*Eric Allen*
*Official Court Reporter*

1

2          MR. GRIVER:   Thank you, your Honor.   I am

3     sometimes better when I stand.

4          A lot of times, this case has become somewhat

5     surreal, but I think this motion takes the cake.   There

6     is a museum in Cairo, Egypt called the October War

7     Museum that is dedicated to the proposition that Egypt

8     won the 1973 Yom Kippur war.   It looks like a museum.

9     You go in, there are exhibits on the second floor, you

10     can watch a film on the third floor.   There is a

11     diorama -- it's really nice.   It is a moving diorama,

12     360 degrees, all dedicated to the idea that Egypt won

13     that war; right?   Only problem is it's not true.

14          So, you go to someone who is at the museum, you

15     know, a guide and you say, well -- but Egypt lost the

16     war.   And he says, no, no, but look at that piece of

17     paper, look at that newspaper article where it says it

18     won.   Look at this piece of shrapnel.   Look at this

19     tank we captured from the Israelis; all of this proves

20     that we won; right?   And you can buy T-shirts and

21     everything and it looks real until you really look at

22     it and you realize that they are only talking about the

23     first day of the war and they completely ignore 99

24     percent of what happened; okay?

25          Mr. Allingham gets up here and says, oh, well,

26     we settled with the Trump -- we settled with the Orly

1

2   Trust; right?  Well, you know what?  You have to look

3   at the language of the CSA because the Orly Trust is

4   expressly excluded from the settling parties.

5   Mr. Allingham tried to get the trust claims included

6   and the Orly Trust included --

7          THE COURT:  Which Orly entities settled?  There

8   is three in all, I take it?

9          MR. GRIVER:  No.  There is the AG Group settled

10   so the Brosers settled, Arie settled --

11          THE COURT:  I don't consider them -- the Orly

12   people are Orly individually, Orly as beneficiary of

13   the trust and the Orly Trust; is that right?

14          MR. GRIVER:  Orly settled and it says it right

15   there:  Orly Genger in her individual capacity and in

16   her capacity as beneficiary of the Orly Genger 1993

17   trust.

18          THE COURT:  And as beneficiary.

19          MR. GRIVER:  And as beneficiary.

20          But the Orly Trust itself is expressly excluded

21   from the A.G. Group settling parties and is expressly

22   defined as a member of the nonsettling Sagi Group.

23          THE COURT:  Is that your understanding,

24   Mr. Allingham?

25          MR. GRIVER:  That is Page 3, by the way.

26          MR. ALLINGHAM:  It is, your Honor.  That is the

*Eric Allen*
*Official Court Reporter*

way the agreement reads.

　　　　When Justice Feinman in --

　　　　THE COURT:  That's the end of it.  So the Orly Trust is not settled.

　　　　MR. GRIVER:  That is the language that he signed in exchange.

　　　　MR. ALLINGHAM:  It's more complex than that.

　　　　MR. GRIVER:  You know what else is in that?  Any changes to that have to be in writing, agreed to by all the parties, and we don't agree and there is no writing.  He is talking about what he wanted and there is also a -- where everything, all prior agreements, et cetera, are merged.  There is a merger clause in there, as well.

　　　　THE COURT:  Oh, no, do I perceive another action or motion?

　　　　MR. GRIVER:  No, I don't believe so, your Honor, because here's what also happened.  There was a second amended stipulation of dismissal where we crossed out, by hand, because it was mistakenly put in -- crossed out by hand and your Honor was concerned about it and that's why it became the second amended stipulation of dismissal because that language was taken out.  And the language that was taken out was any idea that the Orly Trust settled the claims as part of that confidential

1

2    settlement agreement, the Orly Trust was removed and,

3    indeed, the Orly Trust remained -- the claims of the

4    Orly Trust remained, specifically in that second

5    amended stipulation of dismissal, which allowed the two

6    injunctions -- the injunctions against the Trump Group

7    and the injunctions against everybody else, including

8    Dalia Genger -- to pursue her claims in Delaware --

9         THE COURT:  So you agree with Ms. Bachman on

10   that; that the Orly Trust claims remain and --

11        MR. GRIVER:  The Orly Trust claims remain --

12        THE COURT:  So the only issue remains, of

13   course, whether Dalia should be substituted, which I

14   take it -- but you say the trust claims remained --

15   does everybody agree?

16        MR. GRIVER:  No, it remained.  The second

17   amended stipulation of dismissal, which dismissed

18   Orly's claims as an individual and as a beneficiary is

19   what happened in this court.  As part of that

20   stipulation, the claims of the Orly Trust were not

21   settled -- were not dismissed and Ms. Bachman and Dalia

22   were permitted to reinvigorate a lawsuit in Delaware

23   that they had commenced claiming the right to the

24   shares and go moving against the Trump Group and TPR,

25   et cetera; right?

26        We had gotten those stayed previously because

*Eric Allen*
*Official Court Reporter*

1

2      our concern was that Dalia would not vigorously pursue

3      those claims on behalf of the Orly Trust.

4             Dalia went down to Delaware, immediately settled

5      with TPR and with the Trump Group.  Now, if her claims

6      had already been settled two months before, then what

7      was she doing down in Delaware?  But she went down to

8      Delaware.  She didn't come in at the time and say, hey,

9      wait a second, wait a second, I want my moneys.  No.

10     She went down to Delaware, settled with everybody else,

11     TPR and the Trump Group, and it was that settlement

12     that caused the 1st Department to dismiss the claims

13     here because they said there is nothing left because of

14     the Delaware stipulation.

15             So, Dalia has already taken care of it and

16     because of that there are no claims left.  The Court of

17     Appeals has so ruled, the 1st Department has so ruled

18     that the fact that we are here arguing about her

19     attempt to substitute herself in when she settled

20     already as a trustee -- she gets one chance to settle.

21     We gave you the Delaware stipulation.  That's what she

22     says.  She makes findings of fact that are -- that help

23     Sagi.  She makes statements that help Sagi and then

24     finally she settles all of her claims on behalf of the

25     trust claiming to properly represent the trust.

26             Now, that's something that we are going to raise

*Eric Allen*
*Official Court Reporter*

1

2    up in the surrogate's court.  That is another example

3    of Dalia misusing her power as trustee, but that has no

4    bearing on this.  There are no claims left because the

5    Orly trust settled her claims in Delaware and Orly

6    individually and as beneficiary settled the claims with

7    the Trumps in the confidential settlement agreement.

8         The money that they are trying to get now is

9    above the $10 million that the Delaware settlement

10   caused to be given to TPR and that's the Keenan

11   decision.  The Keenan decision was, well, now that the

12   Delaware stipulation exists and the Orly Trust is

13   decided, that everything's okay with the Orly Trust,

14   well, then the sale of the shares back in 2008, the

15   proceeds go to TPR.  It's in our papers.

16        THE COURT:  I am shaking my head nodding just to

17   the extent that I understand what you are saying.

18        MR. GRIVER:  Right, okay.

19        Very simply, Orly settled with the Trumps in

20   June.  The Orly Trust settled with the Trumps in

21   August, two months later.

22        Now, we go to -- and the main point, your Honor

23   is there are no claims left and since there are no

24   claims left, her substitution motion just fails.  It's

25   that simple.

26        Then we go to the second part of her claim,

*Eric Allen*
*Official Court Reporter*

which is CPLR 2701.  She wants the proceeds of Orly's settlement with the Trumps to be paid into court and she just can't do that.  Most attorneys, I think, would simply read the language of the statute to determine that the language of the statute bars their ability to bring a motion and stop right there, but that's not what happened here.  What happened here is that they proceeded nonetheless.  And the motion to have the proceeds paid in court doesn't work because under CPLR 2701, that CPLR provision, your Honor, is designed very narrowly to take care and protect moneys that are the subject of an action.  And there are three sub parts.

First of all, it has to be the subject of an action.  The moneys that are the settlement with the A.G. Group but not the Orly Trust are not part of the 2010 case which, in any event, no longer exists.

But you can go and look at each one of the individual subparagraphs and see that it doesn't work.

The fourth one is if a third party is a trustee and is holding the money, like the comptroller of the -- the State comptroller.  The State comptroller has, let's say, death benefits.  The person has died.  It is claimed both by the beneficiary of the will and by the ex-wife who is named in the policy for the death benefits.  They are fighting over that specific sum of

money and the comptroller has to pay it to somebody so he pays it into court on a monthly basis until the court rules does widow A get it or widow B get it. That's clearly not the situation here.

The second one is where there are special circumstances that make it desirable that payment be made to -- that payment be made into the court instead of two the parties. Well, as Mr. Allingham correctly noted, some of the money has already been paid, some of the money will be paid and there are no special circumstances here that should delay any of that. There is no evidence that they have come in that said that there is a special circumstance that requires the court to protect the moneys. There is not even a claim against those moneys in a court of law.

Third is the situation where ownership of the property will depend on the outcome of the pending action. That also is inapplicable here. There is no pending action, number one. And, number two, even if there was, you can look at all the counterclaims, all of the cross-claims, all of the original claims, none of it has to do with the confidential settlement agreement so it simply does not apply.

And it can't serve as a legal basis for what Dalia is attempting to do. She made her own decision

1

2          to settle and she settled it as she saw fit; in a way

3          that was destructive to Orly and we'll take care of

4          that later, but in a way that she decided to settle

5          those claims.  There is a stipulation in Delaware and

6          they ignore that.  They ignore the second amended

7          stipulation of dismissal in this court and what

8          happened -- the fact that they went ahead and then used

9          that stipulation to say, oh, there are still claims for

10         Orly Trust.  Now they are claiming that the Orly Trust

11         claims didn't even exist at the time that they went

12         into Delaware and how is that possible?  And

13         Mr. Allingham chooses to ignore the actual language of

14         the confidential settlement agreement which he cannot

15         do because he negotiated that language, he chose to

16         have his client sign that language and for him to come

17         in and say well let me explain to you how the language

18         should be ignored is improper, entirely so.

19              So, I am going to sit down and say nothing else.

20         Thank you.

21              MR. MONTCLARE:  Thank you, your Honor.  Paul

22         Montclare for Arie Genger.

23              I have just a few things to say.  I have to say

24         I agree with everything that Mr. Griver said.  It's not

25         to have him back in the courtroom.

26              It seems to me that we can address this really

*Eric Allen*
*Official Court Reporter*

1

2      pretty simply.  There is no action for her to

3      substitute into.  I mean, how can you substitute into

4      an action that's been completely dismissed, has been

5      completely affirmed, there is now no leave-to-appeal

6      motion pending to the Court of Appeals.  She is going

7      to be substituted in for Orly who lost the case against

8      the Trumps who are no longer in the case.  I mean, that

9      should end the whole analysis.  I don't understand why

10     we need to go past that.

11          The issue with respect to the confidential

12     settlement agreement, on behalf of Arie Genger, we were

13     a party to that agreement and they want to come in and

14     interfere with our property rights by just saying, oh,

15     we want it paid into court.  What action is there to

16     deprive us of our property rights being brought by --

17          THE COURT:  Well, I think what Mr. Griver

18     mentioned in his list of subdivisions of 2701, the only

19     one that piqued any interest was special circumstances,

20     so what about that?

21          MR. MONTCLARE:  But there are no -- there has to

22     be an existing action, your Honor.  There is no

23     existing action.

24          THE COURT:  So that -- you still need an

25     existing action for there to be special circumstances.

26          MR. MONTCLARE:  Yes.  Otherwise what do we just

1

2   have people walking in off the street and into court

3   and asking for an application to pay it into court?

4              THE COURT:  It happens all the time.

5              MR. MONTCLARE:  They could have early on tried

6   to get an attachment of that.  They could have done a

7   lot of things but the procedural mechanism they have

8   chosen is a little unusual.

9              But it's not grounded in anything.  I think --

10  and also, it proceeds from a false assumption of what

11  their -- what they conceded in Delaware, which I am not

12  going to repeat; why we settled with Mr. Allingham's

13  clients in Delaware at a time when there are open

14  issues that made settlement possibility.  Much to my

15  great disappointment, that is no longer the case.  That

16  case is over against the Trumps.  It's over.

17             And the reason she wants to substitute in is to

18  basically to sue the Trumps.  And that makes no sense

19  at all to me.

20             THE COURT:  Okay, thank you.

21             I think --

22             MR. DELLAPORTAS:  Very briefly, your Honor.

23             Three quick points:

24             Number 1, Orly Genger brought claims in this

25  case on behalf of the Orly Genger 1993 Trust.

26             Number 2, Orly Genger and her father got or are

*Eric Allen*
*Official Court Reporter*

going to get $32.3 million in settlement of those claims and, number 3, those claims are no more and we join in Ms. Genger's -- Mrs. Dalia Genger's position that the money should be paid into court.

Subject to that, we respectfully disagree with the comments of Mr. Montclare and Mr. Griver, except to the extent that Mr. Griver described the Cairo museum, which I have been to as well and I think it is an accurate description of it.

And with that, we rest on our papers.

THE COURT: Thank you.

MS. BACHMAN: May I add something, your Honor?

THE COURT: Sure.

MS. BACHMAN: With regard to, I think, the Court's very pointed question to Mr. Griver and Mr. Allingham, who were the settling parties? And I think the Court described, at least conceptually, three possibilities: Orly as beneficiary and Orly individually --

THE COURT: Those were settled.

MS. BACHMAN: Apparently. Apparently that's what Mr. Griver is saying.

THE COURT: Signed, sealed, delivered. You saw the agreement.

MS. BACHMAN: I have now seen the agreement.

1

2        The mystery party is what happened to the Orly

3    Trust.

4        THE COURT:  And that was in Delaware.  Kaputski

5    (phonetic) in Delaware; no?

6        MS. BACHMAN:  As I understand it, this case was

7    a derivative case presently pending today.  That's what

8    Orly described in her complaint, her claims to be.  She

9    is bringing this action, quote, "on behalf of the Orly

10   Trust as beneficiary of the Orly Trust to protect her

11   interest thereunder."  Her claim, as I understand it --

12   and unfortunately you have had a longer tenure in this

13   than I have -- but as I understand, it were purely

14   derivative claims.  I understand that she said in the

15   caption Orly Genger individually and on behalf of the

16   Orly Trust but the real claims were with regard to what

17   was done with the Orly Trust shares.  For them to say

18   she settled as a beneficiary and somehow that's

19   different than the trust is a distinction without a

20   difference.  If you are a beneficiary, you are, I

21   believe, saying I have a derivative right to sue

22   because the trust is not protecting my interest as the

23   beneficiary.

24       I don't understand how you can split that

25   difference and say, no, the beneficiary is something

26   different than the trust.  They have to be merged and

1

2          that's what she did in her complaint.

3                  And the entire settlement agreement is replete

4          with all of those references.

5                  It says, in defining who the A.G. Group is, that

6          Orly Trust, in quote, "all her capacities."  It doesn't

7          say in her individual capacity --

8                  THE COURT:  What about the second agreement?

9          Are you focusing on the second?

10                 MS. BACHMAN:  I am looking at what I believe to

11         be the actual -- the CSA.

12                 THE COURT:  The one where there is a writing, "I

13         wrote in" or something.

14                 MS. BACHMAN:  Correct.

15                 THE COURT:  I'm on Page 1 of that.

16                 MS. BACHMAN:  I am actually looking at the

17         settlement agreement itself, what she actually did.  On

18         Page 1 of that settlement agreement, it says -- it

19         defines Orly as "Orly Genger in all capacities."

20                 So, while they may be playing convenient word

21         games here -- I hope they are not -- but the settlement

22         agreement itself belies what I believe Mr. Griver is

23         trying to convince this Court of; that somehow there is

24         this distinction, this magical distinction that he is

25         now conveniently drawing which they weren't drawing in

26         the settlement agreement itself.

*Eric Allen*
*Official Court Reporter*

1

2          THE COURT:  Even assuming you are right, which I

3    am not sure you are, but assuming you are right, so

4    what?  If it was all settled, if two of the entities

5    settled in one way or the other and then Dalia went

6    down and settled with the Trump Group and TPR in

7    Delaware, what's left and why is there something left?

8    That's what I want to know.

9          MS. BACHMAN:  At least as I understand the

10   context of the Delaware settlement, it was motivated --

11   and if you look at the confidential settlement

12   agreement, it calls for the settlement of that Delaware

13   case.  It says go settle that case.  Orly --

14         THE COURT:  It doesn't say go settle it.  It

15   says something else; right?

16         MR. MONTCLARE:  Cooperate.

17         MR. GRIVER:  Cooperate.

18         MS. BACHMAN:  It says Orly will cause.

19         THE COURT:  Cause.

20         MR. GRIVER:  No, Orly will take efforts to

21   cause.

22         THE COURT:  Something like that.  It's a little

23   squishy.

24         MS. BACHMAN:  A little squishy, but the concept

25   is clearly there.  If he wants to look at the words,

26   which I think he had a part in drafting, that was idea.

1

2       The idea was we're buying peace, as Mr. Allingham said.

3       We're doing the best we can.  We don't want to hear

4       from you again.  Go away and make sure, as best you

5       can, this all goes away.

6              THE COURT:  So why is something left?  That's

7       what I don't understand.

8              MS. BACHMAN:  A, it's unclear if something is

9       left or not.  But even if it's not, fine, they settled

10      those cases.  They settled those claims and they got

11      paid for it.  If she brought this case as a derivative

12      plaintiff and she got paid for her derivative claims,

13      it is black letter law that that money, those

14      settlement proceeds on behalf of the derivative

15      plaintiff go to the principal.  They don't belong to

16      the individual.

17             THE COURT:  Aren't you too late?

18             MS. BACHMAN:  How so?

19             THE COURT:  It settled.

20             MS. BACHMAN:  But the payment hasn't been made

21      yet.

22             THE COURT:  I don't know.  It sounded like it

23      was.  And does it matter?  Does it matter that it

24      hasn't been paid?  Even if it hasn't been, the

25      agreement has been entered, it's -- is there a judgment

26      or something?

*Eric Allen*
*Official Court Reporter*

1

2           MR. ALLINGHAM:   Your Honor entered a stipulation

3      of dismissal and we have paid $17.25 million plus

4      interest and we are obligated on two more notes.

5           THE COURT:   As he said, it sounds like that ship

6      has sailed.

