**Jules Trump**

_____

Date: _____


**Eddie Trump**

_____

Date: _____


**Mark Hirsch**

_____

Date: June 16, 2013

EXHIBIT A

*6/16/13*
*Draft - Confidential*

## [FORM OF SUBORDINATED NOTE]

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.**

TRANS-RESOURCES

### SUBORDINATED NOTE

$7,500,000.00                                                                 June __, 2013

      **FOR VALUE RECEIVED,** Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of [_____] (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

      1.    Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

      2.    No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

      3.    Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.     Optional Prepayments. The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.     Adjustment. In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs. The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.     Subordination. Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.     Enforcement. The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.     Amendments. No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy. This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.     Lost Notes, etc. If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

Error! Unknown document property name.

10.   ASSIGNMENT. THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.   Binding Effect. The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

- 3 -

Error! Unknown document property name.

**IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By:_____
    Name:
    Title:

4





**GRANTED**

## IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust,

             Plaintiff,

    v.

TR INVESTORS, LLC, GLENCLOVA
INVESTMENT CO., NEW TR EQUITY I,
LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC., and
TPR INVESTMENT ASSOCIATES, INC.

             Defendants.

                                                C.A. No. 6906-CS

TR INVESTORS, LLC, GLENCLOVA
INVESTMENT CO., NEW TR EQUITY I,
LLC, NEW TR EQUITY II, LLC, and
TRANS-RESOURCES, INC.,

             Counterclaim and Crossclaim
             Plaintiffs,

    v.

DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust,

             Counterclaim Defendant,

   and

TPR INVESTMENT ASSOCIATES, INC.,

             Crossclaim Defendant

TPR INVESTMENT ASSOCIATES, INC.,
             Counterclaim and Crossclaim
             Plaintiff,

v.                                          :
                                            :
DALIA GENGER, as Trustee of the             :
Orly Genger 1993 Trust,                     :
                                            :
            Counterclaim Defendant,         :
                                            :
        and                                 :
                                            :
TR INVESTORS, LLC, GLENCLOVA              :
INVESTMENT CO., NEW TR EQUITY I,          :
LLC, NEW TR EQUITY II, LLC, and           :
TRANS-RESOURCES, INC.,                     :
                                            :
            Crossclaim Defendant            :

---

## STIPULATION AND PROPOSED ORDER OF DISMISSAL

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the

stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2. The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3. The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale

---

[1] This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds into a court in New York at any time. Upon the so-ordering of paragraphs 1-2 above concerning beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights under the Escrow Agreement. Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court.

4. The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

5. The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group have already been dismissed without prejudice.

6. Each party shall bear its own costs.

/s/ Thomas J. Allingham
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2015)
Douglas D. Herrmann (I.D. No. 4872)
Amy C. Huffman (I.D. No. 5022)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

*Attorneys for TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources, Inc.*

/s/ Jeremy D. Anderson
Jeremy D. Anderson (I.D. No. 4515)
Joseph B. Warden (I.D. No. 5401)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware 19899

*Attorneys for Dalia Genger, as Trustee of the Orly Genger 1993 Trust*

/s/ Colm F. Connolly
Colm F. Connolly (I.D. No. 3151)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
(302) 574-3000

*Attorneys for TPR Investment Associates, Inc.*

IT IS SO ORDERED this _____ day of _____, 2013.

_____
Chancellor Leo E. Strine, Jr.

This document constitutes a ruling of the court and should be treated as such.

|  |  |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Leo E Strine |
| **File & Serve Transaction ID:** | 53943155 |
| **Current Date:** | Aug 30, 2013 |
| **Case Number:** | 6906-CS |
| **Case Name:** | Genger, Dalia vs T R Investors LLC |
| **Court Authorizer:** | Strine, Leo E |

**/s/ Judge Strine, Leo E**

# FISH & RICHARDSON P.C.

17TH FLOOR
222 DELAWARE AVENUE
P.O. BOX 1114
Wilmington, Delaware
19899-1114

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

August 9, 2013

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

HOUSTON

MUNICH

NEW YORK

SILICON VALLEY

SOUTHERN CALIFORNIA

TWIN CITIES

WASHINGTON, DC

Jeremy D. Anderson
302 778-8452

Email
janderson@fr.com

***Via LexisNexis File & ServeXpress and
Hand Delivery***

The Hon. Leo E. Strine, Jr.
Chancellor
COURT OF CHANCERY
New Castle County Courthouse
500 North King Street, Suite 1551
Wilmington, DE 19801

Re:   *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v.
      TR Investors, LLC, et al.,* C.A. No. 6906-CS

Dear Chancellor Strine:

During the status conference with the Court on August 1, 2013, Your Honor ordered
me to confer with Dalia Genger regarding her willingness to agree to settle the above-
captioned case. Having done so, I can report back to the Court that Dalia desires to
settle this action. However, as trustee of the Orly Genger Trust, Dalia needs to
understand Orly's position regarding the Trust's beneficial ownership of the shares,
particularly in light of preliminary injunctions issued by the New York courts.

We have reason to believe that Orly's position was disclosed in a Settlement
Agreement with the Trump Group in one of the New York cases, but the Trustee has
not been provided a copy of that agreement. While the Settlement Agreement
apparently was made confidential by the parties, Mr. Allingham represented to the
Court that the Trump Group is willing to produce the agreement if so ordered. Once
the Trustee understands Orly's position, she will be in a position to conclude whether
to agree that the shares of Trans-Resources stock transferred by TPR to the Orly
Genger 1993 Trust are beneficially owned by the Trump Group.

Alternatively, if Orly gives the Trustee written consent to sign the enclosed
stipulation of dismissal, the Trustee will immediately execute the stipulation in the
form attached. Counsel for Dalia, TPR and the Trump Group discussed the best way
to approach Orly to get her written consent to the stipulation of dismissal and decided
that Mr. Allingham, given that he settled one of the New York cases with Orly,
should be the intermediary. While Orly has not yet provided her written consent, it is

FISH & RICHARDSON P.C.

The Hon. Leo E. Strine, Jr.
August 9, 2013
Page 2

my understanding from Mr. Allingham that Orly intends to submit a letter to the
Court – on which I expect that she will copy Dalia – regarding her position as to the
stipulation of dismissal.

Respectfully yours,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson
Delaware Bar No. 4515

JDA/phb
Enclosure – form of Stipulation of Dismissal

Cc (w/encls.) (*via LexisNexis File & ServeXpress*):
    Thomas J. Allingham II (DE Bar #476)
    Douglas D. Herrmann (DE Bar #4872)
    Colm F. Connolly (DE Bar #3151)
    Amy M. Dudash (DE Bar #5741)

FILED: NEW YORK COUNTY CLERK 11/25/2014 04:27 PM    INDEX NO. 651089/2010

NYSCEF DOC. NO. 1153    RECEIVED NYSCEF: 11/25/2014

GLENCLOVA INVESTMENT CO., TR
INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW
TR EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP, MARK HIRSCH, and TRANS-
RESOURCES, INC.,

        Counterclaimants, Cross-Claimants, and Third-
        Party Plaintiffs,

        - against –

ARIE GENGER, ORLY GENGER, SAGI GENGER,
TPR INVESTMENT ASSOCIATES, INC., THE
SAGI GENGER 1993 TRUST, WILLIAM DOWD,
ARNOLD BROSER, DAVID BROSER, and ONE OR
MORE ENTITIES DIRECTED, OWNED OR
CONTROLLED BY ARNOLD BROSER AND/OR
DAVID BROSER,

        Counterclaim, Cross-Claim, and/or Third-Party
        Defendants.

*Index No. 651089/2010*

*Order to Sever*

WHEREAS, on January 2, 2013, the Clerk entered an Amended Decision and Order of

this Court that (i) dismissed all of Plaintiffs claims against Defendants Dalia Genger, Rochelle

Fang, individually and as trustee of the Sagi Genger 1993 Trust, and the Sagi Genger 1993 Trust;

(ii) dismissed Plaintiffs' first, second, fourth (rescission only), fifth, ninth and tenth causes of

action against Sagi Genger ("Sagi"); (iii) dismissed Plaintiffs' first, second, third, fourth

(rescission only), fifth, sixth and tenth causes of action against TPR Investment Associates, Inc.

("TPR"); and (iv) dismissed Plaintiffs' first, second, third (conspiracy only), fourth (rescission

only), fifth, eighth and tenth causes of action against Defendants Glenclova Investment

Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump,

Eddie Trump and Mark Hirsch (collectively, the "Trump Group");

1

WHEREAS, pursuant to a stipulation So-Ordered by the Court on July 1, 2013, all of Plaintiffs' remaining claims against the Trump Group were discontinued with prejudice;

WHEREAS, on July 24, 2014, the Appellate Division, First Department issued an Order dismissing Plaintiffs' remaining claims against Sagi and TPR; and

WHEREAS, on October 23, 2014 the Appellate Division, First Department issued an Order denying Plaintiffs' motions for reargument or leave to appeal to the Court of Appeals;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Plaintiffs' Third Amended and Supplemental Complaint is dismissed in its entirety with prejudice, including all claims and causes of action stated therein, and without prejudice to Plantifs' right to seek leave to appeal to the Court of Appeals from the July 24, 2014 Order of the Appellate Division.

2.    The Cross-Claims, Counterclaims and Third-Party Claims of Sagi Genger, individually and as assignee of the Sagi Genger 1993 Trust, and TPR Investment Associates, Inc., as well as the Counterclaims, Cross-Claim and Third-Party Claims of Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and Trans-Resources, Inc. are hereby expressly severed from this action.

DATED:  New York, New York
November 3, 2014

_____
Barbara Jaffe, J.S.C.

2

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

MS&K

Lauren J. Wachtler
ljw@msk.com

October 31, 2014

**VIA ECF**

Honorable Barbara Jaffe
Supreme Court of the State of New York
80 Centre Street
New York, NY 10007

**Re: Genger v Genger Index No. 651089/2010**

Dear Justice Jaffe:

As previously discussed, enclosed for Your Honor's signature is a proposed order severing the main action, which has been dismissed from the counterclaim in this case. We would appreciate Your Honor signing the Order at your earliest convenience..

Respectfully submitted,

*Lauren J. Wachtler*

Lauren J. Wachtler, of
MITCHELL SILBERBERG & KNUPP LLP

LJW/nst

CC: All Counsel

6468559.1/43419-00004

12 East 49th Street, 30th Floor, New York, New York 10017-1028
Phone: (212) 509-3900 Fax: (212) 509-7239 Website: WWW.MSK.COM



TRUST AGREEMENT

BETWEEN

ARIE GENGER

AS GRANTOR

AND

LAWRENCE M. SMALL AND SASH A. SPENCER

AS TRUSTEES

CREATING

THE ORLY GENGER 1993 TRUST

Dated:  December  *13*  , 1993

Copy 2 of 4

RUBIN BAUM LEVIN CONSTANT & FRIEDMAN

30 ROCKEFELLER PLAZA  ·  NEW YORK, N.Y. 10112

COPY

Index to the Orly Genger 1993 Trust Agreement

| Article | Contents | Page |
|---|---|---|
| FIRST: | Disposition of Principal and Income During the Life of the Grantor's Daughter, ORLY GENGER . . . . . . . . . . . . . . | 1 |
| SECOND: | Continuing Trust for Descendants of the Grantor's Daughter, ORLY GENGER . . . . . . | 5 |
| THIRD: | Disposition of Property if No Descendant of the Grantor is Living . . . . . . . . . | 9 |
| FOURTH: | Additions to the Trusts . . . . . . . . . . . | 13 |
| FIFTH: | Irrevocability . . . . . . . . . . . . . . | 13 |
| SIXTH: | Governing Law . . . . . . . . . . . . . . | 13 |
| SEVENTH: | Trustees . . . . . . . . . . . . . . . . | 13 |
| EIGHTH: | Compensation of Trustees . . . . . . . . . | 18 |
| NINTH: | Settlement of Trustees' Accounts; Exoneration of Trustees . . . . . . . . . . | 18 |
| TENTH: | Definitions . . . . . . . . . . . . . . . | 21 |
| ELEVENTH: | Administrative Powers . . . . . . . . . . . | 22 |
| TWELFTH: | Provisions Relating to the GST . . . . . . . | 32 |
| THIRTEENTH: | Release of Powers . . . . . . . . . . . . . | 37 |
| FOURTEENTH: | Provision with Respect to Closely Held Businesses . . . . . . . . . . . | 38 |
| FIFTEENTH: | Headings . . . . . . . . . . . . . . . . . | 39 |
| SIXTEENTH: | Severability . . . . . . . . . . . . . . . | 39 |

TRUST AGREEMENT dated December /3 , 1993, between
ARIE GENGER (now residing at 1067 Fifth Avenue, New York, New
York), as Grantor, and LAWRENCE M. SMALL (now residing at 2804
Woodland Drive, Washington, D.C. 20008) and SASH A. SPENCER (now
residing at 251 Crandon Boulevard, Townhouse 164, Key Biscayne,
Florida 33149), as Trustees.

The Grantor hereby transfers to the Trustees, and the
Trustees hereby acknowledge receipt of, the sum of Six Hundred
Thousand Dollars ($600,000.00), to be held, administered and
disposed of in accordance with the provisions of Article FIRST
hereof.  Said sum and any other property that may be received by
the Trustees pursuant to the provisions of Article FOURTH
hereof, and all investments and reinvestments thereof, and all
proceeds thereof which constitute principal, are hereinafter
collectively called "principal."

This Trust Agreement shall be known as the "Orly
Genger 1993 Trust Agreement" and the trust created by Article
FIRST hereof shall be known as the "Orly Genger 1993 Trust."

FIRST:   Disposition of Principal and Income
During the Life of the Grantor's Daughter,
ORLY GENGER.

A.  The Trustees shall hold, manage, invest and rein-
vest the principal of the trust created by this Article, IN
TRUST, and, so long as the Grantor's daughter, ORLY GENGER,
shall live, the Trustees are authorized and empowered to pay
such part, parts or all, if any, of the net income of the trust

created by this Article (hereinafter referred to in this Article as "Orly's Trust") to, or apply such part, parts or all, if any, of such net income for the use or benefit of, such one or more of the following individuals living from time to time in such equal or unequal amounts or proportions, and at such time or times, as the Trustees, in their discretion, shall determine:

    1.   The Grantor's daughter, ORLY GENGER.

    2.   Each descendant of ORLY GENGER.

The Trustees shall accumulate all income of Orly's Trust not so paid to or applied and, at least annually, add such net income to the principal of Orly's Trust.

In making such distributions, the Trustees are requested (but they are not directed) to limit the total amount of the distributions made to any descendant of ORLY GENGER with respect to any calendar year to the amount necessary to increase such descendant's taxable income for United States income tax purposes for such year to the greatest amount that shall still result in such descendant not being subject to United States income taxes at the highest marginal rate in effect for such year, after taking into account all of such descendant's other income and deductions for such year.

    B.   The Trustees are authorized and empowered to pay to, or apply for the use or benefit of, the Grantor's said daughter such part, parts or all, if any, of the principal of Orly's Trust, and at such time or times, as said Trustees, in

-2-

their discretion, shall determine, without regard to the inter-
est in the trust of any other person and without regard to the
fact that any such payment or application may result in the
termination of Orly's Trust.

C.   Upon the death of the Grantor's said daughter,
the Trustees shall pay the then principal of Orly's Trust,
together with all net income thereof then accrued but not yet
collected, and collected but not yet disposed of, as follows:

1.   The Trustees shall pay one-half (1/2) of
such income and principal, in such equal or unequal amounts or
proportions, to or for the use or benefit of such one or more of
the descendants of the Grantor's said daughter, and upon such
terms, conditions and trusts, if any, as the Grantor's said
daughter, by a provision in her Will expressly referring to this
Article of this Trust Agreement, shall validly direct and
appoint. If, or to the extent that, the Grantor's said daughter
shall fail so validly to direct and appoint such principal and
income, the Trustees, at the death of the Grantor's said daugh-
ter, shall pay the same, per stirpes, to such of the descendants
of the Grantor's said daughter as shall survive her, subject,
however, to the provisions of Article SECOND hereof, or, if no
descendant of the Grantor's said daughter shall survive her, per
stirpes, to such of the Grantor's descendants as shall so sur-
vive, or, if no descendant of the Grantor shall so survive, in
accordance with the provisions of Article THIRD hereof.

-3-

2.   The Trustees shall pay one-half (1/2) of
such income and principal, per stirpes, to such of the descen-
dants of the Grantor's said daughter as shall survive her, sub-
ject, however, to the provisions of Article SECOND hereof, or,
if no descendant of the Grantor's said daughter shall survive
her, per stirpes, to such of the Grantor's descendants as shall
so survive, or, if no descendant of the Grantor shall so sur-
vive, in accordance with the provisions of Article THIRD hereof

3.   If, pursuant to the provisions of paragraph
1 or paragraph 2 of this Section C, the Trustees are directed to
pay a per stirpital share of such income and principal to a
descendant of the Grantor, and if at the time the Trustees are
so directed there shall be in existence a trust for such descen-
dant under a trust agreement between Arie Genger, as grantor,
and Lawrence M. Small and Sash A. Spencer, as trustees, executed
on the date hereof and known as the "Sagi Genger 1993 Trust
Agreement," the Trustees shall not pay such per stirpital share
to such descendant but shall instead pay such per stirpital
*share to the trustees then acting under said trust agreement, to*
be disposed of by them pursuant to the provisions of the trust
for such descendant under said trust agreement.

D.   Notwithstanding anything herein to the contrary,
if any Trustee hereunder shall be one of the potential income
beneficiaries of Orly's Trust, such Trustee shall not, in his or
her capacity as such a Trustee, have any voice or vote or other-

-4-

wise participate in any decision pertaining to the payment or application of the income or principal of Orly's Trust to or for the use or benefit of him or her in his or her capacity as a beneficiary of such trust or to or for the use or benefit of any person whom he or she has an obligation to support, and, in each such event, the other Trustee or Trustees shall make all decisions relating to such trust that pertain to such matters.

> SECOND: Continuing Trusts for Descendants of the Grantor's Daughter, ORLY GENGER.

A.   If, under any provision of this Trust Agreement, any property is directed to be paid to a descendant of the Grantor's daughter, ORLY GENGER, subject to the provisions of this Article, such property shall not be distributed or paid to such descendant. Instead, the Trustees shall continue to hold such property, IN TRUST (in a separate trust for each such descendant which is referred to in this Article as "such descendant's trust"; provided, however, that if there shall be property so directed to be paid on more than one occasion to any such descendant, all such property shall be held in a single trust for such descendant), and, so long as such descendant shall live before attaining the age of twenty-one (21) years, the Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the net income of such descendant's

-5-

P 8/43                                   << 0299042121   Sagi A. Genger                2007-01-16 17:01

trust, and at such time or times, as said Trustees, in their discretion, shall determine, and the Trustees shall accumulate the balance of such net income, if any, and, at least annually, add it to the principal of such descendant's trust, and, so long as such descendant shall live after attaining the age of twenty-one (21) years, the Trustees shall pay to such descendant all of the net income of such descendant's trust in at least quarterly installments.

B.   The Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the principal of such descendant's trust, and at such time or times, as said Trustees, in their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of the trust.

C.   Upon the death of such descendant (hereinafter referred to in this Article as "such deceased descendant"), the Trustees shall pay the then principal of such deceased descendant's trust, together with all net income thereof accrued but *not yet collected, and collected but not yet disposed of, as* follows:

-6-

1.     The Trustees shall pay one-half (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of the descendants of such deceased descendant, and upon such terms, conditions and trusts, if any, as such deceased descendant, by a provision in his or her Will expressly referring to this Article of this Trust Agreement, shall validly direct and appoint.   If, or to the extent that, such deceased descendant shall fail so expressly and so validly to direct and appoint such principal and income, the Trustees shall, at the death of such deceased descendant, pay the same, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

2.     The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased

-7-

2007-01-16 17:01          Sagi A. Genger          1212/506620>>          <<0296720620>>

descendant, subject, however, to the provisions of this Article,
or, if no such descendant shall so survive, per stirpes, to such
of the descendants as shall so survive of the ancestor of such
deceased descendant closest in degree of relationship to such
deceased descendant who (i) shall have descendants who shall so
survive and (ii) shall have been a descendant of the Grantor or
shall have been the Grantor, subject, however, to the provisions
of this Article, or, if no such descendant shall so survive, in
accordance with the provisions of Article THIRD hereof.

3.    If, pursuant to the provisions of paragraph
1 or paragraph 2 of this Section C, the Trustees are directed to
pay a per stirpital share of such income and principal to a
descendant of the Grantor subject to the provisions of this
Article, and if at the time the Trustees are so directed there
shall be in existence a trust for such descendant under a trust
agreement between Arie Genger, as grantor, and Lawrence M. Small
and Sash A. Spencer, as trustees, executed on the date hereof
and known as the "Sagi Genger 1993 Trust Agreement," the
Trustees shall not pay such per stirpital share to such descen-
dant subject to the provisions of this Article but shall instead
pay such per stirpital share to the trustees then acting under
said trust agreement, to be disposed of by them pursuant to the
provisions of the trust for such descendant under said trust
agreement.

-8-

D.    Notwithstanding anything herein to the contrary, each trust created by the terms of this Article shall terminate, if not sooner terminated, upon the expiration of twenty-one (21) years after the death of the last surviving descendant of the Grantor's parents, SHARGA GENGER and DORA GENGER, who shall have been in being on the date hereof; and the Trustees shall thereupon pay the then principal of any trust terminated in accordance with the provisions of this Section, together with all net income thereof accrued but not yet collected and collected but not yet disposed of, to the descendant of the Grantor with respect to whom such trust is being held.

THIRD:    Disposition of Property if No Descendant
          of the Grantor is Living.

A.    As used in this Article:

1.    The words "such time" shall mean the time as of which any property is directed to be paid in accordance with the provisions of this Article.

2.    The term "Qualified Charitable Organization" shall mean an organization that shall be qualified as an organization to which contributions and bequests are deductible for both United States income tax, gift tax and estate tax purposes under the provisions of Section 170, Section 2522 and Section 2055 of the Internal Revenue Code.

-9-

B.   If, under any provision of this Trust Agreement, any property is directed to be paid in accordance with the provisions of this Article, the Trustees shall pay such property as follows:

1.   If the Grantor, the Grantor's spouse and/or any one or more descendants of the Grantor shall have caused there to be created a foundation known as The Genger Foundation, and if at such time said Foundation shall be in existence and shall be a Qualified Charitable Organization, then, in such event, the Trustees shall pay such property to said Foundation.

2.   If at such time either The Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and if at such time the Trustees are authorized under applicable law to cause to be organized a corporation under and in accordance with the laws of any state of the United States which the Trustees, in their discretion, shall select, which corporation (i) shall be known by the name of The Genger Foundation (or by such other name as the Trustees, in their discretion, shall select if the name of The Genger Foundation shall not be available to be utilized as the name of said corporation), (ii) shall have as its purposes the encouragement, promotion, support and enhancement of non-orthodox study and education for children in the State of Israel pertaining to the customs, practices and ancient and modern history of the Jewish

-10-

people and shall maintain all of the property held by it, and
use all of the net income thereof received from time to time,
for the encouragement, promotion, support and enhancement of
such study and education for children, (iii) shall be required
to maintain all of the property held by it, and use all of the
net income thereof received from time to time, for such pur-
poses, with such property and income to be expended for such
purposes in such amounts, at such time or times and to or for
the use or benefit of such recipient or recipients as the direc-
tors, trustees and/or the officers of such corporation shall, in
their discretion, determine from time to time, subject, however,
to the other provisions of this paragraph 2, (iv) shall have as
its initial directors or trustees the Trustees hereunder, the
Grantor's cousin, JEREMIAH WOHLBERG (now residing at 2325
Lindenmere Drive, Merrick, New York), if he shall not then be a
Trustee hereunder, and also such other individual or individ-
uals, if any, as may be designated by the Trustees, and there-
after to have as directors or trustees such individuals as shall
from time to time be determined as provided for in the certi-
ficate of incorporation and/or by-laws of said corporation, and
(v) shall be organized and maintained in such manner as to be
and continue to be a Qualified Charitable Organization, then, in
such event, the Trustees shall organize such a corporation, and
the Trustees shall pay such property to such corporation.

-11-

3.    If at such time (i) either The Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and (ii) the Trustees are not authorized under applicable law to cause to be organized a corporation of the nature referred to in paragraph 2 of this Section B, then, in such event, the Trustees shall pay such property to the JEWISH COMMUNAL FUND OF NEW YORK, New York, New York, to be held, administered and disposed of pursuant to the rules and regulations thereof as an Undesignated Philanthropic Fund to be known as the Genger Philanthropic Fund and with the privilege of making advisory recommendations with respect thereto to be held in the first instance by the Trustees, said JEREMIAH WOHLBERG, if he shall not then be a Trustee hereunder, and also by such other individual or individuals, if any, as the Trustees may designate, and thereafter by such other individual or individuals as such designees and their successors acting in such capacity may from time to time designate, and it is requested (but not directed) that the principal and income of such Fund shall be utilized to encourage, promote, support and enhance non-orthodox study and education for children in the State of Israel *pertaining to the customs, practices and ancient and modern* history of the Jewish people.

-12-

FOURTH:   Additions to the Trusts.

Any person, including the Grantor, by a transfer to take effect during the life of such person or upon the death of such person, may, at any time or times, add to the principal of any trust hereunder any property of any kind or nature acceptable to the Trustees, and any such additional property so received by the Trustees pursuant to the provisions of this Article shall thereafter be deemed to be part of the principal of such trust subject to all of the terms, provisions and conditions of this Trust Agreement.

FIFTH:   Irrevocability.

This Trust Agreement and the trusts hereby created are irrevocable and not subject to amendment or change.

SIXTH:   Governing Law.

This Trust Agreement and the trusts hereby created shall be governed by the laws of the State of New York.

SEVENTH: Trustees.

A.   The initial Trustees acting hereunder shall be LAWRENCE M. SMALL and SASH A. SPENCER.

B.   Each individual acting as a Trustee hereunder (whether such Trustee is initially a party to this Trust Agreement or a successor Trustee named in Section C of this Article

-13-

or appointed pursuant to the provisions of this Section B) is
authorized and empowered to appoint another individual (other
than the Grantor) to act in his or her place and stead as a
Trustee hereunder.  Each appointment of a successor Trustee
hereunder shall be made by the execution of an instrument of
appointment signed and acknowledged by the individual who shall
have made such appointment and by delivering such instrument in
accordance with the provisions of Section G of this Article; and
any such appointment may be revoked in the same manner by the
individual Trustee who shall have made it at any time before the
occurrence of the event or events as of which such appointment
shall, by its provisions, become effective.  Any appointment
made in accordance with the provisions of this Section B shall
be valid only if the individual so appointed shall, within
thirty (30) days after the later of (i) the date on which a copy
of such instrument of appointment is so delivered to him or her,
and (ii) the occurrence of the event or events as of which such
appointment shall, by its provisions, become effective, qualify
as a successor Trustee under this Trust Agreement in accordance
with the provisions of Section D of this Article.  Each succes-
sor Trustee named in Section C of this Article or appointed in
accordance with the provisions of this Section B shall be vested
with the same powers and authority as the initial Trustees who
are parties to this Trust Agreement; provided, however, that no
such Trustee shall be permitted to exercise any authority or

-14-

power which such Trustee shall be prohibited from exercising by an express provision of this Trust Agreement.

C. 1. If either LAWRENCE M. SMALL or SASH A. SPENCER shall cease to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, MARTIN A. COLEMAN (now residing at 51 Cambridge Road, Great Neck, New York 11023) shall act as Trustee hereunder.

2. If MARTIN A. COLEMAN shall fail or cease cease to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, THOMAS G. HARDY (now residing at 935 Park Avenue, New York, New York 10028) shall act as a Trustee hereunder.

D. Each successor Trustee hereunder shall qualify as such by accepting the trusteeship by the execution of a signed and acknowledged instrument of acceptance and by delivering such instrument in accordance with the provisions of Section G of this Article.

E. Any individual Trustee hereunder may resign as such a Trustee by the execution of a signed and acknowledged instrument of resignation and by delivering such instrument in accordance with the provisions of Section G of this Article.

-15-

Any such resignation shall become effective upon the receipt of
such instrument of resignation by each individual to whom it is
delivered or mailed as aforesaid or at such later date as may be
specified therein.

F.   If any individual while acting as a Trustee here-
under shall become incapable of discharging his or her responsi-
bilities and duties as such a Trustee by reason of a physical,
emotional or intellectual incapacity and such incapacity shall
be confirmed by each of two medical doctors in written state-
ments, copies of which shall be delivered or mailed as hereinaf-
ter provided, the individual who is so incapacitated shall be
deemed for the purposes of construing and applying all of the
provisions of this Trust Agreement to have effectively resigned
as such Trustee in compliance with the provisions of Section E
of this Article, such resignation to be deemed to be effective
upon the delivery or mailing of the aforesaid statements as
hereinafter provided.  Each of the aforesaid statements shall be
signed and acknowledged by the medical doctor making the same
and copies of the same shall be delivered or mailed by regis-
tered or certified mail to the individual, if any, who will
become the successor Trustee hereunder in the place and stead of
the incapacitated Trustee to whom such statement pertains, to
each Trustee, if any, then acting hereunder (other than the
incapacitated Trustee to whom such statement pertains), and also
to either (i) the Grantor (or, if the Grantor shall not then be

-16-

<<0299052121   Sagi A. Genger   2007-01-16 17:04

living, to the executors, administrators or personal representa
tives of the Grantor's estate), or (ii) any one or more of the
adult individuals to whom or for whose use or benefit the income
of any trust hereunder may then be paid or applied.

G.   Each instrument directed to be delivered in
accordance with the provisions of this Section G shall be deliv-
ered in person or by mailing a copy of the same by registered or
certified mail to each Trustee, if any, then acting hereunder
(other than the Trustee, if any, who shall have executed such
instrument), and to either (i) the Grantor (or, if the Grantor
is not then living, to the executors, personal representatives
or administrators of the Grantor's estate), or (ii) any one or
more of the adult individuals to whom or for whose use or bene-
fit the income of any trust hereunder may then be paid or
applied.

