not encouraged or solicited by any member of the AG Group and no member thereof cooperates

in asserting, instituting or prosecuting such claim. Notwithstanding anything herein to the

contrary, the undertaking of William Wachtel hereunder shall not exceed under any circumstance

an amount greater than $5,000,000.

(b)   The Trump Group may request payment or reimbursement of the

Indemnification Amounts at any time by providing a written statement or copy of an underlying

invoice or expense documentation to any member of the AG Group at the addresses set forth in

Paragraph 16 below, and the AG Group shall pay such indemnified expenses in full and in cash

within five (5) business days of the date such request is made.  The supporting documentation

submitted with any payment or reimbursement request hereunder may be redacted as necessary

to preserve attorney-client privilege, attorney work product, or confidential information the

Trump Group may, in its reasonable determination, need to protect.  The Trump Group will

provide the AG Group with reasonable notice prior to making any motion or taking any appeal

with respect to, or in, any past, present or future action or claim for which the Trump Group is

seeking indemnification, and such notice will be accompanied by a non-binding estimate of the

legal fees and costs associated with such motion or appeal. The Trump Group authorizes the AG

Group and their respective counsel to discuss directly with the Trump Group's appointed counsel

the amount and scope of any invoice for which the Trump Group is seeking indemnification.

The AG Group in its sole discretion may settle any indemnified claim so long as there is no

monetary contribution to be paid by the Trump Group, and the Trump Group is released, in form

and substance reasonably satisfactory to it, from any liability relating to any such indemnified

9

claim. The Trump Group shall not enter into any settlement of any indemnified claim, or discussions with respect thereto, without the express written consent of the AG Group.

(c) With respect to each Indemnification Amount, until such time as it has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such Indemnification Amount and, the Trump Group may at its option pursue all legal remedies available to it and/or withhold an amount equal to such unreimbursed Indemnification Amount from any payments by Trans-Resources to be made pursuant to the Notes.

6. **Releases.**

(a) **The AG Group Release.** Effective on the Effective Date, each of the members of the AG Group, for itself, himself or herself, and in all capacities, and on behalf of its (and its respective affiliates' and direct and indirect subsidiaries'), his or her respective agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns, and any other persons or entities acting in concert with any of them including, without limitation, any member of the Sagi Group which he, she or it shall at any time directly or indirectly control or be deemed authorized to act on behalf of (individually, an "AG Group Releasing Party" and collectively, the "AG Group Releasing Parties"): (i) fully, finally, irrevocably and unconditionally waives, releases and discharges each of the members of the Trump Group and its (and its respective past and present affiliates' and direct and indirect subsidiaries'), his or her respective past and present agents

10

(including Skadden, Arps, Slate, Meagher & Flom LLP in any capacity, including as Escrow Agent for the Skadden Escrow or for any escrow in which it held, holds, or may hold, any dividends or distributions from Trans-Resources), representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns (collectively, the "Trump Group Released Parties"), from any and all claims, counterclaims, demands, proceedings, actions, causes of action, orders, obligations, damages, debts, costs, expenses and other liabilities whatsoever and however arising, whether known or unknown, past, present or future, suspected or unsuspected, contingent or actual, both at law and in equity, including without limitation, claims for fraud or fraud in the inducement (collectively, "Claims"), which such AG Group Releasing Party now has, has ever had or may hereafter claim to have against any Trump Group Released Party or its, his or her assets, liabilities or operations from the beginning of the world through the Effective Date (individually, an "AG Group Released Claim" and collectively, the "AG Group Released Claims"); and (ii) agrees not to assert, institute or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting, instituting or prosecuting, any proceeding against any of the Trump Group Released Parties in any jurisdiction (domestic or foreign, including, without limitation, the State of Israel) with respect to any AG Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares (including any dividends or distributions relating thereto or any escrow in which such dividends or distributions may currently be or in the past have been held), the Litigation, the Orly Trust Action, control of Trans-Resources or any of its direct or

11

indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or arising out of this Agreement including, without limitation, the negotiation and execution of this Agreement or the AG Group Releases provided hereunder; provided, however, that this AG Group Release shall not apply to any Claims (x) seeking equitable relief to enforce the terms of this Agreement or claims seeking payment of the Notes or any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the AG Group Releasing Parties and TPR, and/or any other member of the Sagi Group.

If an AG Releasing Party brings an AG Group Released Claim or other Claim in violation of the immediately preceding paragraph, the AG Group, jointly and severally, agrees to indemnify the Trump Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the Trump Group, incurred in working on, preparing for or defending such claim ("AG Group Release Amounts"). With respect to each AG Group Release Amount, until such time as such AG Group Release Amount has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such AG Group Release Amount, and the Trump Group may at its option pursue all legal remedies available to it and/or withhold an amount equal to such unreimbursed AG Group Release Amount from any payments to be made by Trans-Resources pursuant to the Notes. For purposes of the removal of all doubt, it is the parties' intention that no claims shall be brought or pursued by any member of the AG Group against any member of the Trump Group for any

12

reason whatsoever (other than claims permitted under clause (x), (y) and (z) of the immediately preceding paragraph).

      (b)    **The Trump Group Release.** Effective on the Effective Date, each of the members of the Trump Group, for itself or himself, and in all capacities, and on behalf of its (and its respective affiliates' and direct and indirect subsidiaries'), or his respective agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns, and any other persons or entities acting in concert with any of them (individually, a "Trump Group Releasing Party" and collectively, the "Trump Group Releasing Parties"): (i) fully, finally, irrevocably and unconditionally waives, releases and discharges each of the members of the AG Group and its (and its respective past and present affiliates' and direct and indirect subsidiaries'), his or her respective past and present agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns (collectively, the "AG Group Released Parties"), from any and all claims, counterclaims, demands, proceedings, actions, causes of action, orders, obligations, damages, debts, costs, expenses and other liabilities whatsoever and however arising, whether known or unknown, past, present or future, suspected or unsuspected, contingent or actual, both at law and in equity including, without limitation, claims for fraud or fraud in inducement, ("Claims"), which such Trump Group Releasing Party now has, has ever had or may hereafter claim to have against any AG Group Released Party or its, his or her assets, liabilities or operations from the beginning of the world through the Effective Date (individually,

13

a "Trump Group Released Claim" and collectively, the "Trump Group Released Claims"); and (ii) agrees not to assert, institute or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting, instituting or prosecuting, any proceeding against any member of the AG Group Released Parties with respect to any Trump Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, control of Trans-Resources or any of its direct or indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or the negotiation and execution of this Agreement or the Trump Group Releases provided hereunder; provided, however, that this Trump Group Release shall not apply to any Claims (x) seeking equitable relief to enforce the terms of this Agreement or claims seeking payment of any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the Trump Group Releasing Parties and Avi Pelossof, William Dowd (unless and until the exchange of mutual general releases between the Trump Group and William Dowd referred to above) and/or TPR.

If a Trump Group Releasing Party brings a Trump Group Released Claim or other Claim in violation of the immediately preceding paragraph, the Trump Group, jointly and severally, agrees to indemnify the AG Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the AG Group, incurred in working on, preparing for or defending such claim ("Trump Group Release Amounts"). With respect to each Trump Group Release Amount, until such time as such Trump Group Release Amount has

14

been paid over to the AG Group, the members of the Trump Group shall remain jointly and

severally liable for such Trump Group Release Amount, and the AG Group may at its option

pursue all legal remedies available to it. For purposes of the removal of all doubt, it is the parties

intention that no claims shall be brought or pursued by any member of the Trump Group against

any member of the AG Group for any reason whatsoever (other than claims permitted under

clause (x), (y) and (z) of the immediately preceding paragraph).

      7.    **Discovery Obligations**.     Effective on the Effective Date (defined

below), to the extent that a member of the AG Group or the Orly Genger 1993 Trust seeks

discovery or testimony from any member of the Trump Group, or if any member of the Trump

Group is subpoenaed by any party to an action in which any member of the AG Group or the

Orly Genger 1993 Trust is a party, each of the members of the AG Group, jointly and severally,

agrees that to the extent indemnities of the Trump Group provided for elsewhere in this

Agreement do not apply, they shall indemnify the Trump Group for any and all costs and fees,

including reasonable legal fees and disbursements of counsel to be chosen by the Trump Group

(it being understood that for the purposes of this Discovery Obligation indemnity only, the

indemnification for legal fees shall be limited to $750 per hour of legal services), incurred in

working on, preparing for or defending such claim, it being agreed that the Trump Group will

cooperate with the AG Group in all reasonable respects to cause the amount of such costs and

fees, including its attorneys' fees and disbursements to be minimized ("Discovery Costs"). With

respect to each Discovery Cost, until such time as such Discovery Cost has been paid over to the

Trump Group, the members of the AG Group shall remain jointly and severally liable for such

Discovery Cost, and the Trump Group may at its option pursue all legal remedies available to it

15

and/or withhold an amount equal to such unreimbursed Discovery Cost from any payments to be made by Trans-Resources pursuant to the Notes.

### 8.    Cooperation.

(a)    Each member of the AG Group shall take all actions necessary or desirable, as promptly as practicable and as may be requested by the Trump Group from time to time including, without limitation, testifying in the Orly Trust Action, to (i) effectuate the release of the AG Group Released Claims and to prevent or preclude any other person or entity from asserting, instituting or prosecuting, or encouraging, soliciting or cooperating with any other person or entity in asserting, instituting or prosecuting, any proceeding or claims against any of the Trump Group Released Parties with respect to any AG Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, the control of Trans-Resources or any of its direct or indirect subsidiaries, records and documents (including but not limited to electronic files) in the possession, custody or control of Trans-Resources or any of its direct or indirect subsidiaries or the business or operations of Trans-Resources or any of its direct or indirect subsidiaries brought by any party without regard to whether such party is a signatory hereto and (ii) cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties, including, without limitation, any claims pending in the Orly Trust Action.

(b)    As a condition to any settlement that any member of the AG Group shall enter into with any member of the Sagi Group, the AG Group parties to such settlement shall cause each Sagi Group party to such settlement to (i) dismiss with prejudice all pending claims, cross-claims and counter claims against any of the Trump Group Released Parties (as defined below)

16

and to provide the Sagi Group Release, and (ii) if the Orly Genger 1993 Trust is a party to such settlement, cause it to agree in writing to become an AG Group member for purposes of providing the indemnity contained in Paragraph 5. Likewise, as a condition to any agreement by the AG Group to a replacement trustee for the Orly Genger 1993 Trust, the AG Group shall use its best efforts to cause such trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5.

(c)     Each member of the AG Group covenants that for so long as the indemnity contained in Paragraph 5 remains in effect, he, she or it shall not contribute or deposit any amounts, or permit to be contributed or deposited any amounts (including, without limitation, any payments made under Paragraphs 2 and 3), to or with the Orly Genger 1993 Trust or to any other trust or entity that any of them directly or indirectly controls or is or was established at their direction, or that is or was established or exists for any of their direct or indirect benefit, unless such trust or entity has agreed in writing to being a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5. The foregoing shall not restrict members of the AG Group from investing in or with such entities provided that that such investment may be liquidated, without restriction, by such member of the AG Group from time to time as may be necessary to comply with the terms of the indemnity contained in Paragraph 5.

(d)     The AG Group covenants that, subject to any confidentiality orders of any court or other restrictions imposed by law (i) with respect to any court filing made or received by it concerning the Orly Genger 1993 Trust, it shall contemporaneously provide a copy thereof to the Trump Group, and (ii) contemporaneously with its becoming aware of any changes or

17

contemplated material changes to the Orly Genger 1993 Trust including, without limitation, the resignation of its trustee and/or the appointment of a replacement trustee, it shall provide written notice thereof to the Trump Group.

9. **Confidentiality.** The Parties and their counsel shall not disclose the terms of this Agreement, except if, upon written advice of counsel, it is required to do so by law. Notwithstanding the foregoing, disclosure may be made by the Parties: (i) to their respective accountants, financial advisors or attorneys (collectively, "Advisors") as required to obtain tax or legal advice, it being agreed that each Party shall apprise its Advisors of the obligation to maintain such confidentiality and that each Party shall be accountable for any breach of this provision by its respective Advisors, and (ii) notwithstanding anything to the contrary in this Agreement, the Parties may disclose the terms of this Agreement if necessary in any action to enforce this Agreement or as may be required to respond to a valid subpoena, court order or other legal process. Each Party agrees that he, she or it will promptly give notice of any attempt to compel disclosure of the terms of this Agreement to each of the other Parties, at least five (5) days before compliance is required.

10.    **Third Party Beneficiaries.** This Agreement shall have no third party beneficiaries except for those persons and entities that are not Parties hereto but are covered by the releases set forth in Paragraph 6 above, who may enforce those releases.

11.    **Binding Effect**

This Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and (where applicable) their respective current and former agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and

18

affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns.

12.    **Representations and Warranties.**

(a)    Each Party represents that it, he or she is authorized to enter into this Agreement and to grant the rights granted by it, him or her in this Agreement. Each Party further represents that, to the extent any non-party consents are required for the performance of any of its, his or her obligations under this Agreement (including, without limitation, with any entity controlled by any Party, including any of its partners or equity holders), it, he or she has obtained such consents.

(b)    Each Party has the benefit of the advice of counsel chosen and employed by it, him or her concerning this Agreement.

(c)    Each Party is the sole owner and holder of the Claims it is releasing under this Agreement, and represents that none of the Claims released herein have been assigned, pledged, encumbered, or otherwise transferred in whole or in part, to any other person or entity.

(d)    Each member of the AG Group represents that he, she or it is knowledgeable, sophisticated and experienced in business, financial and other matters relevant to his, her or its entry into this Agreement and the transactions contemplated hereby, and has engaged advisors, experienced in the matters contemplated by this Agreement. Each member of the AG Group has undertaken such investigation and has been provided with and has evaluated such documents and information as he, she or it has deemed necessary to enable him, her or it to make an informed decision with respect to the execution, delivery and performance of this Agreement and the transactions contemplated hereby. Each member of the AG Group is

19

consummating the transactions contemplated hereby without reliance upon any express or

implied representations or warranties of any nature, whether in writing, orally or otherwise, made

by or on behalf of or imputed to any of the Trump Group Released Parties, except as expressly

set forth in this Agreement, and no member of the AG Group shall make any Claim with respect

thereto. Each member of the AG Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

documents or information that may have been furnished to him, her or it, and that no member of

the AG Group shall have any Claim against any of the Trump Group Released Parties with

respect thereto, including for Claims relating to the accuracy or completeness of the information

that may have been furnished to him her or it. Each member of the AG Group acknowledges and

understands that each member of the Trump Group Released Parties expressly disclaims any and

all liability that may be based on any of the documents and information that may have been

furnished to any member of the AG Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the AG

Group acknowledges that none of the Trump Group Released Parties has made any

representation or warranty with respect to (i) any historical information, financial or otherwise,

including without limitation results of operations (or any component thereof), cash flows, or

financial condition (or any component thereof), of Trans-Resources and/or any of its subsidiaries,

(ii) any valuations or projections or estimates of future revenues, future results of operations (or

any component thereof), future cash flows or future financial condition (or any component

thereof) of Trans-Resources and/or any of its subsidiaries or the future business and operations of

Trans-Resources and/or any of its subsidiaries, (iii) any Claims any member of the AG Group

20

may have against any of the Trump Group Released Parties or (iv) any other information or

documents that may have been made available to any member of the AG Group or their

respective counsel, accountants or advisors with respect to any of the Trump Group Released

Parties any of their respective businesses, assets, liabilities or operations, except as expressly set

forth in this Agreement. In addition to the foregoing, each member of the AG Group

acknowledges that his, her or its entry into this Agreement and the transactions contemplated

hereby is based solely on his, her or its respective assessment and valuation of all Claims that he,

she or it may have against any of the Trump Group Released Parties and the likelihood of

success of such Claims in a court of competent jurisdiction. Each member of the AG Group

acknowledges that the consideration to be received by the AG Group pursuant to this Agreement

constitutes full and fair consideration for the release of all Claims contemplated hereunder.

(e)      Each member of the Trump Group represents that he, she or it is knowledgeable,

sophisticated and experienced in business, financial and other matters relevant to his, her or its

entry into this Agreement and the transactions contemplated hereby, and has engaged advisors,

experienced in the matters contemplated by this Agreement. Each member of the Trump Group

has undertaken such investigation and has been provided with and has evaluated such documents

and information as he, she or it has deemed necessary to enable him, her or it to make an

informed decision with respect to the execution, delivery and performance of this Agreement and

the transactions contemplated hereby. Each member of the Trump Group is consummating the

transactions contemplated hereby without reliance upon any express or implied representations

or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or

imputed to any of the AG Group Released Parties, except as expressly set forth in this

21

Agreement, and no member of the Trump Group shall make any Claim with respect

thereto. Each member of the Trump Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

information that may have been furnished to him, her or it, and that no member of the Trump

Group shall have any Claim against any of the AG Group Released Parties with respect thereto,

including for Claims relating to the accuracy or completeness of the information that may have

been furnished to him her or it. Each member of the Trump Group acknowledges and

understands that each member of the AG Group Released Parties expressly disclaims any and all

liability that may be based on any of the documents and information that may have been

furnished to any member of the Trump Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the Trump

Group acknowledges that none of the AG Group Released Parties has made any representation or

warranty with respect to (i) any historical information, financial or otherwise, including without

limitation results of operations (or any component thereof), cash flows, or financial condition (or

any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or

projections or estimates of future revenues, future results of operations (or any component

thereof), future cash flows or future financial condition (or any component thereof) of Trans-

Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources

and/or any of its subsidiaries, (iii) any claims any member of the Trump Group may have against

any of the AG Group Released Parties or (iv) any other information or documents that may have

been made available to any member of the Trump Group or their respective counsel, accountants

or advisors with respect to any of the AG Group Released Parties any of their respective

22

businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the Trump Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the AG Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the Trump Group acknowledges that the consideration to be received by the Trump Group pursuant to this Agreement constitutes full and fair consideration for the release of all claims contemplated hereunder.

13.     **Attorneys' Fees.** The Parties agree to be responsible for their own attorneys' fees and costs incurred in connection with this Agreement and negotiations related to and preparation of this Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

14.     **Governing Law.**

This Agreement, and all disputes arising under this Agreement or related thereto, shall be governed by, construed and interpreted in accordance with the laws of the State of Delaware, applicable to instruments made, delivered and performed entirely in such state, without regard to the choice of law provisions thereof.

15.     **Arbitration.** UNLESS THIS AGREEMENT SPECIFICALLY PROVIDES FOR ANOTHER TYPE OF DISPUTE RESOLUTION WITH RESPECT TO A PARTICULAR KIND OF DISPUTE, ANY AND ALL CONTROVERSIES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE EXCLUSIVELY SETTLED BY FINAL AND BINDING

23

ARBITRATION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THIS SECTION.

(a)    The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect (the "Rules"), except as set forth herein. Any member of the Trump Group on behalf of the Trump Group, on the one hand, and any member of the AG Group on behalf of the AG Group, on the other hand, may demand arbitration by giving the other written notice to such effect in accordance with the Rules.

(b)    The arbitration will be held before one neutral arbitrator. Within thirty (30) days after the other Party's receipt of the demand for arbitration, the Party seeking arbitration will invite the other Party to join it in approaching the following list of individuals about serving as arbitrator and will approach such individuals with such other Party (if its invitation is accepted) or without such other Party (if its invitation is rejected or not responded to within five (5) business days): The Honorable William B. Chandler III, David A. Jenkins, Esq., Stephen E. Jenkins, Esq., Robert J. Katzenstein, Esq., and Andre G. Bouchard, Esq. If only one such individual is available and willing, he shall serve as the arbitrator. If more than one such individual is available and willing, the Parties will mutually determine which of those so available and willing will serve as the arbitrator. If the Parties are unable to agree, the arbitrator will be selected by the AAA from the foregoing list in accordance with the listing, striking and ranking procedure in the Rules, with each Party being given a limited number of strikes, except for cause. If none of the foregoing individuals is available, the arbitrator will be selected by the AAA in accordance with the listing, striking and ranking procedure in the Rules, with each Party

24

being given a limited number of strikes, except for cause. Any arbitrator appointed by the AAA shall be a retired judge that presided over a state or federal court located in Delaware or a practicing attorney licensed in Delaware with no less than fifteen years of experience with large commercial cases. Any such arbitration proceedings shall be and remain confidential. The place of arbitration shall be in Manhattan, New York or elsewhere if otherwise agreed to.

(c)    Discovery will be limited to the request for and production of documents, directly related to the issues in dispute, limited depositions of limited duration, and interrogatories. Interrogatories will be allowed only as follows: a Party may request the other Party to identify by name, last known address and telephone number (i) all persons having knowledge of facts relevant to the dispute and a brief description of that person's knowledge, and (ii) any experts who may be called as an expert witness, the subject matter about which the expert is expected to testify, the mental impressions and opinions held by the expert and the facts known by the expert. All issues concerning discovery upon which the parties cannot agree will be submitted to the arbitrator for determination.

(d)    Each of the Parties agrees that it will use commercially reasonable efforts to join (and will allow the other party to join) any third party that the Parties have agreed is indispensable to the arbitration. If any such third party does not agree to be joined, the arbitration will proceed nonetheless.

(e)    The arbitrators are not empowered to award damages not permitted by the terms of this Agreement and if so permitted, then not in excess of compensatory damages, except with respect to indemnification obligations for punitive damages as provided hereunder, and

25

each Party irrevocably waives the right to recover punitive, exemplary or multiple damages with respect to any dispute other than with respect to indemnification obligations for such punitive damages as provided hereunder. The decision of, and award rendered by, the arbitrator will be final and binding on the Parties, will be in writing and will include the findings of fact and conclusions of law upon which it is based, if any.

(f)      The Parties specifically acknowledge that this Agreement evidences a transaction involving, affecting, affected by, and a part of, interstate commerce and that this agreement to arbitrate is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(g)      Except to the extent that any of the indemnification provisions contained herein shall be applicable (i) the Parties shall each be responsible for their own costs and expenses (including legal fees and disbursements) incurred in any arbitration, and (ii) the AG Group on the one hand and the Trump Group on the other shall each be responsible for 50% of the fees and disbursements of the arbitrator and of any costs and expenses payable to the AAA.

(h)      With respect to the enforcement, modification or vacating of any arbitration award (it being reconfirmed hereby that the arbitration award shall itself be final and binding on the Parties), the Parties submit to the exclusive jurisdiction of one or the other of (i) the United Stated District Court of the Southern District of New York sitting in the Borough of Manhattan in the City of New York and (ii) the Commercial Division of the New York State Supreme Court sitting in the Borough of Manhattan in the City of New York.

16.      **Notice.** If any Party is required to give notice to any other Party under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, one business day following its being sent to the recipient via Federal Express or another

26

716412-WILSR01A - MSW

nationally recognized over-night courier, or by e-mail with confirmation of receipt to the

following individuals or to such other address or person as such Parties may from time to time

specify by written notice given in the manner provided above:

### If to the Trump Group:

Mark S. Hirsch, Esq.

The Trump Group

41 Madison Avenue, Suite 4101

New York, NY 10010

Phone: (212) 838-1000

E-mail: mhirsch@trumpgroup.com

### With Copy to:

Thomas J. Allingham II, Esq.

Anthony W. Clark, Esq.

Douglas D. Herrmann, Esq.

Skadden, Arps, Slate, Meagher & Flom LLP

One Rodney Square

P.O. Box 636

Wilmington, DE 19899

Phone: (302) 651-3000

E-mail: thomas.allingham@skadden.com

27

E-mail:  anthony.clark@skadden.com

E-mail:  douglas.herrmann@skadden.com

**If to Arie Genger:**

Arie Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail:  wachtel@wmllp.com

**With Copy to:**

Stephen P. Lamb, Esq.

Paul Weiss

500 Delaware Avenue, Suite 200

Wilmington, DE 19889

**If to Orly Genger:**

Orly Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

28

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017


[]


**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail:  wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017

29

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017


[]


**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail:  wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017

29

17.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties concerning the subject matter hereof. Neither this Agreement nor any of its terms or provisions shall be binding on any Party until all the Parties hereto have signed. The Parties agree that all drafts of this Agreement are strictly confidential and shall supplement and complement any protection, which may attach to the exchange of confidential information in settlement discussions, whether by common law or statute including, but not limited to, Federal Rule of Evidence 408 and comparable state laws. Any and all prior discussions and agreements between the Parties concerning the subject matter of this Agreement are merged into this Agreement when signed. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by all Parties. No Party has made any warranty or representation to the other Parties that is not set forth expressly herein. In entering into this Agreement, no Party has relied on any statement or representation made by or on behalf of any other Party, by or on behalf of any affiliate of such other Party, or by counsel for such other Party that is not set forth expressly in this Agreement.

18.    **No Drafting Presumption.** This Agreement shall be interpreted or construed without any presumption that the provisions hereof should be strictly construed against the drafter, it being agreed that the Parties and their respective counsel and other agents have fully and equally participated in the preparation, negotiation, review and approval of all provisions of this Agreement.

19.    **No Admissions.** The Parties have executed this Agreement for the sole purpose of settling and disposing of all Claims between them, and it is expressly understood and agreed that no Party hereto admits any wrongdoing on its, his or her part by executing this Agreement.

30

20.     **Binding Effect.** It is the intention of the parties to extinguish all AG Group Released

Claims and all Trump Group Released Claims and, consistent with such intention, each of the

Parties hereby waives any and all rights, to the extent permitted by law, to assert that the Release

provided by it in Paragraph 6 hereunder is unenforceable as to any claim whatsoever and for any

reason including, without limitation, any and all rights under section 1542 of the California Civil

Code, if applicable, or any other applicable similar law or principle of common law, which may

have the effect of limiting the Releases herein. Section 1542 of the California Civil Code

provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

21.     **Headings.** The section headings contained in this Agreement are for reference purposes

only and shall not in any way effect or control the meaning or interpretation of this Agreement.

22.     **Execution in Counterparts and by PDF e-mail.** This Agreement may be executed in

multiple counterparts and by fax or PDF e-mail, each of which, when so executed and delivered,

shall be an original, but such counterparts shall together constitute one and the same instrument

and agreement.

