stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2. The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3. The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale

---

[1] This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds into a court in New York at any time. Upon the so-ordering of paragraphs 1-2 above concerning beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights under the Escrow Agreement. Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court.

4. The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

5. The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group have already been dismissed without prejudice.

| This document constitutes a ruling of the court and should be treated as such | |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Leo E Strine |
| **File & Serve Transaction ID:** | 53943155 |
| **Current Date:** | Aug 30, 2013 |
| **Case Number:** | 6906-CS |
| **Case Name:** | Genger, Dalia vs T R Investors LLC |
| **Court Authorizer:** | Strine, Leo E |

/s/ Judge Strine, Leo E

# FISH & RICHARDSON P.C.

17ᵀᴴ FLOOR
222 DELAWARE AVENUE
P.O. Box 1114
Wilmington, Delaware
19899-1114

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

August 9, 2013

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Jeremy D. Anderson
302 778-8452

Email
janderson@fr.com

*Via LexisNexis File & ServeXpress and*
*Hand Delivery*



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

HOUSTON

MUNICH

NEW YORK

SILICON VALLEY

SOUTHERN CALIFORNIA

TWIN CITIES

WASHINGTON, DC

The Hon. Leo E. Strine, Jr.
Chancellor
COURT OF CHANCERY
New Castle County Courthouse
500 North King Street, Suite 1551
Wilmington, DE 19801

Re:   *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v.*
      *TR Investors, LLC, et al.,* C.A. No. 6906-CS

Dear Chancellor Strine:

During the status conference with the Court on August 1, 2013, Your Honor ordered me to confer with Dalia Genger regarding her willingness to agree to settle the above-captioned case. Having done so, I can report back to the Court that Dalia desires to settle this action. However, as trustee of the Orly Genger Trust, Dalia needs to understand Orly's position regarding the Trust's beneficial ownership of the shares, particularly in light of preliminary injunctions issued by the New York courts.

We have reason to believe that Orly's position was disclosed in a Settlement Agreement with the Trump Group in one of the New York cases, but the Trustee has not been provided a copy of that agreement. While the Settlement Agreement apparently was made confidential by the parties, Mr. Allingham represented to the Court that the Trump Group is willing to produce the agreement if so ordered. Once the Trustee understands Orly's position, she will be in a position to conclude whether to agree that the shares of Trans-Resources stock transferred by TPR to the Orly Genger 1993 Trust are beneficially owned by the Trump Group.

Alternatively, if Orly gives the Trustee written consent to sign the enclosed stipulation of dismissal, the Trustee will immediately execute the stipulation in the form attached. Counsel for Dalia, TPR and the Trump Group discussed the best way to approach Orly to get her written consent to the stipulation of dismissal and decided that Mr. Allingham, given that he settled one of the New York cases with Orly, should be the intermediary. While Orly has not yet provided her written consent, it is

FISH & RICHARDSON P.C.

The Hon. Leo E. Strine, Jr.
August 9, 2013
Page 2

my understanding from Mr. Allingham that Orly intends to submit a letter to the
Court – on which I expect that she will copy Dalia – regarding her position as to the
stipulation of dismissal.

Respectfully yours,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson
Delaware Bar No. 4515

JDA/phb
Enclosure – form of Stipulation of Dismissal

Cc (w/encls.) (*via LexisNexis File & ServeXpress*):
      Thomas J. Allingham II (DE Bar #476)
      Douglas D. Herrmann (DE Bar #4872)
      Colm F. Connolly (DE Bar #3151)
      Amy M. Dudash (DE Bar #5741)

FILED: NEW YORK COUNTY CLERK 11/25/2014 04:27 PM
NYSCEF DOC. NO. 1153

INDEX NO. 651089/2010

RECEIVED NYSCEF: 11/25/2014

GLENCLOVA INVESTMENT CO., TR
INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW
TR EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP, MARK HIRSCH, and TRANS-
RESOURCES, INC.,

      Counterclaimants, Cross-Claimants, and Third-
      Party Plaintiffs,

      - against –

ARIE GENGER, ORLY GENGER, SAGI GENGER,
TPR INVESTMENT ASSOCIATES, INC., THE
SAGI GENGER 1993 TRUST, WILLIAM DOWD,
ARNOLD BROSER, DAVID BROSER, and ONE OR
MORE ENTITIES DIRECTED, OWNED OR
CONTROLLED BY ARNOLD BROSER AND/OR
DAVID BROSER,

      Counterclaim, Cross-Claim, and/or Third-Party
      Defendants.

Index No. 651089/2010

Order to Sever

WHEREAS, on January 2, 2013, the Clerk entered an Amended Decision and Order of this Court that (i) dismissed all of Plaintiffs claims against Defendants Dalia Genger, Rochelle Fang, individually and as trustee of the Sagi Genger 1993 Trust, and the Sagi Genger 1993 Trust; (ii) dismissed Plaintiffs' first, second, fourth (rescission only), fifth, ninth and tenth causes of action against Sagi Genger ("Sagi"); (iii) dismissed Plaintiffs' first, second, third, fourth (rescission only), fifth, sixth and tenth causes of action against TPR Investment Associates, Inc. ("TPR"); and (iv) dismissed Plaintiffs' first, second, third (conspiracy only), fourth (rescission only), fifth, eighth and tenth causes of action against Defendants Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump and Mark Hirsch (collectively, the "Trump Group");

1

WHEREAS, pursuant to a stipulation So-Ordered by the Court on July 1, 2013, all of Plaintiffs' remaining claims against the Trump Group were discontinued with prejudice;

WHEREAS, on July 24, 2014, the Appellate Division, First Department issued an Order dismissing Plaintiffs' remaining claims against Sagi and TPR; and

WHEREAS, on October 23, 2014 the Appellate Division, First Department issued an Order denying Plaintiffs' motions for reargument or leave to appeal to the Court of Appeals;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Plaintiffs' Third Amended and Supplemental Complaint is dismissed in its entirety with prejudice, including all claims and causes of action stated therein, and without prejudice to Plantifs' right to seek leave to appeal to the Court of Appeals from the July 24, 2014 Order of the Appellate Division.

2.    The Cross-Claims, Counterclaims and Third-Party Claims of Sagi Genger, individually and as assignee of the Sagi Genger 1993 Trust, and TPR Investment Associates, Inc., as well as the Counterclaims, Cross-Claim and Third-Party Claims of Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and Trans-Resources, Inc. are hereby expressly severed from this action.

DATED: New York, New York
November 3, 2014

_____
Barbara Jaffe, J.S.C.

2

MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS&K**

Lauren J. Wachtler
ljw@msk.com

October 31, 2014

**VIA ECF**

Honorable Barbara Jaffe
Supreme Court of the State of New York
80 Centre Street
New York, NY 10007

**Re: Genger v Genger Index No. 651089/2010**

Dear Justice Jaffe:

    As previously discussed, enclosed for Your Honor's signature is a proposed order severing the main action, which has been dismissed from the counterclaim in this case. We would appreciate Your Honor signing the Order at your earliest convenience..

Respectfully submitted,

*Lauren J. Wachtler*

Lauren J. Wachtler, of
MITCHELL SILBERBERG & KNUPP LLP

LJW/nst

CC: All Counsel

6468559.1/43419-00004

12 East 49th Street, 30th Floor, New York, New York 10017-1028
Phone: (212) 509-3900 Fax: (212) 509-7239 Website: WWW.MSK.COM



TRUST AGREEMENT

BETWEEN

ARIE GENGER

AS GRANTOR

AND

LAWRENCE M. SMALL AND SASH A. SPENCER

AS TRUSTEES

CREATING

THE ORLY GENGER 1993 TRUST

COPY

Dated: December _13_ , 1993

Copy 2 of 4

RUBIN BAUM LEVIN CONSTANT & FRIEDMAN
30 ROCKEFELLER PLAZA · NEW YORK, N.Y. 10112

Index to the Orly Genger 1993 Trust Agreement

| Article | Contents | Page |
|---------|----------|------|
| FIRST: | Disposition of Principal and Income During the Life of the Grantor's Daughter, ORLY GENGER | 1 |
| SECOND: | Continuing Trust for Descendants of the Grantor's Daughter, ORLY GENGER | 5 |
| THIRD: | Disposition of Property if No Descendant of the Grantor is Living | 9 |
| FOURTH: | Additions to the Trusts | 13 |
| FIFTH: | Irrevocability | 13 |
| SIXTH: | Governing Law | 13 |
| SEVENTH: | Trustees | 13 |
| EIGHTH: | Compensation of Trustees | 18 |
| NINTH: | Settlement of Trustees' Accounts; Exoneration of Trustees | 18 |
| TENTH: | Definitions | 21 |
| ELEVENTH: | Administrative Powers | 22 |
| TWELFTH: | Provisions Relating to the GST | 32 |
| THIRTEENTH: | Release of Powers | 37 |
| FOURTEENTH: | Provision with Respect to Closely Held Businesses | 38 |
| FIFTEENTH: | Headings | 39 |
| SIXTEENTH: | Severability | 39 |

TRUST AGREEMENT dated December /3 , 1993, between
ARIE GENGER (now residing at 1067 Fifth Avenue, New York, New
York), as Grantor, and LAWRENCE M. SMALL (now residing at 2804
Woodland Drive, Washington, D.C. 20008) and SASH A. SPENCER (now
residing at 251 Crandon Boulevard, Townhouse 164, Key Biscayne,
Florida 33149), as Trustees.

The Grantor hereby transfers to the Trustees, and the
Trustees hereby acknowledge receipt of, the sum of Six Hundred
Thousand Dollars ($600,000.00), to be held, administered and
disposed of in accordance with the provisions of Article FIRST
hereof.   Said sum and any other property that may be received by
the Trustees pursuant to the provisions of Article FOURTH
hereof, and all investments and reinvestments thereof, and all
proceeds thereof which constitute principal, are hereinafter
collectively called "principal."

This Trust Agreement shall be known as the "Orly
Genger 1993 Trust Agreement" and the trust created by Article
FIRST hereof shall be known as the "Orly Genger 1993 Trust."

FIRST:   Disposition of Principal and Income
During the Life of the Grantor's Daughter,
ORLY GENGER.

A.   The Trustees shall hold, manage, invest and rein-
vest the principal of the trust created by this Article, IN
TRUST, and, so long as the Grantor's daughter, ORLY GENGER,
shall live, the Trustees are authorized and empowered to pay
such part, parts or all, if any, of the net income of the trust

created by this Article (hereinafter referred to in this Article as "Orly's Trust") to, or apply such part, parts or all, if any, of such net income for the use or benefit of, such one or more of the following individuals living from time to time in such equal or unequal amounts or proportions, and at such time or times, as the Trustees, in their discretion, shall determine:

      1.    The Grantor's daughter, ORLY GENGER.

      2.    Each descendant of ORLY GENGER.

The Trustees shall accumulate all income of Orly's Trust not so paid to or applied and, at least annually, add such net income to the principal of Orly's Trust.

      In making such distributions, the Trustees are requested (but they are not directed) to limit the total amount of the distributions made to any descendant of ORLY GENGER with respect to any calendar year to the amount necessary to increase such descendant's taxable income for United States income tax purposes for such year to the greatest amount that shall still result in such descendant not being subject to United States income taxes at the highest marginal rate in effect for such year, after taking into account all of such descendant's other income and deductions for such year.

      B.    The Trustees are authorized and empowered to pay to, or apply for the use or benefit of, the Grantor's said daughter such part, parts or all, if any, of the principal of Orly's Trust, and at such time or times, as said Trustees, in

-2-

2007-01-16 17:00     Sagi A. Genger     12127506620>>

their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of Orly's Trust.

C.    Upon the death of the Grantor's said daughter, the Trustees shall pay the then principal of Orly's Trust, together with all net income thereof then accrued but not yet collected, and collected but not yet disposed of, as follows:

1.    The Trustees shall pay one-half (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of the descendants of the Grantor's said daughter, and upon such terms, conditions and trusts, if any, as the Grantor's said daughter, by a provision in her Will expressly referring to this Article of this Trust Agreement, shall validly direct and appoint. If, or to the extent that, the Grantor's said daughter shall fail so validly to direct and appoint such principal and income, the Trustees, at the death of the Grantor's said daughter, shall pay the same, per stirpes, to such of the descendants of the Grantor's said daughter as shall survive her, subject, however, to the provisions of Article SECOND hereof, or, if no descendant of the Grantor's said daughter shall survive her, per stirpes, to such of the Grantor's descendants as shall so survive, or, if no descendant of the Grantor shall so survive, in accordance with the provisions of Article THIRD hereof.

-3-

2.    The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of the Grantor's said daughter as shall survive her, subject, however, to the provisions of Article SECOND hereof, or, if no descendant of the Grantor's said daughter shall survive her, per stirpes, to such of the Grantor's descendants as shall so survive, or, if no descendant of the Grantor shall so survive, in accordance with the provisions of Article THIRD hereof

3.    If, pursuant to the provisions of paragraph 1 or paragraph 2 of this Section C, the Trustees are directed to pay a per stirpital share of such income and principal to a descendant of the Grantor, and if at the time the Trustees are so directed there shall be in existence a trust for such descendant under a trust agreement between Arie Genger, as grantor, and Lawrence M. Small and Sash A. Spencer, as trustees, executed on the date hereof and known as the "Sagi Genger 1993 Trust Agreement," the Trustees shall not pay such per stirpital share to such descendant but shall instead pay such per stirpital *share to the trustees then acting under said trust agreement*, to be disposed of by them pursuant to the provisions of the trust for such descendant under said trust agreement.

D.    Notwithstanding anything herein to the contrary, if any Trustee hereunder shall be one of the potential income beneficiaries of Orly's Trust, such Trustee shall not, in his or her capacity as such a Trustee, have any voice or vote or other-

-4-

wise participate in any decision pertaining to the payment or application of the income or principal of Orly's Trust to or for the use or benefit of him or her in his or her capacity as a beneficiary of such trust or to or for the use or benefit of any person whom he or she has an obligation to support, and, in each such event, the other Trustee or Trustees shall make all decisions relating to such trust that pertain to such matters.

SECOND:   Continuing Trusts for
          Descendants of the Grantor's Daughter,
          ORLY GENGER.

A.   If, under any provision of this Trust Agreement, any property is directed to be paid to a descendant of the Grantor's daughter, ORLY GENGER, subject to the provisions of this Article, such property shall not be distributed or paid to such descendant. Instead, the Trustees shall continue to hold such property, IN TRUST (in a separate trust for each such descendant which is referred to in this Article as "such descendant's trust"; provided, however, that if there shall be property so directed to be paid on more than one occasion to any such descendant, all such property shall be held in a single trust for such descendant), and, so long as such descendant *shall live before* attaining the age of twenty-one (21) years, the Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the net income of such descendant's

-5-

trust, and at such time or times, as said Trustees, in their discretion, shall determine, and the Trustees shall accumulate the balance of such net income, if any, and, at least annually, add it to the principal of such descendant's trust, and, so long as such descendant shall live after attaining the age of twenty-one (21) years, the Trustees shall pay to such descendant all of the net income of such descendant's trust in at least quarterly installments.

B.   The Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the principal of such descendant's trust, and at such time or times, as said Trustees, in their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of the trust. '

C.   Upon the death of such descendant (hereinafter referred to in this Article as "such deceased descendant"), the Trustees shall pay the then principal of such deceased descendant's trust, together with all net income thereof accrued but *not yet collected, and collected but not yet disposed of, as* follows:

-6-

1.    The Trustees shall pay one-half (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of the descendants of such deceased descendant, and upon such terms, conditions and trusts, if any, as such deceased descendant, by a provision in his or her Will expressly referring to this Article of this Trust Agreement, shall validly direct and appoint.  If, or to the extent that, such deceased descendant shall fail so expressly and so validly to direct and appoint such principal and income, the Trustees shall, at the death of such deceased descendant, pay the same, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

2.    The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased

-7-

P 10/43                    <<02905972121    Sagi A. Ganger    2007-04-16 17:01

descendant, subject, however, to the provisions of this Article,
or, if no such descendant shall so survive, per stirpes, to such
of the descendants as shall so survive of the ancestor of such
deceased descendant closest in degree of relationship to such
deceased descendant who (i) shall have descendants who shall so
survive and (ii) shall have been a descendant of the Grantor or
shall have been the Grantor, subject, however, to the provisions
of this Article, or, if no such descendant shall so survive, in
accordance with the provisions of Article THIRD hereof.

    3.   If, pursuant to the provisions of paragraph
1 or paragraph 2 of this Section C, the Trustees are directed to
pay a per stirpital share of such income and principal to a
descendant of the Grantor subject to the provisions of this
Article, and if at the time the Trustees are so directed there
shall be in existence a trust for such descendant under a trust
agreement between Arie Genger, as grantor, and Lawrence M. Small
and Sash A. Spencer, as trustees, executed on the date hereof
and known as the "Sagi Genger 1993 Trust Agreement," the
Trustees shall not pay such per stirpital share to such descen-
dant subject to the provisions of this Article but shall instead
pay such per stirpital share to the trustees then acting under
said trust agreement, to be disposed of by them pursuant to the
provisions of the trust for such descendant under said trust
agreement.

-8-

D.   Notwithstanding anything herein to the contrary, each trust created by the terms of this Article shall terminate, if not sooner terminated, upon the expiration of twenty-one (21) years after the death of the last surviving descendant of the Grantor's parents, SHARGA GENGER and DORA GENGER, who shall have been in being on the date hereof; and the Trustees shall thereupon pay the then principal of any trust terminated in accordance with the provisions of this Section, together with all net income thereof accrued but not yet collected and collected but not yet disposed of, to the descendant of the Grantor with respect to whom such trust is being held.

THIRD:   Disposition of Property if No Descendant of the Grantor is Living.

A.   As used in this Article:

1.   The words "such time" shall mean the time as of which any property is directed to be paid in accordance with the provisions of this Article.

2.   The term "Qualified Charitable Organization" shall mean an organization that shall be qualified as an organization to which contributions and bequests are deductible for both United States income tax, gift tax and estate tax purposes under the provisions of Section 170, Section 2522 and Section 2055 of the Internal Revenue Code.

-9-

B.    If, under any provision of this Trust Agreement,
any property is directed to be paid in accordance with the pro-
visions of this Article, the Trustees shall pay such property as
follows:

1.    If the Grantor, the Grantor's spouse and/or
any one or more descendants of the Grantor shall have caused
there to be created a foundation known as The Genger Foundation,
and if at such time said Foundation shall be in existence and
shall be a Qualified Charitable Organization, then, in such
event, the Trustees shall pay such property to said Foundation.

2.    If at such time either The Genger Foundation
created as aforesaid shall not be in existence or said Founda-
tion shall be in existence but shall not be a Qualified Charit-
able Organization, and if at such time the Trustees are autho-
rized under applicable law to cause to be organized a corpora-
tion under and in accordance with the laws of any state of the
United States which the Trustees, in their discretion, shall
select, which corporation (i) shall be known by the name of The
Genger Foundation (or by such other name as the Trustees, in
their discretion, shall select if the name of The Genger Founda-
tion shall not be available to be utilized as the name of said
corporation), (ii) shall have as its purposes the encouragement,
promotion, support and enhancement of non-orthodox study and
education for children in the State of Israel pertaining to the
customs, practices and ancient and modern history of the Jewish

-10-

Sagi A. Genger        12127506620>>

people and shall maintain all of the property held by it, and use all of the net income thereof received from time to time, for the encouragement, promotion, support and enhancement of such study and education for children, (iii) shall be required to maintain all of the property held by it, and use all of the net income thereof received from time to time, for such purposes, with such property and income to be expended for such purposes in such amounts, at such time or times and to or for the use or benefit of such recipient or recipients as the directors, trustees and/or the officers of such corporation shall, in their discretion, determine from time to time, subject, however, to the other provisions of this paragraph 2, (iv) shall have as its initial directors or trustees the Trustees hereunder, the Grantor's cousin, JEREMIAH WOHLBERG (now residing at 2325 Lindenmere Drive, Merrick, New York), if he shall not then be a Trustee hereunder, and also such other individual or individuals, if any, as may be designated by the Trustees, and thereafter to have as directors or trustees such individuals as shall from time to time be determined as provided for in the certificate of incorporation and/or by-laws of said corporation, and (v) shall be organized and maintained in such manner as to be and continue to be a Qualified Charitable Organization, then, in such event, the Trustees shall organize such a corporation, and the Trustees shall pay such property to such corporation.

-11-

3.   If at such time (i) either The Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and (ii) the Trustees are not authorized under applicable law to cause to be organized a corporation of the nature referred to in paragraph 2 of this Section B, then, in such event, the Trustees shall pay such property to the JEWISH COMMUNAL FUND OF NEW YORK, New York, New York, to be held, administered and disposed of pursuant to the rules and regulations thereof as an Undesignated Philanthropic Fund to be known as the Genger Philanthropic Fund and with the privilege of making advisory recommendations with respect thereto to be held in the first instance by the Trustees, said JEREMIAH WOHLBERG, if he shall not then be a Trustee hereunder, and also by such other individual or individuals, if any, as the Trustees may designate, and thereafter by such other individual or individuals as such designees and their successors acting in such capacity may from time to time designate, and it is requested (but not directed) that the principal and income of such Fund shall be utilized to encourage, promote, support and enhance non-orthodox study and education for children in the State of Israel *pertaining to the customs, practices and ancient and modern* history of the Jewish people.

-12-

FOURTH:   Additions to the Trusts.

Any person, including the Grantor, by a transfer to take effect during the life of such person or upon the death of such person, may, at any time or times, add to the principal of any trust hereunder any property of any kind or nature acceptable to the Trustees, and any such additional property so received by the Trustees pursuant to the provisions of this Article shall thereafter be deemed to be part of the principal of such trust subject to all of the terms, provisions and conditions of this Trust Agreement.

FIFTH:   Irrevocability.

This Trust Agreement and the trusts hereby created are irrevocable and not subject to amendment or change.

SIXTH:   Governing Law.

This Trust Agreement and the trusts hereby created shall be governed by the laws of the State of New York.

SEVENTH: *Trustees*.

A.   The initial Trustees acting hereunder shall be LAWRENCE M. SMALL and SASH A. SPENCER.

B.   Each individual acting as a Trustee hereunder (whether such Trustee is initially a party to this Trust Agreement or a successor Trustee named in Section C of this Article

-13-

or appointed pursuant to the provisions of this Section B) is
authorized and empowered to appoint another individual (other
than the Grantor) to act in his or her place and stead as a
Trustee hereunder. Each appointment of a successor Trustee
hereunder shall be made by the execution of an instrument of
appointment signed and acknowledged by the individual who shall
have made such appointment and by delivering such instrument in
accordance with the provisions of Section G of this Article; and
any such appointment may be revoked in the same manner by the
individual Trustee who shall have made it at any time before the
occurrence of the event or events as of which such appointment
shall, by its provisions, become effective. Any appointment
made in accordance with the provisions of this Section B shall
be valid only if the individual so appointed shall, within
thirty (30) days after the later of (i) the date on which a copy
of such instrument of appointment is so delivered to him or her,
and (ii) the occurrence of the event or events as of which such
appointment shall, by its provisions, become effective, qualify
as a successor Trustee under this Trust Agreement in accordance
with the provisions of Section D of this Article. Each succes-
sor Trustee named in Section C of this Article or appointed in
accordance with the provisions of this Section B shall be vested
with the same powers and authority as the initial Trustees who
are parties to this Trust Agreement; provided, however, that no
such Trustee shall be permitted to exercise any authority or

-14-

power which such Trustee shall be prohibited from exercising by an express provision of this Trust Agreement.

C. 1. If either LAWRENCE M. SMALL or SASH A. SPENCER shall cease to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, MARTIN A. COLEMAN (now residing at 51 Cambridge Road, Great Neck, New York 11023) shall act as Trustee hereunder.

2. If MARTIN A. COLEMAN shall fail or cease cease to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, THOMAS G. HARDY (now residing at 935 Park Avenue, New York, New York 10028) shall act as a Trustee hereunder.

D. Each successor Trustee hereunder shall qualify as such by accepting the trusteeship by the execution of a signed and acknowledged instrument of acceptance and by delivering such instrument in accordance with the provisions of Section G of this Article.

E. Any individual Trustee hereunder may resign as such a Trustee by the execution of a signed and acknowledged instrument of resignation and by delivering such instrument in accordance with the provisions of Section G of this Article.

-15-

Any such resignation shall become effective upon the receipt of such instruments of resignation by each individual to whom it is delivered or mailed as aforesaid or at such later date as may be specified therein.

F.   If any individual while acting as a Trustee hereunder shall become incapable of discharging his or her responsibilities and duties as such a Trustee by reason of a physical, emotional or intellectual incapacity and such incapacity shall be confirmed by each of two medical doctors in written statements, copies of which shall be delivered or mailed as hereinafter provided, the individual who is so incapacitated shall be deemed for the purposes of construing and applying all of the provisions of this Trust Agreement to have effectively resigned as such Trustee in compliance with the provisions of Section B of this Article, such resignation to be deemed to be effective upon the delivery or mailing of the aforesaid statements as hereinafter provided. Each of the aforesaid statements shall be signed and acknowledged by the medical doctor making the same and copies of the same shall be delivered or mailed by registered or certified mail to the individual, if any, who will become the successor Trustee hereunder in the place and stead of the incapacitated Trustee to whom such statement pertains, to each Trustee, if any, then acting hereunder (other than the incapacitated Trustee to whom such statement pertains), and also to either (i) the Grantor (or, if the Grantor shall not then be

-16-

living, to the executors, administrators or personal representa-tives of the Grantor's estate), or (ii) any one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied.

G.   Each instrument directed to be delivered in accordance with the provisions of this Section G shall be deliv-ered in person or by mailing a copy of the same by registered or certified mail to each Trustee, if any, then acting hereunder (other than the Trustee, if any, who shall have executed such instrument), and to either (i) the Grantor (or, if the Grantor is not then living, to the executors, personal representatives or administrators of the Grantor's estate), or (ii) any one or more of the adult individuals to whom or for whose use or bene-fit the income of any trust hereunder may then be paid or applied.

H.   No bond or other security shall be given by or required in any jurisdiction (whether in the State of New York or elsewhere) of any Trustee at any time acting hereunder (whether such Trustee is named herein or appointed pursuant to the provisions hereof) for the faithful performance of such Trustee's fiduciary duties in any capacity hereunder regardless of whether such Trustee is or may become a non-resident of the State of New York or elsewhere.

-17-

account shall be a proper administration expense of the trust to which such account relates.

B.   If any Trustee shall resign as a Trustee hereunder, the continuing Trustee, if any, or, if there is no continuing Trustee, any successor Trustee who shall have qualified to act in accordance with the provisions of Section D of Article SEVENTH hereof, may deliver to the Trustee so resigning an instrument whereby such resigning Trustee shall be released and discharged, to the extent stated therein, of and from any and all accountability, liability and responsibility for acts or omissions as Trustee.  Any such release and discharge shall be binding upon all persons, whether or not then in being, then or thereafter interested in either the income or the principal of any trust hereunder and shall have the force and effect of a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for the judicial settlement of the account of such Trustee in which jurisdiction was obtained of all necessary and proper parties. The foregoing provision, however, shall not preclude any Trustee so resigning from having his or her account judicially settled, and in any such proceeding it shall not be necessary to serve any person who is under a disability if there is another party to the proceeding who is not under any disability and who has the same interest as the person who is under a disability, and, in such event, it shall not be necessary to appoint a guardian

-19-

ad litem for any such party who is under a disability.   The
expenses of any judicial account rendered by a Trustee who shall
resign shall be a proper administration expense of the trust to
which such account relates.

C.   In addition to the foregoing, the Trustees are
hereby authorized, at any time and from time to time, with re-
spect to any trust hereunder, to settle the account of the
Trustees by agreement between the Trustees and the then adult
individual or individuals to whom or for whose use or benefit
the income of such trust may then be paid or applied and the
adult or adults who would be entitled to the principal in case
such trust were to terminate at the time of such agreement,
excluding any such individual who is under a disability if there
is a party to the agreement who is not under any disability and
who has the same interest as the individual who is under a dis-
ability, which agreement shall bind all persons, whether or not
then in being, then or thereafter interested in either the
income or the principal of such trust.   Any such settlement
shall have the same force and effect as a final decree, judgment
or order of a court of competent jurisdiction rendered in an
appropriate action or proceeding for the judicial settlement of
such account in which jurisdiction was obtained of all necessary
and proper parties.   The expenses of any such account shall be
a proper administration expense of such trust.

-20-

D.   To the extent permitted by law, no Trustee shall be accountable, liable or responsible for any act, default, negligence, or omission of any other Trustee.

TENTH:   Definitions.

