may have against any of the Trump Group Released Parties or (iv) any other information or

documents that may have been made available to any member of the AG Group or their

respective counsel, accountants or advisors with respect to any of the Trump Group Released

Parties any of their respective businesses, assets, liabilities or operations, except as expressly set

forth in this Agreement. In addition to the foregoing, each member of the AG Group

acknowledges that his, her or its entry into this Agreement and the transactions contemplated

hereby is based solely on his, her or its respective assessment and valuation of all Claims that he,

she or it may have against any of the Trump Group Released Parties and the likelihood of

success of such Claims in a court of competent jurisdiction. Each member of the AG Group

acknowledges that the consideration to be received by the AG Group pursuant to this Agreement

constitutes full and fair consideration for the release of all Claims contemplated hereunder.

(e)     Each member of the Trump Group represents that he, she or it is knowledgeable,

sophisticated and experienced in business, financial and other matters relevant to his, her or its

entry into this Agreement and the transactions contemplated hereby, and has engaged advisors,

experienced in the matters contemplated by this Agreement. Each member of the Trump Group

has undertaken such investigation and has been provided with and has evaluated such documents

and information as he, she or it has deemed necessary to enable him, her or it to make an

informed decision with respect to the execution, delivery and performance of this Agreement and

the transactions contemplated hereby. Each member of the Trump Group is consummating the

transactions contemplated hereby without reliance upon any express or implied representations

or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or

imputed to any of the AG Group Released Parties, except as expressly set forth in this

21

Agreement, and no member of the Trump Group shall make any Claim with respect

thereto. Each member of the Trump Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

information that may have been furnished to him, her or it, and that no member of the Trump

Group shall have any Claim against any of the AG Group Released Parties with respect thereto,

including for Claims relating to the accuracy or completeness of the information that may have

been furnished to him her or it. Each member of the Trump Group acknowledges and

understands that each member of the AG Group Released Parties expressly disclaims any and all

liability that may be based on any of the documents and information that may have been

furnished to any member of the Trump Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the Trump

Group acknowledges that none of the AG Group Released Parties has made any representation or

warranty with respect to (i) any historical information, financial or otherwise, including without

limitation results of operations (or any component thereof), cash flows, or financial condition (or

any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or

projections or estimates of future revenues, future results of operations (or any component

thereof), future cash flows or future financial condition (or any component thereof) of Trans-

Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources

and/or any of its subsidiaries, (iii) any claims any member of the Trump Group may have against

any of the AG Group Released Parties or (iv) any other information or documents that may have

been made available to any member of the Trump Group or their respective counsel, accountants

or advisors with respect to any of the AG Group Released Parties any of their respective

22

businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In

addition to the foregoing, each member of the Trump Group acknowledges that his, her or its

entry into this Agreement and the transactions contemplated hereby is based solely on his, her or

its respective assessment and valuation of all Claims that he, she or it may have against any of

the AG Group Released Parties and the likelihood of success of such Claims in a court of

competent jurisdiction. Each member of the Trump Group acknowledges that the consideration

to be received by the Trump Group pursuant to this Agreement constitutes full and fair

consideration for the release of all claims contemplated hereunder.

13.     **Attorneys' Fees.** The Parties agree to be responsible for their own attorneys' fees and

costs incurred in connection with this Agreement and negotiations related to and preparation of

this Agreement and not to seek from each other reimbursement of any such costs, expenses or

attorneys' fees.

14.     **Governing Law.**

This Agreement, and all disputes arising under this Agreement or related thereto, shall be

governed by, construed and interpreted in accordance with the laws of the State of Delaware,

applicable to instruments made, delivered and performed entirely in such state, without regard to

the choice of law provisions thereof.

15.     **Arbitration.** UNLESS THIS AGREEMENT SPECIFICALLY PROVIDES FOR

ANOTHER TYPE OF DISPUTE RESOLUTION WITH RESPECT TO A PARTICULAR

KIND OF DISPUTE, ANY AND ALL CONTROVERSIES AND CLAIMS ARISING OUT OF

OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR

VALIDITY THEREOF, SHALL BE EXCLUSIVELY SETTLED BY FINAL AND BINDING

23

ARBITRATION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THIS
SECTION.

      (a)     The arbitration shall be conducted in accordance with the Commercial
Arbitration Rules of the American Arbitration Association ("AAA") then in effect (the "Rules"),
except as set forth herein.  Any member of the Trump Group on behalf of the Trump Group, on
the one hand, and any member of the AG Group on behalf of the AG Group, on the other hand,
may demand arbitration by giving the other written notice to such effect in accordance with the
Rules.

      (b)     The arbitration will be held before one neutral arbitrator.  Within thirty (30)
days after the other Party's receipt of the demand for arbitration, the Party seeking arbitration
will invite the other Party to join it in approaching the following list of individuals about serving
as arbitrator and will approach such individuals with such other Party (if its invitation is accepted)
or without such other Party (if its invitation is rejected or not responded to within five (5)
business days): The Honorable William B. Chandler III, David A. Jenkins, Esq., Stephen E.
Jenkins, Esq., Robert J. Katzenstein, Esq., and Andre G. Bouchard, Esq.  If only one such
individual is available and willing, he shall serve as the arbitrator.  If more than one such
individual is available and willing, the Parties will mutually determine which of those so
available and willing will serve as the arbitrator.  If the Parties are unable to agree, the arbitrator
will be selected by the AAA from the foregoing list in accordance with the listing, striking and
ranking procedure in the Rules, with each Party being given a limited number of strikes, except
for cause.  If none of the foregoing individuals is available, the arbitrator will be selected by the
AAA in accordance with the listing, striking and ranking procedure in the Rules, with each Party

being given a limited number of strikes, except for cause. Any arbitrator appointed by the AAA shall be a retired judge that presided over a state or federal court located in Delaware or a practicing attorney licensed in Delaware with no less than fifteen years of experience with large commercial cases. Any such arbitration proceedings shall be and remain confidential. The place of arbitration shall be in Manhattan, New York or elsewhere if otherwise agreed to.

(c)     Discovery will be limited to the request for and production of documents, directly related to the issues in dispute, limited depositions of limited duration, and interrogatories. Interrogatories will be allowed only as follows: a Party may request the other Party to identify by name, last known address and telephone number (i) all persons having knowledge of facts relevant to the dispute and a brief description of that person's knowledge, and (ii) any experts who may be called as an expert witness, the subject matter about which the expert is expected to testify, the mental impressions and opinions held by the expert and the facts known by the expert. All issues concerning discovery upon which the parties cannot agree will be submitted to the arbitrator for determination.

(d)     Each of the Parties agrees that it will use commercially reasonable efforts to join (and will allow the other party to join) any third party that the Parties have agreed is indispensable to the arbitration. If any such third party does not agree to be joined, the arbitration will proceed nonetheless.

(e)     The arbitrators are not empowered to award damages not permitted by the terms of this Agreement and if so permitted, then not in excess of compensatory damages, except with respect to indemnification obligations for punitive damages as provided hereunder, and

each Party irrevocably waives the right to recover punitive, exemplary or multiple damages with respect to any dispute other than with respect to indemnification obligations for such punitive damages as provided hereunder. The decision of, and award rendered by, the arbitrator will be final and binding on the Parties, will be in writing and will include the findings of fact and conclusions of law upon which it is based, if any.

(f)    The Parties specifically acknowledge that this Agreement evidences a transaction involving, affecting, affected by, and a part of, interstate commerce and that this agreement to arbitrate is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(g)    Except to the extent that any of the indemnification provisions contained herein shall be applicable (i) the Parties shall each be responsible for their own costs and expenses (including legal fees and disbursements) incurred in any arbitration, and (ii) the AG Group on the one hand and the Trump Group on the other shall each be responsible for 50% of the fees and disbursements of the arbitrator and of any costs and expenses payable to the AAA.

(h)    With respect to the enforcement, modification or vacating of any arbitration award (it being reconfirmed hereby that the arbitration award shall itself be final and binding on the Parties), the Parties submit to the exclusive jurisdiction of one or the other of (i) the United Stated District Court of the Southern District of New York sitting in the Borough of Manhattan in the City of New York and (ii) the Commercial Division of the New York State Supreme Court sitting in the Borough of Manhattan in the City of New York.

16.    **Notice.** If any Party is required to give notice to any other Party under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, one business day following its being sent to the recipient via Federal Express or another

26

716412-WILSR01A - MSW

nationally recognized over-night courier, or by e-mail with confirmation of receipt to the

following individuals or to such other address or person as such Parties may from time to time

specify by written notice given in the manner provided above:

**If to the Trump Group:**

> Mark S. Hirsch, Esq.
>
> The Trump Group
>
> 41 Madison Avenue, Suite 4101
>
> New York, NY 10010
>
> Phone: (212) 838-1000
>
> E-mail: mhirsch@trumpgroup.com

**With Copy to:**

> Thomas J. Allingham II, Esq.
>
> Anthony W. Clark, Esq.
>
> Douglas D. Herrmann, Esq.
>
> Skadden, Arps, Slate, Meagher & Flom LLP
>
> One Rodney Square
>
> P.O. Box 636
>
> Wilmington, DE 19899
>
> Phone: (302) 651-3000
>
> E-mail: thomas.allingham@skadden.com

27

E-mail: anthony.clark@skadden.com

E-mail: douglas.herrmann@skadden.com

**If to Arie Genger:**

Arie Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

Stephen P. Lamb, Esq.

Paul Weiss

500 Delaware Avenue, Suite 200

Wilmington, DE 19889

**If to Orly Genger:**

Orly Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

28

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017

[]

**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail:  wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017

29

17.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties concerning the subject matter hereof. Neither this Agreement nor any of its terms or provisions shall be binding on any Party until all the Parties hereto have signed. The Parties agree that all drafts of this Agreement are strictly confidential and shall supplement and complement any protection, which may attach to the exchange of confidential information in settlement discussions, whether by common law or statute including, but not limited to, Federal Rule of Evidence 408 and comparable state laws. Any and all prior discussions and agreements between the Parties concerning the subject matter of this Agreement are merged into this Agreement when signed. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by all Parties. No Party has made any warranty or representation to the other Parties that is not set forth expressly herein. In entering into this Agreement, no Party has relied on any statement or representation made by or on behalf of any other Party, by or on behalf of any affiliate of such other Party, or by counsel for such other Party that is not set forth expressly in this Agreement.

18.    **No Drafting Presumption.** This Agreement shall be interpreted or construed without any presumption that the provisions hereof should be strictly construed against the drafter, it being agreed that the Parties and their respective counsel and other agents have fully and equally participated in the preparation, negotiation, review and approval of all provisions of this Agreement.

19.    **No Admissions.** The Parties have executed this Agreement for the sole purpose of settling and disposing of all Claims between them, and it is expressly understood and agreed that no Party hereto admits any wrongdoing on its, his or her part by executing this Agreement.

20.     **Binding Effect.** It is the intention of the parties to extinguish all AG Group Released Claims and all Trump Group Released Claims and, consistent with such intention, each of the Parties hereby waives any and all rights, to the extent permitted by law, to assert that the Release provided by it in Paragraph 6 hereunder is unenforceable as to any claim whatsoever and for any reason including, without limitation, any and all rights under section 1542 of the California Civil Code, if applicable, or any other applicable similar law or principle of common law, which may have the effect of limiting the Releases herein.  Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

21.     **Headings.** The section headings contained in this Agreement are for reference purposes only and shall not in any way effect or control the meaning or interpretation of this Agreement.

22.     **Execution in Counterparts and by PDF e-mail.** This Agreement may be executed in multiple counterparts and by fax or PDF e-mail, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute one and the same instrument and agreement.

23.     **Effective Date.** This Agreement shall be effective immediately upon execution and delivery by all Parties hereto (the "Effective Date").

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                    **Arie Genger**

By: _____

Print: _____        Date: ___6/15/13___

Title: _____

Date: _____


**Glenclova Investment Co.**          **Orly Genger (in her individual capacity and**

**in her capacity as beneficiary of the**

By: _____            **Orly Genger 1993 Trust)**

Print: _____

Title: _____         Date: ___6/15/13___

Date: _____

32

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                                    **Arie Genger**

By: _Mark S Hirsch_                         _____

Print: _MARK J. HIRSCH_                    Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_


**Glenclova Investment Co.**                **Orly Genger (in her individual capacity and**

**in her capacity as beneficiary of the**

By: _Mark S Hirsch_                          **Orly Genger 1993 Trust)**

Print: _MARK S. HIRSCH_

Title: _Executive VP/General Counsel_       _____

Date: _June 16, 2013_                        Date: _____

32

**New TR Equity I, LLC**

By: _____

Print: _____

Title: _____

Date: _____

**Arnold Broser**

Date: _____ 6/16/13 _____

**New TR Equity II, LLC**

By: _____

Print: _____

Title: _____

Date: _____

**David Broser**

Date: _____ 6/16/13 _____

33

**New TR Equity I, LLC**                    **Arnold Broser**

By: _Mark S Hirsch_                         _____

Print: _MARK S. Hirsch_                     Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_


**New TR Equity II, LLC**                   **David Broser**

By: _Mark S Hirsch_                         _____

Print: _MARK S. Hirsch_                     Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_

33

**Trans-Resources, LLC**

By: _Mark S Hirsch_

Print: _MARK S. HIRSCH_

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_

34

**Jules Trump**

Date: 6/16/2013

**Eddie Trump**

Date: _____

**Mark Hirsch**

Date: _____

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: June 16, 2013

**Mark Hirsch**

_____

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: _____

**Mark Hirsch**

_____

Date: June 16, 2013

35

EXHIBIT A

6/16/13
*Draft - Confidential*

## [FORM OF SUBORDINATED NOTE]

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.

## TRANS-RESOURCES

## SUBORDINATED NOTE

$7,500,000.00                                                           June __, 2013

     **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of [_____] (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

    1.    Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

    2.    No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

    3.    Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.    Optional Prepayments. The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.    Adjustment. In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs. The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.    Subordination. Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.    Enforcement. The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.    Amendments. No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy. This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.    Lost Notes, etc. If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

Error! Unknown document property name.

10.    ASSIGNMENT.  THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS
AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY
NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY
EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF
THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE
DISCRETION.

11.    Binding Effect.  The provisions of this Note shall be binding upon and inure to the
benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

Error! Unknown document property name.

**IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By:_____
    Name:
    Title:

4

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 24 of 173
Case 1:13-cv-08243-JFK    Document 44    Filed 05/15/14    Page 1 of 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------X

TPR INVESTMENT ASSOCIATES, INC.,    :
                                    :
               Plaintiff,           :
                                    :
          -against-                 :
                                    :
PEDOWITZ & MEISTER LLP, as escrow   :
agent, DALIA GENGER, as trustee of  :
the Orly Genger 1993 Trust, and     :
ORLY GENGER, as beneficiary of the  :
Orly Genger 1993 Trust,             :
                                    :
               Defendants.          :

--------------------------------X

+--------------------------------------+
| USDC SDNY                            |
| DOCUMENT                             |
| ELECTRONICALLY FILED                 |
| DOC #: _____               |
| DATE FILED: May 15, 2014             |
+--------------------------------------+

No. 13 Civ. 8243 (JFK)
**OPINION & ORDER**

Appearances

For TPR Investment Associates, Inc.
    MORGAN, LEWIS & BOCKIUS, LLP
    By:  John Dellaportas
         Mary C. Pennisi

For Orly Genger
    ZEICHNER, ELLMAN & KRAUSE, LLP
    By:  Yoav M. Griver
         Bryan Leinbach

For Pedowitz & Meister, LLP
    PEDOWITZ & MEISTER, LLP
    By:  Robert A. Meister

For Dalia Genger
    Judith Bachman


**JOHN F. KEENAN, United States District Judge:**

     We proceed once more unto the breach within the Genger

family.  In this latest action, TPR Investment Associates, Inc.

("TPR"), which is controlled by Sagi Genger, seeks a judgment

directing the release of about $10.3 million in escrowed

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 25 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 2 of 21

proceeds (the "Proceeds") arising out of TPR's sale of certain
shares of Trans-Resources Inc. to a group of parties known as
the "Trump Group."  Defendant Orly Genger, Sagi's estranged
sister, has filed a motion to dismiss this action.  TPR not only
opposes Orly's motion but has also cross-moved for summary
judgment.  Most recently, Orly filed a motion to dismiss the
crossclaims against her by Pedowitz & Meister LLP and Dalia
Genger.

For the reasons that follow, Orly's motion to dismiss the
complaint is denied, and TPR's motion for summary judgment is
granted.  Orly's motion to dismiss the interpleader crossclaim
by Pedowitz & Meister LLP is granted, and her motion to dismiss
Dalia's crossclaim against her is denied as moot.

## I.   Background

The Court assumes familiarity with the extensive history of
the Genger family imbroglio.  See generally Glenclova Inv. Co. v.
Trans-Resources, Inc., 874 F. Supp. 2d 292, 295-300 (S.D.N.Y.
2012) (hereinafter, the "Omnibus Opinion" or Glenclova); TR
Investors, LLC v. Genger, No. 6697-CS, 2013 WL 603164, at *3-13
(Del. Ch. Feb. 18, 2013).  The following section contains only
the background that is necessary to understand the instant
action and decision.

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 26 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 3 of 21

### A.   Relevant History

The Genger combatants include Arie Genger and his adult
daughter Orly in one camp; Arie's former wife Dalia, who is the
trustee of a trust benefitting her estranged daughter Orly in a
second camp; and former Trans-Resources majority owner TPR and
its president, Sagi, who is Arie and Dalia's adult son.   Also
relevant is the collection of entities referred to as the "Trump
Group."   These include Glenclova Investment Co.; TR Investors,
LLC; New TR Equity I, LLC; New TR Equity II, LLC; Eddie Trump;
Jules Trump; and Mark Hirsch.

Not including the instant action, most of the litigation
between these disputants has been a battle over shares of Trans-
Resources stock.   Some of the shares in dispute have been
referred to as the "Orly Trust Shares."   These 1,102.8 shares
had been transferred by TPR, which was then controlled by Arie,
to the Orly Genger 1993 Trust (the "Orly Trust") as part of Arie
and Dalia's 2004 divorce settlement.   Once the Trump Group
learned of this and other transfers in 2008, it objected on the
grounds that the transfers were prohibited by the March 31, 2001
Stockholders Agreement between Trans-Resources, TPR, and members
of the Trump Group.   Ultimately, Glenclova filed the Glenclova
action to enforce the 2001 Stockholders Agreement. See generally
Glenclova, 874 F. Supp. 2d at 295-96.

3

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 27 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 4 of 21

To cover its bases, the Trump Group separately entered into
an agreement with TPR (by then under Sagi's control), which gave
the Trump Group an option to purchase the Orly Trust Shares
should a court determine that the 2004 transfers were void.  If
the transfers were ruled to be valid, then the Orly Trust would
keep the Orly Trust Shares.  But if the transfers were deemed
void, the shares would go back to TPR, which would then sell
them to the Trump Group.

The Delaware Chancery Court determined that Arie's transfer
of the Orly Trust Shares to the Orly Trust was void, such that
TPR (and not Arie or the Orly Trust) retained legal and
beneficial ownership of the disputed shares. TR Investors, LLC
v. Genger, C.A. No. 3994-VCS, 2010 WL 3279385, at *3 (Del. Ch.
Aug. 9, 2010).  While this ruling was being appealed, the Trump
Group exercised its option to purchase the Orly Trust Shares
from TPR for about $10.3 million.  All of the parties agreed
that this amount, the Proceeds, should be held in escrow while
the Delaware appeal continued.  Accordingly, the Proceeds were
held in escrow by Pedowitz & Meister LLP ("P&M" or the "Escrow
Agent"), pursuant to an agreement between Orly, Dalia, TPR, and
the Trump Group (the "Escrow Agreement").

That Escrow Agreement is central to the instant litigation,
and will be discussed at greater length below.  To summarize, it
stated that the Trump Group would proceed with its plan to

4

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 28 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 5 of 21

purchase the Orly Trust Shares from TPR, but that the purchase
amount would be held by the Escrow Agent pending a final ruling
on beneficial ownership by the Delaware Supreme Court.
Ultimately, the Delaware Supreme Court reversed the Chancery
Court's determination of beneficial ownership because it ruled
that the Chancery Court lacked in personam jurisdiction over TPR
and the Orly Trust. Genger v. TR Investors, LLC, 26 A.3d 180,
201-03 (Del. 2011).

After the Delaware Supreme Court's ruling reopened the
question of beneficial ownership of the Orly Trust Shares, the
Escrow Agent filed an interpleader action before this Court. See
Pedowitz & Meister LLP v. TPR Inv. Assocs., Inc., No. 11 Civ.
5602 (S.D.N.Y.). I dismissed the interpleader action for lack
of subject matter jurisdiction, reasoning that the parties'
competing claims were for beneficial ownership of the Orly Trust
Shares, rather than for the Proceeds from the sale of those
shares. See Glenclova, 874 F. Supp. 2d at 300-04. Thereafter,
the Southern District Cashier's Office returned the $10.3
million to the Escrow Agent's escrow account, where it has
remained. Since that time, the parties have litigated
principally in New York Supreme Court. See Genger v. Genger, No.
651089/2010 (N.Y. Sup. Ct.). As part of a stipulation
dismissing the action in Delaware Chancery Court, the parties to
that action — TPR/Sagi, the Trump Group, and Dalia, but not Arie

5

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 29 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 6 of 21

or Orly — agreed that the Trump Group is the rightful owner of
the Orly Trust Shares. (Dellaportas Dec. Ex. B ¶ 2.)
Additionally, Orly and the Trump Group have settled their claims
against each other.  Pursuant to that settlement, Orly
acknowledged that the Trump Group is the record and beneficial
owner of the Orly Trust Shares. (Id. Ex. J at 2.)  At long last,
the dispute regarding ownership of the Orly Trust Shares is
over.

Finally, it bears mentioning that in October 2011, TPR and
Dalia signed a settlement agreement, which stated in part that
TPR relinquished its right to the Proceeds in favor of the Orly
Trust (still controlled by Dalia).  When Orly later found out
about this agreement, she denounced it in New York Supreme Court
as a "sham defendants-only" agreement which violated that
court's order enjoining Sagi/TPR and Dalia from spending or
demanding the Proceeds before a court could determine beneficial
ownership of the Orly Trust Shares.  The Supreme Court agreed
with Orly and declared the settlement agreement void, see
Genger, 2013 WL 2396219, and the First Department recently
affirmed that ruling, see Genger v. Genger, 982 N.Y.S.2d 11, 13
(1st Dep't 2014).  Dalia has moved for reconsideration or leave
to appeal to the New York Court of Appeals.

6

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 30 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 7 of 21

### B.   This Case, Orly's Motions to Dismiss, and TPR's Motion for Summary Judgment

The instant case differs from the previous Glenclova action in that here, the parties are fighting over the Proceeds from the sale of the Orly Trust Shares — not the shares themselves. As noted, Orly has relinquished her claim to the shares as part of her settlement with the Trump Group.   TPR's complaint seeks a permanent injunction directing the Escrow Agent to release the $10.3 million in Proceeds to TPR.

Both P&M and Dalia filed answers and crossclaims "against the other Defendants."   P&M seeks to invoke "defensive" interpleader under Rule 22 of the Federal Rules of Civil Procedure. (Oral Arg. Tr. at 27-29; P&M Ans. ¶ 28.) See Fed. R. Civ. P. 22(a)(2).   This is a request to "do-over" the statutory interpleader action I dismissed, with the purported difference being that now there actually are adverse claimants to the Proceeds themselves. See generally Pedowitz & Meister, No. 11 Civ. 5602.   Orly moves to dismiss P&M's crossclaim for interpleader, contending that it violates both the Escrow Agreement and my prior rulings dismissing the statutory interpleader actions.

Meanwhile, Dalia's crossclaim sought the release of the Proceeds to the Orly Trust, on the grounds that the voided settlement agreement between the Orly Trust and TPR "is valid

7

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 31 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 8 of 21

and enforceable, and that the Appellate Division will so find."
(Dalia Crossclaim ¶¶ 19-20.). Since Dalia filed her crossclaim,
the First Department ruled the opposite. In light of this
development, Dalia's counsel advised at oral argument that she
no longer objects to TPR's requested relief. (Oral Arg. Tr. at
25-26.) Dalia has thereby abandoned her crossclaim, mooting
Orly's motion to dismiss it.

    We now turn to the principal matter of Orly's motion to
dismiss TPR's complaint. Orly urges that the complaint fails to
state a claim because none of the conditions to releasing the
Proceeds set forth in Section 2 of the Escrow Agreement have
been satisfied. She also strongly contests TPR's representation
in the complaint that "all of the issues as to ownership of the
[Orly Trust] Shares and the accompanying . . . Proceeds are now
resolved." (Compl. ¶ 15.) Not so, says Orly: although she has
stopped pursuing beneficial ownership of the shares themselves,
the propriety of the 2004 transfer of the shares to the Orly
Trust remains an issue before the New York Supreme Court and the
First Department. More generally, Orly accuses TPR of trying to
forum shop with this latest litigation. As an alternative to
dismissal, she seeks a stay of this action while the litigation
in New York state remains ongoing.

8

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 32 of 173
Case 1:13-cv-08243-JFK    Document 44    Filed 05/15/14    Page 9 of 21

In a single brief, TPR opposes Orly's motion to dismiss and moves for summary judgment. Its position is largely predicated on my Omnibus Opinion, which stated that "if the 2004 transfer of shares to Arie and the Orly Trust is found to be invalid, then TPR had the right to sell the shares to the Trump Group, and TPR would be entitled to the interpleaded funds." Glenclova, 874 F. Supp. 2d at 303. Arguing from this language, TPR asserts that the recent resolution of the beneficial ownership issue compels a ruling that the interpleaded $10.3 million must be released to TPR. TPR further contends that the doctrines of collateral estoppel, res judicata, and judicial estoppel bar Orly from relitigating the rulings in the Omnibus Opinion. Second, TPR contends that the longstanding New York Supreme Court case, which the parties continue to litigate, does not include a claim by Orly for the Proceeds. Instead, according to TPR, Orly filed a new action in New York Supreme Court on December 23, 2013 seeking to compel the Escrow Agent to release the money to her. Third, TPR notes that Orly is pursuing a claim for unjust enrichment in state court, and argues that for TPR to be unjustly enriched it must first be enriched — that is, it must first possess the funds at issue. Fourth, TPR urges that a stay of this action would be inappropriate, essentially because it would cause further delay.

9

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 33 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 10 of 21

## II.  Discussion

### A.    Relevant Legal Standards

The standards governing the instant motions are well
settled.  In reviewing Orly's motions to dismiss under Rule
12(b)(6), the Court accepts TPR's allegations of fact as true,
and draws all reasonable inferences in its favor.  See Ganino v.
Citizens Util. Co., 228 F.3d 154, 161 (2d Cir. 2000); Lee v.
Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999).  Review of
a motion for failure to state a claim "is limited to the facts
as asserted within the four corners of the complaint, the
documents attached to the complaint as exhibits, and any
documents incorporated in the complaint by reference." McCarthy
v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)
(citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir.
2002)).  To survive a 12(b)(6) motion, the complaint "must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).

TPR, which moves for summary judgment, will prevail if the
evidence, viewed in the light most favorable to Orly, shows that
there is no genuine issue as to any material fact and that it is
therefore entitled to a judgment as a matter of law. Fed. R.
Civ. P. 56(a); Vacold LLC v. Cerami, 545 F.3d 114, 121 (2d Cir.