7           MS. BACHMAN:   There is $15 million that they owe

8      to the settling parties.  If you want to call that

9      spare change, I will take that change.  That's fine.

10          Mr. Griver talked about the fact that these --

11     the cases that I cited talk about a future stream of

12     payment; right?  He is talking about widows and orphans

13     getting paid in the future.  That is, by definition,

14     what this is.  We are talking about a future stream of

15     payment for claims that were settled.  Yes, the claims

16     were settled.  Mr. Allingham said repeatedly that he

17     bought peace.  The Orly Trust settled its claims under

18     the settlement agreement.  Otherwise, if -- as I

19     understand the Court's concern, if they settled the

20     claims, took all the money and we were not a party to

21     it, then they shouldn't have been in power to settle in

22     the first place.  They can't have it both ways.  They

23     can't settle the claims and take the money and then say

24     it's too late.  Either they settled the derivative

25     claims and money belongs to the trust or they didn't

26     settle the claims and those claims are out there and we

*Eric Allen*
*Official Court Reporter*

1

2      have the right to pursue them.

3              THE COURT:  I'll read your papers because I am

4      not quite sure I get it.

5              MR. GRIVER:  Your Honor, just very quickly.

6      Notice that she talks about the complaint.  She does

7      not talk about what happened in the settlement and she

8      misquotes the CSA.  The CSA is executed by the A.G.

9      Group and the Trump Group.  That's on Page 1.

10             Two defined groups:  The A.G. group is

11     specifically defined to be Orly Genger in her

12     individual capacity and in her capacity as beneficiary

13     of the Orly Genger 1993 trust.  The Orly Trust is

14     expressly excluded and on Page 3 is included with a

15     group called the Sagi Group which identifies the

16     nonsettling parties.  It's very simple.  There is an

17     entire agreement clause.  We have to amend it only by a

18     writing signed by all of the parties, so that language

19     is what controls; not the complaint but the language of

20     the settlement.

21             The second amended stipulation of dismissal,

22     Ms. Bachman wasn't here jumping up and down and saying,

23     hey, I have to be part of this because it's settling

24     the Orly Trust shares.  Instead, the Orly Trust was

25     specifically careted out and, in fact, Dalia, on behalf

26     of the Orly Trust, supposedly as the trustee, then

*Eric Allen*
*Official Court Reporter*

1

2          later went down to Delaware.  And she didn't say, hey,

3          you know what?  Good news.  All of my claims in this

4          case have been settled so see you later.  Bye.  She

5          went to the court and she said there is an existing

6          case, I have existing claims and here is the

7          settlement.  And when Orly went down and tried to get

8          involved in that settlement, then Dalia and her counsel

9          said, no, didn't listen to what Orly had to say and

10         then settled it against Orly's desires.

11              So for her to say, well, there is a provision

12         that says that Orly should attempt to get the Orly

13         Trust to settle, Orly wasn't involved in the

14         settlement.  She didn't cause the settlement in any

15         way, shape or form.

16              Please look at our papers and -- because our

17         papers are the only ones, the only ones to talk about

18         what actually happened; okay?  The rest of it, what

19         Ms. Bachman is talking about, she is talking about the

20         first day of the Yom Kippur war.  She knows the next

21         two weeks.  They may win this case in Egypt.  They will

22         not win in case before this Court.

23              MR. ALLINGHAM:  Your Honor, may I?

24              THE COURT:  If it's something you haven't

25         said --

26              MR. ALLINGHAM:  It's not something I have not

1

2          said.

3                    What emerges from all of the arguments is that

4          everyone agrees that no claims remain for Dalia to pick

5          up, so the motion for substitution should be denied.

6                    I agree with Mr. Griver that the Orly Trust

7          settled with the Trumps at some point.  He and I have a

8          disagreement about at what point.  Actually, we don't

9          even have a disagreement about at what point.  I

10         believe that the Orly Trust settled with the Trumps in

11         June in the settlement agreement.  I believe that the

12         Orly Trust settled with the Trumps in August in

13         Delaware --

14                   THE COURT:  How can they do it twice?

15                   MR. ALLINGHAM:  Your Honor, if you were in my

16         position and you had been involved in this litigation

17         as long as --

18                   THE COURT:  I understand.

19                   MR. ALLINGHAM:  I was looking for the

20         Delaware --

21                   THE COURT:  It's belts and suspenders.

22                   MR. ALLINGHAM:  -- the Delaware guarantee with

23         respect to title.  I was looking for whatever

24         protection I could get.

25                   THE COURT:  Okay.

26                   MR. ALLINGHAM:  Now, as to whether Orly could

*Eric Allen*
*Official Court Reporter*

1

2      settle as a beneficiary of the Orly Trust or

3      derivatively on behalf of the Orly Trust, Justice

4      Feinman, on January 3rd, 2013, found that Orly had

5      derivative standing to bring claims on behalf of the

6      Orly Trust.  I argued that she didn't.  I lost.

7      Justice Feinman found that she did and that ruling is

8      law of the case.

9              Orly had derivative standing to bring claims on

10     behalf of the Orly Trust, according to Justice Feinman.

11     In what capacity?  I can't think of any other -- there

12     may be someone, but I can't think of any other capacity

13     than as the beneficiary.  So I believed in June that

14     when we said she is settling individually and as

15     beneficiary of the Orly Trust, I got a release of the

16     claims that were made against me derivatively by the

17     Orly Trust.  But, as Mr. Griver says, in August we got

18     a release and dismissal from the Orly Trust in

19     Delaware.

20             THE COURT:  Thank you.

21             MR. ALLINGHAM:  What is clear, though, is that

22     we have a release and a dismissal of the Orly Trust

23     claims.  Everyone seems to agree to that and there are

24     no claims pending here to substitute it.

25             THE COURT:  So it seems, but I will read your

26     papers and I will keep an open mind and I will issue a

*Eric Allen*
*Official Court Reporter*

1

2          decision.

3                    It's your motion, so you will upload this

4          transcript in the E-Filing system.  I see I have a nice

5          file here.  If I don't have hard copies of memos,

6          affirmations, affidavits, I need them all due on or

7          before April 8th.  Exhibits can remain E-Filed.

8                    Thank you.

9                    MR. ALLINGHAM:  Thank you, your Honor.

10                   MR. DELLAPORTAS:  Thank you, your Honor.

11                       ***************

12     CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
       OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS CASE.

13

14

15                         --------------------------
                                  ERIC ALLEN
16                           SENIOR COURT REPORTER

17

18

19

20

21

22

23

24

25

26

                              *Eric Allen*
                          *Official Court Reporter*

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:  Hon. BARBARA JAFFE                    PART 12
*Justice*

ARIE GENGER and ORLY GENGER, in her individual capacity
and on behalf of THE ORLY GENGER 1993 TRUST,

                    **Plaintiffs,**

                   - v -

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC.,
DALIA GENGER, *et al.,*

                 **Defendants.**

INDEX NO. 651089/2010
MOTION DATE
MOTION SEQ. NO.   42
CALENDAR NO.

INTERIM ORDER

The following paper, numbered 1, was read on this motion.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answer — Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: ☐ Yes ☐ No

> Defendant Dalia Genger's motion for an order substituting her, as trustee, as plaintiff for Orly Genger's Trump Group claims, and for an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court is held in abeyance pending the Surrogate's Court's resolution of Orly Genger's petition to remove Dalia Genger as trustee of Orly Trust. (*See Genger v Genger*, interim order dated Apr. 1, 2015, index No. 113862/2010 [mot. seq. no. 2]).

MOTION/CASE IS RESPECTFULLY REFERRED TO   J.S.C.

JUSTICE

DATED: Dated:  **5/7/15**                  J.S. BARBARA JAFFE
                                                        J.S.C.

Check one: ☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION
Check if appropriate: ☐ DO NOT POST   ☐ REFERENCE

SURROGATES'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
In the Matter of
    DALIA GENGER,
    Trustee of the Orly Genger 1993 Trust,
       Petitioner,

           -against-

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC
TRANS-RESOURCES, INC., ARNOLD BROSER,
DAVID BROSER, JOHN DOES 1-20, and
JANE DOES 1-20,
       Respondents.
-----------------------------------------------------------------x

Index No. 2008-0017/E

**ATTORNEY AFFIRMATION
AMENDING CAPTION**

      Judith L. Bachman, Esq., pursuant to CPLR § 2106 and under the penalties of perjury, affirms as follows:

    1.  I am an attorney at law duly licensed to practice in the state of New York.

    2.  I am the attorney of record for Dalia Genger, Trustee of the Orly Genger 1993 Trust.

    3.  I hereby change the caption in this matter to be

        **In the Matter of the Petition of Dalia Genger, Trustee of the Orly Genger 1993
        Trust, to Turnover Property to the Orly Genger 1993 Trust.**

    4.  All subsequent filings in this matter will have this amended caption.

DATED:  June 27, 2017

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUL 0 3 2017

FILED

Clerk_____

SURROGATES'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK



---------------------------------------------------------------x

In the Matter of the Petition of Dalia Genger, as Trustee
of the Orly Genger 1993 Trust, Created by Trust
Agreement Dated December 13, 1993 between ARIE
GENGER, as Grantor, and LAWRENCE M. SMALL
and SASH A. SPENCER, as Trustees, to Turnover
Property to the Orly Genger 1993 Trust.

Index No. 2008-0017/E

**ATTORNEY AFFIRMATION
AMENDING CAPTION**

---------------------------------------------------------------x

      Judith L. Bachman, Esq., pursuant to CPLR § 2106 and under the penalties of perjury,
affirms as follows:

1. I am an attorney at law duly licensed to practice in the state of New York.

2. I am the attorney of record for Dalia Genger, Trustee of the Orly Genger 1993 Trust.

3. I hereby change the caption in this matter to be

    **In the Matter of the Petition of Dalia Genger, as Trustee of the
Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993
between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH
A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993
Trust.**

4. All subsequent filings in this matter will have this amended caption.

DATED:  December 13, 2017

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

20-01188-jlg   Doc 1-1   Filed 06/20/20   Entered 06/20/20 21:15:48   NOB 2   Pg 86
of 200   Attorney: JUDITH LISA BACHMAN, ESQ.

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E

Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER
THE AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on January 5, 2018 at 02:29 PM at

C/O THE TRUMP GROUP
400 PARK AVENUE
19TH FLOOR
NEW YORK, NY10022

```
New York County Surrogate's Court
MISCELLANEOUS DEPT.
      JAN 1 1 2018
           FILED
Clerk_____
```

deponent served the within MISCELLANEOUS CITATION on TRANS-RESOURCES, INC. therein named,

**CORPORATION**  a DOMESTIC corporation by delivering thereat a true copy of each to "JANE SMITH" personally, deponent knew
said corporation so served to be the corporation described in said MISCELLANEOUS CITATION as TRANS-
RESOURCES, INC. and knew said individual to be AUTHORIZED to accept thereof.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|-----|-----------|-----------|---------------|------------------|-----------------|
| FEMALE | WHITE | BLONDE | 43 | 5'4 | 140 |

PERSON SPOKEN TO REFUSED TO STATE TRUE FIRST AND/OR LAST NAMES

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

Sworn to me on:  January 8, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11,2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**

License #: 1188546

Invoice #: 686113

SURROGATE'S COURT OF THE STATE OF NEW YORK    Attorney: JUDITH LISA BACHMAN, ESQ.
COUNTY OF NEW YORK

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E
Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on January 5, 2018 at 02:29 PM at

C/O THE TRUMP GROUP
400 PARK AVENUE
19TH FLOOR
NEW YORK, NY 10022

deponent served the within MISCELLANEOUS CITATION on NEW TR EQUITY II, LLC therein named.

BY LEAVING A TRUE COPY WITH "JANE SMITH", BEING AUTHORIZED TO ACCEPT LEGAL PAPERS STATED.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|------|------------|------------|---------------|------------------|-----------------|
| FEMALE | WHITE | BLONDE | 43 | 5'4 | 140 |

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

PERSON SPOKEN TO REFUSED TO STATE TRUE FIRST AND/OR LAST NAMES

New York County Surrogate's Court
MISCELLANEOUS DEPT.
JAN 11 2018
FILED
Clerk_____

Sworn to me on:  January 8, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11, 2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**
License #: 1188546
Invoice #: 686113

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728  NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Attorney: JUDITH LISA BACHMAN, ESQ.

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E
Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE
AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on January 5, 2018 at 02:29 PM at

C/O THE TRUMP GROUP
400 PARK AVENUE
19TH FLOOR
NEW YORK, NY 10022

deponent served the within MISCELLANEOUS CITATION on NEW TR EQUITY I, LLC therein named.

BY LEAVING A TRUE COPY WITH "JANE SMITH", BEING AUTHORIZED TO ACCEPT LEGAL PAPERS STATED.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|------|-----------|-----------|--------------|-----------------|----------------|
| FEMALE | WHITE | BLONDE | 43 | 5'4 | 140 |

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

PERSON SPOKEN TO REFUSED TO STATE TRUE FIRST AND/OR LAST NAMES

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JAN 1 1 2018

FILED

Clerk_____

Sworn to me on:  January 8, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified in New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11, 2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**
License #: 1188546

Invoice #: 686113

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728  NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK   Attorney: JUDITH LISA BACHMAN, ESQ.
COUNTY OF NEW YORK

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E
Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET APT 2F, WHITESTONE, NY 11357

That on January 5, 2018 at 02:29 PM at

C/O THE TRUMP GROUP
400 PARK AVENUE
19TH FLOOR
NEW YORK, NY 10022

deponent served the within MISCELLANEOUS CITATION on TR INVESTORS, LLC therein named.

BY LEAVING A TRUE COPY WITH "JANE SMITH", BEING AUTHORIZED TO ACCEPT LEGAL PAPERS STATED.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|-----|-----------|-----------|---------------|------------------|-----------------|
| FEMALE | WHITE | BLONDE | 43 | 5'4 | 140 |

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

PERSON SPOKEN TO REFUSED TO STATE TRUE FIRST AND/OR LAST NAMES

New York County Surrogate's Court
MISCELLANEOUS DEPT.
JAN 11 2018
FILED
Clerk____

Sworn to me on:  January 8, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11, 2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**
License #: 1188546
Invoice #: 686113

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY 10007 - (212) 619-0728   NYCDCA#1102045

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E

Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE
AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on January 5, 2018 at 02:29 PM at

C/O THE TRUMP GROUP
400 PARK AVENUE
19TH FLOOR
NEW YORK, NY 10022

deponent served the within MISCELLANEOUS CITATION on GLENCLOVA INVESTMENT COMPANY therein named.

BY LEAVING A TRUE COPY WITH "JANE SMITH", BEING AUTHORIZED TO ACCEPT LEGAL PAPERS STATED.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|---|---|---|---|---|---|
| FEMALE | WHITE | BLONDE | 43 | 5'4 | 140 |

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

PERSON SPOKEN TO REFUSED TO STATE TRUE FIRST AND/OR LAST NAMES

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JAN 11 2018

FILED

Clerk

Sworn to me on:  January 8, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11,2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**

License #: 1188546

Invoice #: 686113

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728  NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Attorney: JUDITH LISA BACHMAN, ESQ.



IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE GENGER, *

Index # 2008-0017/E

Court Date February 6, 2018

Mail Date December 29, 2017

**AFFIDAVIT OF MAILING**

STATE OF NEW YORK: COUNTY OF NEW YORK ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on December 29, 2017 at a regular depository maintained by the United States Post Office deponent mailed a copy of the MISCELLANEOUS CITATION to ARIE GENGER at

17001 COLLINS AVENUE
SUNNY ISLES BEACH, FL 33160

Copy was mailed CERTIFIED MAIL-RETURN RECEIPT REQUESTED, RECEIPT #000002888896 and was marked personal & confidential and not indicating on the outside thereof, by return address or otherwise that said notice is from an attorney or concerns an action against the person to be served.

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

New York County Surrogate's Court
MISCELLANEOUS DEPT.
JAN 1 1 2018
FILED
Clerk

Sworn to me on: January 9, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified In New York County
Commission Expires April 11,2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**

License #: 1188546

Invoice #: 686112

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY 10007 - (212) 619-0728 NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK          Attorney: JUDITH LISA BACHMAN, ESQ.
COUNTY OF NEW YORK

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E

Court Date February 6, 2018

Mail Date December 29, 2017

**AFFIDAVIT OF MAILING**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on December 29, 2017 at a regular depository maintained by the United States Post Office deponent mailed a copy of the MISCELLANEOUS CITATION to ARNOLD BROSER at

5371 FISHER ISLAND DRIVE
MIAMI BEACH, FL 33109

Copy was mailed CERTIFIED MAIL-RETURN RECEIPT REQUESTED, RECEIPT #000002888889 and was marked personal & confidential and not indicating on the outside thereof, by return address or otherwise that said notice is from an attorney or concerns an action against the person to be served.

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JAN 1 1 2018

FILED

Clerk_____

Sworn to me on:  January 9, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11,2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**

License #: 1188546

Invoice #: 686115

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728  NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK      Attorney: JUDITH LISA BACHMAN, ESQ.
COUNTY OF NEW YORK

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E

Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

CHRISTOPHER J. KLEIN BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE
AGE OF EIGHTEEN YEARS AND RESIDES AT 14-22 150TH STREET
APT 2F, WHITESTONE, NY 11357

That on January 5, 2018 at 01:50 PM at

C/O KELLEY DRYE & WARREN LLP
ATTN: JOHN DELLA PORTAS
101 PARK AVENUE, 27TH FL
NEW YORK, NY 10178

deponent served the within MISCELLANEOUS CITATION on SAGI CENTER 1993 TRUST therein named.

BY LEAVING A TRUE COPY WITH PAUL OSTENSEN, LEGAL CLERK, BEING AUTHORIZED TO ACCEPT LEGAL
PAPERS STATED.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|-----|-----------|-----------|---------------|------------------|-----------------|
| MALE | WHITE | BLONDE | 45 | 6'2 | 210 |

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES



New York County Surrogate's Court
MISCELLANEOUS DEPT.
JAN 11 2018
FILED
Clerk

Sworn to me on:  January 9, 2018

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11,2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

**CHRISTOPHER J. KLEIN**

License #: 1188546

Invoice #: 686117

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728  NYCDCA#1102045

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E

Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

ANDRE MEISEL BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF
EIGHTEEN YEARS AND RESIDES AT 69 JAYSON AVENUE, GREAT NECK, NY 11021

That on January 22, 2018 at 01:03 PM at

104 WEST 40TH STREET
19TH FLOOR
NEW YORK, NY 10018

deponent served the within MISCELLANEOUS CITATION on DAVID BROSER therein named.