H.   No bond or other security shall be given by or
required in any jurisdiction (whether in the State of New York
or elsewhere) of any Trustee at any time acting hereunder
(whether such Trustee is named herein or appointed pursuant to
the provisions hereof) for the faithful performance of such
Trustee's fiduciary duties in any capacity hereunder regardless
of whether such Trustee is or may become a non-resident of the
State of New York or elsewhere.

-17-

account shall be a proper administration expense of the trust to
which such account relates.

B.    If any Trustee shall resign as a Trustee here-
under, the continuing Trustee, if any, or, if there is no con-
tinuing Trustee, any successor Trustee who shall have qualified
to act in accordance with the provisions of Section D of Article
SEVENTH hereof, may deliver to the Trustee so resigning an
instrument whereby such resigning Trustee shall be released and
discharged, to the extent stated therein, of and from any and
all accountability, liability and responsibility for acts or
omissions as Trustee.  Any such release and discharge shall be
binding upon all persons, whether or not then in being, then or
thereafter interested in either the income or the principal of
any trust hereunder and shall have the force and effect of a
final decree, judgment or order of a court of competent juris-
diction rendered in an appropriate action or proceeding for the
judicial settlement of the account of such Trustee in which
jurisdiction was obtained of all necessary and proper parties.
The foregoing provision, however, shall not preclude any Trustee
so resigning from having his or her account judicially settled,
and in any such proceeding it shall not be necessary to serve
any person who is under a disability if there is another party
to the proceeding who is not under any disability and who has
the same interest as the person who is under a disability, and,
in such event, it shall not be necessary to appoint a guardian

-19-

ad litem for any such party who is under a disability. The expenses of any judicial account rendered by a Trustee who shall resign shall be a proper administration expense of the trust to which such account relates.

C.   In addition to the foregoing, the Trustees are hereby authorized, at any time and from time to time, with respect to any trust hereunder, to settle the account of the Trustees by agreement between the Trustees and the then adult individual or individuals to whom or for whose use or benefit the income of such trust may then be paid or applied and the adult or adults who would be entitled to the principal in case such trust were to terminate at the time of such agreement, excluding any such individual who is under a disability if there is a party to the agreement who is not under any disability and who has the same interest as the individual who is under a disability, which agreement shall bind all persons, whether or not then in being, then or thereafter interested in either the income or the principal of such trust. Any such settlement shall have the same force and effect as a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for the judicial settlement of such account in which jurisdiction was obtained of all necessary and proper parties. The expenses of any such account shall be a proper administration expense of such trust.

-20-

P 22/43                              << 0212750662 0 >>       Sagi A. Genger        2007-01-16 17:04

D.   To the extent permitted by law, no Trustee shall be accountable, liable or responsible for any act, default, negligence, or omission of any other Trustee.

TENTH:   Definitions.

Wherever used in this Trust Agreement:

1.   The word "Trustees" and all references to the Trustees shall mean and refer to the Trustees and successor Trustees hereinabove named, any successor Trustee appointed pursuant to the provisions hereof, any substitute Trustee appointed by a court of competent jurisdiction, the survivors or survivor of them, and their and each of their successors or successor, as may be acting hereunder from time to time.

2.   The words "IN TRUST" shall mean "in trust, nevertheless, to hold, manage, invest and reinvest, and, until payment thereof as hereinafter directed, to receive the income thereof."

3.   The word "pay" shall, where applicable, mean "convey, transfer and pay" and the word "payment" shall, where applicable, mean "conveyance, transfer and payment."

4.   The words "descendant" and "descendants," when used with respect to any person, shall be deemed to include (i) every individual who is born to such person, (ii) every individual who is lawfully adopted by such person, and (iii)

-21-

every individual who is otherwise descended from such person, whether by birth, or by lawful adoption, or by a combination thereof.

5.    The words "Internal Revenue Code" shall mean and refer to "the United States Internal Revenue Code of 1986 (as amended from time to time)," and any reference to a specific section, chapter or other provision of the Internal Revenue Code shall mean and refer to said section, chapter or other provision and any successor statute thereto pertaining to the same subject matter as said section, chapter or other provision.

ELEVENTH: Administrative Powers.

A.    In addition to and in amplification of the powers given by law to trustees, the Trustees, but solely in their fiduciary capacities, are hereby authorized and empowered, in their discretion:

1.    To sell, exchange, make contracts with respect to, grant options on or otherwise dispose of, at public or private sale, at such prices, on such terms (including sales on credit with or without security) and at such time or times as the Trustees shall determine, any property, real or personal, which may at any time form part of any trust hereunder.

2.    To lease, for such periods (whether or not any such period shall extend beyond the period prescribed by law

-22-

or the probable term of any trust hereunder), on such terms and
conditions and at such time or times as the Trustees shall
determine, the whole or any portion or portions of any property,
real or personal, which may at any time form part of any trust
hereunder, whether the same be held in severalty or as
tenant-in-common with others or in a partnership, syndicate or
joint venture or otherwise, and release and convey any undivided
interest in any such property for the purpose of effecting par-
tition of the whole or any part thereof; and make, place, extend
or renew mortgages, pledges, building loan agreements or build-
ing loan mortgages upon or affecting any and all such property;
and make, execute and deliver such mortgages, pledges and agree-
ments, together with proper bonds, notes or other instruments of
indebtedness to accompany the same, and such extension or
renewal agreements, as to the Trustees shall seem necessary,
advisable or proper; and also to repair, alter, reconstruct,
build upon or improve any such property and on such terms and at
such time or times as the Trustees shall determine, give and
grant to others the right so to do, or agree in, or so modify
any lease affecting any such property that the lessee may alter,
repair, reconstruct, build upon, improve, mortgage and pledge
any such property; and generally to make, alter and modify all
agreements, leases, mortgages, pledges, building loans, sales,
exchanges, transfers and conveyances of or affecting any such
property which the Trustees shall determine to be necessary,
advisable or proper for the preservation, improvement, enhance-

-23-

ment in value of, or betterment of or addition to, such prop-
erty.

3.    To hold any part or all of the assets of any
trust hereunder invested in the same form of property in which
the same shall be invested when received by the Trustees, and
invest and reinvest the assets of any such trust, or any portion
thereof, in any form of investment which the Trustees may deter-
mine (including, without limitation, mutual funds, common trust
funds, investment trusts, general partnerships and limited part-
nerships), whether or not such investment is of the nature pre-
scribed by law as a legal investment for fiduciaries or is spec-
ulative in nature, and without regard to the percentage of the
assets of such trust which such investment or similar invest-
ments may constitute.

4.    To vote in person or by proxy all stocks and
other securities held by any trust hereunder; grant, exercise,
sell or otherwise turn to account rights to subscribe for stock
and securities and options of any nature; amortize or refrain
from amortizing premiums on bonds or other securities which the
Trustees may purchase or receive; participate in reorganiza-
tions, mergers, liquidations or dissolutions, and contribute to
the expenses of, and deposit securities with, protective commit-
tees in connection therewith; participate in voting trusts; and
generally exercise, in respect of said stock and securities, all

-24-

P 26/43                                    << 1212750669Z0    Sagi A. Genger    2007-01-16 17:05

rights, powers or privileges which may be lawfully exercised by any person owning similar property in his or her own right.

5.   To employ any investment counsel, corporate custodians, agents, accountants, brokers and attorneys which the Trustees may select and pay the charges thereof (including charges for preparation of trust tax returns, the Trustees' accounts and any other necessary trust records); and the Trustees, or a partnership, corporation or other entity in which any Trustee shall be interested, or by which any Trustee may be employed, may be retained in any such capacity, and, in such event, the charges which shall be payable to such Trustee, or to any such partnership, corporation or other entity, shall be in addition to compensation otherwise allowable to such Trustee and may be paid without prior judicial approval.

6.   In any case in which the Trustees are authorized or required to pay or distribute any share of any trust hereunder, to make such payment or distribution in kind, or partly in kind and partly in money and, in connection therewith, to allocate equal or unequal interests in, or amounts of, specific property in satisfaction of such payment or distribution; provided, however, that any property distributed in kind shall be valued, for purposes of such distribution, at its fair market value on the date of distribution.

-25-

7.   To settle, adjust, compromise or submit to arbitration any dispute, claim or controversy in which any trust hereunder may be in any way interested.

8.   To borrow money from any person, partnership, corporation or other entity, who may be any Trustee or a partnership, corporation or other entity in which any Trustee may be interested, or by which any Trustee may be employed, for the purpose of meeting any and all charges against any trust hereunder or for any other purpose connected with the administration, preservation, improvement or enhancement in value of any such trust, and, in connection with any such borrowing, to pledge, hypothecate or mortgage any part or all of the assets of any such trust.

9.   To keep any or all of the securities at any time forming a part of any trust hereunder in the name of one or more nominees.

10.   In any case where doubt or uncertainty exists under applicable law or this Trust Agreement, to credit receipts and charge expenses to principal or income, or partly to each.

11.   By instrument or instruments signed by all of the Trustees qualified and acting as such at any time with respect to any trust hereunder, to delegate, in whole or in part, to any person or persons (including any one or more of the

-26-

Trustees) the authority and power to (i) sign checks, drafts or orders for the payment or withdrawal of funds from any bank account or other depository in which funds of such trust shall be held, (ii) endorse for sale, transfer or delivery, or sell, transfer or deliver, or purchase or otherwise acquire, any and all stocks, stock warrants, stock rights, bonds or other securities whatsoever with respect to such trust, and (iii) gain access to any safe deposit box which may be in the names of the Trustees and remove part or all of the contents of any such safe deposit box and release and surrender the same.

12.  To pay or deliver to either parent or to the guardian of the property of any minor or to an adult with whom such minor resides, and, with respect to any person for whom it is permissible to do so under applicable law, to a custodian for such person under a Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state until the age of eighteen (18) years (or until such age in excess of eighteen (18) years as shall be permissible under applicable law and which the Trustees, in their discretion, shall select) any sum or property, including income, which such minor or such person shall either be entitled to receive or to have applied for his or her use or benefit under any of the provisions hereof, without requiring that such parent, adult or custodian obtain letters of guardianship or that such parent, guardian, adult or custodian give any bond or other security for any such payment or delivery

-27-

P 29/43                                    <<02750662029>>     Sagi A. Genger          2007-01-16 17.06

so made; and the receipt of such parent, guardian, adult or custodian for the amount of such payment, or for the property so delivered, shall be an absolute protection to the Trustees and a complete release and discharge from all further accountability in respect of any such payment or delivery.

13. If any beneficiary of any trust hereunder shall, in the opinion of the Trustees, be or become incapacitated (whether by reason of illness, age or other causes) the Trustees may, in their discretion, wholly or partly in lieu of paying net income or principal of such trust to such beneficiary as authorized or directed by this Trust Agreement, dispose of the same in one or more of the following ways:

(a) by making payment of such net income or principal to a legally appointed guardian or other fiduciary of such beneficiary;

(b) by making payment of such net income or principal, on behalf of such beneficiary, to any person with whom such beneficiary resides or who has charge of his or her care; and/or

(c) by applying such net income or principal directly for the use or benefit of such beneficiary.

-28-

14.   To remove the assets of, hold and administer any such assets in, and/or move the situs of the administration of any trust hereunder to, such location or locations (which may be in a state or other jurisdiction other than the State of New York) as the Trustees, in their discretion, shall select.   If the Trustees, in their discretion, shall determine it advisable to move the situs of the administration of any trust hereunder to a location where the judicial administration of trusts is required or permitted, the Trustees are authorized to select and request a court in such location having jurisdiction over the administration of trusts to accept jurisdiction over the administration of such trust, and it is requested that such court accept, and that it be permitted to accept, jurisdiction over the administration of such trust; and it is directed that the administration of such trust shall be governed from time to time by the laws of the jurisdiction in which the administration of such trust is then located.

15.   To make, or refrain from making, elections or allocations permitted under any applicable tax law without regard to the effect of any such election or allocation on the interest of any beneficiary of any trust hereunder and, if any such election or allocation shall be made, to apportion, or refrain from apportioning, any benefits thereof among the respective interests of the beneficiaries of such trust, all in such manner as the Trustees shall deem appropriate.

-29-

16.   To retain or invest in solido the property
held in any trust hereunder with the property held in one or
more of the other trusts hereunder or with the property held in
any other trust created by the Grantor or by any other person
for purposes of convenience or for the better investment
thereof.

17.   To exercise all authority, powers, privi-
leges and discretion conferred in this Article after the termi-
nation of any trust created hereunder and until all of the
assets of such trust are fully distributed.

B.   No person or party dealing with the Trustees
shall be bound to see to the application of any money or other
consideration paid by him or her to the Trustees.

C.   Neither the principal nor the income of any trust
hereunder, or any part thereof, shall or may at any time be
liable or subject in any manner whatsoever to the debts or lia-
bilities of any beneficiary entitled to receive any principal or
income therefrom; nor shall the principal or income of any trust
hereunder be liable to attachment by garnishment proceedings or
other legal process issued by any creditor of any beneficiary of
such trust for debts heretofore or hereafter contracted by such
beneficiary; nor shall any assignment, conveyance, charge,
encumbrance or order, either of principal or income, given by
any such beneficiary be valid.

-30-

D.   Wherever in this Trust Agreement it is provided
that an instrument is to be "acknowledged," such instrument
shall be acknowledged in such manner as would be required if the
same were a conveyance of real property entitled to be recorded
in the State of New York.

E.   1.   To the fullest extent permitted by law, no
transaction or decision involving any trust hereunder shall be
deemed invalidated in any way by reason of any personal, benefi-
cial or other interest which any Trustee may have with respect
to such transaction or decision, including, without limitation,
any transaction or decision with respect to any corporation,
company, partnership, association, estate, trust or other entity
in which any Trustee may have an interest in a capacity other
than as a Trustee hereunder, regardless of any conflict of
interest as to any such transaction or decision, and any such
transaction or decision shall be lawful and proper and shall not
be questioned unless such Trustee is guilty of fraud with
respect thereto.   Without limiting the foregoing, no Trustee
shall be disqualified or barred from acting as such or have any
liability hereunder in exercising any power, authority or dis-
cretion conferred upon the Trustees by reason of the fact that
such Trustee may be a stockholder, officer, director, partner,
executor, administrator, personal representative, trustee, bene-
ficiary, or in any other way interested in the corporation, com-
pany, partnership, association, estate, trust or other entity

-31-

whose securities or property are the subject matter of the exercise of such power, authority or discretion.

2.    The Trustees hereunder shall be entitled to compensation as officers, directors, fiduciaries or other participants in any such entity notwithstanding the fact that they are Trustees hereunder and are also entitled to receive reimbursement for their out-of-pocket expenses as such Trustees.

F.    The Trustees shall be under no duty or obligation and shall not be liable to any trust hereunder or to any person or persons interested in any trust hereunder or be surcharged for failure to buy, sell or engage in any transaction directly or indirectly involving securities issued or to be issued by any corporation or other business organization concerning which any of the Trustees, in a capacity other than as a Trustee hereunder, may have acquired any information which has not been disclosed to the public.

TWELFTH:  Provisions Relating to the GST.

A.    As used in this Article:

1.    "GST" shall mean and refer to "the United States generation-skipping transfer tax imposed by Chapter 13 of the Internal Revenue Code."

2.    The words "inclusion ratio" shall have the same meaning as those words are given in Section 2642 of the Internal Revenue Code.

3.    The words "Net Death Taxes" shall mean and refer to "the aggregate death taxes (including, without limitation, United States, state, local and other estate taxes and inheritance taxes but not including any interest and penalties thereon), after taking into account all applicable credits, payable with respect to the estate of such beneficiary."

B.    1.    Notwithstanding any other provision in this Trust Agreement to the contrary, and in addition to any other power of appointment hereinabove given by the previous provisions of this Trust Agreement to any individual at whose death the inclusion ratio with respect to any trust under this Trust Agreement would, but for the provisions of this Section B, be more than zero (such individual being referred to in this Article as "such beneficiary"), the Trustees of such trust are authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over such trust, if such court shall accept such instrument for filing), (i) to create in such beneficiary a power (hereinafter referred to in this Section B as "such power"), to be exercised by a provision in his or her Will expressly referring to this Article of this Trust Agreement, to appoint to the creditors of his or her estate any portion of the

-33-

property held in such trust at the death of such beneficiary, and (ii) to limit such power, by formula or otherwise, to less than all of the property held in such trust at the death of such beneficiary; provided, however, that with respect to each such trust, the maximum amount of property over which such power may be created shall not, after taking into account the property, if any, over which any other such power is created in such beneficiary, exceed the amount, if any, above which any further addition to the amount subject to such power would increase the Net Death Taxes determined with respect to such beneficiary's estate by an amount equal to or greater than the net decrease in the aggregate of (x) the GST and (y) any state and/or local tax on generation-skipping transfers imposed as a result of the death of such beneficiary that would result from such further addition. Unless such beneficiary's Will otherwise provides by express reference to this Trust Agreement and such power, the increase in the Net Death Taxes on such beneficiary's estate resulting from such power shall be paid from that part of the principal of such trust over which such power is exercisable. If, or to the extent that, such beneficiary shall fail so expressly and so validly to exercise any power created in such beneficiary by the Trustees pursuant to the provisions of this paragraph, the unappointed portion (or, as the case may be, all) of the property subject to such power shall pass pursuant to the provisions of this Trust Agreement otherwise applicable to such property.

-34-

2.   The Trustees are further authorized and
empowered, by an acknowledged instrument in writing (with such
instrument to be filed with the court, if any, then having
jurisdiction over the trust to which such power relates, if such
court shall accept such instrument for filing), to revoke any
power created by the Trustees pursuant to the provisions of
paragraph 1 of this Section B at any time prior to the death of
the beneficiary in whom such power was created, and to release,
in the manner set forth in Article THIRTEENTH hereof, the right
to create such a power.   The Trustees shall not be liable for
any exercise, release or failure to exercise the authority and
power granted to them by the provisions of said paragraph 1 or
for the revocation of any power created by them pursuant to the
provisions of said paragraph 1, provided they utilize good faith
in considering whether or not to exercise or release such power
or to cause such revocation, whether such consideration be at
their own instance or at the request of an individual who is a
beneficiary of a trust hereunder, the guardian or other fidu-
ciary of such an individual, or a member of his or her family.

C.   1.   Notwithstanding any other provision in this
Trust Agreement to the contrary, if at any time any property is
to be placed in a trust under the provisions of any Article of
this Trust Agreement, the Trustees shall, if need be, and if it
is possible to do so, divide such property and place the same in
separate trusts to the end that one such trust shall have an

-35-

inclusion ratio of zero, and if any property which is directed
to be added to a trust hereunder shall have an inclusion ratio
which is different than the inclusion ratio of such trust, the
Trustees shall not make such addition but shall instead admin-
ister such property in a separate trust under this Trust Agree-
ment; and, in each such instance, the property to be placed or
held in such a separate trust shall be held, administered and
disposed of by the Trustees pursuant to provisions identical to
the provisions of the trust to which, but for the provisions of
this paragraph 1, such property would have been placed or added.

    2.    If, pursuant to the provisions of paragraph
1 of this Section C, any property that would otherwise be held
in a single trust hereunder is instead held in separate trusts
hereunder, the Trustees of such trusts may, at any time or from
time to time, (i) make different tax elections and allocations
with respect to each such trust, (ii) expend principal and
income and exercise any discretionary power differently with
respect to each such trust, (iii) invest each such trust differ-
ently, and/or (iv) take all other actions consistent with such
trusts being separate entities.  Furthermore, the donee of any
power of appointment with respect to such trusts may exercise
such power differently with respect to each such trust.

    D.    Notwithstanding the provisions of the foregoing
Sections of this Article to the contrary, if any Trustee here-
under is a current beneficiary of the income of any trust here-

-36-

under, or may, in the discretion of the Trustees, be a current
income beneficiary of any such trust, then, in such event, such
Trustee shall not, in his or her capacity as a Trustee of such
trust, have any voice or vote or otherwise participate in any
decision pertaining to the matters relating to such trust that
are addressed in the foregoing Sections of this Article, and, in
each such event, the other Trustee or Trustees of such trust
shall make all decisions relating to such trust that pertain to
such matters.

THIRTEENTH:   Release of Powers.

Any beneficiary and any Trustee hereunder may at any
time or times release any discretionary power of appointment or
discretionary power to distribute principal or income or any
other discretionary power hereby given to such beneficiary or
Trustee, either with or without consideration, with respect to
the whole or any part of the property subject to such power and
also in such manner as to reduce or limit the persons or objects
or classes of persons or objects in whose favor such power would
otherwise be exercisable, by an instrument signed and acknowl-
edged by the beneficiary or Trustee releasing such power and
delivered to (i) each Trustee then acting hereunder (other than
the Trustee, if any, who shall have executed such instrument),
(ii) the Grantor (or, if the Grantor is not then living, to the
executors, administrators or personal representatives of the

-37-

Grantor's estate), or (iii) any one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied. In the event of the release of any such power by any Trustee, the remaining Trustee or Trustees hereunder, if any, may thereafter exercise such power, other than any discretionary power which was not initially vested in such remaining Trustee or Trustees. The release of any power by any Trustee hereunder pursuant to the provisions of this Article shall not be binding upon any Trustee who may thereafter act as a Trustee hereunder unless such power shall have been released by all of the Trustees then in office who are vested with such power by their execution of a signed and acknowledged instrument specifically providing that such release is to be binding upon all successor Trustees hereunder.

FOURTEENTH:   Provision With Respect To
              Closely Held Businesses.

Without limiting the powers and authority conferred upon the Trustees by Article ELEVENTH hereof but in extension thereof, the Trustees are specifically authorized and empowered, in their discretion, to retain for as long as they, in their discretion, shall deem advisable, any or all shares of stock in any closely held corporation, or any indebtedness owing by any such corporation, or any or all interests in any proprietorship, unincorporated business, partnership, joint venture, realty or

-38-

any other asset, whether owned individually, as tenant-in-common, partner or otherwise, regardless of whether such asset or assets shall be producing profits or losses through ownership or operation thereof, and regardless of the percentage of the trusts hereunder which such assets or similar assets may constitute; and their decision to retain and hold any such asset or liability shall be binding and conclusive upon and shall not be subject to question by any person interested, or who may become interested, in any of the trusts hereunder, and the Trustees shall not incur any liability by reason thereof.

FIFTEENTH:   Headings.

The Article headings contained herein are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope hereof or the intent of any provision hereof.

SIXTEENTH:   Severability.

Should any part, clause, provision or condition hereof be held to be void or invalid, then such invalidity shall not affect any other part, clause, provision or condition hereof, but the remainder hereof shall be effective as though such void

part, clause, provision or condition had not been contained herein.

WITNESS the due execution hereof by the Grantor and Trustees on the day and year first above written.

<div style="margin-left:3em;">
_____
ARIE GENGER,
as Grantor

_____
LAWRENCE M. SMALL,
as Trustee

_____
SASH A. SPENCER,
as Trustee
</div>

-40-

P 42/43

&lt;&lt; 12127506520 &gt;&gt;        Sash A. Genger        2007-01-16 17:09

STATE OF NEW YORK   )
                      )  ss.:

COUNTY OF NEW YORK  )

      On this /3 day of December, 1993, before me person-
ally appeared ARIE GENGER, to me known and known to me to be a
person described in and who executed the foregoing instrument,
and he duly acknowledged to me that he executed the same.

                                 Notary Public

                                 **BRIT GEIGER**
                     Notary Public, State of New York
                     No. 24-4502318 Qual. in Kings Co.
                     Certificate Filed in New York County
                     Commission Expires June 30, 19__

*District of Columbia*

~~STATE OF~~          )
                     )  ss.:

~~COUNTY OF~~       )

      On this /5ᵗʰ day of December, 1993, before me person-
ally appeared LAWRENCE M. SMALL, to me known and known to me to
be a person described in and who executed the foregoing instru-
ment, and he duly acknowledged to me that he executed the same.

                    *Jeanne M. Meister*
                    Notary Public

                    My Commission Expires July 31, 1997

STATE OF *New York* )
                    ) ss.:
COUNTY OF *New York* )

      On this /6ᵗʰ day of December, 1993, before me person-
ally appeared SASH A. SPENCER, to me known and known to me to be
a person described in and who executed the foregoing instrument,
and he duly acknowledged to me that he executed the same.

                    *Stella M. Orso*
                 Notary Public

                     STELLA M. ORSO
               Notary Public, State of New York
                   No. 24-4524037
                 Qualified in Kings County
              Certificate Filed in New York County
              Commission Expires March 30, 1994

-41-

FILED: NEW YORK COUNTY CLERK 03/06/2012    INDEX NO. 651089/2010
NYSCEF DOC. NO. 216                         RECEIVED NYSCEF: 03/06/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
Trust,

                Plaintiffs,

    v.

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, Individually and as Trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.,

                Defendants.

Index No. 651089/2010

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DALIA GENGER'S MOTION TO DISMISS

**PEDOWITZ & MEISTER, LLP**
**1501 Broadway, Suite 800**
**New York, NY 10036**
**Tel: (212) 403-7330**
**Fax: (212) 354-6614**
**robert.meister@pedowitzmeister.com**
**Attorneys for Defendant**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| FACTS |  | 2 |
| Divorce Settlement Agreement |  | 3 |
| Post-Divorce Arbitration and Final Arbitration Award |  | 4 |
| Arie Sued for Making Improper Transfers |  | 4 |
| ARGUMENT |  | 6 |
| Legal Standard |  | 6 |
| I. | The Claim For Reformation Based on the Language of the Divorce Settlement Agreement Should Be Dismissed | 6 |
| | a. The Language of the Stipulation Agreement Is Inapplicable to Arie's Claim for Reformation | 7 |
| | b. As There Was No Mutual Mistake of Fact Because Arie Knew and Dalia Not Know that the Required Consent of the Other Shareholders Had Not Been Obtained, Arie Is Not Entitled to Reformation or a Claim for Unjust Enrichment or Rescission Against Dalia | 7 |
| II. | Arie's Claims to Redo the Economics of the Divorce Stipulation are Barred by Res Judicata Arising from the 2008 Final Arbitration Award | 9 |
| III. | Arie Has Failed to Join an Indispensable Party: The Orly Genger 1993 Trust | 10 |
| IV. | As Dalia Does Not Own Any Shares of TRI Stock, No Injunctions or Declaratory Judgment Preventing Her from Encumbering These Shares Is Inappropriate | 13 |
| V. | Arie is Not Entitled to Any Equitable Remedy As He Has Unclean Hands | 13 |
| VI. | Arie's Fourth Cause of Action Seeking Unjust Enrichment and Rescission Should Be Dismissed | 15 |
| VII. | The Fifth Cause of Action for a Permanent Injunction Should be Dismissed | 16 |
| CONCLUSION |  | 17 |

## TABLE OF AUTHORITIES

### Cases

*390 W. End Associates v. Baron*, 274 A.D.2d 330, 711 N.Y.S.2d 176 (1st Dept. 2000) ............. 13

*ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 952 N.E.2d 463 (2011)............................. 6

*Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F.Supp. 969 (S.D.N.Y. 1992).......... 14

*Breslin Realty Dev. Corp. v. Shaw*, 72 A.D.3d 258, 893 N.Y.S.2d 95 (2d Dept. 2010)................ 10

*Chimart Assoc. v. Paul*, 66 N.Y.2d 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986) .................... 8

*Citibank, N.A. v. Am. Banana Co., Inc.*, 50 A.D.3d 593, 856 N.Y.S.2d 600 (1st Dept. 2008)..... 13

*Dabrowski v. Abax Inc.*, 64 A.D.3d 426, 882 N.Y.S.2d 119 (1st Dept. 2009) ............................ 15

*Dalia Genger v. TR Investors, LLC et. al.* (Del. Ch. 6906-CS, filed Oct. 4, 2011)........... 6, 11, 13

*Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 364 (S.D.N.Y. 2008) ... 14

*Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85 (2d Cir. 1998) .............................. 14

*First Natl. Bank of Amsterdam v. Shuler*, 153 N.Y. 163, 47 N.E. 262 (1897)............................. 12

*Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011) .............. passim

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 841 N.E.2d 742 (2005)..................................... 15

*Goldstein v. Delgratia Mining Corp.*, 176 F.R.D. 454 (S.D.N.Y.1997)...................................... 14

*Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 827
    N.Y.S.2d 147 (1st Dept. 2007).................................................................................................. 8

*Harris v. Uhlendorf*, 24 N.Y.2d 463, 301 N.Y.S.2d 53, 248 N.E.2d 892 (1969) ......................... 8

*Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8 , 892 N.E.2d 380 (2008) ............................... 9

*Leon v. Martinez*, 84 N.Y.2d 83, 87, 614 N.Y.2d 972, 638 N.E.2d 511 (1994).......................... 6

*Matlin Patterson ATA Holdings LLC v. Fed. Express Corp.*, 929 N.Y.S.2d 571 (1st Dept. 2011)
    ........................................................................................................................................................ 6

*Modjeska v. Greer*, 233 A.D.2d 589, 590 (3d Dep't 1996) ........................................................ 11

*Morgan Guaranty Trust Co. of New York v. Solow*, 114 A.D.2d 818, 495 N.Y.S.2d 389, *aff'd.* 68
    N.Y.2d 779, 506 N.Y.S.2d 674, 498 N.E.2d 147 (1986)............................................................. 9

*Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 214 N.E.2d 361 (1966)............ 13

*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647
    (1999) ........................................................................................................................................... 9

*Pedowitz & Meister LLP v. TPR Investment Associates, Inc. et al.*, U.D.S.D., S.D.N.Y., 11 civ.
    1502 (JFK)................................................................................................................................... 12

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89
    L.Ed. 1381 (1945) ...................................................................................................................... 14

*Red Hook/Gowanus Chamber of Commerce v. New York City Bd. of Standards & Appeals*, 5
    N.Y.3d 452, 839 N.E.2d 878 (2005) .......................................................................................... 12

*Stonebridge Capital, LLC v. Nomura Int'l PLC*, 68 A.D.3d 546, 891 N.Y.S.2d 56 (1st Dept.
    2009)............................................................................................................................................. 8

*Sud v. Sud*, 211 A.D.2d 423, 621 N.Y.S.2d 37 (1st Dept. 1995) ................................................. 6

*TR Investors, LLC v. Arie Genger, C.A*, 2009 WL 4696062 (Del. Ch. Dec. 9, 2009)............... 5, 15

*TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010)
    *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).............................................3, 5, 9, 15
*Velez v. Feinstein*, 87 A.D.2d 309, 451 N.Y.S.2d 110 (1st Dept. 1982)......................................11
*W. R. Co. v. Nolan*, 48 N.Y. 513 (1872) ...............................................................................11
*Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327 (2d Cir.1983) ...............................................15
*Waverly Mews Corp. v. Waverly Stores Associates*, 294 A.D.2d 130, 1741 N.Y.S.2d 826 (1st
    Dept. 2002).......................................................................................................................9
*William P. Pahl Equip. Corp. v. Kassis*, 182 A.D.2d 22, 588 N.Y.S.2d 8 (1st Dept. 1992) ..........8
*Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 843 N.E.2d 723 (2005) ...............................................10

### Statutes

CPLR § 1003 .............................................................................................................................1
CPLR § 3211(a)(5)................................................................................................................1, 9
CPLR § 3211(a)(7)................................................................................................................1, 6
CPLR § 3211(a)(10)............................................................................................................1, 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
Trust,

Plaintiffs,

v.