23.     **Effective Date.** This Agreement shall be effective immediately upon execution and

delivery by all Parties hereto (the "Effective Date").

31

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                    **Arie Genger**

By: _____

Print: _____        Date: ___6/15/13___

Title: _____

Date: _____

**Glenclova Investment Co.**              **Orly Genger (in her individual capacity and**

**in her capacity as beneficiary of the**

By: _____        **Orly Genger 1993 Trust)**

Print: _____

Title: _____        Date: ___6/15/13___

Date: _____

32

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                                 **Arie Genger**

By: _Mark S. Hirsch_____                  _____

Print: _MARK J. HIRSCH_____          Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____


**Glenclova Investment Co.**                   **Orly Genger (in her individual capacity and**

                                                               **in her capacity as beneficiary of the**

By: _Mark S. Hirsch_____                   **Orly Genger 1993 Trust)**

Print: _MARK S. HIRSCH_____

Title: _Executive VP/General Counsel_         _____

                                                               Date: _____

Date: _June 16, 2013_____

32

**New TR Equity I, LLC**

By: _____

Print: _____

Title: _____

Date: _____


**Arnold Broser**

_[signature]_

Date: ___6/16/13_____


**New TR Equity II, LLC**

By: _____

Print: _____

Title: _____

Date: _____


**David Broser**

_[signature]_

Date: ___6/16/13_____

33

**New TR Equity I, LLC**                              **Arnold Broser**

By: _Mark S. Hirsch_ _____              _____

Print: _MARK S. HIRSCH_ _____                   Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_ _____


**New TR Equity II, LLC**                             **David Broser**

By: _Mark S. Hirsch_ _____              _____

Print: _MARK S. HIRSCH_ _____                   Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_ _____

33

**Trans-Resources, LLC**

By: _Mark S Hirsch_____

Print: _MARK S. HIRSCH_____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____

34

**Jules Trump**

Date: 6 / 16 / 2013

**Eddie Trump**

Date: _____

**Mark Hirsch**

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: _June 16, 2013_

**Mark Hirsch**

_____

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: _____

**Mark Hirsch**

_____

Date: June 16, 2013

EXHIBIT A

6/16/13
*Draft - Confidential*

## [FORM OF SUBORDINATED NOTE]

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.**

### TRANS-RESOURCES

### <u>SUBORDINATED NOTE</u>

$7,500,000.00                                                    June __, 2013

**FOR VALUE RECEIVED,** Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "<u>Maker</u>"), hereby promises to pay to the order of [_____] (the "<u>Payee</u>"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

1.    <u>Notes</u>. This Subordinated Note (this "<u>Note</u>") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "<u>Settlement Agreement</u>"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

2.    <u>No Interest</u>. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

3.    <u>Maturity</u>. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "<u>Maturity Date</u>"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "<u>Extended Maturity Date</u>") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "<u>Sagi Group</u>") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.    Optional Prepayments.  The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.    Adjustment.  In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs.  The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.    Subordination.  Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.    Enforcement.  The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.    Amendments.  No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy.  This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.    Lost Notes, etc.  If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

Error! Unknown document property name.

10.     ASSIGNMENT. THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.     Binding Effect. The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

- 3 -

**IN WITNESS WHEREOF,** the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By:_____
    Name:
    Title:

4

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 0 5 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

SAGI GENGER,

                        Plaintiff,

            -v-

ORLY GENGER,

                      Defendant.

------------------------------------------------------------ X

14-cv-5683 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

As Tolstoy famously wrote, "Happy families are all alike; every unhappy family is unhappy in its own way." Leo Tolstoy, Anna Karenina 1 (Constance Garnett trans., 1978). In the case of the wealthy Genger family, that unhappiness has taken the form of a seemingly never-ending series of lawsuits stemming from the divorce of Arie Genger and Dalia Genger, the family patriarch and matriarch, respectively. Together, Arie, Dalia, their son Sagi, and their daughter Orly[1] have employed a small army of lawyers to fight over the pieces of the family pie and, it seems, to make each other's lives as miserable as possible.

This latest installment in the Genger family's litigation saga concerns a straightforward contract dispute between Sagi and Orly. Sagi alleges that he and Orly entered into a tri-party agreement with Dalia, under which Sagi and Orly would receive shares of stock in exchange for providing Dalia with financial support

---

[1] For the sake of clarity, in this Opinion the Court will refer to the members of the Genger family by their given names.

derived from the economic value obtained from that stock. Sagi contends that Orly has breached the agreement, and now seeks damages from her. Orly, for her part, denies the agreement's validity and enforceability, primarily because she claims she never actually received the promised shares of stock, which means that the agreement is not supported by consideration. But, as it turns out, Orly has effectively monetized an interest in the very shares she claims not to have received to the tune of $32.3 million.

Orly contends that this case is "an attempt to push the camel's nose under the tent flaps," and that Sagi and Dalia "hope to create a pipeline allowing them to siphon money from Orly for the rest of her life." (ECF No. 92 at 1.) The Court sees things differently: this case is a simple breach of contract action. Nothing more, nothing less.

Because there is no triable issue as to whether there was a valid and enforceable agreement supported by consideration, and for the reasons that follow, the Court GRANTS Sagi's motion for summary judgment, DENIES Orly's motion for summary judgment, and DENIES AS MOOT Orly's motion to disqualify and all pending motions in limine.

## I.    BACKGROUND

### A.    Factual Background[2]

The Genger family consists of father Arie, mother Dalia, son Sagi, and daughter Orly. (DSOF ¶ 5.) Sagi is currently the President and CEO of TPR Investment Associates, Inc. ("TPR"). (DSOF ¶ 4.) In 2004, Arie and Dalia divorced.[3] (DSOF ¶ 5; PRSOF ¶ 5.) As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of TRI to trusts benefiting Sagi and Orly (the "Sagi Trust" and the "Orly Trust,"[4] respectively) in exchange for a commitment by Sagi and Orly to financially support her. This arrangement was effectuated via three documents.

First, Dalia and Arie signed a stipulation of settlement finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed

---

[2] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in connection with this motion for summary judgment and their supporting materials (ECF No. 34 ("PSOF"), 37 ("DSOF"), 51 ("DRSOF"), 52 ("DCMUF"), 55 ("PRSOF")), the factual materials submitted with the parties' letters dated November 25, 2014 (ECF Nos. 84-85), and public records of the parties' prior judicial proceedings. The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible. See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004). The Court recites only those facts relevant to the claims and defenses currently at issue, but also includes some factual allegations that are not material to the claims asserted but that are important to understanding the context for this case. Some of defendant's responses fail to directly address straightforward factual allegations, and these failures are considered admissions as a matter of law. See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

[3] The divorce was finalized by a 2005 judgment. (PRSOF ¶ 5.)

[4] The trusts are officially named the "Sagi Genger 1993 Trust" and the "Orly Genger 1993 Trust." (DSOF ¶ 26.)

on October 30, 2004.[5]  (PSOF ¶ 1; DSOF ¶ 7.)  In the 2004 Divorce Stipulation, Dalia promised to convey equal interests in a total of 794.40 shares of TRI to the Orly Trust and the Sagi Trust.  (PSOF ¶ 1; DSOF ¶ 27.)  The 2004 Divorce Stipulation contains an "entire understanding" clause, which is subject to a carve-out for other agreements expressly incorporated by reference and those "entered into concurrently herewith."  (DSOF ¶ 24.)

The second was a letter signed by Sagi and Dalia dated October 30, 2004 (the "2004 Promise").  (PSOF ¶ 3; DRSOF ¶ 51.)  In the 2004 Promise, Sagi agreed to pay Dalia up to an amount equal to all dividends, distributions, proceeds or other payments attributable to the TRI shares, upon Dalia's demand.  (PSOF ¶ 3.)  The 2004 Promise also states that the agreement is made "in consideration of" the following: "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of [TRI], or beneficial[6] interests in those shares, by trusts for [their] benefit."  (DSOF ¶ 52.)  The parties dispute whether the 2004 Promise was intended to be integrated with the 2004 Divorce Stipulation.  (See DRSOF ¶ 3.)

At the time the 2004 Promise was signed, Orly was vacationing in Fiji, and thus could not contemporaneously sign the 2004 Promise.  (PSOF ¶ 4.)  However,

---

[5] The 2004 Divorce Stipulation states that it is "made as of October 26, 2004."  (DSOF ¶ 7.)

[6] Beneficial ownership is "[a] corporate shareholder's power to buy or sell the shares, though the shareholder is not registered on the corporation's books as the owner."  Ownership, Black's Law Dictionary (9th ed. 2009); see also Cartica Mgmt. v. CorpBanca, S.A., No. 14–CV–2258 PKC, 2014 WL 4804491, at *15 (S.D.N.Y. Sept. 25, 2014) (explaining the definition of beneficial ownership under federal securities law).  Record ownership is determined based on who is "listed in the issuer's books as the owner of stock on the record date."  Stockholder of Record, Black's Law Dictionary (9th ed. 2009).

4

before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for

50% of the payments he would have to make under the 2004 Promise.[7] (PSOF ¶ 4.)

The third agreement was a letter signed by Sagi and Orly dated November

10, 2004 (the "2004 Indemnity").[8] (PSOF ¶ 5.) In the 2004 Indemnity, Orly agreed

to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities,

damages, claims, actions, losses, settlements, penalties, judgments or obligations

. . . , including [Sagi's] reasonable counsel and other professional fees, expenses and

costs, which arise from [Sagi's] undertakings in the [2004 Promise]." (PSOF ¶ 5.)

On August 22, 2008, Sagi-controlled TPR entered an agreement with the

Trump Group to sell the Sagi Trust's shares of TRI to the Trump Group for $26.7

million. (DSOF ¶ 34.) Sagi also sold the Orly Trust's TRI shares to the Trump

Group for approximately $10.3 million, subject to the condition that TPR was

determined to be an owner of the shares.[9] (DSOF ¶ 35.)

---

[7] In response to this factual allegation by Sagi, Orly counters that she does not remember a phone call with Sagi on the day of the divorce, and makes several non-responsive statements concerning the drafting and execution 2004 Promise and the 2004 Divorce Stipulation. (See DRSOF ¶ 4.) But she does not actually deny making this oral promise.

[8] At the initial case conference in the prior action, Orly's counsel stated that they believed the 2004 Indemnity was a forgery, and they would investigate this theory by, inter alia, using the services of an ink expert. (DRSOF ¶ 11.) The ink expert's examination of the 2004 Indemnity was also discussed at the October 31, 2014 status conference in the instant action; the Court ordered the parties to meet and confer regarding any outstanding issues with respect to expert discovery (ECF No. 48), and no such issues were subsequently raised with the Court.

Despite the considerable amount of discovery in this case, and her retention of an ink expert, Orly is unable to point to any admissible evidence suggesting that the 2004 Indemnity is a forgery. Further, in her briefing on this motion, Orly did not advance the argument that the 2004 Indemnity is a forgery or is otherwise inauthentic. Most importantly, in her Rule 56.1 responses, Orly does not affirmatively deny the existence of the 2004 Indemnity, or that she signed it. (See DRSOF ¶¶ 5, 11.) A party cannot create a genuine issue of material disputed fact through mere say-so and the hiring of an expert. There is accordingly no genuine issue of material disputed fact as to the authenticity of the 2004 Indemnity or as to whether Orly signed it.

[9] The parties dispute exactly what ownership interest was required by the condition. (See PRSOF ¶ 35.)

In 2011, the Supreme Court of Delaware affirmed a judgment invalidating the 2004 transfer of the TRI shares to the Orly Trust as to record ownership. Genger v. TR Investors, LLC, 26 A.3d 180, 198-200 (Del. 2011). As a result of this invalidation, record ownership of the TRI shares reverted to Sagi-controlled TPR. In that same decision, the Supreme Court of Delaware held that because the trial court lacked personal jurisdiction over the Orly Trust and TPR, it lacked the power to declare who beneficially owned the TRI shares, and therefore reversed the beneficial ownership determinations flowing from the trial court's orders. Id. at 203.

On June 16, 2013, Orly entered into a settlement agreement (the "2013 Settlement Agreement") with the Trump Group and others regarding her claims to ownership of the TRI shares. (ECF No. 84 ex. A ("2013 S.A.").) The agreement provides that Orly, Arie, and their litigation funders[10] will receive $32.3 million[11] in exchange for a declaration that the Trump Group owns "all right, title and interest (beneficially, of record, and otherwise)" to the TRI shares, and that Orly waives all of her claims to the TRI shares, both as a trust beneficiary[12] and individually. (2013 S.A. ¶¶ 2-4.) The 2013 Settlement Agreement does not waive any of the Orly Trust's claims. (See 2013 S.A. ¶ 4.) However, in the agreement Orly agreed to cause the Orly Trust to do the same. (2013 S.A. ¶ 8(a)(ii).)

---

[10] The 2013 Settlement Agreement refers to these parties collectively as the "AG Group." (2013 S.A. at 1.)

[11] The $32.3 million consists of $17.3 million in cash upfront, plus two additional $7.5 million payments to be made over four years. (2013 S.A. ¶¶ 2-3.)

[12] Specifically, as a beneficiary of the Orly Trust. (2013 S.A. ¶ 4.)

6

Then, on August 30, 2013, the Orly Trust (by Dalia), TPR, and the Trump Group agreed that "the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of [TRI]." (ECF No. 85 ex. 5 ¶ 2.) This stipulated agreement was so-ordered by the Delaware Court of Chancery. (ECF No. 85 ex. 5 at 7.) Subsequently, a court in this District and New York's First Department both concluded that this so-ordered stipulation determined the Trump Group to be the beneficial owner of the TRI shares. TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP, No. 13 Civ. 8243 (JFK), 2014 U.S. Dist. LEXIS 67116, *5-6 (S.D.N.Y. May 15, 2014); Genger v. Genger, 121 A.D.3d 270, 280 (N.Y. App. Div. 2014).

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise, which Sagi paid. (PSOF ¶¶ 6, 9.) On January 23, 2014, Sagi informed Orly of Dalia's demand.[13] (PSOF ¶ 7.) On February 17, 2014, Sagi demanded $100,000 from Orly under the 2004 Indemnity. (PSOF ¶ 10.) Orly refused to pay. (PSOF ¶ 11.) This lawsuit for breach of contract followed.

B.    Procedural Background[14]

1.    General procedural background.

Sagi initially filed a breach of contract action against Orly in this Court on February 18, 2014. (No. 14-cv-1006, ECF Nos. 1-2.) Orly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on May 2, 2014. (No. 14-cv-1006,

---

[13] Sagi first provided Orly's counsel with a written copy of Dalia's demand on January 29, 2014. (DSOF ¶ 60.)

[14] The Court recounts only the procedural history immediately relevant to the disposition of this motion.

ECF No. 9.)  Orly then filed a motion to dismiss for lack of subject-matter

jurisdiction under Rules 12(b)(1) and 12(h)(3) on May 29, 2014.  (No. 14-cv-1006,

ECF No. 24.)  That same day, Sagi filed a motion for summary judgment.  (No. 14-

cv-1006, ECF No. 18.)

On July 22, 2014, the Court granted Orly's Rule 12(b)(1) motion[15] and

dismissed the action without prejudice, after finding that diversity jurisdiction was

inappropriate because both Sagi and Orly were domiciled in New York on the date

the action was filed.  (No. 14-cv-1006, ECF No. 52.)  Two days later, on July 24,

2014, Sagi commenced the instant proceeding, which was initially assigned to Judge

Caproni.  (ECF No. 1.)  On August 5, 2014, the case was reassigned to this Court,

which set an accelerated schedule for discovery, briefing, and trial owing to the

material similarity between this action and the previous one.  (ECF No. 9.)

Orly filed a motion to dismiss under Rule 12 on August 27, 2014.  (ECF No.

10.)  The motion became fully briefed on September 18, 2014.  (ECF No. 19.)  The

Court denied the motion on September 19, 2014, finding that (1) subject-matter

jurisdiction over this action was appropriate; (2) Sagi had sufficiently alleged the

elements of the causes of action; and (3) the parties' briefing revealed a host of

factual issues outside the four corners of the complaint.  (ECF No. 20.)

Both Sagi and Orly moved for summary judgment on October 20, 2014.  (ECF

Nos. 32, 35.)  Sagi filed motions in limine on November 17, 2014.  (ECF No. 59.)

The following day, Orly filed motions in limine, (ECF No. 68), as well as a motion to

---

[15] The Court also denied as moot Orly's Rule 12(b)(6) motion to dismiss and Sagi's motion for summary judgment.

disqualify Sagi's counsel John Dellaportas from acting as counsel at trial on
November 18, 2014, (ECF No. 65).  Sagi and Orly submitted their oppositions to
each others' motions in limine on November 24, 2014.  (ECF Nos. 79, 81.)

Sagi then submitted his opposition to Orly's motion to disqualify on
November 26, 2014.  (ECF No. 89.)  That same day, the Court issued an order
stating its intention to decide the case on summary judgment, and adjourning the
trial date and all other dates.  (ECF No. 90.)  The parties submitted reply briefs on
December 5 and 6, 2014.  (ECF Nos. 91, 92.)

2.    Motion to compel production of the 2013 Settlement Agreement.

On September 30, 2014,[16] Sagi filed a letter-motion to compel production of
the 2013 Settlement Agreement.  (ECF Nos. 22-23.)  Orly filed her opposition to the
letter-motion on October 3, 2014, (ECF No. 25), the same day she filed her Answer,
(ECF No. 24).  On October 7, 2014, the Court denied Sagi's letter-motion, based on
its mistaken belief that the 2013 Settlement Agreement was irrelevant to the claims
at issue.  (ECF No. 26.)

Upon reviewing the parties' summary judgment briefing, the Court realized
its mistake, and on November 18, 2014 the Court vacated the October 7, 2014 order
and granted Sagi's letter-motion to compel.[17]  (ECF No. 64.)  In the November 18,
2014 order, the Court ordered the parties to submit three-page letters regarding the
potential impact of the 2010 Settlement Agreement on the claims and defenses at

---

[16] Sagi filed the same letter twice; once on September 30, 2014, and again on October 1, 2014.  (ECF Nos. 22-23.)  An additional exhibit is attached to the October 1, 2014 version.

[17] This order refers to the 2013 Settlement Agreement as the "2010 Settlement Agreement."

9

issue not later than November 25, 2014. (ECF No. 64.) The parties submitted their letters on November 25, 2014. (ECF Nos. 84-85.)

II.   SUMMARY JUDGMENT STANDARD

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23. In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159,

10

166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In

seeking to show that there is a genuine issue of material fact for trial, the non-

moving party cannot rely on mere allegations, denials, conjectures or conclusory

statements, but must present affirmative and specific evidence showing that there

is a genuine issue for trial.").

Only disputes relating to material facts—"facts that might affect the outcome

of the suit under the governing law"—will properly preclude the entry of summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)

(the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts").

## III.   DISCUSSION

Under New York law, to recover for breach of contract, a plaintiff must prove

"(1) the existence of a contract between [plaintiff] and that defendant; (2)

performance of the plaintiff's obligations under the contract; (3) breach of the

contract by that defendant; and (4) damages to the plaintiff caused by that

defendant's breach." Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d

42, 52 (2d Cir. 2011) (citation omitted); see also Flomenbaum v. N.Y. Univ., 71

A.D.3d 80, 91 (N.Y. App. Div. 2009); Clearmont Prop., LLC v. Eisner, 58 A.D.3d

1052, 1055 (N.Y. App. Div. 2009). There is no triable issue as to whether all four

elements are satisfied in this case. Accordingly, the Court grants Sagi summary

judgment as to his breach of contract claim. There is also no triable issue as to

Sagi's promissory estoppel cause action, and so the Court grants him summary judgment on that alternative basis.

    A.   <u>Enforceability</u>

       1.   <u>Integrated agreement.</u>

Under New York law, "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." <u>This Is Me, Inc. v. Taylor</u>, 157 F.3d 139, 143 (2d Cir. 1998); <u>accord</u> <u>Madeleine, L.L.C. v. Casden</u>, 950 F. Supp. 2d 685, 695-96 (S.D.N.Y. 2013). Contracts that are executed at different times "should be interpreted together if 'the parties assented to all the promises as a whole so that there would have been no bargain whatever if any promise or set of promises had been stricken.'" <u>Commander Oil Corp. v. Advance Food Serv. Equip.</u>, 991 F.2d 49, 53 (2d Cir. 1993) (quoting 6 Samuel Williston & Richard A. Lord, <u>A Treatise on the Law of Contracts</u>, § 863:275 (3d ed. 1970)). Whether multiple documents should be read as constituting a single agreement depends on the intent of the parties. <u>TVT Records v. Island Def Jam Music Grp.</u>, 412 F.3d 82, 89 (2d Cir. 2005); <u>accord</u> <u>Commander Oil</u>, 991 F.2d at 52-53; <u>Madeleine</u>, 950 F. Supp. 2d at 696. The intent of the parties is "typically a question of fact for the jury, . . . [b]ut if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." <u>TVT Records</u>, 412 F.3d at 89 (citation omitted).

In <u>TVT Records</u>, the Second Circuit determined two agreements to be integrated based, <u>inter alia</u>, on the fact that the documents were intended to effectuate the same result. <u>Id.</u> As the parties under the later agreement were obligated to honor all of the terms and conditions of the earlier agreement, the later agreement was "meaningless" without the first. <u>Id.</u> The fact that the documents were "negotiated and signed at different times, memorialized in different documents and involved different parties" did not dictate a contrary result, because these facts did not address "the legally operative question: whether the contracts were part of a single transaction intended to effectuate the same purpose." <u>Id.</u> at 90 (citations omitted).

Similarly, in <u>This Is Me</u>, the Second Circuit held that a jury was justified in reading two contracts together where they were executed "more or less" (but not exactly) concurrently, and where one of the two contracts stated that the two contracts were intended to be executed together, but the other contract did not. 157 F.3d at 145. The Court also noted that counsel for a defendant conceded in a letter that the two contracts were intended to be read together. <u>Id.</u>

The 2004 Promise and the 2004 Indemnity are sufficiently unambiguous such that there is no triable issue as to whether they form an integrated agreement, even though they were executed on different dates and were not all between the same parties, and in this sense no different than the agreements at issue in <u>TVT Records</u>. Indeed, neither agreement makes any sense without the promises expressed in the other. Without the 2004 Indemnity, Sagi could be obligated under the 2004 Promise

13

to pay Dalia double the economic benefit he received from his shares of TRI, and Orly would effectively have received the shares as a gift. Further, the 2004 Indemnity explicitly attaches and cross-references the 2004 Promise, which makes the situation here directly analogous to that in TVT Records, where the later agreement was "meaningless" without the earlier one. Id. at 89.

There is accordingly no triable issue as to whether the documents were "designed to effectuate the same purpose" and to "be read together." This Is Me, 157 F.3d at 143. For this reason, the Court will refer to the integrated agreement in the rest of this Opinion as the "2004 Integrated Agreement.[18]

    2.   Consideration.

Under New York law, to be valid, a contract must be supported by consideration. Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006). Consideration to support an agreement exists where there is "either a benefit to the promisor or a detriment to the promisee." Hollander v. Lipman, 65 A.D.3d 1086, 1087 (N.Y. App. Div. 2009) (quoting Weiner v. McGraw-Hill, Inc., 443 N.E.2 441, 445 (N.Y. 1982)).

As a general matter, "[a] promise to perform a pre-existing legal obligation does not amount to consideration." Murray, 444 F.3d at 178 (citing Goncalves v. Regent Int'l Hotels, Ltd., 447 N.E.2d 693, 700 (N.Y. 1983)). However, § 5-1105 of New York's General Obligations Law provides:

---

[18] Orly vigorously disputes whether the 2004 Divorce Stipulation is integrated with the 2004 Promise and the 2004 Indemnity. However, Sagi does not contend that the 2004 Divorce Stipulation is integrated with the 2004 Promise and the 2004 Indemnity (ECF No. 57 at 10), and so the Court need not reach this issue.

> A promise in writing and signed by the promisor or by his
> agent shall not be denied effect as a valid contractual
> obligation on the ground that consideration for the
> promise is past or executed, if the consideration is
> expressed in the writing and is proved to have been given
> or performed and would be a valid consideration but for
> the time when it was given or performed.

N.Y. Gen. Oblig. Law § 5-1105.

To meet § 5-1105's requirement that the consideration be "expressed" in the writing, the recitation of consideration must not be vague or imprecise.[19] See United Res. Recovery Corp. v. Ramo Venture Mgmt., Inc., 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008); Movado Grp., Inc. v. Presberg, 259 A.D.2d 371, 371 (N.Y. App. Div. 1999); Umscheid v. Simnacher, 482 N.Y.S.2d 295, 297 (N.Y. App. Div. 1984). For example, courts have held that the statements "past work on the Company's behalf" and "services rendered on the respondent's behalf" are too vague and imprecise to meet the expression requirement. United Res. Recovery, 584 F. Supp. 2d at 656;

---

[19] In several cases, courts have stated that in order to recover under § 5-1105, "the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise." E.g., United Res. Recovery Corp. v. Ramo Venture Mgmt., Inc., 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008) (quoting Umscheid v. Simnacher, 482 N.Y.S.2d 295, 297 (N.Y. App. Div. 1984)); In re Maxwell Commc'n Corp., 198 B.R. 63, 69 (S.D.N.Y. 1996) (same); Kreuter v. Tsucalas, 734 N.Y.S.2d 185, 188 (N.Y. App. Div. 2001) (same). The citation provided for this statement of law is typically the Second Department's decision Umscheid v. Simnacher, 482 N.Y.S.2d 295 (N.Y. App. Div. 1984), which in turn cited as support Sarama v. John Mee, Inc., 102 Misc. 2d 132 (N.Y. Civ. Ct. 1979), and Citibank National Ass'n v. London, 526 F. Supp. 793 (S.D. Tex. 1981), the latter of which cited only Sarama as support for this proposition.