Wherever used in this Trust Agreement:

1.   The word "Trustees" and all references to the Trustees shall mean and refer to the Trustees and successor Trustees hereinabove named, any successor Trustee appointed pursuant to the provisions hereof, any substitute Trustee appointed by a court of competent jurisdiction, the survivors or survivor of them, and their and each of their successors or successor, as may be acting hereunder from time to time.

2.   The words "IN TRUST" shall mean "in trust, nevertheless, to hold, manage, invest and reinvest, and, until payment thereof as hereinafter directed, to receive the income thereof."

3.   The word "pay" shall, where applicable, mean "convey, transfer and pay" and the word "payment" shall, where applicable, mean "conveyance, transfer and payment."

4.   The words "descendant" and "descendants," when used with respect to any person, shall be deemed to include (i) every individual who is born to such person, (ii) every individual who is lawfully adopted by such person, and (iii)

-21-

every individual who is otherwise descended from such person, whether by birth, or by lawful adoption, or by a combination thereof.

5.   The words "Internal Revenue Code" shall mean and refer to "the United States Internal Revenue Code of 1986 (as amended from time to time)," and any reference to a specific section, chapter or other provision of the Internal Revenue Code shall mean and refer to said section, chapter or other provision and any successor statute thereto pertaining to the same subject matter as said section, chapter or other provision.

ELEVENTH: Administrative Powers.

A.   In addition to and in amplification of the powers given by law to trustees, the Trustees, but solely in their fiduciary capacities, are hereby authorized and empowered, in their discretion:

1.   To sell, exchange, make contracts with respect to, grant options on or otherwise dispose of, at public or private sale, at such prices, on such terms (including sales on credit with or without security) and at such time or times as the Trustees shall determine, any property, real or personal, which may at any time form part of any trust hereunder.

2.   To lease, for such periods (whether or not any such period shall extend beyond the period prescribed by law

-22-

or the probable term of any trust hereunder), on such terms and
conditions and at such time or times as the Trustees shall
determine, the whole or any portion or portions of any property,
real or personal, which may at any time form part of any trust
hereunder, whether the same be held in severalty or as
tenant-in-common with others or in a partnership, syndicate or
joint venture or otherwise, and release and convey any undivided
interest in any such property for the purpose of effecting par-
tition of the whole or any part thereof; and make, place, extend
or renew mortgages, pledges, building loan agreements or build-
ing loan mortgages upon or affecting any and all such property;
and make, execute and deliver such mortgages, pledges and agree-
ments, together with proper bonds, notes or other instruments of
indebtedness to accompany the same, and such extension or
renewal agreements, as to the Trustees shall seem necessary,
advisable or proper; and also to repair, alter, reconstruct,
build upon or improve any such property and on such terms and at
such time or times as the Trustees shall determine, give and
grant to others the right so to do, or agree in, or so modify
any lease affecting any such property that the lessee may alter,
repair, reconstruct, build upon, improve, mortgage and pledge
any such property; and generally to make, alter and modify all
agreements, leases, mortgages, pledges, building loans, sales,
exchanges, transfers and conveyances of or affecting any such
property which the Trustees shall determine to be necessary,
advisable or proper for the preservation, improvement, enhance-

-23-

ment in value of, or betterment of or addition to, such prop-
erty.

        3.    To hold any part or all of the assets of any
trust hereunder invested in the same form of property in which
the same shall be invested when received by the Trustees, and
invest and reinvest the assets of any such trust, or any portion
thereof, in any form of investment which the Trustees may deter-
mine (including, without limitation, mutual funds, common trust
funds, investment trusts, general partnerships and limited part-
nerships), whether or not such investment is of the nature pre-
scribed by law as a legal investment for fiduciaries or is spec-
ulative in nature, and without regard to the percentage of the
assets of such trust which such investment or similar invest-
ments may constitute.

        4.    To vote in person or by proxy all stocks and
other securities held by any trust hereunder; grant, exercise,
sell or otherwise turn to account rights to subscribe for stock
and securities and options of any nature; amortize or refrain
from amortizing premiums on bonds or other securities which the
Trustees may purchase or receive; participate in reorganiza-
tions, mergers, liquidations or dissolutions, and contribute to
the expenses of, and deposit securities with, protective commit-
tees in connection therewith; participate in voting trusts; and
generally exercise, in respect of said stock and securities, all

-24-

P 26/43    <<0299052121    Jagua .Vigeg    2007-01-16 17.05

rights, powers or privileges which may be lawfully exercised by any person owning similar property in his or her own right.

5.    To employ any investment counsel, corporate custodians, agents, accountants, brokers and attorneys which the Trustees may select and pay the charges thereof (including charges for preparation of trust tax returns, the Trustees' accounts and any other necessary trust records); and the Trustees, or a partnership, corporation or other entity in which any Trustee shall be interested, or by which any Trustee may be employed, may be retained in any such capacity, and, in such event, the charges which shall be payable to such Trustee, or to any such partnership, corporation or other entity, shall be in addition to compensation otherwise allowable to such Trustee and may be paid without prior judicial approval.

6.    In any case in which the Trustees are authorized or required to pay or distribute any share of any trust hereunder, to make such payment or distribution in kind, or partly in kind and partly in money and, in connection therewith, to allocate equal or unequal interests in, or amounts of, specific property in satisfaction of such payment or distribution; provided, however, that any property distributed in kind shall be valued, for purposes of such distribution, at its fair market value on the date of distribution.

-25-

7.   To settle, adjust, compromise or submit to arbitration any dispute, claim or controversy in which any trust hereunder may be in any way interested.

8.   To borrow money from any person, partnership, corporation or other entity, who may be any Trustee or a partnership, corporation or other entity in which any Trustee may be interested, or by which any Trustee may be employed, for the purpose of meeting any and all charges against any trust hereunder or for any other purpose connected with the administration, preservation, improvement or enhancement in value of any such trust, and, in connection with any such borrowing, to pledge, hypothecate or mortgage any part or all of the assets of any such trust.

9.   To keep any or all of the securities at any time forming a part of any trust hereunder in the name of one or more nominees.

10.   In any case where doubt or uncertainty exists under applicable law or this Trust Agreement, to credit receipts and charge expenses to principal or income, or partly to each.

11.   By instrument or instruments signed by all of the Trustees qualified and acting as such at any time with respect to any trust hereunder, to delegate, in whole or in part, to any person or persons (including any one or more of the

-26-

Trustees) the authority and power to (i) sign checks, drafts or orders for the payment or withdrawal of funds from any bank account or other depository in which funds of such trust shall be held, (ii) endorse for sale, transfer or delivery, or sell, transfer or deliver, or purchase or otherwise acquire, any and all stocks, stock warrants, stock rights, bonds or other securities whatsoever with respect to such trust, and (iii) gain access to any safe deposit box which may be in the names of the Trustees and remove part or all of the contents of any such safe deposit box and release and surrender the same.

12. To pay or deliver to either parent or to the guardian of the property of any minor or to an adult with whom such minor resides, and, with respect to any person for whom it is permissible to do so under applicable law, to a custodian for such person under a Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state until the age of eighteen (18) years (or until such age in excess of eighteen (18) years as shall be permissible under applicable law and which the Trustees, in their discretion, shall select) any sum or property, including income, which such minor or such person shall either be entitled to receive or to have applied for his or her use or benefit under any of the provisions hereof, without requiring that such parent, adult or custodian obtain letters of guardianship or that such parent, guardian, adult or custodian give any bond or other security for any such payment or delivery

-27-

so made; and the receipt of such parent, guardian, adult or custodian for the amount of such payment, or for the property so delivered, shall be an absolute protection to the Trustees and a complete release and discharge from all further accountability in respect of any such payment or delivery.

13.  If any beneficiary of any trust hereunder shall, in the opinion of the Trustees, be or become incapacitated (whether by reason of illness, age or other causes) the Trustees may, in their discretion, wholly or partly in lieu of paying net income or principal of such trust to such beneficiary as authorized or directed by this Trust Agreement, dispose of the same in one or more of the following ways:

(a)  by making payment of such net income or principal to a legally appointed guardian or other fiduciary of such beneficiary;

(b)  by making payment of such net income or principal, on behalf of such beneficiary, to any person with whom such beneficiary resides or who has charge of his or her care; and/or

(c)  by applying such net income or principal directly for the use or benefit of such beneficiary.

-28-

14.   To remove the assets of, hold and administer
any such assets in, and/or move the situs of the administration
of any trust hereunder to, such location or locations (which may
be in a state or other jurisdiction other than the State of New
York) as the Trustees, in their discretion, shall select.   If
the Trustees, in their discretion, shall determine it advisable
to move the situs of the administration of any trust hereunder
to a location where the judicial administration of trusts is
required or permitted, the Trustees are authorized to select and
request a court in such location having jurisdiction over the
administration of trusts to accept jurisdiction over the admin-
istration of such trust, and it is requested that such court
accept, and that it be permitted to accept, jurisdiction over
the administration of such trust; and it is directed that the
administration of such trust shall be governed from time to time
by the laws of the jurisdiction in which the administration of
such trust is then located.

15.   To make, or refrain from making, elections
or allocations permitted under any applicable tax law without
regard to the effect of any such election or allocation on the
interest of any beneficiary of any trust hereunder and, if any
such election or allocation shall be made, to apportion, or
refrain from apportioning, any benefits thereof among the
respective interests of the beneficiaries of such trust, all in
such manner as the Trustees shall deem appropriate.

-29-

16.   To retain or invest in solido the property
held in any trust hereunder with the property held in one or
more of the other trusts hereunder or with the property held in
any other trust created by the Grantor or by any other person
for purposes of convenience or for the better investment
thereof.

17.   To exercise all authority, powers, privi-
leges and discretion conferred in this Article after the termi-
nation of any trust created hereunder and until all of the
assets of such trust are fully distributed.

B.   No person or party dealing with the Trustees
shall be bound to see to the application of any money or other
consideration paid by him or her to the Trustees.

C.   Neither the principal nor the income of any trust
hereunder, or any part thereof, shall or may at any time be
liable or subject in any manner whatsoever to the debts or lia-
bilities of any beneficiary entitled to receive any principal or
income therefrom; nor shall the principal or income of any trust
hereunder be liable to attachment by garnishment proceedings or
other legal process issued by any creditor of any beneficiary of
such trust for debts heretofore or hereafter contracted by such
beneficiary; nor shall any assignment, conveyance, charge,
encumbrance or order, either of principal or income, given by
any such beneficiary be valid.

-30-

D.   Whenever in this Trust Agreement it is provided
that an instrument is to be "acknowledged," such instrument
shall be acknowledged in such manner as would be required if the
same were a conveyance of real property entitled to be recorded
in the State of New York.

E.   1.   To the fullest extent permitted by law, no
transaction or decision involving any trust hereunder shall be
deemed invalidated in any way by reason of any personal, benefi-
cial or other interest which any Trustee may have with respect
to such transaction or decision, including, without limitation,
any transaction or decision with respect to any corporation,
company, partnership, association, estate, trust or other entity
in which any Trustee may have an interest in a capacity other
than as a Trustee hereunder, regardless of any conflict of
interest as to any such transaction or decision, and any such
transaction or decision shall be lawful and proper and shall not
be questioned unless such Trustee is guilty of fraud with
respect thereto.   Without limiting the foregoing, no Trustee
shall be disqualified or barred from acting as such or have any
liability hereunder in exercising any power, authority or dis-
cretion conferred upon the Trustees by reason of the fact that
such Trustee may be a stockholder, officer, director, partner,
executor, administrator, personal representative, trustee, bene-
ficiary, or in any other way interested in the corporation, com-
pany, partnership, association, estate, trust or other entity

-31-

whose securities or property are the subject matter of the exercise of such power, authority or discretion.

2.   The Trustees hereunder shall be entitled to compensation as officers, directors, fiduciaries or other participants in any such entity notwithstanding the fact that they are Trustees hereunder and are also entitled to receive reimbursement for their out-of-pocket expenses as such Trustees.

F.   The Trustees shall be under no duty or obligation and shall not be liable to any trust hereunder or to any person or persons interested in any trust hereunder or be surcharged for failure to buy, sell or engage in any transaction directly or indirectly involving securities issued or to be issued by any corporation or other business organization concerning which any of the Trustees, in a capacity other than as a Trustee hereunder, may have acquired any information which has not been disclosed to the public.

TWELFTH:   Provisions Relating to the GST.

A.   As used in this Article:

1.   "GST" shall mean and refer to "the United States generation-skipping transfer tax imposed by Chapter 13 of the Internal Revenue Code."

-32-

2.   The words "inclusion ratio" shall have the same meaning as those words are given in Section 2642 of the Internal Revenue Code.

3.   The words "Net Death Taxes" shall mean and refer to "the aggregate death taxes (including, without limitation, United States, state, local and other estate taxes and inheritance taxes but not including any interest and penalties thereon), after taking into account all applicable credits, payable with respect to the estate of such beneficiary."

B.   1.   Notwithstanding any other provision in this Trust Agreement to the contrary, and in addition to any other power of appointment hereinabove given by the previous provisions of this Trust Agreement to any individual at whose death the inclusion ratio with respect to any trust under this Trust Agreement would, but for the provisions of this Section B, be more than zero (such individual being referred to in this Article as "such beneficiary"), the Trustees of such trust are authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over such trust, if such court shall accept such instrument for filing), (i) to create in such beneficiary a power (hereinafter referred to in this Section B as "such power"), to be exercised by a provision in his or her Will expressly referring to this Article of this Trust Agreement, to appoint to the creditors of his or her estate any portion of the

-33-

property held in such trust at the death of such beneficiary,
and (ii) to limit such power, by formula or otherwise, to less
than all of the property held in such trust at the death of such
beneficiary; provided, however, that with respect to each such
trust, the maximum amount of property over which such power may
be created shall not, after taking into account the property, if
any, over which any other such power is created in such benefi-
ciary, exceed the amount, if any, above which any further addi-
tion to the amount subject to such power would increase the Net
Death Taxes determined with respect to such beneficiary's estate
by an amount equal to or greater than the net decrease in the
aggregate of (x) the GST and (y) any state and/or local tax on
generation-skipping transfers imposed as a result of the death
of such beneficiary that would result from such further addi-
tion.   Unless such beneficiary's Will otherwise provides by
express reference to this Trust Agreement and such power, the
increase in the Net Death Taxes on such beneficiary's estate
resulting from such power shall be paid from that part of the
principal of such trust over which such power is exercisable.
If, or to the extent that, such beneficiary shall fail so
expressly and so validly to exercise any power created in such
beneficiary by the Trustees pursuant to the provisions of this
paragraph, the unappointed portion (or, as the case may be, all)
of the property subject to such power shall pass pursuant to the
provisions of this Trust Agreement otherwise applicable to such
property.

-34-

2.   The Trustees are further authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over the trust to which such power relates, if such court shall accept such instrument for filing), to revoke any power created by the Trustees pursuant to the provisions of paragraph 1 of this Section B at any time prior to the death of the beneficiary in whom such power was created, and to release, in the manner set forth in Article THIRTEENTH hereof, the right to create such a power.  The Trustees shall not be liable for any exercise, release or failure to exercise the authority and power granted to them by the provisions of said paragraph 1 or for the revocation of any power created by them pursuant to the provisions of said paragraph 1, provided they utilize good faith in considering whether or not to exercise or release such power or to cause such revocation, whether such consideration be at their own instance or at the request of an individual who is a beneficiary of a trust hereunder, the guardian or other fiduciary of such an individual, or a member of his or her family.

C.   1.   Notwithstanding any other provision in this Trust Agreement to the contrary, if at any time any property is to be placed in a trust under the provisions of any Article of this Trust Agreement, the Trustees shall, if need be, and if it is possible to do so, divide such property and place the same in separate trusts to the end that one such trust shall have an

-35-

inclusion ratio of zero, and if any property which is directed
to be added to a trust hereunder shall have an inclusion ratio
which is different than the inclusion ratio of such trust, the
Trustees shall not make such addition but shall instead admin-
ister such property in a separate trust under this Trust Agree-
ment; and, in each such instance, the property to be placed or
held in such a separate trust shall be held, administered and
disposed of by the Trustees pursuant to provisions identical to
the provisions of the trust to which, but for the provisions of
this paragraph 1, such property would have been placed or added.

2.   If, pursuant to the provisions of paragraph
1 of this Section C, any property that would otherwise be held
in a single trust hereunder is instead held in separate trusts
hereunder, the Trustees of such trusts may, at any time or from
time to time, (i) make different tax elections and allocations
with respect to each such trust, (ii) expend principal and
income and exercise any discretionary power differently with
respect to each such trust, (iii) invest each such trust differ-
ently, and/or (iv) take all other actions consistent with such
trusts being separate entities.  Furthermore, the donee of any
power of appointment with respect to such trusts may exercise
such power differently with respect to each such trust.

D.   Notwithstanding the provisions of the foregoing
Sections of this Article to the contrary, if any Trustee here-
under is a current beneficiary of the income of any trust here-

-36-

under, or may, in the discretion of the Trustees, be a current income beneficiary of any such trust, then, in such event, such Trustee shall not, in his or her capacity as a Trustee of such trust, have any voice or vote or otherwise participate in any decision pertaining to the matters relating to such trust that are addressed in the foregoing Sections of this Article, and, in each such event, the other Trustee or Trustees of such trust shall make all decisions relating to such trust that pertain to such matters.

THIRTEENTH:   Release of Powers.

Any beneficiary and any Trustee hereunder may at any time or times release any discretionary power of appointment or discretionary power to distribute principal or income or any other discretionary power hereby given to such beneficiary or Trustee, either with or without consideration, with respect to the whole or any part of the property subject to such power and also in such manner as to reduce or limit the persons or objects or classes of persons or objects in whose favor such power would otherwise be exercisable, by an instrument signed and acknowl-edged by the beneficiary or Trustee releasing such power and delivered to (i) each Trustee then acting hereunder (other than the Trustee, if any, who shall have executed such instrument), (ii) the Grantor (or, if the Grantor is not then living, to the executors, administrators or personal representatives of the

-37-

<<0299052721   Sagi A. Genger   2007-01-16 17:08

Grantor's estate), or (iii) any one or more of the adult indi

viduals to whom or for whose use or benefit the income of any

trust hereunder may then be paid or applied.   In the event of

the release of any such power by any Trustee, the remaining

Trustee or Trustees hereunder, if any, may thereafter exercise

such power, other than any discretionary power which was not

initially vested in such remaining Trustee or Trustees.   The

release of any power by any Trustee hereunder pursuant to the

provisions of this Article shall not be binding upon any Trustee

who may thereafter act as a Trustee hereunder unless such power

shall have been released by all of the Trustees then in office

who are vested with such power by their execution of a signed

and acknowledged instrument specifically providing that such

release is to be binding upon all successor Trustees hereunder.

FOURTEENTH:    Provision With Respect To
Closely Held Businesses.

Without limiting the powers and authority conferred

upon the Trustees by Article ELEVENTH hereof but in extension

thereof, the Trustees are specifically authorized and empowered,

in their discretion, to retain for as long as they, in their

discretion, shall deem advisable, any or all shares of stock in

any closely held corporation, or any indebtedness owing by any

such corporation, or any or all interests in any proprietorship,

unincorporated business, partnership, joint venture, realty or

-38-

P 40/43                                                       Sag/A, Geiger.    12127506620>>        2007-01-16 17:08

any other asset, whether owned individually, as tenant-in-com-
mon, partner or otherwise, regardless of whether such asset or
assets shall be producing profits or losses through ownership or
operation thereof, and regardless of the percentage of the
trusts hereunder which such assets or similar assets may consti-
tute; and their decision to retain and hold any such asset or
liability shall be binding and conclusive upon and shall not be
subject to question by any person interested, or who may become
interested, in any of the trusts hereunder, and the Trustees
shall not incur any liability by reason thereof.

FIFTEENTH:    Headings.

The Article headings contained herein are inserted
only as a matter of convenience and in no way define, limit,
extend or describe the scope hereof or the intent of any provi-
sion hereof.

SIXTEENTH:    Severability.

Should any part, clause, provision or condition hereof
be held to be void or invalid, then such invalidity shall not
affect any other part, clause, provision or condition hereof,
but the remainder hereof shall be effective as though such void

-39-

part, clause, provision or condition had not been contained herein.

WITNESS the due execution hereof by the Grantor and Trustees on the day and year first above written.

ARIE GENGER,
as Grantor

LAWRENCE M. SMALL,
as Trustee

SASH A. SPENCER,
as Trustee

-40-

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

On this /3 day of December, 1993, before me person-
ally appeared ARIE GENGER, to me known and known to me to be a
person described in and who executed the foregoing instrument,
and he duly acknowledged to me that he executed the same.

_____
Notary Public

**BRIT GEIGER**
Notary Public, State of New York
No. 24-4502316 Qual. in Kings Co.
Certificate Filed in New York County
Commission Expires June 30, 19__

*District of Columbia*
~~STATE OF~~                    )
                               )  ss.:
~~COUNTY OF~~                   )

On this /5ᵗʰ day of December, 1993, before me person-
ally appeared LAWRENCE M. SMALL, to me known and known to me to
be a person described in and who executed the foregoing instru-
ment, and he duly acknowledged to me that he executed the same.

*Jeanne M. Meister*
Notary Public

My Commission Expires July 31, 1997

STATE OF *New York*   )
                      )  ss.:
COUNTY OF *New York*  )

On this /6ᵗʰ day of December, 1993, before me person-
ally appeared SASH A. SPENCER, to me known and known to me to be
a person described in and who executed the foregoing instrument,
and he duly acknowledged to me that he executed the same.

*Stella M. Orso*
Notary Public

**STELLA M. ORSO**
Notary Public, State of New York
No. 24-4524037
Qualified in Kings County
Certificate Filed in New York County
Commission Expires March 30, 19__

-41-

FILED: NEW YORK COUNTY CLERK 03/06/2012

NYSCEF DOC. NO. 216

INDEX NO. 651089/2010

RECEIVED NYSCEF: 03/06/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
Trust,

                Plaintiffs,

     v.

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, Individually and as Trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.,

                Defendants.

Index No. 651089/2010

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DALIA GENGER'S MOTION TO DISMISS

**PEDOWITZ & MEISTER, LLP**
**1501 Broadway, Suite 800**
**New York, NY 10036**
**Tel: (212) 403-7330**
**Fax: (212) 354-6614**
**robert.meister@pedowitzmeister.com**
**Attorneys for Defendant**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| FACTS |  | 2 |
| Divorce Settlement Agreement |  | 3 |
| Post-Divorce Arbitration and Final Arbitration Award |  | 4 |
| Arie Sued for Making Improper Transfers |  | 4 |
| ARGUMENT |  | 6 |
| Legal Standard |  | 6 |
| I. | The Claim For Reformation Based on the Language of the Divorce Settlement Agreement Should Be Dismissed | 6 |
|  | a. The Language of the Stipulation Agreement Is Inapplicable to Arie's Claim for Reformation | 7 |
|  | b. As There Was No Mutual Mistake of Fact Because Arie Knew and Dalia Not Know that the Required Consent of the Other Shareholders Had Not Been Obtained, Arie Is Not Entitled to Reformation or a Claim for Unjust Enrichment or Rescission Against Dalia | 7 |
| II. | Arie's Claims to Redo the Economics of the Divorce Stipulation are Barred by Res Judicata Arising from the 2008 Final Arbitration Award | 9 |
| III. | Arie Has Failed to Join an Indispensable Party: The Orly Genger 1993 Trust | 10 |
| IV. | As Dalia Does Not Own Any Shares of TRI Stock, No Injunctions or Declaratory Judgment Preventing Her from Encumbering These Shares Is Inappropriate | 13 |
| V. | Arie is Not Entitled to Any Equitable Remedy As He Has Unclean Hands | 13 |
| VI. | Arie's Fourth Cause of Action Seeking Unjust Enrichment and Rescission Should Be Dismissed | 15 |
| VII. | The Fifth Cause of Action for a Permanent Injunction Should be Dismissed | 16 |
| CONCLUSION |  | 17 |

**TABLE OF AUTHORITIES**

**Cases**

*390 W. End Associates v. Baron*, 274 A.D.2d 330, 711 N.Y.S.2d 176 (1st Dept. 2000) ............. 13

*ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 952 N.E.2d 463 (2011)............................. 6

*Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F.Supp. 969 (S.D.N.Y. 1992)......... 14

*Breslin Realty Dev. Corp. v. Shaw*, 72 A.D.3d 258, 893 N.Y.S.2d 95 (2d Dept. 2010)............. 10

*Chimart Assoc. v. Paul*, 66 N.Y.2d 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986) .................... 8

*Citibank, N.A. v. Am. Banana Co., Inc.*, 50 A.D.3d 593, 856 N.Y.S.2d 600 (1st Dept. 2008)..... 13

*Dabrowski v. Abax Inc.*, 64 A.D.3d 426, 882 N.Y.S.2d 119 (1st Dept. 2009) ............................. 15

*Dalia Genger v. TR Investors, LLC et. al.* (Del. Ch. 6906-CS, filed Oct. 4, 2011)........... 6, 11, 13

*Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 364 (S.D.N.Y. 2008) ... 14

*Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85 (2d Cir. 1998) .............................. 14

*First Natl. Bank of Amsterdam v. Shuler*, 153 N.Y. 163, 47 N.E. 262 (1897).............................. 12

*Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011) .............. passim

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 841 N.E.2d 742 (2005)...................................... 15

*Goldstein v. Delgratia Mining Corp.*, 176 F.R.D. 454 (S.D.N.Y.1997)......................................... 14

*Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 827
    N.Y.S.2d 147 (1st Dept. 2007).................................................................................................... 8

*Harris v. Uhlendorf*, 24 N.Y.2d 463, 301 N.Y.S.2d 53, 248 N.E.2d 892 (1969) ........................... 8

*Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8 , 892 N.E.2d 380 (2008) ................................. 9

*Leon v. Martinez*, 84 N.Y.2d 83, 87, 614 N.Y.S.2d 972, 638 N.E.2d 511 (1994).......................... 6

*Matlin Patterson ATA Holdings LLC v. Fed. Express Corp.*, 929 N.Y.S.2d 571 (1st Dept. 2011)
    ........................................................................................................................................................ 6

*Modjeska v. Greer*, 233 A.D.2d 589, 590 (3d Dep't 1996) .......................................................... 11

*Morgan Guaranty Trust Co. of New York v. Solow*, 114 A.D.2d 818, 495 N.Y.S.2d 389, aff'd. 68
    N.Y.2d 779, 506 N.Y.S.2d 674, 498 N.E.2d 147 (1986)............................................................ 9

*Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 214 N.E.2d 361 (1966)............ 13

*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647
    (1999) ............................................................................................................................................. 9

*Pedowitz & Meister LLP v. TPR Investment Associates, Inc. et al.*, U.D.S.D., S.D.N.Y., 11 civ.
    1502 (JFK).................................................................................................................................... 12

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89
    L.Ed. 1381 (1945) ....................................................................................................................... 14

*Red Hook/Gowanus Chamber of Commerce v. New York City Bd. of Standards & Appeals*, 5
    N.Y.3d 452, 839 N.E.2d 878 (2005) .......................................................................................... 12

*Stonebridge Capital, LLC v. Nomura Int'l PLC*, 68 A.D.3d 546, 891 N.Y.S.2d 56 (1st Dept.
    2009)............................................................................................................................................... 8

*Sud v. Sud*, 211 A.D.2d 423, 621 N.Y.S.2d 37 (1st Dept. 1995)................................................... 6

*TR Investors, LLC v. Arie Genger, C.A*, 2009 WL 4696062 (Del. Ch. Dec. 9, 2009).............. 5, 15

*TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010)
    *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011) ............................................ 3, 5, 9, 15
*Velez v. Feinstein*, 87 A.D.2d 309, 451 N.Y.S.2d 110 (1st Dept. 1982) ...................................... 11
*W. R. Co. v. Nolan*, 48 N.Y. 513 (1872) ...................................................................................... 11
*Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327 (2d Cir.1983) ............................................... 15
*Waverly Mews Corp. v. Waverly Stores Associates*, 294 A.D.2d 130, 1741 N.Y.S.2d 826 (1st
    Dept. 2002) ............................................................................................................................. 9
*William P. Pahl Equip. Corp. v. Kassis*, 182 A.D.2d 22, 588 N.Y.S.2d 8 (1st Dept. 1992) .......... 8
*Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 843 N.E.2d 723 (2005) ............................................... 10

## Statutes

CPLR § 1003 ............................................................................................................................... 1
CPLR § 3211(a)(5) ................................................................................................................... 1, 9
CPLR § 3211(a)(7) ................................................................................................................... 1, 6
CPLR § 3211(a)(10) ............................................................................................................... 1, 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ARIE GENGER and ORLY GENGER, in her individual
capacity and on behalf of the ORLY GENGER 1993
Trust,

                Plaintiffs,

      v.