10

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 34 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 11 of 21

2010). As the movant, TPR bears the initial burden of

demonstrating "the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If TPR

meets that burden, then Orly must come forward with specific

evidence demonstrating the existence of a genuine dispute of

material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

249 (1986). "The mere existence of a scintilla of evidence in

support of the non-movant's position will be insufficient; there

must be evidence on which the jury could reasonably find for the

non-movant." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d

Cir. 2003) (alterations omitted). "Only disputes over facts

that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."

Anderson, 477 U.S. at 248.

## B.   Analysis

Although the motions by TPR and Orly stand on different

procedural ground, they raise the same question in substance:

Should this Court direct the Escrow Agent to release the

Proceeds to TPR? To answer this question, I must determine

whether TPR is correct that judgment in its favor would be

consistent with my prior rulings and with the goals of the

Escrow Agreement, or instead whether Orly is correct that the

Escrow Agreement compels dismissal of the complaint.

11

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 35 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 12 of 21

1.   **The Relevant Portion of the Omnibus Opinion Is Not Dicta**

TPR argues that my Omnibus Opinion, plus the recent resolution of beneficial ownership, together compel release of the Proceeds.  It relies on specific passages in the Omnibus Opinion, in particular a passage in the discussion of this Court's jurisdiction over the interpleader actions then before me.  I concluded that the Court lacked subject matter jurisdiction, because the parties' real dispute was over beneficial ownership of the shares rather than the Proceeds from their sale.  The Opinion states:

> The point is subtle but important.  All potential claimants acknowledge that if Arie and the Orly Trust are deemed to be the beneficial owners of the Arie Shares and Orly Trust Shares, then the Trump Group's purchase of shares from TPR would be rescinded and the interpleaded funds would go back to the Trump Group. But, if the 2004 transfer of shares to Arie and the Orly Trust is found to be invalid, then TPR had the right to sell the shares to the Trump Group, and TPR would be entitled to the interpleaded funds.
>
> [. . .]
>
> The condition precedent to disbursement of funds under either of the escrow agreements is judicial determination of the beneficial ownership of the Arie Shares and Orly Trust Shares, an issue left unresolved by the Delaware Supreme Court.  Nevertheless, once a court enters judgment on this issue, the escrow agents can disburse the escrowed funds to the prevailing claimant in accordance with guidance set forth in the escrow agreements.  In effect, the stakeholders have contracted around any possibility of "double liability or vexatious, conflicting claims" with respect to the interpleaded funds.
>
> [. . .]

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 36 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 13 of 21

[T]he stakeholder plaintiffs did not need to commence
the interpleader actions in order to get judicial
guidance as to who beneficially owns the Arie Shares
and Orly Trust Shares, and, as a result, who is
entitled to the escrowed funds. . . . [Once] the New
York Supreme Court reaches the merits of beneficial
ownership of the Arie Shares, Orly Trust Shares, or
both, that judgment will have preclusive effect in any
other court where the parties have raised the matter—
be it through res judicata or collateral estoppel.  In
other words, only one court can determine the
beneficial ownership of the Arie Shares and/or the
Orly Trust Shares, and, once that has occurred, the
respective stakeholder plaintiffs will know which
claimant is entitled to the interpleaded funds.  There
is no risk of one claimant to the Arie Shares
prevailing in Delaware while another claimant to those
shares prevails in New York, and therefore, no risk
that the stakeholders will have to fend off adverse
claims to the interpleaded funds.  As the stakeholders
have not demonstrated that the interpleaded funds are
subject to actual or even potential adverse claims,
the <u>Pedowitz</u> and <u>Skadden</u> interpleader actions do not
meet the statutory requirements for subject matter
jurisdiction under § 1335.

<u>Glenclova</u>, 874 F. Supp. 2d at 303-04.  The Opinion also notes as

to Arie, who is in a substantively similar position as Orly on

this issue:  "Moreover, while Arie asserts a beneficial

ownership in the underlying Trans-Resources shares, in no case

does he have a claim against the interpleaded funds themselves.

Instead, Arie's numerous counterclaims seek money damages for

breach of fiduciary duties that are ancillary to, and beyond the

scope of," the interpleader. <u>Id.</u> at 303 n.2.

    The beneficial ownership issue is now dead; Orly has

settled with the Trump Group.  Therefore, TPR argues, it is now

entitled to the Proceeds it received from the Trump Group in

13

consideration for those shares. TPR continues, "That is not to say Orly loses her day in Court . . . . Orly remains free to pursue her money damages, such as they are, in the New York Supreme Court." (TPR Br. at 3; see also id. at 4 ("TPR should receive the proceeds which unquestionably belong to it, while Orly can seek to litigate the equities of that in state court.").)

Orly strenuously objects to TPR's characterization of the Omnibus Opinion, and insists that the portion quoted by TPR is mere dicta. This is so, Orly urges, because I did not purport to reach a legal conclusion in that passage, but only to explain the background of the parties' positions. Accordingly, Orly argues, that language does not control the outcome here and cannot override the Escrow Agreement among the parties. TPR replies that the quoted portion is not and cannot be dicta, because "it was the express basis upon which this Court found a lack of 'adverse claimants,' and thus dismissed on subject matter jurisdiction grounds." (TPR Reply Br. at 5.) In other words, TPR contends that the Court could not have dismissed the interpleader action without the disputed passage, because that passage explains the Court's legal conclusion that the real dispute between the parties was not the Proceeds but rather beneficial ownership.

14

20-01188-jlg  Doc 1-9  Filed 06/20/20  Entered 06/20/20 21:15:49  NoR part 10
Pg 38 of 173
Case 1:13-cv-08243-JFK  Document 44  Filed 05/15/14  Page 15 of 21

TPR is correct.  In dismissing the action for want of
subject matter jurisdiction, I found that there was no genuine
danger "of multiple liability when all potential claimants agree
that only one of them is entitled to the res." Glenclova, 874
F. Supp. 2d at 303.  Simply put, I concluded that beneficial
ownership and the Proceeds go hand-in-hand as issues.  Because
the Trump Group is now the undisputed owner of the Orly Trust
Shares, TPR is entitled to the Proceeds paid by the Trump Group
for those shares. See id. at 303-04.  It follows that TPR's
reliance on the Omnibus Opinion is not misplaced.

It must be emphasized, however, that neither my 2012
Omnibus Opinion nor today's decision announce any kind of
equitable or normative conclusion as to who among the Genger
siblings ultimately deserves recompense.  That is a different
question, one that was left to the state courts to sort out. See
Glenclova Inv. Co. v. Trans-Resources, Inc., No. 08 Civ. 7140,
2013 WL 6003512, at *3 (S.D.N.Y. Nov. 12, 2013).  Thus, nothing
in this Opinion should be construed as resolving any question
other than whether TPR is the next (but not necessarily last)
beneficiary of the sale of the Orly Trust Shares.

### 2.  The Significance of the Escrow Agreement

Orly's main argument for dismissal is that none of the
preconditions to releasing the escrowed Proceeds, which are set
forth in Section 2 of the Escrow Agreement, have been satisfied.

15

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 39 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 16 of 21

Her interpretation of that section is correct. The Escrow
Agreement was signed by the parties at a very specific point in
the litigation. Chancellor Strine in Delaware had ruled that
Arie's transfer of the relevant shares to the Orly Trust was
invalid, returning them to TPR/Sagi, who wanted to sell them to
the Trump Group. Arie planned to appeal that ruling, and the
Escrow Agreement was designed to dictate what would happen once
the Delaware Supreme Court decided his appeal. Under the
Agreement's provisions, the Trump Group received the shares in
exchange for payment to the Escrow Agent, who would hold onto
the Proceeds until one of five contingencies occurred:   (1)
mutual consent of the parties; (2) a request from TPR plus an
affirmance by the Delaware Supreme Court of the Chancery Court's
ruling; (3) a request from the Trump Group plus an order from
the Delaware Supreme Court vacating the Chancery Court's ruling;
(4) a request from the Trump Group plus the expiration of Arie
and Orly's time to appeal the Chancery Court's determination; or
(5) a request by one of the parties plus silent acquiescence by
the other parties. (Escrow Agreement § 2(b).)

     As Orly correctly points out, what transpired thereafter
does not fit neatly into any one of these boxes. Obviously, the
parties continue to be in active conflict, eliminating the first
and fifth contingencies above (mutual consent or silent
acquiescence). Arie did appeal, eliminating the fourth

                              16

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 40 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 17 of 21

contingency.  The Delaware Supreme Court reversed Chancellor
Strine's ruling on beneficial ownership, eliminating option 2.
But the Trump Group did not ask for its money back, as
contemplated in option 3 (the last remaining possibility),
likely because the reversal was on jurisdictional grounds and
not the merits.

The problem with Orly's proposed reading of the Escrow
Agreement is that the Agreement completely omits any mention of
the Genger v. Genger action in the New York state court.  That
case was filed by Orly and her father after the Delaware
Chancery Court ruled against them the first time.  The parties
have actively litigated the New York case in recent years, and
it has become the "epicenter for the Genger family litigation."
Glenclova Inv. Co., 2013 WL 6003512, at *2.

Orly now urges that this Court may not order the Escrow
Agent to release the Proceeds except in strict accordance with
the letter of the Escrow Agreement.  But because the Agreement's
terms do not allow for enforcement of any New York state
judgment, to accept Orly's argument would be akin to ruling that
the New York Supreme Court has no power to adjudicate disputes
relating to this money.  That result would be plainly
inconsistent with Orly's position that the 2010 New York Supreme
Court action (which she filed) is the appropriate place for
litigation of these issues.  See Orly Moving Br. at 17-18; Orly

17

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 41 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 18 of 21

Reply Br. at 9.)   It is also inconsistent with the position she
took in the prior interpleader action. See Pedowitz & Meister
LLP, No. 11 Civ. 5602, ECF No. 11 at 6-8.  Having convinced me
to stay or dismiss the other Southern District actions in favor
of the state proceeding, Orly may not now insist on a reading of
the Escrow Agreement that would render the state court impotent.

Orly's position that I cannot rule for TPR without
"rewriting" the Escrow Agreement is also at odds with the
Omnibus Opinion, which she has never challenged.  First, in that
ruling I recommended New York Supreme Court as the optimal venue
for adjudicating beneficial ownership and the related issues.
See Glenclova, 874 F. Supp. 2d at 304, 307, 309, 314.  I also
observe that by the time I issued the Omnibus Opinion, the three
main scenarios enumerated in Section 2(b) of the Escrow
Agreement whereby the Escrow Agent could release the funds were
already impossible.  Nor did I intend to give Orly a unilateral
veto over release of the Proceeds, as would be required under
the two remaining routes to release of the funds under Section
2(b).  For these reasons, I reject Orly's position on this
issue.[1]

---

[1] Orly also argues that she is the only party to make a valid written
request for the Proceeds under the Escrow Agreement, and that the
question of who-requested-what-first presents a material factual
dispute barring the entry of summary judgment.  She is incorrect.  As
an initial matter, TPR's letter requesting the Proceeds appears to
comply with Section 2b(v) of the Escrow Agreement. See Dellaportas

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 42 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 19 of 21

I conclude that the Escrow Agreement does not prevent me from giving effect to the plain import of my prior rulings. The Omnibus Opinion states that once "the New York Supreme Court reaches the merits of beneficial ownership" of the Orly Trust Shares, everyone involved would "know which claimant is entitled to the interpleaded funds." Glenclova, 874 F. Supp. 2d at 303. The question of beneficial ownership has now been resolved, and all parties agree that the Trump Group owns the shares. It follows that TPR is entitled to the Proceeds, with Orly's remaining claims for money damages against TPR and Sagi to be resolved in New York Supreme Court.

### 3.   There Is No Need for an Interpleader

As previously noted, P&M seeks to interplead the Proceeds under Rule 22. For defensive interpleader to be proper, P&M must reasonably fear double liability or vexatious claims. See 6247 Atlas Corp. v. Marine Ins. Co., 155 F.R.D. 454, 462 (S.D.N.Y. 1994); see also Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993).

---

Dec. Ex. C. Regardless, today's decision in TPR's favor is not based upon the mechanics of the Escrow Agreement, but upon this Court's prior rulings. Thus, the question whether it was TPR or Orly who first validly requested the Proceeds is of no moment. See Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

19

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 43 of 173
Case 1:13-cv-08243-JFK    Document 44    Filed 05/15/14    Page 20 of 21

At oral argument, counsel indicated that P&M prefers
interpleader to protect itself from liability for damages, as
opposed to mere overlapping claims to the Proceeds. (Oral Arg.
Tr. at 28-29.)

Interpleader is not necessary in the circumstances of this
case.  Because summary judgment will be entered in favor of TPR,
P&M as Escrow Agent is required by the force of this judgment to
release the Proceeds to TPR.  The mere act of complying with
this Opinion and Order will not cause P&M to incur liability for
damages to Orly or anyone else.  Accordingly, Orly's motion to
dismiss P&M's interpleader crossclaim is granted, albeit for a
different reason than those offered by Orly.  There is no record
before me regarding whether P&M may be liable on any other
basis, and I expressly decline to consider the issue.

20

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 44 of 173
Case 1:13-cv-08243-JFK   Document 44   Filed 05/15/14   Page 21 of 21

### III. Conclusion

For the foregoing reasons, Orly's motion to dismiss the complaint is denied, and TPR's motion for summary judgment is granted.  P&M is directed to release the Proceeds, together with any interest accrued thereon, to TPR.  Orly's motion to dismiss the interpleader crossclaim by P&M is granted.  Orly's motion to dismiss Dalia's crossclaim against her is denied as moot.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:   New York, New York
         May 15, 2014

                                    John F. Keenan
                              United States District Judge

21

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 45 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 1 of 25

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 0 5 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
SAGI GENGER,                                                 :
                                                             :
                         Plaintiff,                          :
                                                             :
              -v-                                            :        14-cv-5683 (KBF)
                                                             :
ORLY GENGER,                                                 :        OPINION & ORDER
                                                             :
                         Defendant.                          :
                                                             :
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

As Tolstoy famously wrote, "Happy families are all alike; every unhappy

family is unhappy in its own way."  Leo Tolstoy, <u>Anna Karenina</u> 1 (Constance

Garnett trans., 1978).  In the case of the wealthy Genger family, that unhappiness

has taken the form of a seemingly never-ending series of lawsuits stemming from

the divorce of Arie Genger and Dalia Genger, the family patriarch and matriarch,

respectively.  Together, Arie, Dalia, their son Sagi, and their daughter Orly[1] have

employed a small army of lawyers to fight over the pieces of the family pie and, it

seems, to make each other's lives as miserable as possible.

This latest installment in the Genger family's litigation saga concerns a

straightforward contract dispute between Sagi and Orly.  Sagi alleges that he and

Orly entered into a tri-party agreement with Dalia, under which Sagi and Orly

would receive shares of stock in exchange for providing Dalia with financial support

---

[1] For the sake of clarity, in this Opinion the Court will refer to the members of the Genger family by
their given names.

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 46 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 2 of 25

derived from the economic value obtained from that stock. Sagi contends that Orly

has breached the agreement, and now seeks damages from her. Orly, for her part,

denies the agreement's validity and enforceability, primarily because she claims she

never actually received the promised shares of stock, which means that the

agreement is not supported by consideration. But, as it turns out, Orly has

effectively monetized an interest in the very shares she claims not to have received

to the tune of $32.3 million.

Orly contends that this case is "an attempt to push the camel's nose under

the tent flaps," and that Sagi and Dalia "hope to create a pipeline allowing them to

siphon money from Orly for the rest of her life." (ECF No. 92 at 1.) The Court sees

things differently: this case is a simple breach of contract action. Nothing more,

nothing less.

Because there is no triable issue as to whether there was a valid and

enforceable agreement supported by consideration, and for the reasons that follow,

the Court GRANTS Sagi's motion for summary judgment, DENIES Orly's motion

for summary judgment, and DENIES AS MOOT Orly's motion to disqualify and all

pending motions in limine.

2

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 47 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 3 of 25

I.      BACKGROUND

        A.      Factual Background[2]

        The Genger family consists of father Arie, mother Dalia, son Sagi, and

daughter Orly.  (DSOF ¶ 5.)  Sagi is currently the President and CEO of TPR

Investment Associates, Inc. ("TPR").  (DSOF ¶ 4.)  In 2004, Arie and Dalia

divorced.[3]  (DSOF ¶ 5; PRSOF ¶ 5.)  As part of the divorce, Dalia agreed to convey

her marital rights to 794.40 shares of TRI to trusts benefiting Sagi and Orly (the

"Sagi Trust" and the "Orly Trust,"[4] respectively) in exchange for a commitment by

Sagi and Orly to financially support her.  This arrangement was effectuated via

three documents.

        First, Dalia and Arie signed a stipulation of settlement finalizing the terms of

their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed

---

[2] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in
connection with this motion for summary judgment and their supporting materials (ECF No. 34
("PSOF"), 37 ("DSOF"), 51 ("DRSOF"), 52 ("DCMUF"), 55 ("PRSOF")), the factual materials
submitted with the parties' letters dated November 25, 2014 (ECF Nos. 84-85), and public records of
the parties' prior judicial proceedings.  The Court cites to the parties' factual submissions only when
they support a factual proposition, cite relevant material, and are not contradicted in pertinent part
by a counter-statement supported by citation to evidence that would be admissible.  See Local Civil
Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y.
2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as
true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket
denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004).
The Court recites only those facts relevant to the claims and defenses currently at issue, but also
includes some factual allegations that are not material to the claims asserted but that are important
to understanding the context for this case.  Some of defendant's responses fail to directly address
straightforward factual allegations, and these failures are considered admissions as a matter of law.
See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v.
Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

[3] The divorce was finalized by a 2005 judgment.  (PRSOF ¶ 5.)

[4] The trusts are officially named the "Sagi Genger 1993 Trust" and the "Orly Genger 1993 Trust."
(DSOF ¶ 26.)

3

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 48 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 4 of 25

on October 30, 2004.[5] (PSOF ¶ 1; DSOF ¶ 7.) In the 2004 Divorce Stipulation, Dalia promised to convey equal interests in a total of 794.40 shares of TRI to the Orly Trust and the Sagi Trust. (PSOF ¶ 1; DSOF ¶ 27.) The 2004 Divorce Stipulation contains an "entire understanding" clause, which is subject to a carve-out for other agreements expressly incorporated by reference and those "entered into concurrently herewith." (DSOF ¶ 24.)

The second was a letter signed by Sagi and Dalia dated October 30, 2004 (the "2004 Promise"). (PSOF ¶ 3; DRSOF ¶ 51.) In the 2004 Promise, Sagi agreed to pay Dalia up to an amount equal to all dividends, distributions, proceeds or other payments attributable to the TRI shares, upon Dalia's demand. (PSOF ¶ 3.) The 2004 Promise also states that the agreement is made "in consideration of" the following: "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of [TRI], or beneficial[6] interests in those shares, by trusts for [their] benefit." (DSOF ¶ 52.) The parties dispute whether the 2004 Promise was intended to be integrated with the 2004 Divorce Stipulation. (See DRSOF ¶ 3.)

At the time the 2004 Promise was signed, Orly was vacationing in Fiji, and thus could not contemporaneously sign the 2004 Promise. (PSOF ¶ 4.) However,

---

[5] The 2004 Divorce Stipulation states that it is "made as of October 26, 2004." (DSOF ¶ 7.)

[6] Beneficial ownership is "[a] corporate shareholder's power to buy or sell the shares, though the shareholder is not registered on the corporation's books as the owner." Ownership, Black's Law Dictionary (9th ed. 2009); see also Cartica Mgmt. v. CorpBanca, S.A., No. 14–CV–2258 PKC, 2014 WL 4804491, at *15 (S.D.N.Y. Sept. 25, 2014) (explaining the definition of beneficial ownership under federal securities law). Record ownership is determined based on who is "listed in the issuer's books as the owner of stock on the record date." Stockholder of Record, Black's Law Dictionary (9th ed. 2009).

4

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 49 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 5 of 25

before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for

50% of the payments he would have to make under the 2004 Promise.[7]  (PSOF ¶ 4.)

The third agreement was a letter signed by Sagi and Orly dated November

10, 2004 (the "2004 Indemnity").[8]  (PSOF ¶ 5.)  In the 2004 Indemnity, Orly agreed

to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities,

damages, claims, actions, losses, settlements, penalties, judgments or obligations

. . . , including [Sagi's] reasonable counsel and other professional fees, expenses and

costs, which arise from [Sagi's] undertakings in the [2004 Promise]."  (PSOF ¶ 5.)

On August 22, 2008, Sagi-controlled TPR entered an agreement with the

Trump Group to sell the Sagi Trust's shares of TRI to the Trump Group for $26.7

million.  (DSOF ¶ 34.)  Sagi also sold the Orly Trust's TRI shares to the Trump

Group for approximately $10.3 million, subject to the condition that TPR was

determined to be an owner of the shares.[9]  (DSOF ¶ 35.)

---

[7] In response to this factual allegation by Sagi, Orly counters that she does not remember a phone
call with Sagi on the day of the divorce, and makes several non-responsive statements concerning
the drafting and execution 2004 Promise and the 2004 Divorce Stipulation.  (See DRSOF ¶ 4.)  But
she does not actually deny making this oral promise.

[8] At the initial case conference in the prior action, Orly's counsel stated that they believed the 2004
Indemnity was a forgery, and they would investigate this theory by, inter alia, using the services of
an ink expert.  (DRSOF ¶ 11.)  The ink expert's examination of the 2004 Indemnity was also
discussed at the October 31, 2014 status conference in the instant action; the Court ordered the
parties to meet and confer regarding any outstanding issues with respect to expert discovery (ECF
No. 48), and no such issues were subsequently raised with the Court.

Despite the considerable amount of discovery in this case, and her retention of an ink expert, Orly is
unable to point to any admissible evidence suggesting that the 2004 Indemnity is a forgery.  Further,
in her briefing on this motion, Orly did not advance the argument that the 2004 Indemnity is a
forgery or is otherwise inauthentic.  Most importantly, in her Rule 56.1 responses, Orly does not
affirmatively deny the existence of the 2004 Indemnity, or that she signed it.  (See DRSOF ¶¶ 5, 11.)
A party cannot create a genuine issue of material disputed fact through mere say-so and the hiring of
an expert.  There is accordingly no genuine issue of material disputed fact as to the authenticity of
the 2004 Indemnity or as to whether Orly signed it.

[9] The parties dispute exactly what ownership interest was required by the condition.  (See PRSOF
¶ 35.)

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 50 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 6 of 25

In 2011, the Supreme Court of Delaware affirmed a judgment invalidating the 2004 transfer of the TRI shares to the Orly Trust as to record ownership. Genger v. TR Investors, LLC, 26 A.3d 180, 198-200 (Del. 2011). As a result of this invalidation, record ownership of the TRI shares reverted to Sagi-controlled TPR. In that same decision, the Supreme Court of Delaware held that because the trial court lacked personal jurisdiction over the Orly Trust and TPR, it lacked the power to declare who beneficially owned the TRI shares, and therefore reversed the beneficial ownership determinations flowing from the trial court's orders. Id. at 203.

On June 16, 2013, Orly entered into a settlement agreement (the "2013 Settlement Agreement") with the Trump Group and others regarding her claims to ownership of the TRI shares. (ECF No. 84 ex. A ("2013 S.A.").) The agreement provides that Orly, Arie, and their litigation funders[10] will receive $32.3 million[11] in exchange for a declaration that the Trump Group owns "all right, title and interest (beneficially, of record, and otherwise)" to the TRI shares, and that Orly waives all of her claims to the TRI shares, both as a trust beneficiary[12] and individually. (2013 S.A. ¶¶ 2-4.) The 2013 Settlement Agreement does not waive any of the Orly Trust's claims. (See 2013 S.A. ¶ 4.) However, in the agreement Orly agreed to cause the Orly Trust to do the same. (2013 S.A. ¶ 8(a)(ii).)

---

[10] The 2013 Settlement Agreement refers to these parties collectively as the "AG Group." (2013 S.A. at 1.)

[11] The $32.3 million consists of $17.3 million in cash upfront, plus two additional $7.5 million payments to be made over four years. (2013 S.A. ¶¶ 2-3.)

[12] Specifically, as a beneficiary of the Orly Trust. (2013 S.A. ¶ 4.)

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 51 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 7 of 25

Then, on August 30, 2013, the Orly Trust (by Dalia), TPR, and the Trump

Group agreed that "the Trump Group owns, for all purposes, all right, title and

interest (beneficially, of record and otherwise) to all authorized and issued shares of

[TRI]." (ECF No. 85 ex. 5 ¶ 2.) This stipulated agreement was so-ordered by the

Delaware Court of Chancery. (ECF No. 85 ex. 5 at 7.) Subsequently, a court in this

District and New York's First Department both concluded that this so-ordered

stipulation determined the Trump Group to be the beneficial owner of the TRI

shares. TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP, No. 13 Civ. 8243 (JFK),

2014 U.S. Dist. LEXIS 67116, *5-6 (S.D.N.Y. May 15, 2014); Genger v. Genger, 121

A.D.3d 270, 280 (N.Y. App. Div. 2014).

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the

2004 Promise, which Sagi paid. (PSOF ¶¶ 6, 9.) On January 23, 2014, Sagi

informed Orly of Dalia's demand.[13] (PSOF ¶ 7.) On February 17, 2014, Sagi

demanded $100,000 from Orly under the 2004 Indemnity. (PSOF ¶ 10.) Orly

refused to pay. (PSOF ¶ 11.) This lawsuit for breach of contract followed.

    B.    Procedural Background[14]

        1.    General procedural background.

Sagi initially filed a breach of contract action against Orly in this Court on

February 18, 2014. (No. 14-cv-1006, ECF Nos. 1-2.) Orly filed a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6) on May 2, 2014. (No. 14-cv-1006,

---

[13] Sagi first provided Orly's counsel with a written copy of Dalia's demand on January 29, 2014. (DSOF ¶ 60.)

[14] The Court recounts only the procedural history immediately relevant to the disposition of this motion.

7

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 52 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 8 of 25

ECF No. 9.) Orly then filed a motion to dismiss for lack of subject-matter

jurisdiction under Rules 12(b)(1) and 12(h)(3) on May 29, 2014. (No. 14-cv-1006,

ECF No. 24.) That same day, Sagi filed a motion for summary judgment. (No. 14-

cv-1006, ECF No. 18.)

On July 22, 2014, the Court granted Orly's Rule 12(b)(1) motion[15] and

dismissed the action without prejudice, after finding that diversity jurisdiction was

inappropriate because both Sagi and Orly were domiciled in New York on the date

the action was filed. (No. 14-cv-1006, ECF No. 52.) Two days later, on July 24,

2014, Sagi commenced the instant proceeding, which was initially assigned to Judge

Caproni. (ECF No. 1.) On August 5, 2014, the case was reassigned to this Court,

which set an accelerated schedule for discovery, briefing, and trial owing to the

material similarity between this action and the previous one. (ECF No. 9.)

Orly filed a motion to dismiss under Rule 12 on August 27, 2014. (ECF No.

10.) The motion became fully briefed on September 18, 2014. (ECF No. 19.) The

Court denied the motion on September 19, 2014, finding that (1) subject-matter

jurisdiction over this action was appropriate; (2) Sagi had sufficiently alleged the

elements of the causes of action; and (3) the parties' briefing revealed a host of

factual issues outside the four corners of the complaint. (ECF No. 20.)

Both Sagi and Orly moved for summary judgment on October 20, 2014. (ECF

Nos. 32, 35.) Sagi filed motions in limine on November 17, 2014. (ECF No. 59.)

The following day, Orly filed motions in limine, (ECF No. 68), as well as a motion to

---

[15] The Court also denied as moot Orly's Rule 12(b)(6) motion to dismiss and Sagi's motion for summary judgment.