**INDIVIDUAL**   by delivering a true copy of each to DAVID BROSER personally; deponent knew the person so served to be the person
described as DAVID BROSER therein and he identified himself as such.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|-----|-----------|-----------|---------------|------------------|-----------------|
| MALE | WHITE | BLONDE | 50 | 5'7 | 150 |

**MILITARY
SERVICE**
Person spoken to was asked whether DAVID BROSER was in the military service of the State of New York or the United
States and received a negative reply. Upon information and belief based upon the conversation and observation as
aforesaid deponent avers that DAVID BROSER is not in the military service of the State of New York or the United States
as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

Sworn to me on:  January 23, 2018

| JOSEPH KNIGHT | RALPH J MULLEN | VINETTA BREWER | **ANDRE MEISEL** |
|---------------|----------------|----------------|------------------|
| Notary Public, State of New York | Notary Public, State of New York | Notary Public, State of New York | License #: 1372356 |
| No. 01KN6178241 | No. 01MU6238632 | No. 4949206 | |
| Qualified in New York County | Qualified in New York County | Qualified in Bronx County | Invoice #: 686116 |
| Commission Expires November 26, 2019 | Commission Expires April 11,2019 | Commission Expires April 3, 2019 | |

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728  NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Attorney: JUDITH LISA BACHMAN, ESQ.

IN RE: CONCERNING THE ORLY GENGER 1993 TRUST CREATED BY
TRUST AGREEMENT, DATED DECEMBER 13, 1993 BETWEEN ARIE
GENGER, *



Index # 2008-0017/E
Court Date February 6, 2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK ss:

ANDRE MEISEL BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT 69 JAYSON AVENUE, GREAT NECK, NY 11021

That on January 22, 2018 at 04:02 PM at

C/O KASOWITZ BENSON TORRES LLP
ATTN: ANDREW R. KURLAND
1633 BROADWAY, LOBBY
NEW YORK, NY 10019

deponent served the within MISCELLANEOUS CITATION on ORLY GENGER therein named.

BY LEAVING A TRUE COPY WITH "JOHN SMITH", SECURITY GUARD, BEING AUTHORIZED TO ACCEPT LEGAL PAPERS STATED.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|------|-----------|-----------|---------------|------------------|-----------------|
| MALE | WHITE | BALD | 50 | 6'2 | 200 |

MILITARY
SERVICE

Person spoken to was asked whether ORLY GENGER was in the military service of the State of New York or the United States and received a negative reply. Upon information and belief based upon the conversation and observation as aforesaid deponent avers that ORLY GENGER is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

*AS GRANTOR AND LAWRENCE M. SMALL AND SASH A. SPENCER, AS TRUSTEES

PERSON SPOKEN TO REFUSED TO STATE TRUE FIRST AND/OR LAST NAMES

PERSON REFUSED TO ALLOW YOUR DEPONENT ACCESS INTO SAID BUILDING.

Sworn to me on: January 23, 2018

**ANDRE MEISEL**
License #: 1372356
Invoice #: 686111

JOSEPH KNIGHT
Notary Public, State of New York
No. 01KN6178241
Qualified In New York County
Commission Expires November 26, 2019

RALPH J MULLEN
Notary Public, State of New York
No. 01MU6238632
Qualified in New York County
Commission Expires April 11,2019

VINETTA BREWER
Notary Public, State of New York
No. 4949206
Qualified in Bronx County
Commission Expires April 3, 2019

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY 10007 - (212) 619-0728 NYCDCA#1102045

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E <br><br> Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust, <br><br>    Petitioner, <br><br>  -against- <br><br> Orly Genger, et al., <br><br>    Respondents. | |

### AFFIRMATION OF LEON FRIEDMAN IN SUPPORT OF MOTION TO DISMISS BY RESPONDENT ARIE GENGER

LEON FRIEDMAN, an attorney duly admitted to practice in the courts of the state of New York, affirms the following under penalties of perjury:

1.    I am the attorney for respondent Arie Genger. I make this affirmation in support of a motion to dismiss the pending petition (the "New Action") brought by Petitioner Dalia Genger.

2.    Arie Genger is in precisely the same position in this matter as Respondent Orly Genger who has submitted a parallel motion to dismiss. As noted in the parallel papers, in December, 2017, Dalia attempted to serve various parties with documents relating to a purportedly new action. The only papers actually served on Arie Genger at this time was a two page document entitled "Miscellaneous Citation." (Attached as Exhibit A.) That document was sent to a former address of Arie Genger, namely 17001 Collins Avenue, Sunny Island Beach

Florida. (See Exhibit B). . It was then forwarded to the new address, 19111 Collins Avenue, as regular mail, and received on January 12, 2018. No petition actually accompanied the two page document.

3.     In every other respect, Arie Genger is in precisely the same position as his daughter Orly Genger.as described in her moving papers. Arie Genger hereby incorporates and adopts all of the arguments made by Orly Genger in her filing before this Court in this matter in support of a motion to dismiss..

4.     For the reasons stated above, Respondent Arie Genger moves that the pending New Action be dismissed.

Affirmed under penalties of perjury.


Dated: New York, N.Y.
       February 4,  2018

Leon Friedman
685 Third Ave, 25th floor
New York, N.Y. 10017
(646) 825-4398
Attorney for Respondent Arie Genger

# EXHIBIT A

Miscellaneous Citation                                    File No. *2008-0017* / E

## SURROGATE'S COURT NEW YORK COUNTY

### Citation

THE PEOPLE OF THE STATE OF NEW YORK

TO:
ORLY GENGER,
ARIE GENGER,
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC,
NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC.,
ARNOLD BROSER,
DAVID BROSER,
SAGI GENGER 1993 TRUST

A petition having been filed by Dalia Genger, who is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

YOU ARE HEREBY CITED TO SHOW CAUSE before the Surrogate's Court, New York County, at 31 Chamber Street, Room 509, New York, New York on February 6, 2018 at 10 o'clock in the forenoon of that day, why a decree should not be made concerning the Orly Genger 1993 Trust created by Trust Agreement, dated December 13, 1993 between Arie Genger as Grantor and Lawrence M. Small and Sash A. Spence as Trustees, granting the following relief as requested in the petition:

a.      damages in in the amount of $32.3 million, plus statutory interest;

b.      imposition of a constructive trust on the Settlement Proceeds;

c.      an order directing the delivery of the Settlement Proceeds to her as Trustee;

d.      an accounting of the Settlement Proceeds, and

e.   such other relief as to the Court seems just and necessary.

Dated, Attested and Sealed.

December 21, 2017

Hon. Nora S. Anderson , Surrogate

Diana Senabrea  Chief Clerk

JUDITH BACHMAN, ESQ
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

[Note: This citation is served upon you as required by law. You are not required to appear. If you fail to appear it will be assumed you do not object to the relief requested. You have a right to have an attorney appear for you.]

**PROOF OF SERVICE MUST BE FILED
TWO DAYS PRIOR TO THE RETURN DATE**
Court Rule 207.7 (c)

# EXHIBIT B

JUDITH LISA BACHMAN, ESQ
254 SOUTH MAIN STREET, STE 406
NEW CITY, NY 10956

PERSONAL AND CONFIDENTIAL

ARIE GENGER
17001 COLLINS AVENUE
SUNNY ISL

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
800.222.0510 www.aslegal.com

*Index No.*  **2008-0017/E**    *Year 20*

## SURROGATE'S COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

**In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, to Turnover Property to the Orly Genger 1992 Trust**

**Dalia Genger, Trustee of the Orly Genger 1993 Trust**
**Petitioner**

**-against-**

**Orly Genger, et al**

**Respondents**

## MOTION TO DISMISS

### LEON FRIEDMAN

*Attorney for*  **Respondent Arie Genger**

685 THIRD AVENUE, 25TH FLOOR
NEW YORK, NEW YORK 10017
(646) 825-4398

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:*............................................     Signature ............................................................................................

Print Signer's Name..................................................................

*Service of a copy of the within*                                                *is hereby admitted.*

*Dated:*

......................................................
*Attorney(s) for*

*PLEASE TAKE NOTICE*

Check Applicable Box

☐ NOTICE OF ENTRY
*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within-named Court on*                  *20*

☐ NOTICE OF SETTLEMENT
*that an Order of which the within is a true copy will be presented for settlement to the Hon.                , one of the judges of the within-named Court, at*
*on                  20        , at                M.*

*Dated:*

**LEON FRIEDMAN**

*Attorney for*

*To:*

685 THIRD AVENUE, 25TH FLOOR
NEW YORK, NEW YORK 10017
(646) 825-4398

*Attorney(s) for*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E  <br><br> Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,
    Petitioner,

  -against-

Orly Genger, et al.,
    Respondents.

## NOTICE OF MOTION TO DISMISS BY RESPONDENT ARIE GENGER

PLEASE TAKE NOTICE that upon the attached affirmation of Leon Friedman, dated February 4, 2018, the undersigned will move this Court, pursuant to SCPA Section 102 and CPLR Sections 3211 (a)(4), (5), (7) and (8) in the Surrogate Court Motion Part, courtroom of Judge Nora Anderson, in the Courthouse located at 31 Chambers Street. New York, N.Y. 10007 on February 27, 2017, at 9:30 A.M. or as soon thereafter as counsel may be heard, for an order dismissing the pending petition brought by Petitioner Dalia Genger and for such other relief as the court deems just and proper.

PLEASE TAKE FURTHER NOTICE that pursuant to CPLR 2214(b) answering papers, if any shall be served at least seven two days prior to the return date of this motion.

Dated: New York, N.Y.
    February 5, 2018

*Leon Friedman*

Leon Friedman
685 Third Avenue. 25th floor
New York, N.Y. 10017
(646) 825-4398
Attorney for Respondent Arie Genger

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

---

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

  -against-

Orly Genger, et al.,

    Respondents.

---

## AFFIRMATION OF LEON FRIEDMAN IN SUPPORT OF MOTION TO DISMISS BY RESPONDENT ARIE GENGER

LEON FRIEDMAN, an attorney duly admitted to practice in the courts of the state of

New York, affirms the following under penalties of perjury:

1.    I am the attorney for respondent Arie Genger. I make this affirmation in support

of a motion to dismiss the pending petition (the "New Action") brought by Petitioner Dalia

Genger.

2.    Arie Genger is in precisely the same position in this matter as Respondent Orly

Genger who has submitted a parallel motion to dismiss. As noted in the parallel papers, in

December, 2017, Dalia attempted to serve various parties with documents relating to a

purportedly new action. The only papers actually served on Arie Genger at this time was a two

page document entitled "Miscellaneous Citation." (Attached as Exhibit A.) That document was

sent to a former address of Arie Genger, namely 17001 Collins Avenue, Sunny Island Beach

Florida. (See Exhibit B). . It was then forwarded to the new address, 19111 Collins Avenue, as

regular mail, and received on January 12, 2018. No petition actually accompanied the two page

document.

3.      In every other respect, Arie Genger is in precisely the same position as his

daughter Orly Genger.as described in her moving papers. Arie Genger hereby incorporates and

adopts all of the arguments made by Orly Genger in her filing before this Court in this matter in

support of a motion to dismiss..

4.      For the reasons stated above, Respondent Arie Genger moves that the pending

New Action be dismissed.

Affirmed under penalties of perjury.


Dated: New York, N.Y.
      February 4,  2018

Leon Friedman
685 Third Ave, 25th floor
New York, N.Y. 10017
(646) 825-4398
Attorney for Respondent Arie Genger

# EXHIBIT A

Miscellaneous Citation

File No. _2008-0017_ / E

## SURROGATE'S COURT NEW YORK COUNTY

### Citation

THE PEOPLE OF THE STATE OF NEW YORK

TO:
ORLY GENGER,
ARIE GENGER,
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC,
NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC.,
ARNOLD BROSER,
DAVID BROSER,
SAGI GENGER 1993 TRUST

A petition having been filed by Dalia Genger, who is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

YOU ARE HEREBY CITED TO SHOW CAUSE before the Surrogate's Court, New York County, at 31 Chamber Street, Room _509_, New York, New York on _February 6_, 2018 at 10 o'clock in the forenoon of that day, why a decree should not be made ~~in the matter of the application of Dalia Genger, as trustee of the Orly Genger 1993 Trust,~~ _Concerning the Orly Genger 1993 Trust created by Trust Agreement, dated December 13, 1993 between Arie Genger, as Grantor and Lawrence M. Small and Sash A. Spence, as Trustees,_ granting the following relief as requested in the petition:

a.    damages in in the amount of $32.3 million, plus statutory interest;

b.    imposition of a constructive trust on the Settlement Proceeds;

c.    an order directing the delivery of the Settlement Proceeds to her as Trustee;

d.    an accounting of the Settlement Proceeds; and

e.    such other relief as to the Court seems just and necessary.


Dated, Attested and Sealed,

*December 21, 2017*                              Hon. Nora S. Anderson      , Surrogate

                                                Diana Sanabria   Chief Clerk

JUDITH BACHMAN, ESQ
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

[Note: This citation is served upon you as required by law. You are not required to appear. If you
fail to appear it will be assumed you do not object to the relief requested. You have a right to
have an attorney appear for you.]

> **PROOF OF SERVICE MUST BE FILED
> TWO DAYS PRIOR TO THE RETURN DATE**
> Court Rule 207.7 (c)

# EXHIBIT B



JUDITH LISA BACHMAN, ESQ.
254 SOUTH MAIN STREET, STE. 406
NEW CITY, NY 10956

PERSONAL AND CONFIDENTIAL

ARIE GENGER
17001 COLLINS AVENUE
SUNNY ISL

## CERTIFICATE OF SERVICE

I hereby certify that I am not a party to this action, am over 18 years of age and reside at 148 East 78th Street, New York, N.Y and that I am an attorney duly admitted to the Courts of the State of New York.

On February 5, 2018 I served a copy of the annexed Notice of Motion to Dismiss with accompanying affirmation of Leon Friedman in the following manner:

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Judith Bachman
254 S. Main Street, Suite 406
New City, N.Y. 10956

Dated: February 5, 2018

Leon Friedman

ORIGINAL

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E

Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

Petitioner

-against-

Orly Genger, et al.,

Respondents.



New York County Surrogate's Court
MISCELLANEOUS DEPT.

FEB 0 6 2018

FILED

Clerk_____

## NOTICE OF MOTION TO DISMISS PETITION

PLEASE TAKE NOTICE, that upon the Affirmation of Michael Paul Bowen, dated

February 5, and all exhibits attached thereto, the accompanying Memorandum of Law, and all

prior pleadings and proceedings heretofore had herein, petitioner Orly Genger will move this

Court, at 31 Chambers Street, New York, New York 10007, on February 27, 2018, or as soon

*Room 509   10:00 a.m.*

thereafter as counsel can be heard, for an Order pursuant to SCPA Section 102 and CPLR

Sections 3211(a)(4), (5), (7) and (8) dismissing Dalia Genger's Petition.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 2214(b), answering

affidavits shall be served at least seven days before the return date of this motion.

Dated:   New York, New York
         February 5, 2018

                              KASOWITZ BENSON TORRES LLP

                              By: _____
                                  Michael Paul Bowen
                                  Andrew R. Kurland
                                  1633 Broadway
                                  New York, New York 10019
                                  (212) 506-1700

                                  *Attorneys for Petitioner*

To:

Judith Bachman, Esq.
254 S. Main Street
Suite 306
New City, NY 10956
*Counsel to Petitioner Dalia Genger*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

  -against-

Orly Genger, et al.,

    Respondents.

## **AFFIRMATION OF SERVICE**

I am an attorney admitted to practice before the Courts of the State of New York.  On February 5, 2018, on behalf of petitioner Orly Genger, I caused to be served by email and FedEx overnight delivery a true and correct copy of Respondent Orly Genger's Notice of Motion to Dismiss the 2016 Petition of Dalia Genger, along with the Memorandum of Law dated February 5, 2018 and the Affirmation of Michael Paul Bowen, dated February 5, 2018, with exhibits, on counsel for Petitioner Dalia Genger at the following address:

    Judith Bachman, Esq.
    254 S. Main Street
    Suite 306
    New City, NY 10956

Dated: New York, New York
     February 5, 2018

                                     Andrew R. Kurland

*Index No.*  0017/E          *Year 20*  08

SURROGATE'S COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

---

In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust
Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and
SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust.

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

                    Petitioner,

     -against-

Orly Genger, et al.,

                    Respondents.

---

## NOTICE OF MOTION TO DISMISS, AFFIRMATION OF MICHAEL P. BOWEN
## AND EXHIBITS, AFFIRMATION OF SERVICE

---

### KASOWITZ BENSON TORRES LLP

*Attorney(s) for*

*Respondent*    *Office Address & Tel. No.:*

                    1633 BROADWAY
                    NEW YORK, NY 10019
                    212-506-1700

---

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed
document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not
obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are
not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR.1200.41-a.*

*Dated:* February 5, 2018          Signature ...........................................

                          Print Signer's Name ............ Michael P. Bowen ....................................

*Service of a copy of the within*                                            *is hereby admitted.*

*Dated:*

                          ............................................................
                          *Attorney(s) for*  Petitioner

---

## PLEASE TAKE NOTICE

☐ **NOTICE OF ENTRY**    *that the within is a (certified) true copy of a
entered in the office of the clerk of the within-named Court on*                    20

☐ **NOTICE OF SETTLEMENT**    *that an Order of which the within is a true copy will be presented for settlement to the
Hon.                    , one of the judges of the within-named Court,
at
on              20        , at              M.*

*Dated:*

                    KASOWITZ BENSON TORRES LLP
                    *Attorney(s) for*

                                        *Office Address & Tel. No.:*

*To:*

                                        1633 BROADWAY
                                        NEW YORK, NY 10019
*Attorney(s) for*                        212-506-1700

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

Petitioner

-against-

Orly Genger, et al.,

Respondents.