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, Individually and as Trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.

Defendants.

Index No. 651089/2010

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DALIA GENGER'S MOTION TO DISMISS

Defendant Dalia Genger (Dalia) respectfully submits this brief in support of her motion

pursuant to New York Civil Practice Laws and Rules (CPLR) §§ 3211 (a)(5); (a)(7); (a)(10) and

CPLR § 1003 to dismiss all the claims against her in the Third Amended and Supplemental

Complaint.

Dalia Genger was the wife of plaintiff, Arie Genger.. (Since January 2008, Dalia has also

been the Trustee of the Orly Genger 1993 Trust, although the Complaint does not sue her in such

capacity.) Their divorce action was settled by a Stipulation of Settlement (Divorce Settlement

Agreement) on October 26, 2004. In the Divorce Settlement Agreement, Arie agreed to cause

Defendant TPR Investment Associates, Inc. (TPR) to transfer certain shares of Trans-Resources,

1

Inc. (TRI) to the Sagi Genger 1993 Trust (Sagi Trust), to the Orly Genger 1993 Trust (Orly

Trust) and to Arie himself.

In 2010, the Delaware Chancery Court held that Arie had not caused TPR to validly

transfer legal title to the TRI shares to the Sagi Genger 1993 Trust, to the Orly Genger 1993

Trust or to Arie himself, and that decision was affirmed in relevant part by the Delaware

Supreme Court in 2011. *Genger v. TR Investors, LLC,* 592, 2010, 2011 WL 2802832 (Del. July

18, 2011). That decision was premised on Arie's failure to obtain consent of the other TRI

shareholders (the Trump Group) as was required under the TRI Shareholders Agreement of

which he knew and had signed.

Now, seven years after the divorce agreement, in this proceeding Arie seeks to undo or

change various economic provisions of the Divorce Settlement Agreement because he did not do

what he was obligated to do under that agreement. He attempts to plead a variety of theories,

namely Reformation (First claim); Constructive Trust in favor of Arie purportedly on behalf of

Arie and Orly (Second Claim); Unjust Enrichment and Rescission purportedly on behalf of Arie

and Orly (Fourth Claim) and Injunction on behalf of Arie and Orly (Fifth Claim). None states a

cause of action against Dalia.

## FACTS

In 2001, Arie and TPR entered into a TRI Stockholders Agreement with TRI and its other

shareholders that prohibited Arie and TPR from transferring TRI stock to any party other than

those expressly permitted to receive such a transfer. Under this agreement, TRI shares could

transfer to Arie himself provided written notice was given the other shareholders of TRI, the

Trump Group. TRI stock was not permitted to be transferred during Arie's life to his children's

trusts, the Orly or Sagi Trusts, without giving written notice containing the terms and conditions

of the offer to the Trump Group. The Trump Group then was given the right to elect to purchase

2

all of the offered shares at the price offered by the prospective purchaser and specified in such notice. *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).

**Divorce Settlement Agreement**

In settlement of their divorce proceedings, on October 26, 2004, Dalia and Arie entered into the Divorce Settlement Agreement (Exhibit A to Arie's Claim). Despite Arie's knowledge of the extensive transfer restrictions placed on transfers of TRI stock, in the Divorce Settlement Agreement Arie agreed to cause TPR to transfer all of TPR's 3,000 shares of TRI common stock. The TRI shares were to be transferred as follows: (i) 794.40 shares (representing 13.99468% of TRI common stock of) to Arie; and (ii) The Orly and Sagi Trusts would each receive 1,102.80 shares of TRI Stock each (giving each trust an ownership of 19.42766% of TRI common stock). The Divorce Settlement Agreement further stated that the Orly and Sagi Trusts would execute and deliver irrevocable proxies to Arie for all of the TRI stock owned by the trust. See Divorce Settlement Agreement; Article II(9)(a)(ii) at 14.

The Divorce Settlement Agreement made no reference to the restrictions on transfers in the TRI Stockholders Agreement and did not state whether the Trump Group had notice of or consented to the transfers. To the contrary, in the Divorce Settlement Agreement, Arie affirmatively represented to Dalia that,

> [e]xcept for the consent of TPR...no consent, approval or similar action of any person is required in connection with the transfer of TRI Stock as contemplated hereby and that such transfer will not conflict with any agreement to which [Arie] is party or by which he is bound.

See Divorce Settlement Agreement; Article II(9)(a) at 13.

3

On October 29, 2004, TPR and Arie entered into an agreement ("Letter Agreement") with the Orly and Sagi Trusts to transfer TPR's 3,000 shares of TRI common stock in accordance with the terms of the Divorce Settlement Agreement. Complaint Ex. A.

**Post-Divorce Arbitration and Final Arbitration Award**

In 2007 – 2008 there was an arbitration proceeding between Dalia and Arie concerning issues relating to, *inter alia*, the economics of the arrangements in the 2004 Stipulation of Settlement concerning the TRI stock transactions.   After "extensive discovery" and approximately 14 days of hearings, where each party made "extensive pre and post hearing submissions", in 2008 the Arbitrator, former Justice E. Leo Milonas, ruled that in the divorce negotiations Arie had falsely misrepresented to Dalia that the TPR's holdings of TRI stock had no value and based on his determination of the value of TRI in 2004, he awarded Dalia $3.85 million based on the shares of TRI stock that Arie was to cause TPR to transfer to himself. Arbitration Opinion, Exhibit A to the Meister Aff.

**Arie Sued for Making Improper Transfers**

On August 11, 2008, one of the TRI shareholders that was part of the Trump Group, Glencova LLC, filed suit in the Southern District of New York to enforce, *inter alia,* its rights under the Stockholders Agreement.  During the course of the litigation, the Trump Group entered an agreement with both TPR and the Sagi Trust to purchase for $26,715,416.00 the TRI shares that had allegedly been transferred to the Sagi Trust in pursuant to the Divorce Stipulation in 2004.

Subsequently, the Trump Group filed a complaint in Delaware Chancery Court pursuant to 8 *Del. C.* § 225 to determine the composition of the TRI board.  The Trump Group maintained

4

that Arie and TPR's 2004 transfers of TRI stock violated the Stockholders Agreement and, as a result, the transfers were void.

During that litigation, the Delaware Court found that Arie to be in contempt because he had violated a court order by causing evidence that was on his computer as well as TRI's computers to be intentionally destroyed. The Court sanctioned Arie by, among other things, increasing his burden of proof, requiring him to provide corroborating evidence at trial (beyond just his own testimony), requiring him to produce certain documents to the plaintiffs that he had claimed were privileged, and awarding attorneys' fees of $750,000. See *TR Investors, LLC v. Arie Genger, C.A,* 2009 WL 4696062 (Del. Ch. Dec. 9, 2009).

Thereafter the Delaware Chancery Court found that Arie and TPR had executed the transfers of TRI stock in violation of the Stockholders Agreement, and as a result neither Arie, the Orly Trust or the Sagi Trust were the record owners of any TRI shares. The Court, however, upheld the Sagi Trust's agreement with TPR and the Trump Group that transferred the shares purportedly transferred to Sagi pursuant to the Divorce Settlement Agreement to the Trump Group. Accordingly, the Trump Group was entitled to the Sagi Trust shares, giving them a 64% ownership in TRI. *TR Investors, LLC v. Genger,* CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd,* 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).

The Delaware Supreme Court reversed the Chancery Court's finding that the Trump Group was the record *and beneficial owner* of all the purportedly transferred TRI shares, but affirmed that TPR was the record holder of those shares without determining the beneficial ownership of the TRI Stock purportedly transferred to the Orly Trust or to Arie. *Genger v. TR Investors, LLC,* 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Thereafter, Dalia, as Trustee of the Orly Trust, brought an action in the Delaware Chancery Court to determine that the Orly

5

Trust is the beneficial ownership of the TRI Shares that TPR purported to transfer to it. *Dalia*

*Genger v. TR Investors, LLC et. al.*, (Del. Ch. 6906-CS. filed Oct. 4, 2011). Exhibit B to Meister

Affidavit.

## ARGUMENT

### Legal Standard

"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal

construction." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 227, 952 N.E.2d 463, 474

(2011) *quoting Leon v. Martinez,* 84 N.Y.2d 83, 87, 614 N.Y.S.2d 972, 638 N.E.2d 511 (1994).

Courts must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of

every possible favorable inference, and determine only whether the facts as alleged fit within any

cognizable legal theory." *Id.* "However, the complaint 'must contain allegations concerning

each of the material elements necessary to sustain recovery under a viable legal theory'". *Matlin*

*Patterson ATA Holdings LLC v. Fed. Express Corp.*, 929 N.Y.S.2d 571 (1st Dept. 2011)(citation

omitted).

Under CPLR 3211(a)(7), "the facts pleaded are presumed to be true and accorded every

favorable inference, nevertheless, allegations consisting of bare legal conclusions, as well as

factual claims either inherently incredible or flatly contradicted by documentary evidence, are

not entitled to such consideration." *Sud v. Sud*, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (1st

Dept. 1995)(citation omitted).

## I    The Claim For Reformation Based on the Language of the Divorce Settlement Agreement Should Be Dismissed

The claim for reformation appears to be brought on two theories; one purportedly based

on language in the Divorce Settlement Agreement and the other purportedly based on mutual

mistake of fact. Neither is valid.

a. **The Language of the Stipulation Agreement Is Inapplicable to Arie's Claim for Reformation**

Article XVI of the Stipulation allows a court to sever a provision that a court declared

"invalid or unenforceable by any Court of competent jurisdiction, by statute or governmental

regulation" and reform the agreement accordingly.  That provision was not triggered by the

Delaware decision, because it did not declare the provisions for Arie to cause TPR to transfer the

TRI shares to be invalid or unenforceable.  The Delaware decision merely held that Arie had not

given notice to or obtained or even sought the consent of the other shareholders for such transfer

that was required by the TRI Shareholders Agreement.  Thus the reformation provision of the

Stipulation was not triggered.

b. **As There Was No Mutual Mistake of Fact Because Arie Knew and Dalia Not Know that the Required Consent of the Other Shareholders Had Not Been Obtained, Arie Is Not Entitled to Reformation or a Claim for Unjust Enrichment or Rescission Against Dalia**

Here, there was no mutual mistake of fact.  "When [Arie] effectuated the 2004 Transfers,

[he] knew that neither Trust was a 'Permitted Transferee' of the [TRI] shares under the

Stockholders Agreement." *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del.

July 18, 2011).  Yet in the Stipulation (Art. II Sec. 9(a)) Arie warranted to Dalia that:

> Accept for the Consent of TPR, [Arie] further represents and warrants
> that no consent, approval or similar action of any person  is required in
> connection with the transfer of TRI Stock as contemplated hereby and
> that such transfer will not conflict with any agreement to which [Arie]
> is party or by which he is bound.

As held by the Delaware Supreme Court, "[t]hat representation was false". *Genger v. TR*

*Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).  As a party to that litigation,

Arie is bound by and collaterally estopped from disputing that determination.  Thus there is no

basis for his allegation (Complaint ¶ 45) that he reasonably believed that all necessary consents had been obtained.  Therefore there could be no mutual mistake of fact.

In the case of mutual mistake, it must be alleged that "the parties have reached an oral agreement and, *unknown to either*, the signed writing does not express that agreement" *Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 443, 827 N.Y.S.2d 147, 149 (1st Dept. 2007) *citing Chimart Assoc. v. Paul*, 66 N.Y.2d at 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986)(emphasis added).  "The burden upon a party seeking reformation is a heavy one since it is presumed that a deliberately prepared and executed written instrument accurately reflects the true intention of the parties: '[T]he proponent of reformation must show in no uncertain terms not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'" *Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 442-43, 827 N.Y.S.2d 147, 148 (1st Dept. 2007) (citation omittied)

A claim for mutual mistake must "allege that the parties reached an agreement that was not reflected in the transaction documents".  A "fail[ure] to state 'exactly' what such agreement was. . .fail[s] to overcome the strong presumption against mutual mistake claims." *Stonebridge Capital, LLC v. Nomura Int'l PLC*, 68 A.D.3d 546, 548, 891 N.Y.S.2d 56, 58 (1st Dept. 2009) *leave to appeal dismissed*, 15 N.Y.3d 735, 931 N.E.2d 1057 (2010) *citing Harris v. Uhlendorf*, 24 N.Y.2d 463, 467, 301 N.Y.S.2d 53, 248 N.E.2d 892 (1969); *William P. Pahl Equip. Corp. v. Kassis*, 182 A.D.2d 22, 29, 588 N.Y.S.2d 8 (1st Dept. 1992), *lv. denied in part, appeal dismissed in part* 80 N.Y.2d 1005, 592 N.Y.S.2d 665, 607 N.E.2d 812 (1992).

To the degree that the claim for unjust enrichment and rescission is also based on a claim of mutual mistake of fact, it is defective for the same reason.

8

As stated by the Delaware Chancery Court, Arie "only has himself to blame for whatever mess his decision to make the 2004 Transfer has caused for his divorce settlement." *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).

## II    Arie's Claims to Redo the Economics of the Divorce Stipulation are Barred by Res Judicata Arising from the 2008 Final Arbitration Award.

In 2007 – 2008 there was an arbitration between Dalia and Arie concerning issues relating to, *inter alia*, the economics of the arrangements in the 2004 Stipulation of Settlement concerning the TRI stock transactions. After "extensive discovery" and approximately 14 days of hearings, where each party made "extensive pre and post hearing submissions", in 2008 the Arbitrator, former Justice E. Leo Milonas, awarded Dalia $3.85 million based on the shares of TRI stock that he was to cause TPR to transfer to himself. Arbitration Opinion Exhibit A to the Meister Aff. The arbitration is *res judicata* barring Arie's claims in this action against Dalia.

"The doctrines of res judicata and collateral estoppel are applicable to arbitration awards." *Waverly Mews Corp. v. Waverly Stores Associates*, 294 A.D.2d 130, 132, 741 N.Y.S.2d 826, 827 (1st Dept. 2002) *citing Morgan Guaranty Trust Co. of New York v. Solow*, 114 A.D.2d 818, 495 N.Y.S.2d 389, *aff'd.* 68 N.Y.2d 779, 506 N.Y.S.2d 674, 498 N.E.2d 147 (1986). Under CPLR 3211(a)(5), an action should be dismissed "because of arbitration and award".

"[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 12-13, 892 N.E.2d 380, 383 (2008) quoting *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999), *id.* at 347, 690 N.Y.S.2d 478, 712 N.E.2d 647 [internal quotation

marks and citations omitted]. "Res judicata bars future litigation between the same parties . . .

arising out of transactions giving rise to a cause of action which *could have been* raised in a . . .

[prior] proceeding." *Breslin Realty Dev. Corp. v. Shaw*, 72 A.D.3d 258, 264, 893 N.Y.S.2d 95,

100 (2d Dept. 2010)(emphasis added). Determining whether claims are part of the same

transaction involves a "'pragmatic' test . . . analyzing 'whether the facts are related in time,

space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100-01, 843 N.E.2d 723 (2005) *quoting* Restatement

[Second] of Judgments § 24. Since, as the Delaware Supreme Court determined, Arie *knew* that

in 2004 that the transfers required consents that he had not obtained, although he falsely

represented the contrary, he *could have raised* any claims about the validity of these transfers

during the 2008 Arbitration, where issues regarding the worth of various items were fully

discussed in detail. Because Arie chose not to raise the issues in these actions in the 2008

Arbitration action, he is barred from now relitigating these issues.

**III    Arie Has Failed to Join an Indispensible Party: The Orly Genger 1993 Trust**

      The claims for reformation and constructive trust seek to take away from the Orly Genger

1993 Trust (Orly Trust) the benefits it received. Thus the Orly Trust is an indispensible party to

this action. CPLR 3211(a)(10) requires the dismissal of an action when "the court should not

proceed in the absence of a person who should be a party."

      The Orly Trust is <u>not</u> a party to this action. Although the Complaint states that Orly

Genger is suing "in her individual capacity and on behalf of the Orly Genger 1993 Trust" as

beneficiary of that Trust, it does not allege any individual rights of Orly herself; only the Trust.

The claims asserted against Dalia that purport to be on behalf of Orly (Second, Fourth, and Fifth

<div align="center">10</div>

Claims), seek to take rights away from the Orly Trust. Indeed the claim for a constructive trust
(Second Claim), seeks that Orly Trust's rights to the TRI shares be placed in a constructive trust
for the benefit of *Arie*.

The rights of a beneficiary of an express trust are derivative, not direct. Only the Trust
itself can assert those rights. *Modjeska v. Greer*, 233 A.D.2d 589, 590 (3d Dep't 1996) (*held:*
beneficiary cannot litigate rights that belong to Trust). So that as long as a trustee is ready and
willing to take the proper proceedings against a third person, a beneficiary cannot maintain a suit
against the third person. *See e.g., W. R. Co. v. Nolan*, 48 N.Y. 513, 517-18 (1872). It is
fundamental to the law of trusts that a beneficiary has the right, upon general principles of equity
and independently of statutory provisions, to sue for the benefit of the trust only after "a showing
of a demand on the trustees to bring the suit, and of a refusal so unjustifiable as to constitute an
abuse of the trustee's discretion, or a showing that suit should be brought and that because of the
trustees' conflict of interest, or some other reason, it is futile to make such a demand." *Velez v.
Feinstein*, 87 A.D.2d 309, 315 (1st Dept. 1982).

There has been and can be no finding that Dalia, as Trustee of the Orly Trust, has failed
to act on the Orly Trust's behalf. Indeed, Dalia, as Trustee of the Orly Trust, has commenced an
action to declare that the Orly Trust is the beneficial owner of the TRI shares transferred by TPR.
*Dalia Genger v. TR Investors, LLC et. al.* (Del. Ch. 6906-CS. filed Oct. 4, 2011). Exhibit B to
Meister Aff.

The Delaware Supreme Court held that it did not have *in personam* jurisdiction over the
Orly Genger Trust and therefore it could only determine that the Orly Trust was not the *record*
owner of the TRI shares involved in the 2004 transfers, but did not determine whether the Orly
Trust was the *beneficial* owner of these shares. *Genger v. TR Investors, LLC*, 592, 2010, 2011

11

WL 2802832 (Del. July 18, 2011). Accordingly, a judgment cannot be exercised by this court regarding the beneficial ownership of the TRI Shares that were transferred to the Orly Trust pursuant to the Divorce Stipulation without joining the Orly Trust as a party since by the transfer to which TPR agreed (Counterclaim Ex. B) the Orly Trust became the beneficial owner of over 19% of TRI's shares.[1]

"Joinder rules serve an important policy interest in guaranteeing that absent parties at risk of prejudice will not be 'embarrassed by judgments purporting to bind their rights or interests where they have had no opportunity to be heard'". *Red Hook/Gowanus Chamber of Commerce v. New York City Bd. of Standards & Appeals*, 5 N.Y.3d 452, 457-60, 839 N.E.2d 878 (2005) *quoting First Natl. Bank of Amsterdam v. Shuler*, 153 N.Y. 163, 170, 47 N.E. 262 (1897). "They also protect against multiple lawsuits and inconsistent judgments." *Id.* (citation omitted).

Here the judgment seeks to impose a constructive trust <u>in favor of Arie</u> on the Orly Trust's portion of the TRI shares that TPR transferred to the Orly Trust. Thus the failure to join the Orly Trust would prejudice the rights of the Trust to retain the benefits of the 2004 transactions and would lead to an incomplete resolution of justice. The Delaware Supreme Court agreed noting that "[s]uch an adjudication of beneficial ownership can occur only by a court with personal jurisdiction over all indispensable parties. The federal court in the New York litigation would be such a court." *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Further, it is important to note that an action is pending in the Delaware Chancery Court to declare that the Orly Trust is the beneficial ownership of the TRI, allowing for a full

---

[1]     This is a matter of substantial significance, as under the valuation determined by Justice Milonas, those shares would be worth at least $10.3 million. The purported purchasers of those shares pursuant to agreement with TPR (Counterclaim Exs. F and G) have paid $10.3 into escrow, which is now the subject of an interpleader action, *Pedowitz & Meister LLP v. TPR Investment Associates, Inc. et al.*, U.D.S.D., S.D.N.Y., 11 civ. 1502 (JFK). And the Orly Trust has filed an action in Delaware Chancery Court seeking a determination that the Orly Trust is the beneficial owner of those TRI shares. *Dalia Genger, Trustee v. TR Investors, LLC et al.*, Del. Chanc. 6906-CS.

12

adjudication of beneficial ownership of the TRI shares. *Dalia Genger v. TR Investors, LLC et. al.* (Del. Ch. 6906-CS. filed Oct. 4, 2011). Exhibit B to Meister Aff.

## IV    As Dalia Does Not Own Any Shares of TRI Stock, No Injunction or Declaratory Judgment Preventing Her from Encumbering These Shares Is Inappropriate.

Dalia was not given any shares of TRI Stock pursuant to the 2004 Transfers, and nowhere in Arie's pleading does he allege that Dalia owns any shares of TRI Stock. Thus Dalia has no corpus over which to impose a constructive trust, and neither has she been unjustly enriched. Thus those claims against her must be dismissed.

## V    Arie Is Not Entitled to __Any__ Equitable Remedy As He Has Unclean Hands.

Reformation, rescission, and imposition of a constructive trust  are an equitable remedies that should be denied on the basis of unclean hands.  Reliance upon the doctrine of unclean hands is applicable "when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct". *Citibank, N.A. v. Am. Banana Co., Inc.,* 50 A.D.3d 593, 594, 856 N.Y.S.2d 600, 601 (1st Dept. 2008) *(citation omitted)*.  This is premised on the "equitable rule or maxim that 'he who comes into equity must come with clean hands.'" *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.,* 17 N.Y.2d 12, 15, 214 N.E.2d 361, 362 (1966) (citation omitted). "To charge a party with unclean hands, it must be shown that said party was 'guilty of immoral or unconscionable conduct directly related to the subject matter'". *Id. (citation omitted).*

The clean hands doctrine is applicable when the defendant shows that the "plaintiff was guilty of immoral or unconscionable conduct when the agreement was made," the conduct complained of is directly related to the subject matter in litigation, and the party invoking the doctrine was injured by such conduct. *390 W. End Associates v. Baron,* 274 A.D.2d 330, 332, 711 N.Y.S.2d 176, 178 (1st Dept. 2000).

13

Here the Delaware Chancery Court concluded that Arie committed a "serious, secretive contractual breach". *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). The Delaware Supreme Court concluded that Arie "knew" during 2004 when he made his Divorce Settlement Agreement with Dalia that when he represented that no consent other than TPR was necessary to transfer ownerships of the TRI stock, "[t]hat representation was false". *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Additionally, Justice Milonas concluded in his 2008 arbitration award that Arie had made false misrepresentations to Dalia in 2004 by representing in the divorce proceedings that the TRI shares had no value. Aribitration Award Meister Aff. Ex. A, p. 8 (finding that Arie's contention that his personal liabilities based on TRI's involvement with the Bogalusa litigation were "significantly misleading" as his exposure "if at all, was minimal.") "[W]hile equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) *quoting Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814-15, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (quotation marks and citation omitted).

Typically courts bar a plaintiff from seeking equitable remedies based on plaintiff's "unclean hands" when they have committed "perjury and fraud on the court." *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 364 (S.D.N.Y. 2008)(Keenan, J.) (citation omitted). *See e.g., Goldstein v. Delgratia Mining Corp.,* 176 F.R.D. 454, 458 (S.D.N.Y.1997) (enforcing unclean hands defense where plaintiff made multiple misrepresentations to the court regarding law and facts); *Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.,* 792 F.Supp.

14

969, 970 (S.D.N.Y. 1992) (enforcing unclean hands defense where defendant company's

president fabricated testimony). The Delaware Chancery Court found that Arie committed an

"intentional violation of a clear judicial order and contempt of [the Delaware Chancery] [C]ourt"

*TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2009 WL 4696062 (Del. Ch. Dec. 9, 2009)

*aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Accordingly, due to Arie's deception

that ran contrary to a court order, Arie's claims in this litigation must be barred in equity. *See*

*also Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir.1983) ("[T]he defense of

unclean hands applies only with respect to the right in suit."). Further, "[t]he unclean hands

defense is not an automatic or absolute bar to relief; it is only one of the factors the court must

consider when deciding whether to exercise its discretion and grant an injunction." 11A Wright,

Miller, Kane, *Federal Practice and Procedure: Civil 2d* § 2946, at 111. "The doctrine of unclean

hands also may be relaxed if defendant has been guilty of misconduct that is more

unconscionable than that committed by plaintiff." *Id.* § 2946, at 112.

**VI     Arie's Fourth Cause of Action Seeking Unjust Enrichment and Rescission Should
Be Dismissed.**

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the

law creates in the *absence of any agreement.*" *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561,

572, 841 N.E.2d 742, 746-47 (2005)(emphasis added). Here "there was no unjust enrichment

because the matter is controlled by contract." *Id.*

Where the cause of action "arise[s] out of [a] subject matter covered by express

contracts" a claim for unjust enrichment should be dismissed. *Dabrowski v. Abax Inc.*, 64

A.D.3d 426, 427, 882 N.Y.S.2d 119, 120 (1st Dept. 2009) (dismissing plaintiffs quantum meruit

and unjust enrichment causes of action because the subjects at issue are addressed in express

contracts and the validity of the contracts are not in dispute). Here, Arie has not made

15

allegations sufficient to show that the written Divorce Settlement Agreement should be deemed invalid for any reason. The Divorce Stipulation was entered into by two parties that were represented by "separate, independent legal counsel" who "had full knowledge of the negotiation and terms of the Stipulation of Settlement at the time the Stipulation of Settlement was executed." (Compl. ¶¶ 39, 43). The Delaware Supreme Court concluded that Arie *knew* that the 2004 transfers were invalid at the time the Stipulation was executed, therefore any claim based on his mistake of fact to this regard is entirely without merit and constitutes a fraud on this court.

Likewise, there is no claim for rescission. As noted above, there was no mutual mistake of fact. "A court will not rescind an instrument for which the consideration was allegedly inadequate absent evidence of an additional circumstance warranting cancellation, such as fraud, duress, overreaching or unconscionability." *See* 16 N.Y. Jur. 2d Cancellation of Instruments § 15. Further, it was determined that Arie had *knowledge* in 2004, at the time the Divorce Settlement Agreement was executed, that his representation about all necessary consents having been obtained was false and Arie is collaterally estopped to contend otherwise. *See Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Arie is not entitled to cancellation of his Divorce Settlement Agreement based on any equitable theory. The only fraud committed in this action were the frauds that Arie committed himself when his falsely stated that TRI stock had no value and when he misrepresented that no further consent other than TPR was needed to transfer the shares of TRI stock in the 2004 Divorce Settlement Agreement.

**VII    The Fifth Cause of Action for a Permanent Injunction should be Dismissed**

The Fifth claim seeks an injunction, but pleads no new facts. Injunction is a remedy, not a claim. Here Arie has not shown that he is entitled to relief based on any theory. The only injuries that have occurred have been at the hands of Arie, who made these misrepresentations at the center of this litigation.

16

## CONCLUSION

For the foregoing reasons, the claims asserted against defendant Dalia Genger should be dismissed.

PEDOWITZ & MEISTER LLP

October 14, 2011

By
Robert A. Meister
Marisa Warren
1501 Broadway, Suite 800
New York, NY 10036
212.403.7330
Robert.meister@pedowitzmeister.com
    Attorneys for Dalia Genger

17

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of          AMENDED ANSWER OF
ORLY GENGER, as a person interested, for the   DALIA GENGER TO
removal of DALIA GENGER as Trustee of the     THIRD AMENDED PETITION
Orly Genger 1993 Trust pursuant to SCPA §711(11)   AND CROSS-PETTION
                              File No. 0017/~~2009~~

- - - - - - - - - - - - - - - - - - - - - - - - x             *2008*

### AMENDED ANSWER

Respondent Dalia Genger, by her attorneys, answers the Third Amended Petition (the "Petition") as follows:

1.      Denies.

2.      Admits, except deny knowledge or information as to specific date of appointment.

3.      Refers to the Orly Trust Agreement for the true and correct contents thereof, and otherwise denies the first sentence. Admit the second and third sentences.

4.      Paragraph 4 states a legal request to which no response is warranted.

5.      Admits that Dalia is Petitioner's mother and the sole Trustee of the Orly Trust, and denies the remaining allegations.

6.      Denies.

7.      Denies.

8.      Denies.

9.      Denies.

10.     Denies.

11.     Denies.

12.     Denies.

13.     Denies.

New York County Surrogate's Court
MISCELLANEOUS DEPT.
AUG 22 2017
FILED
Clerk_____

14.    Admits the first two sentences.  Denies knowledge or information as to the third sentence.

15.    Denies the first four sentences.  Denies knowledge or information as to the fifth sentence.

16.    Admits.

17.    Denies.  Avers that Petitioner has previously admitted that "the Note was always intended to be repaid by the family."