However, Sarama in fact states that "[i]n order for plaintiff to recover for breach of contract, defendant's letter must contain an unequivocal promise to pay a sum certain, at a date certain, and, further, it must conform with General Obligations Law [§] 5-1105, by expressing in the letter the consideration for the promise." Sarama, 102 Misc. 2d at 133 (emphasis added). Sarama thus states that the requirement of "an unequivocal promise to pay a sum certain, at a date certain" is a general requirement for recovery for breach of contract under the facts of that case, not a requirement for recovery under § 5-1105. The Court further notes that the "sum certain" and "date certain" requirements are found nowhere in the text of § 5-1105, nor can they be implied from that text, and that New York's Court of Appeals has never embraced an interpretation of § 5-1105 encompassing those requirements.

Umscheid, 482 N.Y.S.2d at 297. By contrast, in Movado Group, Inc. v. Presberg, the Appellate Division of New York's First Judicial Department held that a commitment to pay all of a company's debts to a party on an "absolute, unconditional, and continuing" basis was sufficient to establish past consideration under § 5-1105, despite its being "a broad commitment, certainly not limited to one opening transaction." 259 A.D.2d at 371.

The 2004 Integrated Agreement clearly purports to provide each party with a benefit in exchange for a legal obligation: Dalia receives financial support in exchange for the transfer of the TRI shares to the Sagi Trust and the Orly Trust; Sagi receives an ownership interest in the TRI shares[20] in exchange for a commitment to financially support Dalia; and Orly receives an ownership interest in TRI shares in exchange for a commitment to indemnify Sagi.

Orly contends that the 2004 Integrated Agreement is not supported by consideration for two reasons. First, Orly contends that the 2004 Integrated is not supported by consideration because the Orly Trust never received the TRI shares. But the 2004 Promise states that Orly and Sagi are benefiting from receipt of either the TRI shares or "beneficial interests in those shares," by their respective trusts. (ECF No. 1 ex. A.) Thus, the question becomes whether Orly has benefited from the

---

[20] Sagi contends that the contract is supported by two forms of consideration: (1) the Orly Trust's receipt of the TRI shares as part of the divorce stipulation; (2) love, affection, and the end to parental strife. (Compl. ¶ 8.) The Court rejects Sagi's argument that the 2004 Integrated Agreement is supported by consideration because Orly received an emotional and psychological benefit in helping to bring about an end to her parents' bitter divorce. Affection, love, and feelings cannot constitute consideration under New York law. See, e.g., McRay v. Citrin, 706 N.Y.S. 2d 27, 28 (N.Y. App. Div. 2000); Rose v. Elias, 576 N.Y.S.2d 257, 258 (N.Y. App. Div. 1991); see also 22 N.Y. Jur. 2d Contracts §§ 116-17.

Orly Trust's receipt of beneficial interests in the TRI shares. There is no genuine dispute as to whether she has so benefited: Orly's claims to beneficial ownership of the TRI shares individually and as a trust beneficiary enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement Agreement. Further, no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares.[21]

Second, Orly contends that the TRI shares cannot serve as valid consideration because they had already been transferred when the 2004 Indemnity was signed, and they were transferred pursuant to the 2004 Divorce Stipulation, which is a separate agreement. This argument fails because the 2004 Integrated Agreement satisfies § 5-1105 of New York's General Obligations Law. The past consideration is precisely and unambiguously stated in the 2004 Promise, which states that "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for [their] benefit." (ECF No. 1 ex. A.) This statement is sufficiently precise and unambiguous so as to satisfy § 1105's expression requirement—indeed, this statement is considerably more exact than a promise to pay all of a company's debts on an ongoing basis, which was found to be sufficient in <u>Movado Group</u>. And as established above, there is no triable issue as to whether Orly was for all intents and purposes given a beneficial interest in the TRI shares.

---

[21] The Delaware Court of Chancery's beneficial ownership determinations were reversed by the Supreme Court of Delaware's July 18, 2011 decision. <u>Genger v. TR Investors, LLC</u>, 26 A.3d 180, 203 (Del. 2011).

17

Accordingly, there is no triable issue as to whether the 2004 Integrated Agreement was supported by valid consideration.[22]

### B.   Defenses

There is no triable issue as to whether Orly has a viable defense to the 2004 Integrated Agreement.

### 1.   Judicial estoppel.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001) (citation and internal quotation marks omitted). The decision whether judicial estoppel should bar a litigant from making a particular argument is highly fact-specific. See id. at 751. Several considerations counsel in favor of applying the doctrine in a particular case: (1) the party's later position is clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept its earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Adelphia Recovery Trust v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014) (citing New Hampshire, 532 U.S. at 750-51). However, "[b]ecause the doctrine is

---

[22] Orly makes much of the fact that the 2013 Settlement Agreement did not release the Orly Trust's claims to the TRI shares. But this fact does nothing to disprove that Orly benefited from her claim to beneficial ownership of the TRI shares, and to the extent that it is relevant, it just provides further evidence that the Orly Trust had a legitimate claim to beneficial ownership of the TRI shares.

primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." Id. (alteration in original) (quoting Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 397 (2d Cir. 2011)).

Orly argues that Sagi should be judicially estopped from arguing that the Orly Trust received a beneficial interest in the TRI shares. However, in this case embracing Sagi's position runs no risk of endangering judicial integrity, as no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares. Further, there is no reason to believe that permitting Sagi to argue that the Orly Trust received the beneficial interest in the TRI shares would give Sagi an unfair advantage or impose an unfair detriment on Orly— indeed, embracing Orly's argument here would effectively allow her to avoid paying hundreds of thousands of dollars due under an otherwise valid agreement for a technical and formalistic reason unrelated to the equities of the situation. Accordingly, even assuming that Sagi has taken an inconsistent litigation position,[23] judicial estoppel does not bar Sagi from arguing that the Orly Trust received beneficial ownership of the TRI shares.

### 2.   Mutual mistake.

"A contract is voidable under the equitable remedy of rescission if both parties entered into the contract under a mutual mistake of fact." Schultz v. Hourihan, 656 N.Y.S.2d 526, 528 (N.Y. App. Div. 1997). In order to obtain

---

[23] Given the strong rationale for not applying the doctrine of judicial estoppel here, the Court need not delve into the specific arguments advanced by Sagi or TPR in the course of their numerous years of prior litigation involving Orly and/or the TRI shares.

rescission of a contract due to mutual mistake, "it must be shown that the mistake in question is mutual, substantial, material and exists at the time the contract is entered." Rodriguez v. Mower, 56 A.D.3d 857, 858 (3d Dep't 2008) (citation omitted). In New York, a mutual mistake must be established by "clear and convincing" evidence. E.g., Carney v. Carozza, 792 N.Y.S.2d 642, 644 (N.Y. App. Div. 2005); Silver v. Gilbert, 776 N.Y.S.2d 867, 867 (N.Y. App. Div. 2004).

Orly first argues that if the 2004 Integrated Agreement is valid, it should nevertheless be rescinded because there was a mutual mistake as to whether Sagi and Orly were being treated equally in their parents' divorce. This argument fails because there was no mistake of fact here—the 2004 Divorce Stipulation and the 2004 Integrated Agreement explicitly provide for equal treatment of Orly and Sagi.

Orly further argues that the parties were mutually mistaken with regard to whether the interests in the TRI shares could be validly transferred to their trusts, such that they would receive equal interests in the TRI shares. This argument too fails, because as established above, the parties were in fact only mistaken as to their ability to receive and/or monetize record ownership in the TRI shares, and this mistake was not substantial or material because the money was clearly in the beneficial interest—Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million, while Sagi sold his interests in the TRI shares for $37.0 million.

In any event, rescission due to mutual mistake is an equitable remedy, and it would not serve the interests of equity to rescind the 2004 Integrated Agreement here, as doing so would enable Orly to obtain her benefit from the agreement (the

20

$32.3 million she received for the beneficial interest in the TRI shares) while escaping her obligations under it (her commitment to financially support her mother). Accordingly, the Court declines to rescind the contract under the doctrine of mutual mistake.

### 3.   Lack of opportunity to defend.

Orly argues that as an indemnitor she has no contractual duty to indemnify Sagi without first receiving notice and a chance to defend. Under New York law, an indemnitee cannot seek reimbursement from an indemnitor unless the indemnitee first notifies the indemnitor of a potentially covered claim and gives them an opportunity to defend against it. See Chase Manhattan Bank v. 264 Water St. Assocs., 634 N.Y.S.2d 687, 689 (N.Y. App. Div. 1995). However, notice to the indemnitor is not required if an indemnitee can "establish that [it] would have been liable and that there was no good defense to that liability." Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 900 N.Y.S.2d 246, 253 (N.Y. App. Div. 2010).

Although the parties do not dispute that Sagi twice informed Orly and her counsel of Dalia's demand prior to paying Dalia, they do dispute whether Sagi informed Orly of his intention actually to honor Dalia's demand. (See DRSOF ¶ 7; PRSOF ¶ 61.) Ultimately, however, even if Sagi did fail to properly notify Orly, notice was not required as a matter of law because Sagi had no good defense against Dalia's demand—the 2004 Integrated Agreement expressly gives Dalia the right to make such a demand and clearly obligates Sagi to pay it, and as established above there is no valid argument against the agreement's enforceability or validity. Accordingly, the parties' dispute over whether Sagi properly provided Orly with

21

notice does not preclude this Court from granting Sagi summary judgment as to the validity of the indemnification obligation as a matter of law.

C.    Performance, Breach, and Damages

The parties do not dispute that Sagi performed his obligations under the 2004 Integrated Agreement, as it is undisputed that Sagi paid Dalia $200,000. There is also no dispute as to whether Orly breached the 2004 Indemnity by refusing to pay Sagi, and nor is there a dispute that Sagi suffered damages of at least $100,000 as a result. Accordingly, because the 2004 Integrated Agreement is valid and enforceable, there is no triable issue as to whether all of the elements of Sagi's breach of contract claim are satisfied, and summary judgment is thus granted in Sagi's favor as to his breach of contract claim.

D.    Promissory Estoppel

Even if the 2004 Integrated Agreement were not valid and enforceable, Sagi is also entitled to equitable relief under the doctrine of promissory estoppel. "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."[24] Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (citing Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)).

---

[24] "New York courts limit promissory estoppel claims to instances of unconscionable injury only where promissory estoppel is invoked as a defense to the Statute of Frauds. . . . But New York courts generally do not require a showing of unconscionability where promissory estoppel is invoked to prevent injustice stemming from reliance on a gratuitous promise." Pearce v. Manhattan Ensemble Theatre, Inc., 528 F. Supp. 2d 175, 181 (S.D.N.Y. 2007) (collecting cases).

In the 2004 Indemnity, Orly made a clear and unambiguous promise to indemnify Sagi for "one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . , including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]." (PSOF ¶ 5.) There is no material dispute as to whether Sagi relied on this promise in paying Dalia, or that he sustained injury as a result of this reliance.

However, Orly argues that Sagi's reliance was not reasonable or foreseeable, because when he paid Dalia he was already aware that Orly disputed the validity and enforceability of the 2004 Integrated Agreement. This argument is unpersuasive. First, the time from which foreseeability is determined is when the promise is made, not the time of performance, and there is no genuine dispute as to whether it was foreseeable that Sagi would rely on the promise when it was made. Second, there is no genuine dispute as to whether Sagi's reliance was reasonable, because as explained above, Orly's position that the 2004 Integrated Agreement was invalid and unenforceable objectively lacked merit.

Orly argues that Sagi should be barred from recovering under a theory of promissory estoppel due to unclean hands. "The doctrine of unclean hands applies when the complaining party shows that the offending party is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." Kopsidas v. Krokos, 742 N.Y.S.2d 342, 344

(N.Y. App. Div. 2002) (quoting <u>Nat'l Distillers & Chem. Corp. v. Seyopp Corp.</u>, 17 N.Y.2d 12, 15-16 (N.Y. 1966)) (internal quotation marks omitted).  Orly argues that Sagi's hands are unclean because under his Presidency, TPR was obligated to effectuate the transfer of the TRI shares to her, and failed to do so.  However, on July 24, 2014, the Appellate Division of New York's First Judicial Department held that as an officer of TPR, Sagi's fiduciary duty was to the corporation and its stockholders, and that Sagi had not breached any duty to Orly in failing to honor the agreement to transfer the TRI shares to her trust.  <u>Genger v. Genger</u>, 121 A.D.3d 270, 278-79 (N.Y. App. Div. 2014).  Sagi's behavior here is consistent with his duty to TPR and its shareholders, and does not rise to the immoral or unconscionable level required to bar him from relief under the doctrine of unclean hands.

Accordingly, there is no triable issue as to Sagi's promissory estoppel claim, and Sagi is granted summary judgment on that cause of action in addition to his breach of contract cause of action.

IV.    CONCLUSION

For the above reasons, the Court GRANTS Sagi's motion for summary judgment, DENIES Orly's motion for summary judgment, and DENIES AS MOOT Orly's motion to disqualify and all pending motions <u>in limine</u>.

24

The Clerk of Court is directed to close the motions at ECF Nos. 32, 35, 59, 65,

and 68 and to terminate this action.

SO ORDERED.

Dated:       New York, New York
             January 5, 2015

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CIVIL TERM:  PART:  12
-------------------------------------------X
ARIE GENGER and ORLY GENGER, in her
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,

                         Plaintiff(s),
                                                  INDEX NO.
              -against-                           651089/10

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST,
ROCHELLE FANG, individually and as trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, LLC., TR INVESTORS,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,

                         Defendant(s).
-------------------------------------------X
SAGI GENGER, individually and as assignee of
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.,

                    Cross-Claimants, Counterclaimants
                       and Third-Party Claimants,

              -against-

ARIE GENGER, ORLY GENGER,
GLENCOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC., JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., WILLIAM
DOWD, and THE ORLY GENGER 1993 TRUST,