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, Individually and as Trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and
TRANS-RESOURCES, INC.

                Defendants.

Index No. 651089/2010

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DALIA GENGER'S MOTION TO DISMISS

Defendant Dalia Genger (Dalia) respectfully submits this brief in support of her motion

pursuant to New York Civil Practice Laws and Rules (CPLR) §§ 3211 (a)(5); (a)(7); (a)(10) and

CPLR § 1003 to dismiss all the claims against her in the Third Amended and Supplemental

Complaint.

Dalia Genger was the wife of plaintiff, Arie Genger.. (Since January 2008, Dalia has also

been the Trustee of the Orly Genger 1993 Trust, although the Complaint does not sue her in such

capacity.) Their divorce action was settled by a Stipulation of Settlement (Divorce Settlement

Agreement) on October 26, 2004. In the Divorce Settlement Agreement, Arie agreed to cause

Defendant TPR Investment Associates, Inc. (TPR) to transfer certain shares of Trans-Resources,

1

Inc. (TRI) to the Sagi Genger 1993 Trust (Sagi Trust), to the Orly Genger 1993 Trust (Orly Trust) and to Arie himself.

In 2010, the Delaware Chancery Court held that Arie had not caused TPR to validly transfer legal title to the TRI shares to the Sagi Genger 1993 Trust, to the Orly Genger 1993 Trust or to Arie himself, and that decision was affirmed in relevant part by the Delaware Supreme Court in 2011. *Genger v. TR Investors, LLC,* 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). That decision was premised on Arie's failure to obtain consent of the other TRI shareholders (the Trump Group) as was required under the TRI Shareholders Agreement of which he knew and had signed.

Now, seven years after the divorce agreement, in this proceeding Arie seeks to undo or change various economic provisions of the Divorce Settlement Agreement because he did not do what he was obligated to do under that agreement. He attempts to plead a variety of theories, namely Reformation (First claim); Constructive Trust in favor of Arie purportedly on behalf of Arie and Orly (Second Claim); Unjust Enrichment and Rescission purportedly on behalf of Arie and Orly (Fourth Claim) and Injunction on behalf of Arie and Orly (Fifth Claim). None states a cause of action against Dalia.

## FACTS

In 2001, Arie and TPR entered into a TRI Stockholders Agreement with TRI and its other shareholders that prohibited Arie and TPR from transferring TRI stock to any party other than those expressly permitted to receive such a transfer. Under this agreement, TRI shares could transfer to Arie himself provided written notice was given the other shareholders of TRI, the Trump Group. TRI stock was not permitted to be transferred during Arie's life to his children's trusts, the Orly or Sagi Trusts, without giving written notice containing the terms and conditions of the offer to the Trump Group. The Trump Group then was given the right to elect to purchase

2

all of the offered shares at the price offered by the prospective purchaser and specified in such

notice. *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23,

2010) *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).

**Divorce Settlement Agreement**

In settlement of their divorce proceedings, on October 26, 2004, Dalia and Arie entered

into the Divorce Settlement Agreement (Exhibit A to Arie's Claim). Despite Arie's knowledge

of the extensive transfer restrictions placed on transfers of TRI stock, in the Divorce Settlement

Agreement Arie agreed to cause TPR to transfer all of TPR's 3,000 shares of TRI common stock.

The TRI shares were to be transferred as follows: (i) 794.40 shares (representing 13.99468% of

TRI common stock of) to Arie; and (ii) The Orly and Sagi Trusts would each receive 1,102.80

shares of TRI Stock each (giving each trust an ownership of 19.42766% of TRI common stock).

The Divorce Settlement Agreement further stated that the Orly and Sagi Trusts would execute

and deliver irrevocable proxies to Arie for all of the TRI stock owned by the trust. See Divorce

Settlement Agreement; Article II(9)(a)(ii) at 14.

The Divorce Settlement Agreement made no reference to the restrictions on transfers in

the TRI Stockholders Agreement and did not state whether the Trump Group had notice of or

consented to the transfers. To the contrary, in the Divorce Settlement Agreement, Arie

affirmatively represented to Dalia that,

> [e]xcept for the consent of TPR...no consent, approval or similar
> action of any person is required in connection with the transfer of
> TRI Stock as contemplated hereby and that such transfer will not
> conflict with any agreement to which [Arie] is party or by which
> he is bound.

See Divorce Settlement Agreement; Article II(9)(a) at 13.

3

On October 29, 2004, TPR and Arie entered into an agreement ("Letter Agreement") with the Orly and Sagi Trusts to transfer TPR's 3,000 shares of TRI common stock in accordance with the terms of the Divorce Settlement Agreement. Complaint Ex. A.

**Post-Divorce Arbitration and Final Arbitration Award**

In 2007 – 2008 there was an arbitration proceeding between Dalia and Arie concerning issues relating to, *inter alia*, the economics of the arrangements in the 2004 Stipulation of Settlement concerning the TRI stock transactions.    After "extensive discovery" and approximately 14 days of hearings, where each party made "extensive pre and post hearing submissions", in 2008 the Arbitrator, former Justice E. Leo Milonas, ruled that in the divorce negotiations Arie had falsely misrepresented to Dalia that the TPR's holdings of TRI stock had no value and based on his determination of the value of TRI in 2004, he awarded Dalia $3.85 million based on the shares of TRI stock that Arie was to cause TPR to transfer to himself. Arbitration Opinion, Exhibit A to the Meister Aff.

**Arie Sued for Making Improper Transfers**

On August 11, 2008, one of the TRI shareholders that was part of the Trump Group, Glencova LLC, filed suit in the Southern District of New York to enforce, *inter alia,* its rights under the Stockholders Agreement. During the course of the litigation, the Trump Group entered an agreement with both TPR and the Sagi Trust to purchase for $26,715,416.00 the TRI shares that had allegedly been transferred to the Sagi Trust in pursuant to the Divorce Stipulation in 2004.

Subsequently, the Trump Group filed a complaint in Delaware Chancery Court pursuant to 8 *Del. C.* § 225 to determine the composition of the TRI board. The Trump Group maintained

4

that Arie and TPR's 2004 transfers of TRI stock violated the Stockholders Agreement and, as a result, the transfers were void.

During that litigation, the Delaware Court found that Arie to be in contempt because he had violated a court order by causing evidence that was on his computer as well as TRI's computers to be intentionally destroyed. The Court sanctioned Arie by, among other things, increasing his burden of proof, requiring him to provide corroborating evidence at trial (beyond just his own testimony), requiring him to produce certain documents to the plaintiffs that he had claimed were privileged, and awarding attorneys' fees of $750,000. See *TR Investors, LLC v. Arie Genger, C.A,* 2009 WL 4696062 (Del. Ch. Dec. 9, 2009).

Thereafter the Delaware Chancery Court found that Arie and TPR had executed the transfers of TRI stock in violation of the Stockholders Agreement, and as a result neither Arie, the Orly Trust or the Sagi Trust were the record owners of any TRI shares. The Court, however, upheld the Sagi Trust's agreement with TPR and the Trump Group that transferred the shares purportedly transferred to Sagi pursuant to the Divorce Settlement Agreement to the Trump Group. Accordingly, the Trump Group was entitled to the Sagi Trust shares, giving them a 64% ownership in TRI. *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd,* 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).

The Delaware Supreme Court reversed the Chancery Court's finding that the Trump Group was the record *and beneficial owner* of all the purportedly transferred TRI shares, but affirmed that TPR was the record holder of those shares without determining the beneficial ownership of the TRI Stock purportedly transferred to the Orly Trust or to Arie. *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Thereafter, Dalia, as Trustee of the Orly Trust, brought an action in the Delaware Chancery Court to determine that the Orly

Trust is the beneficial ownership of the TRI Shares that TPR purported to transfer to it. *Dalia Genger v. TR Investors, LLC et. al.*, (Del. Ch. 6906-CS. filed Oct. 4, 2011). Exhibit B to Meister Affidavit.

## ARGUMENT

### Legal Standard

"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 227, 952 N.E.2d 463, 474 (2011) *quoting Leon v. Martinez,* 84 N.Y.2d 83, 87, 614 N.Y.S.2d 972, 638 N.E.2d 511 (1994). Courts must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Id.* "However, the complaint 'must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory'". *Matlin Patterson ATA Holdings LLC v. Fed. Express Corp.*, 929 N.Y.S.2d 571 (1st Dept. 2011)(citation omitted).

Under CPLR 3211(a)(7), "the facts pleaded are presumed to be true and accorded every favorable inference, nevertheless, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence, are not entitled to such consideration." *Sud v. Sud*, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (1st Dept. 1995)(citation omitted).

## I    The Claim For Reformation Based on the Language of the Divorce Settlement Agreement Should Be Dismissed

The claim for reformation appears to be brought on two theories; one purportedly based on language in the Divorce Settlement Agreement and the other purportedly based on mutual mistake of fact. Neither is valid.

6

a. **The Language of the Stipulation Agreement Is Inapplicable to Arie's Claim for Reformation**

Article XVI of the Stipulation allows a court to sever a provision that a court declared

"invalid or unenforceable by any Court of competent jurisdiction, by statute or governmental

regulation" and reform the agreement accordingly. That provision was not triggered by the

Delaware decision, because it did not declare the provisions for Arie to cause TPR to transfer the

TRI shares to be invalid or unenforceable. The Delaware decision merely held that Arie had not

given notice to or obtained or even sought the consent of the other shareholders for such transfer

that was required by the TRI Shareholders Agreement. Thus the reformation provision of the

Stipulation was not triggered.

b. **As There Was No Mutual Mistake of Fact Because Arie Knew and Dalia Not Know that the Required Consent of the Other Shareholders Had Not Been Obtained, Arie Is Not Entitled to Reformation or a Claim for Unjust Enrichment or Rescission Against Dalia**

Here, there was no mutual mistake of fact. "When [Arie] effectuated the 2004 Transfers,

[he] knew that neither Trust was a 'Permitted Transferee' of the [TRI] shares under the

Stockholders Agreement." *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del.

July 18, 2011). Yet in the Stipulation (Art. II Sec. 9(a)) Arie warranted to Dalia that:

> Accept for the Consent of TPR, [Arie] further represents and warrants
> that no consent, approval or similar action of any person is required in
> connection with the transfer of TRI Stock as contemplated hereby and
> that such transfer will not conflict with any agreement to which [Arie]
> is party or by which he is bound.

As held by the Delaware Supreme Court, "[t]hat representation was false". *Genger v. TR

Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). As a party to that litigation,

Arie is bound by and collaterally estopped from disputing that determination. Thus there is no

basis for his allegation (Complaint ¶ 45) that he reasonably believed that all necessary consents had been obtained. Therefore there could be no mutual mistake of fact.

In the case of mutual mistake, it must be alleged that "the parties have reached an oral agreement and, *unknown to either*, the signed writing does not express that agreement" *Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 443, 827 N.Y.S.2d 147, 149 (1st Dept. 2007) *citing Chimart Assoc. v. Paul*, 66 N.Y.2d at 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986)(emphasis added). "The burden upon a party seeking reformation is a heavy one since it is presumed that a deliberately prepared and executed written instrument accurately reflects the true intention of the parties: '[T]he proponent of reformation must show in no uncertain terms not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'" *Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 442-43, 827 N.Y.S.2d 147, 148 (1st Dept. 2007) (citation omittied)

A claim for mutual mistake must "allege that the parties reached an agreement that was not reflected in the transaction documents". . A "fail[ure] to state 'exactly' what such agreement was. . .fail[s] to overcome the strong presumption against mutual mistake claims." *Stonebridge Capital, LLC v. Nomura Int'l PLC*, 68 A.D.3d 546, 548, 891 N.Y.S.2d 56, 58 (1st Dept. 2009) *leave to appeal dismissed*, 15 N.Y.3d 735, 931 N.E.2d 1057 (2010) *citing Harris v. Uhlendorf*, 24 N.Y.2d 463, 467, 301 N.Y.S.2d 53, 248 N.E.2d 892 (1969); *William P. Pahl Equip. Corp. v. Kassis*, 182 A.D.2d 22, 29, 588 N.Y.S.2d 8 (1st Dept. 1992), *lv. denied in part, appeal dismissed in part* 80 N.Y.2d 1005, 592 N.Y.S.2d 665, 607 N.E.2d 812 (1992).

To the degree that the claim for unjust enrichment and rescission is also based on a claim of mutual mistake of fact, it is defective for the same reason.

8

As stated by the Delaware Chancery Court, Arie "only has himself to blame for whatever mess his decision to make the 2004 Transfer has caused for his divorce settlement."   *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011).

## II   Arie's Claims to Redo the Economics of the Divorce Stipulation are Barred by Res Judicata Arising from the 2008 Final Arbitration Award.

In 2007 – 2008 there was an arbitration between Dalia and Arie concerning issues relating to, *inter alia*, the economics of the arrangements in the 2004 Stipulation of Settlement concerning the TRI stock transactions. After "extensive discovery" and approximately 14 days of hearings, where each party made "extensive pre and post hearing submissions", in 2008 the Arbitrator, former Justice E. Leo Milonas, awarded Dalia $3.85 million based on the shares of TRI stock that he was to cause TPR to transfer to himself. Arbitration Opinion Exhibit A to the Meister Aff. The arbitration is *res judicata* barring Arie's claims in this action against Dalia.

"The doctrines of res judicata and collateral estoppel are applicable to arbitration awards." *Waverly Mews Corp. v. Waverly Stores Associates*, 294 A.D.2d 130, 132, 741 N.Y.S.2d 826, 827 (1st Dept. 2002) *citing Morgan Guaranty Trust Co. of New York v. Solow*, 114 A.D.2d 818, 495 N.Y.S.2d 389, *aff'd.* 68 N.Y.2d 779, 506 N.Y.S.2d 674, 498 N.E.2d 147 (1986). Under CPLR 3211(a)(5), an action should be dismissed "because of arbitration and award".

"[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 12-13, 892 N.E.2d 380, 383 (2008) quoting *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999), *id.* at 347, 690 N.Y.S.2d 478, 712 N.E.2d 647 [internal quotation

9

marks and citations omitted]. "Res judicata bars future litigation between the same parties . . .

arising out of transactions giving rise to a cause of action which *could have been* raised in a . . .

[prior] proceeding." *Breslin Realty Dev. Corp. v. Shaw*, 72 A.D.3d 258, 264, 893 N.Y.S.2d 95,

100 (2d Dept. 2010)(emphasis added). Determining whether claims are part of the same

transaction involves a "'pragmatic' test . . . analyzing 'whether the facts are related in time,

space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100-01, 843 N.E.2d 723 (2005) *quoting* Restatement

[Second] of Judgments § 24. Since, as the Delaware Supreme Court determined, Arie *knew* that

in 2004 that the transfers required consents that he had not obtained, although he falsely

represented the contrary, he *could have raised* any claims about the validity of these transfers

during the 2008 Arbitration, where issues regarding the worth of various items were fully

discussed in detail. Because Arie chose not to raise the issues in these actions in the 2008

Arbitration action, he is barred from now relitigating these issues.

**III    Arie Has Failed to Join an Indispensible Party: The Orly Genger 1993 Trust**

      The claims for reformation and constructive trust seek to take away from the Orly Genger

1993 Trust (Orly Trust) the benefits it received. Thus the Orly Trust is an indispensible party to

this action. CPLR 3211(a)(10) requires the dismissal of an action when "the court should not

proceed in the absence of a person who should be a party."

      The Orly Trust is <u>not</u> a party to this action. Although the Complaint states that Orly

Genger is suing "in her individual capacity and on behalf of the Orly Genger 1993 Trust" as

beneficiary of that Trust, it does not allege any individual rights of Orly herself; only the Trust.

The claims asserted against Dalia that purport to be on behalf of Orly (Second, Fourth, and Fifth

Claims), seek to take rights away from the Orly Trust. Indeed the claim for a constructive trust

(Second Claim), seeks that Orly Trust's rights to the TRI shares be placed in a constructive trust

for the benefit of *Arie*.

The rights of a beneficiary of an express trust are derivative, not direct. Only the Trust

itself can assert those rights. *Modjeska v. Greer*, 233 A.D.2d 589, 590 (3d Dep't 1996) (*held:*

beneficiary cannot litigate rights that belong to Trust). So that as long as a trustee is ready and

willing to take the proper proceedings against a third person, a beneficiary cannot maintain a suit

against the third person. *See e.g., W. R. Co. v. Nolan*, 48 N.Y. 513, 517-18 (1872). It is

fundamental to the law of trusts that a beneficiary has the right, upon general principles of equity

and independently of statutory provisions, to sue for the benefit of the trust only after "a showing

of a demand on the trustees to bring the suit, and of a refusal so unjustifiable as to constitute an

abuse of the trustee's discretion, or a showing that suit should be brought and that because of the

trustees' conflict of interest, or some other reason, it is futile to make such a demand." *Velez v.*

*Feinstein*, 87 A.D.2d 309, 315 (1st Dept. 1982).

There has been and can be no finding that Dalia, as Trustee of the Orly Trust, has failed

to act on the Orly Trust's behalf. Indeed, Dalia, as Trustee of the Orly Trust, has commenced an

action to declare that the Orly Trust is the beneficial owner of the TRI shares transferred by TPR.

*Dalia Genger v. TR Investors, LLC et. al.* (Del. Ch. 6906-CS. filed Oct. 4, 2011). Exhibit B to

Meister Aff.

The Delaware Supreme Court held that it did not have *in personam* jurisdiction over the

Orly Genger Trust and therefore it could only determine that the Orly Trust was not the *record*

owner of the TRI shares involved in the 2004 transfers, but did not determine whether the Orly

Trust was the *beneficial* owner of these shares. *Genger v. TR Investors, LLC*, 592, 2010, 2011

11

WL 2802832 (Del. July 18, 2011). Accordingly, a judgment cannot be exercised by this court

regarding the beneficial ownership of the TRI Shares that were transferred to the Orly Trust

pursuant to the Divorce Stipulation without joining the Orly Trust as a party since by the transfer

to which TPR agreed (Counterclaim Ex. B) the Orly Trust became the beneficial owner of over

19% of TRI's shares.[1]

"Joinder rules serve an important policy interest in guaranteeing that absent parties at

risk of prejudice will not be 'embarrassed by judgments purporting to bind their rights or

interests where they have had no opportunity to be heard'". *Red Hook/Gowanus Chamber of*

*Commerce v. New York City Bd. of Standards & Appeals,* 5 N.Y.3d 452, 457-60, 839 N.E.2d 878

(2005) *quoting First Natl. Bank of Amsterdam v. Shuler,* 153 N.Y. 163, 170, 47 N.E. 262 (1897).

"They also protect against multiple lawsuits and inconsistent judgments." *Id.* (citation omitted).

Here the judgment seeks to impose a constructive trust <u>in favor of Arie</u> on the Orly

Trust's portion of the TRI shares that TPR transferred to the Orly Trust. Thus the failure to join

the Orly Trust would prejudice the rights of the Trust to retain the benefits of the 2004

transactions and would lead to an incomplete resolution of justice. The Delaware Supreme Court

agreed noting that "[s]uch an adjudication of beneficial ownership can occur only by a court with

personal jurisdiction over all indispensable parties. The federal court in the New York litigation

would be such a court." *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July

18, 2011). Further, it is important to note that an action is pending in the Delaware Chancery

Court to declare that the Orly Trust is the beneficial ownership of the TRI, allowing for a full

---

[1]        This is a matter of substantial significance, as under the valuation determined by Justice Milonas, those
shares would be worth at least $10.3 million. The purported purchasers of those shares pursuant to agreement with
TPR (Counterclaim Exs. F and G) have paid $10.3 into escrow, which is now the subject of an interpleader action,
*Pedowitz & Meister LLP v. TPR Investment Associates, Inc. et al.,* U.D.S.D., S.D.N.Y., 11 civ. 1502 (JFK). And the
Orly Trust has filed an action in Delaware Chancery Court seeking a determination that the Orly Trust is the
beneficial owner of those TRI shares. *Dalia Genger, Trustee v. TR Investors, LLC et al.,* Del. Chanc. 6906-CS.

12

adjudication of beneficial ownership of the TRI shares. *Dalia Genger v. TR Investors, LLC et. al.* (Del. Ch. 6906-CS. filed Oct. 4, 2011). Exhibit B to Meister Aff.

**IV    As Dalia Does Not Own Any Shares of TRI Stock, No Injunction or Declaratory Judgment Preventing Her from Encumbering These Shares Is Inappropriate.**

Dalia was not given any shares of TRI Stock pursuant to the 2004 Transfers, and nowhere in Arie's pleading does he allege that Dalia owns any shares of TRI Stock. Thus Dalia has no corpus over which to impose a constructive trust, and neither has she been unjustly enriched. Thus those claims against her must be dismissed.

**V    Arie Is Not Entitled to <u>Any</u> Equitable Remedy As He Has Unclean Hands.**

Reformation, rescission, and imposition of a constructive trust  are an equitable remedies that should be denied on the basis of unclean hands.  Reliance upon the doctrine of unclean hands is applicable "when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct". *Citibank, N.A. v. Am. Banana Co., Inc.*, 50 A.D.3d 593, 594, 856 N.Y.S.2d 600, 601 (1st Dept. 2008) *(citation omitted)*.  This is premised on the "equitable rule or maxim that 'he who comes into equity must come with clean hands.'" *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15, 214 N.E.2d 361, 362 (1966) (citation omitted). "To charge a party with unclean hands, it must be shown that said party was 'guilty of immoral or unconscionable conduct directly related to the subject matter'". *Id. (citation omitted).*

The clean hands doctrine is applicable when the defendant shows that the "plaintiff was guilty of immoral or unconscionable conduct when the agreement was made," the conduct complained of is directly related to the subject matter in litigation, and the party invoking the doctrine was injured by such conduct. *390 W. End Associates v. Baron*, 274 A.D.2d 330, 332, 711 N.Y.S.2d 176, 178 (1st Dept. 2000).

13

Here the Delaware Chancery Court concluded that Arie committed a "serious, secretive contractual breach". *TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) *aff'd*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). The Delaware Supreme Court concluded that Arie "knew" during 2004 when he made his Divorce Settlement Agreement with Dalia that when he represented that no consent other than TPR was necessary to transfer ownerships of the TRI stock, "[t]hat representation was false". *Genger v. TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Additionally, Justice Milonas concluded in his 2008 arbitration award that Arie had made false misrepresentations to Dalia in 2004 by representing in the divorce proceedings that the TRI shares had no value. Aribitration Award Meister Aff. Ex. A, p. 8 (finding that Arie's contention that his personal liabilities based on TRI's involvement with the Bogalusa litigation were "significantly misleading" as his exposure "if at all, was minimal.") "[W]hile equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) *quoting Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814-15, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (quotation marks and citation omitted).

Typically courts bar a plaintiff from seeking equitable remedies based on plaintiff's "unclean hands" when they have committed "perjury and fraud on the court." *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 364 (S.D.N.Y. 2008)(Keenan, J.) (citation omitted). *See e.g., Goldstein v. Delgratia Mining Corp.*, 176 F.R.D. 454, 458 (S.D.N.Y.1997) (enforcing unclean hands defense where plaintiff made multiple misrepresentations to the court regarding law and facts); *Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F.Supp.

14

allegations sufficient to show that the written Divorce Settlement Agreement should be deemed

invalid for any reason. The Divorce Stipulation was entered into by two parties that were

represented by "separate, independent legal counsel" who "had full knowledge of the negotiation

and terms of the Stipulation of Settlement at the time the Stipulation of Settlement was

executed." (Compl. ¶¶ 39, 43). The Delaware Supreme Court concluded that Arie *knew* that the

2004 transfers were invalid at the time the Stipulation was executed, therefore any claim based

on his mistake of fact to this regard is entirely without merit and constitutes a fraud on this court.

Likewise, there is no claim for rescission. As noted above, there was no mutual mistake

of fact. "A court will not rescind an instrument for which the consideration was allegedly

inadequate absent evidence of an additional circumstance warranting cancellation, such as fraud,

duress, overreaching or unconscionability." *See* 16 N.Y. Jur. 2d Cancellation of Instruments

§ 15. Further, it was determined that Arie had *knowledge* in 2004, at the time the Divorce

Settlement Agreement was executed, that his representation about all necessary consents having

been obtained was false and Arie is collaterally estopped to contend otherwise. *See Genger v.*

*TR Investors, LLC*, 592, 2010, 2011 WL 2802832 (Del. July 18, 2011). Arie is not entitled to

cancellation of his Divorce Settlement Agreement based on any equitable theory. The only fraud

committed in this action were the frauds that Arie committed himself when his falsely stated that

TRI stock had no value and when he misrepresented that no further consent other than TPR was

needed to transfer the shares of TRI stock in the 2004 Divorce Settlement Agreement.

**VII    The Fifth Cause of Action for a Permanent Injunction should be Dismissed**

The Fifth claim seeks an injunction, but pleads no new facts. Injunction is a remedy, not

a claim. Here Arie has not shown that he is entitled to relief based on any theory. The only

injuries that have occurred have been at the hands of Arie, who made these misrepresentations at

the center of this litigation.

16

## CONCLUSION

For the foregoing reasons, the claims asserted against defendant Dalia Genger should be

dismissed.

PEDOWITZ & MEISTER LLP

October 14, 2011

By

Robert A. Meister
Marisa Warren
1501 Broadway, Suite 800
New York, NY 10036
212.403.7330
Robert.meister@pedowitzmeister.com
   Attorneys for Dalia Genger

17

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

AMENDED ANSWER OF
DALIA GENGER TO
THIRD AMENDED PETITION
AND CROSS-PETTION
File No. 0017/~~2009~~
                    2008

- - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED ANSWER

Respondent Dalia Genger, by her attorneys, answers the Third Amended Petition (the "Petition") as follows:

1.    Denies.

2.    Admits, except deny knowledge or information as to specific date of appointment.

3.    Refers to the Orly Trust Agreement for the true and correct contents thereof, and otherwise denies the first sentence. Admit the second and third sentences.

4.    Paragraph 4 states a legal request to which no response is warranted.

5.    Admits that Dalia is Petitioner's mother and the sole Trustee of the Orly Trust, and denies the remaining allegations.

6.    Denies.

7.    Denies.

8.    Denies.

9.    Denies.

10.   Denies.

11.   Denies.

12.   Denies.

13.   Denies.

New York County Surrogate's Court
MISCELLANEOUS DEPT.
AUG 2 2 2017
FILED
Clerk_____

14.     Admits the first two sentences.  Denies knowledge or information as to the third sentence.

15.     Denies the first four sentences.  Denies knowledge or information as to the fifth sentence.

16.     Admits.

17.     Denies.  Avers that Petitioner has previously admitted that "the Note was always intended to be repaid by the family."

18.     Refers to the referenced Note and Pledge Agreement for the true and correct contents thereof, and otherwise denies the allegations.

19.     Denies knowledge or information.

20.     Admits the first sentence.  Denies the second sentence.

21.     Admits the first sentence.  Denies knowledge or information as to the second sentence.

22.     Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

23.     Admits the first four sentences.  Avers that the last sentence states a legal conclusion to which no response is warranted.  Refers to the referenced Agreement, and otherwise denies the allegations.

24.     Refers to the referenced Shareholders Agreement for the true and correct contents thereof, and otherwise denies the allegations.

25.     Denies.

26.     Denies.

27.   Refers to the referenced Resolution for the true and correct contents thereof, and otherwise denies the allegations.

28.   Denies.

29.   Refers to the referenced Memorandum for the true and correct contents thereof, and otherwise denies the allegations.

30.   Refers to the referenced Memorandum for the true and correct contents thereof, and otherwise denies the allegations.

31.   Refers to the referenced Arbitration transcript for the true and correct contents thereof, and otherwise denies the allegations.

32.   Refers to the referenced Arbitration transcript for the true and correct contents thereof, and otherwise denies the allegations.

33.   Refers to the referenced Memorandum for the true and correct contents thereof, and otherwise denies the allegations.

34.   Refers to the referenced Arbitration Award for the true and correct contents thereof, and otherwise denies the allegations.

35.   Denies.

36.   Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

37.   Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

38.   Denies.

39.   Denies knowledge or information as to the first sentence.  Denies the remaining allegations.

40.     Denies.

41.     Refers to the referenced Application for the true and correct contents thereof, and otherwise denies the allegations.

42.     Refers to the referenced Court decision for the true and correct contents thereof, and otherwise denies the allegations.

43.     Denies.

44.     Denies.

45.     Denies.

46.     Refers to the referenced Letter for the true and correct contents thereof, and otherwise denies the allegations.

47.     Denies.

48.     Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

49.     Refers to the referenced Agreement for the true and correct contents thereof, and otherwise denies the allegations.