8

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 53 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 9 of 25

disqualify Sagi's counsel John Dellaportas from acting as counsel at trial on

November 18, 2014, (ECF No. 65). Sagi and Orly submitted their oppositions to

each others' motions in limine on November 24, 2014. (ECF Nos. 79, 81.)

Sagi then submitted his opposition to Orly's motion to disqualify on

November 26, 2014. (ECF No. 89.) That same day, the Court issued an order

stating its intention to decide the case on summary judgment, and adjourning the

trial date and all other dates. (ECF No. 90.) The parties submitted reply briefs on

December 5 and 6, 2014. (ECF Nos. 91, 92.)

      2.   Motion to compel production of the 2013 Settlement Agreement.

On September 30, 2014,[16] Sagi filed a letter-motion to compel production of

the 2013 Settlement Agreement. (ECF Nos. 22-23.) Orly filed her opposition to the

letter-motion on October 3, 2014, (ECF No. 25), the same day she filed her Answer,

(ECF No. 24). On October 7, 2014, the Court denied Sagi's letter-motion, based on

its mistaken belief that the 2013 Settlement Agreement was irrelevant to the claims

at issue. (ECF No. 26.)

Upon reviewing the parties' summary judgment briefing, the Court realized

its mistake, and on November 18, 2014 the Court vacated the October 7, 2014 order

and granted Sagi's letter-motion to compel.[17] (ECF No. 64.) In the November 18,

2014 order, the Court ordered the parties to submit three-page letters regarding the

potential impact of the 2010 Settlement Agreement on the claims and defenses at

---

[16] Sagi filed the same letter twice; once on September 30, 2014, and again on October 1, 2014. (ECF Nos. 22-23.) An additional exhibit is attached to the October 1, 2014 version.

[17] This order refers to the 2013 Settlement Agreement as the "2010 Settlement Agreement."

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 54 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 10 of 25

issue not later than November 25, 2014. (ECF No. 64.) The parties submitted their

letters on November 25, 2014. (ECF Nos. 84-85.)

II.   SUMMARY JUDGMENT STANDARD

Summary judgment may not be granted unless the movant shows, based on

admissible evidence in the record placed before the court, "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating

"the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986). When the moving party does not bear the ultimate burden on a

particular claim or issue, it need only make a showing that the non-moving party

lacks evidence from which a reasonable jury could find in the non-moving party's

favor at trial. Id. at 322-23. In making a determination on summary judgment, the

court must "construe all evidence in the light most favorable to the nonmoving

party, drawing all inferences and resolving all ambiguities in its favor." Dickerson

v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's

claims cannot be sustained, the opposing party must set out specific facts showing a

genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F.

Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d

Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true

nature of the facts to overcome a motion for summary judgment," as "[m]ere

conclusory allegations or denials . . . cannot by themselves create a genuine issue of

material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159,

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 55 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 11 of 25

166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In

seeking to show that there is a genuine issue of material fact for trial, the non-

moving party cannot rely on mere allegations, denials, conjectures or conclusory

statements, but must present affirmative and specific evidence showing that there

is a genuine issue for trial.").

Only disputes relating to material facts—"facts that might affect the outcome

of the suit under the governing law"—will properly preclude the entry of summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)

(the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts").

III.   DISCUSSION

Under New York law, to recover for breach of contract, a plaintiff must prove

"(1) the existence of a contract between [plaintiff] and that defendant; (2)

performance of the plaintiff's obligations under the contract; (3) breach of the

contract by that defendant; and (4) damages to the plaintiff caused by that

defendant's breach." Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d

42, 52 (2d Cir. 2011) (citation omitted); see also Flomenbaum v. N.Y. Univ., 71

A.D.3d 80, 91 (N.Y. App. Div. 2009); Clearmont Prop., LLC v. Eisner, 58 A.D.3d

1052, 1055 (N.Y. App. Div. 2009). There is no triable issue as to whether all four

elements are satisfied in this case. Accordingly, the Court grants Sagi summary

judgment as to his breach of contract claim. There is also no triable issue as to

11

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 56 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 12 of 25

Sagi's promissory estoppel cause action, and so the Court grants him summary
judgment on that alternative basis.

    A.    <u>Enforceability</u>

        1.    <u>Integrated agreement.</u>

    Under New York law, "all writings which form part of a single transaction
and are designed to effectuate the same purpose [must] be read together, even
though they were executed on different dates and were not all between the same
parties." <u>This Is Me, Inc. v. Taylor</u>, 157 F.3d 139, 143 (2d Cir. 1998); <u>accord</u>
<u>Madeleine, L.L.C. v. Casden</u>, 950 F. Supp. 2d 685, 695-96 (S.D.N.Y. 2013).
Contracts that are executed at different times "should be interpreted together if 'the
parties assented to all the promises as a whole so that there would have been no
bargain whatever if any promise or set of promises had been stricken.'"
<u>Commander Oil Corp. v. Advance Food Serv. Equip.</u>, 991 F.2d 49, 53 (2d Cir. 1993)
(quoting 6 Samuel Williston & Richard A. Lord, <u>A Treatise on the Law of Contracts</u>,
§ 863:275 (3d ed. 1970)).  Whether multiple documents should be read as
constituting a single agreement depends on the intent of the parties. <u>TVT Records</u>
<u>v. Island Def Jam Music Grp.</u>, 412 F.3d 82, 89 (2d Cir. 2005); <u>accord</u> <u>Commander</u>
<u>Oil</u>, 991 F.2d at 52-53; <u>Madeleine</u>, 950 F. Supp. 2d at 696.  The intent of the parties
is "typically a question of fact for the jury, . . . [b]ut if the documents in question
reflect no ambiguity as to whether they should be read as a single contract, the
question is a matter of law for the court." <u>TVT Records</u>, 412 F.3d at 89 (citation
omitted).

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 57 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 13 of 25

In TVT Records, the Second Circuit determined two agreements to be integrated based, inter alia, on the fact that the documents were intended to effectuate the same result. Id. As the parties under the later agreement were obligated to honor all of the terms and conditions of the earlier agreement, the later agreement was "meaningless" without the first. Id. The fact that the documents were "negotiated and signed at different times, memorialized in different documents and involved different parties" did not dictate a contrary result, because these facts did not address "the legally operative question: whether the contracts were part of a single transaction intended to effectuate the same purpose." Id. at 90 (citations omitted).

Similarly, in This Is Me, the Second Circuit held that a jury was justified in reading two contracts together where they were executed "more or less" (but not exactly) concurrently, and where one of the two contracts stated that the two contracts were intended to be executed together, but the other contract did not. 157 F.3d at 145. The Court also noted that counsel for a defendant conceded in a letter that the two contracts were intended to be read together. Id.

The 2004 Promise and the 2004 Indemnity are sufficiently unambiguous such that there is no triable issue as to whether they form an integrated agreement, even though they were executed on different dates and were not all between the same parties, and in this sense no different than the agreements at issue in TVT Records. Indeed, neither agreement makes any sense without the promises expressed in the other. Without the 2004 Indemnity, Sagi could be obligated under the 2004 Promise

13

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 58 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 14 of 25

to pay Dalia double the economic benefit he received from his shares of TRI, and

Orly would effectively have received the shares as a gift.  Further, the 2004

Indemnity explicitly attaches and cross-references the 2004 Promise, which makes

the situation here directly analogous to that in TVT Records, where the later

agreement was "meaningless" without the earlier one.  Id. at 89.

There is accordingly no triable issue as to whether the documents were

"designed to effectuate the same purpose" and to "be read together."  This Is Me,

157 F.3d at 143.  For this reason, the Court will refer to the integrated agreement in

the rest of this Opinion as the "2004 Integrated Agreement.[18]

2.    Consideration.

Under New York law, to be valid, a contract must be supported by

consideration.  Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178

(2d Cir. 2006).  Consideration to support an agreement exists where there is "either

a benefit to the promisor or a detriment to the promisee."  Hollander v. Lipman, 65

A.D.3d 1086, 1087 (N.Y. App. Div. 2009) (quoting Weiner v. McGraw-Hill, Inc., 443

N.E.2 441, 445 (N.Y. 1982)).

As a general matter, "[a] promise to perform a pre-existing legal obligation

does not amount to consideration."  Murray, 444 F.3d at 178 (citing Goncalves v.

Regent Int'l Hotels, Ltd., 447 N.E.2d 693, 700 (N.Y. 1983)).  However, § 5-1105 of

New York's General Obligations Law provides:

---

[18] Orly vigorously disputes whether the 2004 Divorce Stipulation is integrated with the 2004
Promise and the 2004 Indemnity.  However, Sagi does not contend that the 2004 Divorce Stipulation
is integrated with the 2004 Promise and the 2004 Indemnity (ECF No. 57 at 10), and so the Court
need not reach this issue.

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 59 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 15 of 25

> A promise in writing and signed by the promisor or by his
> agent shall not be denied effect as a valid contractual
> obligation on the ground that consideration for the
> promise is past or executed, if the consideration is
> expressed in the writing and is proved to have been given
> or performed and would be a valid consideration but for
> the time when it was given or performed.

N.Y. Gen. Oblig. Law § 5-1105.

To meet § 5-1105's requirement that the consideration be "expressed" in the writing, the recitation of consideration must not be vague or imprecise.[19]  See United Res. Recovery Corp. v. Ramo Venture Mgmt., Inc., 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008); Movado Grp., Inc. v. Presberg, 259 A.D.2d 371, 371 (N.Y. App. Div. 1999); Umscheid v. Simnacher, 482 N.Y.S.2d 295, 297 (N.Y. App. Div. 1984).  For example, courts have held that the statements "past work on the Company's behalf" and "services rendered on the respondent's behalf" are too vague and imprecise to meet the expression requirement.  United Res. Recovery, 584 F. Supp. 2d at 656;

---

[19] In several cases, courts have stated that in order to recover under § 5-1105, "the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise."  E.g., United Res. Recovery Corp. v. Ramo Venture Mgmt., Inc., 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008) (quoting Umscheid v. Simnacher, 482 N.Y.S.2d 295, 297 (N.Y. App. Div. 1984)); In re Maxwell Commc'n Corp., 198 B.R. 63, 69 (S.D.N.Y. 1996) (same); Kreuter v. Tsucalas, 734 N.Y.S.2d 185, 188 (N.Y. App. Div. 2001) (same).  The citation provided for this statement of law is typically the Second Department's decision Umscheid v. Simnacher, 482 N.Y.S.2d 295 (N.Y. App. Div. 1984), which in turn cited as support Sarama v. John Mee, Inc., 102 Misc. 2d 132 (N.Y. Civ. Ct. 1979), and Citibank National Ass'n v. London, 526 F. Supp. 793 (S.D. Tex. 1981), the latter of which cited only Sarama as support for this proposition.

However, Sarama in fact states that "[i]n order for plaintiff to recover for breach of contract, defendant's letter must contain an unequivocal promise to pay a sum certain, at a date certain, and, further, it must conform with General Obligations Law [§] 5-1105, by expressing in the letter the consideration for the promise."  Sarama, 102 Misc. 2d at 133 (emphasis added).  Sarama thus states that the requirement of "an unequivocal promise to pay a sum certain, at a date certain" is a general requirement for recovery for breach of contract under the facts of that case, not a requirement for recovery under § 5-1105.  The Court further notes that the "sum certain" and "date certain" requirements are found nowhere in the text of § 5-1105, nor can they be implied from that text, and that New York's Court of Appeals has never embraced an interpretation of § 5-1105 encompassing those requirements.

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 60 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 16 of 25

Umscheid, 482 N.Y.S.2d at 297.  By contrast, in <u>Movado Group, Inc. v. Presberg</u>, the

Appellate Division of New York's First Judicial Department held that a

commitment to pay all of a company's debts to a party on an "absolute,

unconditional, and continuing" basis was sufficient to establish past consideration

under § 5-1105, despite its being "a broad commitment, certainly not limited to one

opening transaction." 259 A.D.2d at 371.

The 2004 Integrated Agreement clearly purports to provide each party with a

benefit in exchange for a legal obligation: Dalia receives financial support in

exchange for the transfer of the TRI shares to the Sagi Trust and the Orly Trust;

Sagi receives an ownership interest in the TRI shares[20] in exchange for a

commitment to financially support Dalia; and Orly receives an ownership interest

in TRI shares in exchange for a commitment to indemnify Sagi.

Orly contends that the 2004 Integrated Agreement is not supported by

consideration for two reasons.  First, Orly contends that the 2004 Integrated is not

supported by consideration because the Orly Trust never received the TRI shares.

But the 2004 Promise states that Orly and Sagi are benefiting from receipt of <u>either</u>

the TRI shares <u>or</u> "beneficial interests in those shares," by their respective trusts.

(ECF No. 1 ex. A.)  Thus, the question becomes whether Orly has benefited from the

---

[20] Sagi contends that the contract is supported by two forms of consideration: (1) the Orly Trust's
receipt of the TRI shares as part of the divorce stipulation; (2) love, affection, and the end to parental
strife. (Compl. ¶ 8.)  The Court rejects Sagi's argument that the 2004 Integrated Agreement is
supported by consideration because Orly received an emotional and psychological benefit in helping
to bring about an end to her parents' bitter divorce. Affection, love, and feelings cannot constitute
consideration under New York law. <u>See, e.g.</u>, <u>McRay v. Citrin</u>, 706 N.Y.S. 2d 27, 28 (N.Y. App. Div.
2000); <u>Rose v. Elias</u>, 576 N.Y.S.2d 257, 258 (N.Y. App. Div. 1991); <u>see also</u> 22 N.Y. Jur. 2d Contracts
§§ 116-17.

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 61 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 17 of 25

Orly Trust's receipt of beneficial interests in the TRI shares. There is no genuine dispute as to whether she has so benefited: Orly's claims to beneficial ownership of the TRI shares individually and as a trust beneficiary enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement Agreement. Further, no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares.[21]

Second, Orly contends that the TRI shares cannot serve as valid consideration because they had already been transferred when the 2004 Indemnity was signed, and they were transferred pursuant to the 2004 Divorce Stipulation, which is a separate agreement. This argument fails because the 2004 Integrated Agreement satisfies § 5-1105 of New York's General Obligations Law. The past consideration is precisely and unambiguously stated in the 2004 Promise, which states that "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for [their] benefit." (ECF No. 1 ex. A.) This statement is sufficiently precise and unambiguous so as to satisfy § 1105's expression requirement—indeed, this statement is considerably more exact than a promise to pay all of a company's debts on an ongoing basis, which was found to be sufficient in <u>Movado Group</u>. And as established above, there is no triable issue as to whether Orly was for all intents and purposes given a beneficial interest in the TRI shares.

---

[21] The Delaware Court of Chancery's beneficial ownership determinations were reversed by the Supreme Court of Delaware's July 18, 2011 decision. <u>Genger v. TR Investors, LLC</u>, 26 A.3d 180, 203 (Del. 2011).

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 62 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 18 of 25

Accordingly, there is no triable issue as to whether the 2004 Integrated

Agreement was supported by valid consideration.[22]

B.    Defenses

There is no triable issue as to whether Orly has a viable defense to the 2004

Integrated Agreement.

1.    Judicial estoppel.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial

process by prohibiting parties from deliberately changing positions according to the

exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)

(citation and internal quotation marks omitted).  The decision whether judicial

estoppel should bar a litigant from making a particular argument is highly fact-

specific.  See id. at 751.  Several considerations counsel in favor of applying the

doctrine in a particular case: (1) the party's later position is clearly inconsistent

with its earlier position; (2) the party has succeeded in persuading a court to accept

its earlier position, so that judicial acceptance of an inconsistent position in a later

proceeding would create the perception that either the first or the second court was

misled; (3) the party asserting the inconsistent position would derive an unfair

advantage or impose an unfair detriment on the opposing party if not estopped.

Adelphia Recovery Trust v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014)

(citing New Hampshire, 532 U.S. at 750-51).  However, "[b]ecause the doctrine is

---

[22] Orly makes much of the fact that the 2013 Settlement Agreement did not release the Orly Trust's
claims to the TRI shares.  But this fact does nothing to disprove that Orly benefited from her claim
to beneficial ownership of the TRI shares, and to the extent that it is relevant, it just provides
further evidence that the Orly Trust had a legitimate claim to beneficial ownership of the TRI
shares.

18

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 63 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 19 of 25

primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." Id. (alteration in original) (quoting Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 397 (2d Cir. 2011)).

Orly argues that Sagi should be judicially estopped from arguing that the Orly Trust received a beneficial interest in the TRI shares. However, in this case embracing Sagi's position runs no risk of endangering judicial integrity, as no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares. Further, there is no reason to believe that permitting Sagi to argue that the Orly Trust received the beneficial interest in the TRI shares would give Sagi an unfair advantage or impose an unfair detriment on Orly— indeed, embracing Orly's argument here would effectively allow her to avoid paying hundreds of thousands of dollars due under an otherwise valid agreement for a technical and formalistic reason unrelated to the equities of the situation. Accordingly, even assuming that Sagi has taken an inconsistent litigation position,[23] judicial estoppel does not bar Sagi from arguing that the Orly Trust received beneficial ownership of the TRI shares.

    2.   Mutual mistake.

"A contract is voidable under the equitable remedy of rescission if both parties entered into the contract under a mutual mistake of fact." Schultz v. Hourihan, 656 N.Y.S.2d 526, 528 (N.Y. App. Div. 1997). In order to obtain

---

[23] Given the strong rationale for not applying the doctrine of judicial estoppel here, the Court need not delve into the specific arguments advanced by Sagi or TPR in the course of their numerous years of prior litigation involving Orly and/or the TRI shares.

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 64 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 20 of 25

rescission of a contract due to mutual mistake, "it must be shown that the mistake

in question is mutual, substantial, material and exists at the time the contract is

entered." Rodriguez v. Mower, 56 A.D.3d 857, 858 (3d Dep't 2008) (citation

omitted). In New York, a mutual mistake must be established by "clear and

convincing" evidence. E.g., Carney v. Carozza, 792 N.Y.S.2d 642, 644 (N.Y. App.

Div. 2005); Silver v. Gilbert, 776 N.Y.S.2d 867, 867 (N.Y. App. Div. 2004).

Orly first argues that if the 2004 Integrated Agreement is valid, it should

nevertheless be rescinded because there was a mutual mistake as to whether Sagi

and Orly were being treated equally in their parents' divorce. This argument fails

because there was no mistake of fact here—the 2004 Divorce Stipulation and the

2004 Integrated Agreement explicitly provide for equal treatment of Orly and Sagi.

Orly further argues that the parties were mutually mistaken with regard to

whether the interests in the TRI shares could be validly transferred to their trusts,

such that they would receive equal interests in the TRI shares. This argument too

fails, because as established above, the parties were in fact only mistaken as to

their ability to receive and/or monetize record ownership in the TRI shares, and this

mistake was not substantial or material because the money was clearly in the

beneficial interest—Orly monetized her beneficial interest in the Orly Trust shares

for $32.3 million, while Sagi sold his interests in the TRI shares for $37.0 million.

In any event, rescission due to mutual mistake is an equitable remedy, and it

would not serve the interests of equity to rescind the 2004 Integrated Agreement

here, as doing so would enable Orly to obtain her benefit from the agreement (the

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 65 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 21 of 25

$32.3 million she received for the beneficial interest in the TRI shares) while

*escaping her obligations under it (her commitment to financially support her*

mother). Accordingly, the Court declines to rescind the contract under the doctrine

of mutual mistake.

3.    <u>Lack of opportunity to defend.</u>

*Orly argues that as an indemnitor she has no contractual duty to indemnify*

Sagi without first receiving notice and a chance to defend. Under New York law, an

indemnitee cannot seek reimbursement from an indemnitor unless the indemnitee

first notifies the indemnitor of a potentially covered claim and gives them an

opportunity to defend against it. <u>See Chase Manhattan Bank v. 264 Water St.</u>

<u>Assocs.</u>, 634 N.Y.S.2d 687, 689 (N.Y. App. Div. 1995). However, notice to the

indemnitor is not required if an indemnitee can "establish that [it] would have been

liable and that there was no good defense to that liability." <u>Deutsche Bank Trust</u>

<u>Co. of Ams. v. Tri-Links Inv. Trust</u>, 900 N.Y.S.2d 246, 253 (N.Y. App. Div. 2010).

Although the parties do not dispute that Sagi twice informed Orly and her

counsel of Dalia's demand prior to paying Dalia, they do dispute whether Sagi

informed Orly of his intention actually to honor Dalia's demand. (<u>See</u> DRSOF ¶ 7;

PRSOF ¶ 61.) Ultimately, however, even if Sagi did fail to properly notify Orly,

notice was not required as a matter of law because Sagi had no good defense against

Dalia's demand—the 2004 Integrated Agreement expressly gives Dalia the right to

make such a demand and clearly obligates Sagi to pay it, and as established above

there is no valid argument against the agreement's enforceability or validity.

Accordingly, the parties' dispute over whether Sagi properly provided Orly with

21

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 66 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 22 of 25

notice does not preclude this Court from granting Sagi summary judgment as to the validity of the indemnification obligation as a matter of law.

### C.    Performance, Breach, and Damages

The parties do not dispute that Sagi performed his obligations under the 2004 Integrated Agreement, as it is undisputed that Sagi paid Dalia $200,000. There is also no dispute as to whether Orly breached the 2004 Indemnity by refusing to pay Sagi, and nor is there a dispute that Sagi suffered damages of at least $100,000 as a result.  Accordingly, because the 2004 Integrated Agreement is valid and enforceable, there is no triable issue as to whether all of the elements of Sagi's breach of contract claim are satisfied, and summary judgment is thus granted in Sagi's favor as to his breach of contract claim.

### D.    Promissory Estoppel

Even if the 2004 Integrated Agreement were not valid and enforceable, Sagi is also entitled to equitable relief under the doctrine of promissory estoppel.  "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."[24] Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (citing Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)).

---

[24] "New York courts limit promissory estoppel claims to instances of unconscionable injury only where promissory estoppel is invoked as a defense to the Statute of Frauds. . . . But New York courts generally do not require a showing of unconscionability where promissory estoppel is invoked to prevent injustice stemming from reliance on a gratuitous promise." Pearce v. Manhattan Ensemble Theatre, Inc., 528 F. Supp. 2d 175, 181 (S.D.N.Y. 2007) (collecting cases).

20-01188-jlg    Doc 1-9    Filed 06/20/20    Entered 06/20/20 21:15:49    NoR part 10
Pg 67 of 173
Case 1:14-cv-05683-KBF    Document 94    Filed 01/05/15    Page 23 of 25

In the 2004 Indemnity, Orly made a clear and unambiguous promise to indemnify Sagi for "one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . , including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]." (PSOF ¶ 5.) There is no material dispute as to whether Sagi relied on this promise in paying Dalia, or that he sustained injury as a result of this reliance.

However, Orly argues that Sagi's reliance was not reasonable or foreseeable, because when he paid Dalia he was already aware that Orly disputed the validity and enforceability of the 2004 Integrated Agreement. This argument is unpersuasive. First, the time from which foreseeability is determined is when the promise is made, not the time of performance, and there is no genuine dispute as to whether it was foreseeable that Sagi would rely on the promise when it was made. Second, there is no genuine dispute as to whether Sagi's reliance was reasonable, because as explained above, Orly's position that the 2004 Integrated Agreement was invalid and unenforceable objectively lacked merit.

Orly argues that Sagi should be barred from recovering under a theory of promissory estoppel due to unclean hands. "The doctrine of unclean hands applies when the complaining party shows that the offending party is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." Kopsidas v. Krokos, 742 N.Y.S.2d 342, 344

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 68 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 24 of 25

(N.Y. App. Div. 2002) (quoting <u>Nat'l Distillers & Chem. Corp. v. Seyopp Corp.</u>, 17

N.Y.2d 12, 15-16 (N.Y. 1966)) (internal quotation marks omitted).  Orly argues that

Sagi's hands are unclean because under his Presidency, TPR was obligated to

effectuate the transfer of the TRI shares to her, and failed to do so.  However, on

July 24, 2014, the Appellate Division of New York's First Judicial Department held

that as an officer of TPR, Sagi's fiduciary duty was to the corporation and its

stockholders, and that Sagi had not breached any duty to Orly in failing to honor

the agreement to transfer the TRI shares to her trust.  <u>Genger v. Genger</u>, 121

A.D.3d 270, 278-79 (N.Y. App. Div. 2014).  Sagi's behavior here is consistent with

his duty to TPR and its shareholders, and does not rise to the immoral or

unconscionable level required to bar him from relief under the doctrine of unclean

hands.

Accordingly, there is no triable issue as to Sagi's promissory estoppel claim,

and Sagi is granted summary judgment on that cause of action in addition to his

breach of contract cause of action.

IV.   CONCLUSION

For the above reasons, the Court GRANTS Sagi's motion for summary

judgment, DENIES Orly's motion for summary judgment, and DENIES AS MOOT

Orly's motion to disqualify and all pending motions <u>in limine</u>.

20-01188-jlg   Doc 1-9   Filed 06/20/20   Entered 06/20/20 21:15:49   NoR part 10
Pg 69 of 173
Case 1:14-cv-05683-KBF   Document 94   Filed 01/05/15   Page 25 of 25

The Clerk of Court is directed to close the motions at ECF Nos. 32, 35, 59, 65,

and 68 and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            January **5**, 2015

                                        *K⎯ B. Foe*
                                    KATHERINE B. FORREST
                                    United States District Judge

25

FILED: NEW YORK COUNTY CLERK 04/03/2015 12:31 PM
INDEX NO. 651089/2010
NYSCEF DOC. NO. 1275
RECEIVED NYSCEF: 04/03/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CIVIL TERM:  **PART:  12**
---------------------------------------------X
ARIE GENGER and ORLY GENGER, in her
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,

                         Plaintiff(s),

                                              INDEX NO.
              -against-                        651089/10

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST,
ROCHELLE FANG, individually and as trustee
of THE SAGI GENGER 1993 TRUST, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC.,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,

                         Defendant(s).
---------------------------------------------X
SAGI GENGER, individually and as assignee of
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.,

                   Cross-Claimants, Counterclaimants
                      and Third-Party Claimants,

              -against-

ARIE GENGER, ORLY GENGER,
GLENCOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC., JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., WILLIAM
DOWD, and THE ORLY GENGER 1993 TRUST,

                   Cross-Claim, Counterclaim and/or
                      Third-Party Defendants.
---------------------------------------------X
                          80 Centre Street
                          New York, New York 10007
                          March 25, 2015

**B E F O R E:**

**THE HONORABLE BARBARA JAFFE,**
                          **J U S T I C E**

                    *Eric Allen*
                *Official Court Reporter*

2

1

2    **A P P E A R A N C E S:**

3    MITCHELL, SILBERBERG & KNUPP, LLP
     Attorneys for Arie Genger
4    12 East 49th Street
     New York, New York 10017
5    BY:  PAUL D. MONTCLARE, ESQ.

6

7    ZEICHNER ELLMAN & KRAUSE, LLP
     Attorneys for Plaintiff Orly Genger
8    1211 Avenue of The Americas
     New York, New York 10036
9    BY:  YOAV M. GRIVER, ESQ.