> New York County Surrogate's Court
> **MISCELLANEOUS DEPT.**
>
> FEB 0 6 2018
>
> **FILED**
> Clerk_____

## NOTICE OF MOTION TO DISMISS PETITION

PLEASE TAKE NOTICE, that upon the Affirmation of Michael Paul Bowen, dated

February 5, and all exhibits attached thereto, the accompanying Memorandum of Law, and all

prior pleadings and proceedings heretofore had herein, petitioner Orly Genger will move this

Court, at 31 Chambers Street, New York, New York 10007, Room 509, on February 27, 2018 at

10:00 a.m., or as soon thereafter as counsel can be heard, for an Order pursuant to SCPA Section

102 and CPLR Sections 3211(a)(4), (5), (7) and (8) dismissing Dalia Genger's Petition.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 2214(b), answering

affidavits shall be served at least seven days before the return date of this motion.

Dated:    New York, New York
          February 5, 2018

                              KASOWITZ BENSON TORRES LLP

                              By: _____
                                  Michael Paul Bowen
                                  Andrew R. Kurland
                                  1633 Broadway
                                  New York, New York 10019
                                  (212) 506-1700

                                  *Attorneys for Petitioner*

To:

Judith Bachman, Esq.
254 S. Main Street
Suite 306
New City, NY 10956
*Counsel to Petitioner Dalia Genger*

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
800.222.0510  www.aslegal.com

*Index No.*   0017/E          *Year 20*   *08*

SURROGATE'S COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust.

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

                          Petitioner,

            -against-

Orly Genger, et al.,

                          Respondents.

## NOTICE OF MOTION TO DISMISS PETITION

### KASOWITZ BENSON TORRES LLP

*Attorney(s) for*

*Respondent*   *Office Address & Tel. No.:*

1633 BROADWAY
NEW YORK, NY 10019
212-506-1700

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR.1200.41-a.*

*Dated:* ....February 5, 2018....        Signature ............................................................................................

                                Print Signer's Name .................   Michael P. Bowen .................................

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*

                        ....................................................................................
                        *Attorney(s) for*   Petitioner

## PLEASE TAKE NOTICE

☐          *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within-named Court on*          *20*
ENTRY

☐          *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*                         *, one of the judges of the within-named Court,*
SETTLEMENT   *at*
            *on*          *20*   *, at*          *M.*

*Dated:*

                        KASOWITZ BENSON TORRES LLP
                        *Attorney(s) for*

                                        *Office Address & Tel. No.:*

*To:*

                                        1633 BROADWAY
*Attorney(s) for*                        NEW YORK, NY 10019
                                        212-506-1700

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E  Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

  -against-

Orly Genger, et al.,

    Respondents.

## AFFIRMATION OF SERVICE

I am an attorney admitted to practice before the Courts of the State of New York. On February 5, 2018, on behalf of petitioner Orly Genger, I caused to be served by email and FedEx overnight delivery a true and correct copy of Respondent Orly Genger's Notice of Motion to Dismiss the 2016 Petition of Dalia Genger, along with the Memorandum of Law dated February 5, 2018 and the Affirmation of Michael Paul Bowen, dated February 5, 2018, with exhibits, on counsel for Petitioner Dalia Genger at the following address:

> Judith Bachman, Esq.
> 254 S. Main Street
> Suite 306
> New City, NY 10956

Dated: New York, New York
     February 5, 2018

                                           Andrew R. Kurland

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

    -against-

Orly Genger, et al.,

    Respondents.



New York County Surrogate's Court
MISCELLANEOUS DEPT.
FEB 0 5 2018
FILED
Clerk

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT
## ORLY GENGER'S MOTION TO DISMISS DALIA GENGER'S 2016 PETITION

Respondent Orly Genger ("Orly") makes a limited appearance in this action to move for

dismissal based on defective service and other grounds, pursuant to SCPA Section 102

and CPLR Sections 3211(a)(4), (5), (7) and (8), and for sanctions and award of attorney's fees.[1]

### PRELIMINARY STATEMENT

This action is duplicative of another action pending before this Court, *In the Matter of the*

*Application of Orly Genger to Remove Dalia Genger as Trustee of the Orly Genger 1993 Trust*

*Established on December 13, 1993 by Arie Genger, Grantor,* Surrogate's Court File No. 2008-

0017 (the "Removal Action"). The Removal Action was filed almost **10 years ago** to remove

Dalia Genger ("Dalia") as the trustee of the Orly Genger 1993 Trust (the "Orly Trust"). That

---

[1]    A limited appearance is permitted by CPLR 320(b). Accompanying this memorandum of law is the Affirmation
of Michael Paul Bowen, dated February 5, 2018, with exhibits ("Bowen Affirm."). A copy of the petition in this
action is Exhibit A to that affirmation. All citations to "¶ __" are citations to that petition.

action has been delayed over and over again by bad faith maneuvering by Dalia and her ally Sagi

Genger, Orly's brother. This newest maneuver of filing a new action is just another bad faith

delay tactic. In this action, filed by Dalia in June 2016 (the "New Action"), Dalia purports to

seek monetary damages on behalf of the trust against the trust's own beneficiary (Orly Genger).

But the operative allegations of fact and the relief sought is duplicative of Dalia's counter-

petition filed in the first-filed Removal Action – a counter-petition that is the subject of a fully

briefed motion to dismiss pending before this Court.

The New Action is thus duplicative of an earlier pending action that involves the exact

same fact and legal issues that Dalia is trying to raise all over again purely for the sake of delay.

Since these issues are being litigated and are subject to a pending motion to dismiss in the earlier

Removal Action, this action must be dismissed. It is a waste of judicial resources, to say the

very least.

While Dalia filed this New Action with the Surrogate's Court over *a year and a half ago*

in *June 2016*, she failed to obtain a citation from the Court Clerk or to serve the new petition on

any party within the 120-day statutory period mandated by CPLR 306-b and SCPA 301(a).

Instead, she obtained a citation some eighteen months later in *December 2017 – after* Orly

moved to dismiss Dalia's counter-petition in the Removal Action, after that motion was fully

briefed and after the parties appeared before the Court to argue that motion on December 8,

2017. Then – well over a year too late – she tried to effect service on certain parties without

seeking an enlargement of time for service. She also failed to serve Orly at all because in her

view Orly is not entitled to service even though this is a new action, which as a matter of basic

procedural rules must be served on all parties.[2]

---

[2] This New Action was assigned Surrogate's Court File No. 2008-0017/E, which is based on the file number for
the Removal Action (*i.e.*, 2008-0017). The suffix "E" indicates that this is a separate action requiring a new citation

Dalia's failure to effect service within the 120-day statutory period is not a mere

technicality. She has failed to give proper notice to the interested parties. Even more

importantly, because Dalia failed to meet the 120-day deadline this action has not been

commenced for purposes of the applicable statute of limitations. All of the claims in this new

action are premised on Dalia's claim that Orly, in her alleged capacity as *de facto* trustee for the

Orly Trust, breached her fiduciary duties to the trust (*i.e.*, to herself) and seeks monetary

damages against Orly and certain third-parties supposedly to replace money that Dalia claims

should have been paid to the Trust. The petition in this new action alleges that Orly breached her

duty in June 2013 when she entered into the Trump/AG Settlement Agreement (discussed

below). The applicable 3-year statute of limitations expired in June 2016 – around the time that

Dalia filed this new action. Because it was not served within the required 120-day period, the

statute of limitations was not tolled and Dalia's claims are barred as a matter of law.

In addition to all these fatal defects, Dalia's claims in this New Action just repeat the

legal and factual claims she already made in the counter-petition in the Removal Action. As

noted, a motion to dismiss the counter-petition is pending, and to the extent those counterclaims

are dismissed as legally barred or insufficient, so too should the duplicative claims in this action

be dismissed.

But here is the real reason for Dalia's latest maneuver – which is yet further evidence of

*her* continuing and compounding breaches of fiduciary duties owed to Orly: Having read the

terms of the Trump/AG Settlement Agreement, Dalia believes that by naming the Trump Group

parties as interested parties in this new action, however baseless and procedurally defective, she

---

and service on all parties. That is also indicated by the fact that the caption in the New Action differs from the
Removal Action. Dalia recently revised the caption in the New Action by filing an "Attorney Affirmation
Amending Caption" with the Court on December 13, 2017 – right around the time she obtained, much too late, the
Citation for this New Action.

may be able to prevent the Trump Group from making any further settlement payments pursuant

to that agreement. Under that agreement, certain settlement payments are to be made in

installments by the Trump Group upon certain preconditions, one of which is that there are no

pending legal claims by Dalia Genger against them. Her latest legal action is nothing more than

yet another last-ditch attempt by Dalia to trump up some kind of claim – any claim – to embroil

the Trump Group in yet more Genger-related litigation and, by doing so, to interfere with and act

contrary to the interests and affairs of her only daughter, Orly.

This New Action is baseless and brought in bad faith. It should be summarily dismissed,

like Dalia's counter-petition in the Removal Action, and she should be removed as trustee

without any further delay.

## RELEVANT FACTS

Orly incorporates herein her submissions in support of her September 8, 2017 motion to

dismiss Dalia's 2017 Cross-Petition (which is *sub judice*), including the facts and arguments set

forth her Memorandum of Law in support thereof. To avoid unnecessary duplication of work

and for the Court's convenience, Orly's brief in support of her dismissal motion in the Removal

Action is attached hereto as Exhibit 1 and all of the legal arguments and points raised are

incorporated herein.

Because Dalia's petition in the New Action has some different paragraph numbers and

for the sake of clarity, a brief summary of Dalia's allegations, with citation to her new petition, is

provided here.

### A.   Background and Procedural Posture

Orly is the beneficiary of the Orly Genger 1993 Trust (the "Orly Trust"). Orly's

daughter, born last year, is also a beneficiary of the Orly Trust. The petitioner here, Dalia, has

been the sole trustee of the Orly Trust since January 2008, when the prior trustee appointed her

4

over Orly's objection.  For more than a decade, Dalia has been estranged from and embroiled in

litigation against Orly, the very beneficiary to whom she owes fiduciary duties.  Dalia's conduct

in the various litigations in state and federal courts has demonstrated beyond cavil her unfitness

to continue as trustee of the Orly Trust.  *See, e.g., Orly Genger v. Dalia Genger*, Index No.

109749/09, July 3, 2014 Decision and Order at 3-4 (Sup. Ct. N.Y. Cnty. July 3, 2014) ("Dalia, as

trustee of the Orly Trust, has often sided with her son Sagi in these actions . . . . Dalia may no

longer be able to serve as trustee, having failed to disclose the conflict of interest [found by the

First Department] to her principal, Orly.  And, as noted by the First Department, Orly has

petitioned the Surrogate's Court to remove Dalia as trustee").

In light of Dalia's blatant wrongdoing and extensive conflicts of interest, Orly petitioned

to remove Dalia as trustee in 2009, and has been pursuing her petition before this Court since

that time.  After years of delay purposely manufactured by Dalia and Sagi, including multiple

rounds of motions to dismiss, at the end of June 2017, this Court denied their motions in their

entirety, allowing Orly's removal action to proceed at long last on the merits.  *In the Matter of*

*the Application of Orly Genger to Remove Dalia Genger as Trustee of the Orly Genger 1993*

*Trust Established on December 13, 1993 by Arie Genger, Grantor*, File No. 2008-0017, June 21,

2017 Decision (Anderson, S.).

While Orly was continuing to pursue her petition to remove Dalia as Trustee, in a further

attempt to derail her removal, Dalia filed in June 2016 a separate petition in this Court against

Orly and dozens of other respondents, including 40 "John/Jane Does," asserting a panoply of

claims that are all grounded on her fundamental claim of breach of fiduciary duty and demanding

the turnover of proceeds certain respondents allegedly received from other respondents pursuant

to a settlement agreement that was reached in June 2013 (namely, the Trump/AG Settlement

5

Agreement, discussed below). *See* Petition for Turnover of Trust Property and Other Relief, *In the Matter of Dalia Genger, Trustee of the Orly Genger 1993 Trust, Petitioner,* filed June 14, 2016, Surrogate's Court File No. 2008-0017/E.

Around the time of its filing, Dalia's counsel emailed counsel for certain respondents to ask if they would accept service by email:

| | |
|---|---|
| From: | Judy Bachman <jlbesq_99@yahoo.com> |
| Sent: | Friday, June 17, 2016 4:40 PM |
| To: | John Dellaportas; John Dellaportas; ygriver@zeklaw.com; john.boyle@skadden.com; pjanovsky@zeklaw.com; ljw@msk.com; pdm@msk.com; william.frank@skadden.com; bleinbach@zeklaw.com; Eric D. Herschmann; Herrmann Douglas D (WIL); Herrmann Douglas D (WIL); mitchell@oglaw.net; Michael P. Bowen; Andrew R. Kurland |
| Subject: | Petition for Turnover of Trust Property in the Orly Genger 1993 Trust |
| Attachments: | Ex 10(abyance order).pdf; Ex 7 (Orly Settlement Agreement) .pdf; Ex 6 (So-Ordered Stipulation).pdf; Ex 8 (1-5-15 Forrest opinion).pdf; Ex 3 (1.2.13 Amended Decision).pdf; Ex 4 (4.9.12 Order).pdf; Ex 1 (Trust Agreement).pdf; Ex 5 (Allingham Ltr).pdf; Ex 9(transcript).pdf; Ex 2 (Orly's revised complaint).pdf; Petitionforturnover.pdf; petitioncitation.pdf; petitionfilingreceipt.pdf |

Dear Gentlemen:

The attached Petition for Turnover of Trust Property in the Orly Genger 1993 Trust was filed on June 14, 2016.

Please advise if you will either accept service of the citation (once it is completed by the Court) or waiver such service.

Judith Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210 Office
845-300-1595 Cell
jlbesq_99@yahoo.com
http://www.yourlegaldepartment.net

Bowen Affirm. Ex. B.

Counsel for Orly did not respond to this email, and neither did counsel for any other respondent. Bowen Affirm. ¶ 4. Accordingly, the petition, though filed in June 2016, has been dormant for more than a year and a half.

After this Court denied Dalia's motion to dismiss Orly's decade-old petition for Dalia's removal in June 2017, Dalia filed her answer to the petition in the Removal Action and, in that action, she included a counter-petition against Orly, seeking the exact same relief based on the same fact allegations as she has set forth in her petition in this New Action. Orly filed a motion

to dismiss the counter-petition on September 8, 2017. Dalia opposed Orly's motion on

September 25, 2017, and Sagi (through his trust) opposed Orly's motion on September 26, 2017.

The guardian *ad litem* filed a response in support of Orly's motion to dismiss on October 13,

2017, and the Court heard argument on the motion on December 8, 2017.[3]

The very next week, Dalia's counsel tried to revive this New Action by filing an

affirmation in this action (*i.e.*, under File No. 2008-0017/E) to revise the caption. *See* Attorney

Affirmation-Amending Caption, File No. 2008-0017/E, filed Dec. 13, 2017. Thereafter, on or

about December 21, 2017, Dalia obtained the two-page Citation to serve the New Action on the

purported interested parties and respondents, including Orly and the Trump entities (discussed

below). She attempted to serve that document on certain of the named respondents, including

Arie Genger, Orly's father and the former husband of Dalia. But she never attempted service of

the underlying documents – including the petition itself in this New Action or any of its

numerous exhibits – on any respondent. And Dalia did not attempt to serve even the Citation on

Orly at all.

When Orly learned from other respondents that Dalia had attempted to serve the Citation

at the end of December 2017, counsel for Orly informed Dalia's counsel of the multiple

procedural defects with her action. Dalia's counsel responded – erroneously – that she does "not

believe it is necessary" to serve Orly with process in this proceeding, as she contends Orly is

already a party to the proceeding. Bowen Affirm. Ex. C [Bachman 2018 email]. Further,

Dalia's counsel claimed that the fact that respondents had "notice" of the existence of the

petition filed in June 2016 excuses her lack of proper service. *Id.*

---

[3]   Years ago Sagi claimed standing in the Removal Action because he claims his trust is a contingent beneficiary of
the Orly Trust. That is no longer the case. In the interim, Orly gave birth to a daughter. Because she now has issue
the Sagi Trust no longer has any contingent interest in the Orly Trust, and Sagi as a beneficiary of the former trust
no longer has standing in matters pertaining to the latter.

7

**B.**    **Overlapping Fact Allegations and Undisputed Facts**

The petition in this New Action purports to state six causes of action, each in a separate

count:  Aiding and Abetting Breach of Fiduciary Duty, Tortious Interference with Contract,

Money Had and Received, Unjust Enrichment, Turnover, and Accounting.  These claims overlap

with those Dalia is simultaneously pursuing in her counter-petition in the already pending

Removal Action, where she also purports to state causes of action for Breach of Fiduciary Duty,

Tortious Interference, Turnover, Accounting, and Unjust Enrichment.  A redline comparison

between the June 2016 petition in this New Action and Dalia's counter-petition in the Removal

Action vividly illustrates that the fact allegations in each overlap *verbatim* in all material

respects.  *See* Bowen Affirm. Ex. D (the words in black-ink appear in both documents exactly

the same and the red-line strikes and additions show the changes made to the counter-petition to

transform it into the petition Dalia used in the New Action).  The causes of action in the New

Action are also duplicative of her causes of action set forth in her pending counter-petition.  *Id.*

Ex. D.

The fact allegations in the New Action, which are materially the same as those in her

counter-petition in the Removal Action, and which are taken as true for purposes of this motion,

are as follows:

According to the 2016 petition, Orly instituted an action in 2010 in the Supreme Court of

New York both in her individual capacity as beneficiary and also derivatively on behalf of the

Orly Trust (the "2010 New York action").  That action was brought against the purchasers of the

TRI shares (the "Trump Group").  In that proceeding, the court ruled that Orly had legal standing

to represent the Orly Trust.  ¶¶ 9-10.

8

In June 2013, Orly was party to a settlement of the 2010 New York action with the

Trump Group (the "Trump/AG Settlement Agreement"). ¶ 14. The Court thereafter entered an

agreed-to Stipulation and Order of Discontinuance with Prejudice of that action. ¶ 16.

According to Dalia (and Sagi), under the Trump/AG Settlement Agreement, the Trump

Group agreed to pay $32.3 million to the AG Group, which included, not just Orly, but also her

father, Arie Genger, and Arnold and David Broser, who (according to Dalia's duplicative

petitions) are creditors to Orly personally and to whom (Dalia and Sagi allege) Orly owes "many

millions of dollars." ¶¶ 17-18.