18.    Refers to the referenced Note and Pledge Agreement for the true and correct contents thereof, and otherwise denies the allegations.

19.    Denies knowledge or information.

20.    Admits the first sentence.  Denies the second sentence.

21.    Admits the first sentence.  Denies knowledge or information as to the second sentence.

22.    Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

23.    Admits the first four sentences.  Avers that the last sentence states a legal conclusion to which no response is warranted.  Refers to the referenced Agreement, and otherwise denies the allegations.

24.    Refers to the referenced Shareholders Agreement for the true and correct contents thereof, and otherwise denies the allegations.

25.    Denies.

26.    Denies.

27.    Refers to the referenced Resolution for the true and correct contents thereof, and otherwise denies the allegations.

28.    Denies.

29.    Refers to the referenced Memorandum for the true and correct contents thereof, and otherwise denies the allegations.

30.    Refers to the referenced Memorandum for the true and correct contents thereof, and otherwise denies the allegations.

31.    Refers to the referenced Arbitration transcript for the true and correct contents thereof, and otherwise denies the allegations.

32.    Refers to the referenced Arbitration transcript for the true and correct contents thereof, and otherwise denies the allegations.

33.    Refers to the referenced Memorandum for the true and correct contents thereof, and otherwise denies the allegations.

34.    Refers to the referenced Arbitration Award for the true and correct contents thereof, and otherwise denies the allegations.

35.    Denies.

36.    Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

37.    Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

38.    Denies.

39.    Denies knowledge or information as to the first sentence.  Denies the remaining allegations.

40.     Denies.

41.     Refers to the referenced Application for the true and correct contents thereof, and otherwise denies the allegations.

42.     Refers to the referenced Court decision for the true and correct contents thereof, and otherwise denies the allegations.

43.     Denies.

44.     Denies.

45.     Denies.

46.     Refers to the referenced Letter for the true and correct contents thereof, and otherwise denies the allegations.

47.     Denies.

48.     Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

49.     Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

50.     Denies.

51.     Admits the first sentence.  Denies knowledge or information as to the remaining allegations.

52.     Refers to the referenced Letter for the true and correct contents thereof, and otherwise denies the allegations.

53.     Denies.

54.     Refers to the Court records for the true and correct contents thereof, and otherwise denies the allegations.

55.     Refers to the referenced Court decision for the true and correct contents thereof, and otherwise denies the allegations.

56.     Refers to the referenced Demand for the true and correct contents thereof, and otherwise denies the allegations.

57.     Refers to the referenced Letter for the true and correct contents thereof, and otherwise denies the allegations.

58.     Denies, and refers to Justice Feinman's decision construing the Arbitration Award.

59.     Denies.

60.     Denies.

61.     Denies.

62.     Denies.

63.     Denies.

64.     Denies.

65.     Denies.

66.     Refers to the referenced Complaint for the true and correct contents thereof, and otherwise denies the allegations.

67.     Refers to the referenced Petition for the true and correct contents thereof, and otherwise denies the allegations.

68.     Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

69.     Refers to the referenced Court transcript for the true and correct contents thereof, and otherwise denies the allegations.

70.      Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

71.      Refers to the referenced Petition for the true and correct contents thereof, and otherwise denies the allegations.

72.      Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

73.      Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

74.      Denies.

75.      Denies.

76.      Denies.

77.      Denies.

78.      Denies.

79.      Refers to the referenced Promissory Note for the true and correct contents thereof, and otherwise denies the allegations.

80.      Denies.

81.      Refers to the referenced Promissory Note for the true and correct contents thereof, and otherwise denies the allegations.

82.      Refers to the referenced Promissory Note for the true and correct contents thereof, and otherwise denies the allegations.

83.      Refers to the referenced Forbearance Agreement for the true and correct contents thereof, and otherwise denies the allegations.

84.      Denies.

85.    Admits that the parties endeavored to settle the referenced New York TPR Action, and otherwise denies the allegations.

86.    Denies.

87.    Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

88.    Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

89.    Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

90.    Denies.

91.    Denies.

92.    Denies.

93.    Denies.

94.    Denies.

95.    Denies.

96.    Denies that Mr. Isaacson is not acquainted with any members of the Genger family, and denied knowledge or information as the balance of the allegations.

<u>AFFIRMATIVE DEFENSES</u>

1.      The claims are barred by Petitioner's unclean hands and culpable conduct.

2.      The claims are time-barred.

3.      The claims are barred by findings made by other courts, and by the doctrines of

*res judicata*, collateral estoppel, and judicial estoppel.

4.      The claims are barred by illegality and public policy.

5.      The claims are barred by the statute of frauds and parol evidence rule.

## **CROSS-PETITION**

It is respectfully alleged:

### **The Parties**

1.  Respondent/Cross-Petitioner Dalia Genger ("Dalia"), resides and is domiciled at 200 E.
    65th Street, in the City of New York, County of New York and State of New York.

2.  Dalia the Trustee of the Orly Genger 1993  Trust (the "Orly Trust").

3.  Petitioner/Cross-Respondent Orly Genger ("Orly") is the only non-contingent beneficiary
    of the Orly Trust.

### **Jurisdiction and Venue**

4.  This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure
    Act, <u>inter alia</u>, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

5.  Venue in this County is proper pursuant to, <u>inter alia</u>, SCPA 207(1).

### **The Orly Trust**

6.  On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to
    a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees,

-8-

Lawrence M. Small and Sash A. Spencer (the "Trust Agreement").

7. Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the "Trust Agreement Obligations").

## Orly Trust Derivative Litigation

8. In July 2010, Orly instituted a derivative action in the Supreme Court, New York County entitled <u>Arie Genger, et al. v. Sagi Genger, et al.</u>, Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her pleading to assert claims against, <u>inter alia,</u> the purchasers of those TRI shares, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities").

9. On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York County adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there."

10. Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain Dalia from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Dalia was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, Dalia's "contention that the Orly Trust is not a party to this action ...

is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining Dalia from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares.

11. As a derivative plaintiff for the Orly Trust, having prevented the "duplicative litigation" brought by Dalia on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

### Discontinuance With Prejudice of<br>The Orly Trust Claims

12. In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. Dalia sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection.

13. By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including … Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not

what the Trump Group [Entities] bargained and paid for in the settlement . . ."

14. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice.

## The Trump Group Entities Settlement Agreement

15. Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). The document revealed that Orly had settled her claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

16. In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million. According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...."

17. The Trump Group Entities have since reaffirmed that the federal court construed the

-11-

Trump Group Entities Settlement Agreement correctly:

> [Any suggestion] that the confidential settlement agreement *might* only dismiss
> Orly's individual claims against the Trump Group [Entities], but not resolve the
> Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is
> counterfactual. This Court has already held that certain of Orly's claims in this
> action, including the remaining claims, are derivative in nature, and may be
> maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the
> claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie
> agreed to the dismissal of all claims presently pending against one another. This
> agreement is memorialized in the Second Amended Stipulation of
> Discontinuance.

18. Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement
    Agreement, Orly settled and released all of her claims in the Trump Group Entities
    Settlement in both her derivative and individual capacities. (Orly releasing the Trumps
    "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust
    to do the same, which she later did, advising the Delaware Chancery Court that she
    favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was
    dismissed.

### The Settlement Proceeds

19. Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong
    to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case,
    Orly personally). Nonetheless, to date, none of the aforementioned $32.3 million (the
    "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling
    parties indicated an intention to do so in the future.

20. At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities
    confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that
    $15 million remains to be paid, less possible "set-offs" and subject to possible

acceleration or extension of those payment dates.

21. In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

22. Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. However, Orly failed to comply with these duties and obligations. Orly breached her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

### Cross-Petitioner's Substitution Motion

23. In order to protect the rights of the Orly Trust, Dalia moved in the Supreme Court, New York County, for an order permitting her to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed Dalia's motion, on the ground, inter alia, that she is seeking to remove Dalia as Trustee of the Orly Trust. By Interim Order dated May 7, 2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of Orly's Petition.

24. At the March 25, 2015 hearing on Dalia's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. ("it sounds like that ship has sailed"). Accordingly, Dalia brings this Cross- Petition seeking, inter alia: retention of Dalia as the only non-contingent Trustee of the Orly Trust; monetary damages for misappropriation of Orly

-13-

Trust assets; and turnover of the Settlement Proceeds for the Orly Trust, to the extent such funds are recoverable.

## Count I: Breach of Fiduciary Duty

25. The allegations contained in paragraphs 1 through 24 hereinbefore are realleged as if fully set forth herein.

26. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

27. Orly owed a fiduciary duty to the Orly Trust.

28. Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

29. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

30. Orly's actions constitute a breach of fiduciary duty.

31. The Orly Trust has been injured by Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## Count II: Breach of Loyalty

32. The allegations contained in paragraphs 1 through 31 hereinbefore are realleged as if fully set forth herein.

33. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

34. Orly owed a duty of loyalty to the Orly Trust.

-14-

35. Consistent with her duty of loyalty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

36. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

37. Orly's actions constitute a breach of her duty of loyalty.

38. The Orly Trust has been injured by Orly's breach of her duty of loyalty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## **Count III: Turnover**

39. The allegations contained in paragraphs 1 through 38 hereinbefore are realleged as if fully set forth herein.

40. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

41. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

42. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

43. The Settlement Proceeds should be delivered to the Orly Trust.

44. Orly should be compelled to turn over to the Orly Trust all Settlement Proceeds in her possession, custody or control.

-15-

### Count IV: Accounting

45. The allegations contained in paragraphs 1 through 44 hereinbefore are realleged as if fully set forth herein.

46. Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

47. As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.

### Count V: Unjust Enrichment

48. The allegations contained in paragraphs 1 through 47 hereinbefore are realleged as if fully set forth herein.

49. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

50. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

51. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

52. Orly's creditors received the Settlement Proceeds instead of the Orly Trust.

53. Orly received a benefit from the Settlement Proceeds which belong to the Orly Trust.

54. Orly received such benefit from the Settlement Proceeds at the expense of the Orly Trust.

55. Under principles of equity and good conscience, Orly must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

### Count VI: Self-Dealing

56. The allegations contained in paragraphs 1 through 55 hereinbefore are realleged as if fully

set forth herein.

57. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

58. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

59. Orly did not so do.  Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

60. Orly's actions constitute self-dealing.

61. The Orly Trust has been injured by Orly's self-dealing in the amount of $32.3 million, plus statutory interest.

## Count VII: Successor Trustee

62. The allegations contained in paragraphs 1 through 61 hereinbefore are realleged as if fully set forth herein.

63. Upon information and belief, Orly is seeking to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

64. Orly should not be permitted to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

65. Pursuant to Article SEVENTH of the Trust Agreement, an outgoing Trustee has the power to name a successor Trustee.

66. If this Court removes Dalia as trustee of the Orly Trust, Dalia should be permitted to

-17-

exercise her power to name a successor Trustee.

## **Count VII: Successor Trustee**

67. The allegations contained in paragraphs 1 through 66 hereinbefore are realleged as if fully set forth herein.

68. Upon information and belief, Orly is seeking to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

69. Orly should not be permitted to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

70. Pursuant to Article SEVENTH of the Trust Agreement, an outgoing Trustee has the power to name a successor Trustee.

71. If this Court removes Dalia as trustee of the Orly Trust, Dalia should be permitted to exercise her power to name a successor Trustee.

72. If Dalia is not permitted to exercise her power to name a successor Trustee, this Court should name an objective third party Trustee choosen from an independent list.

## **Interested Parties**

73. The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

    (a)    The following who are of full age and sound mind or are corporations or associations:

-18-

ORLY GENGER
780 Greenwich Street, Apt. 4P
New York, New York 10014

Interest: Beneficiary and Petitioner, Cross-Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
Kelley Drye & Warren
101 Park Avenue
New York, New York

Interest: Contingent Remainderman

(b)     The following who are persons under disability:
Infants: None
Others under a disability: None

(c)     The following persons who are confined in prison: None
(d)     The following persons whose names or whereabouts are unknown: None

74. There are no persons, corporations or associations other than those mentioned who are
interested in this proceeding.

75. No previous application for this or similar relief has been made to this or any other court
except:

a.    Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation,
entitled <u>Arie Genger, et al. v. Sagi Genger, et al.</u>, Index No. 651089/2010 in New
York Supreme Court, New York County.  Motion Seq. 42 was held in abeyance
by the Supreme Court pending a determination by this Court.

b.    Petition before this Court filed June 14, 2016, citation not yet issued.

WHEREFORE, Petitioner requests the following relief:

a.      declaratory judgment that Dalia is, and will remain, the only non-contingent
Trustee of the Orly Trust;

-19-

b.      damages in in the amount of $32.3 million, plus statutory interest;

c.      imposition of a constructive trust on the Settlement Proceeds;

d.      an order directing the delivery of the Settlement Proceeds to Dalia as Trustee of

the Orly Trust;

e.      an accounting of the Settlement Proceeds;

f.      if Dalia is removed as Trusee of the Orly Trust, then authorizing Dalia to name

the successor Trustee;

g.      if Dalia is removed as Trusee of the Orly Trust, then having the Court name a

third party successor Trustee from an independent list;  and

h.      such other relief as to the Court seems just and necessary.


Dated: New City, New York
       August 12, 2017

_____
       Judith Lisa Bachman, Esq.
       254 S. Main Street
       Suite 306
       New City, New York 10017
       (845) 639-3210
       *Counsel to Respondent Dalia Genger*

WHEREFORE, your Respondent prays that the foregoing relief be granted and such other and further relief as the Court shall deem just and proper.


Dated: New York, New York
        August 12, 2017

*Dalia Genger*

DALIA GENGER

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)        **AFFIDAVIT OF SERVICE**
                                                         File No. 0017/2009

- - - - - - - - - - - - - - - - - - - - - - - - - x

I, Judith Bachman, Esq., of 254 S. Main Street, Suite 306, New City, New York 10956, being duly sworn, state that I am over the age of eighteen years and that on August 14, 2017, I caused to be deposited a copy of the Amended Answer and Cross-Peition of Respondent, Dalia Genger, herein, in a post office box regularly maintained by the U.S. Postal Service in the County of Rockland, State of New York, addressed to:

> ORLY GENGER
> 780 Greenwich Street, Apt. 4P
> New York, New York 10014
>
> SAGI GENGER 1993 TRUST
> C/O John Dellaportas
> Kelley Drye & Warren
> 101 Park Avenue
> New York, New York
>
> Kasowitz, Benson, Torres & Freidman LLP
> 1633 Broadway
> New York, NY 10019

The envelopes was deposited postage paid by regular first class mail. No mailing was returned as undeliverable.

_____
Judith Bachman, Esq.

Sworn to before me this

21ˢᵗ day of August, 2017

_____
Notary Public

**JOANNE REDDEN HOROWITZ**
**Notary Public, State of New York**
**No. 02HO5034709**
**Qualified in Rockland County**
**Commission Expires March 11, 2019**

FILED: NEW YORK COUNTY CLERK 08/11/2014 10:36 AM

NYSCEF DOC. NO. 1099

20-01188-jlg    Doc 1-3    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR.part 4
Pg 102 of 200

INDEX NO. 651089/2010

RECEIVED NYSCEF: 08/11/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x
ARIE GENGER and ORLY GENGER, in her      :
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,              :      Index No. 651089/2010
                                                (Jaffe, B. JSC)
                                         :

                Plaintiffs,              :

                                         :

        -against-                        :

SAGI GENGER, TPR INVESTMENT              :
ASSOCIATES, INC., DALIA GENGER, THE
SAGI GENGER 1993 TRUST, ROCHELLE         :
FANG, individually and as trustee of THE SAGI
GENGER 1993 TRUST, GLENCLOVA             :
INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR        :
EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP AND MARK HIRSCH,                   :      NOTICE OF MOTION

                Defendants.
-------------------------------------------------------------x
SAGI GENGER, individually and as assignee of  :
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.              :

        Cross-Claimants, Counterclaimants, and  :
        Third-Party Claimants,

                                         :

        -against-                        :

                                         :

ARIE GENGER, ORLY GENGER,                :
GLENCLOVA INVESTMENT COMPANY,            :
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC, JULES TRUMP,      :
EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., WILLIAM           :
DOWD, and THE ORLY GENGER 1993 TRUST,

                                         :

        Cross-Claim, Counterclaim and/or
        Third-Party Defendants.          :
-------------------------------------------------------------x

PLEASE TAKE NOTICE THAT, upon the accompanying Affirmation of Judith Bachman, dated August 11, 2014, and the exhibits attached thereto, and upon all the pleadings and proceedings heretofore had herein, Defendant Dalia Genger, through her undersigned counsel will move this Court returnable at 60 Centre St., Motion Submission Part, Room 130 on September 30, 2014, at 9:30 a.m. or as soon thereafter as counsel can be heard for an order substituting Dalia Genger, as trustee, as plaintiff on Orly Genger's Trump Group claims and for an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court, and such further and other relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that pursuant to CPLR 2214(b), answering papers, if any, must be served at least seven days prior to the return date of this motion.

Dated: August 11, 2014, 2014
New City, New York

_____ /s/ _____
Judith Lisa Bachman, Esq.
Counsel for Defendant
Dalia Genger, Trustee
254 South Main Street, Suite 306
New City, New York 10956
845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In The Matter of DALIA GENGER, Trustee of       File No. 2008-0017/E
the ORLY GENGER 1993 TRUST,
                             :       Hon. Nora S. Anderson

                    Petitioner,     :

       - against -           :

ORLY GENGER, ARIE GENGER,     :
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, :
LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC., ARNOLD BROSER,  :
DAVID BROSER, JOHN DOES 1-20, and
JANE DOES 1-20,             :

               Respondents.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF NEW YORK  )

        Julie M. Thaxton, being duly sworn, deposes and says:

        1.  That deponent is over eighteen years of age, not a party to the action

and is employed by Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square,

New York, NY 10036.

        2.  That on the 6th day of February 2018, deponent served a true copy of

the

- ***Notice of Motion,***

- ***Affirmation of John Boyle in Support of the TR Entities' Motion to Dismiss the
  Petition For Turnover of Trust Property and Other Relief*** with the annexed
  *Exhibits A-L,*

- ***Affirmation of Mark S. Hirsch in Support of Motion to Dismiss*** and

- ***Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Petition for Turnover of Trust Property and Other Relief Filed on June 14, 2016, by Dalia Genger as Trustee of the Orly Genger 1993 Trust***

by Federal Express, overnight delivery upon:

        Judith Lisa Bachman, Esq.
        254 S. Main Street, Suite 306
        New City, New York 10956

        Kelley Drye & Warren LLP
        John Dellaportas
        101 Park Avenue
        New York, NY 10178

        Kasowitz Benson Torres LLP
        Michael Paul Bowen
        1633 Broadway
        New York, NY 10019

        Steven Riker, Esq.
        One Grand Central Place, 46th Floor
        New York, NY 10165

                        Julie M. Thaxton

Sworn to before me this
6th day of February 2018.

Matthew Koenig
Notary Public, State of New York
Reg. No. 01KO6211943
Qualified in New York County
Commission Expires Sept. 23, 2021

2

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

Petitioner,

-against-

Orly Genger, et al.,

Respondents.



New York County Surrogate's Court
MISCELLANEOUS DEPT.
FEB 0 6 2018
FILED
Clerk_____

## <u>NOTICE OF MOTION TO DISMISS PETITION</u>

PLEASE TAKE NOTICE THAT, upon the accompanying Affirmation of Mitchell D.

Goldberg dated February 5, 2018, and upon all the pleadings and proceedings heretofore had

herein, Respondents Arnold Broser and David Broser, through his undersigned attorneys, will

move this Court, at 31 Chambers Street, New York, New York 10007, Room 509, on February

27, 2018 at 10:00 a.m., or as soon thereafter as counsel can be heard, for an order dismissing

with prejudice Dalia Genger's Petition pursuant to SCPA Section 102 and CPLR Sections

321(a)(4), (5), (7) and (8) and for such further and other relief as the Court may deem just and

proper.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to CPLR 2214(b), answering

papers, and any notice of cross-motion, with supporting papers, if any, shall be served on the

undersigned counsel at least seven (7) days prior to the return date of this motion.

Dated: New York, New York
      February 5, 2018

THE FREYBERG LAW GROUP

By: _____
Mitchell D. Goldberg, Esq., Esq.
950 Third Avenue, 32nd Floor
New York, New York 10022
(212) 983-1221
*Attorneys for Respondents*
*Arnold Broser and David Broser*

To: Law office of Judith Bachman
    Attn: Judith Bachman, Esq.
    254 S. Main Street
    Suite 306
    New City, New York  10956
    (845) 639-3210
    *Attorney for Petitioner Dalia Genger*

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK  )
                     ) SS.:
COUNTY OF NEW YORK )

    Mitchell D. Goldberg, being duly sworn, deposes and says: That deponent is not a party to the action, is over 18 years of age and resides in the County of Westchester, State of New York.

    That on the 5th day of February, 2017, deponent served the within Affirmation In Support of Respondents Arnold Broser And David Broser Motion To Dismiss Dalia Genger's 2016 Petition upon the following parties in this action:

> Judith Bachman, Esq.
> 254 S. Main Street, Suite 306
> New City, New York 10956
> Counsel to Petitioner Dalia Genger

by depositing a true copy of same enclosed at the address designated by said attorneys for that purpose by Federal Express, in an official depository under the exclusive care and custody of Federal Express within the State of New York State.

Mitchell D. Goldberg

Sworn to before me this
5th day of February, 2018

Notary Public

SANDRA SWERSKY
Notary Public - State of New York
No. 01SW6220117
Qualified in Westchester County
My Commission Expires April 12, 20 18

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

  -against-

Orly Genger, et al.,

    Respondents.

## AFFIRMATION IN SUPPORT OF RESPONDENTS ARNOLD BROSER AND DAVID BROSER MOTION TO DISMISS DALIA GENGER'S 2016 PETITION

Mitchell D. Goldberg, an attorney duly admitted to practice law in the State of New York, hereby affirms under penalty of perjury pursuant to CPLR 2106 as follows:

1.    I am a member of the bar of the Sate of New York and of counsel to The Freyberg Law Group, counsel for third-party defendant Arnold Broser and David Broser (collectively, the "Brosers") in the above titled action (the "Action").

2.    The Brosers join in the Motion To Dismiss served on behalf of Respondent Orly Genger pursuant to SCPA Section 102 and CPLR 3211(a)(4), (5), (7) and (8) to dismiss with prejudice the Petition filed by Dalia Genger in June, 2016 (referred to by Orly Genger as the "New Action").

3.    Like Orly Genger, the Brosers make a limited appearance in the New Action pursuant to CPLR 320(b). The Brosers were never served with the Petition in the New Action,

and, as such, no proof of service upon the Brosers has been filed with this Court. While an attempt was made to serve the Brosers with the Citation issued by this Court on December 21. 2017 such attempted service did not include the Petition in the New Action.

4.    For the reasons set forth in the Orly Genger Motion to Dismiss, the Brosers seek dismissal of the New Action as against them.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on February 5, 2018.

Mitchell D. Goldberg, Esq.

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br>    Petitioner,<br><br>  -against-<br><br>Orly Genger, et al.,<br>        Respondents. | |



New York County Surrogate's Court
MISCELLANEOUS DEPT.
FEB 0 3 2018
FILED
Clerk_____

## **REVISED NOTICE OF MOTION TO DISMISS BY RESPONDENT ARIE GENGER**

PLEASE TAKE NOTICE that upon the attached affirmation of Leon Friedman, dated

February 4, 2018, the Petitioner Arie Genger will move this Court, , located at 31 Chambers

Street. New York, N.Y. 10007, Room 509,  on February 27, 2017, at 10.00 A.M. or as soon

thereafter as counsel may be heard, for an order pursuant to SCPA Section 102 and CPLR

Sections 3211 (a)(4), (5), (7) and (8) dismissing the pending petition brought by Petitioner Dalia

Genger and for such other relief as the court deems just and proper.

PLEASE TAKE FURTHER NOTICE that pursuant to CPLR 2214(b) answering papers,

if any shall be served at least seven two days prior to the return date of this motion.

Dated: New York, N.Y.
    February 5, 2018

Leon Friedman
685 Third Avenue. 25th floor
New York, N.Y. 10017
(646) 825-4398
Attorney for Respondent Arie Genger

## CERTIFICATE OF SERVICE

I hereby certify that I am not a party to this action, am over 18 years of age and reside at 148 East 78th Street, New York, N.Y and that I am an attorney duly admitted to the Courts of the State of New York.

On February 5, 2018, I served a copy of the annexed Notice of Motion to Dismiss with accompanying affirmation of Leon Friedman in the following manner:

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Judith Bachman
254 S. Main Street, Suite 406
New City, N.Y. 10956

Dated: February 5, 2018

_Leon Friedman_
Leon Friedman

Miscellaneous Citation                          File No. _2008-0017_ / E

## SURROGATE'S COURT NEW YORK COUNTY

### Citation

THE PEOPLE OF THE STATE OF NEW YORK

TO:
ORLY GENGER,
ARIE GENGER,
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC,
NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC.,
ARNOLD BROSER,
DAVID BROSER,
SAGI GENGER 1993 TRUST

A petition having been filed by Dalia Genger, who is domiciled at 200 E. 65th Street, in

the City of New York, County of New York and State of New York.

YOU ARE HEREBY CITED TO SHOW CAUSE before the Surrogate's Court, New

York County, at 31 Chamber Street, Room _509_, New York, New York on

_February 6_, 2018 at 10 o'clock in the forenoon of that day, why a decree should not be

made ~~in the matter of the Application of Dalia Genger, as trustee of the Orly Genger 1993 Trust,~~ Concerning the Orly Genger 1993 Trust created by Trust Agreement, dated December 13, 1993 between Arie Genger, as Grantor and Lawrence M. Small and Sash A. Spencer, as Trustees, ━━━━━━

granting the following relief as requested in the petition:

    a.      damages in in the amount of $32.3 million, plus statutory interest;

    b.      imposition of a constructive trust on the Settlement Proceeds;

    c.      an order directing the delivery of the Settlement Proceeds to her as Trustee;

    d.      an accounting of the Settlement Proceeds; and

e.    such other relief as to the Court seems just and necessary.

Dated, Attested and Sealed,

_December 21, 2017_                    Hon. _Nora S. Anderson_ , Surrogate

                                        _Diana Sanabria_ Chief Clerk

JUDITH BACHMAN, ESQ
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

[Note: This citation is served upon you as required by law. You are not required to appear. If you
fail to appear it will be assumed you do not object to the relief requested. You have a right to
have an attorney appear for you.]

**PROOF OF SERVICE MUST BE FILED
TWO DAYS PRIOR TO THE RETURN DATE**
Court Rule 207.7 (c)

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In The Matter of DALIA GENGER, Trustee of
the ORLY GENGER 1993 TRUST,

                             Petitioner,

                - against -

ORLY GENGER, ARIE GENGER,
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I,
LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC., ARNOLD BROSER,
DAVID BROSER, JOHN DOES 1-20, and
JANE DOES 1-20,

                         Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

File No. 2008-0017/E

Hon. Nora S. Anderson

<u>AFFIDAVIT OF SERVICE</u>

New York County Surrogate's Court
MISCELLANEOUS DEPT.
FEB 0 8 2018
FILED
Clerk

STATE OF NEW YORK   )
                       ) ss.:
COUNTY OF NEW YORK   )

      Richard Gomez, being duly sworn, deposes and says:

      1.  That deponent is over eighteen years of age, not a party to the action

and is employed by Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square,

New York, NY 10036.

      2.  That on the 7th day of February 2018, deponent served a true copy of

the

- ***Notice of Motion,***

- ***Affirmation of John Boyle in Support of the TR Entities' Motion to Dismiss the
Petition For Turnover of Trust Property and Other Relief*** *with the annexed
Exhibits A-L,*

- ***Affirmation of Mark S. Hirsch in Support of Motion to Dismiss*** and

- *Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Petition for Turnover of Trust Property and Other Relief Filed on June 14, 2016, by Dalia Genger as Trustee of the Orly Genger 1993 Trust*

by Federal Express, overnight delivery upon:

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017

The Freyberg Law Group
950 Third Avenue
Suite 3200
New York, NY 10022

Richard Gomez

Sworn to before me this
8th day of February 2018.

Matthew Koenig
Notary Public, State of New York
Reg. No. 01KO6211943
Qualified in New York County
Commission Expires Sept. 23, 2021

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

                          Petitioner,


                -against-                                              File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,                Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,                                                            Notice of
                          Respondents.                                Cross-Motion
------------------------------------------------------------------

New York County Surrogate's Court
MISCELLANEOUS DEPT.
FEB 23 2018
FILED
Clerk

        PLEASE TAKE NOTICE, that upon the Affirmation of Judith Bachman, dated February

20, 2018, the accompanying Memorandum of Law, and all prior pleadings and proceedings

heretofore had herein, petitioner Dalia Genger will cross-move this Court, at 31 Chambers Street,

New York, New York 10007, Room 509, on February 27, 2018 at 10:00 a.m., or as soon

thereafter as counsel can be heard, for an Order pursuant to, inter alia, SCPA §§311, 312, 402,

403, 2106 and CPLR 306(b) for (i) an extension of time to serve process and/or permission to

make substituted service (or nunc pro tunc) and to file an affidavit of service, (ii) the

appointment of a Guardian ad Litem for Orly Genger's infant daughter and unborn children and

the issuance of a supplemental citation, and (iii) to consolidate this turnover proceeding with the

removal proceeding also pending in this Court.

Dated: February 20, 2018
        New City, New York

                                        Judith Bachman, Esq.
                                        The Bachman Law Firm
                                        254 S. Main Street, Suite 306
                                        New City, New York 10956
                                        845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of DALIA GENGER, trustee of the ORLY
GENGER 1993 TRUST,

|                          | Petitioner,      |
|                          |                  |

vs.

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW
TR EQUITY 1, LLC, NEW TR EQUITY II LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20 AND JANE DOES 1-20,

Respondents.