                    Cross-Claim, Counterclaim and/or
                       Third-Party Defendants.
-------------------------------------------X
                         80 Centre Street
                         New York, New York 10007
                         March 25, 2015
```

**B E F O R E :**

**THE HONORABLE BARBARA JAFFE,**

                              **J U S T I C E**

*Eric Allen*
*Official Court Reporter*

1

2  **A P P E A R A N C E S:**

3  MITCHELL, SILBERBERG & KNUPP, LLP
   Attorneys for Arie Genger
4  12 East 49th Street
   New York, New York 10017
5  BY:  PAUL D. MONTCLARE, ESQ.

6

7  ZEICHNER ELLMAN & KRAUSE, LLP
   Attorneys for Plaintiff Orly Genger
8  1211 Avenue of The Americas
   New York, New York 10036
9  BY:  YOAV M. GRIVER, ESQ.

10

11  JUDITH LISA BACHMAN, ESQ.
   Attorney for Defendant Dalia Genger
12  254 South Main Street
   New City, New York 10956

13

14

   MORGAN, LEWIS & BOCKIUS, LLP
15  Attorneys for Defendant TPR Investments
   101 Park Avenue
16  New York, New York 10178
   BY:  JOHN DELLAPORTES

17

18

19

20

21

22

23

24

25

26

*Eric Allen*
*Official Court Reporter*

1

2          THE COURT:  So, this is your motion,

3     Ms. Bachman.

4          MS. BACHMAN:  It is, your Honor.

5          Good morning.

6          THE COURT:  Good morning.

7          MS. BACHMAN:  So, this motion has been pending

8     for a long time, so I want to make sure that the Court

9     is aware of sort of the context in which our --

10         THE COURT:  What happened in surrogates?

11    Nothing yet from --

12         MS. BACHMAN:  It has not -- Dalia is still the

13    trustee.  The court has required further proceedings

14    with regard to making sure that the Sagi Trust is

15    included in the matter, so it remains at the status quo

16    that Dalia is still the trustee.

17         THE COURT:  Do you know when -- is there any

18    clue as to when that case is going to be decided?

19         MS. BACHMAN:  I do not know, your Honor.

20         MR. GRIVER:  Your Honor, the only relevant

21    happening, I think, in the case, is that the surrogate

22    court appointed a guardian for the children who are the

23    remainder -- continuing remainderment for the Sagi

24    trust and he filed, I believe last week, position

25    papers saying that he agrees with our position that

26    Dalia should be removed as trustee and that she has

*Eric Allen*
*Official Court Reporter*

1

2      violated her obligations.

3              THE COURT:  Okay, but that's not part of the

4      record before me right now.

5              MR. GRIVER:  That is -- no.  The remainderment

6      for the -- excuse me.  The remainderment for the Orly

7      Trust.

8              THE COURT:  Yes.  That I understand.

9              MR. GRIVER:  We can certainly file it with the

10     Court.  We think it is a subsequent document that has

11     relevancy to these proceedings if your Honor thinks so.

12             MS. BACHMAN:  And, obviously, that issue hasn't

13     been adjudicated and, as the Court noted, is not part

14     of the record.

15             So, with that caveat in mind, I think it is

16     important to understand the context of what's happened

17     here.

18             When we brought this motion, I think, back in

19     August of last year, we had not yet seen the settlement

20     agreement and the Federal Court had not yet opined on

21     the effect that they believed that the settlement

22     agreement had on what Orly gained from the Orly trust

23     shares.  So, as part of this motion, I have included

24     Judge Keenan's two decisions which opine and conclude

25     that the settlement agreement is a monetization of

26     Orly's -- the Orly Trust shares.  Essentially, she

1

2          traded the trust shares as part of the settlement and

3          acknowledged that the Trump Group is the owner --

4                  THE COURT:  Was it in Keenan's decision or was

5          it Forest's?

6                  MS. BACHMAN:  I apologize, thank you.  Yes,

7          Forest.  I could tell by your face that I had gone

8          astray, so I appreciate it.

9                  Judge Keenan's decision --

10                 THE COURT:  No, Judge Forest.

11                 MS. BACHMAN:  Sorry, Judge Forest's decision.

12         Delete Keenan from the record.

13                 So, based on that decision, it is now our

14         understanding with that decision that the settlement

15         agreement was basically the exchange:  The Orly Trust

16         interest in the shares for a whole bunch of money.

17                 The Trump Group had been consistent before this

18         Court in acknowledging that they viewed the settlement

19         as the settlement of the interest of the Orly Trust

20         shares and that it was an exchange of money for those

21         shares.  They effectuated that and acknowledged that by

22         encouraging and asking the Delaware chancery court to

23         dismiss and acknowledge that the shares now belonged to

24         the Trumps.

25                 Orly's attorneys have taken somewhat interesting

26         turns along the way.  Before this Court, when this

Court was hearing the issue of whether it should so order the settlement, Mr. Griver, I believe, argued that, no, we are not settling the trust claims and, in fact, quote, "Dalia can pick up the cudgel."

The Court said in it's decision, look, I can't tell whether the trust shares -- whether the trust claims are dismissed or not as part of the settlement and until I get clarification, you accurately stated, I believe, I cannot tell who the settlement proceeds belonged to. I can't tell whether they belong to the trust or to Orly individually. So, the Court invited the parties to clarify who they viewed as the settling parties and whether the trust had dismissed its claims or not.

None of the settling parties acceded to the Court's invitation and with that ambiguity, we were left to protect the interests of the trust. We brought this motion seeking first for Dalia to be substituted in if claims remained since Orly has stepped back and said that she is no longer prosecuting the case as a derivative plaintiff. And under well-settled New York law, if a derivative plaintiff is no longer prosecuting the action on behalf of the principal, then it is appropriate for a party to be substituted who has an actual interest in protecting that principal. That

*Eric Allen*
*Official Court Reporter*

would be, obviously, the trustee of the trust.

Likewise, as a second branch and perhaps now more importantly, we simultaneously moved for the settlement proceeds to be paid into court pending an allocation and determination of who that money belongs to and that's why we are before you today.

We now have seen the settlement agreement and it seems to confirm and be consistent with the Trump Group's position that they intended to and did settle all of the claims including, most importantly, the trust claims and at the end of the day that's what they bought and paid for:  The trust shares.  And if they bought and paid for the trust shares, the money belongs to the trust.

Thank you.

MR. ALLINGHAM:  Your Honor, I don't know who should speak next, but I think it would be helpful I should speak next to make clear submissions.

MR. GRIVER:  No objection.

MR. ALLINGHAM:  Tom Allingham for the Trump Group.

The settlement agreement settles claims.  It doesn't buy shares.  The shares had already been purchased as the Delaware court has found, pursuant to an agreement that was entered into back in 2008 and the

1

2      closing on those shares was 2012 or '13, '11, whenever.

3      Those shares had been purchased a long time ago.  There

4      remained claims of the Orly trust against the Trump

5      Group and that's what was settled in the settlement

6      agreement.  We paid money for a release of claims that

7      Arie, Orly and the Orly Trust had against the Trump

8      Group and that's what we paid the money for, so that's

9      point number 1.

10             Point number 2:  I think this is an unusual

11     situation, at least in my experience.  The moving party

12     now agrees with the position that we've taken since the

13     settlement agreement was entered into in June of 2013

14     that among the claims that we purchased a release of,

15     among the claims that we settled were the claims of the

16     Orly Trust and so the relief that is sought -- there

17     were two forms of relief sought in the motion, as

18     Ms. Bachman said.  One was, "I want to intervene to

19     pursue these claims."  That form of relief we oppose.

20     Because those claims have now, as conceded, I think, by

21     everybody -- everybody agrees that they were released,

22     there are no claims currently pending and, in fact,

23     there are no claims that could be pending into which

24     Dalia could intervene.  So, the motion --

25             THE COURT:  There is nothing to --

26             MR. ALLINGHAM:  Correct.  There is nothing

*Eric Allen*
*Official Court Reporter*

1

2      there, nothing to intervene in, so the motion to

3      intervene should be denied.

4              THE COURT:  It's a motion to be substituted.

5              MR. ALLINGHAM:  To be substituted.  I think of

6      it as an intervention motion, but, yes, your Honor.

7              And I don't think that if you look at the

8      papers, anybody really disputes that.  In Dalia's

9      brief, she says it has now been definitively revealed

10     that Orly settled the Orly Trust's claims against the

11     Trump Group.  In the Sagi submission, not a brief but

12     an affirmation from Mr. DellaPortas, it's the same

13     thing:  "Having finally seen the settlement agreement,

14     it is eminently clear that there is no cudgel for Dalia

15     to pick up.  The claims" -- and these are the claims of

16     the Orly Trust -- "were released, as Mr. Allingham had

17     correctly told the Court in his June 2013 letter."

18             So, where does that leave us?  That leaves us

19     with the second form of relief, which is should any

20     form of relief be entered against the settlement

21     proceeds that have either -- that have either been paid

22     or may in the future be paid pursuant to the settlement

23     agreement.

24             With respect to the 18 or so million dollars --

25     I think it's actually 17 and a quarter million dollars,

26     but the money that's already been paid in cash, we

don't have it.  We have no claim to it.  We take no
position on that money.  The Court may or may not have
jurisdiction to enter relief against whoever has got
that money, but we don't know who it is.  We know who
we paid it to, but we don't know who has the money now.

With respect to the remaining settlement
proceeds that may be paid in the future, that is in the
form of two notes; each in the principal amount of 7
and a half million dollars.

There are a number of conditions that may affect
the maturity date of those notes.  They have a nominal
maturity date of June of 2016 and June of 2017, but
they could be accelerated or extended.

Also, we have a contractual right to set off any
unpaid indemnification amounts under the settlement
agreement.  In the settlement agreement, we paid not
only for releases from Arie, Orly and the Orly Trust,
but we also paid -- so that's peace from those three
parties -- but we also paid for an indemnification from
Arie, Orly and the Orly Trust against any defense
costs, settlement payments or judgments in a broad
array of actions that could be brought by any Genger
family member.  So although we couldn't buy complete
peace, we tried to buy an insurance policy against the
peace that remained out there.

So, we have a setoff right against -- we have a
contractual obligation to pay on those notes.  When
that will come due is determined by a lot of factors.
When they come due, we have a contractual right of
setoff against the $15 million face amount of those
notes.

And so, with respect to the future payments,
what I would say is this:  No payment is due now, so I
think any relief on the future payment would be
premature.

To the extent any relief were to be entered now
as to these future payments, it shouldn't be entered
against the Trump Group which has a contractual
obligation to pay the payee.  It should either be
entered in the nature of an in rem remedy against the
notes themselves, deliver them to you or whatever, or
it should be entered and directed at the payee that
we're contractually obligated to pay, rather than to
direct it to the Trump Group which would abrogate our
contractual obligation to pay under the note.

So that's our position.

THE COURT:  Thank you.

MR. ALLINGHAM:  Thank you, your Honor?

THE COURT:  Who is next?  You don't have to
stand, Mr. Griver.

*Eric Allen*
*Official Court Reporter*

MR. GRIVER:  Thank you, your Honor.  I am sometimes better when I stand.

A lot of times, this case has become somewhat surreal, but I think this motion takes the cake.  There is a museum in Cairo, Egypt called the October War Museum that is dedicated to the proposition that Egypt won the 1973 Yom Kippur war.  It looks like a museum.  You go in, there are exhibits on the second floor, you can watch a film on the third floor.  There is a diorama -- it's really nice.  It is a moving diorama, 360 degrees, all dedicated to the idea that Egypt won that war; right?  Only problem is it's not true.

So, you go to someone who is at the museum, you know, a guide and you say, well -- but Egypt lost the war.  And he says, no, no, but look at that piece of paper, look at that newspaper article where it says it won.  Look at this piece of shrapnel.  Look at this tank we captured from the Israelis; all of this proves that we won; right?  And you can buy T-shirts and everything and it looks real until you really look at it and you realize that they are only talking about the first day of the war and they completely ignore 99 percent of what happened; okay?

Mr. Allingham gets up here and says, oh, well, we settled with the Trump -- we settled with the Orly

1

2      Trust; right?  Well, you know what?  You have to look

3      at the language of the CSA because the Orly Trust is

4      expressly excluded from the settling parties.

5      Mr. Allingham tried to get the trust claims included

6      and the Orly Trust included --

7              THE COURT:  Which Orly entities settled?  There

8      is three in all, I take it?

9              MR. GRIVER:  No.  There is the AG Group settled

10     so the Brosers settled, Arie settled --

11             THE COURT:  I don't consider them -- the Orly

12     people are Orly individually, Orly as beneficiary of

13     the trust and the Orly Trust; is that right?

14             MR. GRIVER:  Orly settled and it says it right

15     there:  Orly Genger in her individual capacity and in

16     her capacity as beneficiary of the Orly Genger 1993

17     trust.

18             THE COURT:  And as beneficiary.

19             MR. GRIVER:  And as beneficiary.

20             But the Orly Trust itself is expressly excluded

21     from the A.G. Group settling parties and is expressly

22     defined as a member of the nonsettling Sagi Group.

23             THE COURT:  Is that your understanding,

24     Mr. Allingham?

25             MR. GRIVER:  That is Page 3, by the way.

26             MR. ALLINGHAM:  It is, your Honor.  That is the

1

2      way the agreement reads.

3              When Justice Feinman in --

4              THE COURT:  That's the end of it.  So the Orly

5      Trust is not settled.

6              MR. GRIVER:  That is the language that he signed

7      in exchange.

8              MR. ALLINGHAM:  It's more complex than that.

9              MR. GRIVER:  You know what else is in that?  Any

10     changes to that have to be in writing, agreed to by all

11     the parties, and we don't agree and there is no

12     writing.  He is talking about what he wanted and there

13     is also a -- where everything, all prior agreements, et

14     cetera, are merged.  There is a merger clause in there,

15     as well.

16             THE COURT:  Oh, no, do I perceive another action

17     or motion?

18             MR. GRIVER:  No, I don't believe so, your Honor,

19     because here's what also happened.  There was a second

20     amended stipulation of dismissal where we crossed out,

21     by hand, because it was mistakenly put in -- crossed

22     out by hand and your Honor was concerned about it and

23     that's why it became the second amended stipulation of

24     dismissal because that language was taken out.  And the

25     language that was taken out was any idea that the Orly

26     Trust settled the claims as part of that confidential

*Eric Allen*
*Official Court Reporter*

settlement agreement, the Orly Trust was removed and,

indeed, the Orly Trust remained -- the claims of the

Orly Trust remained, specifically in that second

amended stipulation of dismissal, which allowed the two

injunctions -- the injunctions against the Trump Group

and the injunctions against everybody else, including

Dalia Genger -- to pursue her claims in Delaware --

THE COURT:  So you agree with Ms. Bachman on

that; that the Orly Trust claims remain and --

MR. GRIVER:  The Orly Trust claims remain --

THE COURT:  So the only issue remains, of

course, whether Dalia should be substituted, which I

take it -- but you say the trust claims remained --

does everybody agree?

MR. GRIVER:  No, it remained.  The second

amended stipulation of dismissal, which dismissed

Orly's claims as an individual and as a beneficiary is

what happened in this court.  As part of that

stipulation, the claims of the Orly Trust were not

settled -- were not dismissed and Ms. Bachman and Dalia

were permitted to reinvigorate a lawsuit in Delaware

that they had commenced claiming the right to the

shares and go moving against the Trump Group and TPR,

et cetera; right?

We had gotten those stayed previously because

*Eric Allen*
*Official Court Reporter*

our concern was that Dalia would not vigorously pursue

those claims on behalf of the Orly Trust.

Dalia went down to Delaware, immediately settled

with TPR and with the Trump Group. Now, if her claims

had already been settled two months before, then what

was she doing down in Delaware? But she went down to

Delaware. She didn't come in at the time and say, hey,

wait a second, wait a second, I want my moneys. No.

She went down to Delaware, settled with everybody else,

TPR and the Trump Group, and it was that settlement

that caused the 1st Department to dismiss the claims

here because they said there is nothing left because of

the Delaware stipulation.

So, Dalia has already taken care of it and

because of that there are no claims left. The Court of

Appeals has so ruled, the 1st Department has so ruled

that the fact that we are here arguing about her

attempt to substitute herself in when she settled

already as a trustee -- she gets one chance to settle.

We gave you the Delaware stipulation. That's what she

says. She makes findings of fact that are -- that help

Sagi. She makes statements that help Sagi and then

finally she settles all of her claims on behalf of the

trust claiming to properly represent the trust.

Now, that's something that we are going to raise

up in the surrogate's court.  That is another example
of Dalia misusing her power as trustee, but that has no
bearing on this.  There are no claims left because the
Orly trust settled her claims in Delaware and Orly
individually and as beneficiary settled the claims with
the Trumps in the confidential settlement agreement.

The money that they are trying to get now is
above the $10 million that the Delaware settlement
caused to be given to TPR and that's the Keenan
decision.  The Keenan decision was, well, now that the
Delaware stipulation exists and the Orly Trust is
decided, that everything's okay with the Orly Trust,
well, then the sale of the shares back in 2008, the
proceeds go to TPR.  It's in our papers.

THE COURT:  I am shaking my head nodding just to
the extent that I understand what you are saying.

MR. GRIVER:  Right, okay.

Very simply, Orly settled with the Trumps in
June.  The Orly Trust settled with the Trumps in
August, two months later.

Now, we go to -- and the main point, your Honor
is there are no claims left and since there are no
claims left, her substitution motion just fails.  It's
that simple.

Then we go to the second part of her claim,

which is CPLR 2701.  She wants the proceeds of Orly's
settlement with the Trumps to be paid into court and
she just can't do that.  Most attorneys, I think, would
simply read the language of the statute to determine
that the language of the statute bars their ability to
bring a motion and stop right there, but that's not
what happened here.  What happened here is that they
proceeded nonetheless.  And the motion to have the
proceeds paid in court doesn't work because under CPLR
2701, that CPLR provision, your Honor, is designed very
narrowly to take care and protect moneys that are the
subject of an action.  And there are three sub parts.

First of all, it has to be the subject of an
action.  The moneys that are the settlement with the
A.G. Group but not the Orly Trust are not part of the
2010 case which, in any event, no longer exists.

But you can go and look at each one of the
individual subparagraphs and see that it doesn't work.

The fourth one is if a third party is a trustee
and is holding the money, like the comptroller of the
-- the State comptroller.  The State comptroller has,
let's say, death benefits.  The person has died.  It is
claimed both by the beneficiary of the will and by the
ex-wife who is named in the policy for the death
benefits.  They are fighting over that specific sum of

1

2    money and the comptroller has to pay it to somebody so

3    he pays it into court on a monthly basis until the

4    court rules does widow A get it or widow B get it.

5    That's clearly not the situation here.

6         The second one is where there are special

7    circumstances that make it desirable that payment be

8    made to -- that payment be made into the court instead

9    of two the parties.  Well, as Mr. Allingham correctly

10   noted, some of the money has already been paid, some of

11   the money will be paid and there are no special

12   circumstances here that should delay any of that.

13   There is no evidence that they have come in that said

14   that there is a special circumstance that requires the

15   court to protect the moneys.  There is not even a claim

16   against those moneys in a court of law.

17        Third is the situation where ownership of the

18   property will depend on the outcome of the pending

19   action.  That also is inapplicable here.  There is no

20   pending action, number one.  And, number two, even if

21   there was, you can look at all the counterclaims, all

22   of the cross-claims, all of the original claims, none

23   of it has to do with the confidential settlement

24   agreement so it simply does not apply.

25        And it can't serve as a legal basis for what

26   Dalia is attempting to do.  She made her own decision

1

2       to settle and she settled it as she saw fit; in a way

3       that was destructive to Orly and we'll take care of

4       that later, but in a way that she decided to settle

5       those claims.   There is a stipulation in Delaware and

6       they ignore that.   They ignore the second amended

7       stipulation of dismissal in this court and what

8       happened -- the fact that they went ahead and then used

9       that stipulation to say, oh, there are still claims for

10      Orly Trust.   Now they are claiming that the Orly Trust

11      claims didn't even exist at the time that they went

12      into Delaware and how is that possible?   And

13      Mr. Allingham chooses to ignore the actual language of

14      the confidential settlement agreement which he cannot

15      do because he negotiated that language, he chose to

16      have his client sign that language and for him to come

17      in and say well let me explain to you how the language

18      should be ignored is improper, entirely so.

19            So, I am going to sit down and say nothing else.

20      Thank you.

21            MR. MONTCLARE:   Thank you, your Honor.   Paul

22      Montclare for Arie Genger.

23            I have just a few things to say.   I have to say

24      I agree with everything that Mr. Griver said.   It's not

25      to have him back in the courtroom.

26            It seems to me that we can address this really

*Eric Allen*
*Official Court Reporter*

1

2      pretty simply.  There is no action for her to

3      substitute into.  I mean, how can you substitute into

4      an action that's been completely dismissed, has been

5      completely affirmed, there is now no leave-to-appeal

6      motion pending to the Court of Appeals.  She is going

7      to be substituted in for Orly who lost the case against

8      the Trumps who are no longer in the case.  I mean, that

9      should end the whole analysis.  I don't understand why

10     we need to go past that.

11             The issue with respect to the confidential

12     settlement agreement, on behalf of Arie Genger, we were

13     a party to that agreement and they want to come in and

14     interfere with our property rights by just saying, oh,

15     we want it paid into court.  What action is there to

16     deprive us of our property rights being brought by --

17             THE COURT:  Well, I think what Mr. Griver

18     mentioned in his list of subdivisions of 2701, the only

19     one that piqued any interest was special circumstances,

20     so what about that?

21             MR. MONTCLARE:  But there are no -- there has to

22     be an existing action, your Honor.  There is no

23     existing action.

24             THE COURT:  So that -- you still need an

25     existing action for there to be special circumstances.

26             MR. MONTCLARE:  Yes.  Otherwise what do we just

1

2       have people walking in off the street and into court

3       and asking for an application to pay it into court?

4                THE COURT:  It happens all the time.

5                MR. MONTCLARE:  They could have early on tried

6       to get an attachment of that.  They could have done a

7       lot of things but the procedural mechanism they have

8       chosen is a little unusual.

9                But it's not grounded in anything.  I think --

10      and also, it proceeds from a false assumption of what

11      their -- what they conceded in Delaware, which I am not

12      going to repeat; why we settled with Mr. Allingham's

13      clients in Delaware at a time when there are open

14      issues that made settlement possibility.  Much to my

15      great disappointment, that is no longer the case.  That

16      case is over against the Trumps.  It's over.

17               And the reason she wants to substitute in is to

18      basically to sue the Trumps.  And that makes no sense

19      at all to me.

20               THE COURT:  Okay, thank you.

21               I think --

22               MR. DELLAPORTAS:  Very briefly, your Honor.

23               Three quick points:

24               Number 1, Orly Genger brought claims in this

25      case on behalf of the Orly Genger 1993 Trust.

26               Number 2, Orly Genger and her father got or are

1

2      going to get $32.3 million in settlement of those

3      claims and, number 3, those claims are no more and we

4      join in Ms. Genger's -- Mrs. Dalia Genger's position

5      that the money should be paid into court.

6            Subject to that, we respectfully disagree with

7      the comments of Mr. Montclare and Mr. Griver, except to

8      the extent that Mr. Griver described the Cairo museum,

9      which I have been to as well and I think it is an

10     accurate description of it.

11           And with that, we rest on our papers.

12           THE COURT:  Thank you.

13           MS. BACHMAN:  May I add something, your Honor?

14           THE COURT:  Sure.

15           MS. BACHMAN:  With regard to, I think, the

16     Court's very pointed question to Mr. Griver and

17     Mr. Allingham, who were the settling parties?  And I

18     think the Court described, at least conceptually, three

19     possibilities:  Orly as beneficiary and Orly

20     individually --

21           THE COURT:  Those were settled.

22           MS. BACHMAN:  Apparently.  Apparently that's

23     what Mr. Griver is saying.

24           THE COURT:  Signed, sealed, delivered.  You saw

25     the agreement.

26           MS. BACHMAN:  I have now seen the agreement.

*Eric Allen*
*Official Court Reporter*

1

2        The mystery party is what happened to the Orly

3   Trust.

4        THE COURT:  And that was in Delaware.  Kaputski

5   (phonetic) in Delaware; no?

6        MS. BACHMAN:  As I understand it, this case was

7   a derivative case presently pending today.  That's what

8   Orly described in her complaint, her claims to be.  She

9   is bringing this action, quote, "on behalf of the Orly

10  Trust as beneficiary of the Orly Trust to protect her

11  interest thereunder."  Her claim, as I understand it --

12  and unfortunately you have had a longer tenure in this

13  than I have -- but as I understand, it were purely

14  derivative claims.  I understand that she said in the

15  caption Orly Genger individually and on behalf of the

16  Orly Trust but the real claims were with regard to what

17  was done with the Orly Trust shares.  For them to say

18  she settled as a beneficiary and somehow that's

19  different than the trust is a distinction without a

20  difference.  If you are a beneficiary, you are, I

21  believe, saying I have a derivative right to sue

22  because the trust is not protecting my interest as the

23  beneficiary.

24        I don't understand how you can split that

25  difference and say, no, the beneficiary is something

26  different than the trust.  They have to be merged and

*Eric Allen*
*Official Court Reporter*

1

2          that's what she did in her complaint.

3                    And the entire settlement agreement is replete

4          with all of those references.

5                    It says, in defining who the A.G. Group is, that

6          Orly Trust, in quote, "all her capacities." It doesn't

7          say in her individual capacity --

8                    THE COURT:  What about the second agreement?

9          Are you focusing on the second?

10                   MS. BACHMAN:  I am looking at what I believe to

11         be the actual -- the CSA.

12                   THE COURT:  The one where there is a writing, "I

13         wrote in" or something.

14                   MS. BACHMAN:  Correct.

15                   THE COURT:  I'm on Page 1 of that.

16                   MS. BACHMAN:  I am actually looking at the

17         settlement agreement itself, what she actually did.  On

18         Page 1 of that settlement agreement, it says -- it

19         defines Orly as "Orly Genger in all capacities."

20                   So, while they may be playing convenient word

21         games here -- I hope they are not -- but the settlement

22         agreement itself belies what I believe Mr. Griver is

23         trying to convince this Court of; that somehow there is

24         this distinction, this magical distinction that he is

25         now conveniently drawing which they weren't drawing in

26         the settlement agreement itself.

*Eric Allen*
*Official Court Reporter*

THE COURT:  Even assuming you are right, which I
am not sure you are, but assuming you are right, so
what?  If it was all settled, if two of the entities
settled in one way or the other and then Dalia went
down and settled with the Trump Group and TPR in
Delaware, what's left and why is there something left?
That's what I want to know.

MS. BACHMAN:  At least as I understand the
context of the Delaware settlement, it was motivated --
and if you look at the confidential settlement
agreement, it calls for the settlement of that Delaware
case.  It says go settle that case.  Orly --

THE COURT:  It doesn't say go settle it.  It
says something else; right?

MR. MONTCLARE:  Cooperate.

MR. GRIVER:  Cooperate.

MS. BACHMAN:  It says Orly will cause.

THE COURT:  Cause.

MR. GRIVER:  No, Orly will take efforts to
cause.

THE COURT:  Something like that.  It's a little
squishy.

MS. BACHMAN:  A little squishy, but the concept
is clearly there.  If he wants to look at the words,
which I think he had a part in drafting, that was idea.

*Eric Allen*
*Official Court Reporter*

1

2          The idea was we're buying peace, as Mr. Allingham said.

3          We're doing the best we can.  We don't want to hear

4          from you again.  Go away and make sure, as best you

5          can, this all goes away.

6                  THE COURT:  So why is something left?  That's

7          what I don't understand.

8                  MS. BACHMAN:  A, it's unclear if something is

9          left or not.  But even if it's not, fine, they settled

10         those cases.  They settled those claims and they got

11         paid for it.  If she brought this case as a derivative

12         plaintiff and she got paid for her derivative claims,

13         it is black letter law that that money, those

14         settlement proceeds on behalf of the derivative

15         plaintiff go to the principal.  They don't belong to

16         the individual.

17                 THE COURT:  Aren't you too late?

18                 MS. BACHMAN:  How so?

19                 THE COURT:  It settled.

20                 MS. BACHMAN:  But the payment hasn't been made

21         yet.

22                 THE COURT:  I don't know.  It sounded like it