50.     Denies.

51.     Admits the first sentence.  Denies knowledge or information as to the remaining allegations.

52.     Refers to the referenced Letter for the true and correct contents thereof, and otherwise denies the allegations.

53.     Denies.

54.     Refers to the Court records for the true and correct contents thereof, and otherwise denies the allegations.

55.     Refers to the referenced Court decision for the true and correct contents thereof, and otherwise denies the allegations.

56.     Refers to the referenced Demand for the true and correct contents thereof, and otherwise denies the allegations.

57.     Refers to the referenced Letter for the true and correct contents thereof, and otherwise denies the allegations.

58.     Denies, and refers to Justice Feinman's decision construing the Arbitration Award.

59.     Denies.

60.     Denies.

61.     Denies.

62.     Denies.

63.     Denies.

64.     Denies.

65.     Denies.

66.     Refers to the referenced Complaint for the true and correct contents thereof, and otherwise denies the allegations.

67.     Refers to the referenced Petition for the true and correct contents thereof, and otherwise denies the allegations.

68.     Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

69.     Refers to the referenced Court transcript for the true and correct contents thereof, and otherwise denies the allegations.

70.     Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

71.     Refers to the referenced Petition for the true and correct contents thereof, and otherwise denies the allegations.

72.     Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

73.     Refers to the referenced Court order for the true and correct contents thereof, and otherwise denies the allegations.

74.     Denies.

75.     Denies.

76.     Denies.

77.     Denies.

78.     Denies.

79.     Refers to the referenced Promissory Note for the true and correct contents thereof, and otherwise denies the allegations.

80.     Denies.

81.     Refers to the referenced Promissory Note for the true and correct contents thereof, and otherwise denies the allegations.

82.     Refers to the referenced Promissory Note for the true and correct contents thereof, and otherwise denies the allegations.

83.     Refers to the referenced Forbearance Agreement for the true and correct contents thereof, and otherwise denies the allegations.

84.     Denies.

85.     Admits that the parties endeavored to settle the referenced New York TPR Action, and otherwise denies the allegations.

86.     Denies.

87.     Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

88.     Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

89.     Refers to the referenced Settlement Agreement for the true and correct contents thereof, and otherwise denies the allegations.

90.     Denies.

91.     Denies.

92.     Denies.

93.     Denies.

94.     Denies.

95.     Denies.

96.     Denies that Mr. Isaacson is not acquainted with any members of the Genger family, and denied knowledge or information as the balance of the allegations.

## AFFIRMATIVE DEFENSES

1. The claims are barred by Petitioner's unclean hands and culpable conduct.

2. The claims are time-barred.

3. The claims are barred by findings made by other courts, and by the doctrines of *res judicata*, collateral estoppel, and judicial estoppel.

4. The claims are barred by illegality and public policy.

5. The claims are barred by the statute of frauds and parol evidence rule.

## **CROSS-PETITION**

It is respectfully alleged:

### **The Parties**

1. Respondent/Cross-Petitioner Dalia Genger ("Dalia"), resides and is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

2. Dalia the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

3. Petitioner/Cross-Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the Orly Trust.

### **Jurisdiction and Venue**

4. This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

5. Venue in this County is proper pursuant to, inter alia, SCPA 207(1).

### **The Orly Trust**

6. On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees,

-8-

Lawrence M. Small and Sash A. Spencer (the "Trust Agreement").

7. Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the "Trust Agreement Obligations").

## **Orly Trust Derivative Litigation**

8. In July 2010, Orly instituted a derivative action in the Supreme Court, New York County entitled <u>Arie Genger, et al. v. Sagi Genger, et al.</u>, Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her pleading to assert claims against, <u>inter alia,</u> the purchasers of those TRI shares, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities").

9. On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York County adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there."

10. Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain Dalia from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Dalia was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, Dalia's "contention that the Orly Trust is not a party to this action ...

is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining Dalia from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares.

11. As a derivative plaintiff for the Orly Trust, having prevented the "duplicative litigation" brought by Dalia on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

**Discontinuance With Prejudice of
The Orly Trust Claims**

12. In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. Dalia sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection.

13. By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not

what the Trump Group [Entities] bargained and paid for in the settlement . . ."

14. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice.

## The Trump Group Entities Settlement Agreement

15. Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). The document revealed that Orly had settled her claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

16. In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million. According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...."

17. The Trump Group Entities have since reaffirmed that the federal court construed the

-11-

Trump Group Entities Settlement Agreement correctly:

> [Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

18. Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was dismissed.

### The Settlement Proceeds

19. Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case, Orly personally). Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

20. At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that $15 million remains to be paid, less possible "set-offs" and subject to possible

acceleration or extension of those payment dates.

21. In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

22. Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. However, Orly failed to comply with these duties and obligations. Orly breached her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

### Cross-Petitioner's Substitution Motion

23. In order to protect the rights of the Orly Trust, Dalia moved in the Supreme Court, New York County, for an order permitting her to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed Dalia's motion, on the ground, inter alia, that she is seeking to remove Dalia as Trustee of the Orly Trust. By Interim Order dated May 7, 2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of Orly's Petition.

24. At the March 25, 2015 hearing on Dalia's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. ("it sounds like that ship has sailed"). Accordingly, Dalia brings this Cross- Petition seeking, inter alia: retention of Dalia as the only non-contingent Trustee of the Orly Trust; monetary damages for misappropriation of Orly

-13-

Trust assets; and turnover of the Settlement Proceeds for the Orly Trust, to the extent such funds are recoverable.

## Count I: Breach of Fiduciary Duty

25. The allegations contained in paragraphs 1 through 24 hereinbefore are realleged as if fully set forth herein.

26. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

27. Orly owed a fiduciary duty to the Orly Trust.

28. Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

29. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

30. Orly's actions constitute a breach of fiduciary duty.

31. The Orly Trust has been injured by Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## Count II: Breach of Loyalty

32. The allegations contained in paragraphs 1 through 31 hereinbefore are realleged as if fully set forth herein.

33. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

34. Orly owed a duty of loyalty to the Orly Trust.

-14-

35. Consistent with her duty of loyalty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

36. Orly did not so do.   Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

37. Orly's actions constitute a breach of her duty of loyalty.

38. The Orly Trust has been injured by Orly's breach of her duty of loyalty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## Count III: Turnover

39. The allegations contained in paragraphs 1 through 38 hereinbefore are realleged as if fully set forth herein.

40. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

41. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

42. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

43. The Settlement Proceeds should be delivered to the Orly Trust.

44. Orly should be compelled to turn over to the Orly Trust all Settlement Proceeds in her possession, custody or control.

-15-

### Count IV: Accounting

45. The allegations contained in paragraphs 1 through 44 hereinbefore are realleged as if fully set forth herein.

46. Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

47. As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.

### Count V: Unjust Enrichment

48. The allegations contained in paragraphs 1 through 47 hereinbefore are realleged as if fully set forth herein.

49. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

50. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

51. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

52. Orly's creditors received the Settlement Proceeds instead of the Orly Trust.

53. Orly received a benefit from the Settlement Proceeds which belong to the Orly Trust.

54. Orly received such benefit from the Settlement Proceeds at the expense of the Orly Trust.

55. Under principles of equity and good conscience, Orly must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

### Count VI: Self-Dealing

56. The allegations contained in paragraphs 1 through 55 hereinbefore are realleged as if fully

set forth herein.

57. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

58. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

59. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

60. Orly's actions constitute self-dealing.

61. The Orly Trust has been injured by Orly's self-dealing in the amount of $32.3 million, plus statutory interest.

**Count VII: Successor Trustee**

62. The allegations contained in paragraphs 1 through 61 hereinbefore are realleged as if fully set forth herein.

63. Upon information and belief, Orly is seeking to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

64. Orly should not be permitted to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

65. Pursuant to Article SEVENTH of the Trust Agreement, an outgoing Trustee has the power to name a successor Trustee.

66. If this Court removes Dalia as trustee of the Orly Trust, Dalia should be permitted to

exercise her power to name a successor Trustee.

## Count VII: Successor Trustee

67. The allegations contained in paragraphs 1 through 66 hereinbefore are realleged as if fully set forth herein.

68. Upon information and belief, Orly is seeking to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

69. Orly should not be permitted to have Dalia removed as Trustee and a new Trustee appointed who will not seek to recover the Settlement Proceeds on behalf of the Orly Trust.

70. Pursuant to Article SEVENTH of the Trust Agreement, an outgoing Trustee has the power to name a successor Trustee.

71. If this Court removes Dalia as trustee of the Orly Trust, Dalia should be permitted to exercise her power to name a successor Trustee.

72. If Dalia is not permitted to exercise her power to name a successor Trustee, this Court should name an objective third party Trustee choosen from an independent list.

## Interested Parties

73. The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

    (a)   The following who are of full age and sound mind or are corporations or associations:

ORLY GENGER
780 Greenwich Street, Apt. 4P
New York, New York 10014

Interest: Beneficiary and Petitioner, Cross-Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
Kelley Drye & Warren
101 Park Avenue
New York, New York

Interest: Contingent Remainderman

(b)    The following who are persons under disability:
Infants: None
Others under a disability: None

(c)    The following persons who are confined in prison: None
(d)    The following persons whose names or whereabouts are unknown: None

74. There are no persons, corporations or associations other than those mentioned who are interested in this proceeding.

75. No previous application for this or similar relief has been made to this or any other court except:

a.    Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled <u>Arie Genger, et al. v. Sagi Genger, et al.</u>, Index No. 651089/2010 in New York Supreme Court, New York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a determination by this Court.

b.    Petition before this Court filed June 14, 2016, citation not yet issued.

WHEREFORE, Petitioner requests the following relief:

a.    declaratory judgment that Dalia is, and will remain, the only non-contingent Trustee of the Orly Trust;

WHEREFORE, your Respondent prays that the foregoing relief be granted and such

other and further relief as the Court shall deem just and proper.


Dated: New York, New York
      August 12, 2017

DALIA GENGER

STATE OF NEW YORK
SURROGATE'S COURT: COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of
ORLY GENGER, as a person interested, for the
removal of DALIA GENGER as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA §711(11)

**AFFIDAVIT OF SERVICE**
File No. 0017/2009

- - - - - - - - - - - - - - - - - - - - - - - - - x

I, Judith Bachman, Esq., of 254 S. Main Street, Suite 306, New City, New York 10956, being duly sworn, state that I am over the age of eighteen years and that on August 14, 2017, I caused to be deposited a copy of the Amended Answer and Cross-Peition of Respondent, Dalia Genger, herein, in a post office box regularly maintained by the U.S. Postal Service in the County of Rockland, State of New York, addressed to:

> ORLY GENGER
> 780 Greenwich Street, Apt. 4P
> New York, New York 10014
>
> SAGI GENGER 1993 TRUST
> C/O John Dellaportas
> Kelley Drye & Warren
> 101 Park Avenue
> New York, New York
>
> Kasowitz, Benson, Torres & Freidman LLP
> 1633 Broadway
> New York, NY 10019

The envelopes was deposited postage paid by regular first class mail.  No mailing was returned as undeliverable.

_____
Judith Bachman, Esq.

Sworn to before me this

21st day of August, 2017

_____
Notary Public

JOANNE REDDEN HOROWITZ
Notary Public, State of New York
No. 02HO5034709
Qualified in Rockland County
Commission Expires March 11, 2019

FILED: NEW YORK COUNTY CLERK 08/11/2014 10:36 AM
INDEX NO. 651089/2010
NYSCEF DOC. NO. 1099
RECEIVED NYSCEF: 08/11/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

ARIE GENGER and ORLY GENGER, in her   :
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,   :     Index No. 651089/2010
                                       (Jaffe, B. JSC)
                                    :

          Plaintiffs,   :

         -against-   :

SAGI GENGER, TPR INVESTMENT   :
ASSOCIATES, INC., DALIA GENGER, THE
SAGI GENGER 1993 TRUST, ROCHELLE   :
FANG, individually and as trustee of THE SAGI
GENGER 1993 TRUST, GLENCLOVA   :
INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR   :
EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP AND MARK HIRSCH,   :     NOTICE OF MOTION

         Defendants.
-------------------------------------------------------------------x

SAGI GENGER, individually and as assignee of   :
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.   :

      Cross-Claimants, Counterclaimants, and   :
      Third-Party Claimants,
                                      :

         -against-   :

                                      :
ARIE GENGER, ORLY GENGER,
GLENCLOVA INVESTMENT COMPANY,   :
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC, JULES TRUMP,   :
EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., WILLIAM   :
DOWD, and THE ORLY GENGER 1993 TRUST,

                                      :
      Cross-Claim, Counterclaim and/or
      Third-Party Defendants.   :
-------------------------------------------------------------------x

PLEASE TAKE NOTICE THAT, upon the accompanying Affirmation of Judith

Bachman, dated August 11, 2014, and the exhibits attached thereto, and upon all the pleadings

and proceedings heretofore had herein, Defendant Dalia Genger, through her undersigned

counsel will move this Court returnable at 60 Centre St., Motion Submission Part, Room 130 on

September 30, 2014, at 9:30 a.m. or as soon thereafter as counsel can be heard for an order

substituting Dalia Genger, as trustee, as plaintiff on Orly Genger's Trump Group claims and for

an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into

Court, and such further and other relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that pursuant to CPLR 2214(b), answering papers,

if any, must be served at least seven days prior to the return date of this motion.


Dated:  August 11, 2014, 2014
        New City, New York

                                            _____/s/_____
                                            Judith Lisa Bachman, Esq.
                                            Counsel for Defendant
                                            Dalia Genger, Trustee
                                            254 South Main Street, Suite 306
                                            New City, New York 10956
                                            845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X

In the Matter of

    DALIA GENGER,
    Trustee of the Orly Genger 1993 Trust,

          Petitioner,

            -against-

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC., ARNOLD BROSER,
DAVID BROSER, JOHN DOES. 1-20, and
JANE DOES 1-20,

          Respondents,

--------------------------------------------------------------------X

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUN 1 4 2016

**FILED**

Clerk_____

Index No. 2008 -17

**PETITION FOR
TURNOVER OF
TRUST PROPERTY
AND OTHER RELIEF**

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

    It is respectfully alleged:

## The Parties

    1.    Petitioner, Dalia Genger, resides and is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

    2.    Petitioner is the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

    3.    Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the Orly Trust. The remaining respondents ("Respondents") are interested parties who wrongfully aided and abetted Orly in the misappropriation of Orly Trust assets.

## Jurisdiction and Venue

    4.    This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

-1-

5.      Venue in this County is proper pursuant to, <u>inter alia</u>, SCPA 207(1).

## **The Orly Trust**

6.      On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement"). (Ex. 1.)

7.      Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the "Trust Agreement Obligations").

8.      The Respondents were aware of the Trust Agreement Obligations.

## **Orly Trust Derivative Litigation**

9.      In July 2010, Orly instituted a derivative action the Supreme Court, New York County entitled <u>Arie Genger, et al. v. Sagi Genger, et al.</u>, Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her pleading to assert claims against, <u>inter alia,</u> the purchasers of those TRI shares, Respondents Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities"). (Ex. 2.)

10.      On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York County adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there." (Ex. 3.)

11.      Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain

Petitioner from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Petitioner was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, Petitioner's "contention that the Orly Trust is not a party to this action ... is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining Petitioner from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares. (Ex. 4.)

12.     As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative litigation' brought by Petitioner herself on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

13.     Respondents knew that Orly owed fiduciary duties to the Orly Trust.

### Discontinuance With Prejudice of The Orly Trust Claims

14.     In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. Petitioner sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection.

15.     By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of all claims presently

pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group [Entities] bargained and paid for in the settlement . . ." (Ex. 5, emphases in original.)

16.    Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. (Ex. 6.)

## The Trump Group Entities Settlement Agreement

17.    Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). (Ex. 7.) The document revealed that Orly had settled her claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which this Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

18.    In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Respondents Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

-4-

According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." (Ex. 8.)

19.     The Trump Group Entities have since reaffirmed that the federal court construed the Trump Group Entities Settlement Agreement correctly:

> "[Any suggestion] that the confidential settlement agreement *might* only dis-miss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

20.     Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Ex. 7, p. 10: Orly releasing the Trumps "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was dismissed.

### The Settlement Proceeds

21.     Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case, Orly personally). Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

22.     At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that

$15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. (Ex. 9, pp. 10-11.)

23.     In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

24.     Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. Orly failed to comply with these duties and obligations. Respondents were aware of, and aided and abetted, Orly's breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

25.     In addition to the named Respondents, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof. Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.

### Petitioner's Substitution Motion

26.     In order to protect the rights of the Orly Trust, Petitioner moved in the Supreme Court, New York County, for an order permitting it to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed the Petitioner's motion, on the ground, inter alia, that she is seeking to remove the Petitioner as Trustee of the Orly Trust. By Interim Order dated May 7,

-6-

2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of Orly's removal petition. (Ex. 10.)

27.     At the March 25, 2015 hearing on Petitioner's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. (Ex. 9, p. 28: "it sounds like that ship has sailed").   Accordingly, Petitioner brings this Petition seeking, inter alia, monetary damages for misappropriation of Orly Trust assets.  To the extent such Settlement Proceeds are recoverable, Petitioner seeks turnover of those funds for the Orly Trust.

### Count I: Aiding and Abetting Breach of Fiduciary Duty
### Against All Respondents

28.     The allegations contained in paragraphs 1 through 27 hereinbefore are realleged as if fully set forth herein.

29.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

30.     Orly owed a fiduciary duty to the Orly Trust.

31.     Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

32.     Orly did not so do.  Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

33.     Orly's actions constitute a breach of fiduciary duty.

34.     Respondents were aware of Orly's fiduciary duty to the Orly Trust.

35.     Respondents knowingly induced and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking the Settlement Proceeds which belong to the

Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

36.     In doing so, Respondents aided and abetted Orly's breach of fiduciary duty.

37.     The Orly Trust has been injured by Respondents' aiding and abetting of Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## Count II: Tortious Interference with Contract
## Against All Respondents

38.     The allegations contained in paragraphs 1 through 37 hereinbefore are realleged as if fully set forth herein.

39.     The Trust Agreement is a valid contractual agreement by the Orly Trust.

40.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

41.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

42.     Respondents were aware of the Trust Agreement Obligations.

43.     The Orly Trust, acting through its de facto trustee Orly in the Orly Trust Derivative Litigation, breached the Trust Agreement Obligations by causing the Settlement Trustees to not be held in the name of the Orly Trust, and to instead use the Settlement Proceeds for the benefit of Orly's creditors, including the Brosers.

44.     Respondents caused the Orly Trust's breach of the Trust Agreement Obligations by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

45.     In doing so, Respondents tortiously interfered with the Trust Agreement Obligations.

46.     Respondents' interference with the Trust Agreement Obligations was both intentional and improper.

47.     The Orly Trust has been injured by Respondents' tortious interference with contract in the amount of $32.3 million, plus statutory interest.

### Count III: Money Had and Received
### Against All Respondents

48.     The allegations contained in paragraphs 1 through 47 hereinbefore are realleged as if fully set forth herein.

49.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

50.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

51.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

52.    Respondents knew that Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust.

53.    However, pursuant to the terms of the Trump Group Entities Settlement Agreement, the Settlement Proceeds were and are to be paid by the Trump Group Entities to parties other than the Orly Trust.

54.    None of the Settlement Proceeds have been paid to the Orly Trust.

55.    Respondents received and/or are currently holding the Settlement Proceeds instead of the Orly Trust.

56.    Respondents received a benefit from the Settlement Proceeds which belongs to the Orly Trust.

57.    Under principles of good conscience, Respondents should not be allowed to retain the Settlement Proceeds which belong to the Orly Trust, but rather should be compelled to return all $32.3 million to the Orly Trust, plus statutory interest.

### Count IV: Unjust Enrichment
### Against All Respondents Except Trump Group Entities

58.    The allegations contained in paragraphs 1 through 57 hereinbefore are realleged as if fully set forth herein.

59.    Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

60.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

61.    Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

62.    Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

63.    Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.

64.    Respondents (except the Trump Group Entities) received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65.    The benefit Respondents (except the Trump Group Entities) received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

66.    Under principles of equity and good conscience, Respondents (except the Trump Group Entities) must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

**Count V: Turnover**
**<u>Against All Respondents</u>**

67.    The allegations contained in paragraphs 1 through 66 hereinbefore are realleged as if fully set forth herein.

68.    Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

69.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

70.    Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

71.    Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

72.     Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.

73.     Respondents (except the Trump Group Entities) have in their possession the Settlement Proceeds which should be delivered to the Orly Trust.

74.     Respondents have refused to turn over the Settlement Proceeds to the Orly Trust or pay it into Court.

75.     Respondents should be compelled to turn over to the Orly Trust all Settlement Proceeds in their possession, custody or control.

## Count VI: Accounting
## Against Respondent Orly

76.     The allegations contained in paragraphs 1 through 75 hereinbefore are realleged as if fully set forth herein.

77.     Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

78.     As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.

## Interested Parties

79.     The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

(a)     The following who are of full age and sound mind or are corporations or associations:

ORLY GENGER
780 Greenwich Street, Apt. 4P

-12-

New York, New York

Interest: Beneficiary and Respondent

ARIE GENGER
17001 Collins Avenue,
Sunny Isles Beach, Florida

Interest: Respondent

GLENCLOVA INVESTMENT COMPANY
41 Madison Ave,
New York, New York

Interest: Respondent

TR INVESTORS, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY I, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY II, LLC,
41 Madison Ave,
New York, New York

Interest: Respondent

TRANS-RESOURCES, INC.
41 Madison Ave,
New York, New York

Interest: Respondent

ARNOLD BROSER
5371 Fisher Island Drive,
Miami Beach, Florida

Interest: Respondent

-13-

DAVID BROSER
104 West 40th Street, 19th Floor
New York, New York

Interest: Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
Morgan, Lewis
101 Park Avenue,
New York, New York

Interest: Contingent Remainderman

(b)   The following who are persons under disability:
Infants: None
Others under a disability: None

(c)   The following persons who are confined in prison: None
(d)   The following persons whose names or whereabouts are unknown: None

80.   There are no persons, corporations or associations other than those mentioned who are interested in this proceeding.

81.   No previous application for this or similar relief has been made to this or any other court except Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010 in New York Supreme Court, New York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a determination by this Court.

-14-

WHEREFORE, Petitioner requests the following relief against all Respondents:

a.    damages in in the amount of $32.3 million, plus statutory interest;

b.    imposition of a constructive trust on the Settlement Proceeds;

c.    an order directing the delivery of the Settlement Proceeds to her as Trustee;

d.    an accounting of the Settlement Proceeds; and

e.    such other relief as to the Court seems just and necessary.

Dated: June 13, 2016

(Signature of Petitioner)

Dalia Genger

(Print Name)

STATE OF NEW YORK        )

                                )  ss:

COUNTY OF NEW YORK  )

## VERIFICATION

I, the undersigned the petitioner named in the foregoing petition, being duly sworn, say:

VERIFICATION: I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

_(Signature of Petitioner)_

Dalia Genger

_(Print Name)_

On the _____ 13th _____ day of _____ June _____, 20 16, before me personally came Dalia Genger to me known to be the person described in and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that he/she executed the same.

_____
Notary Public

Judith Bachman
Notary Public, State of New York
No. 02-BA6048319
Qualified in Rockland County
Commission Expires Sept. 25, 200
2018

_____
JUDITH BACHMAN
LAW OFFICES OF JUDITH BACHMAN
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
_Attorneys for Petitioner Dalia Genger_

**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | FILE NO.   2008-0017/E <br><br> Hon. Nora S. Anderson |

In the Matter of DALIA GENGER, trustee of the ORLY GENGER 1993 TRUST,

      Petitioner,

      - against -

ORLY GENGER, ARIE GENGER, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC., ARNOLD BROSER, DAVID BROSER, JOHN DOES 1-20, and JANE DOES 1-20,

      Respondents.

**AFFIRMATION OF MARK S. HIRSCH IN SUPPORT OF THE TR ENTITIES' MOTION TO DISMISS THE AMENDED PETITION FOR TURNOVER**

---

Mark S. Hirsch, an attorney duly admitted to practice law in the State of New York, hereby affirms under penalty of perjury pursuant to CPLR 2106 as follows:

1.    I am a member of the bar of the State of New York. I make this affirmation in support of the Motion to Dismiss the Amended Petition for Turnover filed by Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR

Equity II, LLC and Trans-Resources, LLC.[1]  I am fully familiar with the matters set forth in this affirmation.

2.      I am Executive Vice President and General Counsel of Creative Worldwide Management, LLC ("CWM"), which maintains offices at 400 Park Avenue, 19th Floor, New York, New York 10022 ("CWM's Offices").

3.      I also serve as Executive Vice President and General Counsel for each of Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources LLC (the "TR Entities").  None of the TR Entities maintain an office in New York State.  As a consequence, none of the TR Entities share office space with CWM or at CWM's Offices.  Moreover, CWM is not a member of any of the TR Entities.

4.      Four of the five TR Entities (TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, LLC) are limited liability companies. Only Glenclova Investment Co., is a corporation.  Glenclova is incorporated under the laws of the Cayman Islands and has its principal offices in the Cayman Islands.

5.      There is no existing corporation known as Trans-Resources, Inc.  It was converted into Trans-Resources, LLC in June 2013, and is a limited liability company created under the laws of Delaware with its principal offices in Florida.  Although the Petitioner was informed of these facts in the TR Entities' original motion to dismiss filings (*see* Affirmation of Mark S. Hirsch dated February 5, 2018, and Memo of Law in

---

[1]      The original Petition and the only citation issued in this proceeding lists Trans-Resources, Inc. as a Respondent.  No such entity exists.  In June 2013, before the Settlement Agreement at issue was signed, Trans-Resources, Inc. converted into a limited liability company named Trans-Resources, LLC. *See infra* ¶ 5.

Support of Motion to Dismiss [Dkt. Entries filed Feb. 6, 2018]), the caption of the

Amended Petition continues to identify Trans-Resources, Inc. as a Respondent. To my

knowledge, after due inquiry, no service of any citation has ever been attempted on

Trans-Resources, LLC and no citation identifying Trans-Resources, LLC has ever been

issued. (*See infra* ¶¶ 6, 8.)

      6.     On January 5, 2018, several copies of the attached citation were

purportedly left at CWM's Offices. None of those copies contained any attachments,

such as the petition that I understand is underlying this action. Further, none of the

citations identified Trans-Resources, LLC as a respondent. In addition, none of those

copies were left with me. Rather, those copies were left with an office administrative

assistant, Ms. Tatiana Selca, who is not authorized to receive process for CWM (which is

not a party to any Genger-related action) or for any of the TR Entities (which, again, do

not maintain any presence in New York).

      7.     The administrative assistant, Ms. Tatiana Selca, is not an employee of any

of the TR Entities and does not work in any of the principal offices for any of the TR

Entities.

      8.     On April 17, 2018, I received an email from one of the TR Entities'

attorneys, John Boyle of Skadden Arps, Slate, Meagher & Flom, LLP, informing me that,

on that day, he had received a copy of the Amended Petition by overnight mail. To my

knowledge after due inquiry, to date, no copy of the Amended Petition has been

personally served on any of the TR Entities (and I am not aware of any attempts by

Petitioner to personally serve the Amended Petition on any of the TR Entities). In

addition, no supplemental citations have been served on me or any of the TR Entities.

3

Moreover, Mr. Boyle is not, and has never been, authorized to accept service of the Amended Petition on behalf of the TR Entities.

9.     Insofar as the allegations of the Amended Petition regarding what the Amended Petition references as the "Remaining Payment" are concerned, the TR Entities are not in possession of any assets of the Orly Trust in relation to any remaining obligations under the Settlement Agreement. The remaining obligations due under the Settlement Agreement are governed by paragraph 3 of that agreement and certain promissory notes (the "Notes", the substantial form of which was included as Exhibit A to the Settlement Agreement, which is included with the Settlement Agreement attached as Exhibit E to the Affirmation of John Boyle filed in support of the TR Entities' Motion to Dismiss the Amended Petition ). Of the TR Entities, only Trans-Resources, LLC is a signatory to those Notes and Trans-Resources, LLC is the sole "Maker" of those Notes.

10.     As provided in the Settlement Agreement and the Notes, however, the Notes are not mature and none of the obligations under the Notes are presently due. (*See* Settlement Agreement [Boyle Aff., Ex. E] ¶ 3 & Exhibit A). Thus, there is no current obligation for Trans-Resources, LLC to either fund or make any payment to any person in connection with the Settlement Agreement. Moreover, should the Notes become mature and due, among Trans-Resources, LLC's obligations under the Notes is to make payment to the attorneys for the AG Group (which Trans-Resources has been informed by the AG Group have changed, and the Notes revised accordingly), subject to certain set-offs and adjustments identified in the Settlement Agreement and the Notes. (*See id.*). Under the Settlement Agreement and the Notes, Trans-Resources, LLC has not made and

4

has no obligation to make any payments directly to Orly Genger or to the Orly Genger

1993 Trust.

I affirm under penalty of perjury that the foregoing is true and correct. Executed

on May 7, 2018 in New York, New York.