10

11   JUDITH LISA BACHMAN, ESQ.
     Attorney for Defendant Dalia Genger
12   254 South Main Street
     New City, New York 10956
13

14

15   MORGAN, LEWIS & BOCKIUS, LLP
     Attorneys for Defendant TPR Investments
     101 Park Avenue
16   New York, New York 10178
     BY:   JOHN DELLAPORTES
17

18

19

20

21

22

23

24

25

26

                              *Eric Allen*
                         *Official Court Reporter*

1

2            THE COURT:  So, this is your motion,

3      Ms. Bachman.

4            MS. BACHMAN:  It is, your Honor.

5            Good morning.

6            THE COURT:  Good morning.

7            MS. BACHMAN:  So, this motion has been pending

8      for a long time, so I want to make sure that the Court

9      is aware of sort of the context in which our --

10           THE COURT:  What happened in surrogates?

11     Nothing yet from --

12           MS. BACHMAN:  It has not -- Dalia is still the

13     trustee.  The court has required further proceedings

14     with regard to making sure that the Sagi Trust is

15     included in the matter, so it remains at the status quo

16     that Dalia is still the trustee.

17           THE COURT:  Do you know when -- is there any

18     clue as to when that case is going to be decided?

19           MS. BACHMAN:  I do not know, your Honor.

20           MR. GRIVER:  Your Honor, the only relevant

21     happening, I think, in the case, is that the surrogate

22     court appointed a guardian for the children who are the

23     remainder -- continuing remainderment for the Sagi

24     trust and he filed, I believe last week, position

25     papers saying that he agrees with our position that

26     Dalia should be removed as trustee and that she has

4

 1

 2          violated her obligations.

 3               THE COURT:  Okay, but that's not part of the

 4          record before me right now.

 5               MR. GRIVER:  That is -- no.  The remainderment

 6          for the -- excuse me.  The remainderment for the Orly

 7          Trust.

 8               THE COURT:  Yes.  That I understand.

 9               MR. GRIVER:  We can certainly file it with the

10          Court.  We think it is a subsequent document that has

11          relevancy to these proceedings if your Honor thinks so.

12               MS. BACHMAN:  And, obviously, that issue hasn't

13          been adjudicated and, as the Court noted, is not part

14          of the record.

15               So, with that caveat in mind, I think it is

16          important to understand the context of what's happened

17          here.

18               When we brought this motion, I think, back in

19          August of last year, we had not yet seen the settlement

20          agreement and the Federal Court had not yet opined on

21          the effect that they believed that the settlement

22          agreement had on what Orly gained from the Orly trust

23          shares.  So, as part of this motion, I have included

24          Judge Keenan's two decisions which opine and conclude

25          that the settlement agreement is a monetization of

26          Orly's -- the Orly Trust shares.  Essentially, she

1

2    traded the trust shares as part of the settlement and

3    acknowledged that the Trump Group is the owner --

4         THE COURT:   Was it in Keenan's decision or was

5    it Forest's?

6         MS. BACHMAN:   I apologize, thank you.   Yes,

7    Forest.   I could tell by your face that I had gone

8    astray, so I appreciate it.

9         Judge Keenan's decision --

10        THE COURT:   No, Judge Forest.

11        MS. BACHMAN:   Sorry, Judge Forest's decision.

12   Delete Keenan from the record.

13        So, based on that decision, it is now our

14   understanding with that decision that the settlement

15   agreement was basically the exchange:   The Orly Trust

16   interest in the shares for a whole bunch of money.

17        The Trump Group had been consistent before this

18   Court in acknowledging that they viewed the settlement

19   as the settlement of the interest of the Orly Trust

20   shares and that it was an exchange of money for those

21   shares.   They effectuated that and acknowledged that by

22   encouraging and asking the Delaware chancery court to

23   dismiss and acknowledge that the shares now belonged to

24   the Trumps.

25        Orly's attorneys have taken somewhat interesting

26   turns along the way.   Before this Court, when this

1

2          Court was hearing the issue of whether it should so

3          order the settlement, Mr. Griver, I believe, argued

4          that, no, we are not settling the trust claims and, in

5          fact, quote, "Dalia can pick up the cudgel."

6               The Court said in it's decision, look, I can't

7          tell whether the trust shares -- whether the trust

8          claims are dismissed or not as part of the settlement

9          and until I get clarification, you accurately stated, I

10         believe, I cannot tell who the settlement proceeds

11         belonged to.  I can't tell whether they belong to the

12         trust or to Orly individually.  So, the Court invited

13         the parties to clarify who they viewed as the settling

14         parties and whether the trust had dismissed its claims

15         or not.

16               None of the settling parties acceded to the

17         Court's invitation and with that ambiguity, we were

18         left to protect the interests of the trust.  We brought

19         this motion seeking first for Dalia to be substituted

20         in if claims remained since Orly has stepped back and

21         said that she is no longer prosecuting the case as a

22         derivative plaintiff.  And under well-settled New York

23         law, if a derivative plaintiff is no longer prosecuting

24         the action on behalf of the principal, then it is

25         appropriate for a party to be substituted who has an

26         actual interest in protecting that principal.  That

1

2        would be, obviously, the trustee of the trust.

3            Likewise, as a second branch and perhaps now

4        more importantly, we simultaneously moved for the

5        settlement proceeds to be paid into court pending an

6        allocation and determination of who that money belongs

7        to and that's why we are before you today.

8            We now have seen the settlement agreement and it

9        seems to confirm and be consistent with the Trump

10       Group's position that they intended to and did settle

11       all of the claims including, most importantly, the

12       trust claims and at the end of the day that's what they

13       bought and paid for:   The trust shares.   And if they

14       bought and paid for the trust shares, the money belongs

15       to the trust.

16           Thank you.

17           MR. ALLINGHAM:   Your Honor, I don't know who

18       should speak next, but I think it would be helpful I

19       should speak next to make clear submissions.

20           MR. GRIVER:   No objection.

21           MR. ALLINGHAM:   Tom Allingham for the Trump

22       Group.

23           The settlement agreement settles claims.   It

24       doesn't buy shares.   The shares had already been

25       purchased as the Delaware court has found, pursuant to

26       an agreement that was entered into back in 2008 and the

8

1

2      closing on those shares was 2012 or '13, '11, whenever.

3      Those shares had been purchased a long time ago.  There

4      remained claims of the Orly trust against the Trump

5      Group and that's what was settled in the settlement

6      agreement.  We paid money for a release of claims that

7      Arie, Orly and the Orly Trust had against the Trump

8      Group and that's what we paid the money for, so that's

9      point number 1.

10          Point number 2:  I think this is an unusual

11     situation, at least in my experience.  The moving party

12     now agrees with the position that we've taken since the

13     settlement agreement was entered into in June of 2013

14     that among the claims that we purchased a release of,

15     among the claims that we settled were the claims of the

16     Orly Trust and so the relief that is sought -- there

17     were two forms of relief sought in the motion, as

18     Ms. Bachman said.  One was, "I want to intervene to

19     pursue these claims."  That form of relief we oppose.

20     Because those claims have now, as conceded, I think, by

21     everybody -- everybody agrees that they were released,

22     there are no claims currently pending and, in fact,

23     there are no claims that could be pending into which

24     Dalia could intervene.  So, the motion --

25          THE COURT:  There is nothing to --

26          MR. ALLINGHAM:  Correct.  There is nothing

*Eric Allen*
*Official Court Reporter*

1

2      there, nothing to intervene in, so the motion to

3      intervene should be denied.

4              THE COURT:  It's a motion to be substituted.

5              MR. ALLINGHAM:  To be substituted.  I think of

6      it as an intervention motion, but, yes, your Honor.

7              And I don't think that if you look at the

8      papers, anybody really disputes that.  In Dalia's

9      brief, she says it has now been definitively revealed

10     that Orly settled the Orly Trust's claims against the

11     Trump Group.  In the Sagi submission, not a brief but

12     an affirmation from Mr. DellaPortas, it's the same

13     thing:  "Having finally seen the settlement agreement,

14     it is eminently clear that there is no cudgel for Dalia

15     to pick up.  The claims" -- and these are the claims of

16     the Orly Trust -- "were released, as Mr. Allingham had

17     correctly told the Court in his June 2013 letter."

18             So, where does that leave us?  That leaves us

19     with the second form of relief, which is should any

20     form of relief be entered against the settlement

21     proceeds that have either -- that have either been paid

22     or may in the future be paid pursuant to the settlement

23     agreement.

24             With respect to the 18 or so million dollars --

25     I think it's actually 17 and a quarter million dollars,

26     but the money that's already been paid in cash, we

1

2      don't have it.  We have no claim to it.  We take no

3      position on that money.  The Court may or may not have

4      jurisdiction to enter relief against whoever has got

5      that money, but we don't know who it is.  We know who

6      we paid it to, but we don't know who has the money now.

7          With respect to the remaining settlement

8      proceeds that may be paid in the future, that is in the

9      form of two notes; each in the principal amount of 7

10     and a half million dollars.

11         There are a number of conditions that may affect

12     the maturity date of those notes.  They have a nominal

13     maturity date of June of 2016 and June of 2017, but

14     they could be accelerated or extended.

15         Also, we have a contractual right to set off any

16     unpaid indemnification amounts under the settlement

17     agreement.  In the settlement agreement, we paid not

18     only for releases from Arie, Orly and the Orly Trust,

19     but we also paid -- so that's peace from those three

20     parties -- but we also paid for an indemnification from

21     Arie, Orly and the Orly Trust against any defense

22     costs, settlement payments or judgments in a broad

23     array of actions that could be brought by any Genger

24     family member.  So although we couldn't buy complete

25     peace, we tried to buy an insurance policy against the

26     peace that remained out there.

*Eric Allen*
*Official Court Reporter*

1

2        So, we have a setoff right against -- we have a

3    contractual obligation to pay on those notes.  When

4    that will come due is determined by a lot of factors.

5    When they come due, we have a contractual right of

6    setoff against the $15 million face amount of those

7    notes.

8        And so, with respect to the future payments,

9    what I would say is this:  No payment is due now, so I

10    think any relief on the future payment would be

11    premature.

12        To the extent any relief were to be entered now

13    as to these future payments, it shouldn't be entered

14    against the Trump Group which has a contractual

15    obligation to pay the payee.  It should either be

16    entered in the nature of an in rem remedy against the

17    notes themselves, deliver them to you or whatever, or

18    it should be entered and directed at the payee that

19    we're contractually obligated to pay, rather than to

20    direct it to the Trump Group which would abrogate our

21    contractual obligation to pay under the note.

22        So that's our position.

23        THE COURT:  Thank you.

24        MR. ALLINGHAM:  Thank you, your Honor?

25        THE COURT:  Who is next?  You don't have to

26    stand, Mr. Griver.

1

2            MR. GRIVER:  Thank you, your Honor.  I am

3       sometimes better when I stand.

4            A lot of times, this case has become somewhat

5       surreal, but I think this motion takes the cake.  There

6       is a museum in Cairo, Egypt called the October War

7       Museum that is dedicated to the proposition that Egypt

8       won the 1973 Yom Kippur war.  It looks like a museum.

9       You go in, there are exhibits on the second floor, you

10      can watch a film on the third floor.  There is a

11      diorama -- it's really nice.  It is a moving diorama,

12      360 degrees, all dedicated to the idea that Egypt won

13      that war; right?  Only problem is it's not true.

14            So, you go to someone who is at the museum, you

15      know, a guide and you say, well -- but Egypt lost the

16      war.  And he says, no, no, but look at that piece of

17      paper, look at that newspaper article where it says it

18      won.  Look at this piece of shrapnel.  Look at this

19      tank we captured from the Israelis; all of this proves

20      that we won; right?  And you can buy T-shirts and

21      everything and it looks real until you really look at

22      it and you realize that they are only talking about the

23      first day of the war and they completely ignore 99

24      percent of what happened; okay?

25            Mr. Allingham gets up here and says, oh, well,

26      we settled with the Trump -- we settled with the Orly

*Eric Allen*
*Official Court Reporter*

1

2          Trust; right?  Well, you know what?  You have to look

3          at the language of the CSA because the Orly Trust is

4          expressly excluded from the settling parties.

5          Mr. Allingham tried to get the trust claims included

6          and the Orly Trust included --

7                  THE COURT:  Which Orly entities settled?  There

8          is three in all, I take it?

9                  MR. GRIVER:  No.  There is the AG Group settled

10         so the Brosers settled, Arie settled --

11                 THE COURT:  I don't consider them -- the Orly

12         people are Orly individually, Orly as beneficiary of

13         the trust and the Orly Trust; is that right?

14                 MR. GRIVER:  Orly settled and it says it right

15         there:  Orly Genger in her individual capacity and in

16         her capacity as beneficiary of the Orly Genger 1993

17         trust.

18                 THE COURT:  And as beneficiary.

19                 MR. GRIVER:  And as beneficiary.

20         But the Orly Trust itself is expressly excluded

21         from the A.G. Group settling parties and is expressly

22         defined as a member of the nonsettling Sagi Group.

23                 THE COURT:  Is that your understanding,

24         Mr. Allingham?

25                 MR. GRIVER:  That is Page 3, by the way.

26                 MR. ALLINGHAM:  It is, your Honor.  That is the

*Eric Allen*
*Official Court Reporter*

14

1

2     way the agreement reads.

3            When Justice Feinman in --

4            THE COURT:  That's the end of it.  So the Orly

5     Trust is not settled.

6            MR. GRIVER:  That is the language that he signed

7     in exchange.

8            MR. ALLINGHAM:  It's more complex than that.

9            MR. GRIVER:  You know what else is in that?  Any

10    changes to that have to be in writing, agreed to by all

11    the parties, and we don't agree and there is no

12    writing.  He is talking about what he wanted and there

13    is also a -- where everything, all prior agreements, et

14    cetera, are merged.  There is a merger clause in there,

15    as well.

16           THE COURT:  Oh, no, do I perceive another action

17    or motion?

18           MR. GRIVER:  No, I don't believe so, your Honor,

19    because here's what also happened.  There was a second

20    amended stipulation of dismissal where we crossed out,

21    by hand, because it was mistakenly put in -- crossed

22    out by hand and your Honor was concerned about it and

23    that's why it became the second amended stipulation of

24    dismissal because that language was taken out.  And the

25    language that was taken out was any idea that the Orly

26    Trust settled the claims as part of that confidential

1

2      settlement agreement, the Orly Trust was removed and,

3      indeed, the Orly Trust remained -- the claims of the

4      Orly Trust remained, specifically in that second

5      amended stipulation of dismissal, which allowed the two

6      injunctions -- the injunctions against the Trump Group

7      and the injunctions against everybody else, including

8      Dalia Genger -- to pursue her claims in Delaware --

9              THE COURT:  So you agree with Ms. Bachman on

10     that; that the Orly Trust claims remain and --

11             MR. GRIVER:  The Orly Trust claims remain --

12             THE COURT:  So the only issue remains, of

13     course, whether Dalia should be substituted, which I

14     take it -- but you say the trust claims remained --

15     does everybody agree?

16             MR. GRIVER:  No, it remained.  The second

17     amended stipulation of dismissal, which dismissed

18     Orly's claims as an individual and as a beneficiary is

19     what happened in this court.  As part of that

20     stipulation, the claims of the Orly Trust were not

21     settled -- were not dismissed and Ms. Bachman and Dalia

22     were permitted to reinvigorate a lawsuit in Delaware

23     that they had commenced claiming the right to the

24     shares and go moving against the Trump Group and TPR,

25     et cetera; right?

26             We had gotten those stayed previously because

16

1

2          our concern was that Dalia would not vigorously pursue

3          those claims on behalf of the Orly Trust.

4               Dalia went down to Delaware, immediately settled

5          with TPR and with the Trump Group.  Now, if her claims

6          had already been settled two months before, then what

7          was she doing down in Delaware?  But she went down to

8          Delaware.  She didn't come in at the time and say, hey,

9          wait a second, wait a second, I want my moneys.  No.

10         She went down to Delaware, settled with everybody else,

11         TPR and the Trump Group, and it was that settlement

12         that caused the 1st Department to dismiss the claims

13         here because they said there is nothing left because of

14         the Delaware stipulation.

15              So, Dalia has already taken care of it and

16         because of that there are no claims left.  The Court of

17         Appeals has so ruled, the 1st Department has so ruled

18         that the fact that we are here arguing about her

19         attempt to substitute herself in when she settled

20         already as a trustee -- she gets one chance to settle.

21         We gave you the Delaware stipulation.  That's what she

22         says.  She makes findings of fact that are -- that help

23         Sagi.  She makes statements that help Sagi and then

24         finally she settles all of her claims on behalf of the

25         trust claiming to properly represent the trust.

26              Now, that's something that we are going to raise

1

2          up in the surrogate's court.  That is another example

3          of Dalia misusing her power as trustee, but that has no

4          bearing on this.  There are no claims left because the

5          Orly trust settled her claims in Delaware and Orly

6          individually and as beneficiary settled the claims with

7          the Trumps in the confidential settlement agreement.

8               The money that they are trying to get now is

9          above the $10 million that the Delaware settlement

10         caused to be given to TPR and that's the Keenan

11         decision.  The Keenan decision was, well, now that the

12         Delaware stipulation exists and the Orly Trust is

13         decided, that everything's okay with the Orly Trust,

14         well, then the sale of the shares back in 2008, the

15         proceeds go to TPR.  It's in our papers.

16              THE COURT:  I am shaking my head nodding just to

17         the extent that I understand what you are saying.

18              MR. GRIVER:  Right, okay.

19              Very simply, Orly settled with the Trumps in

20         June.  The Orly Trust settled with the Trumps in

21         August, two months later.

22              Now, we go to -- and the main point, your Honor

23         is there are no claims left and since there are no

24         claims left, her substitution motion just fails.  It's

25         that simple.

26              Then we go to the second part of her claim,

18

1

2      which is CPLR 2701.  She wants the proceeds of Orly's

3      settlement with the Trumps to be paid into court and

4      she just can't do that.  Most attorneys, I think, would

5      simply read the language of the statute to determine

6      that the language of the statute bars their ability to

7      bring a motion and stop right there, but that's not

8      what happened here.  What happened here is that they

9      proceeded nonetheless.  And the motion to have the

10     proceeds paid in court doesn't work because under CPLR

11     2701, that CPLR provision, your Honor, is designed very

12     narrowly to take care and protect moneys that are the

13     subject of an action.  And there are three sub parts.

14            First of all, it has to be the subject of an

15     action.  The moneys that are the settlement with the

16     A.G. Group but not the Orly Trust are not part of the

17     2010 case which, in any event, no longer exists.

18            But you can go and look at each one of the

19     individual subparagraphs and see that it doesn't work.

20            The fourth one is if a third party is a trustee

21     and is holding the money, like the comptroller of the

22     -- the State comptroller.  The State comptroller has,

23     let's say, death benefits.  The person has died.  It is

24     claimed both by the beneficiary of the will and by the

25     ex-wife who is named in the policy for the death

26     benefits.  They are fighting over that specific sum of

1

2      money and the comptroller has to pay it to somebody so

3      he pays it into court on a monthly basis until the

4      court rules does widow A get it or widow B get it.

5      That's clearly not the situation here.

6            The second one is where there are special

7      circumstances that make it desirable that payment be

8      made to -- that payment be made into the court instead

9      of two the parties.  Well, as Mr. Allingham correctly

10     noted, some of the money has already been paid, some of

11     the money will be paid and there are no special

12     circumstances here that should delay any of that.

13     There is no evidence that they have come in that said

14     that there is a special circumstance that requires the

15     court to protect the moneys.  There is not even a claim

16     against those moneys in a court of law.

17           Third is the situation where ownership of the

18     property will depend on the outcome of the pending

19     action.  That also is inapplicable here.  There is no

20     pending action, number one.  And, number two, even if

21     there was, you can look at all the counterclaims, all

22     of the cross-claims, all of the original claims, none

23     of it has to do with the confidential settlement

24     agreement so it simply does not apply.

25           And it can't serve as a legal basis for what

26     Dalia is attempting to do.  She made her own decision

*Eric Allen*
*Official Court Reporter*

20

1

2          to settle and she settled it as she saw fit; in a way

3          that was destructive to Orly and we'll take care of

4          that later, but in a way that she decided to settle

5          those claims.  There is a stipulation in Delaware and

6          they ignore that.  They ignore the second amended

7          stipulation of dismissal in this court and what

8          happened -- the fact that they went ahead and then used

9          that stipulation to say, oh, there are still claims for

10         Orly Trust.  Now they are claiming that the Orly Trust

11         claims didn't even exist at the time that they went

12         into Delaware and how is that possible?  And

13         Mr. Allingham chooses to ignore the actual language of

14         the confidential settlement agreement which he cannot

15         do because he negotiated that language, he chose to

16         have his client sign that language and for him to come

17         in and say well let me explain to you how the language

18         should be ignored is improper, entirely so.

19              So, I am going to sit down and say nothing else.

20         Thank you.

21              MR. MONTCLARE:  Thank you, your Honor.  Paul

22         Montclare for Arie Genger.

23              I have just a few things to say.  I have to say

24         I agree with everything that Mr. Griver said.  It's not

25         to have him back in the courtroom.

26              It seems to me that we can address this really

*Eric Allen*
*Official Court Reporter*

1

2      pretty simply.  There is no action for her to

3      substitute into.  I mean, how can you substitute into

4      an action that's been completely dismissed, has been

5      completely affirmed, there is now no leave-to-appeal

6      motion pending to the Court of Appeals.  She is going

7      to be substituted in for Orly who lost the case against

8      the Trumps who are no longer in the case.  I mean, that

9      should end the whole analysis.  I don't understand why

10     we need to go past that.

11          The issue with respect to the confidential

12     settlement agreement, on behalf of Arie Genger, we were

13     a party to that agreement and they want to come in and

14     interfere with our property rights by just saying, oh,

15     we want it paid into court.  What action is there to

16     deprive us of our property rights being brought by --

17          THE COURT:  Well, I think what Mr. Griver

18     mentioned in his list of subdivisions of 2701, the only

19     one that piqued any interest was special circumstances,

20     so what about that?

21          MR. MONTCLARE:  But there are no -- there has to

22     be an existing action, your Honor.  There is no

23     existing action.

24          THE COURT:  So that -- you still need an

25     existing action for there to be special circumstances.

26          MR. MONTCLARE:  Yes.  Otherwise what do we just

22

1

2          have people walking in off the street and into court

3          and asking for an application to pay it into court?

4                    THE COURT:  It happens all the time.

5                    MR. MONTCLARE:  They could have early on tried

6          to get an attachment of that.  They could have done a

7          lot of things but the procedural mechanism they have

8          chosen is a little unusual.

9                    But it's not grounded in anything.  I think --

10         and also, it proceeds from a false assumption of what

11         their -- what they conceded in Delaware, which I am not

12         going to repeat; why we settled with Mr. Allingham's

13         clients in Delaware at a time when there are open

14         issues that made settlement possibility.  Much to my

15         great disappointment, that is no longer the case.  That

16         case is over against the Trumps.  It's over.

17                   And the reason she wants to substitute in is to

18         basically to sue the Trumps.  And that makes no sense

19         at all to me.

20                   THE COURT:  Okay, thank you.

21                   I think --

22                   MR. DELLAPORTAS:  Very briefly, your Honor.

23                   Three quick points:

24                   Number 1, Orly Genger brought claims in this

25         case on behalf of the Orly Genger 1993 Trust.

26                   Number 2, Orly Genger and her father got or are

1

2      going to get $32.3 million in settlement of those

3      claims and, number 3, those claims are no more and we

4      join in Ms. Genger's -- Mrs. Dalia Genger's position

5      that the money should be paid into court.

6          Subject to that, we respectfully disagree with

7      the comments of Mr. Montclare and Mr. Griver, except to

8      the extent that Mr. Griver described the Cairo museum,

9      which I have been to as well and I think it is an

10     accurate description of it.

11         And with that, we rest on our papers.

12         THE COURT:  Thank you.

13         MS. BACHMAN:  May I add something, your Honor?

14         THE COURT:  Sure.

15         MS. BACHMAN:  With regard to, I think, the

16     Court's very pointed question to Mr. Griver and

17     Mr. Allingham, who were the settling parties?  And I

18     think the Court described, at least conceptually, three

19     possibilities:  Orly as beneficiary and Orly

20     individually --

21         THE COURT:  Those were settled.

22         MS. BACHMAN:  Apparently.  Apparently that's

23     what Mr. Griver is saying.

24         THE COURT:  Signed, sealed, delivered.  You saw

25     the agreement.

26         MS. BACHMAN:  I have now seen the agreement.

*Eric Allen*
*Official Court Reporter*

1

2          The mystery party is what happened to the Orly

3     Trust.

4          THE COURT:  And that was in Delaware.  Kaputski

5     (phonetic) in Delaware; no?

6          MS. BACHMAN:  As I understand it, this case was

7     a derivative case presently pending today.  That's what

8     Orly described in her complaint, her claims to be.  She

9     is bringing this action, quote, "on behalf of the Orly

10    Trust as beneficiary of the Orly Trust to protect her

11    interest thereunder."  Her claim, as I understand it --

12    and unfortunately you have had a longer tenure in this

13    than I have -- but as I understand, it were purely

14    derivative claims.  I understand that she said in the

15    caption Orly Genger individually and on behalf of the

16    Orly Trust but the real claims were with regard to what

17    was done with the Orly Trust shares.  For them to say

18    she settled as a beneficiary and somehow that's

19    different than the trust is a distinction without a

20    difference.  If you are a beneficiary, you are, I

21    believe, saying I have a derivative right to sue

22    because the trust is not protecting my interest as the

23    beneficiary.

24          I don't understand how you can split that

25    difference and say, no, the beneficiary is something

26    different than the trust.  They have to be merged and

*Eric Allen*
*Official Court Reporter*

1

2          that's what she did in her complaint.

3                  And the entire settlement agreement is replete

4          with all of those references.

5                  It says, in defining who the A.G. Group is, that

6          Orly Trust, in quote, "all her capacities."  It doesn't

7          say in her individual capacity --

8                  THE COURT:  What about the second agreement?

9          Are you focusing on the second?

10                 MS. BACHMAN:  I am looking at what I believe to

11         be the actual -- the CSA.

12                 THE COURT:  The one where there is a writing, "I

13         wrote in" or something.

14                 MS. BACHMAN:  Correct.

15                 THE COURT:  I'm on Page 1 of that.

16                 MS. BACHMAN:  I am actually looking at the

17         settlement agreement itself, what she actually did.  On

18         Page 1 of that settlement agreement, it says -- it

19         defines Orly as "Orly Genger in all capacities."

20                 So, while they may be playing convenient word

21         games here -- I hope they are not -- but the settlement

22         agreement itself belies what I believe Mr. Griver is

23         trying to convince this Court of; that somehow there is

24         this distinction, this magical distinction that he is

25         now conveniently drawing which they weren't drawing in

26         the settlement agreement itself.

1

2          THE COURT:  Even assuming you are right, which I

3      am not sure you are, but assuming you are right, so

4      what?  If it was all settled, if two of the entities

5      settled in one way or the other and then Dalia went

6      down and settled with the Trump Group and TPR in

7      Delaware, what's left and why is there something left?

8      That's what I want to know.

9          MS. BACHMAN:  At least as I understand the

10     context of the Delaware settlement, it was motivated --

11     and if you look at the confidential settlement

12     agreement, it calls for the settlement of that Delaware

13     case.  It says go settle that case.  Orly --

14         THE COURT:  It doesn't say go settle it.  It

15     says something else; right?

16         MR. MONTCLARE:  Cooperate.

17         MR. GRIVER:  Cooperate.

18         MS. BACHMAN:  It says Orly will cause.

19         THE COURT:  Cause.

20         MR. GRIVER:  No, Orly will take efforts to

21     cause.

22         THE COURT:  Something like that.  It's a little

23     squishy.

24         MS. BACHMAN:  A little squishy, but the concept

25     is clearly there.  If he wants to look at the words,

26     which I think he had a part in drafting, that was idea.