Dalia alleges that this settlement agreement settled both Orly's personal claims against

the Trump Group as well as any claims the Orly Trust had. ¶¶ 19-20. Moreover, Dalia alleges

that $17.3 million of the settlement payment has been paid, but none of that money was given to

the Orly Trust. ¶ 21-22. The remaining payment of approximately $15 million has not yet been

paid under the terms of the settlement agreement. ¶ 22.

As Dalia admits in the petition in the New Action (as well as in her counter-petition), she

intervened in the 2010 New York action (in August 2014). She moved to have the Orly Trust,

controlled by her, substituted as the plaintiff in that action. By the court's interim order, that

motion was held in abeyance pending the outcome of the Removal Action before this Surrogate's

Court. ¶¶ 26-27.

What Dalia leaves out of her duplicative petitions, but what is a matter of undisputed fact,

is that on behalf of the Orly Trust, Dalia sued the Trump Group in Delaware in 2011, but then

voluntarily and unconditionally dismissed all claims of the Orly Trust against the Trump Group

with prejudice. Bowen Affirm. Ex. E, at ¶ 4 ("The claims brought on behalf of the Orly Genger

1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with

prejudice"). A year after she dismissed the Orly Trust claims in the Delaware action, Dalia

sought to intervene in the 2010 New York action. While her motion to intervene was pending,

the parties in that action entered into the Stipulation and Order of Discontinuance with Prejudice.

At the time that order was entered – and consistent with her own settlement of the Orly Trust

claims against the Trump Group in Delaware – Dalia raised no objection.

Accordingly, Dalia's later challenge of this order was rejected by the Appellate Division.

The appellate court ruled that Dalia failed to object and was forever foreclosed from raising the

issues she tried to raise below in that action (and that she is trying to raise again in her petitions

against Orly):

> Defendant Dalia Genger, as Trustee for the Orly Genger 1993 Trust (Orly
> Trust), failed to articulate any objection to the court's entry of the
> November 25, 2014 order dismissing plaintiff Orly Trust's breach of
> fiduciary duty and unjust enrichment claims against certain defendants,
> and her claim is not properly before this Court. . . In any case, that order
> did not dismiss any claims; rather, it recognized that all claims had
> previously been dismissed or discontinued by prior court orders, dismissed
> the complaint, and severed other viable third party claims, cross claims,
> and counterclaims unrelated to the Orly Trust.

*Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016). *See also* Bowen Affirm. Ex. F

(Dalia's appellate brief).[4]

Furthermore, the Trump/AG Settlement Agreement referenced in the petition in the New

Action refutes Dalia's claim that the settlement payment belongs to the Orly Trust. That written

document expressly notes that the claims related to Orly that are being settled are *only* claims

brought by her in her personal capacity and *not* as a representative of the Orly Trust. Bowen

---

[4]   Facts that are indisputable and a matter of record may properly be considered in support of a motion to dismiss
pursuant to CPLR 3211. *See Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 76 (1st Dep't 2001). "A court may
consider evidentiary material submitted by a [movant] in support of a motion to dismiss a complaint pursuant to
CPLR 3211(a)(7)." *Basile v. Wiggs*, 98 A.D.3d 640, 641 (2d Dep't 2012).

Affirm. Ex. G at 6.  Moreover, references in that document to the Orly Trust were struck-through

(and initialed) to emphasize that the settlement did not involve or relate to the trust at all.  *Id.*[5]

<div align="center">**ARGUMENT**</div>

The New Action is procedurally defective.  Its substantive claims are also barred as a

matter of law on various grounds, including the doctrine of res judicata.  In this brief, the

procedural issues are addressed:  This New Action should be dismissed as duplicative; for

defective service; and as barred by the applicable statute of limitations.  The other defects are

briefed in the motion to dismiss the identical counter-petition (Exhibit 1).

**I.     THIS ACTION SHOULD BE DISMISSED AS DUPLICATIVE**

It is a ground for dismissal if "there is another action pending between the same parties

for the same cause of action."  CPLR 3211(a)(4).  When deciding whether to dismiss a

duplicative action, courts consider whether "both suits arise out of the same subject matter or

series of alleged wrongs."  *Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96 (1st

Dep't 2013).  Complete identity of the parties is unnecessary for dismissal on this ground.  *Id.*

There is no question that this petition is duplicative of the fatally flawed counter-petition, and, as

a matter of judicial economy, it should be dismissed.

The counter-petition is already being adjudicated and, in that sense, it has priority and

should be treated as "first-filed" since it was the first to come before the Court.  Although the

petition in the New Action was filed first, it was dormant and remained unserved while the

parties litigated the counter-petition.  In that way, the New Action is duplicative of the counter-

petition and should be dismissed in favor of the counter-petition, which is further along in

---

[5]   Underlying agreements and documents referenced in a petition/complaint may properly be considered on a
motion to dismiss.  CPLR 3211(a)(1).

litigation (and is on the verge of dismissal). *See, e.g., United Enters. Ltd. v.* Hill, 185 A.D.2d
206, 206 (1st Dep't 1992).

## II.   LACK OF AND DEFECTS IN SERVICE REQUIRE DISMISSAL

New York law required Dalia to serve her petition in the New Action within 120 days of

its filing. Section 306-b of the CPLR (incorporated in the Surrogate's Court Act, SCPA § 102)

provides:

> Service of the . . . petition with a notice of petition or order to show
> cause **shall** be made within one hundred twenty days after the
> commencement of the action or proceeding . . . . If service is not
> made upon a defendant within the time provided in this section, the
> court, upon motion, shall dismiss the action without prejudice as to
> that defendant, or upon good cause shown or in the interest of
> justice, extend the time for service.

CPLR 306-b (emphasis added). The Surrogate's Court Procedure Act has a similar 120-day

service requirement. Section 301 states:

> For the purpose of computing the period of limitation under article
> two of the civil practice law and rules, a proceeding is commenced
> upon the filing of a petition, **provided process is issued and
> service made upon any respondent within one hundred twenty
> days after the date of the filing of the petition.**

SCPA 301(a) (emphasis added).

Here, it is undisputed that Dalia filed her petition in the New Action in June 2016. Her

time to serve the action expired 120 days later, in October 2016. CPLR 306-b; SCPA 301.

Dalia's counsel emailed what she referred to as a "courtesy copy" of the filing to various counsel

in June 2016 (Bowen Affirm. Ex. C), but that is not effective service of process. *See* CPLR 308;

SCPA 307. No respondent waived formal service. Nor has any proof of service been filed.

Because it is undisputed that the petition in the New Action was not served within 120

days – or even within *six times* that number of days – the action is a nullity and should be

12

dismissed. *Goldstein Grp. Holding, Inc. v. 310 E. 4th St. Hous. Dev. Fund Corp.*, 154 A.D.3d 458, 458 (1st Dep't 2017) (affirming dismissal for failure to serve within 120 days).

When Dalia did get around to trying to effect service – in December 2017, only after the argument on Orly's motion to dismiss Dalia's substantially identical counter-petition in the Removal Action – it was half-hearted and thoroughly defective.

First, she served on only a few respondents only the two-page citation, without the underlying petition. The Citation is meaningless without the underlying petition. For example, it refers to "Settlement Proceeds" as a portion of the relief Dalia requests, yet nothing in the citation itself defines that term. That is hardly effective notice of the claims against the respondents.

Second, no service was made as prescribed by the applicable rules, *i.e.*, by personal service or service on a person of suitable age at the respondent's home or business. CPLR 308; SCPA 307. There is no proof of service to the contrary. *See* Bowen Affirm. ¶ 2.

With respect to Orly (the movant here), Dalia's counsel admitted in an email that Dalia made no attempt at service at all. She claims no service is needed. *See* Bowen Affirm. Ex. C. She cites no authority for that contention – and it is self-evidently wrong. Dalia cannot commence a new action without effecting service on all the respondents and interested parties. A basic prerequisite to personal jurisdiction over a respondent in a new action is "service of process upon the [respondent] or [] submission to the jurisdiction of the court by waiver of issuance and service of process, appearance of an adult competent party in person or by attorney or by pleading." SCPA 203.

To the extent Dalia is trying to treat her New Action as an extension of the Removal Action, that is not permitted. If she wanted to add new parties to the Removal Action, where

pleadings are closed, she would first need to survive the pending motion to dismiss and secondly

would need to seek and obtain leave of court.  CPLR 1003; SCPA 312.  Even Dalia's own papers

show that she cannot possibly believe the New Action is not a separate action requiring service

of process.  Rule 207.4(a) of the Uniform Rules for the Surrogate's Court provides:

> The party causing the first paper to be filed shall communicate the
> clerk's file number forthwith to all other parties to the proceeding;
> service of the citation bearing the file number shall be sufficient.
> Thereafter such number shall appear on the outside cover and first
> page to the right of the caption of every paper tendered for filing in
> the proceeding.  The caption also shall contain the title of the
> proceeding.

Rule 207.4(a).  Here, the Citation Dalia obtained in December 2017 complies with this rule, as it

bears the unique file number that was assigned to this matter (with its "/E" suffix) at the time

Dalia filed her 2016 Petition, which is a different file number than that assigned to the Removal

Action.

In light of the utter contempt Dalia has shown for orderly procedure, basic requirements

of due process and the procedural rules of this Court and the exorbitant 18-month delay between

filing and her languid and sloppy "service," Dalia cannot possibly show "good cause" to extend

the 120-day time limit for service of process – certainly not to extend it over six-fold.  CPLR

306-b.  No Court should excuse such contempt.

### III.   DUE TO VIOLATION OF THE 120-DAY RULE, PETITIONER'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

New York courts apply a three-year statute of limitations for fiduciary duty claims when

a plaintiff seeks only money damages, as Dalia does here.  CPLR 214; *Kaufman v. Cohen*, 307

A.D.2d 113, 118 (1st Dep't 2003) ("where suits alleging a breach of fiduciary duty seek only

money damages, courts have viewed such actions as alleging 'injury to property,' to which a

three-year statute of limitations applies").  The statute of limitations for fiduciary duty claims

begins to run as of the date of the alleged breach. *See IDT Corp. v. Morgan Stanley*, 12 N.Y.3d 132, 140 (2009).

Dalia's claims for breach of fiduciary duty and for aiding and abetting that breach are premised on the recovery of proceeds from a June 2013 settlement agreement. ¶¶ 17-18, 28-37. The rest of her causes of action, moreover, all are dependent on this central claim of breach of fiduciary duty. Dalia learned of the settlement no later than "months" after it was executed, after a court ordered it to be produced, as Dalia alleges. ¶ 17. Therefore, even if some sort of "discovery rule" applied to Dalia's fiduciary duty claim, the statute of limitations for her claim here expired at the latest three years after "months" after June 2013 -- that is, June 2016 or some "months" thereafter.

Likely recognizing this June 2016 deadline, Dalia filed the petition in this New Action that very month. However, as shown above, she failed to serve it or even attempt to serve it within the 120-day period allowed by SCPA 301. That statute dictates that the statute of limitations is tolled on the filing of a petition ***but only if*** the petition is served within 120 days thereafter. There is no "good-cause" or other statutory exception to this requirement. *See* SCPA 301(a).

Here, Dalia unquestionably failed to meet this 120-day requirement. Thus, the three-year statute of limitations bars the fiduciary duty claims. Moreover, all of Dalia's claims in this New Action are likewise time barred since all of them, whether dressed up as equitable claims or not, are dependent on her claim of breach of fiduciary duty.

15

## IV.    RES JUDICATA AND DOCUMENTARY EVIDENCE ALSO BAR THIS ACTION

For the reasons previously briefed in the Removal Action, the claims in the petition in

this New Action are also barred by res judicata and are subject to dismissal based on undisputed

documentary evidence  *See* Ex. 1, hereto, at pp. 12-14.

## V.    SANCTIONS ARE WARRANTED

Dalia has no good faith basis for such tactics that are so obviously contrary to basic rules

of procedure.  It is all too apparent that this action was commenced in bad faith for the purposes

of delay and harassment.  She should be sanctioned. 22 NYCRR 130-1.1; *Bell v. State*, 96

N.Y.2d 811, 812 (2001) (sanctioning party for "a chain of frivolous attempts to seek relief from

this Court," noting proceeding "is yet another example of [party's] continued strategy to delay

the resolution of the litigation").  At the very least, she and her counsel should be ordered to pay

all respondents' attorney's fees for their time in reviewing the defective petition and citation,

preparing motions to dismiss and appearing in Court to answer the citation.

16

## CONCLUSION

For the foregoing reasons, this Court should dismiss this New Action in its entirety, with

prejudice, and should sanction Dalia and award Orly such other and further relief as it deems just

and proper.

Dated:   New York, New York
         February 5, 2018

                                    KASOWITZ BENSON TORRES LLP

                                    By: _____
                                        Michael Paul Bowen
                                        Andrew R. Kurland
                                        1633 Broadway
                                        New York, New York 10019
                                        (212) 506-1700

                                    *Attorneys for Petitioner Orly Genger*

# EXHIBIT 1

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11). | File No.:   2008-0017<br><br>Surrogate Nora S. Anderson |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO DISMISS DALIA GENGER'S CROSS-PETITION

Petitioner Orly Genger ("Orly") submits this memorandum in support of her motion, pursuant to SCPA § 102 and CPLR 3211(a)(1), (5) and (7), to dismiss the cross-petition of Dalia Genger ("Dalia").[1]

### PRELIMINARY STATEMENT

After nine years of pointless and wasteful procedural wrangling by respondents Dalia (Orly's mother) and Sagi (Orly's brother) – designed to forestall Dalia's removal as trustee – Dalia has now filed a frivolous "cross-petition" against Orly, the very beneficiary whose interests Dalia has a fiduciary duty to protect. The absurdity of a trustee suing her own beneficiary makes clear that this is nothing more than the latest in a long line of improper, bad faith procedural tactics to delay her inevitable removal.

This removal action implicates two identical 1993 family trusts created by the Genger family, one for Orly (the Orly Trust) and the other for her brother Sagi (the Sagi Trust). In her capacity as the trustee for the Orly Trust, Dalia breached her fiduciary duties and conspired with Sagi, in a clear conflict of interest, to deplete the Orly Trust of all of its assets. During Dalia's tenure as trustee, Sagi received millions from the family assets in these trusts while the Orly

---

[1]   Accompanying this memorandum of law is the Affirmation of Michael Paul Bowen, dated September 8, 2017, with exhibits ("Bowen Affirm."). A copy of Dalia's cross-petition is Exhibit A to that affirmation. All citations to ¶ ___ are citations to the cross-petition.

Trust was rendered penniless and encumbered with millions of dollars of debt for legal fees based on Dalia's sham maneuverings with Sagi. Orly has never received a penny from her trust while Sagi has received tens of millions of dollars from his trust even though the trusts were created on the same day with equal division of family assets. In this context, Dalia's claim that this cross-petition is supposedly in good faith and in the best interests of Orly and her trust would be laughable were it not so self-evidently pernicious and legally meritless. This type of protection no one needs, especially not a daughter estranged from her own mother who has for years acted in bad faith and with conflicted interests to favor her son at the expense of her own daughter's financial well-being and in violation of her fiduciary and legal duties as trustee.

Dalia should not be permitted to continue to draw out this action for her removal – and to subvert the Surrogate's Court, the law and her legal duties – through such an obviously frivolous cross-petition. The pleading is facially deficient and otherwise barred as *res judicata*. It should be summarily – and immediately – dismissed with prejudice.

## RELEVANT FACTS

### A.   Background and Procedural Posture

Orly is the beneficiary of the Orly Genger 1993 Trust (the "Orly Trust"). Orly's daughter, born earlier this year, is also a beneficiary of the Orly Trust. The respondent and purported cross-petitioner, Dalia, has been the sole trustee of the Orly Trust since January 2008, when the prior trustee appointed her over Orly's objection. Orly and Dalia have been estranged for more than a decade. Dalia did not attend her daughter's wedding last year. Nor has Dalia met Orly's newborn child, Dalia's granddaughter.

The root of that estrangement is no mystery. Supposedly in her role as trustee, Dalia has repeatedly sued Orly at the bidding of her son, Sagi. After years of litigation, and despite Dalia's siding with him against Orly, Sagi has now been adjudicated after trial and on summary

2

judgment in two separate legal actions to have committed fraud against, and to have breached his

fiduciary duties to, Orly, which determinations were upheld on appeal. *Orly Genger v. Sagi*

*Genger*, Index No. 100697/08, 2016 WL 551444 (Sup. Ct. N.Y. Cnty. Feb. 10, 2016), *aff'd* 144

A.D.3d 581 (1st Dep't 2016); *Orly Genger v. Dalia Genger et al.*, Index No. 109749/09, 2016

WL 1407903 (Sup. Ct. N.Y. Cnty. April 8, 2016), *aff'd* 147 A.D.3d 443 (1st Dep't 2017).

Because of Dalia's role in perpetrating Sagi's now proven fraudulent schemes against

Orly, she has been embroiled in litigation against her own daughter, and the very beneficiary to

whom she owes fiduciary duties, for almost a full decade. Her conduct in that litigation – and

her siding with Sagi in his now proven unlawful scheme against his own sister – has

demonstrated beyond cavil her unfitness to continue as trustee of the Orly Trust. Indeed, every

court that has had occasion to address this issue has held that she has a clear conflict of interest

and is unfit to serve as trustee. *See, e.g.*, *Orly Genger v. Dalia Genger*, 120 A.D.3d 1102, 1104

(1st Dep't 2014) (by entering into certain so-called settlement agreements "on behalf of the Orly

Trust, of which she was sole trustee, Dalia had a conflict of interest"); *Orly Genger v. Dalia*

*Genger*, Index No. 109749/09, July 3, 2014 Decision and Order at 3-4 (Sup. Ct. N.Y. Cnty. July

3, 2014) ("Dalia, as trustee of the Orly Trust, has often sided with her son Sagi in these

actions . . . . Dalia may no longer be able to serve as trustee, having failed to disclose the

conflict of interest [found by the First Department] to her principal, Orly. And, as noted by the

First Department, Orly has petitioned the Surrogate's Court to remove Dalia as trustee").

The only thing holding up Dalia's removal is finalizing this removal proceeding for an

adjudication on the merits – exactly what Dalia is trying now, once again, to forestall.