File No. 2008-0017E
Hon. Nora S. Anderson

**AFFIDAVIT OF SERVICE
BY PERSONAL DELIVERY**

---

STATE OF NEW YORK    )
                     )  SS.:
COUNTY OF NEW YORK   )

Peter Bogdanich, being duly sworn, deposes and states:

1.      I am not a party to this action, and am over 18 years of age.

2.      On the 20th day of February, 2018, I served (1) NOTICE OF CROSS-MOTION,
(2) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION, and (3)
MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO
DISMISS AND IN SUPPORT OF PETITIONER'S CROSS-MOTION upon the
following individuals at the following addresses:

Mitchell D. Goldberg, Esq.          Leon Friedman, Esq.
The Freyberg Law Group              685 Third Avenue
950 Third Avenue                    New York, NY 10017
32nd Floor
New York, NY 10022

by delivering true copies thereof, by hand, to the offices above-mentioned.

_____
Peter Bogdanich

Sworn to before me this
21 day of February, 2018.

NANCY TONY SIMON
Notary Public, State of New York
No. 01SI6322471
Qualified in New York County
Commission Expires 04/06/2019

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST

                              Petitioner,

            -against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW
TR EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID
BROSER, JOHN DOES 1-20 AND JANE DOES 1-20,

                              Respondents.

File No. 2008-0017E

Hon. Nora S. Anderson

**AFFIDAVIT OF SERVICE
BY HAND-DELIVERY**

STATE OF NEW YORK          )
                           )  SS.:
COUNTY OF NEW YORK         )

Sammy Simon, being duly sworn, deposes and states:

1.     I am not a party to this action, and am over 18 years of age.

2.     On the 20th day of February, 2018, I served a (1) NOTICE OF CROSS-MOTION;
(2) AFFIRMATION OF JUDITH BACHMAN TO OPPOSITION; and (3) MEMORANDUM
OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS AND IN SUPPORT
OF PETITIONER'S CROSS-MOTION upon the following individuals at the addresses below:

John Boyle
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522

Michael P. Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

by delivering true copies thereof, by hand, to the office above-mentioned.

                                        Sammy Simon

Sworn to before me this
21st day of February, 2018.

Notary Public

Peter Eric Bogdanich
Notary Public, State of New York
No. 01BO6366981
Qualified in Nassau County
Commission Expires November 13, 2021

4851-5836-1438v.1

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
File No.: 2008-0017E

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC, ARNOLD BROSER,
DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.

## NOTICE OF CROSS-MOTION

## KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NEW YORK 10178

(212) 808-7800

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

<div align="center">Petitioner,</div>

      -against-                                File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,    Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

<div align="center">Respondents.</div>

------------------------------------------------------------------------

<div align="center">

MEMORANDUM OF LAW IN OPPOSITION
TO RESPONDENTS' MOTIONS TO DISMISS
AND IN SUPPORT OF PETITIONER'S
CROSS-MOTION

</div>



New York County Surrogate's Court
MISCELLANEOUS DEPT.
FEB 23 2018
FILED
Clerk

<div align="right">

Judith Bachman, Esq.
The Bachman Law Firm
Attorney for Petitioner
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

</div>

Table of Contents

Table of Authorities                                                                            ii

Preliminary Statement                                                                        1

Background Facts and Procedural History                                          1

        Argument

                Point I      Court Delay in Issuing Citation
                             does not Require Dismissal of Proceeding
                             for Late Service or Statute of Limitations Issues          9

                Point II     Service of a Copy of the Petition
                             is Not Required                                                      12

                Point III   Service was Proper and if it Was Not
                             an Extension of Time Should be Granted                      13

                Point IV   There is No Duplicative Prior Action Pending
                             Because there are Different Parties and Different Claims    14

                Point V     Doctrines of Res Judicata/Collateral Estoppel
                             Do Not Bar Turnover Proceeding
                             Because No Court Has Ever Ruled on
                             the Disposition of the Settlement Proceeds                   17

                Point VI   The Claims in the Turnover Proceeding
                             Are Pled Sufficiently

                             A.  Breach of Fiduciary Duty                                     21

                             B.  Claims of Tortious Interference Are Well Pled       26

                             C.  Claims of Money Had and Received are Well Pled    27

                Point VII  Petitioner's Cross-motion for
                             the Appointment of a Guardian Ad Litem and a
                             Supplemental Citation                                               27

                Point VIII  Sanctions against Petitioner and/or Petitioner's Counsel
                             are Unwarranted and Improper                                    28

Conclusion                                                                                        29

## Table of Authorities

Brown v. Ingersoll, 226 N.Y.S.2d 479 (Sup. Ct. Monroe Cnty. 1962)     10

Burke v. Nationwide Ins. Co., 108 A.D.2d 1098, 485 N.Y.S.2d 666 (3d Dep't 1985)     11

Chinatown Apartments, Inc. v. New York City Transit Authority,
100 A.D.2d 824 (3rd Dep't 1984)     16

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)     21, 23

Clarke v. Greenberg, 296 N.Y. 146 , 71 N.E.2d 443 (1947)     18, 21

DDJ Management LLC v. Rhone Group LLC,
78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010)     25

Gusinsky v. Bailey,
21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. Cnty. 2008),
rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008)     21

Hess v. Hess, 233 N.Y. 164 (1922)     27

In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893)     10

In re DeRidder's Will, 183 A.D.657, 170 N.Y.S. 756 (1918)     9

In re Estate of Lange, 72 Misc. 437, 16 N.Y.S. 312 (Surr. Ct. N.Y. 1939)     10

In re Estate of Van Vleck, 32 Misc. 419, 66 N.Y.S. 727 (Surr. Ct. N.Y 1900)     10

In re Gouraud, 95 N.Y. 256, 261 (1884)     10

In re Hoerter, 15 Misc.3d 1101(A) (Sup. Ct. Nassau County 2007)     22

In re Nyenhuis, 225 A.D.2d 395 (1st Dep't 1996)     22

In re Peter's Will, 20 Misc. 2d 1082, 195 N.Y.S.2d 325 (Surr. Ct. 1959)     11

In re Phalen's Will, 4 N.Y.S. 408 (Sup. Ct. N.Y. Gen. Term 1st Dep't 1889)     10

Island Properties, LLC v. Calabretta,
Index No. 2011-33520 (Sup. Ct. Nassau Cnty. Dec. 14, 2011)     16

James ex rel. National Arts Club v. Bernhard,
34 Misc.3d 1242(A), 950 N.Y.S.2d 608 (Sup. Ct. N.Y. Cnty. 2012)     16

Kronish Live Weiner & Hellman LLP v. Tahair, Ltd.,
35 A.D.3d 317, 829 N.Y.S.2d 7 (1st Dep't 2006)     26

<u>Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc.,</u>
49 Misc.3d 1207(A), 26 N.Y.S.3d 725 (Sup. Ct. Nassau Cnty. 2015)          26

<u>Mideal Homes Corp. v. L & C Concrete Work, Inc.,</u> 90 A.D.2d 789 (2d Dep't 1982)     16

<u>Monaghan v. Ford Motor Co.,</u> 71 A.D.3d 848, 897 N.Y.S.2d 482 (2d Dep't 2010)     25

<u>Mokhiber v. Cohn,</u> 783 F.2d 26 (2d Cir. 1986)          17, 21

<u>Ovari v. Maultasch,</u> 17 Misc.2d 597, 182 N.Y.S.2d 871 (Sup. Ct. N.Y. 1959)     11

<u>Pludeman v. Northern Leasing Systems, Inc.,</u>
40 A.D.3d 366, 837 N.Y.S.2d 10 (1<sup>st</sup> Dep't 2007),
<u>aff'd</u>, 10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422  (2008)          24

<u>Toulouse v. Chandler,</u>
5 Misc. 3d 1005(A), 798 N.Y.S.2d 714 (Sup. Ct. Westchester Cnty. 2004)     15

<u>Whitney v. Whitney,</u> 57 N.Y.2d 731 (1982)          16

Rules of Procedure

CPLR 306(b)          passim

CPLR 2103(b)          13

CPLR 3016(b)          24

CPLR 3211(a)(4)          14, 16

SCPA § 301(b)          passim

SCPA §311          27

SCPA §312          27

SCPA §315          27

 SCPA §402          27

SCPA §403          27

SCPA § 2106          27

Preliminary Statement

Petitioner Dalia Genger ("Dalia" or "Petitioner"), trustee of the Orly Genger 1993 Trust

("Orly Trust"), opposes the respondents' respective motions to dismiss Dalia's turnover

proceeding ("Turnover Proceeding") because Dalia must be allowed to protect the Orly Trust

and the proceeding is timely, the citation was properly served, and the claims are well pled.

To the extent necessary, Dalia also cross-moves for (i) an extension of time to serve

process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit

of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and unborn

children and the issuance of a supplemental citation, and (iii) to consolidate this turnover

proceeding with the removal proceeding also pending in this Court.

Background Facts and Procedural History

On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to

a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees, Lawrence

M. Small and Sash A. Spencer (the "Trust Agreement"). Turnover Proceeding Petition ("P.") ¶6,

Ex. 1.

Orly Genger ("Orly") is the beneficiary of the Orly Trust. Id., Ex. 1. Her daughter, and

that of her attorney Eric Herschmann is also a beneficiary of the Orly Trust. Id. To complicate

matters further, Mr. Herschmann (Orly's husband, father of her child, and her attorney), is also

representing Arie in another one of the Genger family litigations; and presumably being paid to

do so, perhaps using the settlement proceeds, discussed below.

Dalia is the trustee of the Orly Trust. Dalia and Arie set up the Orly Trust as part of their

effort to safeguard assets for their daughter and their grand-children. Specifically, pursuant to

Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name

of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the

1

"Trust Agreement Obligations"). P. ¶ 7. This is in place to protect Orly and her children against

the reach of creditors and misguided financial choices. This is at the heart of every trust,

including the Orly Trust.

In July 2010, Orly instituted a derivative action in the Supreme Court, New York Cnty.

entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010, by which she brought

claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust

Derivative Litigation"). P. ¶ 9. The Complaint sought to assert claims for the Orly Trust's

ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later

amended her pleading to assert claims against, inter alia, the purchasers of those TRI shares,

Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR

Equity II, and TRI (collectively "TR"). P., Ex. 2.

As Orly declared in the second paragraph of her derivative complaint (P.2, Ex. 2), she

brought "this action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her

interests thereunder." (Id. at 1, emphases added.). Although Orly purported to also bring claims

in her "individual capacity," the only harm she identified in her Complaint is to the Orly Trust.

As she described her own "NATURE OF THE CASE" in her Complaint:

> In this case, Plaintiffs Arie and Orly, in her individual capacity and
> on behalf of the Orly Trust, are seeking declaratory, injunctive, and
> other equitable relief, as well as additional compensatory damages
> in an amount yet to be determined arising from, inter alia, the loss
> of Arie's voting control of TRI and the tortious conduct of the
> defendants as set forth herein, in connection with the Trump
> Parties' campaign to take over and dilute the value of plaintiffs'
> interests in TRI, a company founded by Arie nearly three decades
> ago, including the defendants' wrongful, concerted efforts to strip
> Arie of his ownership and control of 52.85% of the shares of TRI's
> common stock, including the Orly Trust's interest in a portion of
> this TRI stock, and to oust Arie from his management control of
> TRI—all in an audacious series of breaches of contractual,
> fiduciary and legal obligations giving rise to each of the causes of
> action alleged in this Complaint.

NYSCEF Doc. No. 112 at 4.

2

It is undisputed that Orly has never had a direct interest in TRI stock. Her only interest was an indirect one as a beneficiary of the Orly Trust, which bought TRI shares in 2004 from TPR Investment Associates, Inc.  Accordingly, her claims in her Complaint were exclusively derivative in nature. Logically then, on January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York Cnty. adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there." P. ¶ 10.

Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain Dalia from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Dalia was seeking a declaration to obtain ownership of the same TRI shares. P. ¶ 11. According to Orly: "[i]n the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also, according to Orly, Dalia's "contention that the Orly Trust is not a party to this action ... is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York Cnty., agreed, restraining Dalia from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares. P., Ex. 4.

In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," ("TR Settlement") which included the TR respondents. P. ¶ 14. However, the settlement terms were left undisclosed. Dalia sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection. Notwithstanding Orly's reluctance to produce the settlement agreement, it became clear, now as a In re collateral

3

estoppel, the Orly had settled both her direct claims and the derivative claims on behalf of the Orly Trust.

First, by letter dated June 28, 2013, counsel to TR wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claim against [TR], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what [TR] bargained and paid for in the settlement . . ." P. ¶ 15, Ex. 5. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. P. ¶ 16. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice.  P., Ex. 6.

Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with TR. P. ¶ 17, Ex. 7. The document revealed that Orly had settled her claims against TR both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims. P. ¶ 17. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

In exchange, TR agreed to pay $32.3 million ("Settlement Proceeds") to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). P. ¶ 18. Upon information and belief, the Brosers are creditors of Orly personally or her father, to whom Orly and Arie owe many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

4

On May 15, 2014, U.S. District Judge Keenan held that: "Pursuant to [the TR] [S]ettlement, Orly acknowledged that [TR] is the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding ownership of the Orly Trust Shares is over." P., Ex. 8. And moreover, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." Id.

TR has since reaffirmed that the federal court construed the TR Settlement correctly: [Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against [TR], but not resolve the Orly Trust's claims against [TR] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, [TR], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance. P. ¶ 19.

And in this Turnover Proceeding, TR has reaffirmed that the TR Settlement was as claims "brought by Orly, both individually and as beneficiary of the Trust." TR Brief, p. 5. And that the TR Settlement was made "in reliance upon the prior determination of the court that Orly, as beneficiary, was authorized to act on behalf of the Trust, that the TR Entities, Orly (both individually and as beneficiary of the Trust), and other parties entered in the Settlement Agreement and into the NY Dismissal with Prejudice." TR Brief, p. 6.

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the TR Settlement, Orly settled and released all of her claims in the TR Settlement in both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.") P. ¶ 18.

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's

5

action on behalf of the Orly Trust. To that end, Orly's attorneys issued an August 2013 directive

to Dalia that Dalia should dismiss the Orly Trust's declaratory judgment action in Delaware

Chancery Court, which Dalia had commenced seeking a judgment that the Orly Trust is the

beneficial owner of the TRI shares. See Dalia Genger v. TR Investors, LLC, et al., C.A. No.

6906-CS (Del. Ch.). Orly's attorneys advised the Delaware Chancery Court that Orly was

"acknowledg[ing] individually and in her capacity as the beneficiary of her trust that [TR] are the

record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." In

other words, by virtue of her TR Settlement, Orly had mooted the Chancery Court proceeding.

The case was dismissed. P. ¶ 20.

And most tellingly, under Section 8(b) of her settlement agreement, Orly agreed as a

condition to any agreement by the AG Group to a replacement trustee for the Orly Trust to "use

[her] best efforts to cause [any replacement] trustee to agree in writing on behalf of

the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing

the indemnity contained in Paragraph 5." P., Ex. 7.

At a hearing before Justice Jaffe on March 25, 2015, counsel to TR confirmed that $17.3

million of the Settlement Proceeds has already been paid, but that $15 million remains to be paid,

less possible "set-offs" and subject to possible acceleration or extension of those payment dates.

P. ¶ 22, Ex. 9, pp. 10-11.

None of the aforementioned Settlement Proceeds has been remitted to the Orly Trust, nor

will any of the proceeds be in the future, per Section 8(b) of her settlement agreement. P., Ex. 7.

Orly has testified that she has not personally received any of the Settlement Proceeds. P. ¶ 23..

This means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG

Group," i.e., the Brosers and Arie (the "Initial Payment"). P. ¶ 23.

This is exactly contrary to language and purposes of the Orly Trust, to protect her and her

6

Court to have the citation issued in this matter, including repeated phone calls, visits to the Clerk's office, emails, written correspondence, and affirmations. Bachman Aff. , ¶¶ 7-16. The file number of the Turnover Proceeding is 2008-0017/E.

While the Respondents knew this Petition was pending, Orly filed a petition to remove Dalia as trustee of the Orly Trust ("Removal Action"). Orly is doing so to satisfy her father's creditors and as she promised in the TR Settlement to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the [Orly Trust] that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5." The Removal is filed under file number 2008-0017.

After a series of delays in the Surrogate's Court, the clerk finally issued the citation in this Turnover Proceeding. Bachman Aff. , ¶ 16. Immediately thereafter, Dalia's counsel arranged to serve the respondents in this Turnover Proceeding. Bachman Aff. , ¶ 17. Dalia's counsel did so, inter alia, by delivery of the citation to Orly's counsel (who had appeared in the Removal Action under the same file number) and by delivery to TR at their business address. Bachman Aff. , ¶ 18.

When Orly's counsel objected to the service upon them, in an abundance of caution, Dalia's counsel mailed the citation to Orly at her address in Texas. Bachman Aff. , ¶ 19. That address was one in which Orly had claimed a homestead exemption, owns a home, has a driver's license and votes.[1] Bachman Aff. , ¶ 19. Such service was made at a time immediately before the return date of the citation so that affidavit has not been filed with the Court. Bachman Aff. , ¶ 20.

---

[1] In an action in Federal Court, Orly has attempted to evade service claiming that she lives in Israel notwithstanding her definitive contacts in Texas. Bachman Aff. , ¶ 19.

8

On February 5, 2018, respondents Orly and TR, respectively, moved to dismiss the

Turnover Proceeding on the grounds, inter alia, of delay and deficiencies in service, and other

relief.

These motions are a smokescreen to block Dalia's efforts to ensure that the Settlement

Proceeds go to their rightful place - - the Orly Trust.

Dalia therefore opposes these motions and, as necessary, cross-moves for (i) an extension

of time to serve process and permission to serve substituted service (or nunc pro tunc) and file

the affidavit of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter

and the issuance of a supplemental citation for that Guardian ad litem, and (iii) to consolidate

this turnover proceeding with the Removal Proceeding with this Turnover Proceeding.

<div align="center">Argument</div>

<div align="center">Point I</div>

<div align="center">Court Delay in Issuing Citation<br>
does not Require Dismissal of Proceeding<br>
for Late Service or Statute of Limitations Issues</div>

The movants argue that the Turnover Proceeding should be dismissed because of a delay

in serving the citation and a statute of limitations question.

What the movants conveniently ignore is that where, as here, the delay in serving the

citation stems from the Court's own delay in *__issuing__* the citation, dismissal is not warranted.

That it took a significant period of time for the Clerk to issue the citation should not, and

indeed cannot, result in the dismissal of the Turnover Proceeding. "The right to bring a legal

action is never made dependent upon the will of a judicial officer." In re DeRidder's Will, 183

A.D.657, 658, 170 N.Y.S. 756, 766 (1918).

Indeed, how could the Petitioner's time to serve the citation run when she did not have

the citation from the Court to serve? Obviously, this cannot be correct.

<div align="center">9</div>

The triggering event requiring service of the citation is, and must be, the actual ***issuance*** of the citation, and not the filing of the Petition.

"It is claimed that the citation must be served within [120] days after the presentation of the petition. We do not so understand the provision. It must, however, be served within [120] days after the citation is issued by the court." In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893)

"[W]hen these allegations have been filed, then certainly the contest has been instituted. It then becomes the duty of the surrogate … to issue the citations and to appoint a time for the hearing." In re Gouraud, 95 N.Y. 256, 261 (1884) (petition filed timely, citation issued late but court had jurisdiction and proceeding was regular).

And while the service obligation is not triggered until the citation is issued, the statute of limitations on the claims stops when a petition is filed. Courts have consistently held that a proceeding is "duly commenced before the expiration of three years by the filing of the petition," the failure to serve the citation "does not render the proceeding null." In re Estate of Van Vleck, 32 Misc. 419, 66 N.Y.S. 727 (Surr. Ct. N.Y 1900) *citing* In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893). See also In re Estate of Lange, 72 Misc. 437, 16 N.Y.S. 312 (Surr. Ct. N.Y. 1939). See also In re Phalen's Will, 4 N.Y.S. 408 (Sup. Ct. N.Y. Gen. Term 1st Dep't 1889) ("There is nothing whatever in the section [Code §§2648-9] in reference to the necessity of the service of a citation in order to prevent the statute of limitations attaching. All that is required is that the petition shall be presented within a year."); Id., ("By the filing of the petition the surrogate had acquired jurisdiction of the proceeding …. [B]y the presentation of the petition in question the statute was prevented from running.")

While these timing doctrines were established under the provisions of the preceding Code of Civil Procedure, their compelling logic remains as applicable today.   Cf. Brown v. Ingersoll, 226 N.Y.S.2d 479 (Sup. Ct. Monroe Cnty. 1962) (delay in rejection of a claim by a temporary

administrator does not result in running of statute of limitations against creditor); In re Peter's Will, 20 Misc. 2d 1082, 195 N.Y.S.2d 325 (Surr. Ct. 1959) (timing of asserting right of election should not be affected by delay in probate of will).

For instance in Burke v. Nationwide Ins. Co., 108 A.D.2d 1098, 485 N.Y.S.2d 666 (3d Dep't 1985) the court held that a delay in issuance of letters of administration did not warrant dismissal of administrator's claims against an insurer that knew of claim even though limitations period ran during delay in issuance.

Likewise in Ovari v. Maultasch, 17 Misc.2d 597, 182 N.Y.S.2d 871 (Sup. Ct. N.Y. 1959) the court held that "It was not the intent of the Legislature to hold that a creditor forfeited his right to bring an action for a claim by a delay of three months …when he could only sue by the permission of the surrogate, and any delay of the surrogate … would place the time beyond three-months period which would defeat his right of action."

Because the triggering event requiring service of the citation is, and must be, the actual *issuance* of the citation, and not the filing of the Petition and Petitioner made such service within 120 days of the issuance of the citation, this Turnover Proceeding should not be dismissed.

Additionally, the Turnover Proceeding should not be dismissed where, as here, there is good cause shown or in the interest of justice. CPLR 306(b).

This is particularly true since: (1) the delay in service was attributable to the delay in the issuance of the citation, (2) the Respondents have pointed out no prejudice to themselves from the delay, (3) they were aware of the Turnover Proceeding upon its filing and had received a courtesy copy of the petition, and (4) they had refused to accept service of the petition.

By contrast, Petitioner would be prejudiced by the dismissal because she would have to go through the time and expenses of instituting another proceeding.  SPCA §301(b); see Point III, infra.

To the extent that this Court deems Petitioner might have sought an extension of time beyond the 120 day period to make service of the citation when the citation had not yet been issued, the Petitioner asks that such extension be granted *nunc pro tunc*. CPLR 306(b).

And while the obligation to serve the citation was not triggered until the citation was issued, the statute of limitations stopped running when Dalia filed the Petition in June of 2016. For that purpose, the Turnover Proceeding is timely and is not barred by the statute of limitations[2].

<div align="center">Point II

Service of a Copy of the Petition
is Not Required</div>

Orly disingenuously claims that it is the petition that must be served and not the citation - - she says that CPLR 306(b) requires that "a notice of petition and petition shall be served with 120 days." Orly Brief., p.12. Orly complained that the citation she received did not have the petition attached and was therefore "useless." Orly Brief., p.13.

Yet there is **_no_** requirement that a petition be served at all, either before the issuance of the citation or with it; although there is pending a proposed bill to change that to add such requirement. *See* Bill No. A05414 (2018).

The proposed law reads:

        AN  ACT  to  amend  the  surrogate's court procedure
act, in relation to service of a citation
            **The People of the State of New York, represented in
Senate and  Assembly, do enact as follows:**
    Section  1.  Section  306  of  the  surrogate's court
procedure act is amended by adding a new subdivision 5 to read
as follows:
        **5. A copy of the petition, affidavits, affirmations and
exhibits thereto upon which process was issued, shall be served
with the citation  or other process to obtain jurisdiction of a**

---

[2] Moreover, the statute of limitations has not run because $15 million of the Settlement Proceeds has not yet been paid. <u>See</u>, Point VIc, *infra*.

<div align="center">12</div>

**party, except where service is by publication, and except in a proceeding for a voluntary accounting.**

This *unenacted* proposal is aimed at parties unlike Orly who admits that she received the courtesy copy of the petition upon its filing and refused to accept service. And to date, again, there is *no* requirement that a petition be served at all.

Orly's convenient misleading quoting of CPLR 306(b) and its reference to a "notice of petition and petition" clearly do not apply to Surrogate's Court's petitions - - otherwise the proposed amendment contained in Bill No. A05414 (2018) would be wholly unnecessary. In fact, there is *no* "notice of petition" in Surrogate's Court and instead the provision clearly is meant to apply to Article 78 proceedings which are commenced by "notice of petition and petition."

Because there is *no* requirement that a petition be served at all, either before the issuance of the citation or with it, the Court must deny the Respondents' motion to dismiss on these grounds.

Point III

Service was Proper
and if it Was Not
an Extension of Time
Should be Granted

Upon the issuance of the citation by this Court, Petitioner duly made service upon the Respondents.

Petitioner first made service upon Orly by delivery of the citation to her attorneys. Orly is a party to the pending Removal Action – both actions share a file number  - and she sought affirmative relief in this Court, and Orly's counsel had appeared both in the Removal Action and upon the return date of the citation in this Turnover Proceeding. Accordingly, service upon Orly's counsel was proper. CPLR 2103(b).

13

Since Orly's counsel claimed that such service upon them this was insufficient, and in an abundance of caution, Dalia's counsel mailed the citation to Orly in Texas, where Orly has claimed a homestead exemption, holds a driver's license, bank account, owns a home and is registered to vote. Such service was made immediately before the return date of the citation and the clerk instructed counsel to request leave of the Court to file the affidavit. Accordingly, Petitioner cross moves for leave to file such affidavit of service and deem such service sufficient.

The TR Respondents likewise argue that they were not served properly[3]. Yet they too appeared in this action on the return date of the citation.

Should this Court hold that service on any Respondents was insufficient, Petitioner respectfully cross-moves this Court for an extension of time to re-serve the citation upon them. CPLR 306(b). In such instance, Petitioner further cross-moves this Court for permission to effect substitute service upon Orly via her counsel of record on the grounds that Orly is represented by such counsel in the Removal Action and she has sought affirmative relief in this Court and Orly is otherwise seeking to avoid service of process.

In the alternative, if this Turnover Proceeding is dismissed for failure to effect proper service, Petitioner will proceed under SPCA §301(b) and commence a new turnover proceeding within 120 days of such dismissal and such newly commenced proceeding will be unaffected by any considerations of the statute of limitations. SPCA §301(b).

Point IV

There is No Duplicative Prior Action Pending
Because there are Different Parties and Different Claims

Respondent Orly alleged that this proceeding ought to be dismissed, pursuant to CPLR 3211(a)(4), as duplicative of Dalia's cross-petition in the Removal Action. Orly simultaneously seeks to dismiss Dalia's cross-petition in the Removal Action. Orly Brief., p.12 ("[T]he New

---

[3] The address at which the "Trump Group" (as denoted in their own brief in this action) were served is the one identified by Mark Hirsch, their general counsel. Bachman Aff. ¶ 17.

14

Action is duplicative of the counter-petition and should be dismissed in favor of the counter-petition, which is further along in litigation.")

This "prior action/duplicative" argument is as disingenuous as it is baseless.

First the Removal Action was not ***prior*** to this Turnover Proceeding - - it was subsequent to it. The Turnover Proceeding was filed in June of 2016, months prior to the Removal Action. The Respondents were aware of the Turnover Proceeding by virtue of their receipt of a courtesy copy of the petition in June of 2016. They filed the Removal Action well after the Turnover Proceeding and did so knowingly.

Orly's deliberate gamesmanship as to the timing of the Removal Action cannot be used to justify the dismissal of the Turnover Proceeding.

> This is not a situation in which parties have initiated lawsuits in different venues in an effort to obtain an advantage with regard to the forum selected. Here, both suits have been filed in the [Surrogate's Court, New York Cnty.], so the only possible purpose for [Orly's Removal Action] is that [Orly] seeks to gain some advantage by being a [petitioner] rather than being relegated to a [respondent]. However, the Court will not reward [respondent] for [her] actions by dismissing [Petitioner's] action, especially in a situation such as this one where both actions are pending in the same Court and at an appropriate time, this Court may order either a joint trial of these actions or that the actions be consolidated for purposes of trial.

Toulouse v. Chandler, 5 Misc. 3d 1005(A), 798 N.Y.S.2d 714 (Sup. Ct. Westchester Cnty. 2004).

Second the Removal Action involves only Orly and Petitioner as parties, whereas this Turnover Proceeding names eight (8) additional parties – individuals and entities – as well as unknown individuals or entities – who are alleged to have an interest in Settlement Proceeds that is subject to turnover to the Orly Trust. The inclusion of eight (8) additional parties in the Turnover Proceeding, the claims against them and the legal issues as to their respective

15

obligations and defenses regarding the money, make a substantial difference sufficient to distinguish the two proceedings.

Where, as here, two different actions involve different parties and different claims, they cannot be dismissed. James ex rel. National Arts Club v. Bernhard, 34 Misc.3d 1242(A), 950 N.Y.S.2d 608 (Sup. Ct. N.Y. Cnty 2012) ("The fact that two actions share allegations is no ground for striking them from either case" where different parties and different claims existed in the two actions.); Island Properties, LLC v. Calabretta, Index No. 2011-33520 (Sup. Ct. Nassau Cnty. Dec. 14, 2011) (refusing to dismiss action on personal guaranty even when holdover proceeding pending in different court because additional parties and additional claims).

To extent that this Court determines that the two (2) proceedings – the Removal Action and the Turnover Proceeding - are sufficiently similar that dismissal of the turnover proceeding under CPLR 3211(a)(4) is warranted, Petitioner hereby respectfully cross-moves this Court to consolidate these two proceedings so as to join all necessary parties and to resolve common questions of law and fact fully and with finality. Whitney v. Whitney, 57 N.Y.2d 731 (1982) (broad discretion of court in considering whether to dismiss for prior action pending); see also Mideal Homes Corp. v. L & C Concrete Work, Inc., 90 A.D.2d 789 (2d Dep't 1982) (where another action is pending between the same parties for the same causes of action, judicial economy and interests of justice favor consolidation); Chinatown Apartments, Inc. v. New York City Transit Authority, 100 A.D.2d 824, 825 (3rd Dep't 1984) ("Consolidation is appropriate, as it will avoid unnecessary duplication of trials, save unnecessary costs and prevent the possibility of incongruous decisions based on the same facts..")