23         was.  And does it matter?  Does it matter that it

24         hasn't been paid?  Even if it hasn't been, the

25         agreement has been entered, it's -- is there a judgment

26         or something?

1

2          MR. ALLINGHAM:  Your Honor entered a stipulation

3      of dismissal and we have paid $17.25 million plus

4      interest and we are obligated on two more notes.

5          THE COURT:  As he said, it sounds like that ship

6      has sailed.

7          MS. BACHMAN:  There is $15 million that they owe

8      to the settling parties.  If you want to call that

9      spare change, I will take that change.  That's fine.

10         Mr. Griver talked about the fact that these --

11     the cases that I cited talk about a future stream of

12     payment; right?  He is talking about widows and orphans

13     getting paid in the future.  That is, by definition,

14     what this is.  We are talking about a future stream of

15     payment for claims that were settled.  Yes, the claims

16     were settled.  Mr. Allingham said repeatedly that he

17     bought peace.  The Orly Trust settled its claims under

18     the settlement agreement.  Otherwise, if -- as I

19     understand the Court's concern, if they settled the

20     claims, took all the money and we were not a party to

21     it, then they shouldn't have been in power to settle in

22     the first place.  They can't have it both ways.  They

23     can't settle the claims and take the money and then say

24     it's too late.  Either they settled the derivative

25     claims and money belongs to the trust or they didn't

26     settle the claims and those claims are out there and we

*Eric Allen*
*Official Court Reporter*

1

2   have the right to pursue them.

3         THE COURT:  I'll read your papers because I am

4   not quite sure I get it.

5         MR. GRIVER:  Your Honor, just very quickly.

6   Notice that she talks about the complaint.  She does

7   not talk about what happened in the settlement and she

8   misquotes the CSA.  The CSA is executed by the A.G.

9   Group and the Trump Group.  That's on Page 1.

10        Two defined groups:  The A.G. group is

11  specifically defined to be Orly Genger in her

12  individual capacity and in her capacity as beneficiary

13  of the Orly Genger 1993 trust.  The Orly Trust is

14  expressly excluded and on Page 3 is included with a

15  group called the Sagi Group which identifies the

16  nonsettling parties.  It's very simple.  There is an

17  entire agreement clause.  We have to amend it only by a

18  writing signed by all of the parties, so that language

19  is what controls; not the complaint but the language of

20  the settlement.

21        The second amended stipulation of dismissal,

22  Ms. Bachman wasn't here jumping up and down and saying,

23  hey, I have to be part of this because it's settling

24  the Orly Trust shares.  Instead, the Orly Trust was

25  specifically careted out and, in fact, Dalia, on behalf

26  of the Orly Trust, supposedly as the trustee, then

1

2      later went down to Delaware.  And she didn't say, hey,

3      you know what?  Good news.  All of my claims in this

4      case have been settled so see you later.  Bye.  She

5      went to the court and she said there is an existing

6      case, I have existing claims and here is the

7      settlement.  And when Orly went down and tried to get

8      involved in that settlement, then Dalia and her counsel

9      said, no, didn't listen to what Orly had to say and

10     then settled it against Orly's desires.

11          So for her to say, well, there is a provision

12     that says that Orly should attempt to get the Orly

13     Trust to settle, Orly wasn't involved in the

14     settlement.  She didn't cause the settlement in any

15     way, shape or form.

16          Please look at our papers and -- because our

17     papers are the only ones, the only ones to talk about

18     what actually happened; okay?  The rest of it, what

19     Ms. Bachman is talking about, she is talking about the

20     first day of the Yom Kippur war.  She knows the next

21     two weeks.  They may win this case in Egypt.  They will

22     not win in case before this Court.

23          MR. ALLINGHAM:  Your Honor, may I?

24          THE COURT:  If it's something you haven't

25     said --

26          MR. ALLINGHAM:  It's not something I have not

*Eric Allen*
*Official Court Reporter*

1

2   said.

3        What emerges from all of the arguments is that

4   everyone agrees that no claims remain for Dalia to pick

5   up, so the motion for substitution should be denied.

6        I agree with Mr. Griver that the Orly Trust

7   settled with the Trumps at some point.  He and I have a

8   disagreement about at what point.  Actually, we don't

9   even have a disagreement about at what point.  I

10  believe that the Orly Trust settled with the Trumps in

11  June in the settlement agreement.  I believe that the

12  Orly Trust settled with the Trumps in August in

13  Delaware --

14        THE COURT:  How can they do it twice?

15        MR. ALLINGHAM:  Your Honor, if you were in my

16  position and you had been involved in this litigation

17  as long as --

18        THE COURT:  I understand.

19        MR. ALLINGHAM:  I was looking for the

20  Delaware --

21        THE COURT:  It's belts and suspenders.

22        MR. ALLINGHAM:  -- the Delaware guarantee with

23  respect to title.  I was looking for whatever

24  protection I could get.

25        THE COURT:  Okay.

26        MR. ALLINGHAM:  Now, as to whether Orly could

*Eric Allen*
*Official Court Reporter*

1

2        settle as a beneficiary of the Orly Trust or

3        derivatively on behalf of the Orly Trust, Justice

4        Feinman, on January 3rd, 2013, found that Orly had

5        derivative standing to bring claims on behalf of the

6        Orly Trust.  I argued that she didn't.  I lost.

7        Justice Feinman found that she did and that ruling is

8        law of the case.

9              Orly had derivative standing to bring claims on

10       behalf of the Orly Trust, according to Justice Feinman.

11       In what capacity?  I can't think of any other -- there

12       may be someone, but I can't think of any other capacity

13       than as the beneficiary.  So I believed in June that

14       when we said she is settling individually and as

15       beneficiary of the Orly Trust, I got a release of the

16       claims that were made against me derivatively by the

17       Orly Trust.  But, as Mr. Griver says, in August we got

18       a release and dismissal from the Orly Trust in

19       Delaware.

20             THE COURT:  Thank you.

21             MR. ALLINGHAM:  What is clear, though, is that

22       we have a release and a dismissal of the Orly Trust

23       claims.  Everyone seems to agree to that and there are

24       no claims pending here to substitute it.

25             THE COURT:  So it seems, but I will read your

26       papers and I will keep an open mind and I will issue a

1

2      decision.

3             It's your motion, so you will upload this

4      transcript in the E-Filing system.  I see I have a nice

5      file here.  If I don't have hard copies of memos,

6      affirmations, affidavits, I need them all due on or

7      before April 8th.  Exhibits can remain E-Filed.

8             Thank you.

9             MR. ALLINGHAM:  Thank you, your Honor.

10             MR. DELLAPORTAS:  Thank you, your Honor.

11                    ***************

12     CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
       OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS CASE.

13

14

15                    --------------------------
                            ERIC ALLEN
16                       SENIOR COURT REPORTER

17

18

19

20

21

22

23

24

25

26

                              *Eric Allen*
                         *Official Court Reporter*

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:  Hon. BARBARA JAFFE                    PART 12
          *Justice*

ARIE GENGER and ORLY GENGER, in her individual capacity
and on behalf of THE ORLY GENGER 1993 TRUST,

                                                 INDEX NO.  651089/2010
                                                 MOTION DATE
                    Plaintiffs,                  MOTION SEQ. NO.  42
                                                 CALENDAR NO.

                      - v -

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC.,    INTERIM ORDER
DALIA GENGER, *et al.*,

                    Defendants.

The following paper, numbered 1, was read on this motion.

|                                                              | PAPERS NUMBERED |
|--------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... |                 |
| Answer — Affidavits — Exhibits                               |                 |
| Replying Affidavits                                          |                 |

Cross-Motion:  ☐ Yes  ☐ No

**MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE** _____  *J.S.C.*

        Defendant Dalia Genger's motion for an order substituting her, as trustee, as plaintiff for
Orly Genger's Trump Group claims, and for an order pursuant to CPLR 2701 directing that the
Trump Group settlement fund be paid into Court is held in abeyance pending the Surrogate's
Court's resolution of Orly Genger's petition to remove Dalia Genger as trustee of Orly Trust.
(*See Genger v Genger*, interim order dated Apr. 1, 2015, index No. 113862/2010 [mot. seq. no.
2]).

Dated:  __5/7/15__                    _____
                                              J.S. BARBARA JAFFE
                                                    J.S.C.

Check one:  ☐ FINAL DISPOSITION      ☐ NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST  ☐ REFERENCE

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
In the Matter of the Petition of Dalia Genger, as Trustee of
the Orly Genger 1993 Trust, Created by Trust Agreement
Dated December 13, 1993 between ARIE GENGER,
as Grantor, and LAWRENCE M. SMALL and
SASH A. SPENCER, as Trustees, to Turnover Property
o the Orly Genger 1993 Trust.

------------------------------------------------------------------------x

    DALIA GENGER,
    Trustee of the Orly Genger 1993 Trust,

        Petitioner,                  Index No. 2008-0017/E

            -against-

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC     AFFIRMATION OF
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,  SERVICE OF
TRANS-RESOURCES, LLC, AS SUCCESSOR TO     AMENDED PETITION
TRANS-RESOURCES, INC., ARNOLD BROSER,
DAVID BROSER, JOHN DOES. 1-20, and
JANE DOES 1-20,

        Respondents,
------------------------------------------------------------------------X

New York County Surrogate's Court
MISCELLANEOUS DEPT.

APR 2 5 2018

FILED

Clerk

      Judith Bachman, an attorney duly admitted to practice before the Courts of the State of New

York, affirms under the penalties of perjury that: on April 16, 2018, the undersigned served the

within Amended Petition, with supporting papers, on the attorneys set forth below at their respective

addresses set forth below, by depositing one (1) true copy of the same, enclosed in a postpaid,

properly addressed overnight mail wrapper, in an official depository of Federal Express located

within New York State.

John Boyle
Skadden, Arps, Slate, Meagher & Flom
4 Times Square
New York, New York

Michael P. Bowen
Kasowitz, Benson
1633 Broadway
New York, New York

Mitchell D. Goldberg
The Freyberg Law Group
950 Third Avenue, 32nd Floor
New York, New York

Leon Friedman
685 Third Avenue, 25th Floor
New York, New York

John DellaPortas
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

Dated: April 16, 2018
        New City, New York

_____
Judith Bachman

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,
    Petitioner,

  -against-

Orly Genger, et al.,
    Respondents.

## NOTICE OF MOTION TO DISMISS BY RESPONDENT ARIE GENGER

PLEASE TAKE NOTICE that upon the attached affirmation of Leon Friedman, dated

May 4, 2018, the Respondent Arie Genger will move this Court, located at 31 Chambers Street.

New York, N.Y. 10007, Room 509, on June 1, 2018 at 10.00 A.M. or as soon thereafter as

counsel may be heard, for an order pursuant to SCPA Section 102 and CPLR Sections 3211

(a)(4), (5), (7) and (8) dismissing the pending "Amended Petition" brought by Petitioner Dalia

Genger and for such other relief as the court deems just and proper.

PLEASE TAKE FURTHER NOTICE that pursuant to CPLR 2214(b) answering papers,

if any shall be served at least seven days prior to the return date of this motion.

Dated: New York, N.Y.
    May 4. 2018

*Leon Friedman*
Leon Friedman
685 Third Avenue. 25th floor
New York, N.Y. 10017
(646) 825-4398
Attorney for Respondent Arie Genger

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust, Petitioner, -against- Orly Genger, et al., Respondents. | |

## AFFIRMATION OF LEON FRIEDMAN IN SUPPORT OF MOTION TO DISMISS BY RESPONDENT ARIE GENGER

LEON FRIEDMAN, an attorney duly admitted to practice in the courts of the state of New York, affirms the following under penalties of perjury:

1.    I am the attorney for respondent Arie Genger. I make this affirmation in support of a motion to dismiss the "Amended Petition" brought by Petitioner Dalia Genger.

2.    Previously, Dalia had attempted to serve various parties with copies of a purportedly new action in December, 2017. Orly Genger, Arie Genger and other respondents then filed various motion to dismiss on February 4, and 5, 2018. Those motions are still pending before this court.

3.    Thereafter, Dalia's attorney, Judith Bachman, sent by mail a new "Amended Petition" to me, as Arie Genger's attorney, on April 18, 2018. She apparently believes that such a

1

mailing to an attorney constitutes service of the petition upon my client. I immediately informed her that I was not accepting service of the papers on behalf of Mr. Arie Genger.

4.      As noted in our previous motion to dismiss, the only papers actually served on *Arie Genger* (as opposed to his lawyers) was a two page document entitled "Miscellaneous Citation." dated December 21, 2017. (Attached as Exhibit A.) That document was sent to a former address of Arie Genger in Florida. It was then forwarded to the new address and Mr. Genger obtained it at a post office on January 22. 2018. (See Exhibit B). No petition actually accompanied the two page document.

5.      As noted above, we had previously submitted a motion to dismiss to this Court on February 4, 2018, noting that Mr. Arie Genger had not been served with the petition or any amended petition. (Affirmation of Leon Friedman In Support of Motion To Dismiss by Respondent Arie Genger, dated February 4, 2018, par. 2).

6.      In the previous motion to dismiss served by Orly Genger, she asserted:

> She [Dalia] attempted to serve that document [the citation] on certain of the named respondents, including Arie Genger, Orly's father and the former husband of Dalia. But she never attempted service of the underlying documents – including the petition itself in this New Action or any of its numerous exhibits – on any respondent.

See Memorandum of Law in Support of Respondent Orly Genger's Motion to Dismiss Dalia Genger's 2016 Petition, dated February 5, 2018, at p. 7,

7.      *Nowhere in Dalia's answering papers to the original motion did she challenge the assertions noted above that the underlying petition, as opposed to the two page citation, were properly served on Arie Genger*. On that basis and on the basis of the legal memorandum submitted by Orly Genger on her motion, the "Amended Petition" must be dismissed.

8.      In every other respect, Arie Genger is in precisely the same position as his daughter Orly Genger.as described in her moving papers in this action. Arie Genger hereby

2

incorporates and adopts all of the arguments made by Orly Genger in her filing before this Court in this matter.

9.      For the reasons stated above, Respondent Arie Genger moves that the pending "Amended Petition" be dismissed.

Affirmed under penalties of perjury.

Dated: New York, N.Y.
        May 4,, 2018

Leon Friedman
685 Third Ave, 25th floor
New York, N.Y. 10017
(646) 825-4398

3

# EXHIBIT A

Miscellaneous Citation

File No. *2008-0017* / *E*

## SURROGATE'S COURT NEW YORK COUNTY

### *Citation*

THE PEOPLE OF THE STATE OF NEW YORK

TO:
ORLY GENGER,
ARIE GENGER,
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC,
NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC.,
ARNOLD BROSER,
DAVID BROSER,
SAGI GENGER 1993 TRUST

A petition having been filed by Dalia Genger, who is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

YOU ARE HEREBY CITED TO SHOW CAUSE before the Surrogate's Court, New York County, at 31 Chamber Street, Room *509*, New York, New York on *February 6* , 20*18* at 10 o'clock in the forenoon of that day, why a decree should not be made *Concerning the Orly Genger 1993 Trust created by Trust Agreement, dated December 13, 1993 between Arie Genger, as Grantor and Lawrence M. Small and Sash A. Spence as Trustees,* granting the following relief as requested in the petition:

    a.    damages in in the amount of $32.3 million, plus statutory interest;

    b.    imposition of a constructive trust on the Settlement Proceeds;

    c.    an order directing the delivery of the Settlement Proceeds to her as Trustee;

    d.    an accounting of the Settlement Proceeds, and

e.   such other relief as to the Court seems just and necessary.

Dated, Attested and Sealed.

December 21, 2017

Hon. Nora S. Anderson , Surrogate

Diana Sanabria Chief Clerk

JUDITH BACHMAN, ESQ
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

[Note: This citation is served upon you as required by law. You are not required to appear. If you fail to appear it will be assumed you do not object to the relief requested. You have a right to have an attorney appear for you.]

> **PROOF OF SERVICE MUST BE FILED**
> **TWO DAYS PRIOR TO THE RETURN DATE**
> Court Rule 207.7 (c)

**EXHIBIT B**

JUDITH LISA BACHMAN. ESQ
254 SOUTH MAIN STREET. STE. 406
NEW CITY. NY 10956

PERSONAL AND CONFIDENTIAL

ARIE GENGER
17001 COLLINS AVENUE
SUNNY ISI ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

CERTIFICATE OF SERVICE

I hereby certify that I am not a party to this action, am over 18 years of age and reside at 148 East 78th Street, New York, N.Y and that I am an attorney duly admitted to the Courts of the State of New York.

On May 4, 2018, I served a copy of the annexed Notice of Motion to Dismiss with accompanying affirmation of Leon Friedman in the following manner:

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Judith Bachman
254 S. Main Street, Suite 406
New City, N.Y. 10956

Dated: May 4, 2018

Leon Friedman

I,

**Attorney's Certification** ☐ certify that the annexed
has been compared by me with the original and found to be a true and complete copy thereof.

**Attorney's Verification by Affirmation** ☐ say that: I am the attorney of record, or of counsel with the attorney(s) of record, for
. I have read the annexed
know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following.

The reason I make this affirmation instead of                        is

I affirm that the foregoing statements are true under penalties of perjury.
Dated:

...........................................................................
*(Print signer's name below signature)*

STATE OF NEW YORK, COUNTY OF                              ss:
being sworn says: I am

**Individual Verification** ☐ in the action herein; I have read the annexed
know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

**Corporate Verification** ☐ the                              of
a corporation, one of the parties to the action; I have read the annexed
know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based upon the following:

Sworn to before me on                              , 20

...........................................................................
*(Print signer's name below signature)*

...........................................................................

STATE OF NEW YORK, COUNTY OF                              ss:
being sworn says: I am not a party to the action, am over 18 years of age and reside at
On                              , 20   , I served a true copy of the annexed
in the following manner:

**Service by Mail** ☐ by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service, addressed to the address of the addressee(s) indicated below, which has been designated for service by the addressee(s) or, if no such address has been designated, is the last-known address of the addressee(s):

**Personal Service** ☐ by delivering the same personally to the persons at the address indicated below:

**Service by Facsimile** ☐ by transmitting the same to the attorney by facsimile transmission to the facsimile telephone number designated by the attorney for that purpose. In doing so, I received a signal from the equipment of the attorney served indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service, addressed to the address of the addressee(s) as indicated below, which has been designated for service by the addressee(s) or, if no such address has been designated, is the last-known address of the addressee(s):

**Service by Electronic Means** ☐ by transmitting the same to the attorney by electronic means upon the party's written consent. In doing so, I indicated in the subject matter heading that the matter being transmitted electronically is related to a court proceeding:

**Overnight Delivery Service** ☐ by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee(s) for that purpose or, if none is designated, to the last-known address of addressee(s). Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

Sworn to before me on                              , 20

...........................................................................

...........................................................................
*(Print signer's name below signature)*

*Check Applicable Box*

*Index No.*   **2008-0017/E**        *Year 20*

## SURROGATE'S COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

**In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, to Turnover Property to the Orly Genger 1992 Trust**

**Dalia Genger, Trustee of the Orly Genger 1993 Trust**
                                        **Petitioner**

-against-

**Orly Genger, et al**

                                        **Respondents**

## NOTICE OF MOTION TO DISMISS WITH
## AFFIRMATION OF LEON FRIEDMAN

### LEON FRIEDMAN

*Attorney for*   **Respondent Arie Genger**

685 THIRD AVENUE, 25TH FLOOR
NEW YORK, NEW YORK 10017
(646) 825-4398

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:* ................................        Signature ..........................................................

                                        Print Signer's Name ............................................

*Service of a copy of the within*                                *is hereby admitted.*

*Dated:*

                                        ..........................................................
                                        *Attorney(s) for*

*PLEASE TAKE NOTICE*

Check Applicable Box

☐
NOTICE OF
ENTRY
*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within-named Court on*                20

☐
NOTICE OF
SETTLEMENT
*that an Order of which the within is a true copy will be presented for settlement to the*
*Hon.*                          , *one of the judges of the within-named Court,*
*at*
*on*                    20        , *at*                    M.

*Dated:*

                                        **LEON FRIEDMAN**

                *Attorney for*

                                        685 THIRD AVENUE, 25TH FLOOR
                                        NEW YORK, NEW YORK 10017
                                        (646) 825-4398

*To:*

*Attorney(s) for*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner

    -against-

Orly Genger, et al.,

    Respondents.



New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAY 0 7 2018

FILED
Clerk_____

## NOTICE OF MOTION TO DISMISS AMENDED PETITION

PLEASE TAKE NOTICE, that upon the Affirmation of Michael Paul Bowen, dated May 7, 2018, and all exhibits attached thereto, the accompanying Memorandum of Law, dated May 7, 2018, and all prior pleadings and proceedings heretofore had herein, petitioner Orly Genger will move this Court, at 31 Chambers Street, New York, New York 10007, Room 509, on June 1, 2018 at 10:00 a.m., or as soon thereafter as counsel can be heard, for an Order pursuant to SCPA Section 102 and CPLR Sections 3211(a)(4), (5), (7) and (8) dismissing Dalia Genger's Amended Petition.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 2214(b), answering affidavits shall be served at least seven days before the return date of this motion.

Dated:   New York, New York
         May 7, 2018

                              KASOWITZ BENSON TORRES LLP

                              By: _____
                                  Michael Paul Bowen
                                  Andrew R. Kurland
                                  1633 Broadway
                                  New York, New York 10019
                                  (212) 506-1700

                                  *Attorneys for Respondent Orly Genger*

To:

Judith Bachman, Esq.
254 S. Main Street
Suite 306
New City, NY 10956
*Counsel to Petitioner Dalia Genger*

2

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

 -against-

Orly Genger, et al.,

    Respondents.

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK   )
                   ) ss.:
COUNTY OF NEW YORK )

JONATHAN GONZALES, being duly sworn, deposes and says:

    I am over 18 years of age, and am not a party to this action, and work at the law firm

Kasowitz Benson Torres LLP, counsel for respondent Orly Genger.  On May 7, 2018, I served

by email and First Class Mail a true and correct copy of Respondent Orly Genger's Notice of

Motion to Dismiss the Amended Petition of Dalia Genger, along with the Memorandum of Law

dated May 7, 2018 and the Affirmation of Michael Paul Bowen, dated May 7, 2018, with

exhibits, on counsel for Petitioner Dalia Genger at the following address:

    Judith Bachman, Esq.
    judith@thebachmanlawfirm.com
    254 S. Main Street
    Suite 306
    New City, NY 10956

1

Dated: New York, New York
     May 7, 2018

_____
Jonathan Gonzales


Sworn to me on this 7 day of May , 2018

_____
(notary public)

SAUDI GONZALEZ-CRAWFORD
Notary Public, State of New York
No. 01GO6115825
Qualified in Kings County
Commission Expires September 13, 2020

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
800.222.0510  www.aslegal.com

*Index No.*   0017/E            *Year 20   08*

SURROGATE'S COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust.

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

                                    Petitioner,

         -against-

Orly Genger, et al.,
                                    Respondents.

**NOTICE OF MOTION TO DISMISS, AFFIRMATION OF MICHAEL P. BOWEN
AND EXHIBITS, AFFIRMATION OF SERVICE**

*Attorney(s) for*

*Respondent   Office Address & Tel. No.:*

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR.1200.41-a.*

*Dated:*....May 7, 2018............        Signature ...........................................................................................

                                    Print Signer's Name .............Michael P. Bowen..........................................

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*

                                    *Attorney(s) for   Petitioner*

*PLEASE TAKE NOTICE*

☐  **NOTICE OF ENTRY**   *that the within is a (certified) true copy of a*
   *entered in the office of the clerk of the within-named Court on*                    *20*

☐  **NOTICE OF SETTLEMENT**   *that an Order of which the within is a true copy will be presented for settlement to the Hon.*                    *, one of the judges of the within-named Court,*
   *at*
   *on*                    *20*        *, at*            *M.*

*Dated:*

                                    *Attorney(s) for*

                                          *Office Address & Tel. No.:*

*To:*

*Attorney(s) for*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>    Petitioner,<br><br>  -against-<br><br>Orly Genger, et al.,<br><br>    Respondents. | |

New York County Surrogate's Court
MISCELLANEOUS DEPT.
MAY 0 7 2018
**FILED**
Clerk_____

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT
## ORLY GENGER'S MOTION TO DISMISS DALIA GENGER'S AMENDED PETITION

Michael Paul Bowen
Andrew R. Kurland
KASOWITZ BNESON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Respondent Orly Genger*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

RELEVANT FACTS ............................................................................................................... 4

    A.    Background and Procedural Posture ........................................................ 5

    B.    Overlapping Fact Allegations and Undisputed Facts............................. 8

ARGUMENT ......................................................................................................................... 11

    I.    THIS ACTION SHOULD BE DISMISSED AS DUPLICATIVE....................... 11

    II.    LACK OF AND DEFECTS IN SERVICE REQUIRE DISMISSAL ................. 12

    III.    DUE TO VIOLATION OF THE 120-DAY RULE, PETITIONER'S
        CLAIMS ARE BARRED BY THE APPLICABLE
        STATUTE OF LIMITATIONS............................................................... 15

    IV.    RES JUDICATA AND DOCUMENTARY EVIDENCE ALSO BAR
        THIS ACTION..................................................................................... 16

    V.    SANCTIONS ARE WARRANTED..................................................... 16

CONCLUSION...................................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acquista v. New York Life Ins. Co.,*
    285 A.D.2d 73 (1st Dep't 2001) ........................................................... 11

*Basile v. Wiggs,*
    98 A.D.3d 640 (2d Dep't 2012) ........................................................... 11

*Bell v. State,*
    96 N.Y.2d 811 (2001) ........................................................... 16

*Estate of Gardiner,*
    144 Misc.2d 797 (NY Cnty. Surrogate's Ct. 1989) ................................... 7

*Genger v. Genger,*
    144 A.D.3d 581 (1st Dep't 2016) ........................................................... 11

*Goldstein Grp. Holding, Inc. v. 310 E. 4th St. Hous. Dev. Fund Corp.,*
    154 A.D.3d 458 (1st Dep't 2017) ........................................................... 13

*IDT Corp. v. Morgan Stanley,*
    12 N.Y.3d 132 (2009) ........................................................... 15

*Kaufman v. Cohen,*
    307 A.D.2d 113 (1st Dep't 2003) ........................................................... 15

*Orly Genger v. Dalia Genger,*
    Index No. 109749/09, July 3, 2014 Decision and Order
    (Sup. Ct. N.Y. Cnty. July 3, 2014) ........................................................... 5

*Syncora Guar. Inc. v. J.P. Morgan Sec. LLC,*
    110 A.D.3d 87 (1st Dep't 2013) ........................................................... 12

*United Enters. Ltd. v. Hill,*
    185 A.D.2d 206 (1st Dep't 1992) ........................................................... 12

**Statutes and Rules**

22 NYCRR 130-1.1 ........................................................... 16

22-NYCRR 207.4(a) ........................................................... 14

CPLR 214 ........................................................... 15

CPLR 306-b ........................................................... 2, 12, 13, 15

CPLR 308.................................................................................................................................13

CPLR 320(b)..............................................................................................................................1

CPLR 1003...............................................................................................................................14

CPLR 3025.................................................................................................................................2

CPLR 3211..............................................................................................................1, 11, 12

SCPA 102.................................................................................................................1, 12

SCPA 203.................................................................................................................................14

SCPA 301.............................................................................................................,2 13, 15, 16

SCPA 307.................................................................................................................................13

SCPA 312.................................................................................................................................14

Respondent Orly Genger ("Orly"), by limited appearance, re-submits her motion, filed on

February 5, 2018, which motion seeks dismissal based on defective service and other grounds,

pursuant to SCPA Section 102 and CPLR Sections 3211(a)(4), (5), (7) and (8), and for sanctions

and award of attorney's fees.[1]

### PRELIMINARY STATEMENT

After Orly's motion to dismiss, dated February 5, 2015, was fully briefed (as were the

dismissal motions by other respondents), Dalia filed an Amended Petition. Why she waited to

do that until after the motions were fully briefed and *sub judice* is inexplicable – unless, of

course, all she sought was yet more delay and confusion, which very well may be the case given

her past conduct. In any event, as with the prior Petition, she failed to serve the Amended

Petition on any of the parties, sending it instead to counsel. With respect to Orly, the Amended