Mark S. Hirsch

Miscellaneous Citation                     File No. *2008-0017* / *E*

## SURROGATE'S COURT NEW YORK COUNTY

### *Citation*

#### THE PEOPLE OF THE STATE OF NEW YORK

TO:
ORLY GENGER,
ARIE GENGER,
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC,
NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC.,
ARNOLD BROSER,
DAVID BROSER,
SAGI GENGER 1993 TRUST

A petition having been filed by Dalia Genger, who is domiciled at 200 E. 65th Street, in

the City of New York, County of New York and State of New York.

YOU ARE HEREBY CITED TO SHOW CAUSE before the Surrogate's Court, New

York County, at 31 Chamber Street, Room *509*, New York, New York on

*February 6*, 2018 at 10 o'clock in the forenoon of that day, why a decree should not be

made *Concerning the Orly Genger 1993 Trust created by Trust Agreement, dated December 13, 1993 between Arie Genger,* ~~in the matter of the Application of Dalia Genger, as trustee of the Orly Genger 1993 Trust,~~ *as Grantor and Lawrence M. Small and Sash A. Spencer, as Trustees,*

granting the following relief as requested in the petition:

a.   damages in in the amount of $32.3 million, plus statutory interest;

b.   imposition of a constructive trust on the Settlement Proceeds;

c.   an order directing the delivery of the Settlement Proceeds to her as Trustee;

d.   an accounting of the Settlement Proceeds; and

e.     such other relief as to the Court seems just and necessary.


Dated, Attested and Sealed,

_December 21, 2017_          Hon. _Nora S. Anderson_, Surrogate

_Diana Sanabria_  Chief Clerk

JUDITH BACHMAN, ESQ
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

[Note: This citation is served upon you as required by law. You are not required to appear. If you
fail to appear it will be assumed you do not object to the relief requested. You have a right to
have an attorney appear for you.]


> **PROOF OF SERVICE MUST BE FILED**
> **TWO DAYS PRIOR TO THE RETURN DATE**
> Court Rule 207.7 (c)

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                         : ss.:
COUNTY OF NEW YORK   )

Julie M. Thaxton, being duly sworn, deposes and says:

1. I am not a party to the action, am over 18 years of age and am employed by Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036.

2. On May 7, 2018 I served a true copy of the

- ***Notice of Motion,***
- ***Affirmation of John Boyle in Support of the TR Entities' Motion to Dismiss the Amended Petition for Turnover of Trust Property and Other Relief*** *with the exhibits annexed thereto,*
- ***Affirmation of Mark S. Hirsch in Support of the TR Entities' Motion to Dismiss the Amended Petition for Turnover*** *and*
- ***Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Amended Petition for Turnover of the Trust Property and Other Relief Filed on April 13, 2018 by Dalia Genger as Trustee of the Orly Genger 1993 Trust***

by Federal Express, overnight delivery upon:

Judith Lisa Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956

Kasowitz Benson Torres LLP
Michael Paul Bowen
1633 Broadway
New York, NY 10019

Kelley Drye & Warren LLP
John Dellaportas
101 Park Avenue
New York, NY 10178

Mitchell D. Goldberg, Esq.
The Freyberg Law Group
950 Third Avenue
32nd Floor
New York, NY 10022

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017


Julie M. Thaxton

Sworn to before me this
7th day of May 2018.

Brian E. Keating
Notary Public, State of New York
No. 01KE5009535
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires March 15, 2019

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson



New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAY 1 5 2018

FILED

Clerk_____

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

    -against-

Orly Genger, et al.,

    Respondents.

## NOTICE OF MOTION TO DISMISS AMENDED PETITION

PLEASE TAKE NOTICE THAT, upon the accompanying Affirmation of Mitchell D.
Goldberg dated May 14, 2018, and upon all the pleadings and proceedings heretofore had herein,
Respondents Arnold Broser and David Broser, through his undersigned attorneys, will move this
Court, at 31 Chambers Street, New York, New York 10007, Room 509, on June 1, 2018 at 10:00
a.m., or as soon thereafter as counsel can be heard, for an order dismissing with prejudice Dalia
Genger's Amended Petition pursuant to SCPA Section 102 and CPLR Sections 3211(a)(4), (5),
(7) and (8) and for such further and other relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to CPLR 2214(b), answering
papers, and any notice of cross-motion, with supporting papers, if any, shall be served on the
undersigned counsel at least seven (7) days prior to the return date of this motion.

Dated: New York, New York
      May 16, 2018

THE FREYBERG LAW GROUP

By:_____
    Mitchell D. Goldberg, Esq., Esq.
    950 Third Avenue, 32nd Floor
    New York, New York 10022
    (212) 983-1221
    *Attorneys for Respondents*
    *Arnold Broser and David Broser*

To: Law office of Judith Bachman
    Attn: Judith Bachman, Esq.
    254 S. Main Street
    Suite 306
    New City, New York  10956
    (845) 639-3210
    *Attorney for Petitioner Dalia Genger*

## CERTIFICATE OF SERVICE

I hereby certify that I am not a party to the action, am over 18 years of age and reside in the County of Westchester, State of New York and that I am an attorney duly admitted to the Courts of the State of New York.

That on the 14th day of May, 2018, I served the within Notice of Motion To Dismiss Amended Petition with accompanying Affirmation of Mitchell D. Goldberg upon the following in this action:

> Judith Bachman, Esq.
> 254 S. Main Street, Suite 306
> New City, New York 10956
> Counsel to Petitioner Dalia Genger

by depositing a true copy of same enclosed at the address designated by said attorneys for that purpose by Federal Express, in an official depository under the exclusive care and custody of Federal Express within the State of New York State.

Dated: May 14, 2018

Mitchell D. Goldberg

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E <br><br> Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

  -against-

Orly Genger, et al.,

    Respondents.

## AFFIRMATION IN SUPPORT OF RESPONDENTS
## <u>ARNOLD BROSER AND DAVID BROSER MOTION TO DISMISS</u>
## <u>DALIA GENGER'S 2016 AMENDED PETITION</u>

Mitchell D. Goldberg, an attorney duly admitted to practice law in the State of New

York, hereby affirms under penalty of perjury pursuant to CPLR 2106 as follows:

    1.    I am a member of the bar of the Sate of New York and of counsel to The Freyberg

Law Group, counsel for third-party defendant Arnold Broser and David Broser (collectively, the

"Brosers") in the above titled action (the "Action").

    2.    The Brosers bring this Motion To Dismiss the Amended Petition dated April 12,

2018 pursuant to SCPA Section 102 and CPLR 3211(a)(4), (5), (7) and (8) to dismiss with

prejudice the Petition filed by Dalia Genger ("New Action").

    3.    Previously, Dalia had attempted to serve the respondents with copies of a Petition

in the New Action in December, 2017 and the Brosers and the other respondents each moved to

dismiss that Petition. Those motions are pending before this Court.

4.     Thereafter, Dalia's attorney sent by mail a new Amended Petition to my office, as attorneys for the Brosers, on April 18, 2018.  I have never consented to service upon my firm on behalf of the Brosers and Ms. Bachman is well aware that my office is not authorized to accept service of the Amended Petition on behalf of the Brosers.

5.     For the reasons set forth in the Brosers prior motion to dismiss, and as again articulated in the separate Motion to Dismiss the Amended Petition served on behalf of Orly Genger, the Amended Petition should be dismissed.

I affirm under penalty of perjury that the foregoing is true and correct.  Executed on

Dated:  New York, New York
        May 14, 2018

_____
Mitchell D. Goldberg, Esq.

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------
In the Matter of DALIA GENGER, trustee of the
ORLY GENGER 1993 TRUST,

                    Petitioner,

        -against-                                    File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,        Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,                                              Notice of
                    Respondents.                        Cross-Motion
--------------------------------------------------------------------------------

        PLEASE TAKE NOTICE, that upon the Affirmation of Judith Bachman, dated May 23,

2018, the accompanying Memorandum of Law, and all pleadings and proceedings heretofore had

herein, petitioner Dalia Genger, trustee of the Orly Genger 1993 Trust, will cross-move this

Court, at 31 Chambers Street, New York, New York 10007, Room 509, on June 1, 2018 at 10:00

a.m., or as soon thereafter as counsel can be heard, for an Order pursuant to, inter alia, SCPA

§§ 311, 312, 402, 403, 2106 and CPLR 306(b) (i) extending time to serve process (or permitting

substituted or nunc pro tunc service) and to file an affidavit of service, and (ii) consolidating this

turnover proceeding with the removal proceeding also pending in this Court.

Dated: May 23, 2018
       New City, New York

                            Judith Bachman / DS
                            Judith Bachman, Esq.
                            The Bachman Law Firm
                            254 S. Main Street, Suite 306
                            New City, New York 10956
                            845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the
ORLY GENGER 1993 TRUST,

Petitioner,

-against-                                          File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,          Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.

--------------------------------------------------------------------------------

PETITIONER DALIA GENGER'S
MEMORANDUM OF LAW IN OPPOSITION
TO MOTIONS TO DISMISS
AND IN SUPPORT OF CROSS-MOTION

Judith Bachman, Esq.
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Table of Contents

Table of Authorities                                                                ii

Preliminary Statement                                                         1

Statement of Facts                                                            1

Point I

        The Claims in the Amended Petition
        Are Not Barred By Res Judicata
        Because No Court Has Ever Adjudicated
        Entitlement to Settlement Proceeds                                  11


Point II

        Orly is a De Facto Trustee and Claims
        are not Barred by the Statute of
        Limitations                                                        12


Point III

        TR is a Proper Party To this Action Since it Owes $15 Million
        Under the Settlement Which Should be Paid to the Orly Trust        16


Point IV

        Amended Petition Should Not be Dismissed on Any Other
        Grounds Raised By Respondents                                      19

Conclusion                                                                 20

Table of Authorities

In re Accounting of Sakow, 219 A.D.2d 479, 631 N.Y.S.2d 637
(1st Dep't 1995)                                                                13, 14

In re Barabash, 31 N.Y.2d 76, 286 N.E.2d 268, , 334 N.Y.S.2d 890 (1972)          16

In re Beiny, File No. No. 2003-51139 (Surr. Ct Bronx Cty. July 17, 2003)         13

In re Davidson, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y.
Cnty. Oct. 25, 2017) (Anderson, J.)                                             5, 14

In re Deyette, 16 Misc.3d 1124(A), 847 N.Y.S.2d 901 (Sup. Ct. Nassau Cnty. 2007)  13

In re Estate of Jewett, 145 A.D.3d 1114, 42 N.Y.S.3d 443 (3d Dep't 2016)         14

In re Groman, 36 Misc.3d 1204(A), 951 N.Y.S.2d 86, (A) (Surr. Ct. N.Y. Cnty. 2012)
(Anderson, J.)                                                                 13

In re King, 194 A.D.2d 726, 599 N.Y.S.2d 295 (2d Dep't 1993)                    13, 14

Knobel v. Shaw, 90 A.D.3d 493, 936 N.Y.S.2d 2 (1st Dep't 2011)                  15

Rainbow Coop New York, 63 A.D.3d 415 (1st Dep't 2009)                           18

Rayo v. Vitale, 38 Misc.3d 1211, 966 N.Y.S.2d 349 (Sup Ct. Kings Cnty. 2012)    14

Sakow v Waldman, 124 A.D.3d 860, 863 (2d Dep't 2015)                            11

Samerson v. Mather Mem. Hosp., 1995 NYLJ Lexis 2533(Sup. Ct. Suffolk Cnty. 1995)  11

Twin Holdings of Delaware LLC v. CW Capital, LLC, Index No. 2009-32723
(Sup. Ct. Nassau Cnty. 2009)                                                   18

United States Trust Co. v. Alpert, 10 F. Supp. 2d 290, 1997 U.S. Dist. Lexis 24081
(S.D.N.Y. 1998)                                                                    11

Westchester Religious Inst. v. Kamerman, 262 A.D.2d 131, 131, 691 N.Y.S.2d 502
(1st Dep't 1999)                                                                   15

## PRELIMINARY STATEMENT

Petitioner Dalia Genger ("Dalia" or "Petitioner"), trustee of the Orly Genger 1993 Trust

(the "Orly Trust"), opposes the Respondents' respective motions to dismiss because Orly and the

third parties must account for assets that should be turned over to the Orly Trust.

## STATEMENT OF FACTS

On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to

a written trust agreement. Amended Petition, dated March 28, 2018 ("AP"), a copy of which is

attached as Exhibit 3 to the Affirmation of Judith Bachman ("Bachman Aff."), dated May 23,

2018, ¶6. Orly Genger ("Orly") is a beneficiary of the Orly Trust. Dalia is the trustee of the Orly

Trust.

The Orly Trust was part of an effort to safeguard assets for Orly and her children.

Specifically, pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds

are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the

benefit of Orly's creditors (the "Trust Agreement Obligations"). AP ¶ 7. This was put in place to

protect Orly and her children from the reach of creditors and Orly's own misguided financial

choices. This is at the heart of every trust, including the Orly Trust.

In July 2010, Orly instituted a derivative action in the Supreme Court, New York County

entitled *Arie Genger, et al. v. Sagi Genger, et al.,* Index No. 651089/2010. In this action (the

"Orly Trust Derivative Litigation"), Orly expressly brought claims "on behalf of the Orly Trust

as the beneficiary of the Orly Trust." AP, ¶ 9. Orly's complaint in the Orly Trust Derivative

Litigation sought to assert claims with respect to the Orly Trust's putative beneficial ownership

in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her

pleading to assert claims against, *inter alia*, the purchasers of those TRI shares, Glenclova

-1-

Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and

TRI (collectively, "TR"). Id.

Orly declared in the second paragraph of her derivative complaint, that she brought the

"action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her interests

thereunder." (AP, Ex. 2 at 1, emphases added.). Although Orly purported to also bring claims in

her "individual capacity," the only harm she identified in her Complaint was to the Orly Trust.

As she described her own "NATURE OF THE CASE" in her Complaint:

> In this case, Plaintiffs Arie and Orly, in her individual capacity
> and on behalf of the Orly Trust, are seeking declaratory, injunctive,
> and other equitable relief, as well as additional compensatory
> damages ... arising from, *inter alia*, ... the tortious conduct of the
> defendants ... in connection with [TR's] campaign to take over and
> dilute the value of plaintiffs' interests in TRI, ... including the Orly
> Trust's interest in a portion of this TRI stock .... (NYSCEF Doc.
> No. 112 at 4.)

Justice Jaffe of the Supreme Court, New York County –over the objections of the

defendants therein – ultimately adopted Orly's position that she "has legal standing to represent

the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court

rules otherwise in an appropriate action there." AP ¶ 10.

During the pendency of the Orly Trust Derivative Litigation, Orly moved to restrain

Dalia from pursuing what Orly characterized as a "duplicative" action that Dalia had brought

directly against TR before the Delaware Chancery Court. AP ¶ 11. According to Orly: "[i]n the

instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly

Trust." Also, according to Orly, Dalia's "contention that the Orly Trust is not a party to this

action ... is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme

Court agreed, restraining Dalia from pursuing the Delaware action by which Dalia had sought to

obtain ownership of the TRI shares for the Orly Trust. AP ¶ 11.

-2-

In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement ("Settlement") to resolve all issues among the stipulating parties" of the Orly Trust Derivative Litigation. AP ¶ 14. However, Orly did not share a copy of the Settlement with Dalia as Trustee at that time – to the contrary she successfully resisted doing so. Thus, Dalia first saw the terms of the Settlement only much later, when the document was produced in a federal court action to which Orly was a party.

In the Settlement, TR agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). AP ¶ 18. Upon information and belief, the Brosers are creditors of Orly personally and/or her father, to whom Orly and Arie owe many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

At a hearing before Justice Jaffe on March 25, 2015, counsel to TR confirmed that $17.3 million of the Settlement proceeds has already been paid (none of it to the Orly Trust), but that the remaining $15 million, less possible "set-offs," has yet to be paid and is subject to possible acceleration or extension of the nominal payment dates. AP ¶ 22.

As noted above, none of the aforementioned $17.3 million has been remitted to the Orly Trust. Absent this Petition, none of the remaining $15 million will be paid to the Orly Trust either, per Section 8(b) of her Settlement. AP ¶ 23. Orly has testified that she has not personally received any of the Settlement proceeds. Id. This means $17.3 million of the Settlement proceeds has been paid to other members of the "AG Group," *i.e.*, the Brosers and Arie (the "Initial Payment"), for the settlement of claims belonging principally to the Orly Trust. AP ¶ 23.   This   violates   the express language and purpose of the Orly Trust, which was to protect Orly and her children from creditors and misguided financial decisions.

-3-

Consistent with her fiduciary duty to the Orly Trust, the express terms of the Orly Trust, and black-letter New York law, Orly was required to ensure the Settlement proceeds were paid to the Orly Trust. AP ¶ 24. However, Orly failed to comply with these duties and obligations. Orly therefore breached her fiduciary duty to the Orly Trust.

Because of the breach of her obligations and the past and future payment of proceeds from the Settlement, on June 14, 2016, Dalia filed a petition ("Petition") seeking recovery against Orly, Arie, TR, and the Brosers for their actions and conflicting claims to the Settlement proceeds. Bachman Aff., dated May 21, 2018, ¶ 2.

While the Respondents knew this Petition was pending, Orly filed a petition to once again try to remove Dalia as trustee of the Orly Trust (the "Removal Action"). (She had several prior, unsuccessful attempts.)   Bachman Aff. ¶ 3. While only Orly, Dalia and the contingent remainderman beneficiary, the Sagi Genger 1993 Trust, are parties to the Removal Action, Orly, it would appear, is seeking to remove Dalia in order to satisfy her promise to the other Respondents in the Settlement to install a replacement trustee who will bless their diversion of Settlement proceeds. Bachman Aff. ¶ 3.

On February 5, 2018, all Respondents moved to dismiss the Petition on various grounds. On the return date of the motions to dismiss the Petition, the Court held an off-the-record conference with counsel.  The Court encouraged the parties so as to resolve the procedural issues at hand and allow the Court to focus on the substantive questions presented.  Bachman Aff. ¶ 4.

Specifically, the Court advised that it would likely view Orly as a de facto fiduciary in her role as derivative plaintiff for the Orly Trust.  Bachman Aff. ¶ 4.

The Court also reminded the parties that disputes over the timing of the issuance of the citation and service questions would likely be curable and would only delay the resolution of the

-4-

substantive issues. Bachman Aff. ¶ 4. The Court noted that there would likely be no statute of limitations bar to the Petition citing In re Davidson, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y. Cnty. Oct. 25, 2017) (Anderson, J.). Bachman Aff. ¶ 4.

Accordingly, the Court asked the parties to confer on procedural issues and find a way to resolve them without the need for Court intervention. Further, the Court suggested that Dalia consider streamlining her Petition to address the necessity of having TR as a party to the action.

Following the suggestion of the Court, on the day after the Court conference, Dalia's counsel called TR's counsel and offered to entirely remove TR from the Petition if it would agree to withhold, at the time it might otherwise be due, payment of the $15 million dollars yet to be paid under the Settlement until a final and non-appealable judgment had been entered by this Court. Bachman Aff. ¶ 6. Under that agreement, the status quo would have been preserved, and the Court would have been able to move forward without TR's presence. That would also have preserved the maximum settlement payment to be made by TR (which should be in Orly's interest too) because the monies to be paid are potentially subject to offset, including for TR's attorney's fees.

TR's counsel advised that he would have to confer with the other parties (presumably including everyone, Orly, Arie, and the Brosers) regarding Dalia's proposal and their responses – to, as the Court noted in a later call, "get their stories straight." Bachman Aff. ¶ 7.

Thereafter, Dalia's counsel received no response, at all, to that proposal. Bachman Aff. ¶ 8.

The Court then held a call with all counsel and asked for an update as to the parties' efforts to resolve the procedural issues.

TR and Orly's counsel admitted that they could not agree among themselves as to how to resolve the procedural issues and that they had not even broached the subject with Dalia's counsel or otherwise responded to her offer. Bachman Aff. ¶ 9.

The Court advised that if TR, Orly, Arie, and the Brosers insisted on pressing their procedural objections to the Petition, the Court might not be able to resolve their motions for an extended period of time, due to the significant backlog on the Court's docket. The Court again urged the parties to try to resolve the procedural issues without the Court's intervention. Bachman Aff. ¶ 10.

All counsel asked for more time to try to resolve the procedural issues and allow the Court to focus on the substantive questions. In response, the Court set another date for a conference call.

As promised during that call, Dalia's counsel sent two written proposals to counsel for TR. Bachman Aff. ¶ 12. First, Dalia's counsel reiterated the prior proposal. Second, Dalia offered an alternative proposal. The alternative was that if TR would waive all of its procedural arguments (service of process, names of the parties, etc.), then Dalia would file an amended petition omitting the monetary claims against TR related to the previously-made settlement payment of $17.3 million (all of which was paid to parties other than the Orly Trust) and would instead only assert equitable claims (such as turnover, declaratory judgment and injunction) against TR related to the $15 million yet to be paid. Bachman Aff. ¶ 13.

TR declined both of those proposals. Bachman Aff. ¶ 13.

Taking the Court's concern to heart, Dalia filed the Amended Petition to streamline the claims relating to TR. Bachman Aff. ¶ 14.

-6-

The Amended Petition omits any monetary claims against TR related to the previous settlement payment of $17.3 million (all of which was paid to parties other than the Orly Trust), and instead only asserts equitable claims (such as turnover, declaratory judgment and injunction) against TR related to the $15 million yet to be paid.

Incredibly, Orly now has the gall to question the motivation for and timing of the filing of the Amended Petition which streamlines the claims against TR, as the Court asked.

During the final call with the Court, TR, Orly, Arie, and the Brosers admitted again that they could not coordinate a proposed resolution of the procedural issues and did not confer with Dalia about the issue.  Bachman Aff. ¶ 15.

The Court reminded TR, Orly, Arie, and the Brosers that it would be a long time before it could consider their motions.

With unmitigated nerve, the Brosers (Orly and Arie's litigation funders) asked the Court to prioritize their claims – presumably so that they could take the Orly Trust Settlement proceeds for themselves; the very danger which the Amended Petition seeks to avert.  Dalia's counsel objected to that request.  Bachman Aff. ¶ 16.

Now, even with the streamlined Amended Petition focusing only on the $15 million yet to be paid by TR, TR bemoans its presence in this action.

But TR still owes $15 million and has admitted that that money is for settlement of claims of the Orly Trust.  As TR has previously explained:

> It was in reliance upon the prior determination of the court that
> Orly, as beneficiary, was authorized to act on behalf of the Trust,
> that the TR Entities, Orly (both individually and as beneficiary of
> the Trust), and the other parties entered into the Settlement
> Agreement and into the NY Dismissal with Prejudice. Indeed, the
> NY Dismissal with Prejudice was "so ordered" by the court and
> expressly notes that Orly was acting "individually and as
> beneficiary of" the Trust. (Boyle Aff., Ex. E at 1). Most important,

-7-

> Dalia acknowledges that, pursuant to court rulings, Orly had legal
> standing to represent the Trust. (See Boyle Aff., Ex. A [Amended
> Petition] at ¶¶ 9-11).
>
> The Settlement Agreement between the TR Entities and the AG
> Group provided that the AG group was to receive up to $35 million
> over time, less amounts already held in escrow and subject to
> certain setoffs and adjustments (the "Settlement Proceeds"), in
> return for a full release of claims against the TR Entities, including
> a general release by Orly, both as an individual and as beneficiary
> of the Trust, and a declaration that the TR Entities own "all right,
> title and interest (beneficially, of record, and otherwise)" to all of
> the Trans-Resources shares. (See Boyle Aff., Ex. E at ¶¶ 2-4).

TR Brief, at 6-7 (emphases added).

And, in a letter dated June 28, 2013 to the court on behalf of all settling parties "including

... Orly Genger," TR confirmed that: "A material term of the agreement among the settling parties

was the dismissal of *all* claims presently pending against one another, in whatever capacity they

were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing

Orly Genger's derivative claim against [TR], contrary to the agreement of the settling parties.

Excluding such claims from the claims that are to be dismissed is not what [TR] bargained and

paid for in the settlement . . ." AP ¶ 15.

TR reaffirmed that the Settlement included the claims of the Orly Trust: "[Any suggestion]

that the confidential settlement agreement *might* only dismiss Orly's individual claims against

[TR], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR

Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action,

including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf

of the Orly Genger 1993 Trust. ... In settling the claims among them, [TR], Orly and Arie agreed

to the dismissal of all claims presently pending against one another. This agreement is

memorialized in the Second Amended Stipulation of Discontinuance." AP ¶ 19.

Arie, himself, too confirmed that the Settlement of the Orly Trust Derivative Litigation was done on behalf of the Orly Trust when he informed the Supreme Court, New York County that "Defendants Arie Genger and <u>Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust</u>" had settled the Orly Trust Derivative Litigation and that they requested the action be dismissed.  Bachman Aff. ¶ 16, Ex. 1 (Letter from Paul D. Montclare, dated on June 18, 2013, at 1).

And the Settlement agreement itself states that Orly had settled her claims against TR both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims.  AP ¶ 17. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the Settlement, Orly settled and released all of her claims in both her derivative and individual capacities (Orly releasing the Trumps "in all capacities.") AP ¶ 20.

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's action on behalf of the Orly Trust.  Orly's attorneys advised the Delaware Chancery Court that Orly was "acknowledg[ing] individually and <u>in her capacity as the beneficiary of her trust</u> that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." AP ¶ 20.

-9-

And most tellingly, under Section 8(b) of the Settlement, Orly agreed as a condition to any agreement to a replacement trustee for the Orly Genger 1993 Trust to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5." AP, Ex. 7.

On May 15, 2014, U.S. District Judge Keenan held that: "Pursuant to [the [S]ettlement, Orly acknowledged that [TR] is the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding ownership of the Orly Trust Shares is over." AP, Ex. 8. And moreover, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." AP ¶ 18.

Now, notwithstanding the Court's warning to the contrary, all of the Respondents have once again moved to dismiss the Amended Petition on procedural grounds. Dalia opposes the motions to dismiss and cross-moves, as necessary, for an extension of time to serve process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit of service, and to consolidate this proceeding with the Removal Action also pending in this Court.

-10-

ARGUMENT

Point I

The Claims in the Amended Petition
Are Not Barred By Res Judicata
Because No Court Has Ever Adjudicated
Entitlement to Settlement Proceeds

Orly does not, indeed she cannot, dispute that: (a) she brought derivative claims on behalf
of the Orly Trust in the case entitled *Arie Genger et al v. Sagi Genger et al*, Index No.
651089/2010; (b) that she settled the derivative Trust claims in 2013 for $32.3 million; and (c) to
date, she has remitted none of those settlement proceeds to the Trust.  Nor can she dispute that,
under New York law, the proceeds from a derivative settlement belong to the injured party (in
this case, the Trust), not the derivative plaintiff (in this case, Orly).  See Sakow v Waldman, 124
A.D.3d 860, 863 (2d Dep't 2015) ("A shareholder of a corporation, even of a closely held
corporation, may not recover in his or her individual capacity for wrongs committed against the
corporation, and any recovery obtained pursuant to a derivative cause of action asserted by a
shareholder is obtained for the benefit of the injured corporation.")

However, Respondents claim that Dalia is somehow barred by the doctrine of "res
judicata" from recovering the settlement proceeds for the Trust.  That is utterly baseless.  Under
New York law, in order for the terms of a settlement (beyond just the dismissal of the underlying
case) to be *res judicata*, the terms of the settlement must be "agreed to by all parties present …
[and] recorded in the minutes of the court." Samerson v. Mather Mem. Hosp., 1995 NYLJ Lexis
2533, *11 (Sup. Ct. Suffolk Cnty. 1995); see also United States Trust Co. v. Alpert, 10 F. Supp.
2d 290, 1997 U.S. Dist. Lexis 24081 (S.D.N.Y. 1998) (rejecting similar argument that claim to
settlement proceeds was barred by *res judicata* argument where the settling "court never

-11-

considered any of the 346 Indentures at issue here nor the rights of the unitholder parties to those Indentures and obviously never decided who, as parties to the Indentures, would be entitled to distribution of the amount given to the Trustees herein").