*Eric Allen*
*Official Court Reporter*

27

1

2          The idea was we're buying peace, as Mr. Allingham said.

3          We're doing the best we can.  We don't want to hear

4          from you again.  Go away and make sure, as best you

5          can, this all goes away.

6               THE COURT:  So why is something left?  That's

7          what I don't understand.

8               MS. BACHMAN:  A, it's unclear if something is

9          left or not.  But even if it's not, fine, they settled

10         those cases.  They settled those claims and they got

11         paid for it.  If she brought this case as a derivative

12         plaintiff and she got paid for her derivative claims,

13         it is black letter law that that money, those

14         settlement proceeds on behalf of the derivative

15         plaintiff go to the principal.  They don't belong to

16         the individual.

17              THE COURT:  Aren't you too late?

18              MS. BACHMAN:  How so?

19              THE COURT:  It settled.

20              MS. BACHMAN:  But the payment hasn't been made

21         yet.

22              THE COURT:  I don't know.  It sounded like it

23         was.  And does it matter?  Does it matter that it

24         hasn't been paid?  Even if it hasn't been, the

25         agreement has been entered, it's -- is there a judgment

26         or something?

1

2          MR. ALLINGHAM:  Your Honor entered a stipulation

3     of dismissal and we have paid $17.25 million plus

4     interest and we are obligated on two more notes.

5          THE COURT:  As he said, it sounds like that ship

6     has sailed.

7          MS. BACHMAN:  There is $15 million that they owe

8     to the settling parties.  If you want to call that

9     spare change, I will take that change.  That's fine.

10          Mr. Griver talked about the fact that these --

11     the cases that I cited talk about a future stream of

12     payment; right?  He is talking about widows and orphans

13     getting paid in the future.  That is, by definition,

14     what this is.  We are talking about a future stream of

15     payment for claims that were settled.  Yes, the claims

16     were settled.  Mr. Allingham said repeatedly that he

17     bought peace.  The Orly Trust settled its claims under

18     the settlement agreement.  Otherwise, if -- as I

19     understand the Court's concern, if they settled the

20     claims, took all the money and we were not a party to

21     it, then they shouldn't have been in power to settle in

22     the first place.  They can't have it both ways.  They

23     can't settle the claims and take the money and then say

24     it's too late.  Either they settled the derivative

25     claims and money belongs to the trust or they didn't

26     settle the claims and those claims are out there and we

1

2      have the right to pursue them.

3            THE COURT:   I'll read your papers because I am

4      not quite sure I get it.

5            MR. GRIVER:   Your Honor, just very quickly.

6      Notice that she talks about the complaint.   She does

7      not talk about what happened in the settlement and she

8      misquotes the CSA.   The CSA is executed by the A.G.

9      Group and the Trump Group.   That's on Page 1.

10           Two defined groups:   The A.G. group is

11     specifically defined to be Orly Genger in her

12     individual capacity and in her capacity as beneficiary

13     of the Orly Genger 1993 trust.   The Orly Trust is

14     expressly excluded and on Page 3 is included with a

15     group called the Sagi Group which identifies the

16     nonsettling parties.   It's very simple.   There is an

17     entire agreement clause.   We have to amend it only by a

18     writing signed by all of the parties, so that language

19     is what controls; not the complaint but the language of

20     the settlement.

21           The second amended stipulation of dismissal,

22     Ms. Bachman wasn't here jumping up and down and saying,

23     hey, I have to be part of this because it's settling

24     the Orly Trust shares.   Instead, the Orly Trust was

25     specifically careted out and, in fact, Dalia, on behalf

26     of the Orly Trust, supposedly as the trustee, then

*Eric Allen*
*Official Court Reporter*

1

2 later went down to Delaware.  And she didn't say, hey,

3 you know what?  Good news.  All of my claims in this

4 case have been settled so see you later.  Bye.  She

5 went to the court and she said there is an existing

6 case, I have existing claims and here is the

7 settlement.  And when Orly went down and tried to get

8 involved in that settlement, then Dalia and her counsel

9 said, no, didn't listen to what Orly had to say and

10 then settled it against Orly's desires.

11  So for her to say, well, there is a provision

12 that says that Orly should attempt to get the Orly

13 Trust to settle, Orly wasn't involved in the

14 settlement.  She didn't cause the settlement in any

15 way, shape or form.

16  Please look at our papers and -- because our

17 papers are the only ones, the only ones to talk about

18 what actually happened; okay?  The rest of it, what

19 Ms. Bachman is talking about, she is talking about the

20 first day of the Yom Kippur war.  She knows the next

21 two weeks.  They may win this case in Egypt.  They will

22 not win in case before this Court.

23  MR. ALLINGHAM:  Your Honor, may I?

24  THE COURT:  If it's something you haven't

25 said --

26  MR. ALLINGHAM:  It's not something I have not

31

1

2   said.

3       What emerges from all of the arguments is that

4   everyone agrees that no claims remain for Dalia to pick

5   up, so the motion for substitution should be denied.

6       I agree with Mr. Griver that the Orly Trust

7   settled with the Trumps at some point.  He and I have a

8   disagreement about at what point.  Actually, we don't

9   even have a disagreement about at what point.  I

10  believe that the Orly Trust settled with the Trumps in

11  June in the settlement agreement.  I believe that the

12  Orly Trust settled with the Trumps in August in

13  Delaware --

14      THE COURT:  How can they do it twice?

15      MR. ALLINGHAM:  Your Honor, if you were in my

16  position and you had been involved in this litigation

17  as long as --

18      THE COURT:  I understand.

19      MR. ALLINGHAM:  I was looking for the

20  Delaware --

21      THE COURT:  It's belts and suspenders.

22      MR. ALLINGHAM:  -- the Delaware guarantee with

23  respect to title.  I was looking for whatever

24  protection I could get.

25      THE COURT:  Okay.

26      MR. ALLINGHAM:  Now, as to whether Orly could

*Eric Allen*
*Official Court Reporter*

 1

 2        settle as a beneficiary of the Orly Trust or

 3        derivatively on behalf of the Orly Trust, Justice

 4        Feinman, on January 3rd, 2013, found that Orly had

 5        derivative standing to bring claims on behalf of the

 6        Orly Trust.  I argued that she didn't.  I lost.

 7        Justice Feinman found that she did and that ruling is

 8        law of the case.

 9             Orly had derivative standing to bring claims on

10        behalf of the Orly Trust, according to Justice Feinman.

11        In what capacity?  I can't think of any other -- there

12        may be someone, but I can't think of any other capacity

13        than as the beneficiary.  So I believed in June that

14        when we said she is settling individually and as

15        beneficiary of the Orly Trust, I got a release of the

16        claims that were made against me derivatively by the

17        Orly Trust.  But, as Mr. Griver says, in August we got

18        a release and dismissal from the Orly Trust in

19        Delaware.

20             THE COURT:  Thank you.

21             MR. ALLINGHAM:  What is clear, though, is that

22        we have a release and a dismissal of the Orly Trust

23        claims.  Everyone seems to agree to that and there are

24        no claims pending here to substitute it.

25             THE COURT:  So it seems, but I will read your

26        papers and I will keep an open mind and I will issue a

1

2          decision.

3                  It's your motion, so you will upload this

4          transcript in the E-Filing system.  I see I have a nice

5          file here.  If I don't have hard copies of memos,

6          affirmations, affidavits, I need them all due on or

7          before April 8th.  Exhibits can remain E-Filed.

8                  Thank you.

9                  MR. ALLINGHAM:  Thank you, your Honor.

10                 MR. DELLAPORTAS:  Thank you, your Honor.

11                          ***************

12   CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
     OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS CASE.

13

14

15                      --------------------------
                             ERIC ALLEN
16                       SENIOR COURT REPORTER

17

18

19

20

21

22

23

24

25

26

*Eric Allen*
*Official Court Reporter*

FILED: NEW YORK COUNTY CLERK 05/07/2015 03:07 PM
NYSCEF DOC. NO. 1279

INDEX NO. 651089/2010
RECEIVED NYSCEF: 05/07/2015

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon. BARBARA JAFFE
*Justice*

PART 12

---

ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of THE ORLY GENGER 1993 TRUST,

Plaintiffs,

- v -

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, *et al.*,

Defendants.

INDEX NO. 651089/2010
MOTION DATE
MOTION SEQ. NO. 42
CALENDAR NO.

INTERIM ORDER

---

The following paper, numbered 1, was read on this motion.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answer — Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: ☐ Yes ☐ No

Defendant Dalia Genger's motion for an order substituting her, as trustee, as plaintiff for Orly Genger's Trump Group claims, and for an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court is held in abeyance pending the Surrogate's Court's resolution of Orly Genger's petition to remove Dalia Genger as trustee of Orly Trust. (*See Genger v Genger*, interim order dated Apr. 1, 2015, index No. 113862/2010 [mot. seq. no. 2]).

MOTION/CASE IS RESPECTFULLY REFERRED TO
JUSTICE _____ J.S.C.
DATED:

Dated: **5/7/15**

_____
J.S. **BARBARA JAFFE**
J.S.C.

Check one: ☐ FINAL DISPOSITION ☐ NON-FINAL DISPOSITION
Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
FILE NO.: 2008-0017E

In the Matter of DALIA GENGER, trustee of the
ORLY GENGER 1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY
II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20
AND JANE DOES 1-20,

Respondents.

NOTICE OF CROSS-MOTION
AND
AFFIRMATION OF JUDITH BACHMAN
IN OPPOSITION

**KELLEY DRYE & WARREN LLP**
101 PARK AVENUE
NEW YORK, NEW YORK 10178

(212) 808-7800

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of Dalia Genger, trustee of the ORLY GENGER
1993 TRUST,

Petitioner,

      -against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20 AND JANE DOES 1-20,

Respondents.

File No. 2008-0017E

Hon. Nora S. Anderson

**AFFIDAVIT OF
SERVICE BY FEDERAL
EXPRESS**

---

STATE OF NEW YORK        )
                              )   SS.:
COUNTY OF NEW YORK    )

       Peter Bogdanich, being duly sworn, deposes and states:

1.    I am not a party to this action, and am over 18 years of age.

2.    On the 24th day of May, 2018, I served a copy of (1) NOTICE OF CROSS-

MOTION, (2) PETITIONER DALIA GENGER'S MEMORANDUM OF LAW IN

OPPOSITION TO MOTIONS TO DISMISS AND IN SUPPORT OF CROSS-MOTION, and

(3) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION upon the following

individuals at the following addresses:

Michael Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

John Boyle
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036

Leon Friedman, Esq.                          Mark Freyberg, Esq.
685 Third Avenue, 25th Floor                 The Freyberg Law Group
New York, New York 10017                     950 Third Avenue, Suite 3200
                                             New York, New York 10022

By depositing true copies thereof, in a secure envelope with Federal Express, for overnight

delivery.

_____
                                             Peter Bogdanich

Sworn to before me this
24th day of May, 2018.

_____
                Notary Public

JEFFREY C. BURANDT
Notary Public, State of New York
No. 01BU6114832
Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 12, 20 _20_

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of Dalia Genger, trustee of the ORLY GENGER
1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20 AND JANE DOES 1-20,

Respondents.

File No. 2008-0017E

Hon. Nora S. Anderson

**AFFIDAVIT OF
SERVICE BY PERSONAL
DELIVERY**

---

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) SS.: |
| COUNTY OF NEW YORK | ) |

Peter Bogdanich, being duly sworn, deposes and states:

1.  I am not a party to this action, and am over 18 years of age.

2.  On the 24th day of May, 2018, I served a copy of (1) NOTICE OF CROSS-

MOTION, (2) PETITIONER DALIA GENGER'S MEMORANDUM OF LAW IN

OPPOSITION TO MOTIONS TO DISMISS AND IN SUPPORT OF CROSS-MOTION, and

(3) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION upon the following

individuals at the following addresses:

John Dellaportas
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

By delivering true copies thereof, by hand, to the above mentioned individual.

Peter Bogdanich

Sworn to before me this
26th day of May, 2018.

Notary Public

JEFFREY C. BURANDT
Notary Public, State of New York
No. 01BU6114832
Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 12, 20__

*Judith Lisa Bachman, Esq.*
254 S. Main Street
Suite 306
New City, New York 10956
845-639-3210

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAY 3 0 2018

FILED

Clerk_____

May 30, 2018

Via Facsimile
Surrogate's Court of the State of New York
County of New York
Miscellaneous Department
31 Chambers Street,
New York, New York

Re: In Re Dalia Genger, trustee of the Orly Genger 1993 Trust v. Orly Genger, et al.
File No. 2008-0017E

Dear Ladies and Gentlemen:

I represent the Trustee, Dalia Genger, in the above referenced matter.

Per the instructions received via telephone this morning with Surrogate Anderson's chambers, I write regarding the need for an adjournment of the above referenced matter.

As the Court is aware, the return date for motions by the Petitioner and Respondents is now scheduled for June 1, 2018 before Surrogate Anderson.

Due to an unanticipated family obligation, I am unable to appear before the Court on the return date of June 1, 2018.

As a matter of professional courtesy, all counsel have stipulated to adjourn the return date to June 15, 2018. The stipulation (signed in counterparts) is attached.

Please adjust the Court's calendar accordingly. Thank you for your assistance.

Respectfully submitted,

Judith Bachman

cc: All counsel (via email)

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAY 3 0 2018

FILED

Clerk

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------
In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.
-------------------------------------------------------------

File No. 2008-0017E

Hon. Nora S. Anderson

Stipulation

IT IS HEREBY STIPULATED, by and between the undersigned as follows:

The return date of the Respondents' Motions to Dismiss and the Petitioner's Cross-Motion

be and hereby is adjourned from June 1, 2018 to June 15, 2018. This stipulation may be executed

in counterparts.

Dated: May 21, 2018
      New City, New York

Judith Bachman, Esq.
Attorney for the Petitioner
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Michael Bowen
Andrew R. Kurland
Kasowitz Benson Torres LLP
Attorney for Respondent, Orly Genger
1633 Broadway
New York, New York 10019
Tel. (212) 506-3306
Fax. (212) 835-5254

Mitchell D. Goldberg, Esq.
The Freyberg Law Group
Attorney for Respondents, Brosers
950 Third Avenue
32nd Floor

John Boyle
Skadden, Arps, Slate, Meagher & Flom LLP
Attorneys for Respondents, TR Entities
Four Times Square

New York County Surrogate's Court
MISCELLANEOUS DEPT.

MAY 3 0 2018

FILED
Clerk

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

                    Petitioner,

          -against-

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

                    Respondents.

----------------------------------------

File No. 2008-0017E

Hon. Nora S. Anderson

Stipulation

IT IS HEREBY STIPULATED, by and between the undersigned as follows:

The return date of the Respondents' Motions to Dismiss and the Petitioner's Cross-Motion

be and hereby is adjourned from June 1, 2018 to June 15, 2018. This stipulation may be executed

in counterparts.

Dated: May 21, 2018
       New City, New York

| | |
|---|---|
| Judith Bachman, Esq.<br>Attorney for the Petitioner<br>The Bachman Law Firm<br>254 S. Main Street, Suite 306<br>New City, New York 10956<br>845-639-3210 | Michael Bowen<br>Andrew R. Kurland<br>Kasowitz Benson Torres LLP<br>Attorney for Respondent, Orly Genger<br>1633 Broadway<br>New York, New York 10019<br>Tel. (212) 506-3306<br>Fax. (212) 835-5254 |
| Mitchell A. Goldberg Esq.<br>The Freyberg Law Group<br>Attorney for Respondents, Brosers<br>950 Third Avenue<br>32nd Floor | John Boyle<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Attorneys for Respondents, TR Entities<br>Four Times Square |

| New York, NY 10022<br>212.754.9200 Main<br>212.983.1221 Direct<br>212.812.3263 Fax | New York, New York 10036-6522<br>T: 212.735.2527 \| F: 917.777.2527 |
|---|---|
| Leon Friedman<br>Attorney for Respondent, Arie Genger<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>(646) 825-4398 | |
| | |

| | |
|---|---|
| New York, NY 10022<br>212.754.9200 Main<br>212.983.1221 Direct<br>212.812.3263 Fax | New York, New York 10036-6522<br>T: 212.735.2527 \| F: 917.777.2527 |
| Leon Friedman<br>Attorney for Respondent, Arie Genger<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>(646) 825-4398 | |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>    Petitioner,<br><br> -against-<br><br>Orly Genger, et al.,<br><br>    Respondents. | |



New York County Surrogate's Court
MISCELLANEOUS DEPT.
JUN 1 4 2018
FILED
Clerk

**REPLY MEMORANDUM IN SUPPORT OF ORLY GENGER'S
MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION**

KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NY 10019
212-506-1700

ATTORNEYS FOR    *Respondent*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E<br><br>Surrogate Nora S. Anderson |

| | |
|---|---|
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>    Petitioner,<br><br>  -against-<br><br>Orly Genger, et al.,<br><br>    Respondents. | |

## REPLY MEMORANDUM IN SUPPORT OF ORLY GENGER'S
## MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION

Respondent Orly Genger by limited appearance submits this reply memorandum in

support of her motion to dismiss and for sanctions and award of attorney's fees, and in

opposition to petitioner Dalia Genger's cross-motion for an extension of time to serve her

petition and to consolidate.[1]

### PRELIMINARY STATEMENT

Dalia's opposition confirms that she violated basic rules of procedure and that her

violations are neither justified nor excusable. The law is clear. Her amended petition – yet

---

[1]   Citations herein to "Mem." are to Orly's opening Memorandum of Law in support of her Motion to Dismiss Dalia Genger's 2016 Petition, dated May 7, 2018. Capitalized terms used but not defined herein have the meanings ascribed in that opening memorandum. Citations herein to "Opp. Mem." are to Dalia Genger's Memorandum of Law in Opposition to Motions to Dismiss and in Support of Cross-Motion, dated May 23, 2018, and citations herein to "Bachman Affirm." are to the Affirmation of Judith Bachman, dated May 23, 2018, submitted in support of Dalia's Opp. Mem.

another in a long line of her dilatory tactics – is itself dilatory and, for that reason among many others, is barred as a matter of law.

Dalia makes a number of excuses as to why, she believes, the normal procedural rules and statutes of limitations do not apply to her, including by contending that Orly is the "de facto trustee" of the Orly Trust, such that Dalia, the *actual* trustee of the Orly Trust, can do whatever she wants before this Court. Dalia cannot dispute, however, that she never effected good service on Orly (or any of the named parties in this proceeding) within the time statutorily required. For that indisputable reason, her New Action is time barred by the procedural rules and the applicable statute of limitations.

Her New Action fails on the merits as well. Although she tries to confuse the issue, she does not and cannot explain how the New Action is not duplicative of her counter-petition, which is currently the subject of fully-briefed motions to dismiss that have been *sub judice* since December 2017.

Most importantly, Dalia's conniving to file a New Action in June 2016 – while Orly's Removal Action had been pending since 2009 – and then, in blatant violation of the procedural rules, to wait and spring (attempted but failed) service as if it were some kind of trap for the unwary *eighteen months later* at the end of 2017, is an example in a long line of other examples of her bad faith and gamesmanship to the extreme detriment of the trust beneficiary, Orly. But Dalia's misconduct in connection with pursuing the New Action did not stop there. After motions to dismiss the 2016 New Action were fully submitted to this Court in February 2018, Dalia unilaterally filed an amended New Action petition in April, without obtaining consent from any respondent or permission from the Court, in clear violation of applicable rules of procedure. *See* SCPA § 302.

2

This kind of plotting by Dalia further confirms – if any additional reason were needed – that Dalia has a fatal conflict of interest with Orly and is unfit to serve as trustee of the Orly trust. Orly has been trying to remove her for *ten years*. Dalia should be – must be – removed as the trustee without any further delay.

Her New Action should be summarily dismissed with prejudice.

## ARGUMENT

### I.   THE REMOVAL ACTION HAS PRIORITY AND MOOTS THE NEW ACTION AS RES JUDICATA

Orly first petitioned this Court for the removal of Dalia as trustee of the Orly Trust over ten years ago in 2008 (the Removal Action), more than eight years before Dalia first filed (without serving) the New Action in 2016.  After procedural wrangling by Dalia (and Sagi), Orly renewed her request for this relief in 2009, such that her petition for removal of Dalia as trustee has been pending since that time.  Once the merits of Orly's Removal Action are considered by this Court, and the Court finally removes Dalia as trustee, Dalia will lose standing to continue to prosecute this frivolous New Action.

Supported by her counsel's affirmation made under penalties of perjury, Dalia now has fundamentally misstated the chronology of the filing of Orly's Removal Action and Dalia's New Action.  In her opposition, Dalia states, incorrectly: "While Respondents knew this [New Action] Petition was pending, Orly filed a petition to once again try to remove Dalia as trustee of the Orly Trust."  Opp. Mem. at 4; Bachman Affirm. ¶ 3.  On that false premise, Dalia claims that her meritless New Action, filed in June 2016, was first-filed.  *See id.*  It is indisputable, however, and

3

is documented in the filings with the Court, that Orly's Removal Action has been pending since 2009! Dalia's entire opposition thus rests on a knowing and demonstrable falsehood.[2]

To the extent Dalia intends to refer to August 2017 – the date on which Dalia filed her *counter-petition* against Orly in Orly's Removal Action – that is irrelevant. The critical fact remains, as noted in Orly's moving papers, that the proceedings in the Removal Action with respect to Dalia's counter-petition are much further along than this New Action: The counter-petition was served before even any attempt at service of the New Action; Orly and the other party to the Removal Action (the court-appointed guardian ad litem for theoretical unborn children) already responded to the counter-petition long *before* any party ever made a limited appearance to dismiss this New Action; and Orly's and the guardian's motions to dismiss the counter-petition in the Removal Action were fully briefed *before* even the first motions to dismiss in this New Action were made. Those motions in the Removal Action have been *sub judice* since December 2017, long *before* Dalia obtained the citation in this New Action and the February 2018 submission of the initial dismissal motions in this New Action. Mem at 11-12. Because the adjudication in the Removal Action is indisputably first, that action has priority and it is this late New Action that is to be dismissed as duplicative. *See id.*

Dalia's protestation that the counter-petition did not name all of the respondents she named in the New Action is also irrelevant. Dalia could have impleaded additional respondents into her 2017 counter-petition in the Removal Action, but she failed to do so. CPLR 1007. That

---

[2] In her affirmation, Dalia's counsel, Ms. Bachman, improperly attributes certain statements to the "Court," as if Ms. Bachman's recitation were court rulings. *See* Bachman Affirm. ¶¶ 4-6, 9-11, 14-16. In fact, the statements alluded to are off-the-record comments from the court attorney, Ms. Santamarina. More importantly, Ms. Bachman – who was not even present at the court attorney's in-person conference and has no first-hand personal knowledge of what was said – misrepresents what was actually said. Ms. Santamarina repeatedly cautioned that she was not speaking on behalf of the Surrogate or voicing any opinion or view on the merits of the parties' respective legal positions. Suffice it to say, she said nothing even remotely similar to what Ms. Bachman purports to recount in her mistaken – and wholly improper – affirmation.

4

was her choice and her fault; no one else's. It is clear she did not follow that course of action

because she always intended to use the New Action as another procedural maneuver to try to trip

up the orderly adjudication of the Removal Action. Trying to use one filing to foul up another is

the height of sanctionable bad faith. *See* Mem. at 16. It is an utter waste of judicial resources

and an inexcusable burden on the Surrogate's Court, not to mention the other litigants. In any

event, because the counter-petition fails on its merits (just like the New Action), there is no need

for consolidation, as Dalia now purports to seek. That is an empty ruse to work delay upon

delay.

Dismissal is also warranted, of course, because all of Dalia's claims in both actions are

barred by the doctrine of res judicata. Respondents are in full agreement that prior judicial

decisions (many of which are binding on this Court) confirm that Dalia is barred from making

her claims in this action. *See* Mem. at 16 (incorporating Orly's dismissal motion of Dalia's

counter-petition, at 12-14) and Memorandum of Law in Support of the TR Entities' Motion to

Dismiss the [New Action] Petition, dated Feb. 6, 2018, at 19-22.) *See also* Memorandum of Law

in Support of the TR Entities' Motion to Dismiss the Amended [New Action] Petition, dated

May 7, 2018, at 15-16.

No matter what causes of action Dalia asserts – whether labeled "turnover," breach of

fiduciary duty, unjust enrichment, or anything else – and no matter how Dalia characterizes her

story, the relief Dalia seeks in both the New Action and her counter-petition, as well as in every

other case where she is adverse to Orly – including the one she is currently pursing in the

Southern District of New York – is the same: Dalia seeks to intercept the proceeds from the

AG/Trump Group Settlement Agreement by any means necessary and irrespective of the law.

Dalia's repetitive and duplicative actions, which have been repeatedly dismissed, most recently

5

by the First Department, is sanctionable abuse of the courts. This Court need not countenance this latest meritless attempt by Dalia because it is precluded by the First Department's decision and by the statute of limitations – all parties named by Dalia (but not yet served) in this New Action agree on that. *See* Mem. at 16 (incorporating Orly's dismissal motion concerning Dalia's counter-petition, at 12-14, citing *Genger v. Genger*, 144 A.D.3d 581 (1st Dep't 2016)).[3]

Dalia has no good argument to counter the preclusive effect and controlling holding of the First Department. As pointed out in Orly's moving papers, the First Department ruled that Dalia's claims brought on behalf of the Orly Trust with respect to the AG/Trump Group Settlement Agreement were dismissed with prejudice in various prior court decisions and, because she failed to object to the dismissal in that case before the trial court, she is forever precluded from raising these claims again. Mem. at 16. Even Dalia has to know that she cannot use this Surrogate's Court proceeding to try to overturn a controlling appellate decision.

Dalia now also tries to argue that Orly is a "de facto trustee" of the Orly Trust, and therefore Dalia – the actual trustee of the trust – is free to pursue whatever claims she wants, whenever she wants, without regard to the statutes of limitations which have, unquestionably, expired. Opp. Mem. at 12-16. Unlike the cases on which Dalia relies, Orly cannot be considered a "de facto trustee" since the settlement by its own terms *did not* settle claims the Orly Trust might have against the Trump Group, as Orly made clear in her opening brief. Mem. at 11. Instead, the Trump/AG Settlement Agreement compromised and released only the claims Orly had individually against the Trump Group. *Id.* It was Dalia, and Dalia alone, who caused all

---

[3] Just as Dalia has failed to comply with the Surrogate's Court procedures and failed to serve the New Action in compliance with the law and applicable procedural rules, Dalia has similarly violated applicable procedural rules in her pending action against Orly in the Southern District of New York. In that federal action, which Dalia and Sagi filed against Orly in the fall of 2017 and in which Dalia and Sagi claim Orly owes Dalia millions of dollars – which yet again underscores her conflicts of interest as the supposed trustee of the OG Trust – Dalia violated the Federal Rules by using the wrong caption, failing to obtain proper summonses, and mis-filing a motion for summary judgment, among other examples of basic ineptitude.

claims the Orly Trust might have against the Trump Group to be dismissed with prejudice, as already held by the Appellate Division. *See Genger*, 144 A.D.3d at 581.

Dalia quotes at length from this Court's decision in *In re Davidson*, 2017 NYLJ LEXIS 3050 (N.Y. Sur. Ct. Oct. 24, 2017). But that case does not support her arguments. The ruling in *Davidson* has nothing to do with claims against a "de facto trustee," but rather claims against the actual trustees of a trust. Even on Dalia's own (self-serving and inaccurate) rendition of the relevant "facts," Orly's role as a "de facto" trustee ended with the AG/Trump Group Settlement Agreement, which, as Dalia must and does admit, was disclosed to Dalia a few months after June 2013. Mem. at 15. Even taking Dalia's alleged facts as true, thereafter Orly had no further role vis-à-vis the Orly Trust, except as beneficiary. Thus, unlike *Davidson*, where it was undisputed that the *de jure* trustees had continued acting as trustees long after the settlement at issue in that action and had not "openly repudiated" the role of trustee, the statute of limitations accrued in this case a few months after 2013 and expired three-years later in the fall of 2016.