Over eight years ago, shortly after Dalia became trustee of the Orly Trust, Orly petitioned

this Court to remove her. That petition was dismissed as premature by Surrogate Roth, who

concluded that Dalia had not yet acted against Orly's interests at the time. After that decision,

Dalia's malfeasance began in earnest. Among other bad acts and conflicts of interest, Dalia

assisted Sagi in selling the Orly Trust's principal asset (viz., shares of Trans-Resources, Inc. or

"TRI") held by a Genger family company, TPR Investment Associates, Inc. ("TPR"). That sale

enriched Sagi's trust, the Sagi Genger 1993 Trust (the "Sagi Trust") at the expense of the Orly

Trust, precipitating years of litigation that remains ongoing to this day. *See generally Orly*

*Genger v. Dalia Genger, et al.*, Index No. 109749/09 (Sup. Ct. N.Y. Cnty. 2009). Dalia also

betrayed Orly by participating in a sham auction of shares of TPR, the sole remaining (although

depleted) asset of the Orly Trust. *See id.*, 2016 WL 1407903, at *2 (Sup. Ct. N.Y. Cnty. April 8,

2016); *aff'd* 147 A.D.3d 443 (1st Dep't 2017). She then also participated in a scheme with Sagi

to encumber the Orly Trust with significant debt. *See Orly Genger v. Dalia Genger*, 120 A.D.3d

at 1104.

   As a result of these unlawful schemes (in which Dalia has been directly implicated) the

Sagi Trust was enriched in an amount in excess of $44 million, at least, while the Orly Trust was

stripped of all of its assets and rendered valueless. To this day, Orly has never received a dime

from the Orly Trust, while Sagi and Dalia each have millions of dollars secured in accounts in

offshore tax-havens. *See Orly Genger v. Dalia Genger, et al.*, Index No. 109749/09, Sept. 12,

2016 Decision and Order on Attachment (Bowen Affirm. Ex. B).

   Dalia again acted against Orly's interests by assisting Sagi in suing Orly in federal court

in 2014. In that action, Dalia falsely claimed to be impoverished. Based on that false claim,

Sagi sued Orly, invoking a writing that he created. He claimed that document obligated Orly to

reimburse half of his need-based payments to Dalia, payments he and Dalia swore were made

supposedly because she needed the money to live. That lawsuit ended in a judgment against

4

Orly totaling over $300,000. *Sagi Genger v. Orly Genger*, 76 F. Supp. 3d 488 (S.D.N.Y. 2015)

*aff'd as modified*, 663 Fed. Appx. 44 (2d Cir. Sept. 29, 2016).

After Sagi obtained that judgment, discovery in the ongoing state actions revealed that

Dalia had at the time, and still has, millions of dollars in her offshore accounts controlled by

Sagi. The entire federal action was based on a lie – Dalia's lie – and her failure to discharge her

duty of loyalty and trust to Orly.

On June 22, 2009, Orly renewed her petition before this Court to remove Dalia as trustee.

Dalia and Sagi engaged in years of procedural objections, effectively stalling the adjudication of

this petition for Dalia's removal. Dalia moved to dismiss Orly's renewed petition for failure to

join what she claimed to be a necessary party, the Sagi Trust. After the Court directed the

joinder of the Sagi Trust, Orly served its trustee – David Parnes, Sagi's best friend – with process

by registered mail in Israel, but Parnes (at Sagi's direction) moved to dismiss for lack of personal

jurisdiction, arguing insufficient service of process under the Hague Convention. This motion

was granted in 2015. Orly then served Parnes with process in a manner acceptable to this Court

under the Hague Convention, costing additional time and expense.

Following this, both respondents filed new motions to dismiss for failure to state a claim.

Finally, at the end of June 2017, this Court denied these motions in their entirety, allowing this

action to proceed finally on the merits, eight years after it was originally commenced by Orly. *In

the Matter of the Application of Orly Genger to Remove Dalia Genger as Trustee of the Orly

Genger 1993 Trust Established on December 13, 1993 by Arie Genger, Grantor*, File No. 2008-

0017, June 21, 2017 Decision (Anderson, S.).

Dalia continues to coordinate with Sagi against Orly. At the end of July, they filed

essentially identical answers to Orly's petition, which answers were drafted by Sagi's counsel,

John Dellaportas. In fact, Dellaportas even signed Dalia's answer, signing the name of Dalia's

counsel, Judith Bachman, and indicating as much with his initials (see excerpt below and the

Answer attached at Bowen Affirm. Ex. C).

Dated: New City, New York
July 28, 2018

                              LAW OFFICES OF
                              JUDITH LISA BACHMAN, ESQ.


                    By: _____
                              Judith Lisa Bachman, Esq.
                    254 S. Main Street
                    Suite 406
                    New City, New York 10017
                    (845) 639-3210
                    *Counsel to Respondent Dalia Genger*

In a telling typographical error, the signature block has the zip code of Dellaportas' Manhattan

office (10017), not the correct zip code for Bachman's office in New City in upstate New York

(10956).

On August 12, 2017, Dalia filed an amended answer, including her cross-petition. This

time, the pleading bears the purported signature of Bachman, although the signature block still

has the same typographical zip code error and includes a different suite number (306 instead of

406). *See* Bowen Affirm. Ex. A (excerpt below):

6

Dated: New City, New York
   August 12, 2017

             *[signature]*

             Judith Lisa Bachman, Esq.
             254 S. Main Street
             Suite 306
             New City, New York 10017
             (845) 639-3210
             *Counsel to Respondent Dalia Genger*

This signature, moreover, does not appear to be Bachman's.  It does not compare with Bachman's signature that appears alongside her notary stamp on the Verification for this document.  *Id.* (excerpt below):

Sworn to before me this
1*2th* day of August, 2017

*[signature]*
Notary Public

             Judith Bachman
          Notary Public, State of New York
           No. 02-BA6048319
          Qualified in Rockland County
        Commission Expires Sept. 25, 200*[2018]*

*[signature]*
Judith Lisa Bachman, Esq.
254 S. Main Street
Suite 406
New City, New York 10017
(845) 639-3210
*Counsel to Respondent Dalia Genger*

These inconsistencies and typos – not to mention the different signatures – reveal that even to this day, in opposing her removal despite the consensus of the courts against her, Dalia is still doing the bidding of Sagi.  In doing so, she is acting contrary to her fiduciary duties and continually demonstrating her disqualifying conflicts of interests.

**B. The Cross-Petition's Fact Allegations and Related Undisputed Facts**

In suing Orly, the trust's own beneficiary, Dalia, the trustee, has once again violated her
fiduciary duties, this time instituting a facially and legally meritless purported cross-petition.
The cross-petition purports to state seven causes of action, each in a separate count: Breach of
Fiduciary Duty, Breach of Loyalty, Turnover, Accounting, Unjust Enrichment, Self-Dealing and
something she calls "Successor Trustee." (In yet another typographical error, this last count, the
seventh, is repeated twice.)

The fact allegations in the cross-petition, taken as true for purposes of this motion, are as
follows:

According to the cross-petition, Orly instituted an action in 2010 in the Supreme Court of
New York both in her individual capacity as beneficiary and also derivatively on behalf of the
Orly Trust (the "2010 New York action"). That action was brought against the purchasers of the
TRI shares (the "Trump Group"). In that proceeding, the court ruled that Orly had legal standing
to represent the Orly Trust. ¶¶ 8-10.

In June 2013, Orly was party to a settlement of the 2010 New York action with the
Trump Group (the "Trump/AG Settlement Agreement"). ¶ 12. The Court thereafter entered an
agreed-to Stipulation and Order of Discontinuance with Prejudice of that action. ¶ 14.

According to Dalia (and Sagi), under the Trump/AG Settlement Agreement, the Trump
Group agreed to pay $32.3 million to the AG Group, which included, not just Orly, but also her
father and Arnold and David Broser, who are creditors (according to the cross-petition) to Orly
personally and to whom (Dalia and Sagi allege) Orly owes "many millions of dollars." ¶¶ 15-16.

The cross-petition alleges that this settlement agreement settled both Orly's personal
claims against the Trump Group as well as any claims the Orly Trust had. ¶¶ 17-18. Moreover,

Dalia alleges that $17.3 million of the settlement payment has been paid, but none of that money

was given to the Orly Trust. The remaining payment of approximately $15 million has not yet

been paid under the terms of the settlement agreement. ¶¶ 20-21.

As Dalia admits in the cross-petition, she intervened in the 2010 New York action (in

August 2014). She moved to have the Orly Trust, controlled by her, substituted as the plaintiff in

that action. By the court's interim order, that motion was held in abeyance pending the outcome

of this Surrogate's action. ¶¶ 23-24.

What Dalia leaves out of her cross-petition, but what is a matter of undisputed fact, is as

follows:

On behalf of the Orly Trust, Dalia sued the Trump Group in Delaware in 2011. *Dalia

Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.*, Case No. 6906

(Del. Ch. Ct. Oct. 4, 2011) (Strine, Ch.). In August 2013, Dalia voluntarily and unconditionally

dismissed all claims of the Orly Trust with prejudice. Bowen Affirm. Ex. D, at ¶ 4 ("The claims

brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the

Trump Group are dismissed with prejudice"). A year after she dismissed the Orly Trust claims

in the Delaware action, Dalia sought to intervene in the 2010 New York action. While her

motion to intervene was pending, the parties in that action entered into the Stipulation and Order

of Discontinuance with Prejudice. At the time that order was entered – and consistent with her

own settlement of the Orly Trust claims against the Trump Group in Delaware – Dalia raised no

objection.

Later, Dalia appealed that discontinuance order to the Appellate Division, arguing that

she should be permitted to pursue her claim that the $32 million the Trump Group had paid

under the settlement in that action belongs to the Orly Trust. The Appellate Division disagreed.

It upheld the Order, ruling that Dalia had failed to object and was forever foreclosed from raising

the issues she tried to raise below in that action (and that she is trying to raise again here):

> Defendant Dalia Genger, as Trustee for the Orly Genger 1993 Trust (Orly
> Trust), failed to articulate any objection to the court's entry of the
> November 25, 2014 order dismissing plaintiff Orly Trust's breach of
> fiduciary duty and unjust enrichment claims against certain defendants,
> and her claim is not properly before this Court. . . In any case, that order
> did not dismiss any claims; rather, it recognized that all claims had
> previously been dismissed or discontinued by prior court orders, dismissed
> the complaint, and severed other viable third party claims, cross claims,
> and counterclaims unrelated to the Orly Trust.

*Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016). *See also* Bowen Affirm. Ex. E

(Dalia's appellate brief).[2]

Furthermore, the Trump/AG Settlement Agreement referenced in the cross-petition

refutes Dalia's claim that the settlement payment belongs to the Orly Trust. That written

document expressly notes that the claims related to Orly that are being settled are *only* claims

brought by her in her personal capacity and *not* as a representative of the Orly Trust. Bowen

Affirm. Ex. F at 6. Moreover, references in that document to the Orly Trust were struck-through

(and initialed) to emphasize that the settlement did not involve or relate to the trust at all. *Id.*[3]

## ARGUMENT

On this motion to dismiss pursuant to CPLR 3211(a)(7), any well-pleaded allegations in

the cross-petition are to be taken as true. *See Kupersmith v. Winged Foot Golf Club, Inc.*, 38

A.D.3d 847, 848 (2d Dep't 2007). "However, allegations consisting of bare legal conclusions, as

well as factual claims inherently incredible or flatly contradicted by documentary evidence are

---

[2]    Facts that are indisputable and a matter of record may properly be considered in support of a motion to dismiss pursuant to CPLR 3211. *See Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 76 (1st Dep't 2001). "A court may consider evidentiary material submitted by a [movant] in support of a motion to dismiss a complaint pursuant to CPLR 3211(a)(7)." *Basile v. Wiggs*, 98 A.D.3d 640, 641 (2d Dep't 2012).

[3]    Underlying agreements and documents referenced in a petition/complaint may properly be considered on a motion to dismiss. CPLR 3211(a)(1).

not entitled to such consideration." *Lovisa Constr. Co. v. Metro. Transp. Auth.*, 198 A.D.2d 333, 333 (2d Dep't 1993). *See also Braddock v. Braddock*, 60 A.D.3d 84, 86 (1st Dep't 2009); *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 (1994).

Dismissal pursuant to CPLR 3211(a)(1) is warranted "if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." *Morgenthrow & Latham v. Bank of N.Y. Co.*, 305 A.D.2d 74, 78 (1st Dep't 2003). Where legal conclusions and factual allegations are refuted by documentary evidence, they are not to be presumed as true or accorded every favorable inference upon a motion to dismiss and the question presented is not whether the allegations have stated a cause of action, but rather, whether the party has a cause of action. *Id.* Dalia's cross-petition is dependent on the correct construction of the Trump/AG Settlement Agreement, which, by its plain language, refutes Dalia's operative claims. As such, it constitutes "documentary evidence" under CPLR 3211(a)(1), as the contents of this fully executed agreement are "essentially undeniable." *Fontanetta v. John Doe 1*, 73 A.D.3d 78, 85 (2d Dep't 2010); *see also 150 Broadway N.Y. Assoc., L.P. v Bodner*, 14 A.D.3d 1, 5 (1st Dep't 2004).

Claims are properly dismissed as barred by *res judicata* under CPLR 3211(a)(5) when the claim was decided or could have been decided in a prior proceeding in which there was a "full and fair opportunity" to contest the issue. *In re Hunter*, 4 N.Y.3d 260, 269 (1st Dep't 2005). In determining whether collateral estoppel bars relitigation, "[t]he party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination." *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001); *Pahmer v. Touche Ross and Co.*, 271 A.D.2d 371, 372 (1st Dep't 2000).

I.   **The Cross-Petition Fails to State a Claim
     For Breach of Fiduciary Duty and Loyalty**

      Count I (breach of fiduciary duty) and Count II (breach of loyalty) have no legal basis.

As a matter of law, the beneficiary of a trust does not owe that trust any fiduciary duty or duty of

loyalty.  To the contrary, those duties are owed by the trustee – here, Dalia – not the beneficiary

(Orly).  *See, e.g.*, *Mercury Bay Boating Club Inc. v. San Diego Yacht Club*, 76 N.Y.2d 256, 270

(1990) ("We have described a fiduciary's duty as requiring not honesty alone, but the punctilio

of an honor the most sensitive.  This strict standard is the usual and appropriate measure of a

trustee's fiduciary obligations because the trustee must administer the trust for the benefit of the

beneficiaries and . . . owes the beneficiary an undivided duty of loyalty").  For that reason, these

counts fail to state a claim as a matter of law and must be dismissed.

      To the extent these causes of action depend on imputing such duties to Orly as an alleged

"*de facto* trustee" (*see* ¶ 11) for purposes of the derivative claims in the New York action, there

is no valid fact basis for making that claim because Orly never compromised any trust claims in

that action (as is demonstrated below).

II.   **The Equitable Claims Are Precluded by
      Documentary Evidence and Res Judicata**

      The next four counts all sound in equity:  to wit, Turnover (Count III), Accounting

(Count IV), Unjust Enrichment (Count V), and Self-Dealing (Count VI).  Each of these claims is

based on and presupposes that the Trump/AG Settlement Agreement settled claims that belong to

the Orly Trust.  Thus, for example, an element of each one of these claims is that Orly was acting

on behalf of and/or took for herself an asset belonging to the Orly Trust.  *See, e.g.*, *Mandarin

Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (unjust enrichment requires a showing

that defendant was enriched by taking an asset that rightfully belonged to plaintiff); SCPA

§ 2103 (petition for turnover may be made with respect to assets which belong to the trust

estate); *Trepuk v. Frank*, 104 A.D.2d 780, 780-81 (1st Dep't 1984) (an accounting is an equitable

action where plaintiff is entitled to obtain an account of assets which were misappropriated);

*Baum v. Lamborn*, 203 A.D. 86, 87 (1st Dep't 1922) (same).

But that is demonstrably not the case here. The settlement agreement itself expressly

notes that no trust claims are subject to the settlement. *See* Bowen Affirm. Ex. F at 6.

In addition, these claims are barred by the doctrine of *res judicata*. Dalia has twice raised

the issue of what claims the Orly Trust had against the Trump Group, once in the Delaware

action that Dalia settled with prejudice, and the second time in the 2010 New York action noted

above. In the 2010 New York action, the First Department expressly rejected Dalia's attempt to

assert the same claim she is making in this cross-petition: that the $32.3 million settlement

payment belongs to the Orly Trust. *Cf.* Bowen Affirm. Ex. G at 1 (Dalia's substitution motion:

"Dalia respectfully requests an order pursuant to CPLR 2701 directing the settlement fund from

the Trump Group be paid into court since . . . some or all of the settlement proceeds with the

Trump Group belong to . . . the Orly Trust"), *with* Bowen Affirm. Ex. A (Dalia cross-petition,

¶ 19: "none of the aforementioned $32.3 million (the 'Settlement Proceeds') has been remitted

to the Orly Trust"). *See Genger*, 144 A.D.3d at 581.

Under the doctrine of *res judicata*, any claim that was brought or could have been

brought in a prior concluded legal action is barred in the interest of finality. *In re Hunter*, 4

N.Y.3d at 269. Here, Dalia has the burden to show that she did not have a "full and fair

opportunity" to litigate her claim that the $32.3 million in settlement proceeds belongs to the

Orly Trust. *See Pahmer*, 271 A.D.2d at 372 ("Plaintiffs, in seeking to avoid the bar of res

judicata, have failed to satisfy their burden of establishing that they were not afforded a full and

fair opportunity to litigate their claims in the prior action.").

Dalia cannot meet that burden here. She made this same argument to the First Department which, in denying her appeal, specifically ruled that "all [Orly Trust] claims had previously been dismissed or discontinued by prior court orders." *Genger*, 144 A.D.3d at 581. Having been previously "dismissed or discontinued," these claims are precluded.

## III.   The Made-Up Successor Trustee Count is Not Cognizable

The cross-petition includes a cause of action, styled "Successor Trustee." There is no such claim at law or equity.

At best, this is a question of remedy in the event *Orly's* petition (*not* the cross-petition) is granted. Once Dalia is judicially removed, the question of appointing the successor ensues. In her cross-petition, Dalia cites "article SEVENTH" of the trust instrument in support of this supposed "cause of action." ¶¶ 65, 70. But the terms of the trust plainly provide that only a current, validly serving trustee has the ability to appoint his or her successor; nothing in the agreement allows an *ousted* trustee to do so. In any event, the law is clear that, upon judicial removal, it is for the Court to designate a successor trustee. *See* SCPA § 1502.