Point V

Doctrines of Res Judicata/Collateral Estoppel
Do Not Bar Turnover Proceeding
Because No Court Has Ever Ruled on
the Disposition of the Settlement Proceeds

Respondents each claim that the Turnover Proceeding is barred by res judicata and/or collateral estoppel. Importantly, they each make such arguments but do so on ***conflicting*** grounds.

The TR Respondents claim that Petitioner is barred from seeking turnover of the Settlement Proceeds to the trust on the grounds that the settlement "finally and fully resolved" the issues of ownership of the shares "with Orly, both in her individual capacity and in her capacity as beneficiary of the Trust, on June 16, 2013." TR Brief, pp, 5, 6, 20.

But this misses the entire point of the Turnover Proceeding which is ***not*** seeking disposition of the shares; it is seeking the turnover of the Settlement Proceeds which were or are to be paid in exchange for the settlement of the claims to the Orly Trust shares.

It is this very fact that the settlement "finally and fully resolved" the issues of ownership of the shares "with Orly, both in her individual capacity and in her capacity as beneficiary of the Trust, on June 16, 2013" (TR Brief, pp. 5, 6, 20) that means that this Turnover Proceeding seeking the Settlement Proceeds must stand.

TR admits, as it has done repeatedly, and as confirmed by the TR Settlement documents and by the Federal Court, that Orly settled her claim with TR for the ownership of the shares on behalf of the Orly Trust. It is that very fact that entitled the Orly Trust to the turnover of the Settlement Proceeds.

Orly as the derivative plaintiff on behalf of the Orly Trust is required to turnover and account for all Settlement Proceeds that she obtained on behalf of the Orly Trust. Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986).

17

"Those "fruits"--the moneys paid to counsel--must be accounted
for irrespective of      whether they went to the derivative plaintiffs
or to their lawyers. 'Defendant cannot evade      his fiduciary
responsibility to account to the corporation for all recovery
resulting from his derivative action by the mere device of
authorizing or permitting payment to his attorneys instead of
himself.'""

As the Court in <u>Clarke v. Greenberg</u>, 296 N.Y. 146 , 71 N.E.2d 443 (1947) (emphasis

added) opined:

The very nature of the derivative suit by a stockholder-plaintiff suing in the
corporation's behalf suggests the application of the fiduciary principle to the
proceeds realized from such litigation whether received by way of judgment, by
settlement with approval of the court, which presupposes stockholders' approval,
or by private settlement and discontinuance of the action at any stage of the
proceeding. Such action, we have held, belongs primarily to the corporation, the
real party in interest (*Teich v. Lawrence,* 291 N.Y. 245; *Koral v. Savory, Inc.,* 276
N.Y. 215; *Continental Securities Co. v. Belmont,* 206 N.Y. 7) and a judgment so
obtained, as well as the proceeds of a settlement with court approval, belongs to it
and not the individual stockholder plaintiffs (*Earl v. Brewer,* 248 A.D. 314,
affd. 273 N.Y. 669; *Gerith Realty Corp. v. Normandie National Securities
Corp.,* 266 N.Y. 525). . . . When, however, success crowns his effort, the amount
received is in behalf of and for the account of the corporation. This is so because
the action belongs primarily to it. The manner and method by which such success is
accomplished whether by way of judgment, settlement with court approval or
by stipulation of the parties, makes no substantial difference in the interest of the
corporation upon distribution of the proceeds. Requiring an accounting for
moneys received in a private settlement introduces no new element. It simply
amounts to a logical application of a fundamental principle inherent in the
representative relation. When one assumes to act for another, regardless of the
manner or method used in accomplishing a successful termination, he should
willingly account for his stewardship. The plaintiff-stockholder, in good
conscience, should not be allowed to retain the proceeds of a derivative suit
discontinued by stipulation, to his individual use, in opposition to the corporation,
any more than the proceeds of a judgment or a settlement with court approval.

These obligations of Orly and the TR Respondents as the payors of the Settlement

Proceedings compel the turnover of the Settlement Proceedings not the dismissal of claims for

them!

While the TR Respondents, the settlement documents themselves, and the Federal courts

are certain that the settlement was of the derivative claims of the Orly Trust, Orly conveniently

disagrees. Orly claims instead that the settlement had nothing to do with the derivative claims

and only involved her individual claims, and therefore the Settlement Proceeds were not owed to the Orly Trust. Orly Brief, p.10 ("That [settlement agreement] expressly notes that the claims related to Orly that are being settled are *only* claims brought by her in her personal capacity and *not* as a representative of the Orly Trust. ... [T]he settlement did not involve or relate to the trust at all."(emphasis in the original)."

Since respondents cannot even agree amongst themselves as to the import of the settlement agreement with respect to the Orly Trust, they cannot properly claim that Dalia is precluded, by *res judicata* and/or collateral estoppel, from bringing a turnover claim to this Court for resolution of this material issue of fact, i.e., whether the Settlement Proceeds – obtained via a derivative action on behalf of the Orly Trust – ought to be turned over to the Orly Trust. In other words, Dalia cannot be estopped from bringing a claim that - according to Orly - was **not** resolved by the settlement of the derivative action at all. For this reason, Orly's motion to dismiss based on documentary evidence must also fail as it hardly, let alone "definitively," disposes of Dalia's claim.

Orly also claims, and TR respondents parrot, that the Petitioner is precluded from seeking the Settlement Proceeds by prior decisions.  Orly Brief, pp.13-14. TR Brief, pp.21-22.

Contrary to these transparent arguments, no court has ever ruled as to the proper disposition of the Settlement Proceeds.

In fact, Justice Jaffe of the Supreme Court explicitly "held in abeyance" ***any*** decision as to the disposition or turnover of the Settlement Proceeds pending a determination by this Court as to whether Petitioner should remain as trustee of the Orly Trust. P. ¶ 27, Ex. 10.

And the Appellate Division, First Department, made ***no*** holding as to the disposition of the Settlement Proceeds.  It merely held that the derivative claims on behalf of the Orly Trust had been dismissed procedurally on Arie's request after he and Orly settled the claims.  So while the

claims were dismissed because they were settled, the turnover of the Settlement Proceeds was not determined.

With regard to the Delaware case, Orly advised the Delaware Chancery Court that __*she*__ favored dismissal of Dalia's action on behalf of the Orly Trust and directed Dalia, through her attorneys, to dismiss the Orly Trust's declaratory judgment action in Delaware which Dalia had commenced seeking a judgment the Orly Trust is the beneficial owner of the shares. See <u>Dalia Genger v. TR Investors, LLC, et al.</u>, C.A. No. 6906-CS (Del. Ch.). Orly's attorneys advised the Delaware Chancery Court that Orly was "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." In other words, by virtue of her TR settlement, Orly had mooted the Chancery Court proceeding. The case was dismissed, but it was Orly who insisted that it be disposed.

So while the TR Respondents, the settlement agreement, the federal courts, the Delaware Chancery court, and the First Department all agree that the settlement was made regarding the Orly Trust shares resulting in the dismissal of those claims, __*no*__ court has yet ruled as to whom the proceeds of that settlement belong.

That decision has been left to this Court and must be decided as this Turnover Proceeding moves forward. Accordingly, since the fate of the Settlement Proceeds has not been decided, Petitioner is not precluded from on grounds of *res judicata* and/or collateral estoppel from seeking turnover of the Settlement Proceeds.

Point VI

The Claims in the Turnover Proceeding
Are Pled Sufficiently

A. Breach of Fiduciary Duty

The TR respondents claim that Orly owes no fiduciary duty to the Orly Trust because she

is a beneficiary. TR Brief, p.13.

Orly, however, is not a mere beneficiary; she chose to sue derivatively on behalf of the

Orly Trust and hence owed a fiduciary duty to the Orly Trust. Gusinsky v. Bailey, 21 Misc.3d

1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. Cnty. 2008) ("The plaintiff and plaintiff's

counsel in a derivative action have an obligation to the corporation and all its other

shareholders"), rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008).

> [A] stockholder who brings suit on a cause of action derived from the corporation
> assumes a position not technically as a trustee, perhaps, but one of a fiduciary
> character. He sues not for himself alone, but as representative of a class
> comprising all who are similarly situated. The interests of all in the redress of the
> wrongs are taken into his hands, dependent upon his diligence, wisdom and
> integrity. . . . He is a self-chosen representative and a volunteer champion.

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949) (emphasis added).

And as a fiduciary, derivative plaintiffs are required to turnover and account for all

proceeds obtained as such. Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986).

> "Those "fruits"--the moneys paid to counsel--must be accounted
> for irrespective of whether they went to the derivative plaintiffs or
> to their lawyers. 'Defendant cannot evade his fiduciary
> responsibility to account to the corporation for all recovery
> resulting from his derivative action by the mere device of
> authorizing or permitting payment to his attorneys instead of
> himself.'"" Id.

As the Court in Clarke v. Greenberg, 71 N.E.2d 443, 296 N.Y. 146 (1947) (emphasis

added) opined:

> The very nature of the derivative suit by a stockholder-plaintiff suing in the
> corporation's behalf suggests the application of the fiduciary principle to the

21

proceeds realized from such litigation whether received by way of judgment, by settlement with approval of the court, which presupposes stockholders' approval, or by private settlement and discontinuance of the action at any stage of the proceeding. Such action, we have held, belongs primarily to the corporation, the real party in interest (*Teich v. Lawrence,* 291 N.Y. 245; *Koral v. Savory, Inc.,* 276 N.Y. 215; *Continental Securities Co. v. Belmont,* 206 N.Y. 7) and a judgment so obtained, as well as the proceeds of a settlement with court approval, belongs to it and not the individual stockholder plaintiffs (*Earl v. Brewer,* 248 A.D. 314, affd. 273 N.Y. 669; *Gerith Realty Corp. v. Normandie National Securities Corp.,* 266 N.Y. 525). . . . When, however, success crowns his effort, the amount received is in behalf of and for the account of the corporation. This is so because the action belongs primarily to it. The manner and method by which such success is accomplished whether by way of judgment, settlement with court approval or by stipulation of the parties, makes no substantial difference in the interest of the corporation upon distribution of the proceeds. Requiring an accounting for moneys received in a private settlement introduces no new element. It simply amounts to a logical application of a fundamental principle inherent in the representative relation. When one assumes to act for another, regardless of the manner or method used in accomplishing a successful termination, he should willingly account for his stewardship. The plaintiff-stockholder, in good conscience, should not be allowed to retain the proceeds of a derivative suit discontinued by stipulation, to his individual use, in opposition to the corporation, any more than the proceeds of a judgment or a settlement with court approval.

These obligations of a derivative plaintiff to account for and turnover proceeds belonging to those on whose behalf she sues, are akin to the obligations of a fiduciary or third party to account for and turnover proceeds that belong to an estate or trust. See e.g., In re Hoerter, 15 Misc.3d 1101(A) (Sup. Ct. Nassau Cnty. 2007); In re Nyenhuis, 225 A.D.2d 395 (1st Dep't 1996).

Orly is, therefore, bound by fiduciary duty to the Orly Trust as a derivative plaintiff. These obligations are all the more serious now that Orly, and her attorney Eric Herschmann, have an infant daughter that stands to benefit from the Orly Trust[3].

Orly sought and obtained the right to bring the Orly Trust Derivative Litigation, as a derivative plaintiff - - the Court adopted Orly's position that she "has legal standing to represent

---

[3] Orly does not even acknowledge that the Orly Trust includes her daughter as beneficiary. Orly Brief, p.3 ("All of the claims in this new [turnover] action are premised on Dalia's claim that Orly, in her alleged capacity as *de facto* trustee for the Orly Trust, breached her fiduciary duties to the trust (i.e., to herself).")

the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court

rules otherwise in an appropriate action there."

Orly '. . . [having brought suit] on a cause of action derived from the [Orly Trust]

assumes a position not technically as a trustee, perhaps, but one of a fiduciary character. [She]

sues not for [her]self alone, but as representative of a class comprising all who are similarly

situated. The interests of all in the redress of the wrongs are taken into [her] hands, dependent

upon [her] diligence, wisdom and integrity. . . . [She] is a self-chosen representative and a

volunteer champion.' Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).

And because Orly owed a fiduciary duty to the Orly Trust she was required to ensure that

the Settlement Proceeds were paid to the Orly Trust.

Orly did not so do. Instead, she entered into the TR settlement, which provided for the

Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment

of the Settlement Proceeds to such other parties.

As a derivative plaintiff, Orly proceeded to settle the Orly Trust Derivative Litigation:

According to the federal court, which reviewed the document, "Orly acknowledged that [TR] is

the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding

ownership of the Orly Trust Shares is over." [TR] has since reaffirmed that the federal court

construed the TR settlement correctly:

> [Any suggestion] that the confidential settlement agreement *might*
> only dismiss Orly's individual claims against [TR], but not resolve
> the Orly Trust's claims against [TR] . . . is counterfactual. This
> Court has already held that certain of Orly's claims in this action,
> including the remaining claims, are derivative in nature, and may
> be      maintained by Orly on behalf of the Orly Genger 1993
> Trust. ... In settling the claims among them, [TR], Trans-
> Resources, Orly and Arie agreed to the dismissal of all claims
> presently pending against one another. This agreement is
> memorialized in the Second Amended Stipulation of
> Discontinuance.

23

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the TR settlement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.")

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's action on behalf of the Orly Trust.

And most tellingly, under Section 8(b) of her settlement agreement, Orly agreed to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5."

Orly's actions constitute a breach of fiduciary duty and breach of duty of loyalty and the claims are adequately stated as they notify Orly, and other respondents, specifically which of her actions violated her fiduciary duty to the Orly Trust.

Since Orly owed a fiduciary duty to the Orly Trust, Dalia's claim against TR of aiding and abetting Orly's breach of duty are valid and ought to stand. Such claims were also sufficiently pleaded with requisite specificity pursuant to CPLR3016(b). Simply because the settlement agreement was silent as to how the settlement proceeds would be applied or apportioned amongst the parties does not prove or "make clear the TR Entities lacked any knowledge about whether Orly, in any capacity, would receive (or not receive) any Settlement Proceeds," TR Brief, p.15; it simply means this information was deliberately omitted from the document itself. The unsubstantiated claim by their attorneys that TR does not know what happened is a nullity. Id., fn. 10.

"The purpose of CPLR§3016(b) is to inform a defendant with respect to the incidents complained of." Pludeman v. Northern Leasing Systems, Inc., 40 A.D.3d 366, 837 N.Y.S.2d 10 (1st Dep't 2007), aff'd, 10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422 (2008). Dalia was

24

required to, and did, plead that TR was "aware of Orly's fiduciary duty to the Orly Trust," P., ¶ 34, that they "knowingly induced or participated" therein by specifically "taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the [TR] Settlement Agreement which failed to direct payment of the Settlement Proceeds of the Trust" and "by advising and inducing Orly" to enter such agreement and by "directing or authorizing payment of the Settlement Proceeds to parties other than the Orly Trust." Id., ¶ 35.

Such allegations were hardly conclusory and were surely sufficient to notify respondents which of their actions Dalia complained of, and to make a prima facie showing of Dalia's claim. Monaghan v. Ford Motor Co., 71 A.D.3d 848, 850, 897 N.Y.S.2d 482 (2d Dep't 2010), quoting Yuko Ito v. Suzuki, 57 A.D.3d 205, 20 (1st Dep't 2008). ("A cause of action [alleging the] aiding and abetting [of a] breach of fiduciary duty merely requires a *prima facie* showing of a fiduciary duty owed to plaintiff ... a breach of that duty, and defendant's substantial assistance ... in effecting the breach, together with resulting damages.'") See also DDJ Management LLC v. Rhone Group LLC, 78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010) ("[A]t this early stage of the litigation, plaintiffs are entitled to the most favorable inferences, including inferences arising from the positions and responsibilities of defendants.")

The "pleading requirements should not be narrowly construed and a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the pre-discovery stage, so long as such intent may be inferred from the surrounding circumstances." DDJ Management LLC v. Rhone Group LLC, 78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010).

Furthermore, since it is peculiarly within the knowledge of respondents as to which specific respondent did what, the TR respondents' claim that dismissal is required because Dalia did not specify their respective allegations is clearly baseless.

25

B.  Claims of Tortious Interference Are Well Pled

Beyond a circular reference to their arguments against the aiding and abetting fiduciary duty

claim answered above in Point VIA, supra, TR asserts that the claims for tortious interference of

contract must be dismissed because Dalia has to allege that they "acted without justification and

their action must not have been incidental to a lawful purpose." TR Brief, p. 18.

It is black letter law, however, that to state a claim for tortious interference of contract "it is

not necessary to allege that defendant used improper means or that its conduct was for the sole

purpose of harming plaintiff (*see Carvel Corp. v Noonan,* 3 N.Y.3d 182, 189-190

[2004]; *Hoesten v Best,* 34 A.D.3d 143, 159 [2006]; *Krinos Foods, Inc. v Vintage Food Corp.,* 30

A.D.3d 332, 333 [2006])." Kronish Live Weiner & Hellman LLP v. Tahair, Ltd., 35 A.D.3d

317, 829 N.Y.S.2d 7 (1st Dep't 2006).

"[A] plaintiff need *not plead* that defendant's actions are not economically justified, rather

economic justification is a *defense* to a claim of tortious interference with contract (*see White

Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 867 N.E.2d 381, 835 N.Y.S.2d

530 [2007] [economic justification is a defense to a claim of tortious interference with

contractual relations])." Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc., 49

Misc.3d 1207(A), 26 N.Y.S.3d 725 (Sup. Ct. Nassau Cnty. 2015)

"[Dalia] was therefore not required to plead that [TR] lacked an economic justification for its

alleged actions (*see Fallon v. Wall Street Clearing Co.*, 182 A.D.2d 245, 250, 586 N.Y.S.2d

953 [1st Dep't 1992] [motion court improperly shifted burden to plaintiffs to plead and prove a

lack of justification])." Id.

Accordingly, the claim of tortious interference with contract against TR must be allowed to

stand.

## C. Claims of Money Had and Received are Well Pled

TR seeks to dismiss the money had and received claim by arguing that it has not "retained" any of the Settlement Proceeds.

Yet TR expressly admits that it has "[t]he remaining $15 million in Settlement Proceeds" which have not yet been paid. Tr. Brief, p. 19 fn. 12. It this very portion of the Settlement Proceeds that Dalia seeks to recover from TR under this and other claims in the Turnover Proceeding. These Settlement Proceeds must be paid to the Orly Trust and the Turnover Proceeding is the only way to compel the parties to do so.

<div align="center">

Point VII

Petitioner's Cross-motion for
the Appointment of a Guardian Ad Litem and a
Supplemental Citation

</div>

According to the terms of the Orly Trust, if Orly has an issue, such children are beneficiaries of the trust along with Orly. Orly has an infant daughter. Accordingly, her daughter (and any unborn children) is a beneficiary of the Orly Trust and, as such, is a necessary party to this proceeding. SCPA §315; Hess v. Hess, 233 N.Y. 164 (1922).

Dalia requests that this Court appoint a Guardian Ad Litem for Orly's daughter (and any unborn children) since she is a minor and also because her interests may conflict with Orly's position in ensuring that the Settlement Proceeds be paid to the Orly Trust. SCPA §§311, 402, 403, 2106. In fact, this Court has already appointed a Guardian Ad Litem for Orly's daughter in the Removal Action. If this Court grants Dalia's cross-motion to consolidate the Removal Action and this Turnover Proceeding then the already appointed Guardian Ad Litem could continue to serve.

It is within the province of this Court's discretion to issue supplemental process in order to ensure that any necessary parties are made party to this proceeding. SCPA §312.

<div align="center">27</div>

For the foregoing reasons, petitioner cross-moves this Court for the issuance of a supplemental citation for a Guardian Ad Litem for Orly's daughter and unborn children.

Petitioner requests, upon the appointment of a Guardian Ad Litem for Orly's daughter and unborn children, sufficient time to serve process on that Guardian Ad Litem be granted.

<div align="center">Point VIII</div>

<div align="center">Sanctions against Petitioner and/or Petitioner's Counsel<br>are Unwarranted and Improper</div>

While respondent Orly summarily concludes, without any basis or explanation, that "Dalia has no good faith basis for such tactics that are so obviously contrary to basic rules of procedure," Orly Brief, p.16, Orly ignores that the "basic rules of procedure" require the Court to have acted in issuing the citation before Dalia could serve the same. See Point I, supra.

Moreover, Dalia brought this Turnover Proceeding in an attempt to protect the Orly Trust from being looted by Orly, Arie and her creditors. P. ¶¶ 7, 24.

Orly is the party who repeatedly dodges service while deliberately availing herself of this and other New York Court's jurisdiction in order to wage her own wars against Dalia, among others.

Orly is the party who commenced a derivative action purportedly on behalf of the Orly Trust, and then attempted to settle the same in her own individual favor, either pocketing the Settlement Proceeds or using the same to pay off her creditors.

If there is any bad faith here, it is that of Orly, and not Dalia.

Neither Dalia nor her counsel has acted in bad faith, nor committed any abuse of this Court's procedures. Rather than "delay the resolution of the litigation," Orly Brief, p.16, Dalia is attempting to bring the litigation within the purview of this Court and avoid an unwarranted dismissal and the need to commence anew.

<div align="center">28</div>

Conclusion

For the foregoing reasons, Dalia respectfully requests this Court to deny respondents'

respective motions to dismiss the petition and to grant her cross-motion.

Dated: February 20, 2018
New City, New York

Judith Bachman, Esq.
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

29

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
File No.: 2008-0017E

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC, ARNOLD BROSER,
DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.

## MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTIONS TO DISMISS AND IN SUPPORT OF PETITIONER'S CROSS-MOTION

**KELLEY DRYE & WARREN LLP**
101 PARK AVENUE
NEW YORK, NEW YORK  10178

(212) 808-7800

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

<div align="center">Petitioner,</div>

-against-                                                        File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,        Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,                                                      Affirmation of
<div align="center">Respondents.</div>                          Judith Bachman in
                                                                 Opposition
-------------------------------------------------------------------------------

Judith Bachman, an attorney duly admitted to practice before the Court of the State of

New York, affirms under penalties of perjury:

1. I am the attorney for Petitioner, Dalia Genger, and I make this affirmation in opposition

   to the motion to dismiss the Turnover Proceeding of Petitioner and in support of the

   Petitioner's cross-motion.

2. In June of 2016, I prepared a petition on behalf of Dalia Genger to obtain the turnover of

   proceeds of a settlement from various parties to the trust (Orly Genger 1993 Trust) of

   which Dalia Genger is the trustee.

3. On June 14, 2016 I visited both the clerk's office and the Miscellaneous Department of

   Surrogate's Court to file that petition.

4. The Miscellaneous Department advised that it would take some time for them to review

   the filing and that when complete they would issue the citation and email it to me so that

   I could arrange service of it.

5.  On June 17, 2016, I sent a courtesy copy of the petition to the attorneys for all of the parties named and inquired if they would accept service.

6.  They refused to accept service.

7.  Thereafter, my office diligently worked with the Surrogate's Court to have the citation issued.

8.  Such efforts included repeated and numerous calls, visits, written correspondence, and emails to the Surrogate's Court starting on July 7, 2016 and finally ending in December 2017.

9.  In my early communications with the Surrogate's Court, I was told that the Petition had not yet been reviewed because of a backlog in the office and that I should keep checking back.

10. Eventually, I was advised that the petition had been placed in the "hold" drawer because the caption on the Petition needed to be amended.

11. Because the clerk that I spoke with could not give me specific direction as to how the caption needed to be changed, I was directed to call back at another time.

12. When I finally reached a person with knowledge at the Surrogate's Court as to how to change the caption, I drafted and submitted an attorney affirmation amending the caption as directed.

13. The clerk advised that, again, it would take some time for them to review the affirmation and issue the citation.

14. When they did finally review that initial affirmation, I was advised by a different clerk of the Surrogate's Court that a second affirmation needed to be submitted making a further change to the caption.

15. I submitted that second affirmation with the further change, as required by the Clerk.

16. Upon receipt and approval of the second affirmation with the further change to the caption, in December of 2017, the Surrogate's Court issued the citation for this proceeding.

17. Immediately thereafter, I arranged to serve the respondents in this proceeding. I note that the address at which the "Trump Group" (as denoted in their own brief in this action) were served is the one identified by Mark Hirsch, their general counsel, as shown in the attached email.

18. I did so, _inter alia_, by delivery of the citation to Orly's counsel (who had appeared in the Removal Action under the same file number) and by delivery to some of the respondents at their business address.

19. When Orly's counsel objected to the service upon them, in an abundance of caution, I had the process server mail the citation to Orly at her address in Texas. Upon information and belief, that address was one in which Orly had claimed a homestead exemption, owns a home, has a driver's license and votes (in an action in Federal Court, Orly has attempted to evade service claiming that she lives in Israel notwithstanding her definitive contacts in Texas). Copies of documentary information confirming that Texas address is attached hereto.

20. Such service was made at a time immediately before the return date of the citation so that affidavit has not been filed with the Court.

21. On February 5, 2018, respondents Orly and TR, respectively, moved to dismiss the Turnover Proceeding on the grounds, _inter alia_, of delay and deficiencies in service, and other relief.

22. Dalia therefore opposes these motions and, as necessary, cross-moves for (i) an extension of time to serve process and permission to serve substituted service (or nunc pro tunc) and file the affidavit of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and the issuance of a supplemental citation for that Guardian ad litem, and (iii) to consolidate this turnover proceeding with the Removal Proceeding with this Turnover Proceeding.

WHEREFORE, I respectfully request that the respondent's motions to dismiss be denied and the cross-motion be granted and that the Petitioner have such other and further relief as is just and warranted.

Dated: February 20, 2018
New City, New York

Judith Bachman

**Dellaportas, John**

| | |
|---|---|
| **From:** | Mark Hirsch <mhirsch@trumpgroup.com> |
| **Sent:** | Friday, November 18, 2016 10:53 AM |
| **To:** | Dellaportas, John |
| **Subject:** | RE: My apologies running late |

11 will work.  See you soon.

Mark S. Hirsch
Partner and General Counsel
The Trump Group
400 Park Ave. I  19th Floor I New York, NY 10022
(o) 212-838-1000 or 212-340-6767 I (c) 917-821-3000
mhirsch@trumpgroup.com



1

# Travis CAD

## Property Search > 798599 HERSCHMANN ERIC & ORLY GENGER for Year 2018

Tax Year: 2018 - Values not available

### Property

#### Account

| | | | |
|---|---|---|---|
| Property ID: | 798599 | Legal Description: | UNT 1903 BLOCK 21 CONDOMINIUMS AMENDED PLUS .3294 % INT IN COM AREA |
| Geographic ID: | 0205011425 | Zoning: | |
| Type: | Real | Agent Code: | ID:2490 |
| Property Use Code: | | | |
| Property Use Description: | | | |

#### Location

| | | | |
|---|---|---|---|
| Address: | 210 LAVACA ST 1903 TX 78701 | Mapsco: | |
| Neighborhood: | BLOCK 21(THE W) DOWNTOWN HIGHRISE CONDOS | Map ID: | 020201 |
| Neighborhood CD: | Z1W99C | | |

#### Owner

| | | | |
|---|---|---|---|
| Name: | HERSCHMANN ERIC & ORLY GENGER | Owner ID: | 1703720 |
| Mailing Address: | 210 LAVACA ST #1903 AUSTIN , TX 78701-4582 | % Ownership: | 100.0000000000% |
| | | Exemptions: | HS |

### Values

| | | | |
|---|---|---|---|
| (+) Improvement Homesite Value: | + | N/A | |
| (+) Improvement Non-Homesite Value: | + | N/A | |
| (+) Land Homesite Value: | + | N/A | |
| (+) Land Non-Homesite Value: | + | N/A | Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | N/A | N/A |
| (+) Timber Market Valuation: | + | N/A | N/A |
| | | ------------------------- | |
| (=) Market Value: | = | N/A | |
| (−) Ag or Timber Use Value Reduction: | − | N/A | |
| | | ------------------------- | |
| (=) Appraised Value: | = | N/A | |
| (−) HS Cap: | − | N/A | |
| | | ------------------------- | |
| (=) Assessed Value: | = | N/A | |

### Taxing Jurisdiction

Owner: HERSCHMANN ERIC & ORLY GENGER
% Ownership: 100.0000000000%
Total Value: N/A

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 01 | AUSTIN ISD | N/A | N/A | N/A | N/A |
| 02 | CITY OF AUSTIN | N/A | N/A | N/A | N/A |
| 03 | TRAVIS COUNTY | N/A | N/A | N/A | N/A |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0A | TRAVIS CENTRAL APP DIST | N/A | | N/A | | N/A | N/A |
| 2C | DOWNTOWN PUB IMP DIST | N/A | | N/A | | N/A | N/A |
| 2J | TRAVIS COUNTY HEALTHCARE DISTRICT | N/A | | N/A | | N/A | N/A |
| 68 | AUSTIN COMM COLL DIST | N/A | | N/A | | N/A | N/A |
| | Total Tax Rate: | N/A | | | | | |
| | | | | Taxes w/Current Exemptions: | | | N/A |
| | | | | Taxes w/o Exemptions: | | | N/A |

## Improvement / Building

**Improvement #1:** HIRISE CONDO/APT  **State Code:** A4  **Living Area:** 3180.0 sqft  **Value:** N/A

| Type | Description | Class CD | Exterior Wall | Year Built | SQFT |
|---|---|---|---|---|---|
| 1ST | 1st Floor | A - 6 | | 2011 | 3180.0 |
| 399 | DETAIL CONDO FV | * - 6 | | 2011 | 0.0 |

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|---|---|---|---|---|---|---|---|
| 1 | LAND | Land | 0.0058 | 252.11 | 0.00 | 0.00 | N/A | N/A |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|---|---|---|---|---|---|---|
| 2018 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2017 | $2,122,166 | $66,973 | 0 | 2,189,139 | $34,238 | $2,154,901 |
| 2016 | $2,091,763 | $58,237 | 0 | 2,150,000 | $190,999 | $1,959,001 |
| 2015 | $1,895,177 | $56,725 | 0 | 1,951,902 | $170,992 | $1,780,910 |
| 2014 | $1,639,479 | $56,725 | 0 | 1,696,204 | $77,195 | $1,619,009 |
| 2013 | $1,415,101 | $56,725 | 0 | 1,471,826 | $0 | $1,471,826 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|---|---|---|---|---|---|---|---|
| 1 | 10/27/2016 | WD | WARRANTY DEED | HERSCHMANN ERIC | HERSCHMANN ERIC & ORLY GENGER | | | 2016187344 |
| 2 | 3/15/2012 | WD | WARRANTY DEED | RUCKS SHAWN D & ANGELA C | HERSCHMANN ERIC | | | 2012042123TR |
| 3 | 2/11/2011 | WD | WARRANTY DEED | CJUF II STRATUS BLOCK 21 LLC | RUCKS SHAWN D & ANGELA C | | | 2011022350TR |

### Questions Please Call (512) 834-9317

This site requires cookies to be enabled in your browser settings.