Petition is identical to the prior Petition and should be dismissed for the same reasons set forth in

Orly's prior motion. For the Court's convenience, Orly restates the legal grounds for dismissal

in this memorandum, which is directed to the Amended Petition.

This action is duplicative of another action pending before this Court, *In the Matter of the*

*Application of Orly Genger to Remove Dalia Genger as Trustee of the Orly Genger 1993 Trust*

*Established on December 13, 1993 by Arie Genger, Grantor,* Surrogate's Court File No. 2008-

0017 (the "Removal Action"). The Removal Action was filed almost **10 years ago** to remove

Dalia Genger as the trustee of the Orly Genger 1993 Trust (the "Orly Trust"). That action has

been delayed over and over again by bad faith maneuvering by Dalia and her ally Sagi Genger,

Orly's brother. This newest maneuver of filing a new action is just another bad faith delay tactic.

---

[1] A limited appearance is permitted by CPLR 320(b). Accompanying this memorandum of law is the Affirmation of Michael Paul Bowen, dated May 7, 2018, with exhibits ("Bowen Affirm."). A copy of the amended petition in this action is Exhibit A to that affirmation. All citations to "¶ __" are citations to that latest version of the petition in this new action.

In this action, filed by Dalia in June 2016 (the "New Action") – and amended in April 2018 after fully briefing motions to dismiss – Dalia purports to seek monetary damages on behalf of the trust against the trust's own beneficiary (Orly Genger).  But the operative allegations of fact and the relief sought are duplicative of Dalia's counter-petition filed in the first-filed Removal Action – a counter-petition that is the subject of a fully briefed motion to dismiss pending before this Court.

The New Action is thus duplicative of an earlier pending action that involves the exact same fact and legal issues that Dalia is trying to raise all over again purely for the sake of delay. Since these issues are being litigated and are subject to a pending motion to dismiss in the earlier Removal Action, this action must be dismissed.  It is a waste of judicial resources, to say the very least – just as Dalia wasted yet more judicial resources by waiting until the pending motions to dismiss in the New Action were fully briefed and submitted before amending as of right under CPLR 3025.

While Dalia filed this New Action with the Surrogate's Court close *to two years ago in June 2016*, she failed to obtain a citation from the Court Clerk or to serve the new petition on any party within the 120-day statutory period mandated by CPLR 306-b and SCPA 301(a). Instead, she obtained a citation some eighteen months later in December 2017 – after Orly moved to dismiss Dalia's counter-petition in the Removal Action, after that motion was fully briefed and after the parties appeared before the Court to argue that motion on December 8, 2017.  Then – well over a year too late – she tried to effect service on certain parties without seeking an enlargement of time for service.  She also failed to serve Orly at all because in her

view Orly is not entitled to service even though this is a new action, which as a matter of basic procedural rules must be served on all parties.[2]

Dalia's failure to effect service within the 120-day statutory period is not a mere technicality. She has failed to give proper notice to the interested parties. Even more importantly, because Dalia failed to meet the 120-day deadline this action has not been commenced for purposes of the applicable statute of limitations. All of the claims in this new action are premised on Dalia's claim that Orly, in her alleged capacity as *de facto* trustee for the Orly Trust, breached her fiduciary duties to the trust (*i.e.*, to herself) and seeks monetary damages against Orly and certain third-parties supposedly to replace money that Dalia claims should have been paid to the Trust. The petition in this new action alleges that Orly breached her duty in June 2013 when she entered into the Trump/AG Settlement Agreement (discussed below). The applicable 3-year statute of limitations expired in June 2016 – around the time that Dalia filed this new action. Because it was not served within the required 120-day period, the statute of limitations was not tolled and Dalia's claims are barred as a matter of law.

In addition to all these fatal defects, Dalia's claims in this New Action just repeat the legal and factual claims she already made in the counter-petition in the Removal Action. As noted, a motion to dismiss the counter-petition is pending, and to the extent those counterclaims are dismissed as legally barred or insufficient, so too should the duplicative claims in this action be dismissed.

---

[2]   This New Action was assigned Surrogate's Court File No. 2008-0017/E, which is based on the file number for the Removal Action (*i.e.*, 2008-0017). The suffix "E" indicates that this is a separate action requiring a new citation and service on all parties. That is also indicated by the fact that the caption in the New Action differs from the Removal Action. Dalia recently revised the caption in the New Action by filing an "Attorney Affirmation Amending Caption" with the Court on December 13, 2017 – right around the time she obtained, much too late, the Citation for this New Action.

But here is the real reason for Dalia's latest maneuver – which is yet further evidence of *her* continuing and compounding breaches of fiduciary duties owed to Orly: Having read the terms of the Trump/AG Settlement Agreement, Dalia believes that by naming the Trump Group parties as interested parties in this new action, however baseless and procedurally defective, she may be able to prevent the Trump Group from making any further settlement payments pursuant to that agreement. Under that agreement, certain settlement payments are to be made in installments by the Trump Group upon certain preconditions, one of which is that there are no pending legal claims by Dalia Genger against them. Her latest legal action is nothing more than yet another last-ditch attempt by Dalia to trump up some kind of claim – any claim – to embroil the Trump Group in yet more Genger-related litigation and, by doing so, to interfere with and act contrary to the interests and affairs of her only daughter, Orly.

This New Action is baseless and brought in bad faith. It should be summarily dismissed, like Dalia's counter-petition in the Removal Action, and she should be removed as trustee without any further delay.

## RELEVANT FACTS

Orly incorporates herein her submissions in support of her September 8, 2017 motion to dismiss Dalia's 2017 Cross-Petition (which is *sub judice*), including the facts and arguments set forth her Memorandum of Law in support thereof. To avoid unnecessary duplication of work and for the Court's convenience, Orly's brief in support of her dismissal motion in the Removal Action is attached hereto as Exhibit 1 and all of the legal arguments and points raised are incorporated herein.

Because Dalia's petition in the New Action – and now the Amended Petition – has different paragraph numbers and for the sake of clarity, a brief summary of Dalia's allegations, with citation to her new amended petition, is provided here.

4

A.     **Background and Procedural Posture**

Orly is the beneficiary of the Orly Genger 1993 Trust (the "Orly Trust"). Orly's

daughter, born last year, is also a beneficiary of the Orly Trust. The petitioner here, Dalia, has

been the sole trustee of the Orly Trust since January 2008, when the prior trustee appointed her

over Orly's objection. For more than a decade, Dalia has been estranged from and embroiled in

litigation against Orly, the very beneficiary to whom she owes fiduciary duties. Dalia's conduct

in the various litigations in state and federal courts has demonstrated beyond cavil her unfitness

to continue as trustee of the Orly Trust. *See, e.g., Orly Genger v. Dalia Genger*, Index No.

109749/09, July 3, 2014 Decision and Order at 3-4 (Sup. Ct. N.Y. Cnty. July 3, 2014) ("Dalia, as

trustee of the Orly Trust, has often sided with her son Sagi in these actions . . . . Dalia may no

longer be able to serve as trustee, having failed to disclose the conflict of interest [found by the

First Department] to her principal, Orly. And, as noted by the First Department, Orly has

petitioned the Surrogate's Court to remove Dalia as trustee").

In light of Dalia's blatant wrongdoing and extensive conflicts of interest, Orly petitioned

to remove Dalia as trustee in 2009, and has been pursuing her petition before this Court since

that time. After years of delay purposely manufactured by Dalia and Sagi, including multiple

rounds of motions to dismiss, at the end of June 2017, this Court denied their motions in their

entirety, allowing Orly's removal action to proceed at long last on the merits. *In the Matter of*

*the Application of Orly Genger to Remove Dalia Genger as Trustee of the Orly Genger 1993*

*Trust Established on December 13, 1993 by Arie Genger, Grantor*, File No. 2008-0017, June 21,

2017 Decision (Anderson, S.).

While Orly was continuing to pursue her petition to remove Dalia as Trustee, in a further

attempt to derail her removal, Dalia filed in June 2016 a separate petition in this Court against

5

Orly and dozens of other respondents, including 40 "John/Jane Does," asserting a panoply of

claims that are all grounded on her fundamental claim of breach of fiduciary duty and demanding

the turnover of proceeds certain respondents allegedly received from other respondents pursuant

to a settlement agreement that was reached in June 2013 (namely, the Trump/AG Settlement

Agreement, discussed below). *See* Petition for Turnover of Trust Property and Other Relief, *In*

*the Matter of Dalia Genger, Trustee of the Orly Genger 1993 Trust, Petitioner*, filed June 14,

2016, Surrogate's Court File No. 2008-0017/E.

Around the time of its filing, Dalia's counsel emailed counsel for certain respondents to

ask if they would accept service by email:

| From: | Judy Bachman · jlbesq_99@yahoo.com · |
|---|---|
| Sent: | Friday, June 17, 2016 4:40 PM |
| To: | John Dellaportas; John Dellaportas; vgrrver@zeklaw.com; john.boyle@skadden.com; pjanovsky@zeklaw.com; ljw@msk.com; pdm@msk.com; william.frank@skadden.com; blembach@zeklaw.com; Eric D. Herschmann; Herrmann Douglas; D (WIL); Herrmann Douglas; D (WIL); mitchell@oglaw.net; Michael P. Bowen; Andrew R. Kurland |
| Subject: | Petition for Turnover of Trust Property in the Orly Genger 1993 Trust |
| Attachments: | Ex 10(abayance order).pdf; Ex 7 (Orly Settlement Agreement).pdf; Ex 6 (So-Ordered Stipulation).pdf; Ex 8 (1-5-15 Forrest opinion).pdf; Ex 3 (1.2.13 Amended Decision).pdf; Ex 4 (4.9.12 Order).pdf; Ex 1 (Trust Agreement).pdf; Ex 5 (Allingham Ltr).pdf; Ex 9(transcript).pdf; Ex 2 (Orly's revised complaint).pdf; Petitionforturnover.pdf; petitioncitation.pdf; petitionfilingreceipt.pdf |

Dear Gentlemen:

The attached Petition for Turnover of Trust Property in the Orly Genger 1993 Trust was filed on June 14, 2016

Please advise if you will either accept service of the citation (once it is completed by the Court) or waiver such service.

Judith Bachman, Esq
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210 Office
845-300-1595 Cell
jlbesq_99@yahoo.com
http://www.yourlegaldepartment.net

Bowen Affirm. Ex. B.

Counsel for Orly did not respond to this email, and neither did counsel for any other

respondent.  Bowen Affirm. ¶ 4.  Accordingly, the petition, though filed in June 2016, had been

dormant for more than a year and a half before Dalia obtained a citation and attempted to serve the action.

After this Court denied Dalia's motion to dismiss Orly's decade-old petition for Dalia's removal in June 2017, Dalia filed her answer to the petition in the Removal Action and, in that action, she included a counter-petition against Orly, seeking the exact same relief based on the same fact allegations as she has set forth in her petition in this New Action. Orly filed a motion to dismiss the counter-petition on September 8, 2017. Dalia opposed Orly's motion on September 25, 2017, and Sagi (through his trust) opposed Orly's motion on September 26, 2017. The guardian *ad litem* filed a response in support of Orly's motion to dismiss on October 13, 2017, and the Court heard argument on the motion on December 8, 2017.[3]

The very next week, Dalia's counsel tried to revive this New Action by filing an affirmation in this action (*i.e.*, under File No. 2008-0017/E) to revise the caption. *See* Attorney Affirmation-Amending Caption, File No. 2008-0017/E, filed Dec. 13, 2017. Thereafter, on or about December 21, 2017, Dalia obtained the two-page Citation to serve the New Action on the purported interested parties and respondents, including Orly and the Trump entities (discussed below). She attempted to serve that document on certain of the named respondents, including Arie Genger, Orly's father and the former husband of Dalia. But she never attempted service of the underlying documents – including the petition itself in this New Action or any of its numerous exhibits – on any respondent. And Dalia did not attempt to serve even the Citation on Orly at all.

---

[3] Years ago Sagi claimed standing in the Removal Action through his trust because he claims his trust is a contingent beneficiary of the Orly Trust. However, his purported contingent interest does not actually confer standing. *See, e.g.*, *Estate of Gardiner*, 144 Misc.2d 797, 799 (NY Cnty. Surrogate's Ct. 1989) ("During the lives of [beneficiaries of the trust], the [contingent beneficiary] possesses absolutely no vested interest in the trust. Therefore, []he is not an appropriate party.").

When Orly learned from other respondents that Dalia had attempted to serve the Citation at the end of December 2017, counsel for Orly informed Dalia's counsel of the multiple procedural defects with her action. Dalia's counsel responded – erroneously – that she does "not believe it is necessary" to serve Orly with process in this proceeding, as she contends Orly is already a party to the proceeding. Bowen Affirm. Ex. C. Further, Dalia's counsel claimed that the fact that respondents had "notice" of the existence of the petition filed in June 2016 excuses her lack of proper service. *Id.*

Thereafter, all respondents – except, unsurprisingly, the Sagi Trust – filed motions to dismiss the New Action, in which they identified numerous procedural and jurisdictional defects. After briefing on the motions was complete, Dalia amended the New Action, and mailed a copy of the amended petition to respondents' counsel.

**B.      Overlapping Fact Allegations and Undisputed Facts**

The Amended Petition in this New Action purports to state numerous causes of action: Aiding and Abetting/Breach of Fiduciary Duty, Tortious Interference with Contract, Money Had and Received, Unjust Enrichment, Turnover, Accounting, and "Injunction." In amending the petition, Dalia added a cause of action for injunctive relief against certain other respondents. With respect to the purported claims against Orly, the Amended Petition is not materially different from the original New Action pleading filed in 2016.

The claims in the Amended Petition overlap with those Dalia is simultaneously pursuing in her counter-petition in the already pending Removal Action, where she also purports to state causes of action for Breach of Fiduciary Duty, Tortious Interference, Turnover, Accounting, and Unjust Enrichment. A redline comparison between the June 2016 petition in this New Action and Dalia's counter-petition in the Removal Action vividly illustrates that the fact allegations in

each overlap *verbatim* in all material respects. *See* Bowen Affirm. Ex. D (the words in black-ink appear in both documents exactly the same and the red-line strikes and additions show the changes made to the counter-petition to transform it into the petition Dalia used in the New Action). The causes of action in the New Action are also duplicative of her causes of action set forth in her pending counter-petition. *Id.* Ex. D.

The fact allegations in the New Action, which are materially the same as those in her counter-petition in the Removal Action, and which are taken as true for purposes of this motion, are as follows:

According to the petition, Orly instituted an action in 2010 in the Supreme Court of New York both in her individual capacity as beneficiary and also derivatively on behalf of the Orly Trust (the "2010 New York action"). That action was brought against the purchasers of the TRI shares (the "Trump Group"). In that proceeding, the court ruled that Orly had legal standing to represent the Orly Trust. ¶¶ 9-10.

In June 2013, Orly was party to a settlement of the 2010 New York action with the Trump Group (the "Trump/AG Settlement Agreement"). ¶ 14. The Court thereafter entered an agreed-to Stipulation and Order of Discontinuance with Prejudice of that action. ¶ 16.

According to Dalia (and Sagi), under the Trump/AG Settlement Agreement, the Trump Group agreed to pay $32.3 million to the AG Group, which included, not just Orly, but also her father, Arie Genger, and Arnold and David Broser, who (according to Dalia's duplicative petitions) are creditors to Orly personally and to whom (Dalia and Sagi allege) Orly owes "many millions of dollars." ¶¶ 17-18.

Dalia alleges that this settlement agreement settled both Orly's personal claims against the Trump Group as well as any claims the Orly Trust had. ¶¶ 19-20. Moreover, Dalia alleges

9

that $17.3 million of the settlement payment has been paid, but none of that money was given to
the Orly Trust. ¶ 21-22. The remaining payment of approximately $15 million has not yet been
paid under the terms of the settlement agreement. ¶ 22.

As Dalia admits in the amended petition in the New Action (as well as in her counter-
petition), she intervened in the 2010 New York action (in August 2014). She moved to have the
Orly Trust, controlled by her, substituted as the plaintiff in that action. By the court's interim
order, that motion was held in abeyance pending the outcome of the Removal Action before this
Surrogate's Court. ¶¶ 26-27.

What Dalia leaves out of her duplicative petitions, but what is a matter of undisputed fact,
is that on behalf of the Orly Trust, Dalia sued the Trump Group in Delaware in 2011, but then
voluntarily and unconditionally dismissed all claims of the Orly Trust against the Trump Group
with prejudice. Bowen Affirm. Ex. E, at ¶ 4 ("The claims brought on behalf of the Orly Genger
1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with
prejudice"). A year after she dismissed the Orly Trust claims in the Delaware action, Dalia
sought to intervene in the 2010 New York action. While her motion to intervene was pending,
the parties in that action entered into the Stipulation and Order of Discontinuance with Prejudice.
At the time that order was entered – and consistent with her own settlement of the Orly Trust
claims against the Trump Group in Delaware – Dalia raised no objection.

Accordingly, Dalia's later challenge of this order was rejected by the Appellate Division.
The appellate court ruled that Dalia failed to object and was forever foreclosed from raising the
issues she tried to raise below in that action (and that she is trying to raise again in her petitions
against Orly):

> Defendant Dalia Genger, as Trustee for the Orly Genger 1993 Trust (Orly
> Trust), failed to articulate any objection to the court's entry of the

10

> November 25, 2014 order dismissing plaintiff Orly Trust's breach of
> fiduciary duty and unjust enrichment claims against certain defendants,
> and her claim is not properly before this Court... In any case, that order
> did not dismiss any claims; rather, it recognized that all claims had
> previously been dismissed or discontinued by prior court orders, dismissed
> the complaint, and severed other viable third party claims, cross claims,
> and counterclaims unrelated to the Orly Trust.

*Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016). *See also* Bowen Affirm. Ex. F

(Dalia's appellate brief).[4]

Furthermore, the Trump/AG Settlement Agreement referenced in the petition in the New

Action refutes Dalia's claim that the settlement payment belongs to the Orly Trust. That written

document expressly notes that the claims related to Orly that are being settled are *only* claims

brought by her in her personal capacity and *not* as a representative of the Orly Trust. Bowen

Affirm. Ex. G at 6. Moreover, references in that document to the Orly Trust were struck-through

(and initialed) to emphasize that the settlement did not involve or relate to the trust at all. *Id.*[5]

## ARGUMENT

The New Action is procedurally defective. Its substantive claims are also barred as a

matter of law on various grounds, including the doctrine of res judicata. In this brief, the

procedural issues are addressed: This New Action should be dismissed as duplicative; for

defective service; and as barred by the applicable statute of limitations. The other defects are

briefed in the motion to dismiss the identical counter-petition (Exhibit 1).

## I.    THIS ACTION SHOULD BE DISMISSED AS DUPLICATIVE

---

[4]    Facts that are indisputable and a matter of record may properly be considered in support of a motion to dismiss pursuant to CPLR 3211. *See Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 76 (1st Dep't 2001). "A court may consider evidentiary material submitted by a [movant] in support of a motion to dismiss a complaint pursuant to CPLR 3211(a)(7)." *Basile v. Wiggs*, 98 A.D.3d 640, 641 (2d Dep't 2012).

[5]    Underlying agreements and documents referenced in a petition/complaint may properly be considered on a motion to dismiss. CPLR 3211(a)(1).

It is a ground for dismissal if "there is another action pending between the same parties

for the same cause of action." CPLR 3211(a)(4). When deciding whether to dismiss a

duplicative action, courts consider whether "both suits arise out of the same subject matter or

series of alleged wrongs." *Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96 (1st

Dep't 2013). Complete identity of the parties is unnecessary for dismissal on this ground. *Id.*

There is no question that this petition is duplicative of the fatally flawed counter-petition, and, as

a matter of judicial economy, it should be dismissed.

The counter-petition is already being adjudicated and, in that sense, it has priority and

should be treated as "first-filed" since it was the first to come before the Court. Although the

petition in the New Action was filed first, it was dormant and remained unserved while the

parties litigated the counter-petition. In that way, the New Action is duplicative of the counter-

petition and should be dismissed in favor of the counter-petition, which is further along in

litigation (and is on the verge of dismissal). *See, e.g.*, *United Enters. Ltd. v. Hill*, 185 A.D.2d

206, 206 (1st Dep't 1992).

## II.     LACK OF AND DEFECTS IN SERVICE REQUIRE DISMISSAL

New York law required Dalia to serve her petition in the New Action within 120 days of

its filing. Section 306-b of the CPLR (incorporated in the Surrogate's Court Act, SCPA § 102)

provides:

> Service of the . . . petition with a notice of petition or order to show
> cause **shall** be made within one hundred twenty days after the
> commencement of the action or proceeding . . . .  If service is not
> made upon a defendant within the time provided in this section, the
> court, upon motion, shall dismiss the action without prejudice as to
> that defendant, or upon good cause shown or in the interest of
> justice, extend the time for service.

CPLR 306-b (emphasis added). The Surrogate's Court Procedure Act has a similar 120-day

service requirement. Section 301 states:

> For the purpose of computing the period of limitation under article
> two of the civil practice law and rules, a proceeding is commenced
> upon the filing of a petition, **provided process is issued and
> service made upon any respondent within one hundred twenty
> days after the date of the filing of the petition**.

SCPA 301(a) (emphasis added).

Here, it is undisputed that Dalia filed her petition in the New Action in June 2016. Her

time to serve the action expired 120 days later, in October 2016. CPLR 306-b; SCPA 301.

Dalia's counsel emailed what she referred to as a "courtesy copy" of the filing to various counsel

in June 2016 (Bowen Affirm. Ex. C), but that is not effective service of process. *See* CPLR 308;

SCPA 307. No respondent waived formal service.

Because it is undisputed that the petition in the New Action was not served within 120

days – or even within *six times* that number of days – the action is a nullity and should be

dismissed. *Goldstein Grp. Holding, Inc. v. 310 E. 4th St. Hous. Dev. Fund Corp.*, 154 A.D.3d

458, 458 (1st Dep't 2017) (affirming dismissal for failure to serve within 120 days).

When Dalia did get around to trying to effect service – in December 2017, only after the

argument on Orly's motion to dismiss Dalia's substantially identical counter-petition in the

Removal Action – it was half-hearted and defective.

First, she served on only a few respondents only the two-page citation, without the

underlying petition. The Citation is meaningless without the underlying petition. For example,

it refers to "Settlement Proceeds" as a portion of the relief Dalia requests, yet nothing in the

citation itself defines that term. That is hardly effective notice of the claims against the

respondents.

Second, no service was made as prescribed by the applicable rules, *i.e.*, by personal

service or service on a person of suitable age at the respondent's home or business. CPLR 308;

SCPA 307. There is no proof of service to the contrary. *See* Bowen Affirm. ¶ 2.

With respect to Orly (the movant here), Dalia's counsel admitted in an email that Dalia made no attempt at service at all. She claims no service is needed. *See* Bowen Affirm. Ex. C. She cites no authority for that contention – and it is self-evidently wrong. Dalia cannot commence a new action without effecting service on all the respondents and interested parties. A basic prerequisite to personal jurisdiction over a respondent in a new action is "service of process upon the [respondent] or [] submission to the jurisdiction of the court by waiver of issuance and service of process, appearance of an adult competent party in person or by attorney or by pleading." SCPA 203.

To the extent Dalia is trying to treat her New Action as an extension of the Removal Action, that is not permitted. If she wanted to add new parties to the Removal Action, where pleadings are closed, she would first need to survive the pending motion to dismiss and secondly would need to seek and obtain leave of court. CPLR 1003; SCPA 312. Even Dalia's own papers show that she cannot possibly believe the New Action is not a separate action requiring service of process. Rule 207.4(a) of the Uniform Rules for the Surrogate's Court provides:

> The party causing the first paper to be filed shall communicate the clerk's file number forthwith to all other parties to the proceeding; service of the citation bearing the file number shall be sufficient. Thereafter such number shall appear on the outside cover and first page to the right of the caption of every paper tendered for filing in the proceeding. The caption also shall contain the title of the proceeding.

Rule 207.4(a). Here, the Citation Dalia obtained in December 2017 complies with this rule, as it bears the unique file number that was assigned to this matter (with its "/E" suffix) at the time Dalia filed her 2016 Petition, which is a different file number than that assigned to the Removal Action.

In light of the utter contempt Dalia has shown for orderly procedure, basic requirements of due process and the procedural rules of this Court and the exorbitant 18-month delay between

14

filing and her initial languid and sloppy "service" and her equally ineffective attempt at service

of the defective amended New Action last month, Dalia cannot possibly show "good cause" to

extend the 120-day time limit for service of process – certainly not to extend it over six-fold.

CPLR 306-b. No Court should excuse such contempt.

### III.   DUE TO VIOLATION OF THE 120-DAY RULE, PETITIONER'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

New York courts apply a three-year statute of limitations for fiduciary duty claims when

a plaintiff seeks only money damages, as Dalia does here. CPLR 214; *Kaufman v. Cohen*, 307

A.D.2d 113, 118 (1st Dep't 2003) ("where suits alleging a breach of fiduciary duty seek only

money damages, courts have viewed such actions as alleging 'injury to property,' to which a

three-year statute of limitations applies"). The statute of limitations for fiduciary duty claims

begins to run as of the date of the alleged breach. *See IDT Corp. v. Morgan Stanley*, 12 N.Y.3d

132, 140 (2009).

Dalia's claims for breach of fiduciary duty and for aiding and abetting that breach are

premised on the recovery of proceeds from a June 2013 settlement agreement. ¶¶ 17-18, 28-37.

The rest of her causes of action, moreover, all are dependent on this central claim of breach of

fiduciary duty. Dalia learned of the settlement no later than "months" after it was executed, after

a court ordered it to be produced, as Dalia alleges. ¶ 17. Therefore, even if some sort of

"discovery rule" applied to Dalia's fiduciary duty claim, the statute of limitations for her claim

here expired at the latest three years after "months" after June 2013 -- that is, June 2016 or some

"months" thereafter.

Likely recognizing this June 2016 deadline, Dalia filed the petition in this New Action

that very month. However, as shown above, she failed to serve it or even attempt to serve it

within the 120-day period allowed by SCPA 301. That statute dictates that the statute of

15

limitations is tolled on the filing of a petition *but only if* the petition is served within 120 days

thereafter. There is no "good-cause" or other statutory exception to this requirement. *See* SCPA

301(a).

Here, Dalia unquestionably failed to meet this 120-day requirement. Thus, the three-year

statute of limitations bars the fiduciary duty claims. Moreover, all of Dalia's claims in this New

Action are likewise time barred since all of them, whether dressed up as equitable claims or not,

are dependent on her claim of breach of fiduciary duty.

## IV.    RES JUDICATA AND DOCUMENTARY EVIDENCE ALSO BAR THIS ACTION

For the reasons previously briefed in the Removal Action, the claims in the petition in

this New Action are also barred by res judicata and are subject to dismissal based on undisputed

documentary evidence  *See* Ex. 1, hereto, at pp. 12-14.

## V.    SANCTIONS ARE WARRANTED

Dalia has no good faith basis for such tactics that are so obviously contrary to basic rules

of procedure. It is all too apparent that this action – including the latest iteration of the petition

from April 2018 – was commenced in bad faith for the purposes of delay and harassment. She

should be sanctioned. 22 NYCRR 130-1.1; *Bell v. State*, 96 N.Y.2d 811, 812 (2001)

(sanctioning party for "a chain of frivolous attempts to seek relief from this Court," noting

proceeding "is yet another example of [party's] continued strategy to delay the resolution of the

litigation"). At the very least, she and her counsel should be ordered to pay all respondents'

attorney's fees for their time in reviewing the defective petitions and citation, preparing motions

to dismiss and appearing in Court to answer the citation.

16

## CONCLUSION

For the foregoing reasons, this Court should dismiss this New Action in its entirety, with prejudice, and should sanction Dalia and award Orly such other and further relief as it deems just and proper.

Dated:    New York, New York
          May 7, 2018

                              KASOWITZ BENSON TORRES LLP

                              By: _____
                                  Michael Paul Bowen
                                  Andrew R. Kurland
                                  1633 Broadway
                                  New York, New York 10019
                                  (212) 506-1700

                                  *Attorneys for Respondent Orly Genger*

# EXHIBIT 1

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER, as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711(11). | File No.:   2008-0017<br><br>Surrogate Nora S. Anderson |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO DISMISS DALIA GENGER'S CROSS-PETITION

Petitioner Orly Genger ("Orly") submits this memorandum in support of her motion, pursuant to SCPA § 102 and CPLR 3211(a)(1), (5) and (7), to dismiss the cross-petition of Dalia Genger ("Dalia").[1]

### PRELIMINARY STATEMENT

After nine years of pointless and wasteful procedural wrangling by respondents Dalia (Orly's mother) and Sagi (Orly's brother) – designed to forestall Dalia's removal as trustee – Dalia has now filed a frivolous "cross-petition" against Orly, the very beneficiary whose interests Dalia has a fiduciary duty to protect. The absurdity of a trustee suing her own beneficiary makes clear that this is nothing more than the latest in a long line of improper, bad faith procedural tactics to delay her inevitable removal.

This removal action implicates two identical 1993 family trusts created by the Genger family, one for Orly (the Orly Trust) and the other for her brother Sagi (the Sagi Trust). In her capacity as the trustee for the Orly Trust, Dalia breached her fiduciary duties and conspired with Sagi, in a clear conflict of interest, to deplete the Orly Trust of all of its assets. During Dalia's tenure as trustee, Sagi received millions from the family assets in these trusts while the Orly

---

[1]   Accompanying this memorandum of law is the Affirmation of Michael Paul Bowen, dated September 8, 2017, with exhibits ("Bowen Affirm."). A copy of Dalia's cross-petition is Exhibit A to that affirmation. All citations to ¶ ___ are citations to the cross-petition.