That was not done here. Orly deliberately concealed the terms of the settlement from Dalia, and then discontinued the action pursuant to a so-ordered Stipulation (NYSCEF DOC. NO. 487) that makes no mention whatsoever of any settlement proceeds, let alone determining the correct allocation thereof. The only res judicata is the dismissal of the Orly Trust's claims. The Supreme Court never addressed the question of allocation of settlement proceeds; the closest it came was to hold "in abeyance" – **in favor of this very proceeding** – the Trustee's motion to have those proceeds deposited in that Court. (NYSCEF DOC. NO. 1279). As a result, this issue was also never put before the Appellate Division and was never ruled upon.

## Point II

### Orly is a De Facto Trustee and and the Claims Herein Are Not Barred by the Statute of Limitations

It appears that, notwithstanding the Court's instructions otherwise, the Respondents are clinging to their procedural arguments in moving to dismiss. They apparently hope that the Amended Petition will be barred by the statute of limitations and therefore the Courts will never reach the merits of their misappropriation of $32.3 million in Settlement proceeds owing to the Orly Trust. See, Orly Brief at 2, TR Brief at 15.

To see the fallacy of the Respondents' arguments simply requires acknowledging the black-letter principle that, as a derivative plaintiff on behalf of the Orly Trust, Orly is a de facto trustee of the Orly Trust.

-12-

Where a party acts like and assumes the duties of a trustee, that party will be deemed a de facto trustee. In re Accounting of Sakow, 219 A.D.2d 479, 631 N.Y.S.2d 637 (1st Dep't 1995). For instance, in In re Deyette, 16 Misc.3d 1124(A), 847 N.Y.S.2d 901 (Sup. Ct. Nassau Cnty. 2007) the court found that the wife of an executor who transacted business on behalf of the trust presented "sufficient evidence to demonstrate that … active involvement with the administration of the….[estate], rose to the level of rendering her a de facto trustee."

Bringing a derivative action on behalf of the trust to recover funds clearly demonstrates Orly's status as a "de facto trustee" and thus, a fiduciary of the trust. In re Accounting of Sakow, 219 A.D.2d 479, 631 N.Y.S.2d 637 (1st Dep't 1995). See also, Bachman Aff., Ex. 2 (Dalia's Brief in Opposition to Motion to Dismiss Petition).

As a de facto trustee, Orly should have sought leave to compromise the Orly Trust Derivative Litigation with this Court. SCPA §1813; In re Groman, 36 Misc.3d 1204(A), 951 N.Y.S.2d 86, (A) (Surr. Ct. N.Y. Cnty. 2012) (Anderson, J.).

In a request for leave to compromise, the Court would have considered whether the Settlement was in the Orly Trust's best interests. In re Groman, 36 Misc.3d 1204(A), 951 N.Y.S.2d 86, (A) (Surr. Ct. N.Y. Cnty. 2012) (Anderson, J.). In skipping this process, Orly denied this Court the initial opportunity to review the Settlement and ensure that it was in the best interests of the Orly Trust and that all proceeds were paid to the Orly Trust.

Even though Orly tried to avoid scrutiny by this Court by failing to seek its leave to enter into the Settlement, she, as de facto trustee, will be held to account for trustee-related activities, the same as a de jure trustee. In re King, 194 A.D.2d 726, 599 N.Y.S.2d 295 (2d Dep't 1993); In re Deyette, 16 Misc.3d 1124(A), 847 N.Y.S.2d 901 (Sup. Ct. Nassau Cnty. 2007); In re Beiny, File No. No. 2003-51139 (Surr. Ct Bronx Cty. July 17, 2003).

-13-

Thus in <u>In re Accounting of Sakow</u>, 219 A.D.2d 479, 631 N.Y.S.2d 637 (1st Dep't 1995), the court held that since the de facto executor brought an action on behalf of the estate to recover property belonging to it, he must account to the beneficiaries of the estate.

In the instant matter, Orly brought an action, as a fiduciary or a de facto trustee, on behalf of the Orly Trust to recover funds owed to the Orly Trust, and thus she should be ordered to provide an accounting to the Orly Trust of the Settlement proceeds from that case. And Orly may be subject to surcharge if she acted improperly, including by colluding with Arie, the Brosers and TR to keep money out of the Orly Trust and re-direct it to Arie or the Brosers. <u>Cf.</u> SCPA §1807; <u>In re Estate of Jewett</u>, 145 A.D.3d 1114, 42 N.Y.S.3d 443 (3d Dep't 2016).

The statute of limitations for an action against a de facto trustee, such as Orly, does not begin to run until the time that the trustee's fiduciary relationship ends. <u>In re King</u>, 194 A.D.2d 726, 599 N.Y.S.2d 295 (2d Dep't 1993) (claims against de facto fiduciary not time barred if he did not openly repudiate his fiduciary status yet); <u>Rayo v. Vitale</u>, 38 Misc.3d 1211, 966 N.Y.S.2d 349 (Sup Ct. Kings Cnty. 2012) (same).

This Court decided this very issue in <u>In re Davidson</u>, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y. Cnty. Oct. 25, 2017) (Anderson, J.). This Court held:

> Respondents argue that petitioners seek "money damages" for breach of fiduciary duty and that therefore a three-year statute of limitations period applies (see e.g. Yatter v. William Morris Agency, 256 AD2d 260, 682 N.Y.S.2d 198 [1st Dept 1998]). Alternatively, they contend that, even if a six-year statute of limitations period for a breach of fiduciary duty based upon fraud applies (CPLR §213[8]); Kaufman v. Cohen, 307 AD2d 113, 760 N.Y.S.2d 157 [1st Dept 2003]), such limitations period for claims prior to fiscal year 2000 would have begun to run in late 1999 or early 2000. Thus, according to respondents, whether a three-year or six-year limitation applies, [*10] all of petitioners' surcharge claims for the period prior to fiscal year 2000 are time-barred as a matter of law.

-14-

The trustees' arguments, however, reflect a fundamental
misunderstanding of the true nature of the relief sought and the
process by which beneficiaries obtain such relief, i.e., a monetary
surcharge intended to make the estate or trust whole. The usual
vehicle for obtaining a surcharge for fiduciary misconduct is
through the adjudication of objections in an accounting
proceeding. Here, petitioners did not seek a full accounting, but
instead have sought an inquiry limited to the trustees' conduct in
connection with the 1986 Agreement.

Viewed in this light, the trustees' claim that the statute of
limitations has expired is without merit. As in any judicial
accounting, petitioners seek to hold respondents accountable for
their conduct as fiduciaries. The six-year limitations period for an
accounting (CPLR §213[1]; Tydings v. Greenfield, Stein & Senior
LLP, 11 NY3d 195, 897 N.E.2d 1044, 868 N.Y.S.2d 563 [2008])
begins to run when the fiduciary's relationship with the trust or
estate has ended (see e.g Tydings v. Greenfield Stein & Senior, 11
NY2d 195, 897 N.E.2d 1044, 868 N.Y.S.2d 563, supra; In re
Estate of Barabash, 31 NY2d 76, 286 N.E.2d 268, 334 N.Y.S.2d
890 [1972]). Here, the trustees continue to serve as fiduciaries and
have never accounted or otherwise repudiated their obligation to
administer the Brookman Trust.

Further, where, as here, the defendant is alleged to be a fiduciary,
the statute of limitations on an accounting claim does not begin to
run until the fiduciary has openly repudiated his or her obligation
or the relationship has otherwise been terminated *Knobel v. Shaw,*
90 A.D.3d 493, 496 [2011]; *Missan v. Schoenfeld,* 95 A.D.2d 198,
209 [1983]; see also Partnership Law § 74). Here, defendants have
failed to demonstrate that Vitale openly repudiated his obligations
or that the partnership was terminated more than six years prior to
the commencement of the Federal action. Accordingly, defendants'
motion to dismiss the accounting cause of action is denied.

"Indeed, the statute of limitations against a fiduciary for an accounting  does not begin to

run until the fiduciary ... relationship has been otherwise terminated" Knobel v. Shaw, 90

A.D.3d 493, 936 N.Y.S.2d 2 (1st Dep't 2011) (defendants did not submit documentary evidence

definitively establishing that they had repudiated their obligations to plaintiff or that their

relationship had terminated); Westchester Religious Inst. v. Kamerman, 262 A.D.2d 131, 131,

691 N.Y.S.2d 502 (1ˢᵗ Dep't 1999); In re Barabash, 31 N.Y.2d 76, 286 N.E.2d 268, , 334 N.Y.S.2d 890 (1972).

Here, in the instant matter, the statute of limitations does not begin to run until Orly, as de facto trustee of the Orly Trust, openly repudiates her role as acting in a fiduciary capacity and accounts for her actions.   She has not done so and the Respondents cannot point to anything to the contrary.

Since it is clear that Orly is a de facto trustee of the Orly Trust and that claims related to her actions as de facto trustee are not barred by the statute of limitations, procedural questions about the citation or service of it are merely academic issues which only serve to delay a decision on the merits of the case.   Accordingly, such arguments must be rejected.

To the extent that the Court does consider these or other technical arguments such as duplicativeness, Dalia's response to them are fully set forth in Dalia's Brief in Opposition to Motion to Dismiss Petition. Bachman Aff., Ex. 2.   In order not to burden the Court with duplicative briefing, those arguments are respectfully incorporated by reference as if fully set forth herein.

Point III

TR is a Proper Party
To this Action
Since it Owes $15 Million
Under the Settlement
Which Should be Paid to the Orly Trust

TR has attempted to portray itself as an innocent third party being dragged against its will into this Orly Trust litigation.

But TR hypocritically ignores the fact that it entered into a Settlement which, as it admits, primarily involved claims of the Orly Trust. TR Brief, 6-7. TR received the benefit of Orly's

-16-

release of all of her claims in both her derivative and individual capacities (Orly releasing the
Trumps "in all capacities.") AP ¶ 20. And TR knowingly had Orly agree as a condition to any
agreement to a replacement trustee for the Orly Trust to "use [her] best efforts to cause [any
replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a
member of the AG Group for purposes of providing the indemnity contained in Paragraph 5."
AP, Ex. 7.

By executing the Settlement, TR ensured and enabled Orly, Arie and the Brosers to avoid
paying the Orly Trust any of the Settlement proceeds.

Moreover, TR freely admits, in the affidavit of Mark Hirsch that accompanies its motion
to dismiss, that it has not yet paid the final $15 million in payments set forth in the Settlement. It
only claims that the debt has not yet "matured." The Amended Petition only seeks from TR that
yet-to-be-paid amount of $15 million for the Orly Trust.

TR accordingly is a property party to this action. The Amended Petition limits its claims
against TR to the fate of the yet-to-be-paid $15 million and seeks against it only the remedies of
turnover, injunction, constructive trust, and an accounting.

TR first argues that Dalia cannot obtain turnover of the $15 million because
TR did not receive any money. TR Brief, 17. This argument is nonsensical – TR **is** in
possession of the $15 million at issue since TR has not yet paid it.

TR then argues that Dalia should not be able to obtain an injunction because it is not a
separate cause of action and she has not demonstrated her entitlement to it. However, Dalia
seeks an injunction both as a remedy and as a cause of action. TR admits that injunction may be
an appropriate remedy here if Dalia demonstrates appropriate need. TR Brief, 18. And "[w]hile
an injunction is a remedy, contrary to defendants' position, a request for an injunction may be

-17-

stated in the complaint as a separate cause of action (CPLR 3014- See also Rainbow Coop New

York, 63 A.D.3d 415 (1st Dep't 2009). Twin Holdings of Delaware LLC v. CW Capital, LLC,

Index No. 2009-32723, (Sup. Ct. Nassau Cnty. 2009).

Second, Dalia is entitled to an injunction preventing the payment of the $15 million to

parties other than the Orly Trust because otherwise the Orly Trust will be irreparably harmed

when the payment is dissipated and cannot be recovered.

To see this danger, one has to look no further than the initial payment of $17.3 million

which may be beyond the Orly Trust's reach and has been dissipated. At the March 25, 2015

hearing on Petitioner's motion, Justice Jaffe suggested it might already be too late to deposit the

initial payment into Court, as the $17.3 million apparently has been paid out to non-parties. AP,

¶ 27 (Ex. 9, p. 28: "it sounds like that ship has sailed").

To avoid the same "ship from sailing" on the remaining $15 million, it is imperative that

TR be enjoined from making the second payment of $15 million until the Orly Trust claims

relating to the Settlement can be adjudicated by this Court.

This is exactly the allegation in the Amended Petition:

> 82. Respondents the Trump Group Entities have in their
> possession, custody or control the Remaining Payment which
> has yet to be paid and which should be delivered to the Orly
> Trust.
>
> 83. If Respondents the Trump Group Entities pay the Remaining
> Payment to any of the other Respondents or to any party other
> than the Orly Trust or otherwise expend, encumber, spend,
> transfer or release the Remaining Payment, the Orly Trust will
> be irreparably harmed.

What is mystifying about TR's position in opposing the turnover and the injunction is

that it should not matter to them who the payee of the Settlement proceeds is. Whether the Orly

-18-

Trust via Dalia's Amended Petition, on the one hand, or Orly, Arie and the Brosers, on the other hand, prevail as to the entitlement to the yet-to-be-paid $15 million is irrelevant to TR since it already has its release from everyone, including the Orly Trust.

In the meantime, an injunction would merely preserve the status quo until the Court can determine who is entitled to TR's yet-to-be-paid $15 million. TR should not object to the injunction of the payment of the $15 million and let the Court do its work supervising Orly as the de facto trustee of the Orly Trust.

Perhaps TR is, per the Settlement, doing the bidding of Arie or the Brosers in its opposition to the Amended Petition – after all, Arie or the Brosers are the ones who stand to gain by having the Settlement proceeds flow to them rather than the Orly Trust; and the Brosers' revealed their true anxiety when they asked the Court to prioritize their own claims over others. This may be the suspicion that the Court, itself, alluded to when it suggested that TR and the other parties were "trying to get their stories straight."

Either way, TR's feigned complaints about being dragged into this matter and the cost of fighting it are disingenuous. TR is voluntarily interjecting itself into this motion practice and needlessly expending the Court and the parties' resources in so doing.

### Point IV

The Amended Petition
Should Not be Dismissed on
Any Other Grounds Raised By
Respondents

All of the Respondents have moved to dismiss the Amended Petition on the same grounds that they moved to dismiss the original Petition.

Those motions should be dismissed for the same reasons as set forth in Dalia's response

to them are fully set forth in Dalia's Brief in Opposition to Motion to Dismiss Petition (Bachman

Aff., Ex. 2) and are incorporated herein as if fully set forth.

To the extent necessary, Dalia also cross-moves for (i) an extension of time to serve

process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit

of service and (ii) to consolidate this proceeding with the Removal Action also pending in this

Court. Id.

CONCLUSION

For the foregoing reasons, Dalia respectfully requests that this Court deny Respondents'

respective motions to dismiss the Amended Petition and grant her cross-motion.

Dated: May 23, 2018
New City, New York

Judith Bachman / DS

Judith Bachman, Esq.
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of Dalia Genger, trustee of the ORLY GENGER
1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20 AND JANE DOES 1-20,

Respondents.

File No. 2008-0017E

Hon. Nora S. Anderson

**AFFIDAVIT OF
SERVICE BY FEDERAL
EXPRESS**

---

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | SS.: |
| COUNTY OF NEW YORK | ) | |

Peter Bogdanich, being duly sworn, deposes and states:

1.   I am not a party to this action, and am over 18 years of age.

2.   On the 24th day of May, 2018, I served a copy of (1) NOTICE OF CROSS-MOTION, (2) PETITIONER DALIA GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS AND IN SUPPORT OF CROSS-MOTION, and (3) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION upon the following individuals at the following addresses:

Michael Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

John Boyle
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036

Leon Friedman, Esq.
685 Third Avenue, 25th Floor
New York, New York 10017

Mark Freyberg, Esq.
The Freyberg Law Group
950 Third Avenue, Suite 3200
New York, New York 10022

By depositing true copies thereof, in a secure envelope with Federal Express, for overnight

delivery.

_____
Peter Bogdanich

Sworn to before me this
24th day of May, 2018.

_____
Notary Public

JEFFREY C. BURANDT
Notary Public, State of New York
No. 01BU6114832
Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 12, 20 20

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of Dalia Genger, trustee of the ORLY GENGER
1993 TRUST,

Petitioner,

-against-

File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20 AND JANE DOES 1-20,

Hon. Nora S. Anderson

**AFFIDAVIT OF**
**SERVICE BY PERSONAL**
**DELIVERY**

Respondents.

| STATE OF NEW YORK | ) | |
|---|---|---|
| | ) | SS.: |
| COUNTY OF NEW YORK | ) | |

Peter Bogdanich, being duly sworn, deposes and states:

1.   I am not a party to this action, and am over 18 years of age.

2.   On the 24th day of May, 2018, I served a copy of (1) NOTICE OF CROSS-

MOTION, (2) PETITIONER DALIA GENGER'S MEMORANDUM OF LAW IN

OPPOSITION TO MOTIONS TO DISMISS AND IN SUPPORT OF CROSS-MOTION, and

(3) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION upon the following

individuals at the following addresses:

John Dellaportas
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

By delivering true copies thereof, by hand, to the above mentioned individual.

_____
Peter Bogdanich

Sworn to before me this
_____ day of May, 2018.

_____
Notary Public

JEFFREY C. BURANDT
Notary Public, State of New York
No. 01BU6114892
Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 12, 20 __

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------------

In the Matter of DALIA GENGER, Trustee of
the ORLY GENGER 1993 TRUST,

                                        Petitioner,

            -against-                                   File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY 1, LLC,      Hon. Nora S. Anderson
NEW TR EQUITY 11, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,                                             Affirmation of
                                        Respondents.   Judith Bachman in
-------------------------------------------------------------------------------   Opposition

        Judith Bachman, an attorney duly admitted to practice before the Court of the State of

New York, affirms under penalties of perjury:

1.  I am the attorney for Petitioner Dalia Genger ("Dalia"), trustee of the Orly Genger

    1993 Trust (the "Orly Trust"). I respectfully submit this affirmation (a) in opposition

    to Respondents' various motions to dismiss the Amended Petition Petitioner and (b) in

    support of the Petitioner's cross-motion.

2.  Because of Respondent Orly Genger ("Orly")'s breach of her obligation to remit the

    proceeds from her settlement of the lawsuit Orly brought on behalf of the Orly Trust,

    on June 14, 2016, Dalia filed a petition ("Petition") seeking recovery against Orly and

    the other Respondents for their respective roles in the misappropriation of the $32.3

    million in Settlement proceeds owing to the Orly Trust.

3. During the pendency of the Petition, Orly filed a new petition to once again try to remove Dalia as trustee of the Orly Trust (the "Removal Action"). (Her multiple prior attempts have all been unsuccessful.) While only Orly, Dalia and the contingent remainderman beneficiary, the Sagi Genger 1993 Trust, are parties to the Removal Action, Orly, it would appear, is seeking to remove Dalia in order to satisfy her promise to the other Respondents in the Settlement to install a replacement trustee who will bless their diversion of Settlement proceeds.

4. On February 5, 2018, all Respondents moved to dismiss the Petition on various grounds. On the return date of the motions to dismiss the Petition, the Court held an off-the-record conference with counsel. The Court encouraged the parties to resolve the procedural issues at hand so as to allow the Court to focus on the substantive questions presented. Specifically, the Court advised that it would likely view Orly as a *de facto* fiduciary in her role as derivative plaintiff for the Orly Trust. The Court also reminded the parties that disputes over the timing of the issuance of the citation and service questions would likely be curable and would only delay the resolution of the substantive issues. The Court noted that there would likely be no statute of limitations bar to the Petition, citing In Re Davidson, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y. Cnty. Oct. 25, 2017) (Anderson, J.).

5. Accordingly, the Court asked the parties to confer on procedural issues and find a way to resolve them without the need for Court intervention. Further, the Court suggested that Dalia consider streamlining her Petition to address the necessity of having the non-Genger Trump-related entities (collectively, "TR") as parties to the action.

6.  Following the suggestion of the Court, on the day after the Court conference, Dalia's counsel called TR's counsel and offered to entirely remove TR from the Petition if it would agree to withhold, at the time it might otherwise be due, payment of the $15 million dollars yet to be paid under the Settlement until a final and non-appealable judgment had been entered by this Court. Under that agreement, the status quo would have been preserved, and the Court would have been able to move forward without TR's presence. That would also have preserved the maximum settlement payment to be made by TR (which should be in Orly's interest too) because the monies to be paid are potentially subject to offset, including for TR's attorney's fees.

7.  TR's counsel advised that he would have to confer with the other parties (presumably, Orly, Arie, and the Brosers) regarding Dalia's proposal and coordinate their responses to, as the Court noted in a later call, "get their stories straight."

8.  Thereafter, I received no response, at all, to Dalia's proposal.

9.  The Court then held a call with all counsel and asked for an update as to the parties' efforts to resolve the procedural issues. TR and Orly's counsel admitted that they could not agree among themselves as to how to resolve the procedural issues and that they had not even broached the subject with Dalia's counsel or otherwise responded to her offer.

10. The Court advised that if TR, Orly, Arie, and the Brosers insisted on pressing their procedural objections to the Petition, the Court might not be able to resolve their motions for an extended period of time, due to the significant backlog on the Court's docket. The Court again urged the parties to try to resolve the procedural issues without the Court's intervention.

11. All counsel asked for more time to try to resolve the procedural issues and allow the Court to focus on the substantive questions. In response, the Court set another date for a conference call.

12. As promised during that call, I sent two written proposals to counsel for TR.

13. First, I reiterated Dalia's prior proposal. Second, I offered an alternative proposal on behalf of Dalia. The alternative was that if TR would waive their procedural arguments (service of process, names of the parties, *etc.*), then Dalia would file an amended petition omitting the monetary claims against TR related to the previously-made settlement payment of $17.3 million (all of which was paid to parties other than the Orly Trust) and would instead only assert equitable claims (such as turnover, declaratory judgment and injunction) against TR related to the $15 million yet to be paid. TR declined both of those proposals.

14. Taking the Court's concern to heart, Dalia nevertheless filed the Amended Petition to streamline the case. The Amended Petition omits any monetary claims against TR related to the previously-made settlement payment of $17.3 million (all of which was paid to parties other than the Orly Trust), and instead only asserts equitable claims (such as turnover, declaratory judgment and injunction) against TR related to the $15 million yet to be paid.

15. During the final call with the Court, Respondents admitted again that they could not coordinate a proposed resolution of the procedural issues and did not confer with Dalia about the issue. The Court reminded Respondents that it might well be a long time before it could consider their motions.

16. With unmitigated nerve, the Brosers (Orly and Arie's litigation funders) demanded that the Court to prioritize their claims – presumably so that they could take the Settlement proceeds owing to the Orly Trust for themselves; the very danger which the Amended Petition seeks to avert. On behalf of Dalia, I objected to that request.

17. Attached hereto as Exhibit 1 is a true and correct copy of a letter from Paul D. Montclare, Arie Genger's counsel, dated June 18, 2013.

18. Attached hereto as Exhibit 2 is a true and correct copy of Dalia's papers opposing all Respondents motions to dismiss Dalia's original petition.

19. Attached hereto as Exhibit 3 is a true can correct copy of the Amended Petition.

WHEREFORE, I respectfully request that the Respondent's motions to dismiss the Amended Petition be denied and Petitioner's cross-motion be granted, and that the Petitioner have such other and further relief as is just and warranted.

Dated: May 23, 2018
     New City, New York

                                       Judith Bachman

MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS☒K**

Paul D. Montclare
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

June 18, 2013

**E-FILED**

Hon. Barbara Jaffe
Supreme Court of the State of New York
County of New York
60 Centre Street, Room 212
New York, New York 10007

Re: *Genger, et al. v. Genger, et al.*, Index No. 651089/2010

Dear Justice Jaffe:

We are counsel to Plaintiff Arie Genger in the above-reference matter.

Enclosed please find a Stipulation of Discontinuance with Prejudice (the "Stipulation"), which we are seeking to have so-ordered by the Court. Please be advised that Plaintiffs/Counterclaim Defendants Arie Genger and Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust; Third-Party Defendants Arnold Broser, David Broser and One or More Entities Directed, Owned or Controlled by Arnold Broser and/or David Broser; and Defendants/Counterclaimants/Third-Party Plaintiffs Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch, and Trans-Resources, Inc. have entered into a confidential settlement agreement to resolve all issues among the stipulating parties. We have not settled with the non-stipulating parties, namely, Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, individually and as Trustee of the 1993 Orly Genger Trust, the Sagi Genger 1993 Trust, and Rochelle Fang, individually and as Trustee of the Sagi Genger 1993 Trust, . This Stipulation is not intended to have any effect upon the claims or existing injunctions or restraints by or against those non-stipulating parties.

12 East 49th Street, 30th Floor, New York, New York 10017-1028
Phone: (212) 509-3900 Fax: (212) 509-7239 Website: www.msk.com

5385574.1/43419-00001

# MITCHELL SILBERBERG & KNUPP LLP

Hon. Barbara Jaffe
June 18, 2013
Page 2

If the Court has any questions regarding the Stipulation, we respectfully request a conference with the Court.  If requested we are also prepared to  present the confidential settlement agreement to the Court for *in camera* review.

Sincerely,

Paul D. Montclare
MITCHELL SILBERBERG & KNUPP LLP


Enclosure
cc:      All Counsel (*via NYSCEF*)

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

                        Petitioner,

        -against-                           File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,    Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,                                    Notice of
                    Respondents.             Cross-Motion

-------------------------------------------------------------------------------

      PLEASE TAKE NOTICE, that upon the Affirmation of Judith Bachman, dated February

20, 2018, the accompanying Memorandum of Law, and all prior pleadings and proceedings

heretofore had herein, petitioner Dalia Genger will cross-move this Court, at 31 Chambers Street,

New York, New York 10007, Room 509, on February 27, 2018 at 10:00 a.m., or as soon

thereafter as counsel can be heard, for an Order pursuant to, inter alia, SCPA §§311, 312, 402,

403, 2106 and CPLR 306(b) for (i) an extension of time to serve process and/or permission to

make substituted service (or nunc pro tunc) and to file an affidavit of service, (ii) the

appointment of a Guardian ad Litem for Orly Genger's infant daughter and unborn children and

the issuance of a supplemental citation, and (iii) to consolidate this turnover proceeding with the

removal proceeding also pending in this Court.

Dated: February 20, 2018
      New City, New York

                                Judith Bachman, Esq.
                                The Bachman Law Firm
                                254 S. Main Street, Suite 306
                                New City, New York 10956
                                845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

                              Petitioner,

        -against-                                    File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,        Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,                                              Affirmation of
                              Respondents.              Judith Bachman in
------------------------------------------------------------------------------    Opposition

    Judith Bachman, an attorney duly admitted to practice before the Court of the State of

New York, affirms under penalties of perjury:

1. I am the attorney for Petitioner, Dalia Genger, and I make this affirmation in opposition

   to the motion to dismiss the Turnover Proceeding of Petitioner and in support of the

   Petitioner's cross-motion.

2. In June of 2016, I prepared a petition on behalf of Dalia Genger to obtain the turnover of

   proceeds of a settlement from various parties to the trust (Orly Genger 1993 Trust) of

   which Dalia Genger is the trustee.

3. On June 14, 2016 I visited both the clerk's office and the Miscellaneous Department of

   Surrogate's Court to file that petition.

4. The Miscellaneous Department advised that it would take some time for them to review

   the filing and that when complete they would issue the citation and email it to me so that

   I could arrange service of it.

5.  On June 17, 2016, I sent a courtesy copy of the petition to the attorneys for all of the
    parties named and inquired if they would accept service.

6.  They refused to accept service.

7.  Thereafter, my office diligently worked with the Surrogate's Court to have the citation
    issued.

8.  Such efforts included repeated and numerous calls, visits, written correspondence, and
    emails to the Surrogate's Court starting on July 7, 2016 and finally ending in December
    2017.

9.  In my early communications with the Surrogate's Court, I was told that the Petition had
    not yet been reviewed because of a backlog in the office and that I should keep checking
    back.

10. Eventually, I was advised that the petition had been placed in the "hold" drawer because
    the caption on the Petition needed to be amended.

11. Because the clerk that I spoke with could not give me specific direction as to how the
    caption needed to be changed, I was directed to call back at another time.

12. When I finally reached a person with knowledge at the Surrogate's Court as to how to
    change the caption, I drafted and submitted an attorney affirmation amending the caption
    as directed.

13. The clerk advised that, again, it would take some time for them to review the affirmation
    and issue the citation.

14. When they did finally review that initial affirmation, I was advised by a different clerk of
    the Surrogate's Court that a second affirmation needed to be submitted making a further
    change to the caption.

15. I submitted that second affirmation with the further change, as required by the Clerk.

16. Upon receipt and approval of the second affirmation with the further change to the caption, in December of 2017, the Surrogate's Court issued the citation for this proceeding.