## II.    DALIA FAILED TO EFFECT SERVICE

In her first opposition to respondents' motions to dismiss the New Action, which she filed February 20, 2018, Dalia went through great lengths to blame the Court for her own failure to serve the New Action on respondents within the statutorily allotted time period. She had no authority for her claim that her failure should be blamed on the Surrogate's Court, however. In her lawyer's affirmation in opposition to the motions, her lawyer also admitted that she did nothing to meet the statutory deadline of 120 days in which to serve the petition in the New Action. *See* Affirmation of Judith Bachman in Opposition, dated Feb. 20, 2018.

Even were Dalia permitted to effect late service – *i.e.*, service that would be approximately *two years* late – that has no bearing on calculating the statute of limitations. Under Section 301(a) of the SCPA, the running of the statute of limitations is stopped by the

7

filing of the petition "*provided* process is issued and service made upon any respondent within one hundred twenty days after the date of the filing of the petition." SCPA 301(a). Since even Dalia admits no such service was made within that period upon any respondent, the statute of limitations continued to run – and expired – thereafter. No provision in this statute allows a Court to vary this legislative requirement.

Dalia has no rejoinder to this point. She did not address it in her first opposition to respondents' initial motions to dismiss, and now she attempts to gloss over this controlling statute by relying on her unilateral, procedurally improper amendment of the New Action she filed in April 2018. Dalia suggests that her impermissible amended pleading excuses her from properly serving the action *ab initio* on respondents. No authority exists to support this incorrect reading of the applicable statute and Dalia cites none. The filing of the amended petition in the New Action does nothing to change the fact that service was never effected in the New Action within the 120-day period sufficient to toll the expiration of the applicable statute of limitations.

In all events, as the record stands now, it is devoid of any proof of service and certainly devoid of any proof that Orly has had a fair opportunity to review and to challenge service on the facts and law. There is, accordingly, no basis to find effective service of process, and Dalia can make no legitimate argument why she should be afforded additional time to attempt to serve the New Action, which she first filed *two years ago* in June 2016.

8

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E<br><br>Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

  -against-

Orly Genger, et al.,

    Respondents.

## AFFIRMATION OF SERVICE

      I am an attorney admitted to practice before the Courts of the State of New York, and

affirm the following under penalties of perjury.  On June 14, 2018, on behalf of respondent Orly

Genger, I caused to be served by (i) email and (ii) FedEx overnight delivery a true and correct

copy of Respondent Orly Genger's Reply Memorandum in Support of her Motion to Dismiss and

in Opposition to Cross-Motion, dated June 14, 2018, on counsel for Petitioner Dalia Genger at

the following address:

      Judith Bachman, Esq.
      judith@thebachmanlawfirm.com
      254 S. Main Street
      Suite 306
      New City, NY 10956

Dated: New York, New York
      June 14, 2018

                                   Andrew R. Kurland

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
800.222.0510 www.aslegal.com

*Index No.*   0017/E          *Year 20   08*

SURROGATE'S COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

═══════════════════════════════════════════

In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust.

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

                              Petitioner,

      -against-

Orly Genger, et al.,

                              Respondents.

═══════════════════════════════════════════

## AFFIRMATION OF SERVICE

### KASOWITZ BENSON TORRES LLP

*Attorney(s) for*

*Respondent*   *Office Address & Tel. No.:*

1633 BROADWAY
NEW YORK, NY 10019
212-506-1700

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR.1200.41-a.*

*Dated:*   June 14, 2018          Signature ...........................................................

                              Print Signer's Name ............ Andrew R. Kurland ...........

*Service of a copy of the within*                              *is hereby admitted.*

*Dated:*

                    *Attorney(s) for*   Petitioner

*PLEASE TAKE NOTICE*

☐    *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within-named Court on*          20
ENTRY

☐    *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*                              *, one of the judges of the within-named Court,*
SETTLEMENT   *at*
     *on*          20          , at          M.

*Dated:*

                    KASOWITZ BENSON TORRES LLP
                    *Attorney(s) for*

                                        *Office Address & Tel. No.:*

*To:*

                              1633 BROADWAY
                              NEW YORK, NY 10019
*Attorney(s) for*                 212-506-1700

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUN 1 4 2018

FILED

Clerk

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

---

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

 -against-

Orly Genger, et al.,

    Respondents.

---

## REPLY AFFIRMATION OF LEON FRIEDMAN IN SUPPORT OF MOTION TO DISMISS THE AMENDED PETITION BY RESPONDENT ARIE GENGER AND IN OPPOSITION TO THE CROSS-MOTION OF PETITIONER DALIA GENGER

LEON FRIEDMAN, an attorney duly admitted to practice in the courts of the state of New York, affirms the following under penalties of perjury:

1.    I am the attorney for respondent Arie Genger. I make this reply affirmation in support of a motion to dismiss the Amended Petition allegedly served upon Arie Genger by Petitioner Dalia Genger and to deny the cross-motion of Dalia Genger served on May 23, 2018.

2.    We previously joined in a joint motion to dismiss the Amended Petition allegedly served by Dalia Genger. See Motion by Arie Genger dated May 4, 2018 and Affirmation of Leon Friedman in Support of Motion to Dismiss, dated May 4, 2018.

3.    In our previous submission, we asserted that Arie Genger was never served with the actual petition in this matter nor the Amended Petition. *Nowhere in the Cross-Motion made by Dalia does she dispute that assertion.* Rather, the moving affirmation of Judith Bachman

discusses a series of procedural issues, dealing with the defenses raised by the other co-Respondents in this matter, particularly the procedural defenses raised by Trans-Resources, Inc. TR Investors, and related parties, Since Dalia does no dispute the defense raised by Arie, that motion to dismiss must be granted and the Petition and the Amended Petition must be dismissed

4.      In every other respect, Arie Genger is in precisely the same position as his daughter Orly Genger, as described in her moving papers and reply papers. Arie Genger hereby incorporates and adopts all of the arguments made by Orly Genger in her Reply papers in support of a motion to dismiss and in opposition to the cross motion made by Dalia.

5.      For the reasons stated above, Respondent Arie Genger moves that the pending New Action be dismissed and the cross motion be denied. .

Affirmed under penalties of perjury.

Dated: New York, N.Y.
        June 14,  2018

Leon Friedman
685 Third Ave, 25th floor
New York, N.Y. 10017
(646) 825-4398
Attorney for Respondent Arie Genger

CERTIFICATE OF SERVICE

I hereby certify that I am not a party to this action, am over 18 years of age and reside at 148 East 78th Street, New York, N.Y and that I am an attorney duly admitted to the Courts of the State of New York.

On June 14, 2018, I served a copy of the annexed Reply Affirmation of Leon Friedman in support of motion to dismiss the Amended Petition by Respondent Arie Genger and in opposition to the cross-motion of Petitioner Dalia Genger in the following manner:

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Judith Bachman
254 S. Main Street, Suite 406
New City, N.Y. 10956

Dated: June 14, 2018

Leon Friedman

**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

In the Matter of the Petition of Dalia Genger, as Trustee
of the Orly Genger 1993 Trust, Created by Trust Agreement
Dated December 13, 1993 between ARIE GENGER, as
Grantor, and LAWRENCE M. SMALL and SASH A.
SPENCER, as Trustees, to Turnover Property to the Orly
Genger 1993 Trust.

FILE NO.   2008-0017/E

Hon. Nora S. Anderson

In the Matter of DALIA GENGER, trustee of the ORLY
GENGER 1993 TRUST,

      Petitioner,

      - against -

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW
TR EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC., ARNOLD BROSER, DAVID
BROSER, JOHN DOES 1-20, and JANE DOES 1-20,

      Respondents.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TR ENTITIES' MOTION**
**TO DISMISS THE AMENDED PETITION FOR TURNOVER OF TRUST PROPERTY**
**AND OTHER RELIEF AND IN OPPOSITION TO PETITIONER'S CROSS-MOTION**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York  10036
(212) 735-3000
(212) 735-2000 (facsimile)

*Attorneys for Glenclova Investment Co.,*
*TR Investors, LLC, New TR Equity I, LLC,*
*New TR Equity II, LLC, and*
*Trans-Resources, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT..................................................................................................................4

I.   DISMISSAL OF THE AMENDED PETITION IS WARRANTED
     BECAUSE JURISDICTION IS LACKING OVER THE TR ENTITIES ..............4

A.   Dalia Has Never Properly Served the TR Entities  and Never Served
     Trans-Resources, LLC ...........................................................................5

B.   Dalia's Failure to Serve the TR Entities Within the Time Period Required
     by the SCPA Requires Dismissal of Her "Turnover" Claim ...................6

II.  DALIA'S FAILURE TO PROPERLY SERVE THE TR ENTITIES IS
     NOT CURED BY ANY LIMITED APPEARANCE IN THIS ACTION............10

III. DISMISSAL OF THE AMENDED PETITION AS AGAINST THE TR
     ENTITIES IS ALSO WARRANTED BECAUSE DALIA'S TURNOVER
     AND INJUNCTION CAUSES OF ACTION ARE INSUFFICIENTLY
     PLEADED AND WITHOUT MERIT.................................................................11

A.   Dalia's Turnover Claim is Without Merit ..............................................11

B.   The Turnover Claim is Subject to Dismissal Because it is Time-Barred ............13

C.   The "Injunction" Claim is not an Appropriate Cause of Action ...........................14

IV.  DISMISSAL IS REQUIRED BECAUSE TRANS-RESOURCES, LLC
     WAS NEVER MADE A PARTY.........................................................................17

V.   RES JUDICATA BARS DALIA'S CLAIMS.......................................................18

VI.  EVEN IF NOT DISMISSED THE COURT SHOULD STAY OR
     DISMISS THIS PROCEEDING AND ALSO DISMISS DALIA'S
     CROSS-MOTION................................................................................................20

CONCLUSION..............................................................................................................24

## TABLE OF AUTHORITIES

### CASES

*Aetna Insurance Co. v. Capasso,*
   75 N.Y.2d 860, 552 N.Y.S.2d 918 (1990) ........................................................................15

*Alliance Network, LLC v. Sidley Austin LLP,*
   43 Misc. 3d 848, 987 N.Y.S.2d 794 (Sup. Ct. N.Y. Cty. 2014) ...................................4, 6

*Brown v. Sanders,*
   142 A.D.3d 940, 37 N.Y.S.3d 444 (2d Dep't 20016).............................................5, 11, 23

*D'Amour v. Ohrenstein & Brown, LLP,*
   17 Misc. 3d 1130(A), 2007 N.Y. Slip Op. 52207(U) (Sup. Ct. N.Y. Cty. 2007)..............15

*In re Davidson,*
   No. 78/2956/A, 2017 NYLJ LEXIS 3050 (Sur. Ct. N.Y. Cty. Oct. 25, 2017)..................14

*Estate of Jervis v. Teachers Insurance & Annuity Ass'n,*
   279 A.D.2d 367, 720 N.Y.S.2d 21 (1st Dep't 2001)...........................................................23

*Faberge International Inc. v. Di Pino,*
   109 A.D.2d 235, 491 N.Y.S.2d 345 (1st Dep't 1985)........................................................15

*Fifty CPW Tenants Corp. v. Epstein,*
   16 A.D.3d 292, 792 N.Y.S.2d 58 (1st Dep't 2005) ...........................................................19

*Genger v. Genger,*
   144 A.D.3d 581, 41 N.Y.S.3d 414 (1st Dep't 2016)..........................................................20

*Held v. Macy's, Inc.,*
   25 Misc. 3d 1219(A), 2009 N.Y. Slip Op. 52189(U) (Sup. Ct. Westchester Cty.
   2009) ....................................................................................................................................14

*Insurance Co. of State of Pa. v. HSBC Bank USA,*
   10 N.Y.3d 32, 852 N.Y.S.2d 812 (2008) ...........................................................................18

*In re Katz,*
   81 A.D.2d 145, 439 N.Y.S.2d 941 (2d Dep't 1981), *aff'd*, 55 N.Y.2d 904, 449
   N.Y.S.2d 29 (Mem) (1982)..........................................................................................5, 11

*Komanicky v. Contractor,*
   146 A.D.3d 1042, 43 N.Y.S.3d 761 (3d Dep't 2014).........................................................23

*O'Brien v. City of Syracuse,*
   54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) ........................................................................19

*Okoh v. Bunis,*
    48 A.D.3d 357, 854 N.Y.S.2d 336 (1st Dep't 2008) ........................................23

*In re Perelman,*
    123 A.D.3d 436, 999 N.Y.S.2d 2 (1st Dep't 2014) ..........................................12

*Rainbow Coop v. City of New York,*
    63 A.D. 3d 415, 879 N.Y.S.2d 329 (Mem) (1st Dep't 2009) .......................15

*Shelkowitz v. Rainess,*
    57 A.D.3d 337, 869 N.Y.S.2d 87 (1st Dep't 2008) ........................................23

*Stewart v. Volkswagen of Am., Inc.,*
    81 N.Y.2d 203, 613 N.E.2d 518 (1996) ..........................................................23

*Syncora Guarantee Inc. v. J.P. Morgan Securities LLC,*
    110 A.D.3d 87, 970 N.Y.S.2d 526 (1st Dep't 2013) ......................................21

*In re Thomas,*
    28 Misc. 3d 300, 901 N.Y.S.2d 493 (Sur. Ct. Broome Cty. 2010), *aff'd*, 78 A.D.3d
    1304, 910 N.Y.S.2d 252 (3d Dep't 2010) ...............................................6, 14

*TR Investors, LLC v. Genger,*
    C.A. No. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010) .............14, 24

*TSR Group, LLC v. Levitin,*
    Index No. 65135/2015, 2016 N.Y. Slip Op. 31322(U) (Sup. Ct. N.Y. Cty. July 13,
    2016) ....................................................................................2, 4, 6, 13

*Twin Holdings of Delaware LLC v. CW Capital, LLC,*
    No. 005193/09, 2009 WL 4099330 (Sup. Ct. Nassau Cty Nov. 9, 2009) ........15

*Twin Holdings of Delaware LLC v. CW Capital, LLC,*
    26 Misc. 3d 1214(A), N.Y. Slip Op. 50097(U) (Sup. Ct. Nassau Cty. 2010) .........15

*Waterscape Resort, L.L.C. v. 70 West 45th Street Holding LLC,*
    Index No. 652124/2014, 2015 N.Y. Slip Op. 31255(U)
    (Sup. Ct. N.Y. Cty. July 17, 2015) ................................................................16

*Zodkevitch v. Feibush,*
    49 A.D.3d 424, 854 N.Y.S.2d 373 (1st Dep't 2008) ....................................16

## RULES

CPLR 213 ....................................................................................................6, 14

CPLR 306-b ...............................................................................................22, 24

CPLR 311...........................................................................................................11

CPLR 311-a......................................................................................................11

CPLR 320(b)............................................................................................1, 5, 11

CPLR 1001.......................................................................................................18

CPLR 1003.......................................................................................................18

CPLR 2201.......................................................................................................20

CPLR 3211(a)...................................................................................1, 2, 17, 18, 21

CPLR 3012(a)...................................................................................................17

CPLR 6301.......................................................................................................15

EPTL 7-3.3.......................................................................................................13

SCPA 301(a)..................................................................................................6, 9

SCPA 301(b)....................................................................................................24

CPLR 304...........................................................................................................9

CPLR 306(4).......................................................................................................8

SCPA 307.........................................................................................................17

SCPA 312.........................................................................................................17

## OTHER AUTHORITIES

1 Colleen F. Carew et al., *New York Estates: Probate Administration and Litigation*
§ 3:32 (Harris 6th ed. 2018)...............................................................................9

1 Joseph A. Cox et al., *New York Civil Practice*: SCPA ¶ 304.00 (Matthew Bender 2018)...........9

14 *McKinney's Forms Estates and Surrogates Practice* § 2:61 (West 2017)..................................8

Respondents Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources LLC[1] (collectively the "TR Entities") respectfully submit this reply memorandum of law in support of their Motion to Dismiss the Amended Petition for Turnover of Trust Property and Other Relief (the "Amended Petition") filed on April 13, 2018, by Dalia Genger ("Dalia"), the current trustee of the Orly Genger 1993 Trust (the "Trust"), and in opposition to Dalia's cross-motion.

## PRELIMINARY STATEMENT

As shown in the TR Entities' Opening Brief (the "TR Br.") and the supporting affirmations, the Amended Petition must be dismissed. Despite having a second crack (albeit too late procedurally) at attempting to serve and assert claims (albeit all of them meritless) against the TR Entities, Dalia's opposition brief again comes up short on the law, the facts, and the relevant procedure. No argument asserted in her opposition brief suffices to salvage the Amended Petition from its inherent and indisputable jurisdictional failings.[2]

*First*, Dalia does not oppose the TR Entities' arguments and evidence establishing that Dalia failed to properly serve the original Petition or the Amended Petition. *Second*, Dalia does not raise any sufficient legal challenge to the argument that, because she did not serve citations on the TR Entities within 120 days after the filing of the original Petition, dismissal of the proceeding is required and the turnover claim is time-barred. *Third*, Dalia fails to address,

---

[1]    Trans-Resources, LLC has not been properly named or served in this proceeding. The Amended Petition only names Trans-Resources, Inc. – a no longer existent corporation – as a respondent in the caption. (*See* Affidavit of Mark S. Hirsch in Support of Motion to Dismiss the Amended Petition ¶ 5, cited herein as "Hirsch Aff."). No citation was ever issued in this proceeding that identifies Trans-Resources, LLC as a respondent, and no citation has been served on, or even attempted to be served on, Trans-Resources, LLC, and, further, no supplemental citation identifying Trans-Resources, LLC has been issued or served. (Hirsch Aff. ¶¶ 5, 6, 8).

[2]    The TR Entities again expressly state that because they are objecting to personal jurisdiction under CPLR 3211(a)(8), under CPLR 320(b) neither their filing of their Opening Brief and supporting papers nor this Reply Brief and opposition to Petitioner's cross-motion amounts to a waiver of jurisdiction.

yet alone offer any opposition to, the TR Entities' argument that her failure to name and properly

serve Trans-Resources, LLC – a necessary party to these claims, and the only entity that is a

signatory to the promissory notes that underlie her turnover claims concerning the remaining

Settlement Proceeds – requires dismissal. And make no mistake about it, Dalia's failure to

oppose this and other arguments presented by the TR Entities cannot simply be overlooked.

Rather, where Dalia has failed to respond to or oppose the arguments presented in the TR

Entities' motion to dismiss, this Court should treat that failure as a concession or a waiver. *See,*

*e.g., TSR Group, LLC v. Levitin,* No. 651356/2015, 2016 N.Y. Slip Op. 31322(U), at \*10 (Sup.

Ct. N.Y. Cty. July 13, 2016) (granting motion to dismiss where plaintiff "fail[ed] to respond to or

even address defendants' arguments in its opposition papers"). Surely it is no accident that Dalia

does not address these arguments but rather an unspoken concession that she has no credible

response.

Even when Dalia attempts to rebut one of the TR Entities' arguments, she does so

by asking the Court to partake in her own version of "Where's Waldo," by suggesting that the

Court should hunt through the brief she previously submitted on her original Petition to unearth

(or piece together) the arguments that should be made in her Opposition Brief to the TR Entities'

Motion to dismiss the Amended Petition. (*See* Petitioner Dalia Genger's Mem. of Law in

Opposition to Motions to Dismiss and in Support of Cross-Motion ("Opp'n Br.") at 16, 20). The

Court should not countenance such practice.

Moreover, in asking the Court to do her own work, Dalia also improperly (and

misleadingly) relies on statements purportedly attributable to the Court's attorney. This meager

attempt to bolster her meritless positions is a thinly veiled attempt to ask the Court for help in

asserting an untenable claim and reinforces the reflections of New York Supreme Court Justice

2

Cooper (initially cited in the TR Entities' Opening Brief (*see* TR Br. at 2-3)), in which Justice

Cooper noted that the Genger cases "demand[] a disproportionate share of already limited

judicial resources[.]" Justice Cooper offered advice to other judges facing the Genger litigation

blitz (which is particularly relevant here where Dalia attempts to appeal to the Court's equitable

heartstrings, while also requesting the Court to perform her legal work):

> . . . the time for the Gengers continuing to occupy center stage in the New York
> court system must also end. . . . It seems obvious that continuing to give the
> Gengers the exorbitant amount of court time that they demand is not putting our
> resources to their "highest and best uses." . . . It is this judge's hope that the parties
> and their children might take a step back and reflect on how destructive this path
> of constant litigation is, not only to them, but to the courts and the other litigants
> who truly need our services. If they are unable to do so, it may be incumbent on
> judges and court administrators to devise a method to curb what is becoming
> perilously close to an abuse of the judicial system.

(*See Genger v. Genger*, No. 302436/2002, Decision and Order at 2 (Sup. Ct. N.Y. Cty June 3,

2016) at 3-4, 11) (a copy is attached as Ex. B. to the Boyle Aff.). Here, Dalia has failed to offer

opposition to the TR Entities' legal arguments regarding jurisdiction and her initial service

failures on each of the TR Entities, failed to amend her pleading to name Trans-Resources, LLC

as a respondent (despite being informed of the issue by the TR Entities' counsel and also the

Court and despite having been aware of Trans-Resources, LLC's, rather than Trans-Resources,

Inc.'s, role in the underlying matters since at least 2014), and failed to properly serve or even

attempt to properly serve the Amended Petition on any of the TR Entities. Her plea to the

Court's discretion to overlook her service failures and the jurisdictional deficiencies of her

Amended Petition should be rejected and the Amended Petition dismissed.

To the extent the Court reaches a review of the merits-based arguments against

Dalia's turnover and "injunction" claims raised in the TR Entities' Motion to Dismiss, those

arguments also support dismissal of the Amended Petition. Among other things, as established

in the TR Entities' Opening Brief, the turnover claim is now time-barred. In addition, as Dalia

3

essentially conceded (*see* Opp'n Br. at 17 (noting that Dalia seeks an injunction as a remedy for her turnover claim)), there is no separate cause of action for an injunction and the failure of Dalia's turnover claim therefore warrants dismissal of any injunctive remedy on that claim. And even if an injunction is a substantive cause of action (it is not), Dalia has not adequately pleaded such a claim. Dalia's Opposition Brief offers no legal support or record citations to sufficient allegations in the Amended Petition that would establish the legal standards required to support an injunction.

Finally, in responding to the TR Entities' *res judicata* arguments, because Dalia concedes that the settlement of the Trans-Resources shares ownership claim "is the very fact that entitle[s] the Orly Trust to the turnover of the Settlement Proceeds," Dalia's voluntary settlement and dismissal with prejudice in the Delaware Action of that very claim, and in which she could have and should have brought her current claims, requires *res judicata* preclusion of her claims against the TR Entities.

## ARGUMENT

## I.   DISMISSAL OF THE AMENDED PETITION IS WARRANTED BECAUSE JURISDICTION IS LACKING OVER THE TR ENTITIES

In their Opening Brief, the TR Entities explained that dismissal of the Amended Petition is required because Dalia (1) never properly served the original Petition, and (2) never properly served the Amended Petition. (*See* TR Br. at 10-16). Incredibly, Dalia's Opposition Brief does not even offer a counter-argument.

As a threshold matter, Dalia's failure to address these arguments amounts to a concession of their validity. *See TSR Group*, 2016 N.Y. Slip Op. 31322(U), at *10 (granting motion to dismiss where plaintiff "fail[ed] to respond to or even address defendants' arguments in its opposition papers"); *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 864 n.4,

4

987 N.Y.S.2d 794, 806 n.4 (Sup. Ct. N.Y. Cty. 2014) (noting party's failure to oppose arguments in responding to motion to dismiss results in waiver of opposition).

Although, in her Opposition Brief (*see* Opp'n Br. at 20), Dalia demands that the Court scour her prior opposition brief to locate any possible counter-arguments, even if the Court were willing to do so (and it should not), that effort would be futile. *First*, there is nothing in her February 20, 2018 brief that addresses service failures regarding the Amended Petition – a pleading that was not filed until **April 13, 2018**, almost two months later. And *second*, as the TR Entities noted in their original reply brief and in their Opening Brief (*see* TR Br. at 1 & n.2, 11 & n.7), Dalia's claim that the TR Entities have already "appeared" in this proceeding by appearing on the return date of the citation (which was never properly served) is contrary to the express command of the CPLR 320(b), which establishes that, where the TR Entities raised a challenge to personal jurisdiction (as they did in their initial motion to dismiss and did on the return date, and do in this Motion to Dismiss), their appearance does not confer personal jurisdiction. *See In re Katz*, 81 A.D.2d 145, 148-49, 439 N.Y.S.2d 941, 943 (2d Dep't 1981) (applying CPLR 320(b) in Surrogate's Court proceeding and holding that inclusion of jurisdictional objection meant that court did not acquire jurisdiction over respondent); *see also Brown v. Sanders*, 142 A.D.3d 940, 940, 37 N.Y.S.3d 444, 445 (2nd Dep't. 2016) (citing 320(b) and holding appearance to object to jurisdiction did not confer jurisdiction).

### A.   Dalia Has Never Properly Served the TR Entities and Never Served Trans-Resources, LLC

Neither in her prior brief nor in her current Opposition Brief does Dalia address the arguments that she failed to properly serve both the original Petition and the Amended Petition on the TR Entities, and that she never even attempted to serve either petition on Trans-Resources, LLC. As a matter of law, and for the reasons stated in the TR Entities' Opening Brief

5

(*see* TR Br. at 10-13), her failure to serve the TR Entities requires dismissal under CPLR 3211(a)(8).[3]

**B.    Dalia's Failure to Serve the TR Entities Within the Time Period Required by the SCPA Requires Dismissal of Her "Turnover" Claim**

Putting aside whether service was proper on the TR Entities (and it was not), as demonstrated in the TR Entities' Opening Brief (*see* TR Br. at 15-16), Dalia's attempted belated service of the original Petition provides further grounds for dismissing the claims in the Amended Petition as time-barred as against the TR Entities.[4]  Again Dalia offers no counter-argument in her Opposition Brief, but instead directs the Court (without any useful citation) to survey her prior brief for an argument that might fit.

The SCPA is clear and strict in its approach to how a proceeding is commenced so that the claims asserted will be timely under applicable statutes of limitation:  "For the purpose of computing the period of limitation . . . a proceeding is commenced upon the filing of a petition, provided process is issued and service made upon any respondent within one hundred twenty days after the date of the filing of the petition . . . ."  SCPA 301(a).  Thus, for a claim to be found timely the petition must have been filed within the limitations period and a citation must have been served within 120 days "after the date of the filing of the Petition." (*See id.*). Unquestionably, Dalia has not complied with the latter of these two requirements because she

---

[3]    In addition, Dalia's failure to address these arguments also warrants dismissal. *See, e.g., TSR Group*, 2016 N.Y. Slip Op. 31322(U), at *10 (dismissing claim because plaintiff "fail[ed] to respond to or even address defendants' arguments in its opposition papers"); *Alliance Network*, 43 Misc. 3d at 864 n.4, 987 N.Y.S.2d at 806 n.4 (noting failure to oppose arguments on motion to dismiss results in waiver).