Furthermore, what Dalia seeks is absurd. No court, especially a Surrogate sitting in equity, would permit a trustee to select her successor even though that trustee has been adjudicated to have so fundamentally betrayed her trust and duties as to warrant removal.

Because Count VII is, in fact and law, no cause of action cognizable under our laws, it too must be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Dalia's cross-petition in its entirety,

with prejudice, and award Orly such other and further relief as it deems just and proper.

Dated:    New York, New York
          September 8, 2017

<div align="center">

KASOWITZ BENSON TORRES LLP

By: _____
    Eric D. Herschmann
    Michael Paul Bowen
    Andrew R. Kurland
    1633 Broadway
    New York, New York 10019
    (212) 506-1700

*Attorneys for Petitioner Orly Genger*

</div>

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

---

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

    -against-

Orly Genger, et al.,

    Respondents.



New York County Surrogate's Court
MISCELLANEOUS DEPT.

FEB 0 6 2018

FILED

Clerk_____

---

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT
## ORLY GENGER'S MOTION TO DISMISS DALIA GENGER'S 2016 PETITION

KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NY 10019
212-506-1700

ATTORNEYS FOR    *Respondent*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

 -against-

Orly Genger, et al.,

    Respondents.

## <u>AFFIRMATION OF MICHAEL PAUL BOWEN</u>

MICHAEL PAUL BOWEN, duly admitted to practice law before the courts of the State of

New York, affirms the following to be true under penalties of perjury pursuant to CPLR 2106:

1.      I am counsel of record to respondent Orly Genger ("Orly"). I submit this

affirmation in support of Orly's motion to dismiss the petition of petitioner Dalia Genger.

2.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of Dalia Genger's Petition

for Turnover of Trust Property and Other Relief, dated June 13, 2016, which counsel for Dalia

Genger has represented was filed in this Court. As of Friday, February 2, 2018, no proof of

service had been filed with respect to service on Orly of either this petition or the corresponding

Citation that Dalia purportedly obtained from the Court in December 2017.

3.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of an email from Dalia

Genger's counsel, Judith Bachman, dated June 17, 2016. Upon information and belief, no

response to this email was ever sent to Ms. Bachman by me or any other of the recipients of the email.

4.    Attached hereto as <u>Exhibit C</u> is a true and correct copy of an email from Dalia Genger's counsel Judith Bachman, dated January 26, 2018.

5.    Attached hereto as <u>Exhibit D</u> is a demonstrative "redline" comparison between the June 2016 petition in this action and Dalia Genger's counter-petition against Orly from File No. 2008-0017, which Dalia filed in August 2017. Included in this redline are all the fact allegations in each the 2016 petition and the 2017 cross-petition, as well as the causes of action which appear in both.

6.    Attached hereto as <u>Exhibit E</u> is a true and correct copy of the Stipulation and Proposed Order of Dismissal in the action *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.*, Delaware Chancery Court, C.A. No. 6906-CS, ordered by Chancellor Strine on August 30, 2013.

7.    Attached hereto as <u>Exhibit F</u> is a true and correct copy of the First Department appellate Brief for Defendant-Appellant Dalia Genger, dated December 15, 2014, from the action *Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/10.

8.    Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Settlement Agreement and Release entered into as of June 16, 2013 among Orly Genger and members of the so-called "Trump Group," and others.

Dated: New York, New York
      February 5, 2018



Michael Paul Bowen

# EXHIBIT A

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X

In the Matter of

      DALIA GENGER,
      Trustee of the Orly Genger 1993 Trust,

              Petitioner,                        Index No.

                    -against-

      ORLY GENGER, ARIE GENGER, GLENCLOVA        
INVESTMENT COMPANY, TR INVESTORS, LLC       **PETITION FOR**
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,    **TURNOVER OF**
TRANS-RESOURCES, INC., ARNOLD BROSER,       **TRUST PROPERTY**
DAVID BROSER, JOHN DOES. 1-20, and          **AND OTHER RELIEF**
JANE DOES 1-20,

              Respondents,
------------------------------------------------------------------------X

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

      It is respectfully alleged:

### The Parties

      1.     Petitioner, Dalia Genger, resides and is domiciled at 200 E. 65th Street, in the City

of New York, County of New York and State of New York.

      2.     Petitioner is the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

      3.     Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the

Orly Trust. The remaining respondents ("Respondents") are interested parties who wrongfully

aided and abetted Orly in the misappropriation of Orly Trust assets.

### Jurisdiction and Venue

      4.     This Court has subject matter jurisdiction pursuant to the Surrogate's Court

Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

-1-

5.      Venue in this County is proper pursuant to, inter alia, SCPA 207(1).

### The Orly Trust

6.      On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust
pursuant to a written Trust Agreement executed by Arie, as Grantor, the two prior Trustees,
Lawrence M. Small and Sash A. Spencer (the "Trust Agreement"). (Ex. 1.)

7.      Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust
funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the
benefit of Orly's creditors (the "Trust Agreement Obligations").

8.      The Respondents were aware of the Trust Agreement Obligations.

### Orly Trust Derivative Litigation

9.      In July 2010, Orly instituted a derivative action the Supreme Court, New York
County entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010, by which she
brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust
Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's ownership in
shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her
pleading to assert claims against, inter alia, the purchasers of those TRI shares, Respondents
Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR
Equity II, and TRI (collectively, the "Trump Group Entities"). (Ex. 2.)

10.     On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the
Supreme Court, New York County adopted Orly's position that she "has legal standing to
represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the
Surrogate's Court rules otherwise in an appropriate action there." (Ex. 3.)

11.     Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain

Petitioner from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly

Trust before the Delaware Chancery Court, by which Petitioner was seeking a declaration of

obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek,

among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to

Orly, Petitioner's "contention that the Orly Trust is not a party to this action ... is meritless.

Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York

County, agreed, restraining Petitioner from pursuing the action in the Delaware Chancery Court

by which the Orly Trust had sought the TRI shares. (Ex. 4.)

14.    12.    As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative

litigation' brought by Petitioner herself on behalf of the Orly Trust, Orly became the de facto

trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

13.    Respondents knew that Orly owed fiduciary duties to the Orly Trust.

### Discontinuance With Prejudice of
### The Orly Trust Claims

14.    In June 2013, Orly disclosed that she had "entered into a confidential settlement

agreement to resolve all issues among the stipulating parties," which included the Trump Group

Entities. However, the settlement terms were left undisclosed. Petitioner sought production of

the settlement agreement, but Orly refused to produce it, claiming the document was too

"confidential." When it was proposed that the document be produced under "Attorney's Eye's

Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement

Agreement to Justice Jaffe, unsolicited, for in camera inspection.

15.    By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the

Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material

term of the agreement among the settling parties was the dismissal of *all* claims presently

-3-

pending against one another, in whatever capacity they were brought. [If the settlement
stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims
against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding
such claims from the claims that are to be dismissed is not what the Trump Group [Entities]
bargained and paid for in the settlement . . ." (Ex. 5, emphases in original.)

16.    Neither Orly nor any of the other settling parties disagreed with counsel's
statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe
signed the requested Stipulation and Order of Discontinuance with Prejudice. (Ex. 6.)

### The Trump Group Entities Settlement Agreement

17.    Months later, as part of a parallel proceeding, the United States District Court
directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump
Group Entities Settlement Agreement"). (Ex. 7.) The document revealed that Orly had settled
her claims against the Trump Group Entities both "in her individual capacity and in her capacity
as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which this
Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the
agreement was "to resolve all issues, disputes and disagreements between [Orly and the other
Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most
significantly those TRI shares claimed by the Orly Trust.

18.    In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-
called "AG Group," consisting of Orly, her father Arie, and Respondents Arnold and David
Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of
Orly personally, to whom Orly owes many millions of dollars. The payments were broken up
into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

-4-

According to the federal court, which reviewed the document, "Orly monetized her beneficial

interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." (Ex. 8.)

19.    The Trump Group Entities have since reaffirmed that the federal court construed

the Trump Group Entities Settlement Agreement correctly:

> "[Any suggestion] that the confidential settlement agreement *might* only dis-miss
> Orly's individual claims against the Trump Group [Entities], but not resolve the
> Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is
> counterfactual. This Court has already held that certain of Orly's claims in this
> action, including the remaining claims, are derivative in nature, and may be
> maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the
> claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie
> agreed to the dismissal of all claims presently pending against one another. This
> agreement is memorialized in the Second Amended Stipulation of
> Discontinuance.

20.    Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement

Agreement, Orly settled  and released all of her claims in the Trump Group Entities Settlement in

both her derivative and individual capacities. (Ex. 7, p. 10: Orly releasing the Trumps "in all

capacities.")  In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the

same, which she later did, advising the Delaware Chancery Court that she favored dismissal of

Petitioner's action on behalf of the Orly Trust. The case was dismissed.

### The Settlement Proceeds

21.    Under applicable law, the proceeds of a settlement obtained in a derivative

lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in

this case, Orly personally).  Nonetheless, to date, none of the aforementioned $32.3 million (the

"Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties

indicated an intention to do so in the future.

22.    At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group

Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that

$15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. (Ex. 9, pp. 10-11.)

23.     In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

24.     Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. Orly failed to comply with these duties and obligations. Respondents were aware of, and aided and abetted, Orly's breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

25.     In addition to the named Respondents, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof. Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.

### Petitioner's Substitution Motion

26.     In order to protect the rights of the Orly Trust, Petitioner moved in the Supreme Court, New York County, for an order permitting it to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed the Petitioner's motion, on the ground, inter alia, that she is seeking to remove the Petitioner as Trustee of the Orly Trust.   By Interim Order dated May 7,

-6-

2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of Orly's removal petition. (Ex. 10.)

27.     At the March 25, 2015 hearing on Petitioner's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. (Ex. 9, p. 28: "it sounds like that ship has sailed").   Accordingly, Petitioner brings this Petition seeking, inter alia, monetary damages for misappropriation of Orly Trust assets.   To the extent such Settlement Proceeds are recoverable, Petitioner seeks turnover of those funds for the Orly Trust.

### Count I: Aiding and Abetting Breach of Fiduciary Duty
### Against All Respondents

28.     The allegations contained in paragraphs 1 through 27 hereinbefore are realleged as if fully set forth herein.

29.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

30.     Orly owed a fiduciary duty to the Orly Trust.

31.     Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

32.     Orly did not so do.   Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

33.     Orly's actions constitute a breach of fiduciary duty.

34.     Respondents were aware of Orly's fiduciary duty to the Orly Trust.

35.     Respondents knowingly induced and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking the Settlement Proceeds which belong to the

-7-

Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

36.    In doing so, Respondents aided and abetted Orly's breach of fiduciary duty.

37.    The Orly Trust has been injured by Respondents' aiding and abetting of Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## Count II: Tortious Interference with Contract
## Against All Respondents

38.    The allegations contained in paragraphs 1 through 37 hereinbefore are realleged as if fully set forth herein.

39.    The Trust Agreement is a valid contractual agreement by the Orly Trust.

40.    Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

41.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

42.    Respondents were aware of the Trust Agreement Obligations.

43.    The Orly Trust, acting through its de facto trustee Orly in the Orly Trust Derivative Litigation, breached the Trust Agreement Obligations by causing the Settlement Trustees to not be held in the name of the Orly Trust, and to instead use the Settlement Proceeds for the benefit of Orly's creditors, including the Brosers.

-8-

44.    Respondents caused the Orly Trust's breach of the Trust Agreement Obligations by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

45.    In doing so, Respondents tortiously interfered with the Trust Agreement Obligations.

46.    Respondents' interference with the Trust Agreement Obligations was both intentional and improper.

47.    The Orly Trust has been injured by Respondents' tortious interference with contract in the amount of $32.3 million, plus statutory interest.

### Count III: Money Had and Received
### Against All Respondents

48.    The allegations contained in paragraphs 1 through 47 hereinbefore are realleged as if fully set forth herein.

49.    Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

50.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

51.    Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

52.     Respondents knew that Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust.

53.     However, pursuant to the terms of the Trump Group Entities Settlement Agreement, the Settlement Proceeds were and are to be paid by the Trump Group Entities to parties other than the Orly Trust.

54.     None of the Settlement Proceeds have been paid to the Orly Trust.

55.     Respondents received and/or are currently holding the Settlement Proceeds instead of the Orly Trust.

56.     Respondents received a benefit from the Settlement Proceeds which belongs to the Orly Trust.

57.     Under principles of good conscience, Respondents should not be allowed to retain the Settlement Proceeds which belong to the Orly Trust, but rather should be compelled to return all $32.3 million to the Orly Trust, plus statutory interest.

## Count IV: Unjust Enrichment
## Against All Respondents Except Trump Group Entities

58.     The allegations contained in paragraphs 1 through 57 hereinbefore are realleged as if fully set forth herein.

59.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

60.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

61.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

62.    Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

63.    Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.

64.    Respondents (except the Trump Group Entities) received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65.    The benefit Respondents (except the Trump Group Entities) received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

66.    Under principles of equity and good conscience, Respondents (except the Trump Group Entities) must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

### Count V: Turnover
### Against All Respondents

67.    The allegations contained in paragraphs 1 through 66 hereinbefore are realleged as if fully set forth herein.

68.    Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

69.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

70.    Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

71.    Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

-11-

72.    Respondents (except the Trump Group Entities) received the Settlement Proceeds

instead of the Orly Trust.

73.    Respondents (except the Trump Group Entities) have in their possession the

Settlement Proceeds which should be delivered to the Orly Trust.

74.    Respondents have refused to turn over the Settlement Proceeds to the Orly Trust

or pay it into Court.

75.    Respondents should be compelled to turn over to the Orly Trust all Settlement

Proceeds in their possession, custody or control.

**Count VI: Accounting
Against Respondent Orly**

76.    The allegations contained in paragraphs 1 through 75 hereinbefore are realleged

as if fully set forth herein.

77.    Orly has never provided an accounting of the Settlement Proceeds, which are an

asset of the Orly Trust.

78.    As a matter of law and equity, Orly should provide an accounting of the

Settlement Proceeds.

**Interested Parties**

79.    The names and addresses of all persons, other than the Petitioner, interested in the

obtaining a determination of the issues presented in this Petition, and all other persons interested

in this proceeding who are required to be cited upon this application or concerning whom this

Court is required to have information, are:

(a)    The following who are of full age and sound mind or are corporations or
associations:

ORLY GENGER
780 Greenwich Street, Apt. 4P

-12-

New York, New York

Interest: Beneficiary and Respondent

ARIE GENGER
17001 Collins Avenue,
Sunny Isles Beach, Florida

Interest: Respondent

GLENCLOVA INVESTMENT COMPANY
41 Madison Ave,
New York, New York

Interest: Respondent

TR INVESTORS, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY I, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY II, LLC,
41 Madison Ave,
New York, New York

Interest: Respondent

TRANS-RESOURCES, INC.
41 Madison Ave,
New York, New York

Interest: Respondent

ARNOLD BROSER
5371 Fisher Island Drive,
Miami Beach, Florida

Interest: Respondent

-13-

DAVID BROSER
104 West 40th Street, 19th Floor
New York, New York

Interest: Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
Morgan, Lewis
101 Park Avenue,
New York, New York

Interest: Contingent Remainderman

(b)     The following who are persons under disability:
        Infants: None
        Others under a disability: None

(c)     The following persons who are confined in prison: None
(d)     The following persons whose names or whereabouts are unknown: None

80.     There are no persons, corporations or associations other than those mentioned

who are interested in this proceeding.

81.     No previous application for this or similar relief has been made to this or any

other court except Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative

Litigation, entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010 in New

York Supreme Court, New York County.  Motion Seq. 42 was held in abeyance by the Supreme

Court pending a determination by this Court.

-14-

WHEREFORE, Petitioner requests the following relief against all Respondents:

a.    damages in in the amount of $32.3 million, plus statutory interest;

b.    imposition of a constructive trust on the Settlement Proceeds;

c.    an order directing the delivery of the Settlement Proceeds to her as Trustee;

d.    an accounting of the Settlement Proceeds; and

e.    such other relief as to the Court seems just and necessary.

Dated: June 13, 2016

_____
(Signature of Petitioner)


Dalia Genger

(Print Name)

STATE OF NEW YORK            )

                               )   ss:

COUNTY OF NEW YORK  )

## VERIFICATION

I, the undersigned the petitioner named in the foregoing petition, being duly sworn, say:

VERIFICATION: I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

(Signature of Petitioner)

Dalia Genger

(Print Name)

On the _____13th_____ day of ____June____, 20_16_, before me personally came Dalia Genger to me known to be the person described in and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that he/she executed the same.

Notary Public

Judith Bachman
Notary Public, State of New York
No. 02-BA6048319
Qualified in Rockland County
Commission Expires Sept. 25, 2018

JUDITH BACHMAN
LAW OFFICES OF JUDITH BACHMAN
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

# EXHIBIT B

| | |
|---|---|
| **From:** | Judy Bachman <jlbesq_99@yahoo.com> |
| **Sent:** | Friday, June 17, 2016 4:40 PM |
| **To:** | John Dellaportas; John Dellaportas; ygriver@zeklaw.com; john.boyle@skadden.com; pjanovsky@zeklaw.com; ljw@msk.com; pdm@msk.com; william.frank@skadden.com; bleinbach@zeklaw.com; Eric D. Herschmann; Herrmann Douglas D (WIL); Herrmann Douglas D (WIL); mitchell@oglaw.net; Michael P. Bowen; Andrew R. Kurland |
| **Subject:** | Petition for Turnover of Trust Property in the Orly Genger 1993 Trust |
| **Attachments:** | Ex 10(abayance order).pdf; Ex 7 (Orly Settlement Agreement) .pdf; Ex 6 (So-Ordered Stipulation).pdf; Ex 8 (1-5-15 Forrest opinion).pdf; Ex 3 (1.2.13 Amended Decision).pdf; Ex 4 (4.9.12 Order).pdf; Ex 1 (Trust Agreement).pdf; Ex 5 (Allingham Ltr).pdf; Ex 9(transcript).pdf; Ex 2 (Orly's revised complaint).pdf; Petitionforturnover.pdf; petitioncitation.pdf; petitionfilingreceipt.pdf |

Dear Gentlemen:

The attached Petition for Turnover of Trust Property in the Orly Genger 1993 Trust was filed on June 14, 2016.