### This year is not certified and ALL values will be represented with "N/A".

Website version: 1.2.2.23    Database last updated on: 1/29/2018 1:34 AM    © N. Harris Computer Corporation

**1: Texas Voter Registration**

**Registrant Information**

**Name:** GENGER, ORLY

**Residential Address:** 210 LAVACA ST APT 1903
AUSTIN, TX 78701-4582
TRAVIS COUNTY

**SSN:** 130-74-XXXX

**Date of Birth:** 1/1979

**Gender:** Female

**Voter Information**

**Registration Date:** 11/24/2016

**Active Status:** ACTIVE

**1: Texas Driver License**

### Driver Information

**Name:** GENGER, ORLY

**Address:** 210 LAVACA ST #1903
AUSTIN, TX 78701-4582
TRAVIS COUNTY

**Data source:** Governmental: TX

### Personal Information

**SSN:** 130-74-XXXX

**DOB:** 01/1979

### License Information

**Issue Date:** 11/03/2016

### Additional Driver Information

**DOB:** 01/1979

**History:** Current

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
File No.: 2008-0017E

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC, ARNOLD BROSER,
DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.

**AFFIRMATION OF JUDITH BACHMAN
IN OPPOSITION**

**KELLEY DRYE & WARREN LLP**
101 PARK AVENUE
NEW YORK, NEW YORK  10178

(212) 808-7800

ORIGINAL

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E <br><br> Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust, <br><br>     Petitioner, <br><br>   -against- <br><br> Orly Genger, et al., <br><br>     Respondents. | |

## REPLY MEMORANDUM IN SUPPORT OF ORLY GENGER'S
## MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION

KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NY 10019
212-506-1700

ATTORNEYS FOR    *Respondent*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>    Petitioner,<br><br>    -against-<br><br>Orly Genger, et al.,<br><br>    Respondents. | |

## REPLY MEMORANDUM IN SUPPORT OF ORLY GENGER'S MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION

Respondent Orly Genger by limited appearance submits this reply memorandum in support of her motion to dismiss and for sanctions and award of attorney's fees, and in opposition to petitioner Dalia Genger's cross-motion for the appointment of a guardian ad litem for Orly's daughter, a minor.[1]

### PRELIMINARY STATEMENT

Dalia's opposition confirms that she violated basic rules of procedure and that her violations are neither justified nor excusable. The law is clear. Her new petition – yet another in

---

[1]    Citations herein to "Mem." are to Orly's opening Memorandum of Law in support of her Motion to Dismiss Dalia Genger's 2016 Petition, dated February 5, 2018. Capitalized terms used but not defined herein have the meanings ascribed in that opening memorandum. Citations herein to "Opp. Mem." are to Dalia Genger's Memorandum of Law in Opposition to Respondents' Motions to Dismiss and in Support of Petitioner's Cross-Motion, dated February 20, 2018, and citations herein to "Bachman Affirm." are to the Affirmation of Judith Bachman, dated February 20, 2018, submitted in support of Dalia's Opp. Mem.

a long line of her dilatory tactics – is itself dilatory and, for that reason among many others, is barred as a matter of law.

Dalia makes a number of excuses as to why, she believes, the normal procedural rules do not apply to her. She even goes so far as to blame the Clerk of the Court for her own failures and that of her counsel. She cannot dispute, however, that she never effected good service on Orly (or any of the named parties in this proceeding) within the time statutorily required. For that indisputable reason, her New Action is time barred by the procedural rules and the applicable statute of limitations.

Her New Action fails on the merits as well. Although she tries to confuse the issue, she does not and cannot explain how the New Action is not duplicative of her counter-petition, which is currently the subject of fully-briefed, *sub judice* motions to dismiss.

Her cross-motion to appoint a guardian for Orly's infant daughter, in place of the child's own parents (Orly and her husband, Eric Herschmann) is as meritless as it is mean-spirited. The law is clear that, unless it is shown that the natural guardians are unfit, no legal guardian may be appointed in their stead. For Dalia to allege without any knowledge or good faith belief whatsoever that her own daughter, a new parent, is unfit is the height of hypocrisy: It underscores that it is Dalia who is unfit. She is the mother who did not attend her only daughter's wedding, who has not spoken with her own daughter in years and who has never even met her daughter's only child and her own grandchild. (She does not even mention the child's father, Mr. Herschmann, much less provide any reason to disqualify him as a natural guardian, nor can she.) If Dalia is not ashamed of herself already, she should be by now. Such gall only further proves her utter inability to serve as trustee for the benefit of Orly.

2

Most importantly, just like her irresponsible attempt to appoint a legal guardian without any good faith legal basis whatsoever, Dalia's conniving to file a New Action in June 2016 and then, in blatant violation of the procedural rules, to wait and spring (attempted but failed) service as if it were some kind of trap for the unwary *eighteen months later* at the end of 2017 is just yet another example in a long line of examples of her bad faith and gamesmanship to the extreme detriment of the trust beneficiary, Orly. This kind of plotting by Dalia further confirms – if any further reason were needed – that Dalia has a fatal conflict of interest with Orly and is unfit to serve as trustee of the Orly trust. Orly has been trying to remove her for *ten years*. Dalia should be – must be – removed as the trustee without any further delay.

Her New Action should be summarily dismissed with prejudice.

## ARGUMENT

### I.    THE REMOVAL ACTION HAS PRIORITY AND MOOTS THE NEW ACTION AS RES JUDICATA

Orly first petitioned this Court for the removal of Dalia as trustee of the Orly Trust over ten years ago in 2008 (the Removal Action), more than eight years before Dalia filed (without serving) the New Action in 2016. After procedural wrangling by Dalia (and Sagi), Orly renewed her request for this relief in 2009. Once the merits of Orly's Removal Action are considered by this Court, and the Court finally removes Dalia as trustee, Dalia will lose standing to continue to prosecute this frivolous New Action.

Dalia tries to confuse the dates on which each action was filed. She fixates on the August 2017 date on which she filed her counter-petition against Orly for the same relief she seeks in this New Action as if that were the date the 2008 Removal Action was filed. On that false premise she claims that her meritless New Action, filed in June 2016, was first filed (because that date is *before* August 2017, rather than *after* 2008, when the Removal Action was first

3

filed).  Opp. Mem. at 14-15.  It is true, as Orly noted in her moving brief, that the New Action

was filed (but not served) before Dalia's *counter-petition* in the first-filed 2008 Removal Action.

Mem. at 11.  But that does not change the critical fact – also noted in Orly's moving papers –

that the proceedings in the Removal Action with respect to Dalia's counter-petition are much

further along than this New Action:  The counter-petition was *served before* even any attempt at

service of the New Action; Orly and the other party to the Removal Action (the court-appointed

guardian ad litem for theoretical unborn children) already responded to the counter-petition long

*before* any party ever made a limited appearance to dismiss the New Action; and Orly's and the

guardian's motions to dismiss the counter-petition were fully briefed *before* the motions to

dismiss in this New Action were made and are already *sub judice* awaiting decision long *before*

submission of the dismissal motions in this New Action.  *Id.*  No spin by Dalia can alter these

facts.  Because the adjudication of these same claims is indisputably happening first in the

Removal Action, that action has priority and it is this late New Action that is to be jettisoned as

duplicative and a waste of judicial resources.  *See* Mem. at 11-12.

Furthermore, Dalia's protestation that the counter-petition did not name all of the

respondents she named in the New Action is irrelevant.  Dalia could have impleaded additional

respondents into her 2017 counter-petition in the Removal Action, but she failed to do so.  CPLR

1007.  That was her choice and her fault; no one else's.  It is clear she did not follow that course

of action because she always intended to use the New Action as a procedural maneuver to trip up

the orderly adjudication of the Removal Action.  Trying to use one filing to foul up another is the

height of sanctionable bad faith.  *See* Mem. at 16.  It is an utter waste of judicial resources and

an inexcusable burden on the Surrogate's Court, not to mention the other litigants.  In any event,

because the counter-petition fails on its merits (just like the New Action), there is no need for

consolidation, as Dalia now purports to seek. That is an empty ruse to work delay upon delay.

Dismissal is also warranted, of course, because all of Dalia's claims in both actions are

barred by the doctrine of res judicata. Dalia argues that respondents have stated conflicting

positions in their motions to dismiss the New Action. Opp. Mem. at 17. That is not true. Both

the Trump Group and Orly are in full agreement that prior judicial decisions (many of which are

binding on this Court), confirm that Dalia is barred from making her claims in this action. *See*

Mem. at 16 (incorporating Orly's MTD of Dalia's counter-petition, at 12-14) and the

Memorandum of Law in Support of the TR Entities' Motion to Dismiss the [New Action]

Petition, dated Feb. 6, 2018, at 19-22.

No matter what causes of action Dalia asserts – whether labeled "turnover," breach of

fiduciary duty, unjust enrichment, or anything else – and no matter how Dalia characterizes her

story, the relief Dalia seeks in both the New Action and her counter-petition, as well as in every

other case where she is adverse to Orly, is the same: Dalia seeks to intercept the proceeds from

the AG/Trump Group Settlement Agreement, by any means necessary and irrespective of the

law. Dalia's repetitive and duplicative actions, which have been repeatedly dismissed, most

recently by the First Department, is sanctionable abuse of the Courts. This Court need not

countenance this latest meritless attempt by Dalia because it is precluded by the First

Department's decision and by the statute of limitations – all the parties named by Dalia (but not

yet served) in this New Action agree on that. *See* Mem. at 16 (incorporating Orly's MTD of

Dalia's counter-petition, at 12-14, citing *Genger v. Genger*, 144 A.D.3d 581 (1st Dep't 2016)).

Dalia has no good argument to counter the preclusive effect and controlling holding of

the First Department. As pointed out in Orly's moving papers, the First Department ruled that

Dalia's claims brought on behalf of the OG Trust with respect to the AG/Trump Group

Settlement Agreement were dismissed **with prejudice** in various prior court decisions and,

because she failed to object to the dismissal **with prejudice** in that case before the trial court, she

is forever precluded from raising these claims again. Mem. at 16 (incorporating Orly's MTD of

Dalia's counter-petition at 12-14). Dalia tries (Opp. at 19-20) to side-step this controlling

holding by discussing holdings years ago in a related Delaware action and years-old decisions in

various federal cases involving the Gengers. All of that is beside the point. The decision of the

First Department, relatively recently handed down in 2016, already considered all of these same

arguments – and rejected them. Even Dalia has to know that she cannot use this Surrogate's

Court proceeding to try to overturn a controlling appellate decision.

## II.   DALIA'S ADMISSIONS BAR THIS ACTION AS UNTIMELY

In her opposition, Dalia goes to great lengths to blame the Court for her own failure to

serve the New Action on respondents within the statutorily allotted time period. She has no

authority for her claim that her failure should be blamed on the Surrogate's Court. The cases she

does cite, decisions from two centuries ago in the 1880s and 1890s (Opp. Mem. at 9-12) are

inapposite on their face and obviously not controlling. Those decisions were decided before the

modern CPLR and the Surrogate's Court Procedure Act, both of which were enacted and/or

overhauled in the 1960s – almost a hundred years after the cases cited by Dalia.

The lawyer's affirmation from Dalia's counsel fares no better. In that account, her

lawyer admits that she did nothing to meet the statutory deadline of 120 days in which to serve

the petition in the New Action. While she claims she had multiple calls and emails with the

Court inquiring about the court preparation of the citation, she has no documentary proof of this.

Moreover, she contradicts herself and admits that the error is hers. She filed the New Action

using an erroneous caption, which was rejected by the Court Clerk *twice.* She labored to fix it –

but who knows for how long; she certainly does not confess to the amount of time she delayed in fixing twice-over her own admitted errors. *See* Bachman Affirm. ¶¶ 7, 10, 14. More importantly, nothing stopped her from making a motion within that four-month period seeking a citation or an order extending time for service, nor does she even acknowledge that she should have done at least that much. Nor did anything stop her from serving the petition without the citation using proper service of process.

Finally, even were she permitted to effect late service – *i.e.*, service that is over a *year* late – that has no bearing on calculating the statute of limitations. Under Section 301(a) of the SCPA, the running of the statute of limitations is stopped by the filing of the petition "***provided*** process is issued and service made upon any respondent within one hundred twenty days after the date of the filing of the petition." SCPA 301(a). *See* Mem. at 12, 15. Since even Dalia admits no such service was made within that period upon any respondent, the statute of limitations continued to run – and expired – thereafter. *See id.* at 15. No provision in this statute allows a Court to vary this legislative requirement. *Id.* Dalia has no rejoinder to this point. She does not even address it.

## III.   **DALIA FAILED TO EFFECT GOOD SERVICE**

Dalia argues that she served Orly twice. But she did not. Her own brief betrays her.

First, she claims to have properly served Orly by emailing a copy of the Citation to her counsel in the Removal Action. She argues that such service is proper because the New Action is a part of the Removal Action. But it obviously is not. If it were, she would not have needed a new citation; nor would she have needed a new caption – a caption that the Clerk rejected and she had to fix twice; nor would the New Action have its own new case file number. *See* Mem. at 7; 13-14. Had Dalia actually believed her New Action was part of Orly's original Removal Action, she would have had to have served it on all parties to that action, which includes the

7

guardian ad litem in the Removal Action, Steven M. Riker. She did not serve Riker. All of those factors prove that, at no time relevant, did even Dalia really believe her after-the-fact contention that the New Action is just a part of the Removal Action. Since this New Action is a stand-alone new proceeding, service on counsel is not effective service. *See* CPLR 2103(b) ("papers to be served upon a party in a *pending* action shall be served upon the party's attorney").

Second, Dalia argues that she effected service on Orly by allegedly mailing the Citation to a residence in Texas registered in Orly's name as a joint owner with her husband. Opp. at 8. But there is no proof – and Dalia proffers none – that Orly was served in Texas. When service is made out of state, the law requires that personal service be made in accordance with the requirements of the CPLR and the SCPA by persons qualified to effect such service within the State in question. *See* CPLR 313. While Dalia claims she has an affidavit of service for this alleged service in Texas, which she claims was effected "immediately before" the return date of the Citation (meaning December 2017, and long after the 120-day statutory requirement), she admits the Court Clerk rejected it. *See* Opp. at 14. She failed, in any event, to append any such proof of service to her opposition papers, and thus makes no showing of any such service at all.

It is too late to file that proof now. Dalia cannot submit such alleged proof without affording Orly, who never received and certainly never signed for any such service in Texas or anywhere else, an opportunity to be heard and to challenge the *bona fides* of the proof of service. Such basic due process is all the more imperative here given Dalia's documented collusion with Sagi, who has been orchestrating Dalia's actions against Orly and in conflict with Dalia's fiduciary duties to Orly. For example, Sagi orchestrated a federal lawsuit by Dalia and him against Orly, filed in 2017 but not yet served, alleging that Orly owes *millions* of dollars to

8

Dalia. Answer, Affirmative Defense, and First Amended Third-Party Complaint, *Dalia Genger v. Sagi Genger*, Case No. 17-cv-8181 (S.D.N.Y., filed Dec. 12, 2017). That, of course, is just a recent example of the blatant and multitude of conflicts of interest between Dalia and Orly. Another recent example of such collusion between Dalia and Sagi is the fact that Dalia's attorney never served her motion opposition papers in this proceeding on Orly's counsel – it was instead served by Sagi's counsel, Kelley Drye.

In all events, as the record stands now, it is devoid of any proof of service and certainly devoid of any proof that Orly has had a fair opportunity to review and to challenge on the facts and law. There is, accordingly, no basis to find effective service of process.

## IV.    DALIA'S CROSS-MOTION TO APPOINT A LEGAL GUARDIAN HAS NO LEGAL BASIS

Dalia gratuitously includes a cross-motion for various relief in her opposition papers. She belatedly seeks enlargement of time to effect service and consolidation, both of which are moot for reasons described above and in the moving papers. She also seeks the appointment of a guardian ad litem for Orly's infant daughter, ignoring that the child already has legal guardians – her parents, Orly and her husband.[2]

The sum total of Dalia's argument for a guardian in place of the child's parents is her baseless and uncertain contention that Orly's daughter's "interests *may* conflict with Orly's." Opp. Mem. at 27 (emphasis added). She makes no argument, much less shows any evidence, that such a conflict exists, even an uncertain one. She cannot. There is none. The only conflict that child has is with Dalia, who is at war with the child's mother. *Dalia's* interests

---

[2]  In the Removal Action, Riker was appointed years ago as guardian ad litem to protect the interests of potential *unborn children only*, at a time when Orly had no offspring. *See* Order Appointing Guardian Ad Litem, filed Dec. 11, 2014, File No. 2008-0017. In motions in the Removal Action, Riker has acknowledged that he is not a guardian to Orly's daughter and was never appointed to that role.

unmistakably conflict with Orly's – as confirmed by the Appellate Division in *Orly Genger v.*
*Dalia Genger*, 120 A.D.3d 1102, 1104 (1st Dep't 2014) – and also conflict with those of her
granddaughter, whom she has never even met.

Under New York law, a child's parents are presumptively entitled to act as guardian for
the child. *In re Judicial Settlement of First Intermediate Account of Proceedings of Mfrs. Of*
*Hanover Trust Co.*, 83 A.D.2d 808, 808 (1st Dep't 1981) ("It is the policy of this state to
encourage parents to act as guardians, thereby avoiding unnecessary appointments and the
expense of a guardian ad litem"). *See also* SCPA § 402 (infant may appear by the infant's
parents); SCPA § 402(1) (a parent is always permitted to appear on behalf of his/her child).
Here, Dalia does not even try to rebut this legal presumption. She makes no showing, or even
tries to show, how the child's mother and father are both unfit to act in their own child's best
legal interests.

Since the child already has natural guardians, no guardian ad litem appointment is
needed.

## CONCLUSION

For the foregoing reasons and those stated in Orly's moving papers, this Court should dismiss the New Action in its entirety, with prejudice, should sanction Dalia for proceeding with this frivolous action, and should award Orly such other and further relief as it deems just and proper.

Dated:    New York, New York
          February 26, 2018

KASOWITZ BENSON TORRES LLP

By: _____
      Michael Paul Bowen
      Andrew R. Kurland
      1633 Broadway
      New York, New York 10019
      (212) 506-1700

      *Attorneys for Petitioner Orly Genger*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E  Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust, |  |
|  Petitioner, |  |
|  -against- |  |
| Orly Genger, et al., |  |
|  Respondents. |  |

### AFFIRMATION OF SERVICE

I am an attorney admitted to practice before the Courts of the State of New York.  On February 26, 2018, on behalf of respondent Orly Genger, I caused to be served by FedEx overnight delivery a true and correct copy of Respondent Orly Genger's Reply Memorandum in Support of her Motion to Dismiss and in Opposition to Cross-Motion, dated February 26, 2018 on counsel for Petitioner Dalia Genger at the following address:

    Judith Bachman, Esq.
    254 S. Main Street
    Suite 306
    New City, NY 10956

Dated: New York, New York
    February 26, 2018

_____
Andrew R. Kurland

**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

In the Matter of DALIA GENGER, trustee of the ORLY
GENGER 1993 TRUST,

                       Petitioner,

      - against -

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW
TR EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC., ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20, and JANE DOES 1-20,

                    Respondents.

---

FILE NO 2008-0017/E

Hon. Nora S. Anderson

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TR ENTITIES' MOTION
TO DISMISS THE PETITION FOR TURNOVER OF TRUST PROPERTY AND OTHER
RELIEF FILED ON JUNE 14, 2016, BY DALIA GENGER AS TRUSTEE OF THE ORLY
GENGER 1993 TRUST AND IN OPPOSITION TO PETITIONER'S CROSS-MOTION**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

*Attorneys for Glenclova Investment Co.,
TR Investors, LLC, New TR Equity I, LLC,
New TR Equity II, LLC, and
Trans-Resources LLC.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..........................................................................................................2

I.    DISMISSAL OF THE PETITION IS WARRANTED BASED UPON DALIA'S
      (NOT THE COURT'S) DELAY IN "COMMENCING" THIS PROCEEDING ...............2

II.   DALIA'S FAILURE TO SERVE THE TR ENTITIES IS NOT CURED BY ANY
      LIMITED APPEARANCE IN THIS ACTION................................................5

III.  DISMISSAL OF THE PETITION AS AGAINST THE TR ENTITIES IS ALSO
      WARRANTED BECAUSE DALIA'S CAUSES OF ACTION ARE
      INSUFFICIENTLY PLEADED AND WITHOUT MERIT ...............................7

      A.    Orly Does Not Owe Any Fiduciary Duties to the Trust .........................7

      B.    The Petition Fails to Sufficiently Allege Knowing Participation ...........8

      C.    The Petition Fails to Sufficiently Allege the TR Entities Knowingly and
            Improperly Induced a Breach of Contract .............................................11

      D.    The Money Had and Received and Turnover Causes of Action Should be
            Dismissed...............................................................................................13

IV.   RES JUDICATA BARS DALIA'S CLAIMS..................................................14

V.    EVEN IF NOT DISMISSED FOR THE ABOVE REASONS THE COURT
      SHOULD STAY OR DISMISS THIS PROCEEDING ...................................16

CONCLUSION..........................................................................................................17

i

# TABLE OF AUTHORITIES

## CASES

Page

*Alliance Network, LLC v. Sidley Austin LLP,*
    43 Misc.3d 848, 987 N.Y.S.2d 794 (Sup. Ct. N.Y. County 2014) ................................3, 10

*In re Bear Stearns Litigation,*
    23 Misc. 2d 447, 870 N.Y.S.2d 709 (Sup. Ct. N.Y. County 2008) ...................................10

*Estate of Jervis v. Teachers Insurance & Annuity Ass'n,*
    279 A.D.2d 367, 720 N.Y.S.2d 21 (1st Dep't 2001)..........................................................7

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
    12 N.Y.3d 553, 883 N.Y.S.2d 147 (2009) ..................................................................9, 10

*Fesseha v. TD Waterhouse Investor Services, Inc.,*
    193 Misc. 2d 253, 747 N.Y.S.2d 675 (Sup. Ct. N.Y. County 2002) ................................13

*Fifty CPW Tenants Corp. v. Epstein,*
    16 A.D.3d 292, 792 N.Y.S.2d 58 (1st Dep't 2005)..........................................................15

*Genger v. Genger,*
    144 A.D.3d 581, 41 N.Y.S.3d 414 (1st Dep't 2016).........................................................16

*Insurance Co. of State of Pennsylvania v. HSBC Bank USA,*
    10 N.Y.3d 32, 852 N.Y.S.2d 812 (2008) ........................................................................14

*Kaufman v. Cohen,*
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003)...................................................8, 11

*Luxury Autos of Huntington, Inc. v. Volkswagen Group of America, Inc.,*
    49 Misc. 3d 1207, 2015 N.Y. Slip Op. 51502(U), 26 N.Y.S.3d 725
    (Sup. Ct. Nassau County 2015).......................................................................................12

*Matter of Katz,*
    81 A.D.2d 145, 148-49, 439 N.Y.S.2d 941, 943 (2d Dep't 1981) ......................................6

*O'Brien v. City of Syracuse,*
    54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) .......................................................................15

*Pludeman v. Northern Leasing Systems, Inc.,*
    10 N.Y.3d 486 (2008) .......................................................................................................9

*Syncora Guarantee Inc. v. J.P. Morgan Securities LLC,*
    110 A.D.3d 87, 970 N.Y.S.2d 526 (1st Dep't 2013).........................................................17

*Torrenzano Group, LLC v. Burnham*,
    26 A.D.3d 242, 810 N.Y.S.2d 42 (1st Dep't 2006) ............................................12

*TSR Group, LLC v. Levitin*,
    2016 N.Y. Slip Op. 31322(U) (Sup. Ct. N.Y. County 2016).......................11, 13

## STATUTES

SCPA 301(a) ...................................................................................................2, 4

SCPA 306(4) .........................................................................................................3

## RULES

CPLR 306-b ..........................................................................................................6

CPLR 311 ..............................................................................................................5

CPLR 311-a ...........................................................................................................5

CPLR 320(b)...................................................................................................1, 5, 6

CPLR 2201 ..........................................................................................................16

CPLR 3016(b)......................................................................................................8, 9

CPLR 3211(a)(4) .................................................................................................17

CPLR 3211(a)(8) ...................................................................................................1

## OTHER AUTHORITIES

1 Harris N.Y. Estates: Probate Admin. & Litigation § 3:32 (6th ed.) ............................3

1-3 New York Civil Practice: SCPA 304.00 (Matthew Bender 2018) ............................4

Respondents Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources LLC (collectively the "TR Entities") respectfully submit this reply memorandum of law in support of their Motion to Dismiss the Petition for Turnover of Trust Property and Other Relief (the "Petition") filed on June 14, 2016, by Dalia Genger ("Dalia"), the currently challenged trustee of the Orly Genger 1993 Trust (the "Trust"), and in opposition to Petitioner's cross-motion.

## PRELIMINARY STATEMENT

As shown in the TR Entities' Motion to Dismiss, their Opening Brief in support (the "TR Br."), and the supporting affirmations, the Petition should be dismissed. The often bewildering arguments presented in Dalia's Opposition Brief do not support any change in that result or rehabilitation of her failed pleading.

As a threshold matter, Dalia does not even oppose the TR Entities' arguments and evidence establishing that they were not properly served. Nor does she raise any legal challenge to the argument that, because she did not serve citations on the TR Entities within 120 days after the filing of the Petition, dismissal is required and the claims are time-barred. Because jurisdiction is lacking, the Court need look no further to dismiss the Petition and deny the cross-motion.[1]

Nevertheless, should the Court wish to review the merits-based arguments also raised in the Motion to Dismiss, Dalia offers no legal support or citations to sufficient allegations in the Petition to refute the TR Entities' legal arguments and documentary evidence that establish that she has failed to sufficiently allege the necessary elements of each of her claims. And

---

[1] The TR Entities again expressly state that because they are raising an objecting to personal jurisdiction under CPLR 3211(a)(8), under CPLR 320(b) neither their Opening Brief nor this Reply Brief and opposition to Petitioner's cross-motion amounts to a waiver of jurisdiction.

finally, in responding to the TR Entities' res judicata arguments, because Dalia concedes that the

settlement of the Trans-Resources shares ownership claim "is the very fact that entitle[s] the Orly

Trust to the turnover of the Settlement Proceeds," Dalia's earlier voluntary settlement and

dismissal with prejudice in the Delaware Action of that very claim, and her dismissal of that

action in which she could have brought her current claims, requires res judicata preclusion of the

claims in the Petition.

## **ARGUMENT**

### I.   **DISMISSAL OF THE PETITION IS WARRANTED BASED UPON DALIA'S (NOT THE COURT'S) DELAY IN "COMMENCING" THIS PROCEEDING**

In the Opening Brief, the TR Entities explained that dismissal of the petition is

required and the claims thereunder are time-barred because Dalia failed to "commence" a

proceeding against the TR Entities in the time required by the SCPA. (*See* TR Br. at 12-13).

Rather than respond to those arguments, Dalia instead argues (incredibly) that any delay is the

fault of the Court and not her own. (*See* Opp'n Br. at 9-12). The Court should reject Dalia's

argument based upon the SCPA and upon Dalia's prior conduct in this proceeding.

"For the purpose of computing the period of limitation . . . a proceeding is

***commenced*** upon the filing of a petition, ***provided process is issued*** and service made upon any

respondent ***within one hundred twenty days after the date of the filing of the petition*** . . . "

SCPA 301(a) (emphasis added). Here, Dalia never "commenced" the action for statute of

limitations purposes for at least two reasons.

*First*, as of June 14, 2016, and at least one other occasion (time not identified by

Dalia), the Petition was deemed deficient on its face by the Surrogate's Court. (*See* Affirmation

of Judith Bachman in Opposition ("Bachman Aff.") at ¶¶ 10-12 (claiming that Surrogate's Court

clerk advised that caption was incorrect), ¶¶ 14-16 (same)). The Surrogate's Court clerk rejected

2

the Petition (twice) and required additional affirmations from Dalia's counsel prior to acceptance. (*Id.*) Only after Dalia modified the Petition for the second time, in December 2017, was it "commenced" for SCPA 301(a) purposes – at that time the Petition was accepted for filing and process issued – which occurred long after the running of the three-year statute of limitation period for breach of fiduciary duty, tortious interference of contract, and turnover of property. (*See* TR Br. at 12-13).[2]

   *Second*, assuming *arguendo* that the Petition was properly filed on June 14, 2016, process did not issue and service was not made within 120 days of June 14, 2016. Dalia blames the Court for this delay. In this Court, the attorney often prepares the citation for presentment to the clerk of the Court, who provides the Court's signature and seal. *See* SCPA 306(4); 1 Harris, New York Estates: Probate Admin. & Litigation § 3:32 (6th ed.) ("The petitioner's attorney will prepare the original citation. The citation will be reviewed (usually by a clerk), and the return date by which the party or parties named will be required to respond, as requested by the attorney, will be filled in."). Throughout this proceeding, the Court has acted promptly in issuing citations. A review of the docket identifies that on four other occasions, citations were issued either on the same day or within days of the filing of the pleading requiring the issuance of a citation. (*See* File #2008-0017 Docket and Info Sheet reviewed 2/21/2018 (hereafter "Dkt.") entry filed 02-15-2008 (citation issued same day as Amended Petition to Designate Trustee was filed), Dkt. entry filed 11-14-2008 (citation issued 13 days after Petition to Suspend Letters was filed), Dkt. entry filed 11-18-2008 (citation issued same day as Petition to Account-Trustee Leah Fang was filed), Dkt. entry filed 11-20-2012 (citation issued 12 days after Petition to Compel

---

[2] Dalia concedes the three year statute of limitation applies to her claims by failing to argue – and therefore waiving any argument – that a longer period applies. *See Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 864 n.4, 987 N.Y.S.2d 794, 806 n.4 (Sup. Ct. N.Y. County 2014) (noting that a party's failure to oppose arguments in its briefing on motion to dismiss results in waiver of the issue)

Fiduciary to Account was filed)). In light of the Court's diligence and expedition, it takes a

special type of boldness for Dalia to claim that it was solely due to the Court's delay that it took

**570 days** to issue the citation. The Court should reject Dalia's efforts to blame the Court for her

own inaction and lack of diligence.