Trust was rendered penniless and encumbered with millions of dollars of debt for legal fees based on Dalia's sham maneuverings with Sagi. Orly has never received a penny from her trust while Sagi has received tens of millions of dollars from his trust even though the trusts were created on the same day with equal division of family assets. In this context, Dalia's claim that this cross-petition is supposedly in good faith and in the best interests of Orly and her trust would be laughable were it not so self-evidently pernicious and legally meritless. This type of protection no one needs, especially not a daughter estranged from her own mother who has for years acted in bad faith and with conflicted interests to favor her son at the expense of her own daughter's financial well-being and in violation of her fiduciary and legal duties as trustee.

Dalia should not be permitted to continue to draw out this action for her removal – and to subvert the Surrogate's Court, the law and her legal duties – through such an obviously frivolous cross-petition. The pleading is facially deficient and otherwise barred as *res judicata*. It should be summarily – and immediately – dismissed with prejudice.

## RELEVANT FACTS

### A.    Background and Procedural Posture

Orly is the beneficiary of the Orly Genger 1993 Trust (the "Orly Trust"). Orly's daughter, born earlier this year, is also a beneficiary of the Orly Trust. The respondent and purported cross-petitioner, Dalia, has been the sole trustee of the Orly Trust since January 2008, when the prior trustee appointed her over Orly's objection. Orly and Dalia have been estranged for more than a decade. Dalia did not attend her daughter's wedding last year. Nor has Dalia met Orly's newborn child, Dalia's granddaughter.

The root of that estrangement is no mystery. Supposedly in her role as trustee, Dalia has repeatedly sued Orly at the bidding of her son, Sagi. After years of litigation, and despite Dalia's siding with him against Orly, Sagi has now been adjudicated after trial and on summary

2

judgment in two separate legal actions to have committed fraud against, and to have breached his

fiduciary duties to, Orly, which determinations were upheld on appeal. *Orly Genger v. Sagi*

*Genger*, Index No. 100697/08, 2016 WL 551444 (Sup. Ct. N.Y. Cnty. Feb. 10, 2016), *aff'd* 144

A.D.3d 581 (1st Dep't 2016); *Orly Genger v. Dalia Genger et al.*, Index No. 109749/09, 2016

WL 1407903 (Sup. Ct. N.Y. Cnty. April 8, 2016), *aff'd* 147 A.D.3d 443 (1st Dep't 2017).

Because of Dalia's role in perpetrating Sagi's now proven fraudulent schemes against

Orly, she has been embroiled in litigation against her own daughter, and the very beneficiary to

whom she owes fiduciary duties, for almost a full decade. Her conduct in that litigation – and

her siding with Sagi in his now proven unlawful scheme against his own sister – has

demonstrated beyond cavil her unfitness to continue as trustee of the Orly Trust. Indeed, every

court that has had occasion to address this issue has held that she has a clear conflict of interest

and is unfit to serve as trustee. *See, e.g.*, *Orly Genger v. Dalia Genger*, 120 A.D.3d 1102, 1104

(1st Dep't 2014) (by entering into certain so-called settlement agreements "on behalf of the Orly

Trust, of which she was sole trustee, Dalia had a conflict of interest"); *Orly Genger v. Dalia*

*Genger*, Index No. 109749/09, July 3, 2014 Decision and Order at 3-4 (Sup. Ct. N.Y. Cnty. July

3, 2014) ("Dalia, as trustee of the Orly Trust, has often sided with her son Sagi in these

actions . . . . Dalia may no longer be able to serve as trustee, having failed to disclose the

conflict of interest [found by the First Department] to her principal, Orly. And, as noted by the

First Department, Orly has petitioned the Surrogate's Court to remove Dalia as trustee").

The only thing holding up Dalia's removal is finalizing this removal proceeding for an

adjudication on the merits – exactly what Dalia is trying now, once again, to forestall.

Over eight years ago, shortly after Dalia became trustee of the Orly Trust, Orly petitioned

this Court to remove her. That petition was dismissed as premature by Surrogate Roth, who

3

concluded that Dalia had not yet acted against Orly's interests at the time. After that decision,

Dalia's malfeasance began in earnest. Among other bad acts and conflicts of interest, Dalia

assisted Sagi in selling the Orly Trust's principal asset (viz., shares of Trans-Resources, Inc. or

"TRI") held by a Genger family company, TPR Investment Associates, Inc. ("TPR"). That sale

enriched Sagi's trust, the Sagi Genger 1993 Trust (the "Sagi Trust") at the expense of the Orly

Trust, precipitating years of litigation that remains ongoing to this day. *See generally Orly*

*Genger v. Dalia Genger, et al.*, Index No. 109749/09 (Sup. Ct. N.Y. Cnty. 2009). Dalia also

betrayed Orly by participating in a sham auction of shares of TPR, the sole remaining (although

depleted) asset of the Orly Trust. *See id.*, 2016 WL 1407903, at *2 (Sup. Ct. N.Y. Cnty. April 8,

2016); *aff'd* 147 A.D.3d 443 (1st Dep't 2017). She then also participated in a scheme with Sagi

to encumber the Orly Trust with significant debt. *See Orly Genger v. Dalia Genger*, 120 A.D.3d

at 1104.

As a result of these unlawful schemes (in which Dalia has been directly implicated) the

Sagi Trust was enriched in an amount in excess of $44 million, at least, while the Orly Trust was

stripped of all of its assets and rendered valueless. To this day, Orly has never received a dime

from the Orly Trust, while Sagi and Dalia each have millions of dollars secured in accounts in

offshore tax-havens. *See Orly Genger v. Dalia Genger, et al.*, Index No. 109749/09, Sept. 12,

2016 Decision and Order on Attachment (Bowen Affirm. Ex. B).

Dalia again acted against Orly's interests by assisting Sagi in suing Orly in federal court

in 2014. In that action, Dalia falsely claimed to be impoverished. Based on that false claim,

Sagi sued Orly, invoking a writing that he created. He claimed that document obligated Orly to

reimburse half of his need-based payments to Dalia, payments he and Dalia swore were made

supposedly because she needed the money to live. That lawsuit ended in a judgment against

4

Orly totaling over $300,000. *Sagi Genger v. Orly Genger*, 76 F. Supp. 3d 488 (S.D.N.Y. 2015) *aff'd as modified*, 663 Fed. Appx. 44 (2d Cir. Sept. 29, 2016).

After Sagi obtained that judgment, discovery in the ongoing state actions revealed that Dalia had at the time, and still has, millions of dollars in her offshore accounts controlled by Sagi. The entire federal action was based on a lie – Dalia's lie – and her failure to discharge her duty of loyalty and trust to Orly.

On June 22, 2009, Orly renewed her petition before this Court to remove Dalia as trustee. Dalia and Sagi engaged in years of procedural objections, effectively stalling the adjudication of this petition for Dalia's removal. Dalia moved to dismiss Orly's renewed petition for failure to join what she claimed to be a necessary party, the Sagi Trust. After the Court directed the joinder of the Sagi Trust, Orly served its trustee – David Parnes, Sagi's best friend – with process by registered mail in Israel, but Parnes (at Sagi's direction) moved to dismiss for lack of personal jurisdiction, arguing insufficient service of process under the Hague Convention. This motion was granted in 2015. Orly then served Parnes with process in a manner acceptable to this Court under the Hague Convention, costing additional time and expense.

Following this, both respondents filed new motions to dismiss for failure to state a claim. Finally, at the end of June 2017, this Court denied these motions in their entirety, allowing this action to proceed finally on the merits, eight years after it was originally commenced by Orly. *In the Matter of the Application of Orly Genger to Remove Dalia Genger as Trustee of the Orly Genger 1993 Trust Established on December 13, 1993 by Arie Genger, Grantor*, File No. 2008-0017, June 21, 2017 Decision (Anderson, S.).

Dalia continues to coordinate with Sagi against Orly. At the end of July, they filed essentially identical answers to Orly's petition, which answers were drafted by Sagi's counsel,

John Dellaportas. In fact, Dellaportas even signed Dalia's answer, signing the name of Dalia's counsel, Judith Bachman, and indicating as much with his initials (see excerpt below and the Answer attached at Bowen Affirm. Ex. C).

Dated: New City, New York
       July 28, 2018

                    LAW OFFICES OF
                    JUDITH LISA BACHMAN, ESQ.

                    By: _____ *H Bahm /ω*_____
                              Judith Lisa Bachman, Esq.
                    254 S. Main Street
                    Suite 406
                    New City, New York 10017
                    (845) 639-3210
                    *Counsel to Respondent Dalia Genger*

In a telling typographical error, the signature block has the zip code of Dellaportas' Manhattan office (10017), not the correct zip code for Bachman's office in New City in upstate New York (10956).

On August 12, 2017, Dalia filed an amended answer, including her cross-petition. This time, the pleading bears the purported signature of Bachman, although the signature block still has the same typographical zip code error and includes a different suite number (306 instead of 406). *See* Bowen Affirm. Ex. A (excerpt below):

Dated: New City, New York
August 12, 2017

_____
Judith Lisa Bachman, Esq.
254 S. Main Street
Suite 306
New City, New York 10017
(845) 639-3210
*Counsel to Respondent Dalia Genger*

This signature, moreover, does not appear to be Bachman's. It does not compare with Bachman's signature that appears alongside her notary stamp on the Verification for this document. *Id.* (excerpt below):

Sworn to before me this
12th day of August, 2017

_____
Notary Public

Judith Bachman
Notary Public, State of New York
No. 02-BA6048319
Qualified in Rockland County
Commission Expires Sept. 25, 200

_____
Judith Lisa Bachman, Esq.
254 S. Main Street
Suite 406
New City, New York 10017
(845) 639-3210
*Counsel to Respondent Dalia Genger*

These inconsistencies and typos – not to mention the different signatures – reveal that even to this day, in opposing her removal despite the consensus of the courts against her, Dalia is still doing the bidding of Sagi. In doing so, she is acting contrary to her fiduciary duties and continually demonstrating her disqualifying conflicts of interests.

7

## B. The Cross-Petition's Fact Allegations and Related Undisputed Facts

In suing Orly, the trust's own beneficiary, Dalia, the trustee, has once again violated her fiduciary duties, this time instituting a facially and legally meritless purported cross-petition. The cross-petition purports to state seven causes of action, each in a separate count: Breach of Fiduciary Duty, Breach of Loyalty, Turnover, Accounting, Unjust Enrichment, Self-Dealing and something she calls "Successor Trustee." (In yet another typographical error, this last count, the seventh, is repeated twice.)

The fact allegations in the cross-petition, taken as true for purposes of this motion, are as follows:

According to the cross-petition, Orly instituted an action in 2010 in the Supreme Court of New York both in her individual capacity as beneficiary and also derivatively on behalf of the Orly Trust (the "2010 New York action"). That action was brought against the purchasers of the TRI shares (the "Trump Group"). In that proceeding, the court ruled that Orly had legal standing to represent the Orly Trust. ¶¶ 8-10.

In June 2013, Orly was party to a settlement of the 2010 New York action with the Trump Group (the "Trump/AG Settlement Agreement"). ¶ 12. The Court thereafter entered an agreed-to Stipulation and Order of Discontinuance with Prejudice of that action. ¶ 14.

According to Dalia (and Sagi), under the Trump/AG Settlement Agreement, the Trump Group agreed to pay $32.3 million to the AG Group, which included, not just Orly, but also her father and Arnold and David Broser, who are creditors (according to the cross-petition) to Orly personally and to whom (Dalia and Sagi allege) Orly owes "many millions of dollars." ¶¶ 15-16.

The cross-petition alleges that this settlement agreement settled both Orly's personal claims against the Trump Group as well as any claims the Orly Trust had. ¶¶ 17-18. Moreover,

8

Dalia alleges that $17.3 million of the settlement payment has been paid, but none of that money was given to the Orly Trust. The remaining payment of approximately $15 million has not yet been paid under the terms of the settlement agreement. ¶¶ 20-21.

As Dalia admits in the cross-petition, she intervened in the 2010 New York action (in August 2014). She moved to have the Orly Trust, controlled by her, substituted as the plaintiff in that action. By the court's interim order, that motion was held in abeyance pending the outcome of this Surrogate's action. ¶¶ 23-24.

What Dalia leaves out of her cross-petition, but what is a matter of undisputed fact, is as follows:

On behalf of the Orly Trust, Dalia sued the Trump Group in Delaware in 2011. *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.*, Case No. 6906 (Del. Ch. Ct. Oct. 4, 2011) (Strine, Ch.). In August 2013, Dalia voluntarily and unconditionally dismissed all claims of the Orly Trust with prejudice. Bowen Affirm. Ex. D, at ¶ 4 ("The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice"). A year after she dismissed the Orly Trust claims in the Delaware action, Dalia sought to intervene in the 2010 New York action. While her motion to intervene was pending, the parties in that action entered into the Stipulation and Order of Discontinuance with Prejudice. At the time that order was entered – and consistent with her own settlement of the Orly Trust claims against the Trump Group in Delaware – Dalia raised no objection.

Later, Dalia appealed that discontinuance order to the Appellate Division, arguing that she should be permitted to pursue her claim that the $32 million the Trump Group had paid under the settlement in that action belongs to the Orly Trust. The Appellate Division disagreed.

It upheld the Order, ruling that Dalia had failed to object and was forever foreclosed from raising

the issues she tried to raise below in that action (and that she is trying to raise again here):

> Defendant Dalia Genger, as Trustee for the Orly Genger 1993 Trust (Orly
> Trust), failed to articulate any objection to the court's entry of the
> November 25, 2014 order dismissing plaintiff Orly Trust's breach of
> fiduciary duty and unjust enrichment claims against certain defendants,
> and her claim is not properly before this Court. . .  In any case, that order
> did not dismiss any claims; rather, it recognized that all claims had
> previously been dismissed or discontinued by prior court orders, dismissed
> the complaint, and severed other viable third party claims, cross claims,
> and counterclaims unrelated to the Orly Trust.

*Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016). *See also* Bowen Affirm. Ex. E

(Dalia's appellate brief).[2]

Furthermore, the Trump/AG Settlement Agreement referenced in the cross-petition

refutes Dalia's claim that the settlement payment belongs to the Orly Trust.  That written

document expressly notes that the claims related to Orly that are being settled are *only* claims

brought by her in her personal capacity and *not* as a representative of the Orly Trust.  Bowen

Affirm. Ex. F at 6.  Moreover, references in that document to the Orly Trust were struck-through

(and initialed) to emphasize that the settlement did not involve or relate to the trust at all.  *Id.*[3]

## ARGUMENT

On this motion to dismiss pursuant to CPLR 3211(a)(7), any well-pleaded allegations in

the cross-petition are to be taken as true.  *See Kupersmith v. Winged Foot Golf Club, Inc.*, 38

A.D.3d 847, 848 (2d Dep't 2007).  "However, allegations consisting of bare legal conclusions, as

well as factual claims inherently incredible or flatly contradicted by documentary evidence are

---

[2]    Facts that are indisputable and a matter of record may properly be considered in support of a motion to dismiss pursuant to CPLR 3211. *See Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 76 (1st Dep't 2001). "A court may consider evidentiary material submitted by a [movant] in support of a motion to dismiss a complaint pursuant to CPLR 3211(a)(7)." *Basile v. Wiggs*, 98 A.D.3d 640, 641 (2d Dep't 2012).

[3]    Underlying agreements and documents referenced in a petition/complaint may properly be considered on a motion to dismiss. CPLR 3211(a)(1).

not entitled to such consideration." *Lovisa Constr. Co. v. Metro. Transp. Auth.*, 198 A.D.2d 333, 333 (2d Dep't 1993). *See also Braddock v. Braddock*, 60 A.D.3d 84, 86 (1st Dep't 2009); *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 (1994).

Dismissal pursuant to CPLR 3211(a)(1) is warranted "if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." *Morgenthrow & Latham v. Bank of N.Y. Co.*, 305 A.D.2d 74, 78 (1st Dep't 2003). Where legal conclusions and factual allegations are refuted by documentary evidence, they are not to be presumed as true or accorded every favorable inference upon a motion to dismiss and the question presented is not whether the allegations have stated a cause of action, but rather, whether the party has a cause of action. *Id.* Dalia's cross-petition is dependent on the correct construction of the Trump/AG Settlement Agreement, which, by its plain language, refutes Dalia's operative claims. As such, it constitutes "documentary evidence" under CPLR 3211(a)(1), as the contents of this fully executed agreement are "essentially undeniable." *Fontanetta v. John Doe 1*, 73 A.D.3d 78, 85 (2d Dep't 2010); *see also 150 Broadway N.Y. Assoc., L.P. v Bodner*, 14 A.D.3d 1, 5 (1st Dep't 2004).

Claims are properly dismissed as barred by *res judicata* under CPLR 3211(a)(5) when the claim was decided or could have been decided in a prior proceeding in which there was a "full and fair opportunity" to contest the issue. *In re Hunter*, 4 N.Y.3d 260, 269 (1st Dep't 2005). In determining whether collateral estoppel bars relitigation, "[t]he party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination." *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001); *Pahmer v. Touche Ross and Co.*, 271 A.D.2d 371, 372 (1st Dep't 2000).

I.    **The Cross-Petition Fails to State a Claim**
      **For Breach of Fiduciary Duty and Loyalty**

Count I (breach of fiduciary duty) and Count II (breach of loyalty) have no legal basis.

As a matter of law, the beneficiary of a trust does not owe that trust any fiduciary duty or duty of

loyalty. To the contrary, those duties are owed by the trustee – here, Dalia – not the beneficiary

(Orly). *See, e.g., Mercury Bay Boating Club Inc. v. San Diego Yacht Club*, 76 N.Y.2d 256, 270

(1990) ("We have described a fiduciary's duty as requiring not honesty alone, but the punctilio

of an honor the most sensitive. This strict standard is the usual and appropriate measure of a

trustee's fiduciary obligations because the trustee must administer the trust for the benefit of the

beneficiaries and . . . owes the beneficiary an undivided duty of loyalty"). For that reason, these

counts fail to state a claim as a matter of law and must be dismissed.

To the extent these causes of action depend on imputing such duties to Orly as an alleged

"*de facto* trustee" (*see* ¶ 11) for purposes of the derivative claims in the New York action, there

is no valid fact basis for making that claim because Orly never compromised any trust claims in

that action (as is demonstrated below).

II.   **The Equitable Claims Are Precluded by**
      **Documentary Evidence and Res Judicata**

The next four counts all sound in equity: to wit, Turnover (Count III), Accounting

(Count IV), Unjust Enrichment (Count V), and Self-Dealing (Count VI). Each of these claims is

based on and presupposes that the Trump/AG Settlement Agreement settled claims that belong to

the Orly Trust. Thus, for example, an element of each one of these claims is that Orly was acting

on behalf of and/or took for herself an asset belonging to the Orly Trust. *See, e.g., Mandarin*

*Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (unjust enrichment requires a showing

that defendant was enriched by taking an asset that rightfully belonged to plaintiff); SCPA

§ 2103 (petition for turnover may be made with respect to assets which belong to the trust

estate); *Trepuk v. Frank*, 104 A.D.2d 780, 780-81 (1st Dep't 1984) (an accounting is an equitable

action where plaintiff is entitled to obtain an account of assets which were misappropriated);

*Baum v. Lamborn*, 203 A.D. 86, 87 (1st Dep't 1922) (same).

But that is demonstrably not the case here. The settlement agreement itself expressly

notes that no trust claims are subject to the settlement. *See* Bowen Affirm. Ex. F at 6.

In addition, these claims are barred by the doctrine of *res judicata*. Dalia has twice raised

the issue of what claims the Orly Trust had against the Trump Group, once in the Delaware

action that Dalia settled with prejudice, and the second time in the 2010 New York action noted

above. In the 2010 New York action, the First Department expressly rejected Dalia's attempt to

assert the same claim she is making in this cross-petition: that the $32.3 million settlement

payment belongs to the Orly Trust. *Cf.* Bowen Affirm. Ex. G at 1 (Dalia's substitution motion:

"Dalia respectfully requests an order pursuant to CPLR 2701 directing the settlement fund from

the Trump Group be paid into court since . . . some or all of the settlement proceeds with the

Trump Group belong to . . . the Orly Trust"), *with* Bowen Affirm. Ex. A (Dalia cross-petition,

¶ 19: "none of the aforementioned $32.3 million (the 'Settlement Proceeds') has been remitted

to the Orly Trust"). *See Genger*, 144 A.D.3d at 581.

Under the doctrine of *res judicata*, any claim that was brought or could have been

brought in a prior concluded legal action is barred in the interest of finality. *In re Hunter*, 4

N.Y.3d at 269. Here, Dalia has the burden to show that she did not have a "full and fair

opportunity" to litigate her claim that the $32.3 million in settlement proceeds belongs to the

Orly Trust. *See Pahmer*, 271 A.D.2d at 372 ("Plaintiffs, in seeking to avoid the bar of res

judicata, have failed to satisfy their burden of establishing that they were not afforded a full and

fair opportunity to litigate their claims in the prior action.").

Dalia cannot meet that burden here. She made this same argument to the First Department which, in denying her appeal, specifically ruled that "all [Orly Trust] claims had previously been dismissed or discontinued by prior court orders." *Genger*, 144 A.D.3d at 581. Having been previously "dismissed or discontinued," these claims are precluded.

## III.   The Made-Up Successor Trustee Count is Not Cognizable

The cross-petition includes a cause of action, styled "Successor Trustee." There is no such claim at law or equity.

At best, this is a question of remedy in the event *Orly's* petition (*not* the cross-petition) is granted. Once Dalia is judicially removed, the question of appointing the successor ensues. In her cross-petition, Dalia cites "article SEVENTH" of the trust instrument in support of this supposed "cause of action." ¶¶ 65, 70. But the terms of the trust plainly provide that only a current, validly serving trustee has the ability to appoint his or her successor; nothing in the agreement allows an *ousted* trustee to do so. In any event, the law is clear that, upon judicial removal, it is for the Court to designate a successor trustee. *See* SCPA § 1502.

Furthermore, what Dalia seeks is absurd. No court, especially a Surrogate sitting in equity, would permit a trustee to select her successor even though that trustee has been adjudicated to have so fundamentally betrayed her trust and duties as to warrant removal.

Because Count VII is, in fact and law, no cause of action cognizable under our laws, it too must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Dalia's cross-petition in its entirety,

with prejudice, and award Orly such other and further relief as it deems just and proper.

Dated:    New York, New York
          September 8, 2017

KASOWITZ BENSON TORRES LLP

By: _____
    Eric D. Herschmann
    Michael Paul Bowen
    Andrew R. Kurland
    1633 Broadway
    New York, New York 10019
    (212) 506-1700

    *Attorneys for Petitioner Orly Genger*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.: 2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

 -against-

Orly Genger, et al.,

    Respondents.

## AFFIRMATION OF MICHAEL PAUL BOWEN

MICHAEL PAUL BOWEN, duly admitted to practice law before the courts of the State of New York, affirms the following to be true under penalties of perjury pursuant to CPLR 2106:

1. I am counsel of record to respondent Orly Genger ("Orly"). I submit this affirmation in support of Orly's motion to dismiss the petition of petitioner Dalia Genger.

2. Attached hereto as Exhibit A is a true and correct copy of Dalia Genger's Amended Petition for Turnover of Trust Property and Other Relief, dated March 28, 2018, which counsel for Dalia Genger filed in this action after briefing was completed on the multiple motions to dismiss that respondents filed in connection with the original version of the petition, dated June 13, 2016. Dalia has not properly served either version of the petition on Orly.

3. Attached hereto as Exhibit B is a true and correct copy of an email from Dalia Genger's counsel, Judith Bachman, dated June 17, 2016. Upon information and belief, no

response to this email was ever sent to Ms. Bachman by me or any other of the recipients of the email.

4.      Attached hereto as Exhibit C is a true and correct copy of an email from Dalia Genger's counsel Judith Bachman, dated January 26, 2018.

5.      Attached hereto as Exhibit D is a demonstrative "redline" comparison between the June 2016 petition in this action and Dalia Genger's counter-petition against Orly from File No. 2008-0017, which Dalia filed in August 2017. Included in this redline are all the fact allegations in each the 2016 petition and the 2017 cross-petition, as well as the causes of action which appear in both.

6.      Attached hereto as Exhibit E is a true and correct copy of the Stipulation and Proposed Order of Dismissal in the action *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.*, Delaware Chancery Court, C.A. No. 6906-CS, ordered by Chancellor Strine on August 30, 2013.

7.      Attached hereto as Exhibit F is a true and correct copy of the First Department appellate Brief for Defendant-Appellant Dalia Genger, dated December 15, 2014, from the action *Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/10.

8.      Attached hereto as Exhibit G is a true and correct copy of the Settlement Agreement and Release entered into as of June 16, 2013 among Orly Genger and members of the so-called "Trump Group," and others.

9.      Attached hereto as Exhibit H is a true and correct copy of an email I sent to Dalia Genger's counsel Judith Bachman, dated April 17, 2018.

Dated: New York, New York
        May 7, 2018

                                        _____
                                        Michael Paul Bowen

2

# EXHIBIT A

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
In the Matter of the Petition of Dalia Genger, as Trustee of
the Orly Genger 1993 Trust, Created by Trust Agreement
Dated December 13, 1993 between ARIE GENGER,
as Grantor, and LAWRENCE M. SMALL and
SASH A. SPENCER, as Trustees, to Turnover Property
o the Orly Genger 1993 Trust.

-----------------------------------------------------------------x

      DALIA GENGER,
      Trustee of the Orly Genger 1993 Trust,

              Petitioner,                       Index No. 2008-0017/E
              -against-

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC     **AMENDED PETITION**
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,  **FOR TURNOVER OF**
TRANS-RESOURCES, INC.                     **TRUST PROPERTY**
ARNOLD BROSER,                        **AND OTHER RELIEF**
DAVID BROSER, JOHN DOES. 1-20, and
JANE DOES 1-20,

            Respondents,
-----------------------------------------------------------------------X

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

    It is respectfully alleged:

### The Parties

    1.     Petitioner, Dalia Genger, resides and is domiciled at 200 E. 65th Street, in the City

of New York, County of New York and State of New York.

    2.     Petitioner is the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

    3.     Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the

Orly Trust (in addition to her daughter Lily). The remaining respondents ("Respondents") are

interested parties who wrongfully aided and abetted Orly in the misappropriation of Orly Trust

-1-

assets.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

5.      Venue in this County is proper pursuant to, inter alia, SCPA 207(1).

### The Orly Trust

6.      On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement"). (Ex. 1.)

7.      Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the "Trust Agreement Obligations").

8.      The Respondents were aware of the Trust Agreement Obligations.

### Orly Trust Derivative Litigation

9.      In July 2010, Orly instituted a derivative action the Supreme Court, New York County entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, LLC as successor to Trans-Resources, Inc. ("TRI"). Orly later amended her pleading to assert claims against, inter alia, the purchasers of those TRI shares, Respondents Glenclova Investment Company, TR Investors, LLC , New TR Equity I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities"). (Ex. 2.)

-2-

10.     On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York County adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there." (Ex. 3.)

11.     Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain Petitioner from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Petitioner was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, Petitioner's "contention that the Orly Trust is not a party to this action ... is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining Petitioner from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares. (Ex. 4.)

12.     As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative litigation' brought by Petitioner herself on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

13.     Respondents knew that Orly owed fiduciary duties to the Orly Trust.

### Discontinuance With Prejudice of
### The Orly Trust Claims

14.     In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. Petitioner sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's

Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection.

15.     By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group [Entities] bargained and paid for in the settlement . . ." (Ex. 5, emphases in original.)

16.     Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. (Ex. 6.)

### The Trump Group Entities Settlement Agreement

17.     Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). (Ex. 7.) The document revealed that Orly had settled her claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which this Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

-4-

18.     In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Respondents Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million. According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." (Ex. 8.)

19.     The Trump Group Entities have since reaffirmed that the federal court construed the Trump Group Entities Settlement Agreement correctly:

> "[Any suggestion] that the confidential settlement agreement *might* only dis-miss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

20.     Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Ex. 7, p. 10: Orly releasing the Trumps "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was dismissed.

### The Settlement Proceeds

21.     Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in

this case, Orly personally).  Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

22.     At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that $15 million remains to be paid ("Remaining Payment").  (Ex. 9, pp. 10-11.)

23.     In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds.  If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment").  Orly has not disclosed the intended recipients of the remaining $15 million.

24.     Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust.  Orly failed to comply with these duties and obligations.  Respondents Arie Genger, Arnold Broser, and David Broser were aware of, and aided and abetted, Orly's breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

25.     In addition to the named Respondents Arie Genger, Arnold Broser, and David Broser, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof.  Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.

**Petitioner's Substitution Motion**

26.    In order to protect the rights of the Orly Trust, Petitioner moved in the Supreme

Court, New York County, for an order permitting it to substitute for Orly as plaintiff in the Orly

Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds

into Court.  Orly vigorously opposed the Petitioner's motion, on the ground, _inter alia_, that she is

seeking to remove the Petitioner as Trustee of the Orly Trust.    By Interim Order dated May 7,

2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending

this Court's determination of Orly's removal petition.  (Ex. 10.)

27.    At the March 25, 2015 hearing on Petitioner's motion, Justice Jaffe suggested it

might already be too late to deposit the Initial Payment into Court, as the $17.3 million

apparently has already been paid out to non-parties.  (Ex. 9, p. 28: "it sounds like that ship has

sailed").    Accordingly, Petitioner brings this Petition seeking, _inter alia_, monetary damages for