17. Immediately thereafter, I arranged to serve the respondents in this proceeding. I note that the address at which the "Trump Group" (as denoted in their own brief in this action) were served is the one identified by Mark Hirsch, their general counsel, as shown in the attached email.

18. I did so, inter alia, by delivery of the citation to Orly's counsel (who had appeared in the Removal Action under the same file number) and by delivery to some of the respondents at their business address.

19. When Orly's counsel objected to the service upon them, in an abundance of caution, I had the process server mail the citation to Orly at her address in Texas. Upon information and belief, that address was one in which Orly had claimed a homestead exemption, owns a home, has a driver's license and votes (in an action in Federal Court, Orly has attempted to evade service claiming that she lives in Israel notwithstanding her definitive contacts in Texas). Copies of documentary information confirming that Texas address is attached hereto.

20. Such service was made at a time immediately before the return date of the citation so that affidavit has not been filed with the Court.

21. On February 5, 2018, respondents Orly and TR, respectively, moved to dismiss the Turnover Proceeding on the grounds, inter alia, of delay and deficiencies in service, and other relief.

22. Dalia therefore opposes these motions and, as necessary, cross-moves for (i) an extension of time to serve process and permission to serve substituted service (or nunc pro tunc) and file the affidavit of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and the issuance of a supplemental citation for that Guardian ad litem, and (iii) to consolidate this turnover proceeding with the Removal Proceeding with this Turnover Proceeding.

WHEREFORE, I respectfully request that the respondent's motions to dismiss be denied and the cross-motion be granted and that the Petitioner have such other and further relief as is just and warranted.

Dated: February 20, 2018
New City, New York

_____
Judith Bachman

## Dellaportas, John

| | |
|---|---|
| **From:** | Mark Hirsch <mhirsch@trumpgroup.com> |
| **Sent:** | Friday, November 18, 2016 10:53 AM |
| **To:** | Dellaportas, John |
| **Subject:** | RE: My apologies running late |

11 will work.  See you soon.

Mark S. Hirsch
Partner and General Counsel
The Trump Group
400 Park Ave. I  19th Floor I New York, NY 10022
(o) 212-838-1000 or 212-340-6767 I (c) 917-821-3000
mhirsch@trumpgroup.com



# Travis CAD

## Property Search > 798599 HERSCHMANN ERIC & ORLY GENGER for Year 2018

Tax Year:  2018 - Values not available

## Property

### Account

| | | |
|---|---|---|
| Property ID: | 798599 | Legal Description: UNT 1903 BLOCK 21 CONDOMINIUMS AMENDED PLUS .3294 % INT IN COM AREA |
| Geographic ID: | 0205011425 | Zoning: |
| Type: | Real | Agent Code: ID:2490 |
| Property Use Code: | | |
| Property Use Description: | | |

### Location

| | | |
|---|---|---|
| Address: | 210 LAVACA ST 1903 TX 78701 | Mapsco: |
| Neighborhood: | BLOCK 21(THE W) DOWNTOWN HIGHRISE CONDOS | Map ID: 020201 |
| Neighborhood CD: | Z1W99C | |

### Owner

| | | |
|---|---|---|
| Name: | HERSCHMANN ERIC & ORLY GENGER | Owner ID: 1703720 |
| Mailing Address: | 210 LAVACA ST #1903 AUSTIN , TX 78701-4582 | % Ownership: 100.0000000000% |
| | | Exemptions: HS |

## Values

| | | |
|---|---|---|
| (+) Improvement Homesite Value: | + | N/A |
| (+) Improvement Non-Homesite Value: | + | N/A |
| (+) Land Homesite Value: | + | N/A |
| (+) Land Non-Homesite Value: | + | N/A   Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | N/A                    N/A |
| (+) Timber Market Valuation: | + | N/A                    N/A |
| | | -------------------- |
| (=) Market Value: | = | N/A |
| (−) Ag or Timber Use Value Reduction: | − | N/A |
| | | -------------------- |
| (=) Appraised Value: | = | N/A |
| (−) HS Cap: | − | N/A |
| | | -------------------- |
| (=) Assessed Value: | = | N/A |

## Taxing Jurisdiction

Owner:       HERSCHMANN ERIC & ORLY GENGER
% Ownership:  100.0000000000%
Total Value:  N/A

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 01 | AUSTIN ISD | N/A | N/A | N/A | N/A |
| 02 | CITY OF AUSTIN | N/A | N/A | N/A | N/A |
| 03 | TRAVIS COUNTY | N/A | N/A | N/A | N/A |

| 0A | TRAVIS CENTRAL APP DIST | N/A | N/A | N/A | N/A |
| 2C | DOWNTOWN PUB IMP DIST | N/A | N/A | N/A | N/A |
| 2J | TRAVIS COUNTY HEALTHCARE DISTRICT | N/A | N/A | N/A | N/A |
| 68 | AUSTIN COMM COLL DIST | N/A | N/A | N/A | N/A |
| | Total Tax Rate: | N/A | | | |
| | | | Taxes w/Current Exemptions: | | N/A |
| | | | Taxes w/o Exemptions: | | N/A |

## Improvement / Building

**Improvement #1:** HIRISE CONDO/APT  **State Code:** A4  **Living Area:** 3180.0 sqft  **Value:** N/A

| Type | Description | Class CD | Exterior Wall | Year Built | SQFT |
|------|-------------|----------|---------------|------------|------|
| 1ST | 1st Floor | A - 6 | | 2011 | 3180.0 |
| 399 | DETAIL CONDO FV | * - 6 | | 2011 | 0.0 |

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|------|-------------|-------|------|-----------|-----------|--------------|-------------|
| 1 | LAND | Land | 0.0058 | 252.11 | 0.00 | 0.00 | N/A | N/A |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|------|--------------|-------------|--------------|-----------|--------|----------|
| 2018 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2017 | $2,122,166 | $66,973 | 0 | 2,189,139 | $34,238 | $2,154,901 |
| 2016 | $2,091,763 | $58,237 | 0 | 2,150,000 | $190,999 | $1,959,001 |
| 2015 | $1,895,177 | $56,725 | 0 | 1,951,902 | $170,992 | $1,780,910 |
| 2014 | $1,639,479 | $56,725 | 0 | 1,696,204 | $77,195 | $1,619,009 |
| 2013 | $1,415,101 | $56,725 | 0 | 1,471,826 | $0 | $1,471,826 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|-----------|------|-------------|---------|---------|--------|------|-------------|
| 1 | 10/27/2016 | WD | WARRANTY DEED | HERSCHMANN ERIC | HERSCHMANN ERIC & ORLY GENGER | | | 2016187344 |
| 2 | 3/15/2012 | WD | WARRANTY DEED | RUCKS SHAWN D & ANGELA C | HERSCHMANN ERIC | | | 2012042123TR |
| 3 | 2/11/2011 | WD | WARRANTY DEED | CJUF II STRATUS BLOCK 21 LLC | RUCKS SHAWN D & ANGELA C | | | 2011022350TR |

### Questions Please Call (512) 834-9317

This site requires cookies to be enabled in your browser settings.

### This year is not certified and ALL values will be represented with "N/A".

**1: Texas Voter Registration**

**Registrant Information**

**Name:** GENGER, ORLY

**Residential Address:** 210 LAVACA ST APT 1903
AUSTIN, TX 78701-4582
TRAVIS COUNTY
**SSN:** 130-74-XXXX
**Date of Birth:** 1/1979
**Gender:** Female

**Voter Information**

**Registration Date:** 11/24/2016
**Active Status:** ACTIVE

**1: Texas Driver License**

**Driver Information**

Name: GENGER, ORLY

Address: 210 LAVACA ST #1903
AUSTIN, TX 78701-4582
TRAVIS COUNTY

Data source: Governmental: TX

**Personal Information**

SSN: 130-74-XXXX

DOB: 01/1979

**License Information**

Issue Date: 11/03/2016

**Additional Driver Information**

DOB: 01/1979

History: Current

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

                        Petitioner,

        -against-                                    File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,          Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,
                        Respondents.

---------------------------------------------------------------------------

MEMORANDUM OF LAW IN OPPOSITION
TO RESPONDENTS' MOTIONS TO DISMISS
AND IN SUPPORT OF PETITIONER'S
CROSS-MOTION

Judith Bachman, Esq.
The Bachman Law Firm
Attorney for Petitioner
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Table of Contents

Table of Authorities                                                                                          ii

Preliminary Statement                                                                                       1

Background Facts and Procedural History                                                          1

     Argument

         Point I    Court Delay in Issuing Citation
                    does not Require Dismissal of Proceeding
                    for Late Service or Statute of Limitations Issues    9

         Point II   Service of a Copy of the Petition
                    is Not Required    12

         Point III  Service was Proper and if it Was Not
                    an Extension of Time Should be Granted    13

         Point IV  There is No Duplicative Prior Action Pending
                    Because there are Different Parties and Different Claims    14

         Point V   Doctrines of Res Judicata/Collateral Estoppel
                    Do Not Bar Turnover Proceeding
                    Because No Court Has Ever Ruled on
                    the Disposition of the Settlement Proceeds    17

         Point VI  The Claims in the Turnover Proceeding
                    Are Pled Sufficiently

                    A.  Breach of Fiduciary Duty    21

                    B.  Claims of Tortious Interference Are Well Pled    26

                    C.  Claims of Money Had and Received are Well Pled    27

         Point VII  Petitioner's Cross-motion for
                    the Appointment of a Guardian Ad Litem and a
                    Supplemental Citation    27

         Point VIII Sanctions against Petitioner and/or Petitioner's Counsel
                    are Unwarranted and Improper    28

Conclusion                                                                                                     29

Table of Authorities

Brown v. Ingersoll, 226 N.Y.S.2d 479 (Sup. Ct. Monroe Cnty. 1962)                          10

Burke v. Nationwide Ins. Co., 108 A.D.2d 1098, 485 N.Y.S.2d 666 (3d Dep't 1985)            11

Chinatown Apartments, Inc. v. New York City Transit Authority,
100 A.D.2d 824 (3rd Dep't 1984)                                                            16

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)                              21, 23

Clarke v. Greenberg, 296 N.Y. 146 , 71 N.E.2d 443 (1947)                                18, 21

DDJ Management LLC v. Rhone Group LLC,
78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010)                                             25

Gusinsky v. Bailey,
21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. Cnty. 2008),
rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008)                   21

Hess v. Hess, 233 N.Y. 164 (1922)                                                          27

In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893)                      10

In re DeRidder's Will, 183 A.D.657, 170 N.Y.S. 756 (1918)                                   9

In re Estate of Lange, 72 Misc. 437, 16 N.Y.S. 312 (Surr. Ct. N.Y. 1939)                   10

In re Estate of Van Vleck, 32 Misc. 419, 66 N.Y.S. 727 (Surr. Ct. N.Y 1900)                10

In re Gouraud, 95 N.Y. 256, 261 (1884)                                                     10

In re Hoerter, 15 Misc.3d 1101(A) (Sup. Ct. Nassau County 2007)                            22

In re Nyenhuis, 225 A.D.2d 395 (1st  Dep't 1996)                                           22

In re Peter's Will, 20 Misc. 2d 1082, 195 N.Y.S.2d 325 (Surr. Ct. 1959)                     11

In re Phalen's Will, 4 N.Y.S. 408 (Sup. Ct. N.Y. Gen. Term 1st Dep't 1889)               10

Island Properties, LLC v. Calabretta,
Index No. 2011-33520 (Sup. Ct. Nassau Cnty. Dec. 14, 2011)                                 16

James ex rel. National Arts Club v. Bernhard,
34 Misc.3d 1242(A), 950 N.Y.S.2d 608 (Sup. Ct. N.Y. Cnty. 2012)                            16

Kronish Live Weiner & Hellman LLP v. Tahair, Ltd.,
35 A.D.3d 317, 829 N.Y.S.2d 7 (1st Dep't 2006)                                           26

<u>Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc.</u>,
49 Misc.3d 1207(A), 26 N.Y.S.3d 725 (Sup. Ct. Nassau Cnty. 2015)                    26

<u>Mideal Homes Corp. v. L & C Concrete Work, Inc.</u>, 90 A.D.2d 789 (2d Dep't 1982)    16

<u>Monaghan v. Ford Motor Co.</u>, 71 A.D.3d 848, 897 N.Y.S.2d 482 (2d Dep't 2010)       25

<u>Mokhiber v. Cohn</u>, 783 F.2d 26 (2d Cir. 1986)                                     17, 21

<u>Ovari v. Maultasch</u>, 17 Misc.2d 597, 182 N.Y.S.2d 871 (Sup. Ct. N.Y. 1959)         11

<u>Pludeman v. Northern Leasing Systems, Inc.</u>,
40 A.D.3d 366, 837 N.Y.S.2d 10 (1st Dep't 2007),
<u>aff'd</u>, 10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422  (2008)                    24

<u>Toulouse v. Chandler</u>,
5 Misc. 3d 1005(A), 798 N.Y.S.2d 714 (Sup. Ct. Westchester Cnty. 2004)               15

<u>Whitney v. Whitney</u>, 57 N.Y.2d 731 (1982)                                          16


Rules of Procedure

CPLR 306(b)                                                          passim

CPLR 2103(b)                                                        13

CPLR 3016(b)                                                        24

CPLR 3211(a)(4)                                                     14, 16

SCPA § 301(b)                                                       passim

SCPA §311                                                          27

SCPA §312                                                          27

SCPA §315                                                          27

 SCPA §402                                                         27

SCPA §403                                                          27

SCPA § 2106                                                        27

## Preliminary Statement

Petitioner Dalia Genger ("Dalia" or "Petitioner"), trustee of the Orly Genger 1993 Trust

("Orly Trust"), opposes the respondents' respective motions to dismiss Dalia's turnover

proceeding ("Turnover Proceeding") because Dalia must be allowed to protect the Orly Trust

and the proceeding is timely, the citation was properly served, and the claims are well pled.

To the extent necessary, Dalia also cross-moves for (i) an extension of time to serve

process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit

of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and unborn

children and the issuance of a supplemental citation, and (iii) to consolidate this turnover

proceeding with the removal proceeding also pending in this Court.

## Background Facts and Procedural History

On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to

a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees, Lawrence

M. Small and Sash A. Spencer (the "Trust Agreement"). Turnover Proceeding Petition ("P.") ¶6,

Ex. 1.

Orly Genger ("Orly") is the beneficiary of the Orly Trust. Id., Ex. 1. Her daughter, and

that of her attorney Eric Herschmann is also a beneficiary of the Orly Trust. Id. To complicate

matters further, Mr. Herschmann (Orly's husband, father of her child, and her attorney), is also

representing Arie in another one of the Genger family litigations; and presumably being paid to

do so, perhaps using the settlement proceeds, discussed below.

Dalia is the trustee of the Orly Trust. Dalia and Arie set up the Orly Trust as part of their

effort to safeguard assets for their daughter and their grand-children. Specifically, pursuant to

Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name

of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the

1

"Trust Agreement Obligations"). P. ¶ 7. This is in place to protect Orly and her children against

the reach of creditors and misguided financial choices. This is at the heart of every trust,

including the Orly Trust.

In July 2010, Orly instituted a derivative action in the Supreme Court, New York Cnty.

entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010, by which she brought

claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust

Derivative Litigation"). P. ¶ 9. The Complaint sought to assert claims for the Orly Trust's

ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later

amended her pleading to assert claims against, inter alia, the purchasers of those TRI shares,

Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR

Equity II, and TRI (collectively "TR"). P., Ex. 2.

As Orly declared in the second paragraph of her derivative complaint (P.2, Ex. 2), she

brought "this action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her

interests thereunder." (*Id.* at 1, emphases added.). Although Orly purported to also bring claims

in her "individual capacity," the only harm she identified in her Complaint is to the Orly Trust.

As she described her own "NATURE OF THE CASE" in her Complaint:

> In this case, Plaintiffs Arie and Orly, in her individual capacity and
> on behalf of the Orly Trust, are seeking declaratory, injunctive, and
> other equitable relief, as well as additional compensatory damages
> in an amount yet to be determined arising from, inter alia, the loss
> of Arie's voting control of TRI and the tortious conduct of the
> defendants as set forth herein, in connection with the Trump
> Parties' campaign to take over and dilute the value of plaintiffs'
> interests in TRI, a company founded by Arie nearly three decades
> ago, including the defendants' wrongful, concerted efforts to strip
> Arie of his ownership and control of 52.85% of the shares of TRI's
> common stock, including the Orly Trust's interest in a portion of
> this TRI stock, and to oust Arie from his management control of
> TRI—all in an audacious series of breaches of contractual,
> fiduciary and legal obligations giving rise to each of the causes of
> action alleged in this Complaint.

NYSCEF Doc. No. 112 at 4.

It is undisputed that Orly has never had a direct interest in TRI stock. Her only interest

was an indirect one as a beneficiary of the Orly Trust, which bought TRI shares in 2004 from

TPR Investment Associates, Inc. Accordingly, her claims in her Complaint were exclusively

derivative in nature. Logically then, on January 2, 2013, in the Orly Trust Derivative Litigation,

Justice Jaffe of the Supreme Court, New York Cnty. adopted Orly's position that she "has legal

standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until

the Surrogate's Court rules otherwise in an appropriate action there." P. ¶ 10.

Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain Dalia

from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust

before the Delaware Chancery Court, by which Dalia was seeking a declaration to obtain

ownership of the same TRI shares. P. ¶ 11. According to Orly: "[i]n the instant action ..., I seek,

among other things, the return of those [same] TRI Shares to the Orly Trust." Also, according to

Orly, Dalia's "contention that the Orly Trust is not a party to this action ... is meritless. Orly is

prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York Cnty.,

agreed, restraining Dalia from pursuing the action in the Delaware Chancery Court by which the

Orly Trust had sought the TRI shares. P., Ex. 4.

In June 2013, Orly disclosed that she had "entered into a confidential settlement

agreement to resolve all issues among the stipulating parties," ("TR Settlement") which included

the TR respondents. P. ¶ 14. However, the settlement terms were left undisclosed. Dalia sought

production of the settlement agreement, but Orly refused to produce it, claiming the document

was too "confidential." When it was proposed that the document be produced under "Attorney's

Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the

Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection. Notwithstanding

Orly's reluctance to produce the settlement agreement, it became clear, now as a In re collateral

3

estoppel, the Orly had settled both her direct claims and the derivative claims on behalf of the Orly Trust.

First, by letter dated June 28, 2013, counsel to TR wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claim against [TR], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what [TR] bargained and paid for in the settlement . . ." P. ¶ 15, Ex. 5. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. P. ¶ 16. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. P., Ex. 6.

Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with TR. P. ¶ 17, Ex. 7. The document revealed that Orly had settled her claims against TR both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims. P. ¶ 17. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

In exchange, TR agreed to pay $32.3 million ("Settlement Proceeds") to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). P. ¶ 18. Upon information and belief, the Brosers are creditors of Orly personally or her father, to whom Orly and Arie owe many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

4

On May 15, 2014, U.S. District Judge Keenan held that: "Pursuant to [the TR] [S]ettlement, Orly acknowledged that [TR] is the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding ownership of the Orly Trust Shares is over." P., Ex. 8. And moreover, "Orly monetized her beneficial interest in the Orly Trust['s] [TRJ] shares for $32.3 million ...." Id.

TR has since reaffirmed that the federal court construed the TR Settlement correctly: [Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against [TR], but not resolve the Orly Trust's claims against [TR] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, [TR], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance. P. ¶ 19.

And in this Turnover Proceeding, TR has reaffirmed that the TR Settlement was as claims "brought by Orly, both individually and as beneficiary of the Trust." TR Brief, p. 5. And that the TR Settlement was made "in reliance upon the prior determination of the court that Orly, as beneficiary, was authorized to act on behalf of the Trust, that the TR Entities, Orly (both individually and as beneficiary of the Trust), and other parties entered in the Settlement Agreement and into the NY Dismissal with Prejudice." TR Brief, p. 6.

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the TR Settlement, Orly settled and released all of her claims in the TR Settlement in both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.") P. ¶ 18.

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's

action on behalf of the Orly Trust. To that end, Orly's attorneys issued an August 2013 directive

to Dalia that Dalia should dismiss the Orly Trust's declaratory judgment action in Delaware

Chancery Court, which Dalia had commenced seeking a judgment that the Orly Trust is the

beneficial owner of the TRI shares. See <u>Dalia Genger v. TR Investors, LLC, et al.</u>, C.A. No.

6906-CS (Del. Ch.). Orly's attorneys advised the Delaware Chancery Court that Orly was

"acknowledg[ing] individually and in her capacity as the beneficiary of her trust that [TR] are the

record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." In

other words, by virtue of her TR Settlement, Orly had mooted the Chancery Court proceeding.

The case was dismissed. P. ¶ 20.

And most tellingly, under Section 8(b) of her settlement agreement, Orly agreed as a

condition to any agreement by the AG Group to a replacement trustee for the Orly Trust to "use

[her] best efforts to cause [any replacement] trustee to agree in writing on behalf of

the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing

the indemnity contained in Paragraph 5." P., Ex. 7.

At a hearing before Justice Jaffe on March 25, 2015, counsel to TR confirmed that $17.3

million of the Settlement Proceeds has already been paid, but that $15 million remains to be paid,

less possible "set-offs" and subject to possible acceleration or extension of those payment dates.

P. ¶ 22, Ex. 9, pp. 10-11.

None of the aforementioned Settlement Proceeds has been remitted to the Orly Trust, nor

will any of the proceeds be in the future, per Section 8(b) of her settlement agreement. P., Ex. 7.

Orly has testified that she has not personally received any of the Settlement Proceeds. P. ¶ 23..

This means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG

Group," i.e., the Brosers and Arie (the "Initial Payment"). P. ¶ 23.

This is exactly contrary to language and purposes of the Orly Trust, to protect her and her

6

children from creditors and misguided financial decisions. Consistent with her fiduciary duty to the Orly Trust and the express terms of the Orly Trust and for the benefit of her daughter and other unborn children, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust. P. ¶ 24.

However, Orly failed to comply with these duties and obligations. Orly breached her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations. In order to protect the Orly Trust, Orly, and, by extension, her granddaughter, Dalia moved in the Supreme Court, New York Cnty., for an order permitting her to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. P. ¶ 26. Orly vigorously opposed Dalia's motion, on the ground, inter alia, that she is seeking to remove Dalia as Trustee of the Orly Trust. By Interim Order dated May 7, 2015, Justice Jaffe held it in abeyance pending this Court's determination of Orly's petition to remove Dalia. P. ¶ 27, Ex. 10.

The Appellate Division in reviewing Dalia's motion to substitute and continue to prosecute the Orly Trust claims determined that the Orly Trust claims had already been discontinued by Justice Jaffe. P. ¶16. With the discontinuance of those derivative claims by the Orly Trust, the turnover of the Settlement Proceeds from those derivative claims is necessary and appropriate.

On the heels of that determination, on June 14, 2016, Dalia filed this petition for turnover of the Settlement Proceeds. Affirmation of Judith Bachman ("Bachman Aff."), dated February 19, 2018, ¶ 3. This Turnover Proceeding seeks recovery against Orly, Arie, the TR respondents, and the Brosers for their actions and conflicting claims to the Settlement Proceeds.

On June 17, 2016, Dalia's counsel sent a courtesy copy of the Petition to the attorneys for all of the parties named and inquired if they would accept service. Bachman Aff. , ¶ 5. They refused to accept service. Bachman Aff. , ¶ 6. Dalia's counsel then worked with the Surrogate's

7

Court to have the citation issued in this matter, including repeated phone calls, visits to the

Clerk's office, emails, written correspondence, and affirmations. Bachman Aff. , ¶¶ 7-16.   The

file number of the Turnover Proceeding is 2008-0017/E.

While the Respondents knew this Petition was pending, Orly filed a petition to remove

Dalia as trustee of the Orly Trust ("Removal Action").   Orly is doing so to satisfy her father's

creditors and as she promised in the TR Settlement to "use [her] best efforts to cause [any

replacement] trustee to agree in writing on behalf of the [Orly Trust] that it shall be a member of

the AG Group for purposes of providing the indemnity contained in Paragraph 5."  The Removal

is filed under file number 2008-0017.

After a series of delays in the Surrogate's Court, the clerk finally issued the citation in

this Turnover Proceeding.  Bachman Aff. , ¶ 16.   Immediately thereafter, Dalia's counsel

arranged to serve the respondents in this Turnover Proceeding.  Bachman Aff. , ¶ 17.   Dalia's

counsel did so, inter alia, by delivery of the citation to Orly's counsel (who had appeared in the

Removal Action under the same file number) and by delivery to TR at their business address.

Bachman Aff. , ¶ 18.

When Orly's counsel objected to the service upon them, in an abundance of caution,

Dalia's counsel mailed the citation to Orly at her address in Texas.  Bachman Aff. , ¶ 19.   That

address was one in which Orly had claimed a homestead exemption, owns a home, has a driver's

license and votes.[1]  Bachman Aff. , ¶ 19.   Such service was made at a time immediately before

the return date of the citation so that affidavit has not been filed with the Court.  Bachman Aff. ,

¶ 20.

---

[1] In an action in Federal Court, Orly has attempted to evade service claiming that she lives in
Israel notwithstanding her definitive contacts in Texas.  Bachman Aff. , ¶ 19.

On February 5, 2018, respondents Orly and TR, respectively, moved to dismiss the Turnover Proceeding on the grounds, <u>inter alia</u>, of delay and deficiencies in service, and other relief.

These motions are a smokescreen to block Dalia's efforts to ensure that the Settlement Proceeds go to their rightful place - - the Orly Trust.

Dalia therefore opposes these motions and, as necessary, cross-moves for (i) an extension of time to serve process and permission to serve substituted service (or nunc pro tunc) and file the affidavit of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and the issuance of a supplemental citation for that Guardian ad litem, and (iii) to consolidate this turnover proceeding with the Removal Proceeding with this Turnover Proceeding.

Argument

Point I

Court Delay in Issuing Citation<br>does not Require Dismissal of Proceeding<br>for Late Service or Statute of Limitations Issues

The movants argue that the Turnover Proceeding should be dismissed because of a delay in serving the citation and a statute of limitations question.

What the movants conveniently ignore is that where, as here, the delay in serving the citation stems from the Court's own delay in *issuing* the citation, dismissal is not warranted.

That it took a significant period of time for the Clerk to issue the citation should not, and indeed cannot, result in the dismissal of the Turnover Proceeding. "The right to bring a legal action is never made dependent upon the will of a judicial officer." <u>In re DeRidder's Will</u>, 183 A.D.657, 658, 170 N.Y.S. 756, 766 (1918).

Indeed, how could the Petitioner's time to serve the citation run when she did not have the citation from the Court to serve? Obviously, this cannot be correct.

9

The triggering event requiring service of the citation is, and must be, the actual *__issuance__* of the citation, and not the filing of the Petition.

"It is claimed that the citation must be served within [120] days after the presentation of the petition. We do not so understand the provision. It must, however, be served within [120] days after the citation is issued by the court." In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893)

"[W]hen these allegations have been filed, then certainly the contest has been instituted. It then becomes the duty of the surrogate ... to issue the citations and to appoint a time for the hearing." In re Gouraud, 95 N.Y. 256, 261 (1884) (petition filed timely, citation issued late but court had jurisdiction and proceeding was regular).

And while the service obligation is not triggered until the citation is issued, the statute of limitations on the claims stops when a petition is filed. Courts have consistently held that a proceeding is "duly commenced before the expiration of three years by the filing of the petition," the failure to serve the citation "does not render the proceeding null." In re Estate of Van Vleck, 32 Misc. 419, 66 N.Y.S. 727 (Surr. Ct. N.Y 1900) *citing* In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893). See also In re Estate of Lange, 72 Misc. 437, 16 N.Y.S. 312 (Surr. Ct. N.Y. 1939). See also In re Phalen's Will, 4 N.Y.S. 408 (Sup. Ct. N.Y. Gen. Term 1st Dep't 1889) ("There is nothing whatever in the section [Code §§2648-9] in reference to the necessity of the service of a citation in order to prevent the statute of limitations attaching. All that is required is that the petition shall be presented within a year."); Id., ("By the filing of the petition the surrogate had acquired jurisdiction of the proceeding .... [B]y the presentation of the petition in question the statute was prevented from running.")

While these timing doctrines were established under the provisions of the preceding Code of Civil Procedure, their compelling logic remains as applicable today.   Cf. Brown v. Ingersoll, 226 N.Y.S.2d 479 (Sup. Ct. Monroe Cnty. 1962) (delay in rejection of a claim by a temporary

administrator does not result in running of statute of limitations against creditor); In re Peter's Will, 20 Misc. 2d 1082, 195 N.Y.S.2d 325 (Surr. Ct. 1959) (timing of asserting right of election should not be affected by delay in probate of will).