[4]    Dalia's only substantive claim against the TR Entities is for turnover, which is subject to a three-year limitations period. *See* CPLR 213; *see also In re Thomas*, 28 Misc. 3d 300, 305, 901 N.Y.S.2d 493, 497 (Surr. Ct. Broome Cty. 2010), *aff'd*, 78 A.D.3d 1304, 910 N.Y.S.2d 252 (3d Dep't 2010).  As a consequence, because Dalia's claims accrued, at the latest, on the date of the Settlement Agreement – i.e., on June 16, 2013, well more than three years ago – they are most definitely time-barred.  Further discussion of the applicability of the three-year period as to the claims against the TR Entities is found, *infra*, at 13-14.

6

still has not properly served any citations on the TR Entities despite the fact that it is now two

years to the day – 730 days – since she filed her original Petition.

In her prior brief, Dalia argued (incredibly) that any delay in serving the TR

Entities was the fault of the Court and not her own. The Court should reject Dalia's argument

based upon the SCPA and upon Dalia's prior conduct in this proceeding.

Before turning to those arguments, even assuming (*arguendo*) that the Court was

responsible for a delay in issuing the citations, the fact is that the citations were issued by the

Court on December 21, 2017. (*See* Hirsch Aff. ¶ 6 & attached citation). Despite the passage of

175 days from that issuance, Dalia has not "commenced" this proceeding for statute of

limitations purposes by properly serving that citation on any of the TR Entities. Dalia's

indisputable failure to do so – which she cannot explain away – requires dismissal of this

proceeding and rejection of her turnover claim as time-barred.

As for Dalia's claim it was the Court's fault that led to her initial delay in serving

the citations, that argument has no merit and, in any event, her argument concedes that she never

initially and timely "commenced" the proceeding for statute of limitation purposes in accordance

with SCPA 301(a) for at least two reasons. *First*, even adopting Dalia's argument, as of June 14,

2016, and on at least one other occasion (date not identified by Dalia), the original Petition was

deemed deficient on its face by the Surrogate's Court. (*See* Original Affirmation of Judith

Bachman in Opposition dated Feb. 20, 2018 (the "Bachman Aff.") at ¶¶ 10-12 (claiming that

Surrogate's Court clerk advised Dalia's caption was incorrect), ¶¶ 14-16 (same)). As advanced

by Dalia, the Surrogate's Court clerk rejected the original Petition (twice) and required additional

affirmations from Dalia's counsel prior to acceptance. (*Id.*). Thus, only after Dalia modified the

original Petition for the second time, in December 2017, was it "commenced" for SCPA 301(a)

7

purposes – at that time the original Petition was accepted for filing and process issued – which

occurred long after the running of the three-year statute of limitation period for turnover. (*See*

TR Br. at 15-16).

        *Second*, even assuming that the original Petition had been properly filed on June

14, 2016 (which it was not), process did not issue and service was not made within 120 days as

required by SCPA 301. Dalia incredulously again blames the Court for this delay. In this Court,

the attorney often prepares the citation for presentment to the clerk of the Court, who provides

the Court's signature and seal. *See* SCPA 306(4); Colleen F. Carew et al., *New York Estates:*

*Probate Administration and Litigation* § 3:32 (Harris 6th ed. 2018) ("The petitioner's attorney

will prepare the original citation. The citation will be reviewed (usually by a clerk), and the

return date by which the party or parties named will be required to respond, as requested by the

attorney, will be filled in."). Throughout its Genger-related proceedings, the Court has acted

promptly in issuing citations. A review of the docket identifies that on four other occasions,

citations were issued either on the same day or within days of the filing of the pleading requiring

the issuance of a citation. (*See* File #2008-0017 Docket and Info Sheet reviewed 2/21/2018

(hereafter "Dkt.") entry filed 02-15-2008 (citation issued same day as amended petition to

Designate Trustee was filed), Dkt. entry filed 11-14-2008 (citation issued 13 days after Petition

to Suspend Letters was filed), Dkt. entry filed 11-18-2008 (citation issued same day as Petition

to Account-Trustee Leah Fang was filed), Dkt. entry filed 11-20-2012 (citation issued 12 days

after Petition to Compel Fiduciary to Account was filed)). In light of the Court's diligence and

expedition, it takes a special type of boldness for Dalia to claim that it was solely due to the

Court's delay that it took 555 days to issue a citation. The Court should reject Dalia's efforts to blame the Court for her own inaction and lack of diligence.[5]

Not surprisingly, the Bachman Affirmation itself suggests that it was Dalia's own deficiencies in pleading and presenting the original Petition that caused delay in the issuance of the citation. (*See* Bachman Aff. ¶¶ 10, 12, 14, 15). Indeed, Dalia's own evidence supports that the original Petition was rejected by the clerk. *See* 1 Joseph A. Cox et al., *New York Civil Practice: SCPA* ¶ 304.00 (Matthew Bender 2018) (noting that if information required by SCPA 304 is not provided the "petition is deficient on its face and will not be accepted for filing").[6]

Even if the original Petition did meet the minimum requirements of SCPA 304 and 306 (although, as suggested by the Bachman Affirmation, it did not), the Court should not excuse Dalia from attempting to pass her laxity in obtaining, and attempting to serve, the citations within the 120-day requirement of SCPA 301(a) to the Court. In fact, on at least two

---

[5]   *See* 14 *McKinney's Forms Estates and Surrogate Practice* § 2:61 ("Here, **SCPA § 301 is in point, allowing the proceeding to be deemed commenced for limitations purposes** upon the filing of the petition, but with the important proviso that it can be so deemed **only if** process **(meaning in this instance the citation) is issued and served within 120 days thereafter**. If there is even any remote question about the statute of limitations being involved, the petitioner should follow SCPA § 301. **The omission, by SCPA § 306(1)(c), to specify a time period for when the citation must issue after the filing of the petition, should not be assumed to constitute an immunity from limitations considerations**."). (emphasis added).

[6]   The sole "evidence" that Dalia relies on to support her claim that it was the Court's fault are the statements found in the affirmation of her attorney Judith Bachman. Ms. Bachman's Affirmation, however, should be rejected. Notably, the Affirmation is bereft of actual facts that would substantiate Dalia's arguments. Although Ms. Bachman asserts that she several times attempted to contact the Court clerk to discuss the citations, she nowhere provides the "written correspondence" and "emails" she claims to have sent to the Court's clerk nor does she detail, with dates and names, the times and persons she claims to have discussed these issues with during her "repeated and numerous calls [and] visits" with the clerk. (*See* Bachman Aff. ¶¶ 8, 9-14). The absence of this factual (and presumably readily available) information as to when and with whom Ms. Bachmann communicated regarding the citations begs the question of whether she did so within the 120-day period required under SCPA 301. Plainly, if Dalia never even acted on seeking the citations until after the initial 120-day period had expired – i.e., after March 26, 2017 – regardless of the clerk's actions or, as Ms. Bachman asserts, inactions after that date, Dalia did not timely "commence" the proceeding as required under SCPA 301(a). Notably, there are no docket entries in this proceeding in the period between June 14, 2016 – the date the original Petition was filed – and March 2017. In fact, the only docket entries for all of 2017 arise on July 6, 2017, December 13, 2017 and December 19, 2017 – all more than one year after the filing of the original Petition – a fact that belies Dalia's and her attorney's assertions.

occasions, Dalia sought extensions of court-ordered deadlines by making a filing with the Court. (*See* Dkt. entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17 ("Stipulation To Adjourn From 10-17-17 To 12-8-17")). Dalia is a serial filer in the Court, having filed papers and sought relief from the Court on multiple occasions from the date the Petition was purportedly filed on June 14, 2016, to the date the citation was issued on December 21, 2017. (*See* Dkt. (identifying at least eight written filings by Dalia in the Court since June 2016)). Clearly, Dalia knew how to request and file any extension of time to serve the Petition within the required 120-day time frame (or the additional, almost, five cycles of that same time frame) before expiration. She failed to do so.

## II.   DALIA'S FAILURE TO PROPERLY SERVE THE TR ENTITIES IS NOT CURED BY ANY LIMITED APPEARANCE IN THIS ACTION

In the Opening Brief, the TR Entities explain that Dalia's attempted service upon them of the original Petition on January 5, 2018, and the Amended Petition via mail to their attorney on April 16, 2018, was indisputably ineffective and lacked diligence. (*See* TR Br. at 10-13). In support of their arguments, the TR Entities submitted the Affirmation of Mark S. Hirsch in Support of Motion to Dismiss (the "Hirsch Affirmation"), which explained, among other things, that none of the TR Entities maintain an office in New York State. (Hirsch Aff. ¶ 3).

In response, Dalia again does not address this argument but instead generically tells the Court that the TR Entities' motion (and the motions of all the other Respondents) "should be dismissed for the same reasons as set forth in . . . Dalia's [prior] Brief in Opposition to Motion." The only argument offered in the prior brief, however, was that service is no longer required because the TR Entities appeared in this action on the return date of the citation.[7]

---

[7]   In her prior brief, Dalia also attempted to make weight by suggesting that Mr. Hirsch once purportedly identified his business address in the signature block of an email as the address of CWM's offices. But, Mr.

*(cont'd)*

Adopting Dalia's argument, however, would render CPLR 320(b) obsolete. CPLR 320(b), which

provides that where, as here, a challenge to personal jurisdiction has been raised in a motion to

dismiss or an answer, an appearance in the action does not confer personal jurisdiction. That is

precisely what the TR Entities did. *See, e.g., In re Katz*, 81 A.D.2d at 148-49, 439 N.Y.S.2d at

943 (applying CPLR 320(b) in Surrogate's Court holding that jurisdictional objection meant

court did not acquire jurisdiction over respondent); *Brown*, 142 A.D.3d at 940, 37 N.Y.S.3d at

445 (holding that under CPLR 320(b) an appearance to object to jurisdiction does not confer

jurisdiction). Had the TR Entities not appeared to present their motion to dismiss, Dalia

undoubtedly would have claimed the TR Entities defaulted (despite Dalia's untimely and

ineffective service of process upon them). The Court should not permit Dalia's game of "heads I

win, tails you lose."

## III.    DISMISSAL OF THE AMENDED PETITION AS AGAINST THE TR ENTITIES IS ALSO WARRANTED BECAUSE DALIA'S TURNOVER AND INJUNCTION CAUSES OF ACTION ARE INSUFFICIENTLY PLEADED AND WITHOUT MERIT

### A.    Dalia's Turnover Claim is Without Merit

As explained in the TR Entities' Opening Brief (*see* TR Br. at 17-18), Dalia's

"turnover" cause of action must be dismissed because Dalia has not alleged (and cannot) that the

---

*(cont'd from previous page)*

Hirsch identified that address as his business address in the Hirsch Affirmation. (*See* Hirsch Aff. ¶ 2). Mr. Hirsch went on to explain that, in addition to his role at CWM, he is Executive Vice President and General Counsel of each of the TR Entities, none of which maintain an office in the state of New York. (*Id.* ¶ 3). Moreover, even assuming the TR Entities did have offices at Mr. Hirsch's listed address (and they do not), service was not proper on (i) the four LLCs under CPLR 311-a because there was no personal service on any member, manager, or authorized person, or (ii) Glenclova under CPLR 311 because attempted service was made on an administrative assistant (who is not authorized to accept service for CWM let alone Glenclova – an entity to which she has no relation). (*See* TR Br. at 10-11). The speciousness of Dalia's argument is further revealed by the fact that in the complaint she filed on **October 4, 2011** to commence the Delaware Action, she alleged that Glenclova was a Cayman Islands company, that TR Equity I and II were Delaware limited liability companies, and that TR Investors was a New Jersey limited liability company.

TR Entities ever received or retained any specific property or money purportedly belonging to

the Trust. *See, e.g., In re Perelman*, 123 A.D.3d 436, 436, 999 N.Y.S.2d 2, 3 (1st Dep't 2014).

Once again, Dalia fails to challenge the legal arguments proffered by the TR

Entities; rather, she merely argues that the TR Entities are in "in possession of the $15 million at

issue since TR has not yet paid it." (Opp'n Br. at 17). But the question is not whether the TR

Entities have $15 million, but whether at this very moment that $15 million or the portion thereof

that may at some future date become due and payable is (or ever was) property of the Trust. The

answer to the question is indisputably no, as Dalia has herself concedes.[8]

At best, at this point in time Trans-Resources, LLC, an entity that Dalia has never

served and is not a proper party to this proceeding, may become a creditor to the AG Group

under certain promissory notes (the "Notes"). However, the indisputable documentary evidence

establishes (and Dalia does not disagree) that the obligation to pay under those Notes remains

conditional and has not yet matured, and the amount Trans-Resources, LLC may owe is subject

to certain offsets and has not yet been determined. (*See* Hirsch Aff. ¶¶ 9-10). Until those Notes

become due and payable – and it is conceded that they are not currently due – the funds that will

be used to pay on the Notes belong to Trans-Resources, LLC. Dalia makes no claim that those

funds were received from Orly or the Trust or that the funds ever belonged to Orly or the Trust.

As such, Dalia most certainly has no right of turnover as against the fungible cash assets of

Trans-Resources, LLC or any of the other TR Entities.

---

[8]   In fact, as noted in the Opening Brief (*see* TR Br. at 17), in her allegations for the "turnover" claim in the
original Petition Dalia admitted that none of the TR Entities received or have in their possession any of the
"Settlement Proceeds" that she was (and is) claiming. (*See* Boyle Aff., Ex. M, at ¶¶ 72, 73). As further noted in
the Opening Brief (*see* TR Br. at 17), Dalia's prior allegations are informal judicial admissions that constitute
"documentary evidence" within the meaning of CPLR 3211(a)(1), and, as such, they contradict any claim that
the TR Entities have received or have in their possession any of the Settlement Proceeds, which include any of
the so-called "Remaining Payments."

Moreover, as explained in the TR Entities Opening Brief, insofar as the allegations of the Amended Petition regarding the so-called "Remaining Payments" are concerned, the documentary evidence establishes that none of the TR Entities is in possession of **any property of the Trust** in relation to any remaining obligations under the Settlement Agreement. (*See* TR Br. at 17-18). Dalia's failure to address or respond to the TR Entities' legal arguments and indisputable documentary evidence in support on this point (or even address the existence of the Notes), further supports dismissal. *See, e.g., TSR Group*, 2016 N.Y. Slip Op. 31322(U), at *10 (granting dismissal where plaintiff failed to address or respond to defendants' arguments).

**B.    The Turnover Claim is Subject to Dismissal Because it is Time-Barred**

As clarified in the TR Entities Opening Brief (*see* TR Br. at 15-16), Dalia's failure to properly serve the TR Entities with the original Petition and the later Amended Petition renders her turnover claim time-barred. Dalia's only response to this argument is her misplaced assertion that a six-year limitations period applies rather than a three-year period. Dalia's inapt argument is based on her view that because Orly is a "*de facto* trustee" of the Trust, all statutes of limitation in this proceeding as against Orly are six years.[9]

---

[9] To the extent that Dalia is alleging that Orly was a "*de facto* trustee" of the Trust, and therefore owed fiduciary duties to the Trust in connection with the Settlement Proceeds, such status also carries with it all the duties and obligations of a trustee under the Trust. In this regard, the Trust Agreement expressly allows the trustee (apparently whether *de facto* or *de jure*) to settle or compromise any claims, which Orly most certainly has done. (*See* Boyle Aff., Ex. I at Art. 11.A (7)). Most important, however, the Trust expressly limits the liability for any person who makes a payment to any of the trustees. (Boyle Aff., Ex. I at Art. 11.B ("No person or party dealing with the Trustees shall be bound to see the application of any money . . . paid by him or her to the Trustees.")). Similarly, the EPTL in a section entitled "Person paying money to the trustee protected," provides that no persons, such as the TR Entities, who in good faith transfer money to a trustee, are "responsible for the proper application of such money." EPTL § 7-3.3. Under these principles, the TR Entities are protected from any claims regarding how the Settlement Proceeds are to be or should have been applied by Orly or any other trustee to the Trust, which necessarily invalidates the turnover and injunction claims asserted by Dalia. If Dalia has an actionable grievance concerning the Settlement Proceeds or any of the so-called "Remaining Payments," her beef is with Orly and not with the TR Entities. Accordingly, this claim asserted against the TR Entities is yet another example of the TR Entities being dragged into the Genger family never ending "internecine feud for

*(cont'd)*

13

Regardless of the length of the statute of limitations, the fact of the matter is that this argument has no merit insofar as it concerns claims brought by Dalia – the actual *de jure* Trustee of the Trust – against the TR Entities, who indisputably are **not** (nor are they alleged to be) *de facto* trustees, beneficiaries, or fiduciaries of the Trust. And Dalia cites no case authority that so holds. In fact, the holding of the *Davidson* case that Dalia cites supports only an argument that an accounting and surcharge claim by Dalia against Orly as an alleged *de facto* trustee may be subject to a six-year limitation period. *See In re Davidson*, No. 78/2956/A, 2017 NYLJ LEXIS 3050, at *10 (Surr. Ct. N.Y. Cty. Oct. 25, 2017) (applying six-year period to claim brought by beneficiaries of trust against the trustees as fiduciaries to the trust). Neither the facts of *Davidson* nor its holding have any application to a claim brought by Dalia as the *de jure* Trustee against the TR Entities, who are not and never have been fiduciaries to the Trust.[10] Therefore it remains that Dalia's turnover claim against the TR Entities is subject to a three-year limitations period, *see* CPLR 213; *In re Thomas*, 28 Misc. 3d 300, 305, 901 N.Y.S.2d 493, 497 (Surr. Ct. Broome Cty. 2010), *aff'd*, 78 A.D.3d 1304, 910 N.Y.S.2d 252 (3d Dep't 2010) – a period that accrued, at the latest, on June 16, 2013, which was more than three years before any service was even attempted on any of the TR Entities.

## C.   The "Injunction" Claim is not an Appropriate Cause of Action

As addressed in the Opening Brief (*see* TR Br. at 18-20), an injunction is a remedy, not a cause of action. Moreover, where, as here, the underlying (and sole) claim against the TR Entities should be dismissed, so too must any request for injunctive relief. *See Held v.*

---

*(cont'd from previous page)*

which other courts have rebuked the Genger litigants time and again. *See, e.g., TR Investors, LLC v. Genger*, C.A. No. 3994-VCS, 2010 WL 2901704, at *18 (Del. Ch. July 23, 2010).

[10]   Notably, the Amended Petition asserts an accounting claim against Orly only, which makes sense as only Orly, among all the Respondents, has been alleged to be a fiduciary to the Trust. (*See* Am. Petition ¶¶ 85-87).

14

*Macy's, Inc.*, 25 Misc. 3d 1219(A), 2009 N.Y. Slip Op. 52189(U), at *16 (Sup. Ct. Westchester

Cty. 2009).[11]

Even putting aside the question of whether an injunction is a remedy or a cause of

action, as demonstrated in the Opening Brief (*see* TR Br. at 19-20), Dalia has not adequately

alleged the elements necessary for an injunction, which require sufficiently pled allegations as to

a probability of success on the merits of her claim, a danger of irreparable injury in the absence

of an injunction, and a balance of the equities in her favor. *See Aetna Ins. Co. v. Capasso*, 75

N.Y.2d 860, 862, 552 N.Y.S.2d 918, 919 (1990); *see also D'Amour v. Ohrenstein & Brown,*

*LLP*, 17 Misc. 3d 1130(A), 2007 N.Y. Slip Op. 52207(U), at *14-15 (Sup. Ct. N.Y. Cty. 2007)

(granting motion to dismiss claim for preliminary and permanent injunction where "plaintiffs

have failed to allege the sort of irreparable injury which is prerequisite to the granting of an

injunction"). As previously noted in the Opening Brief, the Amended Petition contains no

factual allegations to support either a preliminary or permanent injunction. *See* CPLR 6301; *see*

*also e.g., Faberge Int'l Inc. v. Di Pino*, 109 A.D.2d 235, 240, 491 N.Y.S.2d 345, 349 (1st Dep't

1985) (holding absence of such allegations required dismissal of request for injunction).[12]

---

[11]    Dalia quotes from the real property-related decision in *Twin Holdings of Delaware LLC v. CW Capital, LLC*, No. 005193/09, 2009 WL 4099330, at *5 (Sup. Ct. Nassau Cty Nov. 9, 2009), in an attempt to establish that an injunction is a proper cause of action. But that was not the issue the court was addressing in *Twin Holdings*. Rather, the court was addressing the defendants' argument that a permanent injunction was not an "appropriate remed[y]" in the case. *See id.* at *3. In fact, the court actually granted the defendants' motion to dismiss the permanent injunction remedy. *Id.* at *5. Further, in a subsequent decision, the *Twin Holdings* court also noted that it was denying plaintiffs' **motion** for a preliminary injunction, which was brought by way of a motion and not a cause of action (such that clearly the court was not addressing the issue for which Dalia cites its decision), because plaintiffs failed to establish a likelihood of success and could not show irreparable harm based on the fact that they had an "adequate remedy in the form of a money judgment." *See Twin Holdings of Del. LLC v. CW Capital, LLC*, 26 Misc. 3d 1214, 2010 N.Y. Slip Op. 50097 (U), at *9 (Sup. Ct. Nassau Cty. 2010). In a similar vein, the case cited in *Twin Holdings*, *The Rainbow Coop v. City of New York*, 63 A.D. 3d 415. 879 N.Y.S.2d 329 (1st Dep't 2009), which also involved real property, did not address the issue of whether an injunction was a cause of action but merely affirmed the dismissal of a claim seeking an injunction.

[12]    Moreover, the fact that Dalia has not filed any supporting affidavits or filed any motion to support her request for an injunction so as to establish the legal and factual basis for such a remedy – i.e., success on the merits, balance of the equities, irreparable harm – provides further grounds to dismiss her "injunction" claim.

In response, Dalia merely repeats the *ipse dixit* found in the Amended Petition

that the Trust "will be irreparably harmed" if the Settlement Proceeds are fully paid out. While

Dalia speculates that this fungible cash "may" have been dissipated by Orly and others who

purportedly **received** some of the Settlement Proceeds, the standard Dalia must (but cannot)

meet is whether an award of money damages would be adequate to address her claim.

This proceeding is unlike a case that involves specifically identifiable property

that will be lost or damaged if an injunction does not issue. Rather, as Dalia's Amended Petition

makes clear, this case is all about who gets the money – either the Trust or the AG Group – and,

as such, cannot satisfy the irreparable harm requirement and, importantly, Dalia has not (and

cannot) establish that a monetary award to her, that is the Trust, would be inadequate. *See, e.g.,*

*Zodkevitch v. Feibush*, 49 A.D.3d 424, 425, 854 N.Y.S.2d 373, 374 (1st Dep't 2008) (denying

plaintiffs' request for preliminary injunction that sought to have certain allegedly

misappropriated funds placed into escrow since plaintiffs failed to establish irreparable injury

and demonstrate award of money damages was inadequate).

And, as also noted in the Opening Brief, Dalia's failure to seek an injunction in

her original Petition filed in 2016, coupled with her nearly five-year delay in seeking injunctive

relief since she became aware of the Settlement Agreement, further negates any entitlement to an

injunction as it belies any sense of urgency. *See Waterscape Resort, L.L.C. v. 70 W. 45th St.*

*Holding LLC*, No. 652124/2014, 2015 N.Y. Slip. Op. 31255 (U), at *2 (Sup. Ct. N.Y. Cty. July

17, 2015) (noting that delay in seeking injunction negates irreparable harm since failure to

16

promptly act undercuts urgency normally attendant with requests for preliminary injunction)

(citations omitted).[13]

## IV.   DISMISSAL IS REQUIRED BECAUSE TRANS-RESOURCES, LLC WAS NEVER MADE A PARTY

For the reasons stated in the Opening Brief (*see* TR Br. at 14-15), dismissal of the

Amended Petition is also required because Dalia has not properly joined or served Trans-

Resources, LLC – a necessary party and a party who was neither named in nor served in

connection with the original Petition or the Amended Petition.[14] As noted therein, among other

things, Dalia failed to follow the procedures of this Court in naming and serving an additional

party, which require the issuance of a supplemental citation naming that new party (*see* SCPA

312), and service of that supplemental citation (*see* SCPA 307 & CPLR 3012(a)).[15]

As the indisputable documentary evidence presented by the TR Entities

establishes, Trans-Resources, LLC is the only TR Entity that is a signatory to and the maker of

the Notes at issue here. (*See* Hirsch Aff. ¶ 9; Boyle Aff., Ex. E [Settlement Agreement] at

Exhibit A). Dalia's claims against the other TR Entities – which rely solely upon a falsely

---

[13]   In her Opposition Brief, Dalia raises a pejorative argument against the TR Entities in which she asserts that the TR Entities should simply agree to Dalia's request for turnover and/or injunction and that they are "voluntarily injecting" themselves into this motion practice only because they are "doing the bidding for Arie or the Brosers." While such an obvious falsehood should require no response, the TR Entities are compelled to briefly reply. As the Court has been informed, the TR Entities have repeatedly approached Dalia in an effort to fully extract themselves from this proceeding into which they were improperly inserted to begin with. It is Dalia, however, who refuses to let the TR Entities out of this dispute making them collateral damage by either including them as parties in her Amended Petition or by demanding that they voluntarily agree to the very injunction she seeks in return for not naming them as parties. If Dalia truly wants a less expensive resolution with Orly, that avenue, which is solely in Dalia's control, remains available and recourse to it readily apparent – she need only voluntarily dismiss all claims against the TR Entities.

[14]   Dalia's failure to name Trans-Resources, LLC in the caption of either petition runs afoul of CPLR 2101(c), which requires a complaint to "include the names of all parties." Notably, the Court itself informed Dalia's counsel of the failure to properly name Trans-Resources, LLC during the February 27, 2018 Court hearing.

[15]   At minimum, these failings require dismissal of all claims against Trans-Resources, LLC under CPLR 3211(a)(8).

17

alleged obligation to make the so-called "Remaining Payments" under those Notes – must also

be dismissed because it is incontrovertible that none of them have any direct obligations under

the Notes. This same indisputable documentary evidence demonstrates that Trans-Resources,

LLC is a necessary party to this proceeding under CPLR 1001(a) and that Dalia's failure to

properly join Trans-Resources, LLC warrants dismissal of the Amended Petition under CPLR

1003 and CPLR 3211(a)(10).

Notably, Dalia has not addressed or offered any objection whatsoever to any of

these arguments.

## V.   RES JUDICATA BARS DALIA'S CLAIMS

The purpose of the *res judicata* bar is to "relieve parties of the cost and vexation

of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions,

encourage reliance on adjudication." *Ins. Co. of State of Pa. v. HSBC Bank USA*, 10 N.Y.3d 32,

38, 852 N.Y.S.2d 812, 815 (2008) (citation omitted). Because, as demonstrated in the TR

Entities' Opening Brief (TR Br. at 20-23), the claims Dalia seeks to assert in the Amended

Petition were either dismissed by the Supreme Court or dismissed pursuant to stipulation in prior

proceedings, or, even if not asserted, could have and should have been asserted in those prior

proceedings, *res judicata* warrants dismissal of the claims against the TR Entities.