Please advise if you will either accept service of the citation (once it is completed by the Court) or waiver such service.

Judith Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210 Office
845-300-1595 Cell
jlbesq_99@yahoo.com
http://www.yourlegaldepartment.net/

# EXHIBIT C

| | |
|---|---|
| **From:** | Judith Bachman <judith@thebachmanlawfirm.com> |
| **Sent:** | Friday, January 26, 2018 4:02 PM |
| **To:** | Michael P. Bowen |
| **Cc:** | jlbesq_99@yahoo.com; Eric D. Herschmann; Andrew R. Kurland |
| **Subject:** | Re: Genger - Surrogate's Citation |

**External Email**

Dear Mr. Bowen:

We expect to appear and proceed on February 6, 2018.

Although I do not believe any substantive responsive is necessary to your comments, you are advised as below.

As for service of process, your client is a party to this action and in fact has filed a petition with the Court seeking affirmative relief. You and your firm have appeared in the action.

While I do not believe it is necessary, in an abundance of caution, I have directed service to be made on your client's address in Texas. I understand that she has a Texas driver's license, Texas bank account, owns a home there and is registered to vote there.

With regard to the timing of the service of the citation, the citation was not issued by the Court until December 21, 2017. The delay in the issuance of the citation, and subsequent service, was due to the Court's own internal processing.

Moreover, all of the parties in this matter were on notice of this petition via courtesy copy at the time of the filing and by reference to it in the cross-petition in your application to remove Dalia Genger.

Finally, as directed by the Court clerk, it was not necessary to serve a copy of the petition with the citation.

Very truly yours,

1



THE BACHMAN
LAW FIRM

**Judith Bachman, Esq.**
*Trusted Legal Counsel for You and Your Business*

**P:** 845.639.3210   **C:** 845.300.1595
Judith@thebachmanlawfirm.com
thebachmanlawfirm.com

254 S. Main Street  |  Suite 306  |  New City, NY 10956

On Fri, Jan 26, 2018 at 12:13 PM, Michael P. Bowen <MBowen@kasowitz.com> wrote:

We received no response to our email below.  Please advise today whether you are withdrawing the defective citation.  We reserve all rights.  If you continue to just ignore our demand, you leave us no choice but to seek sanctions.

Michael P. Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1903
Fax. (212) 500-3403
MBowen@kasowitz.com

**From:** Michael P. Bowen
**Sent:** Wednesday, January 24, 2018 1:16 PM
**To:** 'judith@thebachmanlawfirm.com' <judith@thebachmanlawfirm.com>; 'jlbesq_99@yahoo.com' <jlbesq_99@yahoo.com>
**Cc:** Eric D. Herschmann <EHerschmann@kasowitz.com>; Andrew R. Kurland <AKurland@kasowitz.com>
**Subject:** Genger - Surrogate's Citation

Ms. Bachman -- We recently learned that, acting as counsel to Dalia Genger, your office has been trying to serve on various parties a two-page citation that Dalia obtained from the Surrogate's Court on December 21, 2017 in File No. 2008-0017/E, pertaining to Dalia's purported Petition filed on or about June 14, 2016 – over a year and a half ago.  As you no doubt are aware, the 120-day time limitation to serve that pleading expired in the fourth quarter of 2016 – over a year ago.  *See* SCPA § 301; CPLR § 306-b.  That renders that so-called

2

petition and the related citation a nullity. What authority do you have to try to effect service now, so long after the relevant time period expired? We further understand that the service attempts are defective in that no copy of the petition was served with the citation, and in any event not all parties have been served (e.g. Orly Genger has not been served, nor, as far as we are aware, has any attempt been made). Despite these fatal defects, the citation purports to demand certain parties to appear in Court on February 6, 2018. If you have any authority for what you are doing, please provide that to us immediately. If you do not (as we believe), we demand that you formally withdraw the citation and cancel the February 6 hearing date immediately. Given that your attempted service is a clear-cut violation of the rules of court and that the citation was obtained in bad faith, we intend to seek sanctions, pursuant to 22 NYCRR § 130-1.1, against you and your client, including an award of attorney's fees associated with this bogus citation and frivolous and improper court date.

# EXHIBIT D

It is respectfully alleged:

<u>The Parties</u>

1. <u>Respondent/Cross-</u>Petitioner, Dalia Genger, ("Dalia"), resides and is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

2. ~~Petitioner is~~<u>Dalia</u> the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

3. <u>Petitioner/Cross-</u>Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the Orly Trust. ~~The remaining respondents ("Respondents") are interested parties who wrongfully aided and abetted Orly in the misappropriation of Orly Trust assets.~~

<u>Jurisdiction and Venue</u>

4. This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure Act, <u>inter alia,</u> SCPA 103(50), SCPA 207(1), and SCPA 209(6).

5. Venue in this County is proper pursuant to, <u>inter alia,</u> SCPA 207(1). <u>The</u>

<u>Orly Trust</u>

6. On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, <u>and</u> the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement") ~~(Ex. 1.)~~.

7. Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of

Orly's creditors (the "Trust Agreement Obligations").

~~The Respondents were aware of the Trust Agreement Obligations.~~

**Orly Trust Derivative Litigation**

8. In July 2010, Orly instituted a derivative action_in the Supreme Court, New York County

    entitled <u>Arie Genger, et al. v. Sagi Genger, et al.,</u> Index No. 651089/2010, by which she

    brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly

    Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's

    ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later

    amended her pleading to assert claims against, <u>inter alia,</u> the purchasers of those **TRI**

    shares, ~~Respondents~~ Glenclova Investment Company, TR Investors, LLC, New TR Equity

    I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities") ~~(Ex.~~

    ~~2.).~~

9. On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme

    Court, New York County adopted Orly's position that she "has legal standing to represent the

    Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court

    rules otherwise in an appropriate action there." ~~(Ex. 3.)~~

    Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain

10. ~~Petitioner~~ Dalia from pursuing what Orly characterized as a "duplicative" action as

Trustee of the Orly Trust before the Delaware Chancery Court, by which ~~Petitioner~~Dalia

was seeking a declaration of obtain ownership of the same TRI shares. According to Orly:

"In the instant action ..., I seek, among other things, the return of those [same] TRI Shares

to the Orly Trust." Also according to Orly, ~~Petitioner's "~~Dalia's "contention that the Orly

Trust is not a party to this action ...

is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court,

New York County, agreed, restraining ~~Petitioner~~Dalia from pursuing the action in the

Delaware Chancery Court by which the Orly Trust had sought the TRI shares. ~~(Ex. 4.)~~

11. As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative litigation'

brought by ~~Petitioner herself~~Dalia on behalf of the Orly Trust, Orly became the de facto trustee

of the Orly Trust and owed fiduciary duties to the Orly Trust.

~~12.    Respondents knew that Orly owed fiduciary duties to the Orly Trust.~~

**Discontinuance With Prejudice of
The Orly Trust Claims**

12. In June 2013, Orly disclosed that she had "entered into a confidential settlement

agreement to resolve all issues among the stipulating parties," which included the Trump

Group Entities. However, the settlement terms were left undisclosed. ~~Petitioner~~Dalia

sought production of the settlement agreement, but Orly refused to produce it, claiming

the document was too "confidential." When it was proposed that the document be

produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for <u>in camera</u> inspection.

13.   By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group [Entities] bargained and paid for in the settlement . . ." ~~(Ex. 5, emphases in original.)~~

14. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. ~~(Ex. 6.)~~

## The Trump Group Entities Settlement Agreement

15. Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). ~~(Ex. 7.)~~ The document revealed that Orly had settled her

claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which ~~this~~the Supreme Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

16. In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and ~~Respondents~~ Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million. According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." ~~(Ex. 8.)~~

17. The Trump Group Entities have since reaffirmed that the federal court construed the Trump Group Entities Settlement Agreement correctly:

"[Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is

counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

18. Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (~~Ex. 7, p. 10:~~ Orly releasing the Trumps "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was dismissed.

### The Settlement Proceeds

19. Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case, Orly personally). Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

20. At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid,

but that $15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. ~~(Ex. 9, pp. 10-11.)~~

21. In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

22. Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. <u>However,</u> Orly failed to comply with these duties and obligations. ~~Respondents were aware of, and aided and abetted, Orly's breaches of~~<u>Orly breached</u> her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

~~23.    In addition to the named Respondents, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof. Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.~~

### ~~Petitioner's~~Cross-Petitioner's Substitution Motion

23. In order to protect the rights of the Orly Trust, ~~Petitioner~~Dalia moved in the Supreme
Court, New York County, for an order permitting ~~it~~ her to substitute for Orly as plaintiff
in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the
Settlement Proceeds into Court. Orly vigorously opposed ~~the Petitioner's~~Dalia's motion,
on the ground, _inter alia,_ that she is seeking to remove ~~the Petitioner~~Dalia as Trustee of
the Orly Trust. By Interim Order dated May 7, 2015, Justice Jaffe neither granted nor
denied the motion, but rather held it in abeyance pending this Court's determination of
~~Orly's removal petition. (Ex. 10.)~~Orly's Petition.

24. At the March 25, 2015 hearing on ~~Petitioner's~~Dalia's motion, Justice Jaffe suggested it
might already be too late to deposit the Initial Payment into Court, as the $17.3 million
apparently has already been paid out to non-parties. ~~(Ex. 9, p. 28:~~ "it sounds like that ship
has sailed"). Accordingly, ~~Petitioner~~Dalia brings this <u>Cross-</u> Petition seeking, <u>inter alia<s>:</s>:</u>
<u>retention of Dalia as the only non-contingent Trustee of the Orly Trust;</u> monetary damages
for misappropriation of Orly Trust assets. ~~To the extent such Settlement Proceeds are~~
~~recoverable, Petitioner seeks turnover of those funds for the Orly Trust.~~
<u>and turnover of the Settlement Proceeds for the Orly Trust, to the extent such funds are</u>
<u>recoverable.</u>

Count I: ~~Aiding and Abetting~~ Breach of Fiduciary Duty

~~Against All Respondents~~

~~28~~25. The allegations contained in paragraphs 1 through ~~27~~24 hereinbefore are realleged as if fully set forth herein.

~~29~~26. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the " Settlement Proceeds therefrom belong to the Orly Trust.

~~30~~27. Orly owed a fiduciary duty to the Orly Trust.

~~31~~28. Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~32~~29. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

~~33. Orly's~~30. Orly's actions constitute a breach of fiduciary duty.

~~34. Respondents were aware of Orly's fiduciary duty to the Orly Trust.~~

~~35. Respondents knowingly induced and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.~~

~~36. In doing so, Respondents aided and abetted Orly's breach of fiduciary duty.~~

~~37~~31. The Orly Trust has been injured by ~~Respondents' aiding and abetting of Orly's~~Orly's

breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory

interest.

<div align="center">

Count ~~V~~III: Turnover

~~Against All Respondents~~

</div>

~~67~~39. The allegations contained in paragraphs 1 through ~~66~~38 hereinbefore are realleged as if

fully set forth herein.

~~68~~40. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of

the Orly Trust, and no Orly Trust assets were to be used for the benefit of ~~Orly's~~Orly's creditors.

~~69~~41. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the

Settlement Proceeds therefrom belong to the Orly Trust.

~~70~~42. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~71. Respondents knew that Orly was required to ensure that the~~43. The Settlement Proceeds

should be delivered to the Orly Trust. ~~were required to be paid to the Orly Trust.~~

~~72. Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of~~

~~the Orly Trust.~~

~~73. Respondents (except the Trump Group Entities) have in their possession the Settlement~~

~~Proceeds which~~

~~74. Respondents have refused to turn over the Settlement Proceeds to the Orly Trust or pay it~~

~~into Court.~~

~~75. Respondents~~44. Orly should be compelled to turn over to the Orly Trust all Settlement

Proceeds in ~~their~~her possession, custody or control.

Count ~~VII~~IV: Accounting

~~Against Respondent Orly~~

~~76~~45. The allegations contained in paragraphs 1 through ~~75~~44 hereinbefore are realleged as if fully set forth herein.

~~77~~46. Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

~~78~~47. As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.


Count ~~IV~~V: Unjust Enrichment

~~Against All Respondents Except Trump Group Entities~~

~~58~~48. The allegations contained in paragraphs 1 through ~~57~~47 hereinbefore are realleged as if fully set forth herein.

~~59~~49. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

~~60~~50. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

~~61~~51. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~62. Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.~~

~~63. Respondents (except the Trump Group Entities)~~52. Orly's creditors received the Settlement Proceeds instead of the Orly Trust.

64. Respondents (except the Trump Group Entities)53. Orly received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65. The54. Orly received such benefit Respondents (except the Trump Group Entities) received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

6655. Under principles of equity and good conscience, Respondents (except the Trump Group Entities)Orly must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

Interested Parties

7973. The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

(a) The following who are of full age and sound mind or are corporations or associations:

ORLY GENGER
780 Greenwich Street, Apt. 4P
New York, New York 10014
Interest: Beneficiary and Petitioner, Cross-Respondent

ARIE GENGER
17001 Collins Avenue,
Sunny Isles Beach, Florida
Interest: Respondent

GLENCLOVA INVESTMENT COMPANY
41 Madison Ave,
New York, New York
Interest: Respondent

TR INVESTORS, LLC
41 Madison Ave,
New York, New York

~~Interest: Respondent~~

~~NEW TR EQUITY I, LLC~~
~~41 Madison Ave,~~
~~New York, New York~~
~~Interest: Respondent~~

~~NEW TR EQUITY II, LLC,~~
~~41 Madison Ave,~~
~~New York, New York~~
~~Interest: Respondent~~

~~TRANS-RESOURCES, INC.~~
~~41 Madison Ave,~~
~~New York, New York~~
~~Interest: Respondent~~

~~ARNOLD BROSER~~
~~5371 Fisher Island Drive,~~
~~Miami Beach, Florida~~
~~Interest: Respondent~~

~~DAVID BROSER~~
~~104 West 40th Street, 19th Floor~~
~~New York, New York~~
~~Interest: Respondent~~

SAGI GENGER 1993 TRUST
C/O John Dellaportas
~~Morgan, Lewis~~
<u>Kelley Drye & Warren</u>
101 Park Avenue~~,~~
New York, New York
Interest: Contingent Remainderman

(b) The following who are persons under disability:

Infants: None

Others under a disability: None

(c) The following persons who are confined in prison: None

(d) The following persons whose names or whereabouts are unknown: None

~~80~~74. There are no persons, corporations or associations other than those mentioned who are

interested in this proceeding.

~~84~~75. No previous application for this or similar relief has been made to this or any other court

except:

a. Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled Arie

Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010 in New York Supreme Court, New

York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a

determination by this Court.

b. Petition before this Court filed June 14, 2016, citation not yet issued.


WHEREFORE, Petitioner requests the following relief ~~against all Respondents~~:

    a. declaratory judgment that Dalia is, and will remain, the only non-contingent Trustee of

the Orly Trust;

    b. damages in in the amount of $32.3 million, plus statutory interest;

    ~~b~~c. imposition of a constructive trust on the Settlement Proceeds;

    ~~c~~d. an order directing the delivery of the Settlement Proceeds to ~~her~~Dalia as Trustee of

the Orly Trust;

    ~~d~~e. an accounting of the Settlement Proceeds;

    ~~e~~f. if Dalia is removed as Trusee of the Orly Trust, then authorizing Dalia to name the

successor Trustee;

    g. if Dalia is removed as Trusee of the Orly Trust, then having the Court name a third

party successor Trustee from an independent list; and

    h. such other relief as to the Court seems just and necessary.

Dated: ~~June 13, 2016~~New City, New York
August 12, 2017

# EXHIBIT E



| GRANTED |
|---|

### IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

DALIA GENGER, as Trustee of the     :
Orly Genger 1993 Trust,     :
    :
    :
    Plaintiff,     :
    v.     :
    :
    :
TR INVESTORS, LLC, GLENCLOVA     :
INVESTMENT CO., NEW TR EQUITY I,     :
LLC, NEW TR EQUITY II, LLC,     :
TRANS-RESOURCES, INC., and     :
TPR INVESTMENT ASSOCIATES, INC.     :
    :
    Defendants.     :

C.A. No. 6906-CS

TR INVESTORS, LLC, GLENCLOVA     :
INVESTMENT CO., NEW TR EQUITY I,     :
LLC, NEW TR EQUITY II, LLC, and     :
TRANS-RESOURCES, INC.,     :
    :
    Counterclaim and Crossclaim     :
    Plaintiffs,     :
    v.     :
    :
DALIA GENGER, as Trustee of the     :
Orly Genger 1993 Trust,     :
    :
    Counterclaim Defendant,     :
    :
    and     :
    :
TPR INVESTMENT ASSOCIATES, INC.,     :
    :
    Crossclaim Defendant     :

TPR INVESTMENT ASSOCIATES, INC.,     :
    Counterclaim and Crossclaim     :
    Plaintiff,     :
    :

v.                                     :
                                       :
DALIA GENGER, as Trustee of the        :
Orly Genger 1993 Trust,                :
                                       :
            Counterclaim Defendant,    :
                                       :
      and                              :
                                       :
TR INVESTORS, LLC, GLENCLOVA           :
INVESTMENT CO., NEW TR EQUITY I,       :
LLC, NEW TR EQUITY II, LLC, and        :
TRANS-RESOURCES, INC.,                 :
                                       :
            Crossclaim Defendant       :

---

## STIPULATION AND PROPOSED ORDER OF DISMISSAL

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the

stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2. The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3. The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale

---

[1] This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds into a court in New York at any time.    Upon the so-ordering of paragraphs 1-2 above concerning beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights under the Escrow Agreement.    Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court.

4.   The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

5.   The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group have already been dismissed without prejudice.

This document constitutes a ruling of the court and should be treated as such.

|  |  |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Leo E Strine |
| **File & Serve Transaction ID:** | 53943155 |
| **Current Date:** | Aug 30, 2013 |
| **Case Number:** | 6906-CS |
| **Case Name:** | Genger, Dalia vs T R Investors LLC |
| **Court Authorizer:** | Strine, Leo E |

/s/ Judge Strine, Leo E