Rather, the Bachman Affirmation supporting Dalia's opposition brief and cross-

motion suggests that it was indeed Dalia's own deficiencies in pleading and presenting the

Petition and draft citation (and not the fault of the Court) that caused delay in the issuance of the

citation. (*See* Bachman Aff. ¶¶ 10, 12, 14, 15). Indeed, Dalia's own evidence supports that the

Petition was rejected by the clerk and the citation was not issued. *See* 1-3 New York Civil

Practice: SCPA 304.00 (Matthew Bender 2018) (noting that if information required by SCPA

304 is not provided the "petition is deficient on its face and will not be accepted for filing").

Even if the initial Petition and form citation that Dalia was required to draft did

meet the minimum requirements of SCPA 304 and 306 (and, as suggested if not conceded by the

Affirmation of Judith Bachman in Opposition, they did not), the Court should not entertain

Dalia's efforts to pass her laxity in obtaining, and attempting to serve, the citation within the 120

day requirement of SCPA 301(a) to the Court. In fact, on at least two occasions, Dalia sought

extensions of Court-ordered deadlines by properly making a filing with the Court. (*See* Dkt.

entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17

(Stipulation To Adjourn From 10-17-17 To 12-8-17")). Dalia is a serial filer in the Court, having

filed papers and sought relief from the Court on multiple occasions from the date the Petition

was purportedly filed on June 14, 2016, to the date the citation was issued on December 19,

2017. (*See* Dkt. (identifying at least eight written filings by Dalia in the Court since June 2016)).

Clearly, Dalia knew how to request and file any extension of time to serve the Petition within the

4

required 120-day time frame (or the additional, almost, five cycles of that same time frame)

before expiration. She knowingly failed to do so.

For the foregoing reasons, and the reasons set forth in the Opening Brief, the

Petition against the TR Entities should be dismissed and her cross-motion denied.

## II.    DALIA'S FAILURE TO SERVE THE TR ENTITIES IS NOT CURED BY ANY LIMITED APPEARANCE IN THIS ACTION

In the Opening Brief, the TR Entities explained that Dalia's attempted service

upon them on January 5, 2018 – some 570 days after she purportedly filed the Petition – was

indisputably ineffective and lacked diligence. (*See* TR Br. at 9-11). In support of their

argument, the TR Entities submitted the Affirmation of Mark S. Hirsch in Support of Motion to

Dismiss (the "Hirsch Affirmation"), which explained, among other things, that none of the TR

Entities maintain an office in New York State. (*Id.*)

In response, Dalia does not attempt to respond to the TR Entities' arguments or

dispute the contents of the Hirsch Affirmation. Instead, Dalia argues simply that the TR Entities

"appeared in this action on the return date of the citation."[3] (Opp'n Br. at 14). Adopting Dalia's

argument, however, would render CPLR 320(b) obsolete. CPLR 320(b), which provides that

where, as here, a challenge to personal jurisdiction has been raised in a motion to dismiss or an

---

[3]    Dalia attempts to make weight by suggesting that Mr. Hirsch identifies his business address in the signature block of emails as the address of CWM's Offices. (*See* Opp'n Br. at 14 n.1). But, while Mr. Hirsch identified that address as his business address in the Hirsch Affirmation. (*See* Hirsch Aff. ¶ 2). Mr. Hirsch went on to explain that, in addition to his role at CWM, he is Executive Vice President and General Counsel of each of the TR Entities, none of which maintain an office in the state of New York. (*Id.* ¶ 3). Moreover, even assuming the TR Entities did have offices at Mr. Hirsch's listed address (and they do not), service was not proper on (i) the four LLCs under CPLR 311-a because there was no personal service on a member, manager, or authorized person, or (ii) Glenclova under CPLR 311 because attempted service was made only on an office administrative assistant (who is not an employee of or in any manner authorized to accept service for CWM let alone Glenclova – an entity to which she has no relation). (*See* TR. Br. at 10-11). The speciousness of this argument is further revealed in that in the complaint Dalia filed over six years ago on October 4, 2011, to commence the Delaware Action, she alleged that Glenclova was a Cayman Islands company, that TR Equity I and II were Delaware limited liability companies, and that TR Investors was a New Jersey limited liability company.

answer, an appearance in the action does not confer personal jurisdiction. *See Matter of Katz*, 81

A.D.2d 145, 148-49, 439 N.Y.S.2d 941, 943 (2d Dep't 1981) (applying 320(b) in Surrogate's

proceeding and holding that inclusion of jurisdictional objection meant that court did not acquire

jurisdiction over respondent). That is precisely what the TR Entities did. Had the TR Entities

not appeared to present their motion to dismiss, Dalia undoubtedly would have claimed the TR

Entities defaulted (despite Dalia's ineffective service of process upon them). The Court should

not permit Dalia's game of "heads I win, tails you lose." Moreover, Dalia should be admonished

for now even raising this argument as the TR Entities expressly informed her of the applicability

of CPLR 320(b) on the very first page of their Opening Brief. (*See* TR Br. at 1 n.2).

Unfortunately, this is typical of the spurious arguments that are often advanced in the Genger-

related litigations.

      The Court should also reject Dalia's request to extend the time for her to serve the

citation. (*See* Opp'n Br. at 14). Dalia cites to CPLR 306-b to support her request, but 306-b

requires a showing of "good cause" or an "interest of justice" to obtain an extension. Dalia has

not (and cannot) show either. As noted above, Dalia has been an active participant in this

litigation at least since purporting to file the Petition. She has made at least eight filings in this

Court since June 2016 (*see* Dkt. entries filed 7-6-2017, 7-31-2017, 8-23-2017, 9-27-2017, 10-2-

2017, 10-17-2017, and 12-13-2017) and sought at least two extensions of Court-ordered

deadlines in her cross-petition proceeding. (*See* Dkt. entries filed 10-2-17 ("Stipulation -

Adjourn Motion To 10/17/17") and filed 10-17-17 ("Stipulation To Adjourn From 10-17-17 To

12-8-17")). Allowing Dalia to seek a retroactive extension in light of her understanding of how

to obtain extensions from and how to file papers in the Court would allow professional litigants –

such as Dalia – to trample on the Court's deadlines and rules with impunity, leaving them the

ability to seek a redo by simply claiming "good cause" without a proper showing. In fact, Dalia's dilatory conduct is exactly the type of belated behavior found insufficient to satisfy the good cause or interest of justice standard. *See, e.g., Estate of Jervis v. Teachers Ins. & Annuity Ass'n,* 279 A.D.2d 367, 368, 720 N.Y.S.2d 21, 22 (1st Dep't 2001) (holding that plaintiff's failure to serve process by the deadline and her "unacceptably protracted delay measured from the expiration of the 120-day period" to even attempt service, did not establish either good cause or interest of justice to extend the time for service). Tellingly, Dalia offers no evidence of having appeared at the Surrogate's Court before the 120-day statutory period had run out to seek the citation or to seek an extension of time to serve the citation, as any diligent attorney would have done.

Notwithstanding Dalia's lack of diligence, it is clear that the interest of justice will not be maintained by granting an extension. As noted in the TR Entities' Opening Brief, the TR Entities have made every effort to extract themselves from the "bitter and seemingly endless battle" that is the "Genger family's litigation saga." Delaware, New York, and Federal courts have all agreed that "the Genger family's internecine feud . . . is not the [TR Entities'] problem." (*See* TR Br. at 2-4). This is the Court's opportunity to be added to the list of courts who have agreed with that proposition since 2010. The Court should deny Dalia's motion to extend time to serve the citations.

## III. DISMISSAL OF THE PETITION AS AGAINST THE TR ENTITIES IS ALSO WARRANTED BECAUSE DALIA'S CAUSES OF ACTION ARE INSUFFICIENTLY PLEADED AND WITHOUT MERIT

A.    Orly Does Not Owe Any Fiduciary Duties to the Trust

As explained in the TR Entities' Opening Brief, Orly, both as an individual and as a beneficiary, did not owe any fiduciary duties to the Trust. Dalia's opposition brief does not squarely address this factual and legal argument but instead cites to cases applying N.Y. Bus.

7

Corp. Law 626 for the unremarkable position that a stockholder suing in a derivative capacity

must account for settlement proceeds he has *received.* (*See* Opp'n Br. at 21-24).

Putting aside the irrelevance of cases construing a specific stockholder statue that

has no applicability here, the bigger problem for Dalia is that there is no allegation in the Petition

that Orly, in any capacity, actually received any of the Settlement Proceeds. As the Petition

admits, Orly has denied receiving any of the Settlement Proceeds (*see* Boyle Aff., Ex. A, ¶ 23),

and the Petition does not contain any factual allegation that Orly actually received any of the

Settlement Proceeds.[4] Moreover, there is no language in the Settlement Agreement addressing

how the Settlement Proceeds are to be apportioned. Because Dalia's fiduciary duty theory

(insofar as it is asserted against the TR Entities) rises and falls on Orly's receipt of the Settlement

Proceeds (which in Dalia's mind should flow to the Trust), the Petition's inability to sufficiently

allege that Orly actually received any proceeds is fatal to Dalia's claims against the TR Entities.

B.    The Petition Fails to Sufficiently Allege Knowing Participation

Dalia cannot sustain her claim for aiding and abetting a breach of fiduciary duty,

because she has not pled, with the particularity required under CPLR 3016(b), that the TR

Entities knew of Orly's breach of duty and knowingly induced or participated in that alleged

breach.[5] (*See* TR Br. at 13-17).

Dalia ignores that the TR Entities are litigation adversaries to Orly and the AG

Group and that they are indisputably strangers to the manner (if any) in which the AG Group

---

[4]    Instead, the Petition speculates, upon information and belief, that the Brosers may have been creditors of Orly
and then alleges in a conclusory fashion that Orly's purported share of the Settlement Proceeds may have gone
to them. (*See* Boyle Aff., A at ¶¶ 18, 43). It's just conjecture upon conjecture.

[5]    A person only "knowingly" participates in a breach of fiduciary duty when he has both knowledge of the breach
and when he also provides "substantial assistance" to the breaching party. *See Kaufman v. Cohen,* 307 A.D.2d
113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003).

8

may have apportioned the Settlement Proceeds. Because Dalia has not alleged (and cannot

allege) with any particularity that the TR Entities know or should have known how the

Settlement Proceeds were divided up among their adversaries, all claims based on any alleged

breach of fiduciary duty and or breach of the Trust – which, as a threshold pleading matter,

requires non-conclusory allegations that go beyond mere conjecture or speculation that the TR

Entities **actually knew** of such a breach – these claims should be dismissed. Indeed, although

Dalia admits that she has no way of knowing how the Settlement Proceeds were apportioned

because that knowledge is "peculiarly within the knowledge" of the recipients of the Settlement

Proceeds, she offers no legally sufficient allegation as to how the TR Entities – who share an

equally adversarial relationship with Orly and the AG Group as does Dalia – knew how they

were to be apportioned.

   Rather than point to any allegation in the Petition that would satisfy the pleading

requirements, Dalia's opposition instead focuses on her mistaken view that she can sufficiently

allege her claims by drawing unreasonable inferences from her speculative and incomplete

allegations. She further argues (and again mistakenly) that she has satisfied the CPLR 3016(b)

pleading requirement because her baseless speculations have "notif[ied]" or "inform[ed]" the TR

Entities of her claims. Even the main case Dalia cites expressly rejects this argument. *See*

*Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486, 492 n.2 (2008) ("We undoubtedly

agree . . . that section 3016(b) 'must require more than the "notice pleading" applicable in other

cases") (citations omitted).

   And Dalia ignores the Court of Appeals opinion in *Eurycleia Partners, LP v.*

*Seward & Kissel, LLP*, 12 N.Y.3d 553, 883 N.Y.S.2d 147 (2009), which explored the *Pludeman*

decision and held that allegations similar to Dalia's are legally insufficient under 3106(b). In

*Eurycleia*, the Court of Appeals rejected plaintiffs' allegation that defendant was liable under an aiding and abetting theory because it had a role in drafting the allegedly fraudulent offering documents. *See id.* at 560-61, 883 N.Y.S. at 151. The court affirmed dismissal, noting that the complaint lacked any "firm factual pleadings" that defendant actually knew of the alleged wrongful conduct and merely "conclusorily allege[d]" that defendant had become aware of the alleged breach. *See id.* at 559-60, 883 N.Y.S. at 150.

Here, as Dalia admits in her Opposition Brief, the extent of Dalia's knowing participation allegation against the TR Entities is that they "drafted and entered into" the Settlement Agreement with the AG Group. (Boyle Aff., Ex. A at ¶ 35). As noted above, such an allegation fails to provide the firm factual pleading necessary to establish the TR Entities' knowing involvement in any wrongful conduct. *See, e.g., Eurycleia*, 12 N.Y.3d at 559-60, 883 N.Y.S. at 150-51 (affirming dismissal where it was alleged defendant aided and abetting by drafting documents); *see also In re Bear Stearns Litig.*, 23 Misc. 2d 447, 478, 870 N.Y.S.2d 709, 739 (Sup. Ct. N.Y. County 2008) (dismissing aiding and abetting claims where underlying agreement was an arms-length transaction between the parties). Quite to the contrary, the TR Entities were left entirely in the dark by the AG Group as to how the Settlement Proceeds were to be allocated among them. The TR Entities were instructed (as per the Settlement Agreement) to pay the proceeds to the AG Group's counsel and the only matter of interest to the TR Entities was that the action be dismissed with prejudice and that they receive a full release so that finally they could be extricated from the collateral damage being inflicted on them from "the Genger family's internecine feud."

Dalia also fails to respond to the TR Entities' argument that because the Supreme Court had already held that Orly had the right to assert (and the collateral right to abandon, settle,

10

or pursue to judgment) the very claims that were settled – a fact the Petition admits – this judicial

imprimatur, as a matter of law, negates Dalia's conclusory allegation that the TR Entities acted

improperly or tortuously by drafting and entering into the Settlement Agreement. Dalia's failure

to even address this argument amounts to a waiver. *See Alliance Network, LLC v. Sidley Austin*

*LLP*, 43 Misc. 3d 848, 864 n.4, 987 N.Y.S.2d 794, 806 n.4 (Sup. Ct. N.Y. County 2014) (noting

party's failure to oppose arguments in its briefing on motion to dismiss results in waiver of the

issue).[6]

      Because of these pleading failures, Dalia's cause of action should be dismissed.

*See, e.g., Kaufman,* 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003) (affirming

dismissal of plaintiff's claim for aiding and abetting breach of fiduciary duty dismissed in

absence of evidence that defendant acted with actual knowledge).

    C.      The Petition Fails to Sufficiently Allege the TR Entities
            Knowingly and Improperly Induced a Breach of Contract

      Dalia's tortious interference claim should be dismissed because the Petition fails

to sufficiently allege that the TR Entities intentionally and improperly procured Orly's alleged

breach of the Trust. (*See* TR Br. at 17-18). Dalia wholly ignores these arguments and has

therefore waived any opposition as to these arguments.

      Instead, Dalia only addresses the justification argument asserted by the TR

Entities. (*See* Opp'n Br. at 26). Insofar as justification is concerned, the TR Entities' argument is

that they had a lawful purpose in entering into the Settlement Agreement with Orly – an

---

[6]  Similarly, Dalia does not address the TR Entities' argument that if Orly was acting as a "de facto trustee" of the
Trust, then as a matter of law and under the express terms of the Trust, no liability can attach to the TR Entities
because they had no liability regarding how the Settlement Proceeds were to be applied. (*See* TR Br. at 14-15
& n.9). Dalia's failure to respond to or oppose this argument amounts to concession. *See Alliance,* 43 Misc.3d
at 864 n.4, 987 N.Y.S.2d at 806 n.4; *TSR Group, LLC v. Levitin,* 2016 N.Y. Slip Op. 31322(U), at *10 (Sup. Ct.
N.Y. County 2016) (dismissing claim on a motion to dismiss because plaintiff "fail[ed] to respond to or even
address defendants' arguments in its opposition papers").

indisputable fact evidenced by the orders of the Supreme Court (and the Petition's admission)
that Orly had been judicially approved to bring the claims in the first instance.[7]

Dalia's sole argument in opposition is that she is not required to "plead" an
absence of justification. However, as even the sole case she cites notes,[8] because the TR Entities
have now raised justification Dalia must either allege or submit evidence to negate any
justification to fight off a pre-answer motion to dismiss. *See Torrenzano Group, LLC v.
Burnham*, 26 A.D.3d 242, 242-43, 810 N.Y.S.2d 42, 43 (1st Dep't 2006) (dismissing tortious
interference claim under CPLR 3211 where defendant raised issue of justification and plaintiff
failed "to adduce evidence in opposition sufficient to raise an issue of fact in that regard"). Dalia
has not and cannot do so. The record is indisputable, and the Petition admits, that the Supreme
Court approved Orly's standing to assert these claims. Thus, the TR Entities' settlement with
Orly in the very capacities she was legally entitled to assert, was justified and cannot be deemed
wrongful, and negates any inference that the TR Entities acted with the intent to procure any
breach of the Trust. Moreover, there was a clear economic justification for the TR Entities and
the AG Group to settle their disputes and to obtain the releases contained therein. Any purported
harm to the Trust (if any) was incidental to these legally justified and lawful purposes and
unbeknownst to the TR Entities.

---

[7]    Notably, Orly was not the only party who brought claims against and settled with the TR Entities. Arie Genger
joined Orly as a plaintiff in the New York Action and the Brosers were disputing claims brought against them
by the TR Entities.

[8]    *See Luxury Autos of Huntington, Inc. v. Volkswagen Grp. of Am., Inc.*, 49 Misc. 3d 1207, 2015 N.Y. Slip Op.
51502(U), at *6-7 & n.9, 26 N.Y.S.3d 725 (Sup. Ct. Nassau County 2015) (noting that dismissal is appropriate
at pleading stage if defendant demonstrates defense of justification).

D.    The Money Had and Received and Turnover
Causes of Action Should be Dismissed

Because Dalia offers no opposition to the TR Entities' argument that the turnover

claim should be dismissed, dismissal of that claim is warranted. *See TSR Group, LLC*, 2016

N.Y. Slip Op. 31322(U), at *10 (Sup. Ct. N.Y. County 2016). Dalia also effectively concedes

that, insofar as the Settlement Proceeds that already have been paid by the TR Entities, she has

no viable money had and received claim as against the TR Entities. (*See* Opp'n Br. at 27).

Dalia's only position is that because some of the Settlement Proceeds have not

been paid, she states a viable claim against the TR Entities. (*Id.*) But Dalia offers no authority

for this proposition, and as the authority cited by the TR Entities establishes, an essential element

of any money had and received claim is a ***defendant's*** "receipt" of money belonging to the

plaintiff. *See Fesseha v. TD Waterhouse Investor Servs., Inc.*, 193 Misc. 2d 253, 260, 747

N.Y.S.2d 676, 683 (Sup. Ct. N.Y. County 2002). Because there is no allegation in the Petition

(nor could there have been) that the TR Entities "received" any money belonging to the Trust,

this claim should be dismissed.[9]

Dalia is simply confused when she asserts that her allegation that some of the

Settlement Proceeds have not yet been paid either satisfies the pleading requirements for these

causes of action (or any of her other claims) or are recoverable under any of these claims. *First*,

all of these unpaid amounts are governed by promissory notes that (as the Petition concedes) are

not mature, and will only be paid upon the satisfaction of certain conditions, not all of which

have yet occurred, and only after the assessment of certain substantial set-offs for costs and

expenses incurred by the TR Entities in defending continuing litigation, including the present

---

[9]    In fact, the Petition actually admits that none of the TR Entities received or have in their possession any of the
Settlement Proceeds. (*See* Boyle Aff., Ex. A at ¶¶ 72-73). This admission forecloses these claims.

proceeding. (*See* Boyle Ex. A at ¶ 22). *Second*, insofar as these amounts have not yet been paid, Orly cannot factually be in breach of any duty to remit to the Trust money that she has not yet received (all or a portion of which she may never receive). Because Orly has no such duty, the TR Entities (i) cannot be said to have actual knowledge of a breach that has not yet occurred, and (ii) cannot have knowingly or improperly induced Orly to breach a duty she does not yet have. Thus, insofar as any cause of action by Dalia seeks recovery for or relies on the portion of the Settlement Proceeds that have not yet been paid, dismissal of those causes of action is warranted.

## IV.    RES JUDICATA BARS DALIA'S CLAIMS

The purpose of the res judicata bar is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Ins. Co. of State of Pa. v. HSBC Bank USA*, 10 N.Y.3d 32, 38, 852 N.Y.S.2d 812, 815 (2008) (citations omitted). Because, as demonstrated in the TR Entities' Opening Brief (TR Br. at 19-22), the claims Dalia seeks to assert in the Petition were either dismissed by the Supreme Court or dismissed pursuant to stipulation in prior proceedings, or, even if not asserted, could have been asserted in those prior proceedings, res judicata warrants dismissal of the claims against the TR Entities.

In responding to the TR Entities' res judicata arguments, Dalia neither responds directly to any of the legal authorities cited in support of dismissal nor the voluminous record evidence presented by the TR Entities that proves that Dalia's current claims are subject to a res judicata bar. What Dalia does instead is she conveniently ignores her role in the Delaware Action when, as trustee of the Trust, on August 30, 2013 – and after she was made aware of the Settlement Agreement – she stipulated to a settlement with prejudice in the Delaware Action (the "Delaware Dismissal"), which, as asserted in the TR Entities' Opening Brief (TR Br. at 6-7, 20-

21), bars the claims she brings in the Petition.[10]   As the authorities cited by the TR Entities

establish (and which Dalia does not contest), Dalia's stipulated dismissal with prejudice in the

Delaware Action bars re-litigation of not only the claims directly asserted in that action but of all

other claims arising out of the same transaction that could have been asserted in that proceeding,

even if they are based on different theories or seeking different remedies.  *See, e.g., O'Brien v.

City of Syracuse*, 54 N.Y.2d 353, 357-58, 445 N.Y.S.2d 687, 689 (1981); *Fifty CPW Tenants

Corp. v. Epstein*, 16 A.D.3d 292, 293, 792 N.Y.S.2d 58, 59 (1st Dep't 2005).

     As the TR Entities pointed out in their Opening Brief (TR Br. at 20-21), the

fundamental gravamen of the Petition concerns the issue of ownership of the Trans-Resources

shares and any concomitant right to monetize that ownership interest, whatever it may have been.

In her Opposition Brief, Dalia acknowledges the relevancy of the determination of beneficial

ownership on her claims when she states:  "It is the very fact that the settlement 'finally and fully

resolved' the issues of ownership of the shares with Orly . . . that means that this Turnover

Proceeding seeking the Settlement Proceeds must stand."  (Opp'n Br. at 17).

     It is that acknowledgment that cements dismissal here.  Dalia equates the right to

the Settlement Proceeds to the settlement of the share ownership issue.  If, as Dalia concedes, the

settlement of the ownership of the shares issue, "is that very fact that entitle[s] the Orly Trust to

the turnover of the Settlement Proceeds" (*see* Opp'n Br. at 17), the Delaware Dismissal, in which

---

[10]   In her Opposition Brief, Dalia claims that it was Orly who "mooted" the Delaware Action because she had
already settled the New York Action and acknowledged that the TR Entities were the "record and beneficial"
owners of the Trans-Resources shares underlying all these claims. (*See* Opp'n Br. at 5-6, 20). This is an
express concession that Orly had authority to act on behalf of the Trust. Any suggestion to the contrary would
mean that Dalia failed to discharge her fiduciary duty to the Trust by acceding to Orly's wishes to dismiss the
case. Indeed, Orly was not even a party to the Delaware Action. Thus, Dalia's position would have this Court
ignore the fact that it was Dalia, as trustee, and subject to her fiduciary responsibilities to the Trust, that agreed
to the Delaware Dismissal. Absent compliance with her fiduciary obligations to the Trust, Dalia could not have
agreed to the Delaware Dismissal unless she too agreed that her claims against the TR Entities, that the Trust
was entitled to and/or the beneficial owner of the Trans-Resources shares, including any ancillary claims related
to the ownership of the shares, were without merit.

Dalia, as trustee, unequivocally settled that ownership issue with the TR Entities, stipulated that

the TR Entities are the owners "beneficially, of record and otherwise" of all the Trans-Resources

shares, and agreed to dismiss with prejudice the Trust's claims that it was an owner of the shares

(*see* Boyle Aff., Ex. F at ¶¶ 2, 4), her actions as trustee stipulating to the Delaware Dismissal bar

the claims here.  (*See* TR Br. at 20-21).

Further, Dalia does not dispute that when she sought substitution into the New

York Action she did so to assert the very claim she asserts in the Petition:  that the Settlement

Proceeds belong to the Trust.  (*See* TR Br. at 21-22; Boyle Aff., Ex. I, at 1).  When the First

Department rejected Dalia's challenge to the final dismissal of that action, *Genger v. Genger*, 144

A.D.3d 581, 581, 41 N.Y.S.3d 414, 415 (1st Dep't 2016), it expressly rejected Dalia's attempts to

bring those claims, yet another basis for res judicata preclusion here.

## V.     EVEN IF NOT DISMISSED FOR THE ABOVE REASONS THE COURT SHOULD STAY OR DISMISS THIS PROCEEDING

*First*, should this proceeding not be dismissed, it should be stayed pending

resolution of the threshold issue of whether Dalia is a proper trustee of the Trust.  *See* CPLR

2201; *see also In re Orly Genger*, No. 2008-0017/B, Decision at 12 (Boyle Aff., Ex. C) (noting

there are "significant issues" as to whether Dalia is a proper trustee).  And, *second*, Dalia's

already pending cross-petition, in which she asserts identical claims of breach of fiduciary duty

and turnover against Orly concerning the Settlement Proceeds provides yet another reason for the

Court to exercise its discretion to dismiss or stay any proceedings on this Petition.

And, finally, the Court should reject Dalia's cross-motion to consolidate this

proceeding with any other Genger proceedings.  As set forth in the TR Entities' Opening Brief

(*see* TR Br. at 1-4), the time for any court to use its discretion to allow the Genger family to

wage their personal war in the New York courts must come to an end.  Dalia's claim that the

goals of judicial economy, unnecessary duplication, the avoidance of unnecessary cost, and the prevention of incongruous decisions will be served by consolidation is laughable: Dalia and the other members of the Genger family have spent a generation (and a fortune) in courtroom combat, overburdening the state and federal court here and in Delaware, presenting bewildering arguments, and unfortunately targeting unrelated third parties, such as the TR Entities, in their litigation blitz. The personal animus at the heart of these cases and the hostility under which they are litigated belies any claim of economy or efficiency.

Instead of consolidation, the appropriate discretionary result here is for the Court to dismiss this Petition under CPLR 3211(a)(4) in favor of the pending cross-petition proceeding. Insofar as "both suits arise out of the same subject matter or series of alleged wrongs," a fact on which Dalia effectively agrees (*see* Opp'n Br. at 16), dismissal of this proceeding is appropriate. *Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96, 970 N.Y.S.2d 526, 533 (1st Dep't 2013) (citation omitted).

## CONCLUSION

For the foregoing reasons and the reasons presented in the TR Entities' Opening Brief, the TR Entities respectfully request that this Court dismiss the Petition and all claims therein as against the TR Entities, and grant the TR Entities such other relief as may be just and proper.

Dated:  New York, New York
February 26, 2018

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York 10036
(212) 735-3000
john.boyle@skadden.com

17

*Attorneys for Glenclova Investment Co.,
TR Investors, LLC, New TR Equity I, LLC,
New TR Equity II, LLC, and Trans-Resources
LLC.*

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK  )

Julie M. Thaxton, being duly sworn, deposes and says:

1. I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher &  Flom LLP, Four Times Square, New York, NY 10036.

2. On February 26, 2018 I served a true copy of the

- ***Reply Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Petition for Turnover of the Trust Property and Other Relief Filed on June 14, 2016, by Dalia Genger as Trusteee of the Orly Genger 1993 Trust and in Opposition to Petitioner's Cross-Motion***

by Federal Express, overnight delivery upon:

> Judith Lisa Bachman, Esq.
> 254 S. Main Street, Suite 306
> New City, New York 10956
>
> Kelley Drye & Warren LLP
> John Dellaportas
> 101 Park Avenue
> New York, NY 10178
>
> Kasowitz Benson Torres LLP
> Michael Paul Bowen
> 1633 Broadway
> New York, NY 10019
>
> Steven Riker, Esq.
> One Grand Central Place, 46th Floor
> 60 East 42nd Street
> New York, NY 10165
>
> Leon Friedman
> 685 Third Avenue, 25th Floor
> New York, NY 10017
>
> Mark Freyberg
> The Freyberg Law Group
> 950 Third Avenue
> Suite 3200
> New York, NY 10022

Arnold Broser
5371 Fisher Island Drive
Miami Beach, FL 33109-0316

Arie Genger
17001 Collins Avenue
North Miami Beach, FL 33160-3645

Julie M. Thaxton

Sworn to before me this
26th day of February 2018.

Matthew Koenig
Notary Public, State of New York
Reg. No. 01KO6211943
Qualified in New York County
Commission Expires Sept. 23, 2021