misappropriation of Orly Trust assets.  To the extent such Settlement Proceeds are recoverable,

Petitioner seeks turnover of those funds for the Orly Trust.

### Count I: Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty Against Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser

28.    The allegations contained in paragraphs 1 through 27 hereinbefore are realleged

as if fully set forth herein.

29.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly

Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

30.    Orly owed a fiduciary duty to the Orly Trust.

31.    Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure

that the Settlement Proceeds were paid to the Orly Trust.

32.    Orly did not so do.  Instead, she entered into the Trump Group Entities Settlement

-7-

Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly

Trust, and she authorized payment of the Settlement Proceeds to such other parties.

33.    Orly's actions constitute a breach of fiduciary duty.

34.    Respondents Arie Genger, Arnold Broser, and David Broser were aware of Orly's

fiduciary duty to the Orly Trust.

35.    Respondents Arie Genger, Arnold Broser, and David Broser knowingly induced

and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking

the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump

Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds

to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities

Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly

Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other

than the Orly Trust.

36.    In doing so, Respondents Arie Genger, Arnold Broser, and David Broser aided

and abetted Orly's breach of fiduciary duty.

37.    The Orly Trust has been injured by Orly's breach of fiduciary duty and the

remaining Respondents' Arie Genger, Arnold Broser, and David Broser  aiding and abetting of

Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus

statutory interest.

### Count II: Tortious Interference with Contract
### Against Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser

38.    The allegations contained in paragraphs 1 through 37 hereinbefore are realleged

as if fully set forth herein.

39.    The Trust Agreement is a valid contractual agreement by the Orly Trust.

-8-

40.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

41.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

42.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser were aware of the Trust Agreement Obligations.

43.     The Orly Trust, acting through its de facto trustee Orly in the Orly Trust Derivative Litigation, breached the Trust Agreement Obligations by causing the Settlement Trustees to not be held in the name of the Orly Trust, and to instead use the Settlement Proceeds for the benefit of Orly's creditors, including the Brosers.

44.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser caused the Orly Trust's breach of the Trust Agreement Obligations by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

45.     In doing so, Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser tortiously interfered with the Trust Agreement Obligations.

46.     Respondents' Orly Genger, Arie Genger, Arnold Broser, and David Broser interference with the Trust Agreement Obligations was both intentional and improper.

-9-

47.     The Orly Trust has been injured by Respondents' Orly Genger, Arie Genger, Arnold Broser, and David Broser tortious interference with contract in the amount of $32.3 million, plus statutory interest.

## Count III: Money Had and Received
### Against Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser

48.     The allegations contained in paragraphs 1 through 47 hereinbefore are realleged as if fully set forth herein.

49.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

50.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

51.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

52.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser knew that Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust.

53.     However, pursuant to the terms of the Trump Group Entities Settlement Agreement, the Settlement Proceeds were and are to be paid by the Trump Group Entities to parties other than the Orly Trust.

54.     None of the Settlement Proceeds have been paid to the Orly Trust.

55.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser received the Settlement Proceeds instead of the Orly Trust.

56.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser

-10-

received a benefit from the Settlement Proceeds which belongs to the Orly Trust.

57.     Under principles of good conscience, Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser should not be allowed to retain the Settlement Proceeds which belong to the Orly Trust, but rather should be compelled to return all $32.3 million to the Orly Trust, plus statutory interest.

## Count IV: Unjust Enrichment
## Against Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser

58.     The allegations contained in paragraphs 1 through 57 hereinbefore are realleged as if fully set forth herein.

59.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

60.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

61.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

62.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

63.     Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser received the Settlement Proceeds instead of the Orly Trust.

64.     Respondents Olry Genger, Arie Genger, Arnold Broser, and David Broser received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65.     The benefit Respondents Olry Genger, Arie Genger, Arnold Broser, and David

-11-

Broser received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

66.    Under principles of equity and good conscience, Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

### Count V: Turnover
### Against All Respondents

67.    The allegations contained in paragraphs 1 through 66 hereinbefore are realleged as if fully set forth herein.

68.    Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

69.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

70.    Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

71.    Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

72.    Respondents Orly Genger, Arie Genger, Arnold Broser, and David Broser received the Settlement Proceeds instead of the Orly Trust.

73.    Respondents have in their possession the Settlement Proceeds which should be delivered to the Orly Trust.

74.    Respondents the Trump Group Entities have in their possession, custody or control the Remaining Payment which has yet to be paid and which should be delivered to the Orly Trust.

-12-

75.      Respondents have refused to turn over the Settlement Proceeds in their respective possession, custody or control to the Orly Trust or pay it into Court.

76.      Respondents should be compelled to turn over to the Orly Trust all Settlement Proceeds in their possession, custody or control.

### Count VI: Injunction
### Against the Trump Group Entities

77.      The allegations contained in paragraphs 1 through 76 hereinbefore are realleged as if fully set forth herein.

78.      Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

79.      Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

80.      Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

81.      Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

82.      Respondents the Trump Group Entities have in their possession, custody or control the Remaining Payment which has yet to be paid and which should be delivered to the Orly Trust.

83.      If Respondents the Trump Group Entities pay the Remaining Payment to any of the other Respondents or to any party other than the Orly Trust or otherwise expend, encumber, spend, transfer or release the Remaining Payment, the Orly Trust will be irreparably harmed.

84.      Accordingly, the Trump Group Entities must be preliminarily and permanently

-13-

enjoined from paying, expending, encumbering, spending, transferring or releasing the Remaining Payment to any of the other Respondents or to any party other than the Orly Trust, until further order of this Court.

## Count VII: Accounting
## Against Respondent Orly

85.     The allegations contained in paragraphs 1 through 84 hereinbefore are realleged as if fully set forth herein.

86.     Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

87.     As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.

### Interested Parties

88.     The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

(a)     The following who are of full age and sound mind or are corporations or associations:

ORLY GENGER
210 Lavaca Street #1903
Austin, Texas 78701

Interest: Beneficiary and Respondent

ARIE GENGER
17001 Collins Avenue,
Sunny Isles Beach, Florida

Interest: Respondent

-14-

GLENCLOVA INVESTMENT COMPANY
41 Madison Ave,
New York, New York

Interest: Respondent

TR INVESTORS, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY I, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY II, LLC,
41 Madison Ave,
New York, New York

Interest: Respondent

TRANS-RESOURCES, LLC as successor to Trans-Resources, Inc.
41 Madison Ave,
New York, New York

Interest: Respondent

ARNOLD BROSER
5371 Fisher Island Drive,
Miami Beach, Florida

Interest: Respondent

DAVID BROSER
104 West 40th Street, 19th Floor
New York, New York

Interest: Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
Kelley Drye & Warren LLP
101 Park Avenue

-15-

New York, NY 10178

Interest: Contingent Remainderman

(b)    The following who are persons under disability:
       Infants: None
       Others under a disability: None
(c)    The following persons who are confined in prison: None
(d)    The following persons whose names or whereabouts are unknown: None

89.    There are no persons, corporations or associations other than those mentioned who are interested in this proceeding.

90.    No previous application for this or similar relief has been made to this or any other court except Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled <u>Arie Genger, et al. v. Sagi Genger, et al.</u>, Index No. 651089/2010 in New York Supreme Court, New York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a determination by this Court.

-16-

WHEREFORE, Petitioner requests the following relief::

a.      Against respondents Orly Genger, Arie Genger, Arnold Broser and David Broser, damages in the amount of $32.3 million, plus statutory interest;

b.      Against respondents Glencova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources, LLC, as successor to Trans-Resources, Inc., turnover of the Remaining Payment;

c.      Against respondents Glencova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources, LLC, as successor to Trans-Resources, Inc preliminarily and permanently enjoining them from paying, expending, encumbering, spending, transferring or releasing the Remaining Payment to any of the other Respondents or to any party other than the Orly Trust, until further order of this Court;

d.      imposition of a constructive trust on the Settlement Proceeds;

e.      an order directing the delivery of the Settlement Proceeds to her as Trustee;

f.      an accounting of the Settlement Proceeds; and

g.      such other relief as to the Court seems just and necessary.

Dated: New City, New York
       March 8, 2018

JUDITH BACHMAN
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210

Judith@TheBachmanLawFirm.com
*Attorneys for Petitioner Dalia Genger*

-17-

## Verification

STATE OF NEW YORK        )
                         : ss.:
COUNTY OF NEW YORK   )

DALIA GENGER, being duly sworn, deposes and says:

I am the Petitioner in the within proceeding. I am acquainted with the facts and circumstances set forth herein, have read the to be alleged upon information and belief, and that as to those matters I believe them to be true.

_Dalia Genger_
Dalia Genger

Sworn to me this _28th_ day
of March 2018

Notary Public

> **YOUNG JIN JANG**
> Notary Public, State of New York
> No. 01JA6345701
> Qualified in Nassau County
> Certificate Filed in New York County
> Commission Expires 08/01/2020

-18-

# EXHIBIT B

| | |
|---|---|
| **From:** | Judy Bachman <jlbesq_99@yahoo.com> |
| **Sent:** | Friday, June 17, 2016 4:40 PM |
| **To:** | John Dellaportas; John Dellaportas; ygriver@zeklaw.com; john.boyle@skadden.com; pjanovsky@zeklaw.com; ljw@msk.com; pdm@msk.com; william.frank@skadden.com; bleinbach@zeklaw.com; Eric D. Herschmann; Herrmann Douglas D (WIL); Herrmann Douglas D (WIL); mitchell@oglaw.net; Michael P. Bowen; Andrew R. Kurland |
| **Subject:** | Petition for Turnover of Trust Property in the Orly Genger 1993 Trust |
| **Attachments:** | Ex 10(abyance order).pdf; Ex 7 (Orly Settlement Agreement) .pdf; Ex 6 (So-Ordered Stipulation).pdf; Ex 8 (1-5-15 Forrest opinion).pdf; Ex 3 (1.2.13 Amended Decision).pdf; Ex 4 (4.9.12 Order).pdf; Ex 1 (Trust Agreement).pdf; Ex 5 (Allingham Ltr).pdf; Ex 9(transcript).pdf; Ex 2 (Orly's revised complaint).pdf; Petitionforturnover.pdf; petitioncitation.pdf; petitionfilingreceipt.pdf |

Dear Gentlemen:

The attached Petition for Turnover of Trust Property in the Orly Genger 1993 Trust was filed on June 14, 2016.

Please advise if you will either accept service of the citation (once it is completed by the Court) or waiver such service.

Judith Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210 Office
845-300-1595 Cell
jlbesq_99@yahoo.com
http://www.yourlegaldepartment.net/

# EXHIBIT C

| | |
|---|---|
| **From:** | Judith Bachman <judith@thebachmanlawfirm.com> |
| **Sent:** | Friday, January 26, 2018 4:02 PM |
| **To:** | Michael P. Bowen |
| **Cc:** | jlbesq_99@yahoo.com; Eric D. Herschmann; Andrew R. Kurland |
| **Subject:** | Re: Genger - Surrogate's Citation |

**External Email**

Dear Mr. Bowen:

We expect to appear and proceed on February 6, 2018.

Although I do not believe any substantive responsive is necessary to your comments, you are advised as below.

As for service of process, your client is a party to this action and in fact has filed a petition with the Court seeking affirmative relief. You and your firm have appeared in the action.

While I do not believe it is necessary, in an abundance of caution, I have directed service to be made on your client's address in Texas. I understand that she has a Texas driver's license, Texas bank account, owns a home there and is registered to vote there.

With regard to the timing of the service of the citation, the citation was not issued by the Court until December 21, 2017. The delay in the issuance of the citation, and subsequent service, was due to the Court's own internal processing.

Moreover, all of the parties in this matter were on notice of this petition via courtesy copy at the time of the filing and by reference to it in the cross-petition in your application to remove Dalia Genger.

Finally, as directed by the Court clerk, it was not necessary to serve a copy of the petition with the citation.

Very truly yours,

# THE BACHMAN
# LAW FIRM

**Judith Bachman, Esq.**
*Trusted Legal Counsel for You and Your Business*

**P:** 845.639.3210   **C:** 845.300.1595
Judith@thebachmanlawfirm.com
thebachmanlawfirm.com

254 S. Main Street  |  Suite 306  |  New City, NY 10956


On Fri, Jan 26, 2018 at 12:13 PM, Michael P. Bowen <MBowen@kasowitz.com> wrote:

We received no response to our email below. Please advise today whether you are withdrawing the defective citation. We reserve all rights. If you continue to just ignore our demand, you leave us no choice but to seek sanctions.


Michael P. Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1903
Fax. (212) 500-3403
MBowen@kasowitz.com


**From:** Michael P. Bowen
**Sent:** Wednesday, January 24, 2018 1:16 PM
**To:** 'judith@thebachmanlawfirm.com' <judith@thebachmanlawfirm.com>; 'jlbesq_99@yahoo.com' <jlbesq_99@yahoo.com>
**Cc:** Eric D. Herschmann <EHerschmann@kasowitz.com>; Andrew R. Kurland <AKurland@kasowitz.com>
**Subject:** Genger - Surrogate's Citation


Ms. Bachman -- We recently learned that, acting as counsel to Dalia Genger, your office has been trying to serve on various parties a two-page citation that Dalia obtained from the Surrogate's Court on December 21, 2017 in File No. 2008-0017/E, pertaining to Dalia's purported Petition filed on or about June 14, 2016 – over a year and a half ago. As you no doubt are aware, the 120-day time limitation to serve that pleading expired in the fourth quarter of 2016 – over a year ago. *See* SCPA § 301; CPLR § 306-b. That renders that so-called

2

petition and the related citation a nullity.  What authority do you have to try to effect service now, so long after the relevant time period expired?  We further understand that the service attempts are defective in that no copy of the petition was served with the citation, and in any event not all parties have been served (e.g. Orly Genger has not been served, nor, as far as we are aware, has any attempt been made).  Despite these fatal defects, the citation purports to demand certain parties to appear in Court on February 6, 2018.  If you have any authority for what you are doing, please provide that to us immediately.  If you do not (as we believe), we demand that you formally withdraw the citation and cancel the February 6 hearing date immediately.  Given that your attempted service is a clear-cut violation of the rules of court and that the citation was obtained in bad faith, we intend to seek sanctions, pursuant to 22 NYCRR § 130-1.1, against you and your client, including an award of attorney's fees associated with this bogus citation and frivolous and improper court date.

# EXHIBIT D

It is respectfully alleged:

## The Parties

1. Respondent/Cross-Petitioner, Dalia Genger, ("Dalia"), resides and is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

2. ~~Petitioner is~~Dalia the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

3. Petitioner/Cross-Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the Orly Trust. ~~The remaining respondents ("Respondents") are interested parties who wrongfully aided and abetted Orly in the misappropriation of Orly Trust assets.~~

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

5. Venue in this County is proper pursuant to, inter alia, SCPA 207(1). The

## Orly Trust

6. On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement") ~~(Ex. 1.)~~.

7. Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of

Orly's creditors (the "Trust Agreement Obligations").

~~The Respondents were aware of the Trust Agreement Obligations.~~

### Orly Trust Derivative Litigation

8.  In July 2010, Orly instituted a derivative action in the Supreme Court, New York County

    entitled <u>Arie Genger, et al. v. Sagi Genger, et al.,</u> Index No. 651089/2010, by which she

    brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly

    Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's

    ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later

    amended her pleading to assert claims against, <u>inter alia,</u> the purchasers of those **TRI**

    shares, ~~Respondents~~ Glenclova Investment Company, TR Investors, LLC, New TR Equity

    I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities") ~~(Ex.~~

    ~~2.)~~.

9.  On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme

    Court, New York County adopted Orly's position that she "has legal standing to represent the

    Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court

    rules otherwise in an appropriate action there." ~~(Ex. 3.)~~

    Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain

10. ~~Petitioner~~ Dalia from pursuing what Orly characterized as a "duplicative" action as

Trustee of the Orly Trust before the Delaware Chancery Court, by which ~~Petitioner~~Dalia was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, ~~Petitioner's "~~Dalia's "contention that the Orly Trust is not a party to this action ...

is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining ~~Petitioner~~Dalia from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares. ~~(Ex. 4.)~~

11. As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative litigation' brought by ~~Petitioner herself~~Dalia on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

~~12.    Respondents knew that Orly owed fiduciary duties to the Orly Trust.~~

## Discontinuance With Prejudice of
## The Orly Trust Claims

12. In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. ~~Petitioner~~Dalia sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be

produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for <u>in camera</u> inspection.

13.   By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group [Entities] bargained and paid for in the settlement . . ." ~~(Ex. 5, emphases in original.)~~

14. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. ~~(Ex. 6.)~~

<u>The Trump Group Entities Settlement Agreement</u>

15. Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). ~~(Ex. 7.)~~ The document revealed that Orly had settled her

claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which ~~this~~the Supreme Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

16. In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and ~~Respondents~~ Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million. According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...."
~~(Ex. 8.)~~

17. The Trump Group Entities have since reaffirmed that the federal court construed the Trump Group Entities Settlement Agreement correctly:

"[Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is

counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

18. Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (~~Ex. 7, p. 10:~~ Orly releasing the Trumps "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was dismissed.

<u>The Settlement Proceeds</u>

19. Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case, Orly personally). Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

20. At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid,

but that $15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. ~~(Ex. 9, pp. 10-11.)~~

21. In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

22. Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. <u>However,</u> Orly failed to comply with these duties and obligations. ~~Respondents were aware of, and aided and abetted, Orly's breaches of~~<u>Orly breached</u> her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

~~23.     In addition to the named Respondents, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof. Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.~~

## ~~Petitioner's~~Cross-Petitioner's Substitution Motion

23. In order to protect the rights of the Orly Trust, ~~Petitioner~~Dalia moved in the Supreme Court, New York County, for an order permitting ~~it~~ her to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed ~~the Petitioner's~~Dalia's motion, on the ground, <u>inter alia,</u> that she is seeking to remove ~~the Petitioner~~Dalia as Trustee of the Orly Trust. By Interim Order dated May 7, 2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of ~~Orly's removal petition. (Ex. 10.)~~Orly's Petition.

24. At the March 25, 2015 hearing on ~~Petitioner's~~Dalia's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. ~~(Ex. 9, p. 28: "~~it sounds like that ship has sailed"). Accordingly, ~~Petitioner~~Dalia brings this <u>Cross-</u> Petition seeking, <u>inter alia,</u>: <u>retention of Dalia as the only non-contingent Trustee of the Orly Trust;</u> monetary damages for misappropriation of Orly Trust assets. ~~To the extent such Settlement Proceeds are recoverable, Petitioner seeks turnover of those funds for the Orly Trust.~~

<u>and turnover of the Settlement Proceeds for the Orly Trust, to the extent such funds are recoverable.</u>

Count I: ~~Aiding and Abetting~~ Breach of Fiduciary Duty

~~**Against All Respondents**~~

~~28~~25. The allegations contained in paragraphs 1 through ~~27~~24 hereinbefore are realleged as if fully set forth herein.

~~29~~26. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the " Settlement Proceeds therefrom belong to the Orly Trust.

~~30~~27. Orly owed a fiduciary duty to the Orly Trust.

~~31~~28. Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~32~~29. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

~~33. Orly's~~30. Orly's actions constitute a breach of fiduciary duty.

~~34. Respondents were aware of Orly's fiduciary duty to the Orly Trust.~~

~~35. Respondents knowingly induced and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.~~

~~36. In doing so, Respondents aided and abetted Orly's breach of fiduciary duty.~~

~~37~~31. The Orly Trust has been injured by ~~Respondents' aiding and abetting of Orly's~~Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

<div align="center">

Count ~~V~~III: Turnover

**~~Against All Respondents~~**

</div>

~~67~~39. The allegations contained in paragraphs 1 through ~~66~~38 hereinbefore are realleged as if fully set forth herein.

~~68~~40. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of ~~Orly's~~Orly's creditors.

~~69~~41. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

~~70~~42. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~71. Respondents knew that Orly was required to ensure that the~~ 43. The Settlement Proceeds should be delivered to the Orly Trust. ~~were required to be paid to the Orly Trust.~~

~~72. Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.~~

~~73. Respondents (except the Trump Group Entities) have in their possession the Settlement Proceeds which~~

~~74. Respondents have refused to turn over the Settlement Proceeds to the Orly Trust or pay it into Court.~~

~~75. Respondents~~44. Orly should be compelled to turn over to the Orly Trust all Settlement Proceeds in ~~their~~her possession, custody or control.

Count ~~VII~~IV: Accounting

~~Against Respondent Orly~~

~~76~~45. The allegations contained in paragraphs 1 through ~~75~~44 hereinbefore are realleged as if fully set forth herein.

~~77~~46. Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

~~78~~47. As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.

Count ~~IV~~V: Unjust Enrichment

~~Against All Respondents Except Trump Group Entities~~

~~58~~48. The allegations contained in paragraphs 1 through ~~57~~47 hereinbefore are realleged as if fully set forth herein.

~~59~~49. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

~~60~~50. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

~~61~~51. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~62. Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.~~

~~63. Respondents (except the Trump Group Entities)~~52. Orly's creditors received the Settlement Proceeds instead of the Orly Trust.

64. Respondents (except the Trump Group Entities)53. Orly received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65. The54. Orly received such benefit Respondents (except the Trump Group Entities) received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

6655. Under principles of equity and good conscience, Respondents (except the Trump Group Entities)Orly must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.


Interested Parties

7973. The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

(a) The following who are of full age and sound mind or are corporations or associations:

>ORLY GENGER
>780 Greenwich Street, Apt. 4P
>New York, New York 10014
>Interest: Beneficiary and Petitioner, Cross-Respondent
>
>ARIE GENGER
>17001 Collins Avenue,
>Sunny Isles Beach, Florida
>Interest: Respondent
>
>GLENCLOVA INVESTMENT COMPANY
>41 Madison Ave,
>New York, New York
>Interest: Respondent
>
>TR INVESTORS, LLC
>41 Madison Ave,
>New York, New York

Interest: Respondent

NEW TR EQUITY I, LLC
41 Madison Ave,
New York, New York
Interest: Respondent

NEW TR EQUITY II, LLC,
41 Madison Ave,
New York, New York
Interest: Respondent

TRANS RESOURCES, INC.
41 Madison Ave,
New York, New York
Interest: Respondent

ARNOLD BROSER
5371 Fisher Island Drive,
Miami Beach, Florida
Interest: Respondent

DAVID BROSER
104 West 40th Street, 19th Floor
New York, New York
Interest: Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
~~Morgan, Lewis~~
Kelley Drye & Warren
101 Park Avenue,
New York, New York
Interest: Contingent Remainderman

(b) The following who are persons under disability:

Infants: None

Others under a disability: None

(c) The following persons who are confined in prison: None

(d) The following persons whose names or whereabouts are unknown: None

~~80~~74. There are no persons, corporations or associations other than those mentioned who are

interested in this proceeding.

81~~75~~. No previous application for this or similar relief has been made to this or any other court except:

a. Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010 in New York Supreme Court, New York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a determination by this Court.

b. Petition before this Court filed June 14, 2016, citation not yet issued.


WHEREFORE, Petitioner requests the following relief ~~against all Respondents~~:

a. declaratory judgment that Dalia is, and will remain, the only non-contingent Trustee of the Orly Trust;

b. damages in in the amount of $32.3 million, plus statutory interest;

~~b~~c. imposition of a constructive trust on the Settlement Proceeds;

~~c~~d. an order directing the delivery of the Settlement Proceeds to ~~her~~Dalia as Trustee of the Orly Trust;

~~d~~e. an accounting of the Settlement Proceeds;

~~e~~f. if Dalia is removed as Trusee of the Orly Trust, then authorizing Dalia to name the successor Trustee;

g. if Dalia is removed as Trusee of the Orly Trust, then having the Court name a third party successor Trustee from an independent list; and

h. such other relief as to the Court seems just and necessary.

Dated: ~~June 13, 2016~~New City, New York
August 12, 2017

# EXHIBIT E



<div style="border: 2px solid black; text-align: center;">

# GRANTED

</div>

## IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

| | |
|---|---|
| DALIA GENGER, as Trustee of the<br>Orly Genger 1993 Trust, | : |
| | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| TR INVESTORS, LLC, GLENCLOVA<br>INVESTMENT CO., NEW TR EQUITY I,<br>LLC, NEW TR EQUITY II, LLC,<br>TRANS-RESOURCES, INC., and<br>TPR INVESTMENT ASSOCIATES, INC. | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |

C.A. No. 6906-CS

| | |
|---|---|
| | : |
| TR INVESTORS, LLC, GLENCLOVA<br>INVESTMENT CO., NEW TR EQUITY I,<br>LLC, NEW TR EQUITY II, LLC, and<br>TRANS-RESOURCES, INC., | : |
| | : |
| | : |
| | : |
| | : |
| Counterclaim and Crossclaim<br>Plaintiffs, | : |
| v. | : |
| | : |
| DALIA GENGER, as Trustee of the<br>Orly Genger 1993 Trust, | : |
| | : |
| Counterclaim Defendant, | : |
| | : |
| and | : |
| | : |
| TPR INVESTMENT ASSOCIATES, INC., | : |
| | : |
| Crossclaim Defendant | : |

| | |
|---|---|
| TPR INVESTMENT ASSOCIATES, INC.,<br>Counterclaim and Crossclaim<br>Plaintiff, | : |
| | : |
| | : |
| | : |

v.                                              :
                                                :
DALIA GENGER, as Trustee of the                 :
Orly Genger 1993 Trust,                         :
                                                :
              Counterclaim Defendant,           :
                                                :
       and                                      :
                                                :
TR INVESTORS, LLC, GLENCLOVA                    :
INVESTMENT CO., NEW TR EQUITY I,               :
LLC, NEW TR EQUITY II, LLC, and                 :
TRANS-RESOURCES, INC.,                          :
                                                :
              Crossclaim Defendant              :

---

### **STIPULATION AND PROPOSED ORDER OF DISMISSAL**

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the

stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2.  The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3.  The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale

---

[1]  This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds into a court in New York at any time.   Upon the so-ordering of paragraphs 1-2 above concerning beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights under the Escrow Agreement.   Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court.

4.   The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

5.   The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group have already been dismissed without prejudice.

6.  Each party shall bear its own costs.

/s/ *Thomas J. Allingham*
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2015)
Douglas D. Herrmann (I.D. No. 4872)
Amy C. Huffman (I.D. No. 5022)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Attorneys for TR Investors, LLC, Glenclova
Investment Co., New TR Equity I, LLC,
New TR Equity II, LLC, and Trans-
Resources, Inc.*

/s/ *Jeremy D. Anderson*
Jeremy D. Anderson (I.D. No. 4515)
Joseph B. Warden (I.D. No. 5401)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware  19899

*Attorneys for Dalia Genger, as Trustee of
the Orly Genger 1993 Trust*

/s/ *Colm F. Connolly*
Colm F. Connolly (I.D. No. 3151)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
(302) 574-3000

*Attorneys for TPR Investment Associates,
Inc.*

IT IS SO ORDERED this _____ day of _____, 2013.

_____
Chancellor Leo E. Strine, Jr.

This document constitutes a ruling of the court and should be treated as such.

|                              |                                      |
|-----------------------------:|--------------------------------------|
| **Court:**                   | DE Court of Chancery Civil Action    |
| **Judge:**                   | Leo E Strine                         |
| **File & Serve Transaction ID:** | 53943155                         |
| **Current Date:**            | Aug 30, 2013                         |
| **Case Number:**             | 6906-CS                              |
| **Case Name:**               | Genger, Dalia vs T R Investors LLC   |
| **Court Authorizer:**        | Strine, Leo E                        |

**/s/ Judge Strine, Leo E**