For instance in Burke v. Nationwide Ins. Co., 108 A.D.2d 1098, 485 N.Y.S.2d 666 (3d Dep't 1985) the court held that a delay in issuance of letters of administration did not warrant dismissal of administrator's claims against an insurer that knew of claim even though limitations period ran during delay in issuance.

Likewise in Ovari v. Maultasch, 17 Misc.2d 597, 182 N.Y.S.2d 871 (Sup. Ct. N.Y. 1959) the court held that "It was not the intent of the Legislature to hold that a creditor forfeited his right to bring an action for a claim by a delay of three months …when he could only sue by the permission of the surrogate, and any delay of the surrogate … would place the time beyond three-months period which would defeat his right of action."

Because the triggering event requiring service of the citation is, and must be, the actual *issuance* of the citation, and not the filing of the Petition and Petitioner made such service within 120 days of the issuance of the citation, this Turnover Proceeding should not be dismissed.

Additionally, the Turnover Proceeding should not be dismissed where, as here, there is good cause shown or in the interest of justice. CPLR 306(b).

This is particularly true since: (1) the delay in service was attributable to the delay in the issuance of the citation, (2) the Respondents have pointed out no prejudice to themselves from the delay, (3) they were aware of the Turnover Proceeding upon its filing and had received a courtesy copy of the petition, and (4) they had refused to accept service of the petition.

By contrast, Petitioner would be prejudiced by the dismissal because she would have to go through the time and expenses of instituting another proceeding.  SPCA §301(b); see Point III, infra.

11

To the extent that this Court deems Petitioner might have sought an extension of time beyond the 120 day period to make service of the citation when the citation had not yet been issued, the Petitioner asks that such extension be granted *nunc pro tunc.* CPLR 306(b).

And while the obligation to serve the citation was not triggered until the citation was issued, the statute of limitations stopped running when Dalia filed the Petition in June of 2016. For that purpose, the Turnover Proceeding is timely and is not barred by the statute of limitations[2].

Point II

Service of a Copy of the Petition<br>is Not Required

Orly disingenuously claims that it is the petition that must be served and not the citation - - she says that CPLR 306(b) requires that "a notice of petition and petition shall be served with 120 days." Orly Brief., p.12. Orly complained that the citation she received did not have the petition attached and was therefore "useless." Orly Brief., p.13.

Yet there is _no_ requirement that a petition be served at all, either before the issuance of the citation or with it; although there is pending a proposed bill to change that to add such requirement. *See* Bill No. A05414 (2018).

The proposed law reads:

            AN  ACT  to  amend  the  surrogate's court procedure
act, in relation to service of a citation
            **The People of the State of New York, represented in**
**Senate  and  Assembly,  do enact as follows:**
     Section  1.  Section  306  of  the  surrogate's court
procedure act is amended by adding a new subdivision 5 to read
as follows:
     **5. A copy of the petition, affidavits, affirmations and**
**exhibits thereto upon which process was issued, shall be served**
**with the citation  or other process to obtain jurisdiction of a**

---

[2] Moreover, the statute of limitations has not run because $15 million of the Settlement Proceeds has not yet been paid. See, Point VIc, infra.

12

**party, except where service is by publication, and except in a proceeding for a voluntary accounting.**

This *unenacted* proposal is aimed at parties unlike Orly who admits that she received the courtesy copy of the petition upon its filing and refused to accept service. And to date, again, there is *no* requirement that a petition be served at all.

Orly's convenient misleading quoting of CPLR 306(b) and its reference to a "notice of petition and petition" clearly do not apply to Surrogate's Court's petitions - - otherwise the proposed amendment contained in Bill No. A05414 (2018) would be wholly unnecessary. In fact, there is *no* "notice of petition" in Surrogate's Court and instead the provision clearly is meant to apply to Article 78 proceedings which are commenced by "notice of petition and petition."

Because there is *no* requirement that a petition be served at all, either before the issuance of the citation or with it, the Court must deny the Respondents' motion to dismiss on these grounds.

Point III

Service was Proper
and if it Was Not
an Extension of Time
Should be Granted

Upon the issuance of the citation by this Court, Petitioner duly made service upon the Respondents.

Petitioner first made service upon Orly by delivery of the citation to her attorneys. Orly is a party to the pending Removal Action – both actions share a file number  - and she sought affirmative relief in this Court, and Orly's counsel had appeared both in the Removal Action and upon the return date of the citation in this Turnover Proceeding. Accordingly, service upon Orly's counsel was proper. CPLR 2103(b).

13

Since Orly's counsel claimed that such service upon them this was insufficient, and in an abundance of caution, Dalia's counsel mailed the citation to Orly in Texas, where Orly has claimed a homestead exemption, holds a driver's license, bank account, owns a home and is registered to vote.  Such service was made immediately before the return date of the citation and the clerk instructed counsel to request leave of the Court to file the affidavit.  Accordingly, Petitioner cross moves for leave to file such affidavit of service and deem such service sufficient.

The TR Respondents likewise argue that they were not served properly[3].  Yet they too appeared in this action on the return date of the citation.

Should this Court hold that service on any Respondents was insufficient, Petitioner respectfully cross-moves this Court for an extension of time to re-serve the citation upon them. CPLR 306(b).  In such instance, Petitioner further cross-moves this Court for permission to effect substitute service upon Orly via her counsel of record on the grounds that Orly is represented by such counsel in the Removal Action and she has sought affirmative relief in this Court and Orly is otherwise seeking to avoid service of process.

In the alternative, if this Turnover Proceeding is dismissed for failure to effect proper service, Petitioner will proceed under SPCA §301(b) and commence a new turnover proceeding within 120 days of such dismissal and such newly commenced proceeding will be unaffected by any considerations of the statute of limitations. SPCA §301(b).

Point IV

There is No Duplicative Prior Action Pending
Because there are Different Parties and Different Claims

Respondent Orly alleged that this proceeding ought to be dismissed, pursuant to CPLR 3211(a)(4), as duplicative of Dalia's cross-petition in the Removal Action. Orly simultaneously seeks to dismiss Dalia's cross-petition in the Removal Action. Orly Brief., p.12 ("[T]he New

---

[3] The address at which the "Trump Group" (as denoted in their own brief in this action) were served is the one identified by Mark Hirsch, their general counsel.  Bachman Aff. ¶ 17.

Action is duplicative of the counter-petition and should be dismissed in favor of the counter-petition, which is further along in litigation.")

This "prior action/duplicative" argument is as disingenuous as it is baseless.

First the Removal Action was not *prior* to this Turnover Proceeding - - it was subsequent to it. The Turnover Proceeding was filed in June of 2016, months prior to the Removal Action. The Respondents were aware of the Turnover Proceeding by virtue of their receipt of a courtesy copy of the petition in June of 2016. They filed the Removal Action well after the Turnover Proceeding and did so knowingly.

Orly's deliberate gamesmanship as to the timing of the Removal Action cannot be used to justify the dismissal of the Turnover Proceeding.

> This is not a situation in which parties have initiated lawsuits in different venues in an effort to obtain an advantage with regard to the forum selected. Here, both suits have been filed in the [Surrogate's Court, New York Cnty.], so the only possible purpose for [Orly's Removal Action] is that [Orly] seeks to gain some advantage by being a [petitioner] rather than being relegated to a [respondent]. However, the Court will not reward [respondent] for [her] actions by dismissing [Petitioner's] action, especially in a situation such as this one where both actions are pending in the same Court and at an appropriate time, this Court may order either a joint trial of these actions or that the actions be consolidated for purposes of trial.

Toulouse v. Chandler, 5 Misc. 3d 1005(A), 798 N.Y.S.2d 714 (Sup. Ct. Westchester Cnty. 2004).

Second the Removal Action involves only Orly and Petitioner as parties, whereas this Turnover Proceeding names eight (8) additional parties – individuals and entities – as well as unknown individuals or entities – who are alleged to have an interest in Settlement Proceeds that is subject to turnover to the Orly Trust. The inclusion of eight (8) additional parties in the Turnover Proceeding, the claims against them and the legal issues as to their respective

obligations and defenses regarding the money, make a substantial difference sufficient to distinguish the two proceedings.

Where, as here, two different actions involve different parties and different claims, they cannot be dismissed. James ex rel. National Arts Club v. Bernhard, 34 Misc.3d 1242(A), 950 N.Y.S.2d 608 (Sup. Ct. N.Y. Cnty 2012) ("The fact that two actions share allegations is no ground for striking them from either case" where different parties and different claims existed in the two actions.); Island Properties, LLC v. Calabretta, Index No. 2011-33520 (Sup. Ct. Nassau Cnty. Dec. 14, 2011) (refusing to dismiss action on personal guaranty even when holdover proceeding pending in different court because additional parties and additional claims).

To extent that this Court determines that the two (2) proceedings – the Removal Action and the Turnover Proceeding - are sufficiently similar that dismissal of the turnover proceeding under CPLR 3211(a)(4) is warranted, Petitioner hereby respectfully cross-moves this Court to consolidate these two proceedings so as to join all necessary parties and to resolve common questions of law and fact fully and with finality. Whitney v. Whitney, 57 N.Y.2d 731 (1982) (broad discretion of court in considering whether to dismiss for prior action pending); see also Mideal Homes Corp. v. L & C Concrete Work, Inc., 90 A.D.2d 789 (2d Dep't 1982) (where another action is pending between the same parties for the same causes of action, judicial economy and interests of justice favor consolidation); Chinatown Apartments, Inc. v. New York City Transit Authority, 100 A.D.2d 824, 825 (3rd Dep't 1984) ("Consolidation is appropriate, as it will avoid unnecessary duplication of trials, save unnecessary costs and prevent the possibility of incongruous decisions based on the same facts..")

Point V

Doctrines of Res Judicata/Collateral Estoppel
Do Not Bar Turnover Proceeding
Because No Court Has Ever Ruled on
the Disposition of the Settlement Proceeds

Respondents each claim that the Turnover Proceeding is barred by res judicata and/or collateral estoppel.  Importantly, they each make such arguments but do so on ***conflicting*** grounds.

The TR Respondents claim that Petitioner is barred from seeking turnover of the Settlement Proceeds to the trust on the grounds that the settlement "finally and fully resolved" the issues of ownership of the shares "with Orly, both in her individual capacity and in her capacity as beneficiary of the Trust, on June 16, 2013." TR Brief, pp, 5, 6, 20.

But this misses the entire point of the Turnover Proceeding which is ***not*** seeking disposition of the shares; it is seeking the turnover of the Settlement Proceeds which were or are to be paid in exchange for the settlement of the claims to the Orly Trust shares.

It is this very fact that the settlement "finally and fully resolved" the issues of ownership of the shares "with Orly, both in her individual capacity and in her capacity as beneficiary of the Trust, on June 16, 2013" (TR Brief, pp. 5, 6, 20) that means that this Turnover Proceeding seeking the Settlement Proceeds must stand.

TR admits, as it has done repeatedly, and as confirmed by the TR Settlement documents and by the Federal Court, that Orly settled her claim with TR for the ownership of the shares on behalf of the Orly Trust.  It is that very fact that entitled the Orly Trust to the turnover of the Settlement Proceeds.

Orly as the derivative plaintiff on behalf of the Orly Trust is required to turnover and account for all Settlement Proceeds that she obtained on behalf of the Orly Trust. Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986).

17

"Those "fruits"--the moneys paid to counsel--must be accounted
for irrespective of      whether they went to the derivative plaintiffs
or to their lawyers. 'Defendant cannot evade        his fiduciary
responsibility to account to the corporation for all recovery
resulting from his derivative action by the mere device of
authorizing or permitting payment to his attorneys instead of
himself.'""

As the Court in <u>Clarke v. Greenberg</u>, 296 N.Y. 146 , 71 N.E.2d 443 (1947) (emphasis

added) opined:

The very nature of the derivative suit by a stockholder-plaintiff suing in the
corporation's behalf suggests the application of the fiduciary principle to the
proceeds realized from such litigation whether received by way of judgment, by
settlement with approval of the court, which presupposes stockholders' approval,
or by private settlement and discontinuance of the action at any stage of the
proceeding. Such action, we have held, belongs primarily to the corporation, the
real party in interest (*Teich v. Lawrence,* 291 N.Y. 245; *Koral v. Savory, Inc.,* 276
N.Y. 215; *Continental Securities Co. v. Belmont,* 206 N.Y. 7) and a judgment so
obtained, as well as the proceeds of a settlement with court approval, belongs to it
and not the individual stockholder plaintiffs (*Earl v. Brewer,* 248 A.D. 314,
affd. 273 N.Y. 669; *Gerith Realty Corp. v. Normandie National Securities
Corp.,* 266 N.Y. 525). . . . When, however, success crowns his effort, the amount
received is in behalf of and for the account of the corporation. This is so because
the action belongs primarily to it. The manner and method by which such success is
accomplished whether by way of judgment, settlement with court approval or
by stipulation of the parties, makes no substantial difference in the interest of the
corporation upon distribution of the proceeds. Requiring an accounting for
moneys received in a private settlement introduces no new element. It simply
amounts to a logical application of a fundamental principle inherent in the
representative relation. When one assumes to act for another, regardless of the
manner or method used in accomplishing a successful termination, he should
willingly account for his stewardship. The plaintiff-stockholder, in good
conscience, should not be allowed to retain the proceeds of a derivative suit
discontinued by stipulation, to his individual use, in opposition to the corporation,
any more than the proceeds of a judgment or a settlement with court approval.

These obligations of Orly and the TR Respondents as the payors of the Settlement

Proceedings compel the turnover of the Settlement Proceedings not the dismissal of claims for

them!

While the TR Respondents, the settlement documents themselves, and the Federal courts

are certain that the settlement was of the derivative claims of the Orly Trust, Orly conveniently

disagrees. Orly claims instead that the settlement had nothing to do with the derivative claims

and only involved her individual claims, and therefore the Settlement Proceeds were not owed to the Orly Trust. Orly Brief, p.10 ("That [settlement agreement] expressly notes that the claims related to Orly that are being settled are *only* claims brought by her in her personal capacity and *not* as a representative of the Orly Trust. ... [T]he settlement did not involve or relate to the trust at all."(emphasis in the original)."

Since respondents cannot even agree amongst themselves as to the import of the settlement agreement with respect to the Orly Trust, they cannot properly claim that Dalia is precluded, by *res judicata* and/or collateral estoppel, from bringing a turnover claim to this Court for resolution of this material issue of fact, i.e., whether the Settlement Proceeds – obtained via a derivative action on behalf of the Orly Trust – ought to be turned over to the Orly Trust. In other words, Dalia cannot be estopped from bringing a claim that - according to Orly - was **not** resolved by the settlement of the derivative action at all. For this reason, Orly's motion to dismiss based on documentary evidence must also fail as it hardly, let alone "definitively," disposes of Dalia's claim.

Orly also claims, and TR respondents parrot, that the Petitioner is precluded from seeking the Settlement Proceeds by prior decisions. Orly Brief, pp.13-14. TR Brief, pp.21-22.

Contrary to these transparent arguments, no court has ever ruled as to the proper disposition of the Settlement Proceeds.

In fact, Justice Jaffe of the Supreme Court explicitly "held in abeyance" *any* decision as to the disposition or turnover of the Settlement Proceeds pending a determination by this Court as to whether Petitioner should remain as trustee of the Orly Trust. P. ¶ 27, Ex. 10.

And the Appellate Division, First Department, made *no* holding as to the disposition of the Settlement Proceeds. It merely held that the derivative claims on behalf of the Orly Trust had been dismissed procedurally on Arie's request after he and Orly settled the claims. So while the

19

claims were dismissed because they were settled, the turnover of the Settlement Proceeds was not determined.

With regard to the Delaware case, Orly advised the Delaware Chancery Court that *she* favored dismissal of Dalia's action on behalf of the Orly Trust and directed Dalia, through her attorneys, to dismiss the Orly Trust's declaratory judgment action in Delaware which Dalia had commenced seeking a judgment the Orly Trust is the beneficial owner of the shares. See <u>Dalia Genger v. TR Investors, LLC, et al.</u>, C.A. No. 6906-CS (Del. Ch.). Orly's attorneys advised the Delaware Chancery Court that Orly was "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." In other words, by virtue of her TR settlement, Orly had mooted the Chancery Court proceeding. The case was dismissed, but it was Orly who insisted that it be disposed.

So while the TR Respondents, the settlement agreement, the federal courts, the Delaware Chancery court, and the First Department all agree that the settlement was made regarding the Orly Trust shares resulting in the dismissal of those claims, *no* court has yet ruled as to whom the proceeds of that settlement belong.

That decision has been left to this Court and must be decided as this Turnover Proceeding moves forward. Accordingly, since the fate of the Settlement Proceeds has not been decided, Petitioner is not precluded from on grounds of *res judicata* and/or collateral estoppel from seeking turnover of the Settlement Proceeds.

20

Point VI

The Claims in the Turnover Proceeding
Are Pled Sufficiently

A. Breach of Fiduciary Duty

The TR respondents claim that Orly owes no fiduciary duty to the Orly Trust because she

is a beneficiary. TR Brief, p.13.

Orly, however, is not a mere beneficiary; she chose to sue derivatively on behalf of the

Orly Trust and hence owed a fiduciary duty to the Orly Trust. Gusinsky v. Bailey, 21 Misc.3d

1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. Cnty. 2008) ("The plaintiff and plaintiff's

counsel in a derivative action have an obligation to the corporation and all its other

shareholders"), rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008).

> [A] stockholder who brings suit on a cause of action derived from the corporation
> assumes a position not technically as a trustee, perhaps, but one of a fiduciary
> character. He sues not for himself alone, but as representative of a class
> comprising all who are similarly situated. The interests of all in the redress of the
> wrongs are taken into his hands, dependent upon his diligence, wisdom and
> integrity. . . . He is a self-chosen representative and a volunteer champion.

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949) (emphasis added).

And as a fiduciary, derivative plaintiffs are required to turnover and account for all

proceeds obtained as such. Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986).

> "Those "fruits"--the moneys paid to counsel--must be accounted
> for irrespective of whether they went to the derivative plaintiffs or
> to their lawyers. 'Defendant cannot evade his fiduciary
> responsibility to account to the corporation for all recovery
> resulting from his derivative action by the mere device of
> authorizing or permitting payment to his attorneys instead of
> himself.'"" Id.

As the Court in Clarke v. Greenberg, 71 N.E.2d 443, 296 N.Y. 146 (1947) (emphasis

added) opined:

> The very nature of the derivative suit by a stockholder-plaintiff suing in the
> corporation's behalf suggests the application of the fiduciary principle to the

21

proceeds realized from such litigation whether received by way of judgment, by settlement with approval of the court, which presupposes stockholders' approval, or by private settlement and discontinuance of the action at any stage of the proceeding. Such action, we have held, belongs primarily to the corporation, the real party in interest (*Teich v. Lawrence*, 291 N.Y. 245; *Koral v. Savory, Inc.*, 276 N.Y. 215; *Continental Securities Co. v. Belmont*, 206 N.Y. 7) and a judgment so obtained, as well as the proceeds of a settlement with court approval, belongs to it and not the individual stockholder plaintiffs (*Earl v. Brewer*, 248 A.D. 314, affd. 273 N.Y. 669; *Gerith Realty Corp. v. Normandie National Securities Corp.*, 266 N.Y. 525). . . . When, however, success crowns his effort, the amount received is in behalf of and for the account of the corporation. This is so because the action belongs primarily to it. The manner and method by which such success is accomplished whether by way of judgment, settlement with court approval or by stipulation of the parties, makes no substantial difference in the interest of the corporation upon distribution of the proceeds. Requiring an accounting for moneys received in a private settlement introduces no new element. It simply amounts to a logical application of a fundamental principle inherent in the representative relation. When one assumes to act for another, regardless of the manner or method used in accomplishing a successful termination, he should willingly account for his stewardship. The plaintiff-stockholder, in good conscience, should not be allowed to retain the proceeds of a derivative suit discontinued by stipulation, to his individual use, in opposition to the corporation, any more than the proceeds of a judgment or a settlement with court approval.

These obligations of a derivative plaintiff to account for and turnover proceeds belonging to those on whose behalf she sues, are akin to the obligations of a fiduciary or third party to account for and turnover proceeds that belong to an estate or trust. See e.g., In re Hoerter, 15 Misc.3d 1101(A) (Sup. Ct. Nassau Cnty. 2007); In re Nyenhuis, 225 A.D.2d 395 (1st Dep't 1996).

Orly is, therefore, bound by fiduciary duty to the Orly Trust as a derivative plaintiff. These obligations are all the more serious now that Orly, and her attorney Eric Herschmann, have an infant daughter that stands to benefit from the Orly Trust[3].

Orly sought and obtained the right to bring the Orly Trust Derivative Litigation, as a derivative plaintiff - - the Court adopted Orly's position that she "has legal standing to represent

---

[3] Orly does not even acknowledge that the Orly Trust includes her daughter as beneficiary. Orly Brief, p.3 ("All of the claims in this new [turnover] action are premised on Dalia's claim that Orly, in her alleged capacity as *de facto* trustee for the Orly Trust, breached her fiduciary duties to the trust (i.e., to herself).")

22

the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there."

Orly '. . . [having brought suit] on a cause of action derived from the [Orly Trust] assumes a position not technically as a trustee, perhaps, but one of a fiduciary character. [She] sues not for [her]self alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into [her] hands, dependent upon [her] diligence, wisdom and integrity. . . . [She] is a self-chosen representative and a volunteer champion.' Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).

And because Orly owed a fiduciary duty to the Orly Trust she was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

Orly did not so do. Instead, she entered into the TR settlement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

As a derivative plaintiff, Orly proceeded to settle the Orly Trust Derivative Litigation: According to the federal court, which reviewed the document, "Orly acknowledged that [TR] is the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding ownership of the Orly Trust Shares is over." [TR] has since reaffirmed that the federal court construed the TR settlement correctly:

> [Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against [TR], but not resolve the Orly Trust's claims against [TR] . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be      maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, [TR], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

23

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the TR

settlement, Orly settled and released all of her claims in the Trump Group Entities Settlement in

both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.")

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same,

which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's

action on behalf of the Orly Trust.

And most tellingly, under Section 8(b) of her settlement agreement, Orly agreed to "use

[her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly

Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the

indemnity contained in Paragraph 5."

Orly's actions constitute a breach of fiduciary duty and breach of duty of loyalty and the

claims are adequately stated as they notify Orly, and other respondents, specifically which of her

actions violated her fiduciary duty to the Orly Trust.

Since Orly owed a fiduciary duty to the Orly Trust, Dalia's claim against TR of aiding

and abetting Orly's breach of duty are valid and ought to stand. Such claims were also

sufficiently pleaded with requisite specificity pursuant to CPLR3016(b). Simply because the

settlement agreement was silent as to how the settlement proceeds would be applied or

apportioned amongst the parties does not prove or "make clear the TR Entities lacked any

knowledge about whether Orly, in any capacity, would receive (or not receive) any Settlement

Proceeds," TR Brief, p.15; it simply means this information was deliberately omitted from the

document itself. The unsubstantiated claim by their attorneys that TR does not know what

happened is a nullity. Id., fn. 10.

"The purpose of CPLR§3016(b) is to inform a defendant with respect to the incidents

complained of." Pludeman v. Northern Leasing Systems, Inc., 40 A.D.3d 366, 837 N.Y.S.2d 10

(1st Dep't 2007), aff'd, 10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422 (2008). Dalia was

24

required to, and did, plead that TR was "aware of Orly's fiduciary duty to the Orly Trust," P., ¶ 34, that they "knowingly induced or participated" therein by specifically "taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the [TR] Settlement Agreement which failed to direct payment of the Settlement Proceeds of the Trust" and "by advising and inducing Orly" to enter such agreement and by "directing or authorizing payment of the Settlement Proceeds to parties other than the Orly Trust." Id., ¶ 35.

Such allegations were hardly conclusory and were surely sufficient to notify respondents which of their actions Dalia complained of, and to make a prima facie showing of Dalia's claim. Monaghan v. Ford Motor Co., 71 A.D.3d 848, 850, 897 N.Y.S.2d 482 (2d Dep't 2010), quoting Yuko Ito v. Suzuki, 57 A.D.3d 205, 20 (1st Dep't 2008). ("A cause of action [alleging the] aiding and abetting [of a] breach of fiduciary duty merely requires a *prima facie* showing of a fiduciary duty owed to plaintiff ... a breach of that duty, and defendant's substantial assistance ... in effecting the breach, together with resulting damages.'") See also DDJ Management LLC v. Rhone Group LLC, 78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010) ("[A]t this early stage of the litigation, plaintiffs are entitled to the most favorable inferences, including inferences arising from the positions and responsibilities of defendants.")

The "pleading requirements should not be narrowly construed and a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the pre-discovery stage, so long as such intent may be inferred from the surrounding circumstances." DDJ Management LLC v. Rhone Group LLC, 78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010).

Furthermore, since it is peculiarly within the knowledge of respondents as to which specific respondent did what, the TR respondents' claim that dismissal is required because Dalia did not specify their respective allegations is clearly baseless.

B. Claims of Tortious Interference Are Well Pled

Beyond a circular reference to their arguments against the aiding and abetting fiduciary duty

claim answered above in Point VIA, supra, TR asserts that the claims for tortious interference of

contract must be dismissed because Dalia has to allege that they "acted without justification and

their action must not have been incidental to a lawful purpose." TR Brief, p. 18.

It is black letter law, however, that to state a claim for tortious interference of contract "it is

not necessary to allege that defendant used improper means or that its conduct was for the sole

purpose of harming plaintiff (*see Carvel Corp. v Noonan,* 3 N.Y.3d 182, 189-190

[2004]; *Hoesten v Best,* 34 A.D.3d 143, 159 [2006]; *Krinos Foods, Inc. v Vintage Food Corp.,* 30

A.D.3d 332, 333 [2006])." Kronish Live Weiner & Hellman LLP v. Tahair, Ltd., 35 A.D.3d

317, 829 N.Y.S.2d 7 (1st Dep't 2006).

"[A] plaintiff need *not plead* that defendant's actions are not economically justified, rather

economic justification is a *defense* to a claim of tortious interference with contract (*see White*

*Plains Coat & Apron Co., Inc. v. Cintas Corp.,* 8 N.Y.3d 422, 867 N.E.2d 381, 835 N.Y.S.2d

530 [2007] [economic justification is a defense to a claim of tortious interference with

contractual relations])." Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc., 49

Misc.3d 1207(A), 26 N.Y.S.3d 725 (Sup. Ct. Nassau Cnty. 2015)

"[Dalia] was therefore not required to plead that [TR] lacked an economic justification for its

alleged actions (*see Fallon v. Wall Street Clearing Co.,* 182 A.D.2d 245, 250, 586 N.Y.S.2d

953 [1st Dep't 1992] [motion court improperly shifted burden to plaintiffs to plead and prove a

lack of justification])." Id.

Accordingly, the claim of tortious interference with contract against TR must be allowed to

stand.

C. Claims of Money Had and Received are Well Pled

TR seeks to dismiss the money had and received claim by arguing that it has not "retained" any of the Settlement Proceeds.

Yet TR expressly admits that it has "[t]he remaining $15 million in Settlement Proceeds" which have not yet been paid. Tr. Brief, p. 19 fn. 12. It this very portion of the Settlement Proceeds that Dalia seeks to recover from TR under this and other claims in the Turnover Proceeding. These Settlement Proceeds must be paid to the Orly Trust and the Turnover Proceeding is the only way to compel the parties to do so.

Point VII

Petitioner's Cross-motion for
the Appointment of a Guardian Ad Litem and a
Supplemental Citation

According to the terms of the Orly Trust, if Orly has an issue, such children are beneficiaries of the trust along with Orly. Orly has an infant daughter. Accordingly, her daughter (and any unborn children) is a beneficiary of the Orly Trust and, as such, is a necessary party to this proceeding. SCPA §315; Hess v. Hess, 233 N.Y. 164 (1922).

Dalia requests that this Court appoint a Guardian Ad Litem for Orly's daughter (and any unborn children) since she is a minor and also because her interests may conflict with Orly's position in ensuring that the Settlement Proceeds be paid to the Orly Trust. SCPA §§311, 402, 403, 2106. In fact, this Court has already appointed a Guardian Ad Litem for Orly's daughter in the Removal Action. If this Court grants Dalia's cross-motion to consolidate the Removal Action and this Turnover Proceeding then the already appointed Guardian Ad Litem could continue to serve.

It is within the province of this Court's discretion to issue supplemental process in order to ensure that any necessary parties are made party to this proceeding. SCPA §312.

27