In addressing the TR Entities' *res judicata* arguments, Dalia responds directly to

neither the legal authorities cited in support of dismissal nor the voluminous record evidence

presented by the TR Entities that proves that Dalia's current claims are subject to a *res judicata*

bar. What Dalia does instead is conveniently ignore her role in the Delaware Action when, as

Trustee of the Trust, on August 30, 2013 – after she was made aware of the Settlement

Agreement – she stipulated to a settlement with prejudice in the Delaware Action (the "Delaware

Dismissal"), which, as asserted in the TR Entities' Opening Brief (*see* TR Br. at 7-8, 22-23), bars

18

the claims she brings in the Amended Petition.[16]  As the authorities cited by the TR Entities

establish (and which Dalia does not contest), Dalia's stipulated dismissal with prejudice in the

Delaware Action bars re-litigation of not only the claims directly asserted in that action but of all

other claims arising out of the same transaction that could have been and should have been

asserted in that proceeding, even if they are based on different theories or seeking different

remedies. *See, e.g., O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357-58, 445 N.Y.S.2d 687, 689

(1981); *Fifty CPW Tenants Corp. v. Epstein*, 16 A.D.3d 292, 293, 792 N.Y.S.2d 58, 59 (1st Dep't

2005).

As the TR Entities pointed out in their Opening Brief (*see* TR Br. at 22), the

fundamental gravamen of the Amended Petition concerns the issue of ownership of the Trans-

Resources shares and any concomitant right to monetize that ownership interest, whatever it may

have been.  In her prior brief, Dalia acknowledges the relevancy of the determination of

beneficial ownership on her claims when she states: "It is the very fact that the settlement

'finally and fully resolved' the issues of ownership of the shares with Orly . . . that means that this

Turnover Proceeding seeking the Settlement Proceeds must stand."  (Prior Br. at 17 [copy

attached as Ex. 2 to the May 23, 2018 Affirmation of Judith Bachman]).

It is that acknowledgment that cements dismissal here.  Dalia equates the right to

the Settlement Proceeds to the settlement of the share ownership issue.  If, as Dalia has already

conceded, the settlement of the ownership of the shares issue, "is that very fact that entitle[s] the

---

[16]   In her prior brief, Dalia claimed that it was Orly who "mooted" the Delaware Action because she had already
acknowledged that the TR Entities were the "record and beneficial" owners of the Trans-Resources shares
underlying all these claims. (*See* Prior Br. at 5-6, 20).  But Orly was not even a party to the Delaware Action.
Dalia's recitation would have this Court ignore the fact that it was Dalia, as Trustee, and, subject to her fiduciary
responsibilities to the Trust, who agreed to the Delaware Dismissal.  What is clear is that Dalia, in compliance
with her fiduciary duty to the Trust, would not have agreed to the Delaware Dismissal unless she too agreed that
her claims against the TR Entities, asserting that the Trust was entitled to and/or the beneficial owner of the
Trans-Resources shares, were without merit.

19

Orly Trust to the turnover of the Settlement Proceeds" (*see* Prior Br. at 17), the Delaware

Dismissal, in which Dalia, as trustee, unequivocally settled that ownership issue with the TR

Entities, stipulated that the TR Entities are the owners "beneficially, of record and otherwise" of

all the Trans-Resources shares, and agreed to dismiss with prejudice the Trust's claims that it was

an owner of the shares (*see* Boyle Aff., Ex. F at ¶¶ 2, 4), her actions as trustee stipulating to the

Delaware Dismissal bars the claims here. (*See* TR Br. at 22-23).[17]

      Dalia also does not dispute that when she sought substitution into the New York

Action she did so to assert the very claim she asserts in the Amended Petition: that the

Settlement Proceeds belong to the Trust. (*See* TR Br. at 23; Boyle Aff., Ex. I, at 1). When the

First Department rejected Dalia's challenge to the final dismissal of that action, *Genger v.

Genger*, 144 A.D.3d 581, 581, 41 N.Y.S.3d 414, 415 (1st Dep't 2016), it expressly rejected

Dalia's attempts to bring those claims, yet another basis for *res judicata* preclusion here.

## VI.    EVEN IF NOT DISMISSED THE COURT SHOULD STAY OR DISMISS THIS PROCEEDING AND ALSO DISMISS DALIA'S CROSS-MOTION

      *First*, should this proceeding not be dismissed, it should be stayed pending

resolution of the threshold issue of whether Dalia is a proper trustee of the Trust. *See* CPLR

2201; *see also In re Orly Genger*, No. 2008-0017/B, Decision at 12 (Boyle Aff., Ex. C) (noting

there are "significant issues" as to whether Dalia is proper trustee). And, *second*, Dalia's already

pending cross-petition, in which she asserts identical claims of breach of fiduciary duty and

turnover against Orly concerning the Settlement Proceeds provides yet another reason for the

---

[17]  Further, in addition to making an argument that it is "mystifying" to her as to why the TR Entities are opposing the turnover and injunction claims, Dalia asserts that the TR Entities should not care one way or another because, as Dalia explains, the TR Entities already have a "release from everyone, including the Orly Trust." (Opp'n Br. at 18-19). Dalia's unprompted acknowledgment and judicial admission concedes the very *res judicata* point advanced by the TR Entities: That the Trust has already settled with the TR Entities regarding all claims arising from the transfers and ownership of the TRI shares, which include all the claims asserted in the Amended Petition.

Court to exercise its discretion to dismiss or at a minimum stay any proceedings on this
Amended Petition.

And, finally, the Court should reject Dalia's cross-motion to consolidate this
proceeding with any other Genger proceedings. As set forth in the TR Entities' Opening Brief
and above (*see* TR Br. at 2-4; *supra* at 3), the time for any court to use its discretion to allow the
Genger family to wage their personal war in the New York courts must come to an end.
Although she offers no argument to support her consolidation request in her current motion,
Dalia previously claimed that the goals of judicial economy, unnecessary duplication, the
avoidance of unnecessary cost, and the prevention of incongruous decisions will be served by
consolidation. Dalia's argument is farcical: Dalia and the other members of the Genger family
have spent a generation (and a fortune) in courtroom combat, overburdening the state and federal
court here and in Delaware, presenting bewildering arguments, and along the way targeting
innocent and ultimately vindicated third parties, such as the TR Entities, in their litigation blitz.
The personal animus at the heart of these cases and the hostility under which they are litigated
belies any claim of economy or efficiency.

Instead of consolidation, the appropriate discretionary result here is for the Court
to dismiss this Amended Petition under CPLR 3211(a)(4) in favor of the pending cross-petition
proceeding. Insofar as "'both suits arise out of the same subject matter or series of alleged
wrongs,'" a fact on which Dalia effectively agrees (*see* Prior Br. at 16), dismissal of this
proceeding is appropriate. *See Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87,
96, 970 N.Y.S.2d 526, 533 (1st Dep't 2013) (citation omitted).

The Court should also reject Dalia's cross-motion requesting an extension of time
to serve the citations or make substituted service, or *nunc pro tunc* service. (*See* Opp'n Br. at

20). Dalia offers no factual or legal arguments to support her requests and her motion should be denied on that basis alone.

Even assuming Dalia did present a supporting argument (she has not), her request should still be denied. CPLR 306-b only allows an extension of time for service upon a showing of "good cause" or an "interest of justice." Dalia has not (and cannot) show either. As noted above, it is undisputed that Dalia delayed over 570 days after filing the original Petition to attempt to serve process on the TR Entities. It is also undisputed that nowhere in the 120-day service period did Dalia seek relief from this Court to extend the time for service (or seek to compel issuance of any citation). Indeed, she belatedly sought an extension only after the TR Entities moved to dismiss. Thus, the incontrovertible record establishes that Dalia did nothing in the statutory 120-day period to even attempt to address the service requirements of SCPA 301(a), despite the fact that Dalia has been an active participant before this Court. In fact, Dalia made at least eight filings in this Court in the period between June 2016 and the date she attempted to serve the citations (*see* Dkt. entries filed 7-6-2017, 7-31-2017, 8-23-2017, 9-27-2017, 10-2-2017, 10-17-2017, and 12-13-2017), and sought at least two extensions of Court-ordered deadlines in her own cross-petition proceeding. (*See* Dkt. entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17 ("Stipulation To Adjourn From 10-17-17 To 12-8-17")).

Allowing Dalia to seek a retroactive extension in light of her understanding of how to obtain timely extensions from and how to file papers in this Court would allow professional litigants – such as Dalia – to trample on the Court's deadlines and rules with impunity, leaving them the ability to seek a redo by simply claiming "good cause" without a

22

proper showing.[18]   In fact, Dalia's dilatory conduct is exactly the type of belated behavior found

insufficient to satisfy the good cause or interest of justice standard.  *See, e.g., Estate of Jervis v.*

*Teachers Ins. & Annuity Ass'n*, 279 A.D.2d 367, 368, 720 N.Y.S.2d 21, 22 (1st Dep't 2001)

(holding that plaintiff's failure to serve process by deadline and her "unacceptably protracted

delay measured from the expiration of the 120-day period" to even attempt service, did not

establish either good cause or interest of justice to extend the time for service).[19]   Tellingly, Dalia

offers no evidence of having appeared at the Surrogate's Court before the 120-day statutory

period had run out to seek an extension of time to serve the citation, as any diligent litigant

would have done.

'   Notwithstanding Dalia's lack of diligence, it is clear that the interest of justice will

not be maintained by granting an extension.  As noted in the TR Entities' Opening Brief, the TR

Entities have made every effort to extract themselves from the "bitter and seemingly endless

battle" that is the "Genger family's litigation saga."  Delaware, New York, and Federal courts

have all agreed that "the Genger family's internecine feud . . . is not the [TR Entities'] problem."

---

[18]   It is Dalia's burden to establish that she has properly served the TR Entities or the merits to any request for an extension of service. *See Stewart v. Volkswagen of Am., Inc.*, 81 N.Y.2d 203, 207, 613 N.E.2d 518, 521 (1993) (reversing and granting motion to dismiss for lack of service noting that "once jurisdiction and service of process are questioned, plaintiffs have the burden of proving satisfaction of statutory and due process prerequisites").  As noted herein, Dalia has not met that burden.  In fact, she has not presented any evidence (as she is required to do) to establish why service of the original Petition or the Amended Petition on the TR Entities was effective service or how she satisfies the good cause or interest of justice standards.

[19]   *See also Shelkowitz v. Rainess*, 57 A.D.3d 337, 337, 869 N.Y.S.2d 87, 88 (1st Dep't. 2008) (affirming dismissal and denial of "interest of justice" extension where plaintiff did not seek relief until after motion to dismiss was filed and some 20 months after action was commenced); *Okoh v. Bunis*, 48 A.D.3d 357, 357, 854 N.Y.S.2d 336, 336-37 (1st Dep't 2008) (reversing and granting dismissal where plaintiff waited 14 months to seek extension of service and did so only in response to motion to dismiss); *Komanicky v. Contractor*, 146 A.D.3d 1042, 1043-44, 43 N.Y.S.3d 761, 762 (3rd Dep't. 2017) (affirming dismissal and denial of an extension of service because plaintiff lacked diligence in effecting service, requested extension 15 months after the 120-day period had expired and only after motion to dismiss was filed, and plaintiff failed to establish meritorious cause of action); *Brown v. Sanders*, 142 A.D.3d 940, 941, 37 N.Y.S.3d 444, 445 (2nd Dep't. 2016) (affirming dismissal because plaintiff failed to demonstrate good cause or interest of justice where she was not diligent in attempting proper service and failed to establish a meritorious cause of action).

23

(*See* TR Br. at 3 (citing *TR Investors*, 2010 WL 2901704, at *18)).  This is the Court's

opportunity to be added to the list of courts that have agreed with that proposition since 2010.

The Court should deny Dalia's motion to extend time to serve the citations and any other manner

of discretionary relief she may request.

And, finally, to the extent Dalia may attempt to claim that, despite the fact that

she never attempted to serve any of the TR Entities within the 120-day period required under

SCPA 301(a), she is nevertheless entitled under SCPA 301(b) to commence a new proceeding,

that argument must also be rejected.  Dalia has no recourse to 301(b) because by its terms it only

applies to dismissals "for failure to effect proper service."  Imbedded in the statute is the

prerequisite that this proceeding must first have been "commenced" within the applicable statute

of limitation, which as discussed above (*see supra* at 6-10), it was not.  The protection of 301(b)

is only available where a petitioner timely "commenced" the proceeding and then timely – within

120-days as required under SCPA 301(a) – attempted to serve process.[20]  Given Dalia's failure to

meet these requirements, SCPA 301(b) offers no relief for Dalia.

## CONCLUSION

For the foregoing reasons and the reasons presented in the TR Entities' Opening

Brief, the TR Entities respectfully request that this Court dismiss the Amended Petition and all

claims therein as against the TR Entities, and grant the TR Entities such other relief as may be

just and proper.

Dated:  New York, New York          Respectfully submitted,
        June 14, 2018
                                     SKADDEN, ARPS, SLATE,

---

[20]  This construction mirrors CPLR 306-b, which mandates dismissal but permits plaintiffs to seek an extension of
service provided they establish "good cause" of the "interest of justice."  The same good cause and interest of
justice test, which Dalia cannot meet, should also apply to any claim for relief pursuant to SCPA 301(b).

MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York 10036
(212) 735-3000
john.boyle@skadden.com

*Attorneys for Glenclova Investment Co.,*
*TR Investors, LLC, New TR Equity I, LLC,*
*New TR Equity II, LLC, and Trans-Resources,*
*LLC*

25

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                                           : ss.:
COUNTY OF NEW YORK   )

       Julie M. Thaxton, being duly sworn, deposes and says:

       1.  I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher &  Flom LLP, Four Times Square, New York, NY 10036.

       2.  On June 14, 2018 I served a true copy of the

- ***Reply Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Amended Petition for Turnover of Trust Property and Other Relief and in Opposition to Petitioner's Cross-Motion***

by Federal Express, overnight delivery upon:

                Judith Lisa Bachman, Esq.
                254 S. Main Street, Suite 306
                New City, New York 10956

                Kasowitz Benson Torres LLP
                Michael Paul Bowen
                1633 Broadway
                New York, NY 10019

                Kelley Drye & Warren LLP
                John Dellaportas
                101 Park Avenue
                New York, NY 10178

                Mitchell D. Goldberg, Esq.
                The Freyberg Law Group
                950 Third Avenue
                32nd Floor
                New York, NY 10022

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017

Julie M. Thaxton

Sworn to before me this
14th day of June 2018.

Richard Gomez
Notary Public, State of New York
No. 01GO6201183
Qualified in Queens County
Certificate Filed in New York County
Commission Expires March 9, 2021

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------
In the Matter of the Petition of Dalia Genger, as            File No. 2008-0017E
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13,1993 between               Hon. Nora S. Anderson
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to                   NOTICE OF
Turnover Property to the Orly Genger 1993 Trust              DISCONTINUANCE
--------------------------------------------------------------------------------

PLEASE TAKE NOTICE that, pursuant to CPLR 3217(a)(1), the Trustee of the Orly

Genger 1993 Trust (the "Trust") does hereby voluntarily discontinue the amended petition for

turnover of trust property, dated April 12, 2018, and filed on April 13, 2018 (the "Petition"),

without prejudice, against ARIE GENGER, ARNOLD BROSER, DAVID BROSER, only.  The

Petition with regard to ORLY GENGER, GLENCOVA INVESTMENT COMPANY, TR

INVESTORS, LLC, NEW TR EQUITY 1, LLC, NEW TR EQUITY 11, LLC, TRANS-

RESOURCES, INC., JOHN DOES 1-20 AND JANE DOES 1-20 remains pending and

unaffected by this Notice.

Dated:  June 20, 2019
New York, New York

_____                    _____
Judith Bachman, Esq.                         Spencer L. Schneider, Esq.
The Bachman Law Firm PLLC                     Spencer L. Schneider, P.C.
Attorney for Outgoing Trustee,                Attorney for Successor Trustee,
Dalia Genger                                  Michael Oldner
365 S. Main Street, 2nd Floor                 39 Broadway, 32nd Floor
New City, New York 10956                      New York, NY 10006
845-639-3210                                  Ph: 212-267-6900


TO:   Michael Bowen, Esq.
      Andrew R. Kurland, Esq.
      Kasowitz Benson Torres LLP
      Attorneys for Respondent Orly Genger
      1633 Broadway
      New York, New York 10019

(212) 506-3306

John Boyle, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Attorneys for Respondents TR Entities
Four Times Square
New York, New York 10036
(212) 735-2527

Leon Friedman, Esq.
Attorney for Respondent Arie Genger
685 Third Avenue, 25th Floor
New York, New York 10017
(646) 825-4398

Mitchell D. Goldberg, Esq.
They Freyberg Law Group
Attorneys for Respondents Brosers
950 Third Avenue, 32nd Floor
New York, New York 10022
(212) 754-9000

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------------

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13,1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust
-------------------------------------------------------------------------------

File No. 2008-0017E

Hon. Nora S. Anderson

**AFFIRMATION
OF SERVICE**

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

SPENCER L. SCHNEIDER, being duly sworn, deposes and says:

    1. I am Member of the Bar of the State of New York, and I represent counsel for
Successor Trustee Michael Oldner. I am not a party in this action, reside in this State and am
over 18 years of age.  On June 21, 2019, I served a copy of the foregoing voluntarily notice of
discontinuance of the amended petition for turnover of trust property against ARIE GENGER,
ARNOLD BROSER, DAVID BROSER, only, by mailing same, by first class mail, postage
paid to the following counsel: Kasowitz Benson Torres LLP, Attorneys for Respondent Orly
Genger, 1633 Broadway, New York, New York 10019;  Skadden, Arps, Slate, Meagher &
Flom LLP, Attorneys for Respondents TR Entities, Four Times Square, New York, New York
10036;  Leon Friedman, Esq., Attorney for Respondent Arie Genger, 685 Third Avenue, 25th
Floor, New York, New York 10017; and The Freyberg Law Group, Attorneys for Respondents
Brosers, 950 Third Avenue, 32nd Floor, New York, New York 10022.

Dated: New York, New York
      June 21, 2019

                                              Spencer L. Schneider

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------
In the Matter of the Petition of Dalia Genger, as                    File No. 2008-0017E
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13,1993 between                      Hon. Nora S. Anderson
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust
--------------------------------------------------------------------------------

---

## NOTICE OF VOLUNTARY DISCONTINUANCE

---

SPENCER L. SCHNEIDER, P.C.
Attorney for Successor Trustee
 Michael Oldner
39 Broadway, 32nd Floor
New York, NY 10006
Tel: (212) 267-2900
sschneider@slsatty.com

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUL 0 2 2019

FILED

Clerk

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13,1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust

-------------------------------------------------------------------

File No. 2008-0017E

Hon. Nora S. Anderson

**NOTICE OF
APPEARANCE**

**PLEASE TAKE NOTICE**, that SPENCER L. SCHNEIDER, P.C., by Spencer L. Schneider, Esq., appears as counsel for Successor Trustee Michael Oldner, and demands that all past and present given notices or required to be given notices in this case be given to and served upon the undersigned at the address and telephone number set forth below.

Dated:  New York, New York
    June 20, 2019

SPENCER L. SCHNEIDER, P.C.

By: _____
    Spencer L. Schneider

Attorney for Successor Trustee
  Michael Oldner
39 Broadway, 32nd Floor
New York, NY 10006
Tel: (212) 267-2900
sschneider@slsatty.com

STATE OF ARKANSAS      )
              ) ss.:
COUNTY OF PULASKI      )

    I, Michael Oldner, residing at 801 Pleasant Valley Drive, #16, Little Rock, AR 72227, do hereby acknowledge that I am the successor trustee of the Orly Genger 1993 Trust and that Spencer L. Schneider, P.C. is hereby authorized to appear on my behalf in this Court.

_____
Michael Oldner

Sworn to before me this
20 day of June 2019

_____
Notary Public

JAY SANATI
NOTARY PUBLIC-STATE OF ARKANSAS
PULASKI COUNTY
My Commission Expires 10-24-2020
Commission # 12379208

TO:    Michael Bowen, Esq.
         Andrew R. Kurland, Esq.
         Kasowitz Benson Torres LLP
         Attorneys for Respondent Orly Genger
         1633 Broadway
         New York, New York 10019
         (212) 506-3306

         John Boyle, Esq.
         Skadden, Arps, Slate, Meagher & Flom LLP
         Attorneys for Respondents TR Entities
         Four Times Square
         New York, New York 10036
         (212) 735-2527

         Leon Friedman, Esq.
         Attorney for Respondent Arie Genger
         685 Third Avenue, 25th Floor
         New York, New York 10017
         (646) 825-4398

         Mitchell D. Goldberg, Esq.
         The Freyberg Law Group
         Attorneys for Respondents Brosers
         950 Third Avenue, 32nd Floor
         New York, New York 10022
         (212) 754-9000

         Judith Bachman, Esq.
         The Bachman Law Firm PLLC
         Attorney for Outgoing Trustee,
         Dalia Genger
         365 S. Main Street, 2nd Floor
         New City, New York 10956
         845-639-3210

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------------

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as | File No. 2008-0017E |
| Trustee of the Orly Genger 1993 Trust, Created by | |
| Trust Agreement Dated December 13,1993 between | Hon. Nora S. Anderson |
| ARIE GENGER, as Grantor, and LAWRENCE M. | |
| SMALL and SASH A. SPENCER, as Trustees, to | **AFFIRMATION** |
| Turnover Property to the Orly Genger 1993 Trust | **OF SERVICE** |

---------------------------------------------------------------------------------

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK  )

SPENCER L. SCHNEIDER, being duly sworn, deposes and says:

　　1. I am Member of the Bar of the State of New York, and I represent counsel for Successor Trustee Michael Oldner. I am not a party in this action, reside in this State and am over 18 years of age.  On June 25, 2019, I served a copy of the foregoing notice of appearance by mailing same, by first class mail, postage paid to the following counsel: Kasowitz Benson Torres LLP, Attorneys for Respondent Orly Genger, 1633 Broadway, New York, New York 10019;  Skadden, Arps, Slate, Meagher & Flom LLP, Attorneys for Respondents TR Entities, Four Times Square, New York, New York 10036;  Leon Friedman, Esq., Attorney for Respondent Arie Genger, 685 Third Avenue, 25th Floor, New York, New York 10017; and The Freyberg Law Group, Attorneys for Respondents Brosers, 950 Third Avenue, 32nd Floor, New York, New York 10022.

Dated: New York, New York
　　　June 25, 2019

　　　　　　　　　　　　　　　　　　　　　　Spencer L. Schneider

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------
In the Matter of the Petition of Dalia Genger, as              File No. 2008-0017E
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13,1993 between                 Hon. Nora S. Anderson
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust
--------------------------------------------------------------------------------

## NOTICE OF APPEARANCE

SPENCER L. SCHNEIDER, P.C.
Attorney for Successor Trustee
 Michael Oldner
39 Broadway, 32nd Floor
New York, NY 10006
Tel: (212) 267-2900
sschneider@slsatty.com

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Petition of Dalia Genger, as
Trustee of the Orly Genger 1993 Trust, Created by
Trust Agreement Dated December 13, 1993 between
ARIE GENGER, as Grantor, and LAWRENCE M.
SMALL and SASH A. SPENCER, as Trustees, to
Turnover Property to the Orly Genger 1993 Trust.

Dalia Genger, Trustee of the Orly Genger 1993
Trust,
        Petitioner
    -against-
Orly Genger, et al.,
        Respondents.

File No.:    2008-0017/E

Surrogate Nora S. Anderson

New York County Surrogate's Court
MISCELLANEOUS DEPT.

JUL 16 2019

FILED

Clerk

    PLEASE TAKE NOTICE that, on July 12, 2019 (the "Petition Date") at approximately

8:30 p.m. eastern time, respondent Orly Genger filed a voluntary petition for bankruptcy

pursuant to Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy

Court for the Western District of Texas, under Case No. 19-bk-10926.

    PLEASE TAKE FURTHER NOTICE that, pursuant to 11. U.S.C. § 362, *inter alia*, the

commencement or continuation of a judicial, administrative, or other action or proceeding

against respondent Orly Genger that was or could have been commenced before the Petition

Date, including this action, is stayed as of the Petition Date.  Additional information about the

bankruptcy can be obtained by reviewing the docket of the matter

(*see* https://www.txwb.uscourts.gov/) or contacting counsel for debtor at:

    Eric Taube, Esq.
    (512) 385-6400
    Eric.Taube@wallerlaw.com
    Waller Lansden Dortch & Davis, LLP
    100 Congress Avenue, Suite 1800
    Austin, Texas  78701

Dated: New York, New York
       July 15, 2019

                           Respectfully submitted,


                           KASOWITZ BENSON TORRES LLP


                           By:_____
                              Michael Paul Bowen
                              (mbowen@kasowitz.com)
                              Andrew R. Kurland
                              (akurland@kasowitz.com)
                              1633 Broadway
                              New York, NY 10019s
                              (212) 506-1700

                           Attorneys for respondent Orly Genger


TO (via FedEx):


        Judith Bachman, Esq.
        254 S. Main Street
        Suite 306
        New City, NY 10956

        *Counsel for Petitioner Dalia Genger*

        Spencer I. Schneider, Esq.
        39 Broadway, 32nd Floor
        New York, NY 10006

        *Counsel for Successor Trustee Michael Oldner*

        John Dellaportas, Esq.
        EMMET, MARVIN & MARTIN LLP
        120 Broadway, 32nd Floor
        New York, NY 10271

        *Counsel for Sagi Genger*

John Boyle
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

*Counsel for Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources, LLC*

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017

*Counsel for Respondent Arie Genger*

Mitchell D. Goldberg, Esq.
THE FREYBERG LAW GROUP
950 Third Avenue, 32nd Floor
New York, NY 10022

*Counsel for Respondents David Broser and Arnold Broser*

3

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:   2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>    Petitioner,<br><br>    -against-<br><br>Orly Genger, et al.,<br><br>    Respondents. | |

## **AFFIRMATION OF SERVICE**

I am an attorney admitted to practice before the Courts of the State of New York.  On

July 15, 2019, on behalf of respondent Orly Genger, I caused to be served by FedEx overnight

delivery a true and correct copy of respondent Orly Genger's Notice of Bankruptcy, dated

July 15, 2019 on counsel at the following addresses:

Judith Bachman, Esq.
254 S. Main Street
Suite 306
New City, NY 10956

*Counsel for Petitioner Dalia Genger*

Spencer I. Schneider, Esq.
39 Broadway, 32nd Floor
New York, NY 10006

*Counsel for Successor Trustee Michael Oldner*

John Dellaportas, Esq.
EMMET, MARVIN & MARTIN LLP
120 Broadway, 32nd Floor
New York, NY 10271

*Counsel for Sagi Genger*

John Boyle
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

*Counsel for Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New
TR Equity II, LLC, and Trans-Resources, LLC*

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017

*Counsel for Respondent Arie Genger*

Mitchell D. Goldberg, Esq.
THE FREYBERG LAW GROUP
950 Third Avenue, 32nd Floor
New York, NY 10022

*Counsel for Respondents David Broser and Arnold Broser*


Dated: New York, New York
     July 15, 2019

                                             _____
                                                  Andrew R. Kurland

SURROGATE'S COURT : NEW YORK COUNTY
----------------------------------------X
In the Matter of the Petition of
Dalia Genger, as Trustee of The Orly
Genger 1993 Trust Established
on December 13, 1993, by

                ARIE GENGER,

                        Grantor,

for Turnover of Property.
----------------------------------------X

New York County Surrogate's Court

Date: _August 20, 2019_

File No. 2008-0017/E

A N D E R S O N,   S .

     The court has been notified that Orly Genger, a respondent

in the above-captioned turnover proceeding, has filed for

bankruptcy, pursuant to Chapter 7 of Title 11 of the United

States Code, in the United States Bankruptcy Court for the

Western District of Texas under Case No. 19-bk-10926.

Accordingly, this proceeding has been automatically stayed (*see*

11 USC § 362).

     Proceed accordingly.


Dated: August 20 , 2019



                              _____
                                 S U R R O G A T E